# Complaint Exhibit 7

Department of Health and Human Services
Office of the Secretary

## OFFICE OF MEDICARE HEARINGS AND APPEALS

Cleveland Field Office
1001 Lakeside Ave
Suite 700
Cleveland, OH 44114
216-462-4100
(216) 462-4145 (Direct)
216-615-9029 (Fax)
866-236-5089 (Toll Free)

November 19, 2025

[redacted]

### NOTICE OF DECISION

Appellant: BRIAN G. LODER DPM PLC
OMHA Appeal Number: 3-15259931569

Enclosed is the decision for the above case. This decision is based on the administrative record, including any evidence or testimony presented at the hearing, if one was held. The decision is not precedential, does not release the appellant from civil or criminal liability, and may be reopened at any time if it was procured by fraud or similar fault. In addition, the decision may be reopened within 180 calendar days from the date of the decision for good cause. Good cause exists when there is new and material evidence that was not available or known at the time of the decision and may result in a different conclusion, or when the evidence that was considered clearly shows on its face that an obvious error was made at the time of the decision.

**What if I disagree with the decision?**

If you disagree with the decision, you may file an appeal with the Medicare Appeals Council. Other parties may also appeal the decision. In addition, the Medicare Appeals Council may decide to review the decision on its own motion. If no party appeals the decision and the Medicare Appeals Council does not review the decision, the decision is binding on all parties and you and the other parties will not have the right to ask a federal court to review the decision.

If you are not already represented, you may appoint an attorney or other person to represent you.

## How much time do I have to file an appeal?

The Medicare Appeals Council must receive your written appeal **within 60 calendar days** of the date that you receive this notice. The Medicare Appeals Council assumes you received this notice 5 calendar days after the date of the notice unless you show that you did not receive it within the 5-day period.

The Medicare Appeals Council will dismiss a late request for review unless you show that you had a good reason for not filing it on time.

## How do I file an appeal?

To appeal, you must ask the Medicare Appeals Council to review the decision. Your appeal must be in writing, except that a request for expedited review of a Part D decision may be made orally as described below. Your appeal must identify the parts of the decision that you disagree with, and explain why you disagree.

You may submit a written request for review to the Medicare Appeals Council using one of three available methods: mail, fax, or electronic filing (E-File). **Please do not submit your request for review using more than one method**. Regardless of how you file your appeal, **you must always send a copy of your written request for review to the other parties who received a copy of the decision.**

If you are filing a written request for review, you may use the enclosed *Request for Review* (Form DAB-101), or you may write a letter containing the following:

- The beneficiary's/enrollee's name (and telephone number for Part D appeals);
- The beneficiary's/enrollee's Medicare number (Health Insurance Claim Number or Medicare Beneficiary Identifier);
- The item(s), service(s), or specific Part D drug(s) in dispute;
- The specific date(s) the item(s) or service(s) were provided, if applicable;
- For Part D appeals, the plan name;
- For Part D appeals, the OMHA Appeal Number on the adjudicator's decision;
- For Part D appeals requesting expedited review, a statement that you are requesting expedited review;
- The date of the adjudicator's decision (not required for Part D appeals); and
- Your name and signature, and, if applicable, the name and signature of your representative.

**Filing by mail:**

Mail your appeal and a copy of the enclosed decision to:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

**Filing by fax:**

Fax your appeal and a copy of the enclosed decision to **(202) 565-0227.**

**Filing by computer:**

Using your web browser, visit the Medicare Operations Division Electronic Filing System (MOD E-File) website at **https://dab.efile.hhs.gov/mod**.

To file a new appeal using MOD E-File, you will need to register by:

1. Clicking **Register** on the MOD E-File home page;
2. Entering the information requested on the "Register New Account" form; and
3. Clicking **Register Account** at the bottom of the form.

You will use the email address and password you provided during registration to access MOD E-File at **https://dab.efile.hhs.gov/mod/users/new**. You will be able to use MOD E-File to file and access the specific materials for appeals to which you are a party or a party's representative. You may check the status of any appeal on the website homepage without registering.

Once registered, you may file your appeal by:

1. Logging into MOD E-File;
2. Clicking the **File New Appeal** menu button on the top right of the screen;
3. Selecting the type of appeal you are filing (Request for Review or Request for Escalation); and
4. Entering the requested Appeal Information and uploading the requested Appeal Documents on the "File New Appeal - Medicare Operations Division" form. You are required to provide information and documents marked with an asterisk.

At a minimum, the Medicare Appeals Council requires an appellant to file a signed Request for Review and a copy of the enclosed decision. All documents should be submitted in Portable Document Format (PDF) whenever possible. Any document, including a Request for Review, will be deemed to have been filed on a given day, if it is uploaded to MOD E-File on or before 11:59 p.m. EST of that day.

Currently, the documents that may be filed electronically are the:

1. Request for Review;
2. Appointment of Representative form (OMB Form 0938-0950);
3. Copy of Administrative Law Judge or attorney adjudicator decision;
4. Memorandum or brief or other written statement in support of your appeal; and
5. Request to Withdraw your appeal

**No other documents aside from the five (5) listed categories above may be submitted through MOD E-File.**

**Filing by oral request (for expedited review only):**

Oral requests for expedited review of a Part D decision may be made by telephone to **(866) 365-8204.** You must provide the information listed in the bullet points above and a statement that you are requesting an expedited review within 60 calendar days after receipt of this notice of decision. The Medicare Appeals Council will document the oral request in writing and maintain the documentation in the case file.

Please note that your request for review will only be expedited (1) the appeal involves an issue specified in 42 C.F.R. § 423.566(b), but does not include solely a request for payment of a Part D drug that has already been furnished, and (2) the prescribing physician (or other prescriber) indicates, or the Medicare Appeals Council determines, that the standard time frame may seriously jeopardize your life, health, or ability to regain maximum function.

**<u>How will the Medicare Appeals Council respond to my appeal?</u>**

The Medicare Appeals Council will limit its review to the issues raised in the appeal, unless the appeal is filed by an unrepresented beneficiary/enrollee. It may change the parts of the decision that you agree with. It may adopt, modify, or reverse the decision, in whole or in part, or it may send the case back to OMHA for further action. It may also dismiss your appeal.

**<u>Questions?</u>**

You may call or write our office. A toll-free phone number and mailing address are at the top of this notice.

Additional information about filing an appeal with the Medicare Appeals Council is available at http://www.hhs.gov/dab/. You can also call the Medicare Appeals Council's staff in the Medicare

Operations Division of the Departmental Appeals Board at (202) 565-0100 or (866) 365-8204 (toll free), if you have questions about filing an appeal.

cc:

[redacted]

QIC - C2C B North
301 W Bay Street
Ste. 1110
Jacksonville, FL 32202

Enclosures:
OMHA-152, Decision
DAB-101, Request for Review
OMHA-156, Exhibit List

Department of Health and Human Services
OFFICE OF MEDICARE HEARINGS AND APPEALS
Cleveland, OH

| | |
|---|---|
| Appeal of: **BRIAN G. LODER DPM PLC** | OMHA Appeal No.: **3-15259931569** |
| Beneficiary: [redacted] | Medicare Part: B |
| Medicare No.: [redacted] | Before: **Martin McClelland** Administrative Law Judge |

## DECISION

After carefully considering the evidence and arguments presented in the record and at hearing, I enter an **UNFAVORABLE** decision. The record does not support that Dual Layer Impax Membrane is safe, effective, non-experimental, non-investigational, and clinically appropriate for the treatment of the beneficiary's non-pressure chronic ulcer wounds, and therefore the products and services provided were not reasonable and necessary. The Appellant is not entitled to Medicare coverage or payment. The Appellant remains liable for the costs of the non-covered products and services and repayment of the overpayment. The beneficiary's liability is limited, and the Appellant may not bill the beneficiary for the cost of the non-covered products or services.

## PROCEDURAL HISTORY

The Appellant submitted a claim to the Medicare Administrative Contractor Wisconsin Physicians Services (WPS)(Contractor) for reimbursement of 32 units of Dual Layer Impax Membrane (Impax) billed under HCPCS code Q4262 and integumentary/musculoskeletal surgery services billed under HCPCS codes 15271 and 15272. The date of service at issue is May 16, 2023. Initially, the Contractor allowed payment on the claim. Subsequently, the Medicare Unified Program Integrity Contractor Covent Bridge Group (UPIC) determined that an overpayment had been made. File 13, pp. 2-5. On redetermination, the Contractor determined that the Appellant's document submission did not support the use of Impax to treat the beneficiary's wounds as medically reasonable and necessary. File 3, p. 8. The Appellant then requested reconsideration by the Qualified Independent Contractor C2C Innovative Solutions, Inc. (QIC). File 3, p. 1. On reconsideration, the QIC also determined that the use of Impax for the treatment of the beneficiary's wounds was experimental and investigational, and therefore not medically reasonable and necessary. Therefore, the QIC determined that no payment could be allowed for the services and that the overpayment was valid. File 2, pp. 3-5.

The Office of Medicare Hearings and Appeals (OMHA) received the Appellant's request for an Administrative Law Judge (ALJ) hearing, and all jurisdictional requirements were

satisfied. File 1, p. 2. The Appellant identified William O'Malley as its appointed representative. *Id.* at 18. The OMHA issued a Notice of Hearing setting the date and time for hearing. Files 8, 11, and 14.

On October 30, 2025, the telephone hearing was conducted as scheduled from the Cleveland Field Office. The Appellant was represented by William O'Malley who provided testimony under oath. In lieu of an appearance, the UPIC submitted a position paper for consideration. File 13. Documents previously marked and identified as Files 1-15 were admitted into the record without objection. The administrative record is now closed.

## ISSUES

1. **Whether the record supports Medicare coverage and payment for the products and services furnished to the beneficiary for the date of service at issue.**

2. **Whether § 1879 of the Social Security Act (Act) provides relief to limit a party's liability.**

3. **Whether § 1870 of the Act provides a waiver of liability for the overpayment.**

## APPLICABLE LAW AND POLICY

### Medical Necessity

Section 1862(a)(1)(A) of the Act bars coverage of items and services that are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member. Section 1833(e) of the Act provides that no claim for Medicare coverage may be paid unless "there has been furnished such information as may be necessary to determine the amounts due such provider."

ALJs are bound by statutes, regulations, National Coverage Determinations (NCDs) and CMS Rulings. 42 C.F.R. § 405.1060(a)(4), 405. 1063. ALJs are not bound by program guidance such as Local Coverage Determinations (LCDs), program memoranda or manual instructions. However, an ALJ must give such policies substantial deference if applicable in a particular case. 42 C.F.R. § 405.1062(a). If any ALJ declines to follow a policy in a particular case, the rational for not following that policy must be explained. 42 C.F.R. § 405.1062(b).

There are no NCDs or LCDs applicable to the present matter. However, the following are relevant to the instant matter:

WPS, *Skin Substitute Grafts/Cellular and Tissue-Based Products for the Treatment of Diabetic Foot Ulcers and Venous Leg Ulcers*, DL 39865 (Proposed LCD).

WPS, *Billing and Coding: Skin Substitutes Grafts/Cellular Tissue-Based Products for the Treatment of Diabetic Foot Ulcers and Venous Leg Ulcers*, A59740 (Future Effective).

CMS, Medicare Program Integrity Manual (*MPIM*), publication 100-08, chapter 3, section 3.6.2.2, sets forth the coverage criteria for items and services that are medically reasonable and necessary when there is no effective NCD or LCD.

**Liability**

Section 1879 of the Act provides that when Medicare excludes coverage pursuant to § 1862(a) (1) of the Act, payment may nevertheless be made for items or services if neither the beneficiary nor the provider or supplier knew, or could not reasonably be expected to have known, that the items or services would not be covered or payable by Medicare. Section 1870 of the Act governs the recovery of overpayments based upon provider fault. Section 1870(b) of the Act allows for a waiver of recovery of an overpayment to a provider if it is without fault in incurring the overpayment.

## FINDINGS OF FACT AND ANALYSIS

This appeal concerns the use of Impax to treat the beneficiary's non-pressure chronic ulcer wounds of the ankles. Impax is a human allograft tissue that is regulated as a human cells, tissues, and cellular and tissue-based product (HCT/P) as defined by 21 C.F.R. Part 1271. Throughout this appeal, the Appellant has maintained that the use of Impax was medically reasonable, necessary, and appropriate as a protective covering to aid in the healing of the beneficiary's wounds. File 3, pp. 3, 140. On May 16, 2023, the beneficiary presented to the Appellant's clinic for a wound assessment and care. The beneficiary was diagnosed with non-pressure chronic ulcers of the right and left ankle with fat layers exposed. Prior wound care treatments included bilateral Unna boots, compression therapy, elevation, narcotic pain relievers, and patient education. The plan of treatment called for debridement and application of Impax to the left and right ankle wounds. *Id.* at 14-18.

The Appellant now seeks Medicare reimbursement for the 32 units of Impax applied to the beneficiary's ankle wounds on the date of service at issue. At the most recent level of the appeals process, the QIC denied payment on the Appellant's claim because it determined that the use of Impax for non-pressure chronic ulcers of the ankles was experimental and investigational as denoted by the Q-code status nomenclature, and therefore no payment could be made under Medicare. File 2, pp. 3-5.

In its position paper, the UPIC presented several additional arguments against Medicare coverage and payment. First, it contended that Impax was not an appropriate treatment for the beneficiary's ankle wounds. According to the UPIC, the beneficiary's medical records showed that prior use of skin substitutes had not resulted in significant clinical improvement and that there was insufficient evidence demonstrating a failure of conservative treatment. In response, the Appellant pointed to an out-of-jurisdiction LCD to support the claim that Impax is safe, effective, non-experimental, and non-investigational. However, the UPIC determined that the cited LCD did not apply to the product or the date of service within the Contractor's jurisdiction. Moreover, the UPIC stated that even if the LCD was applicable, the Appellant's claim would still be denied because the services did not meet the necessity requirements under that LCD. File 13, pp. 2-5.

Throughout the appeals process, the Appellant has maintained that the use of Impax was medically reasonable, necessary, and appropriate as a protective covering to aid in the

healing of the beneficiary's wounds. File 3, pp. 3, 140. The Appellant argues that the QIC's denial was inappropriate because Impax's Q-code status does not preclude individual consideration of medical necessity. Q-codes are administrative billing tools, not indicators of medical necessity. If CMS intended for Q-coded products like Impax to be automatically considered investigational or non-covered, it would have issued a policy to that effect, and no such policy exists. File 1, pp. 4-5. The Appellant also argues that determinations related to the safety and effectiveness of medical products like Impax fall exclusively within the jurisdiction of the U.S. Food and Drug Administration (FDA). According to the FDA, Impax is exempt from FDA premarket approval requirements and thorough formal regulatory reviews by the FDA satisfies the federal requirements for establishing a product's safety profile. More specifically, the Appellant argues that Impax's safety and effectiveness are supported by the FDA's classification of Impax as an HCT/P under § 361 of the Public Health Services Act.[1] File 1, pp. 4-15; Hearing Recording, October 30, 2025.

The Appellant further argues that Impax cannot be considered experimental or investigational when CMS contractors have issued LCDs that provide coverage guidance for skin substitutes. As referenced in this matter, CGS's LCD L36690 *Wound Application of Cellular and/or Tissue Based Products (CTPs), Lower Extremities* and Palmetto's future LCD L39806 *Skin Substitute Grafts/ Cellular and Tissue-Based Products for the Treatment of Diabetic Foot Ulcers and Venous Leg Ulcers* are evidence that human tissue allografts used to treat Medicare beneficiaries are recognized as safe, effective, non-experimental, and non-investigational products, and therefore it is believed that skin substitutes cannot be experimental or investigational when they are currently being covered under existing and future LCDs. File 3, pp. 2-6; Hearing recording. Lastly, the Appellant asserts that Impax's safety, effectiveness, and appropriateness is supported by peer-reviewed, evidence-based literature for chronic ulcer treatment. The Appellant submitted articles of studies for patients diagnosed with diabetic foot ulcers or other pressure injuries and wounds who received skin substitutes to support Impax's safety and effectiveness. File 3, pp. 147-219.

To summarize, contrary to the CMS contractors' belief, it is the Appellant's position that Impax's safety and effectiveness has already been proven and that Impax was medically necessary and clinically appropriate for the management and treatment of the beneficiary's wounds. Therefore, according to the Appellant, they are entitled to Medicare coverage and payment. File 1, pp. 4-8; Hearing recording.

**Medical Necessity**

After full consideration of both positions, I find the preponderance of the evidence does not support that Impax was medically reasonable and necessary for the treatment of the beneficiary's non-pressure chronic ulcers of the right and left ankles. I further find the record lacks sufficient support that Impax is safe, effective, non-experimental, non-investigational, and clinically appropriate for the treatment of the beneficiary's non-pressure chronic ulcers of the right and left ankles.

---

[1] 21 C.F.R. § 1271.10(a) sets out the criteria that form the foundation of FDA's tiered, risk-based approach to regulating HCT/Ps. HCT/Ps that meet all of the criteria in 21 C.F.R. § 1271.10(a) are subject only to regulation under § 361 of the Public Health Service Act (PHS Act) and the regulations in 21 C.F.R. part 1271. An HCT/P that falls into this category is sometimes referred to as a "361 HCT/P" and no premarket authorization is required.

Here, the Appellant's reliance on Impax's categorization as an FDA regulated § 361 HCT/P product does not prove Impax's safety and effectiveness. Despite the Appellant's alleged homologous use of the product, the FDA's categorization of Impax as an HCT/P product is only one factor in making a Medicare coverage and payment determination. 42 C.F.R. § 405.201(a)(1). Generally, a product's categorization as a § 361 HCT/P product with the FDA signifies that the product has not had to undergo rigorous clinical trials in both animal and human populations before being marketed to the public. As a result, the FDA permits manufacturers to identify products that they do not believe have to be regulated under § 351 and instead seek to have the product regulated under § 361. The mere acceptance of a registration by the FDA yields no support that Impax is safe and effective, not experimental or investigational for treatment of the beneficiary's wounds. Therefore, without more evidence from the Appellant to support Impax's safety, effectiveness, and non-investigational nature for treating non-pressure chronic ulcers of the ankles, the Appellant has not shown that Impax is reasonable or medically necessary for treatment of the beneficiary's wounds.

Moreover, the fact that that a drug, medical service, or procedure has obtained approval, exception, or exemption under FDA regulations does not mean that Medicare will guarantee coverage or payment for that drug, service, or procedure without conducting its own review for medical necessity. CMS and their contractors, in analyzing whether a particular item or service is medically reasonable and necessary, will make an independent inquiry into whether the item or service is safe and effective and not experimental or investigational. *MPIM*, ch. 3, §3.6.2.2. CMS and its contractors are also charged with inquiring into whether the item or service is supported by "published authoritative evidence derived from definitive randomized clinical trials or other definitive studies." *Id.* CMS's responsibility, unlike the FDA's, includes deciding what items and services it can and should pay for, how it should accomplish payment, and how much to pay. 42 C.F.R. §405.920. Therefore, the contractors' review of the Appellant's claim is focused on the health needs of the Medicare beneficiaries they serve, items and services that fall within a Medicare benefit category, and whether the services are "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member" under § 1862(a)(1)(A) of the Act. Lastly, whether a drug, medical service, or procedure is medically necessary is a clinical and coverage determination and does not rest on the assignment of a Q-code or any other specific billing code. The medical record documentation must substantiate the necessity of the services provided, regardless of the code used on the claim form.

Accordingly, to carry out its review in accordance with § 1862(a)(1)(A) of the Act, CMS contractors may issue LCDs that are determinations on whether a particular item or service is medically reasonable and necessary and covered by Medicare. Act § 1869(f)(2)(B). However, if there is no applicable LCD effective for the item, service, or dates of service at issue, then Medicare considers an item or service reasonable and necessary if it safe and effective, not experimental or investigational, and appropriate. *MPIM*, ch. 3, §3.6.2.2.

In the presenting matter, the Contractor has not issued an LCD effective for Impax for the product, service, or date of service at issue. While I acknowledge the Contractor currently has a future LCD DL39865 and Billing and Coding Article A59740 pertaining to skin substitutes, neither were effective for the product, service, or date of service at issue. Further, the Contractor's DL39865 lists Impax as a non-covered product and Billing and Coding Article A59740 list Impax as a Group 4 non-covered code. Likewise, CGS's LCD L36690

and companion Billing and Coding Article A56696 do not guarantee coverage of Impax for the treatment of non-pressure chronic ulcers of the ankles. To be clear, none of these policies are dispositive of the instant matter, and I have not considered them to be factors supporting an unfavorable outcome because they are not applicable to the issues before me. However, I do acknowledge that these LCDs and Articles do not otherwise overtly support the Appellant's position that Impax was safe, effective, non-experimental, non-investigational, and clinically appropriate for treatment of the beneficiary's wounds.

In determining whether an item is reasonable and necessary, Medicare Program Integrity Manual (*MPIM*), publication 100-08, chapter 3, section 3.6.2.2 provides that if no LCD exists for a particular item or service, Medicare contractors shall consider an item or service to be reasonable and necessary if the item or service meets the following criteria:

- It is safe and effective;
- It is not experimental or investigational; and
- It is appropriate, including the duration and frequency in terms of whether the service or item is:
  - Furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the beneficiary's condition or to improve the function of a malformed body member;
  - Furnished in a setting appropriate to the beneficiary's medical needs and condition;
  - Ordered and furnished by qualified personnel; and,
  - One that meets, but does not exceed, the beneficiary's medical need.

Additionally, the evidence must support the coverage determination, including "available evidence of general acceptance by the medical community, such as published original research in peer-reviewed medical journals, systematic reviews and meta-analyses, evidence-based consensus statements and clinical guidelines." *Id.* at §13.5.3.

Here, the Appellant argued that Impax was used as a protective wound covering to aid in the healing process and that use "aligned with the manufacturer's indications [and] objective intent" and as a "commonly accepted method in wound care." File 3, pp. 3-4; Hearing recording. However, the Appellant did not provide sufficient evidence to support this position. Specifically, the record lacks documentation from the manufacturer establishing the intended purpose, indications, and limitations for the use of Impax. The file contains a product label issued by Legacy Medical Consultants, a distributor of Impax, rather than by Surgenex, LLC, the manufacturer. *Id.* at 140-141. Absent the product label or comparable documentation issued by Surgenex, it cannot be determined whether the Appellant's use of Impax was consistent with the manufacturer's stated indications or objective intent. Moreover, due to the insufficiency of the record, it cannot be determined whether the use of Impax for this beneficiary was clinically appropriate as a protective wound covering for the beneficiary's wounds.

Further, the Appellant failed to establish that the use of Impax was safe, effective, non-experimental, and non-investigational, or that its use represented a clinically appropriate method generally accepted within the medical community. Here, the record lacks sufficient peer-reviewed, evidence-based literature to support that Impax is safe, effective, non-experimental, and non-investigational for treatment of the beneficiary's non-pressure chronic

ulcers of the ankles. The Appellant's own submission of manuscripts, abstracts, and articles do not offer any additional support. Rather, the Appellant's submission reinforces the position that only specific HCT/Ps and certain lower extremity wounds are eligible for Medicare coverage and payment. For example, the Appellant's literature supports the use of amniotic allograft membrane products for the treatment of venous leg ulcers and diabetic foot ulcers, and not non-pressure chronic ulcers of the ankles. None of the literature specifically confirms Impax is safe and effective for the treatment of non-pressure chronic ulcers of the ankles or is a product or method generally accepted within the medical community.[2,3,4,5] Moreover, the Appellant's literature indicates the industry funded most of the published studies, which raises significant concerns about possible publication bias or selective outcome reporting in that results unfavorable to industry may not be reported or published.[6,7,8] Without sufficient peer-reviewed, evidence-based literature supporting the use of Impax for the treatment of the beneficiary's wounds, the record falls short of establishing Impax is safe and effective, non-experimental, non-investigational, and clinically appropriate for the treatment of the beneficiary's non-pressure chronic ulcers of the ankles.

Accordingly, I find that the preponderance of the evidence does not support that Impax is safe and effective, non-experimental, non-investigational, and clinically appropriate for the treatment of the beneficiary's non-pressure chronic ulcers of the ankles. The Impax product (Q4262) furnished to the beneficiary for the date of service at issue was not reasonable and necessary, and therefore neither Impax nor the related surgical services are covered or payable by Medicare. Having determined that Medicare does not cover the Impax, I will consider whether the liability of the beneficiary or the Appellant may be waived pursuant to § 1879 of the Act.

**Liability**

Section 1879(a) of the Act provides for the limitation on liability for items or serviced denied Medicare as not medically "reasonable and necessary" under § 1862(a)(1)(A) of the Act, absent knowledge by a beneficiary or provider that the items or services would not be covered. Act, § 1879(a); 42 C.F.R. § 411.400(a). A beneficiary has "knowledge" of non-coverage when he or she has been given written notice of non-coverage by the provider. 42

[2] Iveta Schmiedova, Alena Dembickaja, Ludmila Kiselakova, Beata Nowakova & Petr Slama, *Using of Amniotic Membrane Derivatives for the Treatment of Chronic Wounds*, 11 Membranes 941 (2021).

[3] Karen Evans & Paul J. Kim, "Overview of Treatment of Chronic Wounds," in *UpToDate*, Section Editors Russell S. Berman & Eduardo Bruera; Deputy Editors Kathryn A. Collins & Sonali Shah (Lit. review current through Dec. 2022; topic last updated July 13, 2022).

[4] Thomas E. Serena et al., *A Multicenter, Randomized, Controlled, Clinical Trial Evaluating Dehydrated Human Amniotic Membrane in the Treatment of Venous Leg Ulcers*, 150 Plast. & Reconstr. Surg. 1128 (2022).

[5] Desman E, Bartow W & Anderson LH, *Human Skin Allograft for Patients With Diabetic Foot Ulcers, Venous Leg Ulcers, or Surgical/Traumatic Wounds: A Retrospective, Descriptive Study*, 61 Wound Management & Prevention (July 2015).

[6] *Id.* at 4.

[7] Thomas E. Serena et al., *A Randomized Controlled Clinical Trial of a Hypothermically Stored Amniotic Membrane for Use in Diabetic Foot Ulcers*, 9 J. Comp. Eff. Res. 23 (2019).

[8] John P. McQuilling et al., *A Prospective Clinical Trial Evaluating Changes in the Wound Microenvironment in Patients with Chronic Venous Leg Ulcers Treated with a Hypothermically Stored Amniotic Membrane*, 19 Int'l Wound J. 144 (2022).

C.F.R. § 411.404(a). A provider may have knowledge, in relevant part, based on their written notice of non-coverage to the beneficiary or their own experience, actual notice, or constructive notice. 42 C.F.R. § 411.406. CMS has provided further guidance on financial liability protections in its Medicare Claims Processing Manual (*MCPM*), publication 100-04, chapter 30.

There is no indication in the record that the Appellant provided sufficient written notice to the beneficiary that Medicare might not cover the products, procedures, or services at issue. Therefore, I find that the beneficiary did not know and could not reasonably have been expected to know that the products, procedures, and services at issue may not be covered by Medicare. Accordingly, the beneficiary is not liable for the cost of the non-covered items and services pursuant to § 1879(a) of the Act. Conversely, I find that the Appellant, as a provider participating in the Medicare program, at a minimum had constructive knowledge of the coverage criteria published in the regulations, CMS manuals, and guidance. Therefore, the Appellant knew or should have known that the products, procedures, and services would not be covered as billed. *MCPM*, ch. 30, § 40.1.

Accordingly, the Appellant is liable for the non-covered cost pursuant to § 1879(a) of the Act. The beneficiary's liability is limited, and they shall not be billed or charged for the non-covered services.

Section 1870 of the Act governs the recovery of overpayments based upon provider fault. Section 1870(b) of the Act allows for a waiver of recovery of an overpayment to a provider if it is without fault in incurring the overpayment. Section 1870(b) of the Act does not define the meaning of the term "without fault." However, a provider is without fault if it exercised reasonable care in billing and accepting Medicare payment. CMS, Medicare Financial Management Manual *(MFMM)*, pub. 100-06, ch. 3, § 90 (Effective January 2, 2004). A provider is considered not "without fault" if, it billed, or Medicare paid, for items the provider should have known were not covered. *MFMM*, ch. 3, § 90.1.H. The *MFMM* explains that the provider should have known about a policy or rule if the policy or rule is in the provider manual or in the regulations. *Id.*

Here, the Appellant is a Medicare participating supplier and had constructive notice of the widely published Medicare laws and regulations, CMS Rulings, and the applicable coverage guidelines for billing and filing claims for services furnished to Medicare beneficiaries. The Appellant submitted their claim for investigational products and failed to submit supporting documentation of its use for the treatment of the beneficiary's wounds as required by the regulations and CMS guidelines. Therefore, by failing to produce required documentation the Appellant knew or should have known that the items likely would not be paid for by Medicare. Thus, I find that the Appellant is not without fault for the overpayment under § 1870(b) of the Act. Accordingly, recovery of the overpayment is not waived.

## CONCLUSIONS OF LAW

The Appellant failed to establish that the use of Impax was safe, effective, non-experimental, and non-investigational, or that its use represented a clinically appropriate method generally accepted within the medical community, and therefore the product and services furnished were not reasonable and necessary for treatment of the beneficiary's non-pressure chronic ulcers of the ankles. The Appellant remains liable for the costs of the non-covered products

and services and repayment of the overpayment. The beneficiary's liability is limited, and the Appellant shall not bill the beneficiary for the cost of the products or services provided.

## ORDER

For the reasons discussed above, this decision is **UNFAVORABLE**. The Appellant remains liable for the costs of the non-covered products and services and repayment of the overpayment. The beneficiary's liability is limited, and they may not be billed for the costs of the products or services provided. I direct the Medicare administrative contractor to process the claim in accordance with this decision.

**SO ORDERED**

M. C. McClelland

Martin McClelland
Administrative Law Judge

DEPARTMENT OF HEALTH AND HUMAN SERVICES (DHHS) / DEPARTMENTAL APPEALS BOARD Form DAB-101 (12/19)

**REQUEST FOR REVIEW OF ADMINISTRATIVE LAW JUDGE (ALJ) MEDICARE DECISION / DISMISSAL**

| 1. APPELLANT (the party requesting review) | 2. ALJ APPEAL NUMBER (on the decision or dismissal) |
|---|---|
| 3. BENEFICIARY* | 4. MEDICARE NUMBER (Health Insurance Claim Number (HICN) or Medicare Beneficiary Identifier (MBI))* |

*If the request involves multiple claims or multiple beneficiaries, attach a list of beneficiaries, Medicare numbers, and any other information to identify all claims being appealed.

| 5. PROVIDER, PRACTITIONER, OR SUPPLIER | 6. SPECIFIC ITEM(S) OR SERVICE(S) |
|---|---|

7. Medicare claim type: ☐ Part A ☐ Part B ☐ Part C - Medicare Advantage
☐ Part D - Medicare Prescription Drug Plan ☐ Entitlement/enrollment for Part A or Part B

8. Does this request involve authorization for an item or service that has not yet been furnished?
☐ Yes If Yes, skip to Block 9.
☐ No If No, Specific Dates of Service:

9. If the request involves authorization for a prescription drug under Medicare Part D, would application of the standard appellate timeframe seriously jeopardize the beneficiary's life, health, or ability to regain maximum function (as documented by a physician) such that expedited review is appropriate? ☐ Yes ☐ No

I request that the Medicare Appeals Council review the ALJ's ☐ decision or ☐ dismissal order [check one] dated____________________. I disagree with the ALJ's action because (specify the parts of the ALJ's decision or dismissal you disagree with and why you think the ALJ was wrong):

(Attach additional sheets if you need more space)

**PLEASE ATTACH A COPY OF THE ALJ DECISION OR DISMISSAL ORDER YOU ARE APPEALING.**

| DATE | | | DATE | | |
|---|---|---|---|---|---|
| APPELLANT'S NAME (the party requesting review) | | | REPRESENTATIVE'S NAME (include signed appointment of representative if not already submitted) | | |
| ADDRESS | | | ADDRESS | | |
| CITY, STATE, ZIP CODE | | | CITY, STATE, ZIP CODE | | |
| TELEPHONE NUMBER | FAX NUMBER | E-MAIL | TELEPHONE NUMBER | FAX NUMBER | E-MAIL |

(SEE FURTHER INSTRUCTIONS ON PAGE 2)

Form DAB-101 (12/19)

If you have additional evidence, submit it with this request for review. If you need more time, you must request an extension of time in writing now, explaining why you are unable to submit the evidence or legal argument now.

*If you are a provider, supplier, or a beneficiary represented by a provider or supplier, and your case was reconsidered by a Qualified Independent Contractor (QIC), the Medicare Appeals Council will not consider new evidence related to issues the QIC has already considered unless you show that you have a good reason for submitting it for the first time to the Medicare Appeals Council.*

**IMPORTANT: Include the HICN or MBI and ALJ Appeal Number on any letter or other material you submit.**

This request must be received within 60 calendar days after you receive the ALJ's decision or dismissal, unless we extend the time limit for good cause. We assume you received the decision or dismissal 5 calendar days after it was issued, unless you show you received it later. If this request will not be received within 65 calendar days from the date on the decision or dismissal order, please explain why on a separate sheet.

---

You must file your request for review in writing with the Medicare Appeals Council at:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

You may send the request for review by U.S. Mail, a common carrier such as FedEx, or by fax to (202) 565-0227. If you send a fax, please do not also mail a copy. ***You must send a copy of your appeal to the other parties and indicate that all parties, to include all beneficiaries, have been copied on the request for review. For claims involving multiple beneficiaries, you may submit a copy of the cover letters issued or a spreadsheet of the beneficiaries and addresses who received a copy of the request for review.***

If you have any questions about your request for review or wish to request expedited review of a claim involving authorization of your prescription drug under Medicare Part D, you may call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100. You may also visit our web site at www.hhs.gov/dab for additional information on how to file your request for review.

---

## PRIVACY ACT STATEMENT

The collection of information on this form is authorized by the Social Security Act (section 205(a) of title II, section 702 of title VII, section 1155 of Title XI, and sections 1852(g)(5), 1869(b)(1), 1871, 1872, and 1876(c)(5)(B) of title XVIII, as appropriate). The information provided will be used to further document your claim. Information requested on this form is voluntary, but failure to provide all or any part of the requested information may affect the determination of your claim. Information you furnish on this form may be disclosed by the Department of Health and Human Services or the Social Security Administration to another person or governmental agency only with respect to programs under the Social Security Act and to comply with Federal laws requiring the disclosure of information or the exchange of information between the Department of Health and Human Services, the Social Security Administration, or other agencies.

Department of Health and Human Services
OFFICE OF MEDICARE HEARINGS AND APPEALS
Cleveland, OH

| | |
|---|---|
| Appeal of: BRIAN G. LODER DPM PLC | OMHA Appeal No.: 3-15259931569 |
| Beneficiary: [redacted] | Medicare Part: B |
| Medicare No.: [redacted] | Before: Martin McClelland, Administrative Law Judge |

Index of the Administrative Record and Exhibit List

| Exhibit Record | Administrative File Reference: File Name | Page Range |
|---|---|---|
| Medical & Related: Medical Records | File 6 | 1 : 4182 |
| Position Statements: UPIC Position Paper | File 13 | 1 : 5 |
| Procedural - CMS Levels: Reconsideration | File 2 | 1 : 18 |
| Procedural - CMS Levels: Request for Reconsideration | File 3 | 1 : 219 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 4 | 1 : 3 |
| Procedural - CMS Levels: Request for Redetermination | File 5 | 1 : 44 |
| Procedural - OMHA Level: Request for ALJ Hearing | File 1 | 1 : 18 |
| Procedural - OMHA Level: Request to Reschedule | File 10 | 1 : 3 |
| Procedural - OMHA Level: Amended Notice of Hearing | File 11 | 1 : 9 |
| Procedural - OMHA Level: Response to Amended Notice of Hearing | File 12 | 1 : 3 |
| Procedural - OMHA Level: Amended Notice of Hearing (2) | File 14 | 1 : 9 |
| Procedural - OMHA Level: Response to Amended Notice of Hearing (2) | File 15 | 1 : 4 |
| Procedural - OMHA Level: Notice of Hearing | File 8 | 1 : 14 |
| Procedural - OMHA Level: CoventBridge NOI | File 9 | 1 : 3 |
| Proceeding (Audios): Hearing audio | File 16 | 1 : 1 |

Department of Health and Human Services
Office of the Secretary

**OFFICE OF MEDICARE HEARINGS AND APPEALS**

Cleveland Field Office
1001 Lakeside Ave
Suite 700
Cleveland, OH 44114
216-462-4100
(216) 462-4145 (Direct)
216-615-9029 (Fax)
866-236-5089 (Toll Free)

November 19, 2025

[redacted]

## NOTICE OF DECISION

Appellant: BRIAN G. LODER DPM PLC
OMHA Appeal Number: 3-15259931577

Enclosed is the decision for the above case. This decision is based on the administrative record, including any evidence or testimony presented at the hearing, if one was held. The decision is not precedential, does not release the appellant from civil or criminal liability, and may be reopened at any time if it was procured by fraud or similar fault. In addition, the decision may be reopened within 180 calendar days from the date of the decision for good cause. Good cause exists when there is new and material evidence that was not available or known at the time of the decision and may result in a different conclusion, or when the evidence that was considered clearly shows on its face that an obvious error was made at the time of the decision.

### What if I disagree with the decision?

If you disagree with the decision, you may file an appeal with the Medicare Appeals Council. Other parties may also appeal the decision. In addition, the Medicare Appeals Council may decide to review the decision on its own motion. If no party appeals the decision and the Medicare Appeals Council does not review the decision, the decision is binding on all parties and you and the other parties will not have the right to ask a federal court to review the decision.

If you are not already represented, you may appoint an attorney or other person to represent you.

**How much time do I have to file an appeal?**

The Medicare Appeals Council must receive your written appeal **within 60 calendar days** of the date that you receive this notice. The Medicare Appeals Council assumes you received this notice 5 calendar days after the date of the notice unless you show that you did not receive it within the 5-day period.

The Medicare Appeals Council will dismiss a late request for review unless you show that you had a good reason for not filing it on time.

**How do I file an appeal?**

To appeal, you must ask the Medicare Appeals Council to review the decision. Your appeal must be in writing, except that a request for expedited review of a Part D decision may be made orally as described below. Your appeal must identify the parts of the decision that you disagree with, and explain why you disagree.

You may submit a written request for review to the Medicare Appeals Council using one of three available methods: mail, fax, or electronic filing (E-File). **Please do not submit your request for review using more than one method**. Regardless of how you file your appeal, **you must always send a copy of your written request for review to the other parties who received a copy of the decision.**

If you are filing a written request for review, you may use the enclosed *Request for Review* (Form DAB-101), or you may write a letter containing the following:

- The beneficiary's/enrollee's name (and telephone number for Part D appeals);
- The beneficiary's/enrollee's Medicare number (Health Insurance Claim Number or Medicare Beneficiary Identifier);
- The item(s), service(s), or specific Part D drug(s) in dispute;
- The specific date(s) the item(s) or service(s) were provided, if applicable;
- For Part D appeals, the plan name;
- For Part D appeals, the OMHA Appeal Number on the adjudicator's decision;
- For Part D appeals requesting expedited review, a statement that you are requesting expedited review;
- The date of the adjudicator's decision (not required for Part D appeals); and
- Your name and signature, and, if applicable, the name and signature of your representative.

**Filing by mail:**

Mail your appeal and a copy of the enclosed decision to:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

**Filing by fax:**

Fax your appeal and a copy of the enclosed decision to **(202) 565-0227.**

**Filing by computer:**

Using your web browser, visit the Medicare Operations Division Electronic Filing System (MOD E-File) website at **https://dab.efile.hhs.gov/mod**.

To file a new appeal using MOD E-File, you will need to register by:

1. Clicking **Register** on the MOD E-File home page;
2. Entering the information requested on the "Register New Account" form; and
3. Clicking **Register Account** at the bottom of the form.

You will use the email address and password you provided during registration to access MOD E-File at **https://dab.efile.hhs.gov/mod/users/new** You will be able to use MOD E-File to file and access the specific materials for appeals to which you are a party or a party's representative. You may check the status of any appeal on the website homepage without registering.

Once registered, you may file your appeal by:

1. Logging into MOD E-File;
2. Clicking the **File New Appeal** menu button on the top right of the screen;
3. Selecting the type of appeal you are filing (Request for Review or Request for Escalation); and
4. Entering the requested Appeal Information and uploading the requested Appeal Documents on the "File New Appeal - Medicare Operations Division" form. You are required to provide information and documents marked with an asterisk.

At a minimum, the Medicare Appeals Council requires an appellant to file a signed Request for Review and a copy of the enclosed decision. All documents should be submitted in Portable Document Format (PDF) whenever possible. Any document, including a Request for Review, will be deemed to have been filed on a given day, if it is uploaded to MOD E-File on or before 11:59 p.m. EST of that day.

Currently, the documents that may be filed electronically are the:

1. Request for Review;
2. Appointment of Representative form (OMB Form 0938-0950);
3. Copy of Administrative Law Judge or attorney adjudicator decision;
4. Memorandum or brief or other written statement in support of your appeal; and
5. Request to Withdraw your appeal

**No other documents aside from the five (5) listed categories above may be submitted through MOD E-File.**

**Filing by oral request (for expedited review only):**

Oral requests for expedited review of a Part D decision may be made by telephone to **(866) 365-8204.** You must provide the information listed in the bullet points above and a statement that you are requesting an expedited review within 60 calendar days after receipt of this notice of decision. The Medicare Appeals Council will document the oral request in writing and maintain the documentation in the case file.

Please note that your request for review will only be expedited (1) the appeal involves an issue specified in 42 C.F.R. § 423.566(b), but does not include solely a request for payment of a Part D drug that has already been furnished, and (2) the prescribing physician (or other prescriber) indicates, or the Medicare Appeals Council determines, that the standard time frame may seriously jeopardize your life, health, or ability to regain maximum function.

**How will the Medicare Appeals Council respond to my appeal?**

The Medicare Appeals Council will limit its review to the issues raised in the appeal, unless the appeal is filed by an unrepresented beneficiary/enrollee. It may change the parts of the decision that you agree with. It may adopt, modify, or reverse the decision, in whole or in part, or it may send the case back to OMHA for further action. It may also dismiss your appeal.

**Questions?**

You may call or write our office. A toll-free phone number and mailing address are at the top of this notice.

Additional information about filing an appeal with the Medicare Appeals Council is available at http://www.hhs.gov/dab/. You can also call the Medicare Appeals Council's staff in the Medicare

Operations Division of the Departmental Appeals Board at (202) 565-0100 or (866) 365-8204 (toll free), if you have questions about filing an appeal.

cc:

[redacted]
QIC - C2C B North
301 W Bay Street
Ste. 1110
Jacksonville, FL 32202

Enclosures:
OMHA-152, Decision
DAB-101, Request for Review
OMHA-156, Exhibit List

Department of Health and Human Services
OFFICE OF MEDICARE HEARINGS AND APPEALS
Cleveland, OH

| | | | |
|---|---|---|---|
| Appeal of: | BRIAN G. LODER DPM PLC | OMHA Appeal No.: | 3-15259931577 |
| Beneficiary: | [redacted] | Medicare Part: | B |
| Medicare No.: | | Before: | Martin McClelland<br>Administrative Law Judge |

## DECISION

After carefully considering the evidence and arguments presented in the record and at hearing, I enter an **UNFAVORABLE** decision. The record does not support that Dual Layer Impax Membrane is safe, effective, non-experimental, and non-investigational for the treatment of the beneficiary's non-pressure chronic ulcer wounds, and therefore the products and services provided were not reasonable and necessary. The Appellant is not entitled to Medicare coverage or payment. The Appellant remains liable for the costs of the non-covered products and services and repayment of the overpayment. The beneficiary's liability is limited, and the Appellant may not bill the beneficiary for the cost of the non-covered products or services.

## PROCEDURAL HISTORY

The Appellant submitted a claim to the Medicare Administrative Contractor Wisconsin Physicians Services (WPS)(Contractor) for reimbursement of 32 units of Dual Layer Impax Membrane (Impax) billed under HCPCS code Q4262 and integumentary/musculoskeletal surgery services billed under HCPCS codes 15271 and 15272. The date of service at issue is May 23, 2023. Initially, the Contractor allowed payment on the claim. Subsequently, the Medicare Unified Program Integrity Contractor Covent Bridge Group (UPIC) determined that an overpayment had been made. File 5, pp. 19-42. On redetermination, the Contractor determined that the Appellant's document submission did not support the use of Impax to treat the beneficiary's wounds as medically reasonable and necessary. *Id.* at 3-6. The Appellant then requested reconsideration by the Qualified Independent Contractor C2C Innovative Solutions, Inc. (QIC). File 3, p. 1. On reconsideration, the QIC also determined that the use of Impax for the treatment of the beneficiary's wounds was experimental and investigational, and therefore not medically reasonable and necessary. Therefore, the QIC determined that no payment could be allowed for the services and that the overpayment was valid. File 2, pp. 3-5.

The Office of Medicare Hearings and Appeals (OMHA) received the Appellant's request for an Administrative Law Judge (ALJ) hearing, and all jurisdictional requirements were

satisfied. File 1, p. 2. The Appellant identified William O'Malley as its appointed representative. *Id.* at 18. The OMHA issued a Notice of Hearing setting the date and time for hearing. Files 8, 11, and 12.

On October 30, 2025, the telephone hearing was conducted as scheduled from the Cleveland Field Office. The Appellant was represented by William O'Malley who provided testimony under oath. Documents previously marked and identified as Files 1-13 were admitted into the record without objection. The administrative record is now closed.

## ISSUES

1. **Whether the record supports Medicare coverage and payment for the products and services furnished to the beneficiary for the date of service at issue.**

2. **Whether § 1879 of the Social Security Act (Act) provides relief to limit a party's liability.**

3. **Whether § 1870 of the Act provides a waiver of liability for the overpayment.**

## APPLICABLE LAW AND POLICY

### Medical Necessity

Section 1862(a)(1)(A) of the Act bars coverage of items and services that are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member. Section 1833(e) of the Act provides that no claim for Medicare coverage may be paid unless "there has been furnished such information as may be necessary to determine the amounts due such provider."

ALJs are bound by statutes, regulations, National Coverage Determinations (NCDs) and CMS Rulings. 42 C.F.R. § 405.1060(a)(4), 405. 1063. ALJs are not bound by program guidance such as Local Coverage Determinations (LCDs), program memoranda or manual instructions. However, an ALJ must give such policies substantial deference if applicable in a particular case. 42 C.F.R. § 405.1062(a). If any ALJ declines to follow a policy in a particular case, the rational for not following that policy must be explained. 42 C.F.R. § 405.1062(b).

There are no NCDs or LCDs applicable to the present matter. However, the following are relevant to the instant matter:

WPS, *Skin Substitute Grafts/Cellular and Tissue-Based Products for the Treatment of Diabetic Foot Ulcers and Venous Leg Ulcers*, DL 39865 (Proposed LCD).

WPS, *Billing and Coding: Skin Substitutes Grafts/Cellular Tissue-Based Products for the Treatment of Diabetic Foot Ulcers and Venous Leg Ulcers*, A59740 (Future Effective).

CMS, Medicare Program Integrity Manual (*MPIM*), publication 100-08, chapter 3, section 3.6.2.2, sets forth the coverage criteria for items and services that are medically reasonable and necessary when there is no effective NCD or LCD.

**Liability**

Section 1879 of the Act provides that when Medicare excludes coverage pursuant to § 1862(a) (1) of the Act, payment may nevertheless be made for items or services if neither the beneficiary nor the provider or supplier knew, or could not reasonably be expected to have known, that the items or services would not be covered or payable by Medicare. Section 1870 of the Act governs the recovery of overpayments based upon provider fault. Section 1870(b) of the Act allows for a waiver of recovery of an overpayment to a provider if it is without fault in incurring the overpayment.

## FINDINGS OF FACT AND ANALYSIS

This appeal concerns the use of Impax to treat the beneficiary's non-pressure chronic ulcer wounds of the ankles. Impax is a human allograft tissue that is regulated as a human cells, tissues, and cellular and tissue-based product (HCT/P) as defined by 21 C.F.R. Part 1271. Throughout this appeal, the Appellant has maintained that the use of Impax was medically reasonable, necessary, and appropriate as a protective covering to aid in the healing of the beneficiary's wounds. File 3, pp. 3, 140. On May 23, 2023, the beneficiary presented to the Appellant's clinic for a wound assessment and care. The beneficiary was diagnosed with non-pressure chronic ulcers of the right and left ankle with fat layers exposed. Prior wound care treatments included bilateral Unna boots, compression therapy, elevation, narcotic pain relievers, and patient education. The plan of treatment called for debridement and application of Impax to the left and right ankle wounds. *Id.* at 14-18.

The Appellant now seeks Medicare reimbursement for the 32 units of Impax applied to the beneficiary's ankle wounds on the date of service at issue. At the most recent level of the appeals process, the QIC denied payment on the Appellant's claim because it determined that the use of Impax for non-pressure chronic ulcers of the ankles was experimental and investigational as denoted by the Q-code status nomenclature, and therefore no payment could be made under Medicare. File 2, pp. 3-5.

Throughout the appeals process, the Appellant has maintained that the use of Impax was medically reasonable, necessary, and appropriate as a protective covering to aid in the healing of the beneficiary's wounds. File 3, pp. 3, 140. The Appellant argues that the QIC's denial was inappropriate because Impax's Q-code status does not preclude individual consideration of medical necessity. Q-codes are administrative billing tools, not indicators of medical necessity. If CMS intended for Q-coded products like Impax to be automatically considered investigational or non-covered, it would have issued a policy to that effect, and no such policy exists. File 1, pp. 4-5. The Appellant also argues that determinations related to the safety and effectiveness of medical products like Impax fall exclusively within the jurisdiction of the U.S. Food and Drug Administration (FDA). According to the FDA, Impax is exempt from FDA premarket approval requirements and thorough formal regulatory reviews by the FDA satisfies the federal requirements for establishing a product's safety profile. More specifically, the Appellant argues that Impax's safety and effectiveness are supported by the FDA's classification of Impax as an HCT/P under § 361 of the Public Health Services Act.[1] File 1, pp. 4-9; Hearing Recording, October 30, 2025.

[1] 21 C.F.R. §1271.10(a) sets out the criteria that form the foundation of FDA's tiered, risk-based approach to regulating HCT/Ps. HCT/Ps that meet all of the criteria in 21 C.F.R. § 1271.10(a) are subject only to regulation

The Appellant further argues that Impax cannot be considered experimental or investigational when CMS contractors have issued LCDs that provide coverage guidance for skin substitutes. As referenced in this matter, CGS's LCD L36690 *Wound Application of Cellular and/or Tissue Based Products (CTPs), Lower Extremities* and Palmetto's future LCD L39806 *Skin Substitute Grafts/ Cellular and Tissue-Based Products for the Treatment of Diabetic Foot Ulcers and Venous Leg Ulcers* are evidence that human tissue allografts used to treat Medicare beneficiaries are recognized as safe, effective, non-experimental, and non-investigational products, and therefore skin substitutes cannot be experimental or investigational when they are currently being covered under existing and future LCDs. File 3, pp. 2-6; Hearing recording. Lastly, the Appellant asserts that Impax's safety and effectiveness is supported by peer-reviewed, evidence-based literature for chronic ulcer treatment. The Appellant submitted articles of studies for patients diagnosed with diabetic foot ulcers or other pressure injuries and wounds who received skin substitutes to support Impax's safety and effectiveness. File 3, pp. 150-222.

To summarize, contrary to the CMS contractors' belief, it is the Appellant's position that Impax's safety and effectiveness has already been proven and that Impax was medically necessary and clinically appropriate for the management and treatment of the beneficiary's wounds. Therefore, according to the Appellant, they are entitled to Medicare coverage and payment. File 1, pp. 4-8; Hearing recording.

**Medical Necessity**

After full consideration of both positions, I find the preponderance of the evidence does not support that Impax was medically reasonable and necessary for the treatment of the beneficiary's non-pressure chronic ulcers of the right and left ankles. I further find the record lacks sufficient support that Impax is safe, effective, non-experimental, and non-investigational for the treatment of the beneficiary's non-pressure chronic ulcers of the right and left ankles.

Here, the Appellant's reliance on Impax's categorization as an FDA regulated § 361 HCT/P product does not prove Impax's safety and effectiveness. Despite the Appellant's alleged homologous use of the product, the FDA's categorization of Impax as an HCT/P product is only one factor in making a Medicare coverage and payment determination. 42 C.F.R. § 405.201(a)(1). Generally, a product's categorization as a § 361 HCT/P product with the FDA signifies that the product has not had to undergo rigorous clinical trials in both animal and human populations before being marketed to the public. As a result, the FDA permits manufacturers to identify products that they do not believe have to be regulated under § 351, and instead seek to have the product regulated under § 361. The mere acceptance of a registration by the FDA yields no support that Impax is safe and effective, not experimental or investigational for treatment of the beneficiary's wounds. Therefore, without more evidence from the Appellant to support Impax's safety, effectiveness, and non-investigational nature for treating non-pressure chronic ulcers of the ankles, the Appellant has not shown that Impax is reasonable or medically necessary for treatment of the beneficiary's wounds.

under § 361 of the Public Health Service Act (PHS Act) and the regulations in 21 C.F.R. part 1271. An HCT/P that falls into this category is sometimes referred to as a "361 HCT/P" and no premarket authorization is required.

Moreover, the fact that that a drug, medical service, or procedure has obtained approval, exception, or exemption under FDA regulations does not mean that Medicare will guarantee coverage or payment for that drug, service, or procedure without conducting its own review for medical necessity. CMS and their contractors, in analyzing whether a particular item or service is medically reasonable and necessary, will make an independent inquiry into whether the item or service is safe and effective and not experimental or investigational. *MPIM*, ch. 3, §3.6.2.2. CMS and its contractors are also charged with inquiring into whether the item or service is supported by "published authoritative evidence derived from definitive randomized clinical trials or other definitive studies." *Id.* CMS's responsibility, unlike the FDA's, includes deciding what items and services it can and should pay for, how it should accomplish payment, and how much to pay. 42 C.F.R. §405.920. Therefore, the contractors' review of the Appellant's claim is focused on the health needs of the Medicare beneficiaries they serve, items and services that fall within a Medicare benefit category, and whether the services are "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member" under § 1862(a)(1)(A) of the Act. Lastly, whether a drug, medical service, or procedure is medically necessary is a clinical and coverage determination and does not rest on the assignment of a Q-code or any other specific billing code. The medical record documentation must substantiate the necessity of the services provided, regardless of the code used on the claim form.

Accordingly, to carry out its review in accordance with § 1862(a)(1)(A) of the Act, CMS contractors may issue LCDs that are determinations on whether a particular item or service is medically reasonable and necessary and covered by Medicare. Act § 1869(f)(2)(B). However, if there is no applicable LCD effective for the item, service, or dates of service at issue, then Medicare considers an item or service reasonable and necessary if it safe and effective, not experimental or investigational, and appropriate. *MPIM*, ch. 3, §3.6.2.2.

In the presenting matter, the Contractor has not issued an LCD effective for Impax for the product, service, or date of service at issue. While I acknowledge the Contractor currently has a future LCD DL39865 and Billing and Coding Article A59740 pertaining to skin substitutes, neither were effective for the product, service, or date of service at issue. Further, the Contractor's DL39865 lists Impax as a non-covered product and Billing and Coding Article A59740 list Impax as a Group 4 non-covered code. Likewise, CGS's LCD L36690 and companion Billing and Coding Article A56696 do not guarantee coverage of Impax for the treatment of non-pressure chronic ulcers of the ankles. To be clear, none of these policies are dispositive of the instant matter, and I have not considered them to be factors supporting an unfavorable outcome because they are not applicable to the issues before me. However, I do acknowledge that these LCDs and Articles do not otherwise overtly support the Appellant's position that Impax was safe, effective, non-experimental, non-investigational, and clinically appropriate for treatment of the beneficiary's wounds.

Thus, in determining whether an item is reasonable and necessary, Medicare Program Integrity Manual (*MPIM*), publication 100-08, chapter 3, section 3.6.2.2 provides that if no LCD exists for a particular item or service, Medicare contractors shall consider an item or service to be reasonable and necessary if the item or service meets the following criteria:

- It is safe and effective;
- It is not experimental or investigational; and

- It is appropriate, including the duration and frequency in terms of whether the service or item is:
  - Furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the beneficiary's condition or to improve the function of a malformed body member;
  - Furnished in a setting appropriate to the beneficiary's medical needs and condition;
  - Ordered and furnished by qualified personnel; and,
  - One that meets, but does not exceed, the beneficiary's medical need.

Additionally, the evidence must support the coverage determination, including "available evidence of general acceptance by the medical community, such as published original research in peer-reviewed medical journals, systematic reviews and meta-analyses, evidence-based consensus statements and clinical guidelines." *Id.* at §13.5.3.

Here, the Appellant argued that Impax was used as a protective wound covering to aid in the healing process and that use "aligned with the manufacturer's indications [and] objective intent" and as a "commonly accepted method in wound care." File 3, pp. 3-4; Hearing recording. However, the Appellant did not provide sufficient evidence to support this position. Specifically, the record lacks documentation from the manufacturer establishing the intended purpose, indications, and limitations for the use of Impax. The file contains a product label issued by Legacy Medical Consultants, a distributor of Impax, rather than by Surgenex, LLC, the manufacturer. *Id.* at 140-141. Absent the product label or comparable documentation issued by Surgenex, it cannot be determined whether the Appellant's use of Impax was consistent with the manufacturer's stated indications or objective intent. Moreover, due to the insufficiency of the record, it cannot be determined whether the use of Impax for this beneficiary was clinically appropriate as a protective wound covering for the beneficiary's wounds.

Further, the Appellant failed to establish that the use of Impax was safe, effective, non-experimental, and non-investigational, or that its use represented a clinically appropriate method generally accepted within the medical community. Here, the record lacks sufficient peer-reviewed, evidence-based literature to support that Impax is safe, effective, non-experimental, and non-investigational for treatment of the beneficiary's non-pressure chronic ulcers of the ankles. The Appellant's own submission of manuscripts, abstracts, and articles do not offer any additional support. Rather, the Appellant's submission reinforces the position that only specific HCT/Ps and certain lower extremity wounds are eligible for Medicare coverage and payment. For example, the Appellant's literature supports the use of amniotic allograft membrane products for the treatment of venous leg ulcers and diabetic foot ulcers, and not non-pressure chronic ulcers of the ankles. None of the literature specifically confirms Impax is safe and effective for the treatment of non-pressure chronic ulcers of the ankles or is a product or method generally accepted within the medical community.[2,3,4,5] Moreover, the Appellant's literature indicates the industry funded most of the published studies, which raises significant concerns about possible publication bias or

---

[2] Iveta Schmiedova, Alena Dembickaja, Ludmila Kiselakova, Beata Nowakova & Petr Slama, *Using of Amniotic Membrane Derivatives for the Treatment of Chronic Wounds*, 11 *Membranes* 941 (2021).

[3] Karen Evans & Paul J. Kim, "Overview of Treatment of Chronic Wounds," in *UpToDate*, Section Editors Russell S. Berman & Eduardo Bruera; Deputy Editors Kathryn A. Collins & Sonali Shah (Lit. review current through Dec. 2022; topic last updated July 13, 2022).

selective outcome reporting in that results unfavorable to industry may not be reported or published.[6,7,8] Without sufficient peer-reviewed, evidence-based literature supporting the use of Impax for the treatment of the beneficiary's wounds, the record falls short of establishing Impax is safe and effective, non-experimental, non-investigational, and clinically appropriate for the treatment of the beneficiary's non-pressure chronic ulcers of the ankles.

Accordingly, I find that the preponderance of the evidence does not support that Impax is safe and effective, non-experimental, non-investigational, and clinically appropriate for the treatment of the beneficiary's non-pressure chronic ulcers of the ankles. The Impax product (Q4262) furnished to the beneficiary for the date of service at issue was not reasonable and necessary, and therefore neither Impax nor the related surgical services are covered or payable by Medicare. Having determined that Medicare does not cover the Impax, I will consider whether the liability of the beneficiary or the Appellant may be waived pursuant to § 1879 of the Act.

**Liability**

Section 1879(a) of the Act provides for the limitation on liability for items or serviced denied Medicare as not medically "reasonable and necessary" under § 1862(a)(1)(A) of the Act, absent knowledge by a beneficiary or provider that the items or services would not be covered. Act, § 1879(a); 42 C.F.R. § 411.400(a). A beneficiary has "knowledge" of non-coverage when he or she has been given written notice of non-coverage by the provider. 42 C.F.R. § 411.404(a). A provider may have knowledge, in relevant part, based on their written notice of non-coverage to the beneficiary or their own experience, actual notice, or constructive notice. 42 C.F.R. § 411.406. CMS has provided further guidance on financial liability protections in its Medicare Claims Processing Manual (*MCPM*), publication 100-04, chapter 30.

There is no indication in the record that the Appellant provided sufficient written notice to the beneficiary that Medicare might not cover the products, procedures, or services at issue. Therefore, I find that the beneficiary did not know and could not reasonably have been expected to know that the products, procedures, and services at issue may not be covered by Medicare. Accordingly, the beneficiary is not liable for the cost of the non-covered items and services pursuant to § 1879(a) of the Act. Conversely, I find that the Appellant, as a provider participating in the Medicare program, at a minimum had constructive knowledge of the coverage criteria published in the regulations, CMS manuals, and guidance. Therefore, the Appellant knew or should have known that the products, procedures, and services would not be covered as billed. *MCPM*, ch. 30, § 40.1.

---

[4] Thomas E. Serena et al., *A Multicenter, Randomized, Controlled, Clinical Trial Evaluating Dehydrated Human Amniotic Membrane in the Treatment of Venous Leg Ulcers*, 150 Plast. & Reconstr. Surg. 1128 (2022).

[5] Desman E, Bartow W & Anderson LH. *Human Skin Allograft for Patients With Diabetic Foot Ulcers, Venous Leg Ulcers, or Surgical/Traumatic Wounds: A Retrospective, Descriptive Study*. 61 Wound Management & Prevention (July 2015).

[6] *Id.* at 4.

[7] Thomas E. Serena et al., *A Randomized Controlled Clinical Trial of a Hypothermically Stored Amniotic Membrane for Use in Diabetic Foot Ulcers*, 9 J. Comp. Eff. Res. 23 (2019).

[8] John P. McQuilling et al., *A Prospective Clinical Trial Evaluating Changes in the Wound Microenvironment in Patients with Chronic Venous Leg Ulcers Treated with a Hypothermically Stored Amniotic Membrane*, 19 Int'l Wound J. 144 (2022).

Accordingly, the Appellant is liable for the non-covered cost pursuant to § 1879(a) of the Act. The beneficiary's liability is limited, and they shall not be billed or charged for the non-covered services.

Section 1870 of the Act governs the recovery of overpayments based upon provider fault. Section 1870(b) of the Act allows for a waiver of recovery of an overpayment to a provider if it is without fault in incurring the overpayment. Section 1870(b) of the Act does not define the meaning of the term "without fault." However, a provider is without fault if it exercised reasonable care in billing and accepting Medicare payment. CMS, Medicare Financial Management Manual *(MFMM)*, pub. 100-06, ch. 3, § 90 (Effective January 2, 2004). A provider is considered not "without fault" if, it billed, or Medicare paid, for items the provider should have known were not covered. *MFMM*, ch. 3, § 90.1.H. The *MFMM* explains that the provider should have known about a policy or rule if the policy or rule is in the provider manual or in the regulations. *Id.*

Here, the Appellant is a Medicare participating supplier and had constructive notice of the widely published Medicare laws and regulations, CMS Rulings, and the applicable coverage guidelines for billing and filing claims for services furnished to Medicare beneficiaries. The Appellant submitted their claim for investigational products and failed to submit supporting documentation of its use for the treatment of the beneficiary's wounds as required by the regulations and CMS guidelines. Therefore, by failing to produce the required documentation the Appellant knew or should have known that the items likely would not be paid for by Medicare. Thus, I find that the Appellant is not without fault for the overpayment under § 1870(b) of the Act. Accordingly, recovery of the overpayment is not waived.

## CONCLUSIONS OF LAW

The Appellant failed to establish that the use of Impax was safe, effective, non-experimental, and non-investigational, or that its use represented a clinically appropriate method generally accepted within the medical community, and therefore the product and services furnished were not reasonable and necessary for treatment of the beneficiary's non-pressure chronic ulcers of the ankles. The Appellant remains liable for the costs of the non-covered products and services and repayment of the overpayment. The beneficiary's liability is limited, and the Appellant shall not bill the beneficiary for the cost of the non-covered products or services provided.

## ORDER

For the reasons discussed above, this decision is **UNFAVORABLE**. The Appellant remains liable for the costs of the non-covered products and services and repayment of the overpayment. The beneficiary's liability is limited, and they may not be billed for the costs of the products or services provided. I direct the Medicare administrative contractor to process the claim in accordance with this decision.

**SO ORDERED**

Martin McClelland
Administrative Law Judge

If you have additional evidence, submit it with this request for review. If you need more time, you must request an extension of time in writing now, explaining why you are unable to submit the evidence or legal argument now.

*If you are a provider, supplier, or a beneficiary represented by a provider or supplier, and your case was reconsidered by a Qualified Independent Contractor (QIC), the Medicare Appeals Council will not consider new evidence related to issues the QIC has already considered unless you show that you have a good reason for submitting it for the first time to the Medicare Appeals Council.*

**IMPORTANT: Include the HICN or MBI and ALJ Appeal Number on any letter or other material you submit.**

This request must be received within 60 calendar days after you receive the ALJ's decision or dismissal, unless we extend the time limit for good cause. We assume you received the decision or dismissal 5 calendar days after it was issued, unless you show you received it later. If this request will not be received within 65 calendar days from the date on the decision or dismissal order, please explain why on a separate sheet.

---

You must file your request for review in writing with the Medicare Appeals Council at:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

You may send the request for review by U.S. Mail, a common carrier such as FedEx, or by fax to (202) 565-0227. If you send a fax, please do not also mail a copy. ***You must send a copy of your appeal to the other parties and indicate that all parties, to include all beneficiaries, have been copied on the request for review. For claims involving multiple beneficiaries, you may submit a copy of the cover letters issued or a spreadsheet of the beneficiaries and addresses who received a copy of the request for review.***

If you have any questions about your request for review or wish to request expedited review of a claim involving authorization of your prescription drug under Medicare Part D, you may call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100. You may also visit our web site at www.hhs.gov/dab for additional information on how to file your request for review.

## PRIVACY ACT STATEMENT

The collection of information on this form is authorized by the Social Security Act (section 205(a) of title II, section 702 of title VII, section 1155 of Title XI, and sections 1852(g)(5), 1869(b)(1), 1871, 1872, and 1876(c)(5)(B) of title XVIII, as appropriate). The information provided will be used to further document your claim. Information requested on this form is voluntary, but failure to provide all or any part of the requested information may affect the determination of your claim. Information you furnish on this form may be disclosed by the Department of Health and Human Services or the Social Security Administration to another person or governmental agency only with respect to programs under the Social Security Act and to comply with Federal laws requiring the disclosure of information or the exchange of information between the Department of Health and Human Services, the Social Security Administration, or other agencies.

Department of Health and Human Services
OFFICE OF MEDICARE HEARINGS AND APPEALS
Cleveland, OH

| | |
|---|---|
| Appeal of: **BRIAN G. LODER DPM PLC** | OMHA Appeal No.: **3-15259931577** |
| Beneficiary: [redacted] | Medicare Part: **B** |
| Medicare No.: | Before: **Martin McClelland** Administrative Law Judge |

Index of the Administrative Record and Exhibit List

| **Exhibit Record** | **Administrative File Reference** File Name | Page Range | | |
|---|---|---|---|---|
| Medical & Related: Medical Records | File 6 | 1 | : | 4181 |
| Procedural - CMS Levels: Reconsideration | File 2 | 1 | : | 18 |
| Procedural - CMS Levels: Request for Reconsideration | File 3 | 1 | : | 222 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 4 | 1 | : | 3 |
| Procedural - CMS Levels: Request for Redetermination | File 5 | 1 | : | 44 |
| Procedural - CMS Levels: Redetermination Request/Transmittal Form | File 7 | 1 | : | 1 |
| Procedural - OMHA Level: Request for ALJ Hearing | File 1 | 1 | : | 18 |
| Procedural - OMHA Level: Amended Notice of Hearing | File 10 | 1 | : | 9 |
| Procedural - OMHA Level: Response to Amended Notice of Hearing | File 11 | 1 | : | 3 |
| Procedural - OMHA Level: Amended Notice of Hearing (2) | File 12 | 1 | : | 9 |
| Procedural - OMHA Level: Response to Amended Notice of Hearing (2). | File 13 | 1 | : | 4 |
| Procedural - OMHA Level: Notice of Hearing | File 8 | 1 | : | 14 |
| Procedural - OMHA Level: Request to Reschedule | File 9 | 1 | : | 3 |
| Proceeding (Audios): Hearing audio | File 14 | 1 | : | 1 |

Department of Health and Human Services
Office of the Secretary

**OFFICE OF MEDICARE HEARINGS AND APPEALS**

Cleveland Field Office
1001 Lakeside Ave
Suite 700
Cleveland, OH 44114
216-462-4100
(216) 462-4145 (Direct)
216-615-9029 (Fax)
866-236-5089 (Toll Free)

November 19, 2025

[redacted]

## NOTICE OF DECISION

Appellant: BRIAN G. LODER DPM PLC
OMHA Appeal Number: 3-15259989707

Enclosed is the decision for the above case. This decision is based on the administrative record, including any evidence or testimony presented at the hearing, if one was held. The decision is not precedential, does not release the appellant from civil or criminal liability, and may be reopened at any time if it was procured by fraud or similar fault. In addition, the decision may be reopened within 180 calendar days from the date of the decision for good cause. Good cause exists when there is new and material evidence that was not available or known at the time of the decision and may result in a different conclusion, or when the evidence that was considered clearly shows on its face that an obvious error was made at the time of the decision.

**What if I disagree with the decision?**

If you disagree with the decision, you may file an appeal with the Medicare Appeals Council. Other parties may also appeal the decision. In addition, the Medicare Appeals Council may decide to review the decision on its own motion. If no party appeals the decision and the Medicare Appeals Council does not review the decision, the decision is binding on all parties and you and the other parties will not have the right to ask a federal court to review the decision.

If you are not already represented, you may appoint an attorney or other person to represent you.

**How much time do I have to file an appeal?**

The Medicare Appeals Council must receive your written appeal **within 60 calendar days** of the date that you receive this notice. The Medicare Appeals Council assumes you received this notice 5 calendar days after the date of the notice unless you show that you did not receive it within the 5-day period.

The Medicare Appeals Council will dismiss a late request for review unless you show that you had a good reason for not filing it on time.

**How do I file an appeal?**

To appeal, you must ask the Medicare Appeals Council to review the decision. Your appeal must be in writing, except that a request for expedited review of a Part D decision may be made orally as described below. Your appeal must identify the parts of the decision that you disagree with, and explain why you disagree.

You may submit a written request for review to the Medicare Appeals Council using one of three available methods: mail, fax, or electronic filing (E-File). **Please do not submit your request for review using more than one method**. Regardless of how you file your appeal, **you must always send a copy of your written request for review to the other parties who received a copy of the decision.**

If you are filing a written request for review, you may use the enclosed *Request for Review* (Form DAB-101), or you may write a letter containing the following:

- The beneficiary's/enrollee's name (and telephone number for Part D appeals);
- The beneficiary's/enrollee's Medicare number (Health Insurance Claim Number or Medicare Beneficiary Identifier);
- The item(s), service(s), or specific Part D drug(s) in dispute;
- The specific date(s) the item(s) or service(s) were provided, if applicable;
- For Part D appeals, the plan name;
- For Part D appeals, the OMHA Appeal Number on the adjudicator's decision;
- For Part D appeals requesting expedited review, a statement that you are requesting expedited review;
- The date of the adjudicator's decision (not required for Part D appeals); and
- Your name and signature, and, if applicable, the name and signature of your representative.

**Filing by mail:**

Mail your appeal and a copy of the enclosed decision to:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

**Filing by fax:**

Fax your appeal and a copy of the enclosed decision to **(202) 565-0227.**

**Filing by computer:**

Using your web browser, visit the Medicare Operations Division Electronic Filing System (MOD E-File) website at **https://dab.efile.hhs.gov/mod**.

To file a new appeal using MOD E-File, you will need to register by:

1. Clicking **Register** on the MOD E-File home page;
2. Entering the information requested on the "Register New Account" form; and
3. Clicking **Register Account** at the bottom of the form.

You will use the email address and password you provided during registration to access MOD E-File at **https://dab.efile.hhs.gov/mod/users/new**. You will be able to use MOD E-File to file and access the specific materials for appeals to which you are a party or a party's representative. You may check the status of any appeal on the website homepage without registering.

Once registered, you may file your appeal by:

1. Logging into MOD E-File;
2. Clicking the **File New Appeal** menu button on the top right of the screen;
3. Selecting the type of appeal you are filing (Request for Review or Request for Escalation); and
4. Entering the requested Appeal Information and uploading the requested Appeal Documents on the "File New Appeal - Medicare Operations Division" form. You are required to provide information and documents marked with an asterisk.

At a minimum, the Medicare Appeals Council requires an appellant to file a signed Request for Review and a copy of the enclosed decision. All documents should be submitted in Portable Document Format (PDF) whenever possible. Any document, including a Request for Review, will be deemed to have been filed on a given day, if it is uploaded to MOD E-File on or before 11:59 p.m. EST of that day.

Currently, the documents that may be filed electronically are the:

1. Request for Review;
2. Appointment of Representative form (OMB Form 0938-0950);
3. Copy of Administrative Law Judge or attorney adjudicator decision;
4. Memorandum or brief or other written statement in support of your appeal; and
5. Request to Withdraw your appeal

**No other documents aside from the five (5) listed categories above may be submitted through MOD E-File.**

**Filing by oral request (for expedited review only):**

Oral requests for expedited review of a Part D decision may be made by telephone to **(866) 365-8204.** You must provide the information listed in the bullet points above and a statement that you are requesting an expedited review within 60 calendar days after receipt of this notice of decision. The Medicare Appeals Council will document the oral request in writing and maintain the documentation in the case file.

Please note that your request for review will only be expedited (1) the appeal involves an issue specified in 42 C.F.R. § 423.566(b), but does not include solely a request for payment of a Part D drug that has already been furnished, and (2) the prescribing physician (or other prescriber) indicates, or the Medicare Appeals Council determines, that the standard time frame may seriously jeopardize your life, health, or ability to regain maximum function.

**<u>How will the Medicare Appeals Council respond to my appeal?</u>**

The Medicare Appeals Council will limit its review to the issues raised in the appeal, unless the appeal is filed by an unrepresented beneficiary/enrollee. It may change the parts of the decision that you agree with. It may adopt, modify, or reverse the decision, in whole or in part, or it may send the case back to OMHA for further action. It may also dismiss your appeal.

**<u>Questions?</u>**

You may call or write our office. A toll-free phone number and mailing address are at the top of this notice.

Additional information about filing an appeal with the Medicare Appeals Council is available at http://www.hhs.gov/dab/. You can also call the Medicare Appeals Council's staff in the Medicare

Operations Division of the Departmental Appeals Board at (202) 565-0100 or (866) 365-8204 (toll free), if you have questions about filing an appeal.

cc:

[redacted]
301 W Bay Street
Ste. 1110
Jacksonville, FL 32202

Enclosures:
OMHA-152, Decision
DAB-101, Request for Review
OMHA-156, Exhibit List

Department of Health and Human Services
OFFICE OF MEDICARE HEARINGS AND APPEALS
Cleveland, OH

| | |
|---|---|
| Appeal of: **BRIAN G. LODER DPM PLC** | OMHA Appeal No.: **3-15259989707** |
| Beneficiary: [redacted] | Medicare Part: B |
| Medicare No.: | Before: **Martin McClelland** Administrative Law Judge |

## DECISION

After carefully considering the evidence and arguments presented in the record and at hearing, I enter an **UNFAVORABLE** decision. The record does not support that Dual Layer Impax Membrane is safe, effective, non-experimental, and non-investigational for the treatment of the beneficiary's non-pressure chronic ulcer wounds, and therefore the products and services provided were not reasonable and necessary. The Appellant is not entitled to Medicare coverage or payment. The Appellant remains liable for the costs of the non-covered products and services and repayment of the overpayment. The beneficiary's liability is limited, and the Appellant may not bill the beneficiary for the cost of the non-covered products or services.

## PROCEDURAL HISTORY

The Appellant submitted a claim to the Medicare Administrative Contractor Wisconsin Physicians Services (WPS)(Contractor) for reimbursement of 40 units of Dual Layer Impax Membrane (Impax) billed under HCPCS code Q4262. The date of service at issue is April 11, 2023. Initially, the Contractor allowed payment on the claim. Subsequently, the Medicare Unified Program Integrity Contractor Covent Bridge Group (UPIC) determined that an overpayment had been made. File 12, pp. 2-5. On redetermination, the Contractor determined that the Appellant's document submission did not support the use of Impax to treat the beneficiary's wounds as medically reasonable and necessary. File 3, p. 8. The Appellant then requested reconsideration by the Qualified Independent Contractor C2C Innovative Solutions, Inc. (QIC). File 2, pp. 3-5. On reconsideration, the QIC also determined that the use of Impax for the treatment of the beneficiary's wounds was experimental and investigational, and therefore not medically reasonable and necessary. Therefore, the QIC determined that no payment could be allowed for the services and that the overpayment was valid. File 3, pp. 3-5.

The Office of Medicare Hearings and Appeals (OMHA) received the Appellant's request for an Administrative Law Judge (ALJ) hearing, and all jurisdictional requirements were satisfied. File 1, p. 2. The Appellant identified William O'Malley as its appointed

representative. *Id.* at 16. The OMHA issued a Notice of Hearing setting the date and time for hearing. File 10, p. 1; File 13, p. 1.

On October 30, 2025, the telephone hearing was conducted as scheduled from the Cleveland Field Office. The Appellant was represented by William O'Malley who provided testimony under oath. In lieu of an appearance, the UPIC submitted a position paper for consideration. File 12. Documents previously marked and identified as Files 1-14 were admitted into the record without objection. The administrative record is now closed.

## ISSUES

1. **Whether the record supports Medicare coverage and payment for the products and services furnished to the beneficiary for the date of service at issue.**

2. **Whether § 1879 of the Social Security Act (Act) provides relief to limit a party's liability.**

3. **Whether § 1870 of the Act provides a waiver of liability for the overpayment.**

## APPLICABLE LAW AND POLICY

### Medical Necessity

Section 1862(a)(1)(A) of the Act bars coverage of items and services that are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member. Section 1833(e) of the Act provides that no claim for Medicare coverage may be paid unless "there has been furnished such information as may be necessary to determine the amounts due such provider."

ALJs are bound by statutes, regulations, National Coverage Determinations (NCDs) and CMS Rulings. 42 C.F.R. § 405.1060(a)(4), 405. 1063. ALJs are not bound by program guidance such as Local Coverage Determinations (LCDs), program memoranda or manual instructions. However, an ALJ must give such policies substantial deference if applicable in a particular case. 42 C.F.R. § 405.1062(a). If any ALJ declines to follow a policy in a particular case, the rational for not following that policy must be explained. 42 C.F.R. § 405.1062(b).

There are no NCDs or LCDs applicable to the present matter. However, the following are relevant to the instant matter:

WPS, *Skin Substitute Grafts/Cellular and Tissue-Based Products for the Treatment of Diabetic Foot Ulcers and Venous Leg Ulcers*, DL 39865 (Proposed LCD).

WPS, *Billing and Coding: Skin Substitutes Grafts/Cellular Tissue-Based Products for the Treatment of Diabetic Foot Ulcers and Venous Leg Ulcers*, A59740 (Future Effective).

CMS, Medicare Program Integrity Manual (*MPIM*), publication 100-08, chapter 3, section 3.6.2.2, sets forth the coverage criteria for items and services that are medically reasonable and necessary when there is no effective NCD or LCD.

**Liability**

Section 1879 of the Act provides that when Medicare excludes coverage pursuant to § 1862(a) (1) of the Act, payment may nevertheless be made for items or services if neither the beneficiary nor the provider or supplier knew, or could not reasonably be expected to have known, that the items or services would not be covered or payable by Medicare. Section 1870 of the Act governs the recovery of overpayments based upon provider fault. Section 1870(b) of the Act allows for a waiver of recovery of an overpayment to a provider if it is without fault in incurring the overpayment.

## FINDINGS OF FACT AND ANALYSIS

This appeal concerns the use of Impax to treat the beneficiary's non-pressure chronic ulcer wounds of the ankles. Impax is a human allograft tissue that is regulated as a human cells, tissues, and cellular and tissue-based product (HCT/P) as defined by 21 C.F.R. Part 1271. Throughout this appeal, the Appellant has maintained that the use of Impax was medically reasonable, necessary, and appropriate as a protective covering to aid in the healing of the beneficiary's wounds. File 3, pp. 3, 140. On April 11, 2023, the beneficiary presented to the Appellant's clinic for a wound assessment and care. The beneficiary was diagnosed with non-pressure chronic ulcers of the right and left ankle with fat layers exposed. Prior wound care treatments included bilateral Unna boots, compression therapy, elevation, narcotic pain relievers, and patient education. The plan of treatment called for debridement and application of Impax to the left and right ankle wounds. *Id.* at 15-19.

The Appellant now seeks Medicare reimbursement for the 40 units of Impax applied to the beneficiary's ankle wounds on the date of service at issue. At the most recent level of the appeals process, the QIC denied payment on the Appellant's claim because it determined that the use of Impax for non-pressure chronic ulcers of the ankles was experimental and investigational as denoted by the Q-code status nomenclature, and therefore no payment could be made under Medicare. File 2, pp. 4-5.

In its position paper, the UPIC presented several additional arguments against Medicare coverage and payment. First, it contended that Impax was not an appropriate treatment for the beneficiary's ankle wounds. According to the UPIC, the beneficiary's medical records showed that prior use of skin substitutes had not resulted in significant clinical improvement and that there was insufficient evidence demonstrating a failure of conservative treatment. In response, the Appellant pointed to an out-of-jurisdiction LCD to support the claim that Impax is safe, effective, non-experimental, and non-investigational. However, the UPIC determined that the cited LCD did not apply to the product or the date of service within the Contractor's jurisdiction. Moreover, the UPIC stated that even if the LCD were applicable, the Appellant's claim would still be denied because the services did not meet the necessity requirements under that LCD. File 12, pp. 2-5.

Throughout the appeals process, the Appellant has maintained that the use of Impax was medically reasonable, necessary, and appropriate as a protective covering to aid in the healing of the beneficiary's wounds. File 3, pp. 3, 140. The Appellant argues that the QIC's denial was inappropriate because Impax's Q-code status does not preclude individual consideration of medical necessity. Q-codes are administrative billing tools, not indicators of medical necessity. If CMS intended for Q-coded products like Impax to be automatically

considered investigational or non-covered, it would have issued a policy to that effect, and no such policy exists. File 1, pp. 4-5. The Appellant also argues that determinations related to the safety and effectiveness of medical products like Impax fall exclusively within the jurisdiction of the U.S. Food and Drug Administration (FDA). According to the FDA, Impax is exempt from FDA premarket approval requirements and thorough formal regulatory reviews by the FDA satisfies the federal requirements for establishing a product's safety profile. More specifically, the Appellant argues that Impax's safety and effectiveness are supported by the FDA's classification of Impax as an HCT/P under § 361 of the Public Health Services Act.[1] File 1, pp. 4-15; Hearing Recording, October 30, 2025.

The Appellant further argues that Impax cannot be considered experimental or investigational when CMS contractors have issued LCDs that provide coverage guidance for skin substitutes. As referenced in this matter, CGS's LCD L36690 *Wound Application of Cellular and/or Tissue Based Products (CTPs), Lower Extremities* and Palmetto's future LCD L39806 *Skin Substitute Grafts/ Cellular and Tissue-Based Products for the Treatment of Diabetic Foot Ulcers and Venous Leg Ulcers* are evidence that human tissue allografts used to treat Medicare beneficiaries are recognized as safe, effective, non-experimental, and non-investigational products, and therefore skin substitutes cannot be experimental or investigational when they are currently being covered under existing and future LCDs. File 3, pp. 2-6; Hearing recording. Lastly, the Appellant asserts that Impax's safety and effectiveness is supported by peer-reviewed, evidence-based literature for chronic ulcer treatment. The Appellant submitted articles of studies for patients diagnosed with diabetic foot ulcers or other pressure injuries and wounds who received skin substitutes to support Impax's safety and effectiveness. File 3, pp. 147-219.

To summarize, contrary to the CMS contractors' belief, it is the Appellant's position that Impax's safety and effectiveness has already been proven and that Impax was medically necessary and clinically appropriate for the management and treatment of the beneficiary's wounds. Therefore, according to the Appellant, they are entitled to Medicare coverage and payment. File 1, pp. 4-8; Hearing recording.

**Medical Necessity**

After full consideration of both positions, I find the preponderance of the evidence does not support that Impax was medically reasonable and necessary for the treatment of the beneficiary's non-pressure chronic ulcers of the right and left ankles. I further find the record lacks sufficient support that Impax is safe, effective, non-experimental, and non-investigational for the treatment of the beneficiary's non-pressure chronic ulcers of the right and left ankles.

Here, the Appellant's reliance on Impax's categorization as an FDA regulated § 361 HCT/P product does not prove Impax's safety and effectiveness. Despite the Appellant's alleged homologous use of the product, the FDA's categorization of Impax as an HCT/P product is only one factor in making a Medicare coverage and payment determination. 42 C.F.R. § 405.201(a)(1). Generally, a product's categorization as a § 361 HCT/P product with the FDA

[1] 21 C.F.R. § 1271.10(a) sets out the criteria that form the foundation of FDA's tiered, risk-based approach to regulating HCT/Ps. HCT/Ps that meet all of the criteria in 21 C.F.R. § 1271.10(a) are subject only to regulation under § 361 of the Public Health Service Act (PHS Act) and the regulations in 21 C.F.R. part 1271. An HCT/P that falls into this category is sometimes referred to as a "361 HCT/P" and no premarket authorization is required.

signifies that the product has not had to undergo rigorous clinical trials in both animal and human populations before being marketed to the public. As a result, the FDA permits manufacturers to identify products that they do not believe have to be regulated under § 351, and instead seek to have the product regulated under § 361. The mere acceptance of a registration by the FDA yields no support that Impax is safe and effective, not experimental or investigational for treatment of the beneficiary's wounds. Therefore, without more evidence from the Appellant to support Impax's safety, effectiveness, and non-investigational nature for treating non-pressure chronic ulcers of the ankles, the Appellant has not shown that Impax is reasonable or medically necessary for treatment of the beneficiary's wounds.

Moreover, the fact that that a drug, medical service, or procedure has obtained approval, exception, or exemption under FDA regulations does not mean that Medicare will guarantee coverage or payment for that drug, service, or procedure without conducting its own review for medical necessity. CMS and their contractors, in analyzing whether a particular item or service is medically reasonable and necessary, will make an independent inquiry into whether the item or service is safe and effective and not experimental or investigational. *MPIM*, ch. 3, §3.6.2.2. CMS and its contractors are also charged with inquiring into whether the item or service is supported by "published authoritative evidence derived from definitive randomized clinical trials or other definitive studies." *Id.* CMS's responsibility, unlike the FDA's, includes deciding what items and services it can and should pay for, how it should accomplish payment, and how much to pay. 42 C.F.R. §405.920. Therefore, the contractors' review of the Appellant's claim is focused on the health needs of the Medicare beneficiaries they serve, items and services that fall within a Medicare benefit category, and whether the services are "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member" under § 1862(a)(1)(A) of the Act. Lastly, whether a drug, medical service, or procedure is medically necessary is a clinical and coverage determination and does not rest on the assignment of a Q-code or any other specific billing code. The medical record documentation must substantiate the necessity of the services provided, regardless of the code used on the claim form.

Accordingly, to carry out its review in accordance with § 1862(a)(1)(A) of the Act, CMS contractors may issue LCDs that are determinations on whether a particular item or service is medically reasonable and necessary and covered by Medicare. Act § 1869(f)(2)(B). However, if there is no applicable LCD effective for the item, service, or dates of service at issue, then Medicare considers an item or service reasonable and necessary if it safe and effective, not experimental or investigational, and appropriate. *MPIM*, ch. 3, §3.6.2.2.

In the presenting matter, the Contractor has not issued an LCD effective for Impax for the product, service, or date of service at issue. While I acknowledge the Contractor currently has a future LCD DL39865 and Billing and Coding Article A59740 pertaining to skin substitutes, neither were effective for the product, service, or date of service at issue. Further, the Contractor's DL39865 lists Impax as a non-covered product and Billing and Coding Article A59740 list Impax as a Group 4 non-covered code. Likewise, CGS's LCD L36690 and companion Billing and Coding Article A56696 do not guarantee coverage of Impax for the treatment of non-pressure chronic ulcers of the ankles. To be clear, none of these policies are dispositive of the instant matter, and I have not considered them to be factors supporting an unfavorable outcome because they are not applicable to the issues before me. However, I do acknowledge that these LCDs and Articles do not otherwise overtly support the

Appellant's position that Impax was safe, effective, non-experimental, non-investigational, and clinically appropriate for treatment of the beneficiary's wounds.

Thus, in determining whether an item is reasonable and necessary, Medicare Program Integrity Manual (*MPIM*), publication 100-08, chapter 3, section 3.6.2.2 provides that if no LCD exists for a particular item or service, Medicare contractors shall consider an item or service to be reasonable and necessary if the item or service meets the following criteria:

- It is safe and effective;
- It is not experimental or investigational; and
- It is appropriate, including the duration and frequency in terms of whether the service or item is:
  - Furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the beneficiary's condition or to improve the function of a malformed body member;
  - Furnished in a setting appropriate to the beneficiary's medical needs and condition;
  - Ordered and furnished by qualified personnel; and,
  - One that meets, but does not exceed, the beneficiary's medical need.

Additionally, the evidence must support the coverage determination, including "available evidence of general acceptance by the medical community, such as published original research in peer-reviewed medical journals, systematic reviews and meta-analyses, evidence-based consensus statements and clinical guidelines." *Id.* at §13.5.3.

Here, the Appellant argued that Impax was used as a protective wound covering to aid in the healing process and that use "aligned with the manufacturer's indications [and] objective intent" and as a "commonly accepted method in wound care." File 3, pp. 3-4; Hearing recording. However, the Appellant did not provide sufficient evidence to support this position. Specifically, the record lacks documentation from the manufacturer establishing the intended purpose, indications, and limitations for the use of Impax. The file contains a product label issued by Legacy Medical Consultants, a distributor of Impax, rather than by Surgenex, LLC, the manufacturer. *Id.* at 140-141. Absent the product label or comparable documentation issued by Surgenex, it cannot be determined whether the Appellant's use of Impax was consistent with the manufacturer's stated indications or objective intent. Moreover, due to the insufficiency of the record, it cannot be determined whether the use of Impax for this beneficiary was clinically appropriate as a protective wound covering for the beneficiary's wounds.

Further, the Appellant failed to establish that the use of Impax was safe, effective, non-experimental, and non-investigational, or that its use represented a clinically appropriate method generally accepted within the medical community. Here, the record lacks sufficient peer-reviewed, evidence-based literature to support that Impax is safe, effective, non-experimental, and non-investigational for treatment of the beneficiary's non-pressure chronic ulcers of the ankles. The Appellant's own submission of manuscripts, abstracts, and articles do not offer any additional support. Rather, the Appellant's submission reinforces the position that only specific HCT/Ps and certain lower extremity wounds are eligible for Medicare coverage and payment. For example, the Appellant's literature supports the use of amniotic allograft membrane products for the treatment of venous leg ulcers and diabetic

foot ulcers, and not non-pressure chronic ulcers of the ankles. None of the literature specifically confirms Impax is safe and effective for the treatment of non-pressure chronic ulcers of the ankles or is a product or method generally accepted within the medical community.[2,3,4,5] Moreover, the Appellant's literature indicates the industry funded most of the published studies, which raises significant concerns about possible publication bias or selective outcome reporting in that results unfavorable to industry may not be reported or published.[6,7,8] Without sufficient peer-reviewed, evidence-based literature supporting the use of Impax for the treatment of the beneficiary's wounds, the record falls short of establishing Impax is safe and effective, non-experimental, non-investigational, and clinically appropriate for the treatment of the beneficiary's non-pressure chronic ulcers of the ankles.

Accordingly, I find that the preponderance of the evidence does not support that Impax is safe and effective, non-experimental, non-investigational, and clinically appropriate for the treatment of the beneficiary's non-pressure chronic ulcers of the ankles. The Impax product (Q4262) furnished to the beneficiary for the date of service at issue was not reasonable and necessary, and therefore neither Impax nor the related surgical services are covered or payable by Medicare. Having determined that Medicare does not cover the Impax, I will consider whether the liability of the beneficiary or the Appellant may be waived pursuant to § 1879 of the Act.

**Liability**

Section 1879(a) of the Act provides for the limitation on liability for items or serviced denied by Medicare as not medically "reasonable and necessary" under § 1862(a)(1)(A) of the Act, absent knowledge by a beneficiary or provider that the items or services would not be covered. Act, § 1879(a); 42 C.F.R. § 411.400(a). A beneficiary has "knowledge" of non-coverage when he or she has been given written notice of non-coverage by the provider. 42 C.F.R. § 411.404(a). A provider may have knowledge, in relevant part, based on their written notice of non-coverage to the beneficiary or their own experience, actual notice, or constructive notice. 42 C.F.R. § 411.406. CMS has provided further guidance on financial liability protections in its Medicare Claims Processing Manual (*MCPM*), publication 100-04, chapter 30.

---

[2] Iveta Schmiedova, Alena Dembickaja, Ludmila Kiselakova, Beata Nowakova & Petr Slama, *Using of Amniotic Membrane Derivatives for the Treatment of Chronic Wounds*, 11 *Membranes* 941 (2021).

[3] Karen Evans & Paul J. Kim, "Overview of Treatment of Chronic Wounds," in *UpToDate*, Section Editors Russell S. Berman & Eduardo Bruera; Deputy Editors Kathryn A. Collins & Sonali Shah (Lit. review current through Dec. 2022; topic last updated July 13, 2022).

[4] Thomas E. Serena et al., *A Multicenter, Randomized, Controlled, Clinical Trial Evaluating Dehydrated Human Amniotic Membrane in the Treatment of Venous Leg Ulcers*, 150 Plast. & Reconstr. Surg. 1128 (2022).

[5] Desman E, Bartow W & Anderson LH, *Human Skin Allograft for Patients With Diabetic Foot Ulcers, Venous Leg Ulcers, or Surgical/Traumatic Wounds: A Retrospective, Descriptive Study*, 61 Wound Management & Prevention (July 2015).

[6] *Id.* at 4.

[7] Thomas E. Serena et al., *A Randomized Controlled Clinical Trial of a Hypothermically Stored Amniotic Membrane for Use in Diabetic Foot Ulcers*, 9 J. Comp. Eff. Res. 23 (2019).

[8] John P. McQuilling et al., *A Prospective Clinical Trial Evaluating Changes in the Wound Microenvironment in Patients with Chronic Venous Leg Ulcers Treated with a Hypothermically Stored Amniotic Membrane*, 19 Int'l Wound J. 144 (2022).

There is no indication in the record that the Appellant provided sufficient written notice to the beneficiary that Medicare might not cover the products, procedures, or services at issue. Therefore, I find that the beneficiary did not know and could not reasonably have been expected to know that the products, procedures, and services at issue may not be covered by Medicare. Accordingly, the beneficiary is not liable for the cost of the non-covered items and services pursuant to § 1879(a) of the Act. Conversely, I find that the Appellant, as a provider participating in the Medicare program, at a minimum had constructive knowledge of the coverage criteria published in the regulations, CMS manuals, and guidance. Therefore, the Appellant knew or should have known that the products, procedures, and services would not be covered as billed. *MCPM*, ch. 30, § 40.1.

Accordingly, the Appellant is liable for the non-covered cost pursuant to § 1879(a) of the Act. The beneficiary's liability is limited, and they shall not be billed or charged for the non-covered services.

Section 1870 of the Act governs the recovery of overpayments based upon provider fault. Section 1870(b) of the Act allows for a waiver of recovery of an overpayment to a provider if it is without fault in incurring the overpayment. Section 1870(b) of the Act does not define the meaning of the term "without fault." However, a provider is without fault if it exercised reasonable care in billing and accepting Medicare payment. CMS, Medicare Financial Management Manual *(MFMM)*, pub. 100-06, ch. 3, § 90 (Effective January 2, 2004). A provider is considered not "without fault" if, it billed, or Medicare paid, for items the provider should have known were not covered. *MFMM*, ch. 3, § 90.1.H. The *MFMM* explains that the provider should have known about a policy or rule if the policy or rule is in the provider manual or in the regulations. *Id.*

Here, the Appellant is a Medicare participating supplier and had constructive notice of the widely published Medicare laws and regulations, CMS Rulings, and the applicable coverage guidelines for billing and filing claims for services furnished to Medicare beneficiaries. The Appellant submitted their claim for investigational products and failed to submit supporting documentation of its use for the treatment of the beneficiary's wounds as required by the regulations and CMS guidelines. Therefore, by failing to produce required documentation the Appellant knew or should have known that the items likely would not be paid for by Medicare. Thus, I find that the Appellant is not without fault for the overpayment under § 1870(b) of the Act. Accordingly, recovery of the overpayment is not waived.

## CONCLUSIONS OF LAW

The Appellant failed to establish that the use of Impax was safe, effective, non-experimental, and non-investigational, or that its use represented a clinically appropriate method generally accepted within the medical community, and therefore the product and services furnished were not reasonable and necessary for treatment of the beneficiary's non-pressure chronic ulcers of the ankles. The Appellant remains liable for the costs of the non-covered products and services and repayment of the overpayment. The beneficiary's liability is limited, and the Appellant shall not bill the beneficiary for the cost of the products or services provided.

## ORDER

For the reasons discussed above, this decision is **UNFAVORABLE**. The Appellant remains liable for the costs of the non-covered products and services and repayment of the overpayment. The beneficiary's liability is limited, and they may not be billed for the costs of the products or services provided. I direct the Medicare administrative contractor to process the claim in accordance with this decision.

SO ORDERED

M. L. McClelland

Martin McClelland
Administrative Law Judge

If you have additional evidence, submit it with this request for review. If you need more time, you must request an extension of time in writing now, explaining why you are unable to submit the evidence or legal argument now.

*If you are a provider, supplier, or a beneficiary represented by a provider or supplier, and your case was reconsidered by a Qualified Independent Contractor (QIC), the Medicare Appeals Council will not consider new evidence related to issues the QIC has already considered unless you show that you have a good reason for submitting it for the first time to the Medicare Appeals Council.*

**IMPORTANT: Include the HICN or MBI and ALJ Appeal Number on any letter or other material you submit.**

This request must be received within 60 calendar days after you receive the ALJ's decision or dismissal, unless we extend the time limit for good cause. We assume you received the decision or dismissal 5 calendar days after it was issued, unless you show you received it later. If this request will not be received within 65 calendar days from the date on the decision or dismissal order, please explain why on a separate sheet.

---

You must file your request for review in writing with the Medicare Appeals Council at:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

You may send the request for review by U.S. Mail, a common carrier such as FedEx, or by fax to (202) 565-0227. If you send a fax, please do not also mail a copy. ***You must send a copy of your appeal to the other parties and indicate that all parties, to include all beneficiaries, have been copied on the request for review. For claims involving multiple beneficiaries, you may submit a copy of the cover letters issued or a spreadsheet of the beneficiaries and addresses who received a copy of the request for review.***

If you have any questions about your request for review or wish to request expedited review of a claim involving authorization of your prescription drug under Medicare Part D, you may call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100. You may also visit our web site at www.hhs.gov/dab for additional information on how to file your request for review.

## PRIVACY ACT STATEMENT

The collection of information on this form is authorized by the Social Security Act (section 205(a) of title II, section 702 of title VII, section 1155 of Title XI, and sections 1852(g)(5), 1869(b)(1), 1871, 1872, and 1876(c)(5)(B) of title XVIII, as appropriate). The information provided will be used to further document your claim. Information requested on this form is voluntary, but failure to provide all or any part of the requested information may affect the determination of your claim. Information you furnish on this form may be disclosed by the Department of Health and Human Services or the Social Security Administration to another person or governmental agency only with respect to programs under the Social Security Act and to comply with Federal laws requiring the disclosure of information or the exchange of information between the Department of Health and Human Services, the Social Security Administration, or other agencies.

Department of Health and Human Services
OFFICE OF MEDICARE HEARINGS AND APPEALS
Cleveland, OH

| | |
|---|---|
| Appeal of: BRIAN G. LODER DPM PLC | OMHA Appeal No.: 3-15259989707 |
| Beneficiary: [redacted] | Medicare Part: B |
| Medicare No.: [redacted] | Before: Martin McClelland<br>Administrative Law Judge |

Index of the Administrative Record and Exhibit List

| Exhibit Record | Administrative File Reference | | | |
|---|---|---|---|---|
| | File Name | Page Range | | |
| Position Statements: UPIC Position Paper | File 12 | 1 | : | 5 |
| Procedural - CMS Levels: Reconsideration | File 2 | 1 | : | 18 |
| Procedural - CMS Levels: Request for Reconsideration | File 3 | 1 | : | 219 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 4 | 1 | : | 3 |
| Procedural - CMS Levels: Request for Redetermination | File 5 | 1 | : | 44 |
| Procedural - CMS Levels: Redetermination Request/Transmittal Form | File 6 | 1 | : | 1 |
| Procedural - OMHA Level: Request for ALJ Hearing | File 1 | 1 | : | 16 |
| Procedural - OMHA Level: Amended Notice of Hearing | File 10 | 1 | : | 9 |
| Procedural - OMHA Level: Response to Amended Notice of Hearing | File 11 | 1 | : | 3 |
| Procedural - OMHA Level: Amended Notice of Hearing (2) | File 13 | 1 | : | 9 |
| Procedural - OMHA Level: Response to Amended Notice of Hearing (2) | File 14 | 1 | : | 4 |
| Procedural - OMHA Level: Notice of Hearing | File 7 | 1 | : | 14 |
| Procedural - OMHA Level: CoventBridge NOI | File 8 | 1 | : | 3 |
| Procedural - OMHA Level: Request to Reschedule | File 9 | 1 | : | 3 |
| Proceeding (Audios): Hearing audio | File 15 | 1 | : | 1 |

Department of Health and Human Services
Office of the Secretary

**OFFICE OF MEDICARE HEARINGS AND APPEALS**

Cleveland Field Office
1001 Lakeside Ave
Suite 700
Cleveland, OH 44114
216-462-4100
(216) 462-4145 (Direct)
216-615-9029 (Fax)
866-236-5089 (Toll Free)

November 19, 2025

[redacted]

## NOTICE OF DECISION

Appellant: BRIAN G. LODER DPM PLC
OMHA Appeal Number: 3-15259989715

Enclosed is the decision for the above case. This decision is based on the administrative record, including any evidence or testimony presented at the hearing, if one was held. The decision is not precedential, does not release the appellant from civil or criminal liability, and may be reopened at any time if it was procured by fraud or similar fault. In addition, the decision may be reopened within 180 calendar days from the date of the decision for good cause. Good cause exists when there is new and material evidence that was not available or known at the time of the decision and may result in a different conclusion, or when the evidence that was considered clearly shows on its face that an obvious error was made at the time of the decision.

**What if I disagree with the decision?**

If you disagree with the decision, you may file an appeal with the Medicare Appeals Council. Other parties may also appeal the decision. In addition, the Medicare Appeals Council may decide to review the decision on its own motion. If no party appeals the decision and the Medicare Appeals Council does not review the decision, the decision is binding on all parties and you and the other parties will not have the right to ask a federal court to review the decision.

If you are not already represented, you may appoint an attorney or other person to represent you.

**How much time do I have to file an appeal?**

The Medicare Appeals Council must receive your written appeal **within 60 calendar days** of the date that you receive this notice. The Medicare Appeals Council assumes you received this notice 5 calendar days after the date of the notice unless you show that you did not receive it within the 5-day period.

The Medicare Appeals Council will dismiss a late request for review unless you show that you had a good reason for not filing it on time.

**How do I file an appeal?**

To appeal, you must ask the Medicare Appeals Council to review the decision. Your appeal must be in writing, except that a request for expedited review of a Part D decision may be made orally as described below. Your appeal must identify the parts of the decision that you disagree with, and explain why you disagree.

You may submit a written request for review to the Medicare Appeals Council using one of three available methods: mail, fax, or electronic filing (E-File). **Please do not submit your request for review using more than one method**. Regardless of how you file your appeal, **you must always send a copy of your written request for review to the other parties who received a copy of the decision.**

If you are filing a written request for review, you may use the enclosed *Request for Review* (Form DAB-101), or you may write a letter containing the following:

- The beneficiary's/enrollee's name and telephone number for Part D appeals);
- The beneficiary's/enrollee's Medicare number (Health Insurance Claim Number or Medicare Beneficiary Identifier);
- The item(s), service(s), or specific Part D drug(s) in dispute;
- The specific date(s) the item(s) or service(s) were provided, if applicable;
- For Part D appeals, the plan name;
- For Part D appeals, the OMHA Appeal Number on the adjudicator's decision;
- For Part D appeals requesting expedited review, a statement that you are requesting expedited review;
- The date of the adjudicator's decision (not required for Part D appeals); and
- Your name and signature, and, if applicable, the name and signature of your representative.

**Filing by mail:**

Mail your appeal and a copy of the enclosed decision to:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

**Filing by fax:**

Fax your appeal and a copy of the enclosed decision to **(202) 565-0227.**

**Filing by computer:**

Using your web browser, visit the Medicare Operations Division Electronic Filing System (MOD E-File) website at **https://dab.efile.hhs.gov/mod**.

To file a new appeal using MOD E-File, you will need to register by:

1. Clicking **Register** on the MOD E-File home page;
2. Entering the information requested on the "Register New Account" form; and
3. Clicking **Register Account** at the bottom of the form.

You will use the email address and password you provided during registration to access MOD E-File at **https://dab.efile.hhs.gov/mod/users/new**. You will be able to use MOD E-File to file and access the specific materials for appeals to which you are a party or a party's representative. You may check the status of any appeal on the website homepage without registering.

Once registered, you may file your appeal by:

1. Logging into MOD E-File;
2. Clicking the **File New Appeal** menu button on the top right of the screen;
3. Selecting the type of appeal you are filing (Request for Review or Request for Escalation); and
4. Entering the requested Appeal Information and uploading the requested Appeal Documents on the "File New Appeal - Medicare Operations Division" form. You are required to provide information and documents marked with an asterisk.

At a minimum, the Medicare Appeals Council requires an appellant to file a signed Request for Review and a copy of the enclosed decision. All documents should be submitted in Portable Document Format (PDF) whenever possible. Any document, including a Request for Review, will be deemed to have been filed on a given day, if it is uploaded to MOD E-File on or before 11:59 p.m. EST of that day.

Currently, the documents that may be filed electronically are the:

1. Request for Review;
2. Appointment of Representative form (OMB Form 0938-0950);
3. Copy of Administrative Law Judge or attorney adjudicator decision;
4. Memorandum or brief or other written statement in support of your appeal; and
5. Request to Withdraw your appeal

**No other documents aside from the five (5) listed categories above may be submitted through MOD E-File.**

**Filing by oral request (for expedited review only):**

Oral requests for expedited review of a Part D decision may be made by telephone to **(866) 365-8204.** You must provide the information listed in the bullet points above and a statement that you are requesting an expedited review within 60 calendar days after receipt of this notice of decision. The Medicare Appeals Council will document the oral request in writing and maintain the documentation in the case file.

Please note that your request for review will only be expedited (1) the appeal involves an issue specified in 42 C.F.R. § 423.566(b), but does not include solely a request for payment of a Part D drug that has already been furnished, and (2) the prescribing physician (or other prescriber) indicates, or the Medicare Appeals Council determines, that the standard time frame may seriously jeopardize your life, health, or ability to regain maximum function.

**How will the Medicare Appeals Council respond to my appeal?**

The Medicare Appeals Council will limit its review to the issues raised in the appeal, unless the appeal is filed by an unrepresented beneficiary/enrollee. It may change the parts of the decision that you agree with. It may adopt, modify, or reverse the decision, in whole or in part, or it may send the case back to OMHA for further action. It may also dismiss your appeal.

**Questions?**

You may call or write our office. A toll-free phone number and mailing address are at the top of this notice.

Additional information about filing an appeal with the Medicare Appeals Council is available at http://www.hhs.gov/dab/. You can also call the Medicare Appeals Council's staff in the Medicare

Operations Division of the Departmental Appeals Board at (202) 565-0100 or (866) 365-8204 (toll free), if you have questions about filing an appeal.

cc: [redacted]

QIC - C2C B North
301 W Bay Street
Ste. 1110
Jacksonville, FL 32202

Enclosures:
OMHA-152, Decision
DAB-101, Request for Review
OMHA-156, Exhibit List

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Cleveland, OH**

| | | | |
|---|---|---|---|
| Appeal of: | **BRIAN G. LODER DPM PLC** | OMHA Appeal No.: | **3-15259989715** |
| Beneficiary: | [redacted] | Medicare Part: | B |
| Medicare No.: | [redacted] | Before: | **Martin McClelland** Administrative Law Judge |

## DECISION

After carefully considering the evidence and arguments presented in the record and at hearing, I enter an **UNFAVORABLE** decision. The record does not support that Dual Layer Impax Membrane is safe, effective, non-experimental, and non-investigational for the treatment of the beneficiary's non-pressure chronic ulcer wounds, and therefore the products and services provided were not reasonable and necessary. The Appellant is not entitled to Medicare coverage or payment. The Appellant remains liable for the costs of the non-covered products and services and repayment of the overpayment. The beneficiary's liability is limited, and the Appellant may not bill the beneficiary for the cost of the non-covered products or services.

## PROCEDURAL HISTORY

The Appellant submitted a claim to the Medicare Administrative Contractor Wisconsin Physicians Services (WPS)(Contractor) for reimbursement of 40 units of Dual Layer Impax Membrane (Impax) billed under HCPCS code Q4262. The date of service at issue is April 18, 2023. Initially, the Contractor allowed payment on the claim. Subsequently, the Medicare Unified Program Integrity Contractor Covent Bridge Group (UPIC) determined that an overpayment had been made. File 13, pp. 2-5. On redetermination, the Contractor determined that the Appellant's document submission did not support the use of Impax to treat the beneficiary's wounds as medically reasonable and necessary. File 3, p. 8. The Appellant then requested reconsideration by the Qualified Independent Contractor C2C Innovative Solutions, Inc. (QIC). File 3, p. 1. On reconsideration, the QIC also determined that the use of Impax for the treatment of the beneficiary's wounds was experimental and investigational, and therefore not medically reasonable and necessary. Therefore, the QIC determined that no payment could be allowed for the services and that the overpayment was valid. File 2, pp. 3-5.

The Office of Medicare Hearings and Appeals (OMHA) received the Appellant's request for an Administrative Law Judge (ALJ) hearing, and all jurisdictional requirements were satisfied. File 1, p. 2. The Appellant identified William O'Malley as its appointed

representative. *Id.* at 16. The OMHA issued a Notice of Hearing setting the date and time for hearing. Files 8, 11, and 14.

On October 30, 2025, the telephone hearing was conducted as scheduled from the Cleveland Field Office. The Appellant was represented by William O'Malley who provided testimony under oath. In lieu of an appearance, the UPIC submitted a position paper for consideration. File 13. Documents previously marked and identified as Files 1-15 were admitted into the record without objection. The administrative record is now closed.

## ISSUES

1. **Whether the record supports Medicare coverage and payment for the products and services furnished to the beneficiary for the date of service at issue.**

2. **Whether § 1879 of the Social Security Act (Act) provides relief to limit a party's liability.**

3. **Whether § 1870 of the Act provides a waiver of liability for the overpayment.**

## APPLICABLE LAW AND POLICY

### Medical Necessity

Section 1862(a)(1)(A) of the Act bars coverage of items and services that are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member. Section 1833(e) of the Act provides that no claim for Medicare coverage may be paid unless "there has been furnished such information as may be necessary to determine the amounts due such provider."

ALJs are bound by statutes, regulations, National Coverage Determinations (NCDs) and CMS Rulings. 42 C.F.R. § 405.1060(a)(4), 405. 1063. ALJs are not bound by program guidance such as Local Coverage Determinations (LCDs), program memoranda or manual instructions. However, an ALJ must give such policies substantial deference if applicable in a particular case. 42 C.F.R. § 405.1062(a). If any ALJ declines to follow a policy in a particular case, the rational for not following that policy must be explained. 42 C.F.R. § 405.1062(b).

There are no NCDs or LCDs applicable to the present matter. However, the following are relevant to the instant matter:

WPS, *Skin Substitute Grafts/Cellular and Tissue-Based Products for the Treatment of Diabetic Foot Ulcers and Venous Leg Ulcers*, DL 39865 (Proposed LCD).

WPS, *Billing and Coding: Skin Substitutes Grafts/Cellular Tissue-Based Products for the Treatment of Diabetic Foot Ulcers and Venous Leg Ulcers*, A59740 (Future Effective).

CMS, Medicare Program Integrity Manual (*MPIM*), publication 100-08, chapter 3, section 3.6.2.2, sets forth the coverage criteria for items and services that are medically reasonable and necessary when there is no effective NCD or LCD.

**Liability**

Section 1879 of the Act provides that when Medicare excludes coverage pursuant to § 1862(a) (1) of the Act, payment may nevertheless be made for items or services if neither the beneficiary nor the provider or supplier knew, or could not reasonably be expected to have known, that the items or services would not be covered or payable by Medicare. Section 1870 of the Act governs the recovery of overpayments based upon provider fault. Section 1870(b) of the Act allows for a waiver of recovery of an overpayment to a provider if it is without fault in incurring the overpayment.

## FINDINGS OF FACT AND ANALYSIS

This appeal concerns the use of Impax to treat the beneficiary's non-pressure chronic ulcer wounds of the ankles. Impax is a human allograft tissue that is regulated as a human cells, tissues, and cellular and tissue-based product (HCT/P) as defined by 21 C.F.R. Part 1271. Throughout this appeal, the Appellant has maintained that the use of Impax was medically reasonable, necessary, and appropriate as a protective covering to aid in the healing of the beneficiary's wounds. File 3, pp. 3, 140. On April 18, 2023, the beneficiary presented to the Appellant's clinic for a wound assessment and care. The beneficiary was diagnosed with non-pressure chronic ulcers of the right and left ankle with fat layers exposed. Prior wound care treatments included bilateral Unna boots, compression therapy, elevation, narcotic pain relievers, and patient education. The plan of treatment called for debridement and application of Impax to the left and right ankle wounds. *Id*. at 14- 17.

The Appellant now seeks Medicare reimbursement for the 40 units of Impax applied to the beneficiary's ankle wounds on the date of service at issue. At the most recent level of the appeals process, the QIC denied payment on the Appellant's claim because it determined that the use of Impax for non-pressure chronic ulcers of the ankles was experimental and investigational as denoted by the Q-code status nomenclature, and therefore no payment could be made under Medicare. File 2, pp. 3-5.

In its position paper, the UPIC presented several additional arguments against Medicare coverage and payment. First, it contended that Impax was not an appropriate treatment for the beneficiary's ankle wounds. According to the UPIC, the beneficiary's medical records showed that prior use of skin substitutes had not resulted in significant clinical improvement and that there was insufficient evidence demonstrating a failure of conservative treatment. In response, the Appellant pointed to an out-of-jurisdiction LCD to support the claim that Impax is safe, effective, non-experimental, and non-investigational. However, the UPIC determined that the cited LCD did not apply to the product or the date of service within the Contractor's jurisdiction. Moreover, the UPIC stated that even if the LCD were applicable, the Appellant's claim would still be denied because the services did not meet the necessity requirements under that LCD. File 13, pp. 2-5.

Throughout the appeals process, the Appellant has maintained that the use of Impax was medically reasonable, necessary, and appropriate as a protective covering to aid in the

healing of the beneficiary's wounds. File 3, pp. 3, 140. The Appellant argues that the QIC's denial was inappropriate because Impax's Q-code status does not preclude individual consideration of medical necessity. Q-codes are administrative billing tools, not indicators of medical necessity. If CMS intended for Q-coded products like Impax to be automatically considered investigational or non-covered, it would have issued a policy to that effect, and no such policy exists. File 1, pp. 4-5. The Appellant also argues that determinations related to the safety and effectiveness of medical products like Impax fall exclusively within the jurisdiction of the U.S. Food and Drug Administration (FDA). According to the FDA, Impax is exempt from FDA premarket approval requirements and thorough formal regulatory reviews by the FDA satisfies the federal requirements for establishing a product's safety profile. More specifically, the Appellant argues that Impax's safety and effectiveness are supported by the FDA's classification of Impax as an HCT/P under § 361 of the Public Health Services Act. [1] File 1, pp. 4-15; Hearing Recording, October 30, 2025.

The Appellant further argues that Impax cannot be considered experimental or investigational when CMS contractors have issued LCDs that provide coverage guidance for skin substitutes. As referenced in this matter, CGS's LCD L36690 *Wound Application of Cellular and/or Tissue Based Products (CTPs), Lower Extremities* and Palmetto's future LCD L39806 *Skin Substitute Grafts/ Cellular and Tissue-Based Products for the Treatment of Diabetic Foot Ulcers and Venous Leg Ulcers* are evidence that human tissue allografts used to treat Medicare beneficiaries are recognized as safe, effective, non-experimental, and non-investigational products, and therefore skin substitutes cannot be experimental or investigational when they are currently being covered under existing and future LCDs. File 3, pp. 2-6; Hearing recording. Lastly, the Appellant asserts that Impax's safety and effectiveness is supported by peer-reviewed, evidence-based literature for chronic ulcer treatment. The Appellant submitted articles of studies for patients diagnosed with diabetic foot ulcers or other pressure injuries and wounds who received skin substitutes to support Impax's safety and effectiveness. File 3, pp. 146-218.

To summarize, contrary to the CMS contractors' belief, it is the Appellant's position that Impax's safety and effectiveness has already been proven and that Impax was medically necessary and clinically appropriate for the management and treatment of the beneficiary's wounds. Therefore, according to the Appellant, they are entitled to Medicare coverage and payment. File 1, pp. 4-8; Hearing recording.

**Medical Necessity**

After full consideration of both positions, I find the preponderance of the evidence does not support that Impax was medically reasonable and necessary for the treatment of the beneficiary's non-pressure chronic ulcers of the right and left ankles. I further find the record lacks sufficient support that Impax is safe, effective, non-experimental, and non-investigational for the treatment of the beneficiary's non-pressure chronic ulcers of the right and left ankles.

---

[1] 21 C.F.R. § 1271.10(a) sets out the criteria that form the foundation of FDA's tiered, risk-based approach to regulating HCT/Ps. HCT/Ps that meet all of the criteria in 21 C.F.R. § 1271.10(a) are subject only to regulation under § 361 of the Public Health Service Act (PHS Act) and the regulations in 21 C.F.R. part 1271. An HCT/P that falls into this category is sometimes referred to as a "361 HCT/P" and no premarket authorization is required.

Here, the Appellant's reliance on Impax's categorization as an FDA regulated § 361 HCT/P product does not prove Impax's safety and effectiveness. Despite the Appellant's alleged homologous use of the product, the FDA's categorization of Impax as an HCT/P product is only one factor in making a Medicare coverage and payment determination. 42 C.F.R. § 405.201(a)(1). Generally, a product's categorization as a § 361 HCT/P product with the FDA signifies that the product has not had to undergo rigorous clinical trials in both animal and human populations before being marketed to the public. As a result, the FDA permits manufacturers to identify products that they do not believe have to be regulated under § 351 and instead seek to have the product regulated under § 361. The mere acceptance of a registration by the FDA yields no support that Impax is safe and effective, not experimental or investigational for treatment of the beneficiary's wounds. Therefore, without more evidence from the Appellant to support Impax's safety, effectiveness, and non-investigational nature for treating non-pressure chronic ulcers of the ankles, the Appellant has not shown that Impax is reasonable or medically necessary for treatment of the beneficiary's wounds.

Moreover, the fact that that a drug, medical service, or procedure has obtained approval, exception, or exemption under FDA regulations does not mean that Medicare will guarantee coverage or payment for that drug, service, or procedure without conducting its own review for medical necessity. CMS and their contractors, in analyzing whether a particular item or service is medically reasonable and necessary, will make an independent inquiry into whether the item or service is safe and effective and not experimental or investigational. *MPIM*, ch. 3, §3.6.2.2. CMS and its contractors are also charged with inquiring into whether the item or service is supported by "published authoritative evidence derived from definitive randomized clinical trials or other definitive studies." *Id.* CMS's responsibility, unlike the FDA's, includes deciding what items and services it can and should pay for, how it should accomplish payment, and how much to pay. 42 C.F.R. §405.920. Therefore, the contractors' review of the Appellant's claim is focused on the health needs of the Medicare beneficiaries they serve, items and services that fall within a Medicare benefit category, and whether the services are "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member" under § 1862(a)(1)(A) of the Act. Lastly, whether a drug, medical service, or procedure is medically necessary is a clinical and coverage determination and does not rest on the assignment of a Q-code or any other specific billing code. The medical record documentation must substantiate the necessity of the services provided, regardless of the code used on the claim form.

Accordingly, to carry out its review in accordance with § 1862(a)(1)(A) of the Act, CMS contractors may issue LCDs that are determinations on whether a particular item or service is medically reasonable and necessary and covered by Medicare. Act § 1869(f)(2)(B). However, if there is no applicable LCD effective for the item, service, or dates of service at issue, then Medicare considers an item or service reasonable and necessary if it safe and effective, not experimental or investigational, and appropriate. *MPIM*, ch. 3, §3.6.2.2.

In the presenting matter, the Contractor has not issued an LCD effective for Impax for the product, service, or date of service at issue. While I acknowledge the Contractor currently has a future LCD DL39865 and Billing and Coding Article A59740 pertaining to skin substitutes, neither were effective for the product, service, or date of service at issue. Further, the Contractor's DL39865 lists Impax as a non-covered product and Billing and Coding Article A59740 list Impax as a Group 4 non-covered code. Likewise, CGS's LCD L36690

and companion Billing and Coding Article A56696 do not guarantee coverage of Impax for the treatment of non-pressure chronic ulcers of the ankles. To be clear, none of these policies are dispositive of the instant matter, and I have not considered them to be factors supporting an unfavorable outcome because they are not applicable to the issues before me. However, I do acknowledge that these LCDs and Articles do not otherwise overtly support the Appellant's position that Impax was safe, effective, non-experimental, non-investigational, and clinically appropriate for treatment of the beneficiary's wounds.

Thus, in determining whether an item is reasonable and necessary, Medicare Program Integrity Manual (*MPIM*), publication 100-08, chapter 3, section 3.6.2.2 provides that if no LCD exists for a particular item or service, Medicare contractors shall consider an item or service to be reasonable and necessary if the item or service meets the following criteria:

- It is safe and effective;
- It is not experimental or investigational; and
- It is appropriate, including the duration and frequency in terms of whether the service or item is:
    - Furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the beneficiary's condition or to improve the function of a malformed body member;
    - Furnished in a setting appropriate to the beneficiary's medical needs and condition;
    - Ordered and furnished by qualified personnel; and,
    - One that meets, but does not exceed, the beneficiary's medical need.

Additionally, the evidence must support the coverage determination, including "available evidence of general acceptance by the medical community, such as published original research in peer-reviewed medical journals, systematic reviews and meta-analyses, evidence-based consensus statements and clinical guidelines." *Id.* at §13.5.3.

Here, the Appellant argued that Impax was used as a protective wound covering to aid in the healing process and that use "aligned with the manufacturer's indications [and] objective intent" and as a "commonly accepted method in wound care." File 3, pp. 3-4; Hearing recording. However, the Appellant did not provide sufficient evidence to support this position. Specifically, the record lacks documentation from the manufacturer establishing the intended purpose, indications, and limitations for the use of Impax. The file contains a product label issued by Legacy Medical Consultants, a distributor of Impax, rather than by Surgenex, LLC, the manufacturer. *Id.* at 140-141. Absent the product label or comparable documentation issued by Surgenex, it cannot be determined whether the Appellant's use of Impax was consistent with the manufacturer's stated indications or objective intent. Moreover, due to the insufficiency of the record, it cannot be determined whether the use of Impax for this beneficiary was clinically appropriate as a protective wound covering for the beneficiary's wounds.

Further, the Appellant failed to establish that the use of Impax was safe, effective, non-experimental, and non-investigational, or that its use represented a clinically appropriate method generally accepted within the medical community. Here, the record lacks sufficient peer-reviewed, evidence-based literature to support that Impax is safe, effective, non-experimental, and non-investigational for treatment of the beneficiary's non-pressure chronic

coverage when he or she has been given written notice of non-coverage by the provider. 42 C.F.R. § 411.404(a). A provider may have knowledge, in relevant part, based on their written notice of non-coverage to the beneficiary or their own experience, actual notice, or constructive notice. 42 C.F.R. § 411.406. CMS has provided further guidance on financial liability protections in its Medicare Claims Processing Manual (*MCPM*), publication 100-04, chapter 30.

There is no indication in the record that the Appellant provided sufficient written notice to the beneficiary that Medicare might not cover the products, procedures, or services at issue. Therefore, I find that the beneficiary did not know and could not reasonably have been expected to know that the products, procedures, and services at issue may not be covered by Medicare. Accordingly, the beneficiary is not liable for the cost of the non-covered items and services pursuant to § 1879(a) of the Act. Conversely, I find that the Appellant, as a provider participating in the Medicare program, at a minimum had constructive knowledge of the coverage criteria published in the regulations, CMS manuals, and guidance. Therefore, the Appellant knew or should have known that the products, procedures, and services would not be covered as billed. *MCPM*, ch. 30, § 40.1.

Accordingly, the Appellant is liable for the non-covered cost pursuant to § 1879(a) of the Act. The beneficiary's liability is limited, and they shall not be billed or charged for the non-covered services.

Section 1870 of the Act governs the recovery of overpayments based upon provider fault. Section 1870(b) of the Act allows for a waiver of recovery of an overpayment to a provider if it is without fault in incurring the overpayment. Section 1870(b) of the Act does not define the meaning of the term "without fault." However, a provider is without fault if it exercised reasonable care in billing and accepting Medicare payment. CMS, Medicare Financial Management Manual *(MFMM)*, pub. 100-06, ch. 3, § 90 (Effective January 2, 2004). A provider is considered not "without fault" if, it billed, or Medicare paid, for items the provider should have known were not covered. *MFMM*, ch. 3, § 90.1.H. The *MFMM* explains that the provider should have known about a policy or rule if the policy or rule is in the provider manual or in the regulations. *Id.*

Here, the Appellant is a Medicare participating supplier and had constructive notice of the widely published Medicare laws and regulations, CMS Rulings, and the applicable coverage guidelines for billing and filing claims for services furnished to Medicare beneficiaries. The Appellant submitted their claim for investigational products and failed to submit supporting documentation of its use for the treatment of the beneficiary's wounds as required by the regulations and CMS guidelines. Therefore, by failing to produce required documentation the Appellant knew or should have known that the items likely would not be paid for by Medicare. Thus, I find that the Appellant is not without fault for the overpayment under § 1870(b) of the Act. Accordingly, recovery of the overpayment is not waived.

## CONCLUSIONS OF LAW

The Appellant failed to establish that the use of Impax was safe, effective, non-experimental, and non-investigational, or that its use represented a clinically appropriate method generally accepted within the medical community, and therefore the product and services furnished were not reasonable and necessary for treatment of the beneficiary's non-pressure chronic

ulcers of the ankles. The Appellant remains liable for the costs of the non-covered products and services and repayment of the overpayment. The beneficiary's liability is limited, and the Appellant shall not bill the beneficiary for the cost of the products or services provided.

## ORDER

For the reasons discussed above, this decision is **UNFAVORABLE**. The Appellant remains liable for the costs of the non-covered products and services and repayment of the overpayment. The beneficiary's liability is limited, and they may not be billed for the costs of the products or services provided. I direct the Medicare administrative contractor to process the claim in accordance with this decision.

**SO ORDERED**

Martin McClelland
Administrative Law Judge

ulcers of the ankles. The Appellant's own submission of manuscripts, abstracts, and articles do not offer any additional support. Rather, the Appellant's submission reinforces the position that only specific HCT/Ps and certain lower extremity wounds are eligible for Medicare coverage and payment. For example, the Appellant's literature supports the use of amniotic allograft membrane products for the treatment of venous leg ulcers and diabetic foot ulcers, and not non-pressure chronic ulcers of the ankles. None of the literature specifically confirms Impax is safe and effective for the treatment of non-pressure chronic ulcers of the ankles or is a product or method generally accepted within the medical community.[2,3,4,5] Moreover, the Appellant's literature indicates the industry funded most of the published studies, which raises significant concerns about possible publication bias or selective outcome reporting in that results unfavorable to industry may not be reported or published.[6,7,8] Without sufficient peer-reviewed, evidence-based literature supporting the use of Impax for the treatment of the beneficiary's wounds, the record falls short of establishing Impax is safe and effective, non-experimental, non-investigational, and clinically appropriate for the treatment of the beneficiary's non-pressure chronic ulcers of the ankles.

Accordingly, I find that the preponderance of the evidence does not support that Impax is safe and effective, non-experimental, non-investigational, and clinically appropriate for the treatment of the beneficiary's non-pressure chronic ulcers of the ankles. The Impax product (Q4262) furnished to the beneficiary for the date of service at issue was not reasonable and necessary, and therefore neither Impax nor the related surgical services are covered or payable by Medicare. Having determined that Medicare does not cover the Impax, I will consider whether the liability of the beneficiary or the Appellant may be waived pursuant to § 1879 of the Act.

**Liability**

Section 1879(a) of the Act provides for the limitation on liability for items or serviced denied Medicare as not medically "reasonable and necessary" under § 1862(a)(1)(A) of the Act, absent knowledge by a beneficiary or provider that the items or services would not be covered. Act, § 1879(a); 42 C.F.R. § 411.400(a). A beneficiary has "knowledge" of non-

---

[2] Iveta Schmiedova, Alena Dembickaja, Ludmila Kiselakova, Beata Nowakova & Petr Slama, *Using of Amniotic Membrane Derivatives for the Treatment of Chronic Wounds*, 11 *Membranes* 941 (2021).

[3] Karen Evans & Paul J. Kim, "Overview of Treatment of Chronic Wounds," in *UpToDate*, Section Editors Russell S. Berman & Eduardo Bruera; Deputy Editors Kathryn A. Collins & Sonali Shah (Lit. review current through Dec. 2022; topic last updated July 13, 2022).

[4] Thomas E. Serena et al., *A Multicenter, Randomized, Controlled, Clinical Trial Evaluating Dehydrated Human Amniotic Membrane in the Treatment of Venous Leg Ulcers*, 150 Plast. & Reconstr. Surg. 1128 (2022).

[5] Desman E, Barlow W & Anderson LH, *Human Skin Allograft for Patients With Diabetic Foot Ulcers, Venous Leg Ulcers, or Surgical/Traumatic Wounds: A Retrospective, Descriptive Study*, 61 Wound Management & Prevention (July 2015).

[6] *Id.* at 4.

[7] Thomas E. Serena et al., *A Randomized Controlled Clinical Trial of a Hypothermically Stored Amniotic Membrane for Use in Diabetic Foot Ulcers*, 9 J. Comp. Eff. Res. 23 (2019).

[8] John P. McQuilling et al., *A Prospective Clinical Trial Evaluating Changes in the Wound Microenvironment in Patients with Chronic Venous Leg Ulcers Treated with a Hypothermically Stored Amniotic Membrane*, 19 Int'l Wound J. 144 (2022).

Form DAB-101 (12/19)

If you have additional evidence, submit it with this request for review. If you need more time, you must request an extension of time in writing now, explaining why you are unable to submit the evidence or legal argument now.

*If you are a provider, supplier, or a beneficiary represented by a provider or supplier, and your case was reconsidered by a Qualified Independent Contractor (QIC), the Medicare Appeals Council will not consider new evidence related to issues the QIC has already considered unless you show that you have a good reason for submitting it for the first time to the Medicare Appeals Council.*

**IMPORTANT: Include the HICN or MBI and ALJ Appeal Number on any letter or other material you submit.**

This request must be received within 60 calendar days after you receive the ALJ's decision or dismissal, unless we extend the time limit for good cause. We assume you received the decision or dismissal 5 calendar days after it was issued, unless you show you received it later. If this request will not be received within 65 calendar days from the date on the decision or dismissal order, please explain why on a separate sheet.

---

You must file your request for review in writing with the Medicare Appeals Council at:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

You may send the request for review by U.S. Mail, a common carrier such as FedEx, or by fax to (202) 565-0227. If you send a fax, please do not also mail a copy. ***You must send a copy of your appeal to the other parties and indicate that all parties, to include all beneficiaries, have been copied on the request for review. For claims involving multiple beneficiaries, you may submit a copy of the cover letters issued or a spreadsheet of the beneficiaries and addresses who received a copy of the request for review.***

If you have any questions about your request for review or wish to request expedited review of a claim involving authorization of your prescription drug under Medicare Part D, you may call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100. You may also visit our web site at www.hhs.gov/dab for additional information on how to file your request for review.

## PRIVACY ACT STATEMENT

The collection of information on this form is authorized by the Social Security Act (section 205(a) of title II, section 702 of title VII, section 1155 of Title XI, and sections 1852(g)(5), 1869(b)(1), 1871, 1872, and 1876(c)(5)(B) of title XVIII, as appropriate). The information provided will be used to further document your claim. Information requested on this form is voluntary, but failure to provide all or any part of the requested information may affect the determination of your claim. Information you furnish on this form may be disclosed by the Department of Health and Human Services or the Social Security Administration to another person or governmental agency only with respect to programs under the Social Security Act and to comply with Federal laws requiring the disclosure of information or the exchange of information between the Department of Health and Human Services, the Social Security Administration, or other agencies.

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Cleveland, OH**

Appeal of: **BRIAN G. LODER DPM PLC**

Beneficiary: [redacted]

Medicare No.: 

OMHA Appeal No.: **3-15259989715**

Medicare Part: **B**

Before: **Martin McClelland**
Administrative Law Judge

Index of the Administrative Record and Exhibit List

| Exhibit Record | Administrative File Reference: File Name | Page Range |
|---|---|---|
| Medical & Related: Medical Records | File 6 | 1 : 4181 |
| Position Statements: UPIC Position Paper | File 13 | 1 : 5 |
| Procedural - CMS Levels: Reconsideration | File 2 | 1 : 18 |
| Procedural - CMS Levels: Request for Reconsideration | File 3 | 1 : 218 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 4 | 1 : 3 |
| Procedural - CMS Levels: Request for Redetermination | File 5 | 1 : 43 |
| Procedural - CMS Levels: Redetermination Request/Transmittal Form | File 7 | 1 : 1 |
| Procedural - OMHA Level: Request for ALJ Hearing | File 1 | 1 : 16 |
| Procedural - OMHA Level: Request to Reschedule | File 10 | 1 : 3 |
| Procedural - OMHA Level: Amended Notice of Hearing | File 11 | 1 : 9 |
| Procedural - OMHA Level: Response to Amended Notice of Hearing | File 12 | 1 : 3 |
| Procedural - OMHA Level: Amended Notice of Hearing (2) | File 14 | 1 : 9 |
| Procedural - OMHA Level: Response to Amended Notice of Hearing (2) | File 15 | 1 : 4 |
| Procedural - OMHA Level: Notice of Hearing | File 8 | 1 : .14 |
| Procedural - OMHA Level: CoventBridge NOI | File 9 | 1 : 3 |
| Proceeding (Audios): Hearing audio | File 16 | 1 : 1 |

Department of Health and Human Services
Office of the Secretary

**OFFICE OF MEDICARE HEARINGS AND APPEALS**

Cleveland Field Office
1001 Lakeside Ave
Suite 700
Cleveland, OH 44114
216-462-4100
(216) 462-4145 (Direct)
216-615-9029 (Fax)
866-236-5089 (Toll Free)

November 19, 2025

[redacted]

## NOTICE OF DECISION

Appellant: BRIAN G. LODER DPM PLC
OMHA Appeal Number: 3-15259989731

Enclosed is the decision for the above case. This decision is based on the administrative record, including any evidence or testimony presented at the hearing, if one was held. The decision is not precedential, does not release the appellant from civil or criminal liability, and may be reopened at any time if it was procured by fraud or similar fault. In addition, the decision may be reopened within 180 calendar days from the date of the decision for good cause. Good cause exists when there is new and material evidence that was not available or known at the time of the decision and may result in a different conclusion, or when the evidence that was considered clearly shows on its face that an obvious error was made at the time of the decision.

**What if I disagree with the decision?**

If you disagree with the decision, you may file an appeal with the Medicare Appeals Council. Other parties may also appeal the decision. In addition, the Medicare Appeals Council may decide to review the decision on its own motion. If no party appeals the decision and the Medicare Appeals Council does not review the decision, the decision is binding on all parties and you and the other parties will not have the right to ask a federal court to review the decision.

If you are not already represented, you may appoint an attorney or other person to represent you.

**How much time do I have to file an appeal?**

The Medicare Appeals Council must receive your written appeal **within 60 calendar days** of the date that you receive this notice. The Medicare Appeals Council assumes you received this notice 5 calendar days after the date of the notice unless you show that you did not receive it within the 5-day period.

The Medicare Appeals Council will dismiss a late request for review unless you show that you had a good reason for not filing it on time.

**How do I file an appeal?**

To appeal, you must ask the Medicare Appeals Council to review the decision. Your appeal must be in writing, except that a request for expedited review of a Part D decision may be made orally as described below. Your appeal must identify the parts of the decision that you disagree with, and explain why you disagree.

You may submit a written request for review to the Medicare Appeals Council using one of three available methods: mail, fax, or electronic filing (E-File). **Please do not submit your request for review using more than one method**. Regardless of how you file your appeal, **you must always send a copy of your written request for review to the other parties who received a copy of the decision.**

If you are filing a written request for review, you may use the enclosed *Request for Review* (Form DAB-101), or you may write a letter containing the following:

- The beneficiary's/enrollee's name (and telephone number for Part D appeals);
- The beneficiary's/enrollee's Medicare number (Health Insurance Claim Number or Medicare Beneficiary Identifier);
- The item(s), service(s), or specific Part D drug(s) in dispute;
- The specific date(s) the item(s) or service(s) were provided, if applicable;
- For Part D appeals, the plan name;
- For Part D appeals, the OMHA Appeal Number on the adjudicator's decision;
- For Part D appeals requesting expedited review, a statement that you are requesting expedited review;
- The date of the adjudicator's decision (not required for Part D appeals); and
- Your name and signature, and, if applicable, the name and signature of your representative.

**Filing by mail:**

Mail your appeal and a copy of the enclosed decision to:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

**Filing by fax:**

Fax your appeal and a copy of the enclosed decision to **(202) 565-0227.**

**Filing by computer:**

Using your web browser, visit the Medicare Operations Division Electronic Filing System (MOD E-File) website at **https://dab.efile.hhs.gov/mod**.

To file a new appeal using MOD E-File, you will need to register by:

1. Clicking **Register** on the MOD E-File home page;
2. Entering the information requested on the "Register New Account" form; and
3. Clicking **Register Account** at the bottom of the form.

You will use the email address and password you provided during registration to access MOD E-File at **https://dab.efile.hhs.gov/mod/users/new**. You will be able to use MOD E-File to file and access the specific materials for appeals to which you are a party or a party's representative. You may check the status of any appeal on the website homepage without registering.

Once registered, you may file your appeal by:

1. Logging into MOD E-File;
2. Clicking the **File New Appeal** menu button on the top right of the screen;
3. Selecting the type of appeal you are filing (Request for Review or Request for Escalation); and
4. Entering the requested Appeal Information and uploading the requested Appeal Documents on the "File New Appeal - Medicare Operations Division" form. You are required to provide information and documents marked with an asterisk.

At a minimum, the Medicare Appeals Council requires an appellant to file a signed Request for Review and a copy of the enclosed decision. All documents should be submitted in Portable Document Format (PDF) whenever possible. Any document, including a Request for Review, will be deemed to have been filed on a given day, if it is uploaded to MOD E-File on or before 11:59 p.m. EST of that day.

Currently, the documents that may be filed electronically are the:

1. Request for Review;
2. Appointment of Representative form (OMB Form 0938-0950);
3. Copy of Administrative Law Judge or attorney adjudicator decision;
4. Memorandum or brief or other written statement in support of your appeal; and
5. Request to Withdraw your appeal

**No other documents aside from the five (5) listed categories above may be submitted through MOD E-File.**

**Filing by oral request (for expedited review only):**

Oral requests for expedited review of a Part D decision may be made by telephone to **(866) 365-8204.** You must provide the information listed in the bullet points above and a statement that you are requesting an expedited review within 60 calendar days after receipt of this notice of decision. The Medicare Appeals Council will document the oral request in writing and maintain the documentation in the case file.

Please note that your request for review will only be expedited (1) the appeal involves an issue specified in 42 C.F.R. § 423.566(b), but does not include solely a request for payment of a Part D drug that has already been furnished, and (2) the prescribing physician (or other prescriber) indicates, or the Medicare Appeals Council determines, that the standard time frame may seriously jeopardize your life, health, or ability to regain maximum function.

**<u>How will the Medicare Appeals Council respond to my appeal?</u>**

The Medicare Appeals Council will limit its review to the issues raised in the appeal, unless the appeal is filed by an unrepresented beneficiary/enrollee. It may change the parts of the decision that you agree with. It may adopt, modify, or reverse the decision, in whole or in part, or it may send the case back to OMHA for further action. It may also dismiss your appeal.

**<u>Questions?</u>**

You may call or write our office. A toll-free phone number and mailing address are at the top of this notice.

Additional information about filing an appeal with the Medicare Appeals Council is available at http://www.hhs.gov/dab/. You can also call the Medicare Appeals Council's staff in the Medicare

Operations Division of the Departmental Appeals Board at (202) 565-0100 or (866) 365-8204 (toll free), if you have questions about filing an appeal.

cc:

[redacted]

QIC - C2C B North
301 W Bay Street
Ste. 1110
Jacksonville, FL 32202

Enclosures:
OMHA-152, Decision
DAB-101, Request for Review
OMHA-156, Exhibit List

Department of Health and Human Services
OFFICE OF MEDICARE HEARINGS AND APPEALS
Cleveland, OH

| | | | |
|---|---|---|---|
| Appeal of: | **BRIAN G. LODER DPM PLC** | OMHA Appeal No.: | **3-15259989731** |
| Beneficiary: | [redacted] | Medicare Part: | B |
| Medicare No.: | | Before: | **Martin McClelland** Administrative Law Judge |

## DECISION

After carefully considering the evidence and arguments presented in the record and at hearing, I enter an **UNFAVORABLE** decision. The record does not support that Dual Layer Impax Membrane is safe, effective, non-experimental, and non-investigational for the treatment of the beneficiary's non-pressure chronic ulcer wounds, and therefore the products and services provided were not reasonable and necessary. The Appellant is not entitled to Medicare coverage or payment. The Appellant remains liable for the costs of the non-covered products and services and repayment of the overpayment. The beneficiary's liability is limited, and the Appellant may not bill the beneficiary for the cost of the non-covered products or services.

## PROCEDURAL HISTORY

The Appellant submitted a claim to the Medicare Administrative Contractor Wisconsin Physicians Services (WPS)(Contractor) for reimbursement of 24 units of Dual Layer Impax Membrane (Impax) billed under HCPCS code Q4262. The date of service at issue is May 2, 2023. Initially, the Contractor allowed payment on the claim. Subsequently, the Medicare Unified Program Integrity Contractor Covent Bridge Group (UPIC) determined that an overpayment had been made. File 13, pp. 2-5. On redetermination, the Contractor determined that the Appellant's document submission did not support the use of Impax to treat the beneficiary's wounds as medically reasonable and necessary. File 3, p. 8. The Appellant then requested reconsideration by the Qualified Independent Contractor C2C Innovative Solutions, Inc. (QIC). File 3, p. 1. On reconsideration, the QIC also determined that the use of Impax for the treatment of the beneficiary's wounds was experimental and investigational, and therefore not medically reasonable and necessary. Therefore, the QIC determined that no payment could be allowed for the services, and that the overpayment was valid. File 2, pp. 3-5.

The Office of Medicare Hearings and Appeals (OMHA) received the Appellant's request for an Administrative Law Judge (ALJ) hearing, and all jurisdictional requirements were satisfied. File 1, p. 2. The Appellant identified William O'Malley as its appointed

representative. *Id.* at 15. The OMHA issued a Notice of Hearing setting the date and time for hearing. Files 8, 11, and 14.

On October 30, 2025, the telephone hearing was conducted as scheduled from the Cleveland Field Office. The Appellant was represented by William O'Malley who provided testimony under oath. In lieu of an appearance, the UPIC submitted a position paper for consideration. File 13. Documents previously marked and identified as Files 1-15 were admitted into the record without objection. The administrative record is now closed.

## ISSUES

1. **Whether the record supports Medicare coverage and payment for the products and services furnished to the beneficiary for the date of service at issue.**

2. **Whether § 1879 of the Social Security Act (Act) provides relief to limit a party's liability.**

3. **Whether § 1870 of the Act provides a waiver of liability for the overpayment.**

## APPLICABLE LAW AND POLICY

### Medical Necessity

Section 1862(a)(1)(A) of the Act bars coverage of items and services that are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member. Section 1833(e) of the Act provides that no claim for Medicare coverage may be paid unless "there has been furnished such information as may be necessary to determine the amounts due such provider."

ALJs are bound by statutes, regulations, National Coverage Determinations (NCDs) and CMS Rulings. 42 C.F.R. § 405.1060(a)(4), 405. 1063. ALJs are not bound by program guidance such as Local Coverage Determinations (LCDs), program memoranda or manual instructions. However, an ALJ must give such policies substantial deference if applicable in a particular case. 42 C.F.R. § 405.1062(a). If any ALJ declines to follow a policy in a particular case, the rational for not following that policy must be explained. 42 C.F.R. § 405.1062(b).

There are no NCDs or LCDs applicable to the present matter. However, the following are relevant to the instant matter:

WPS, *Skin Substitute Grafts/Cellular and Tissue-Based Products for the Treatment of Diabetic Foot Ulcers and Venous Leg Ulcers*, DL 39865 (Proposed LCD).

WPS, *Billing and Coding: Skin Substitutes Grafts/Cellular Tissue-Based Products for the Treatment of Diabetic Foot Ulcers and Venous Leg Ulcers*, A59740 (Future Effective).

CMS, Medicare Program Integrity Manual (*MPIM*), publication 100-08, chapter 3, section 3.6.2.2, sets forth the coverage criteria for items and services that are medically reasonable and necessary when there is no effective NCD or LCD.

**Liability**

Section 1879 of the Act provides that when Medicare excludes coverage pursuant to § 1862(a) (1) of the Act, payment may nevertheless be made for items or services if neither the beneficiary nor the provider or supplier knew, or could not reasonably be expected to have known, that the items or services would not be covered or payable by Medicare. Section 1870 of the Act governs the recovery of overpayments based upon provider fault. Section 1870(b) of the Act allows for a waiver of recovery of an overpayment to a provider if it is without fault in incurring the overpayment.

## FINDINGS OF FACT AND ANALYSIS

This appeal concerns the use of Impax to treat the beneficiary's non-pressure chronic ulcer wounds of the ankles. Impax is a human allograft tissue that is regulated as a human cells, tissues, and cellular and tissue-based product (HCT/P) as defined by 21 C.F.R. Part 1271. Throughout this appeal, the Appellant has maintained that the use of Impax was medically reasonable, necessary, and appropriate as a protective covering to aid in the healing of the beneficiary's wounds. File 3, pp. 3, 140. On May 2, 2023, the beneficiary presented to the Appellant's clinic for a wound assessment and care. The beneficiary was diagnosed with non-pressure chronic ulcers of the right and left ankle with fat layers exposed. Prior wound care treatments included bilateral Unna boots, compression therapy, elevation, narcotic pain relievers, and patient education. The plan of treatment called for debridement and application of Impax to the left and right ankle wounds. *Id.* at 14-18.

The Appellant now seeks Medicare reimbursement for the 24 units of Impax applied to the beneficiary's ankle wounds on the date of service at issue. At the most recent level of the appeals process, the QIC denied payment on the Appellant's claim because it determined that the use of Impax for non-pressure chronic ulcers of the ankles was experimental and investigational as denoted by the Q-code status nomenclature, and therefore no payment could be made under Medicare. File 2, pp. 3-5.

In its position paper, the UPIC presented several additional arguments against Medicare coverage and payment. First, it contended that Impax was not an appropriate treatment for the beneficiary's ankle wounds. According to the UPIC, the beneficiary's medical records showed that prior use of skin substitutes had not resulted in significant clinical improvement and that there was insufficient evidence demonstrating a failure of conservative treatment. In response, the Appellant pointed to an out-of-jurisdiction LCD to support the claim that Impax is safe, effective, non-experimental, and non-investigational. However, the UPIC determined that the cited LCD did not apply to the product or the date of service within the Contractor's jurisdiction. Moreover, the UPIC stated that even if the LCD were applicable, the Appellant's claim would still be denied because the services did not meet the necessity requirements under that LCD. File 13, pp. 2-5.

Throughout the appeals process, the Appellant has maintained that the use of Impax was medically reasonable, necessary, and appropriate as a protective covering to aid in the healing of the beneficiary's wounds. File 3, pp. 3, 140. The Appellant argues that the QIC's denial was inappropriate because Impax's Q-code status does not preclude individual

consideration of medical necessity. Q-codes are administrative billing tools, not indicators of medical necessity. If CMS intended for Q-coded products like Impax to be automatically considered investigational or non-covered, it would have issued a policy to that effect, and no such policy exists. File 1, pp. 4-5. The Appellant also argues that determinations related to the safety and effectiveness of medical products like Impax fall exclusively within the jurisdiction of the U.S. Food and Drug Administration (FDA). According to the FDA, Impax is exempt from FDA premarket approval requirements and thorough formal regulatory reviews by the FDA satisfies the federal requirements for establishing a product's safety profile. More specifically, the Appellant argues that Impax's safety and effectiveness are supported by the FDA's classification of Impax as an HCT/P under § 361 of the Public Health Services Act.[1] File 1, pp. 4-15; Hearing Recording, October 30, 2025.

The Appellant further argues that Impax cannot be considered experimental or investigational when CMS contractors have issued LCDs that provide coverage guidance for skin substitutes. As referenced in this matter, CGS's LCD L36690 *Wound Application of Cellular and/or Tissue Based Products (CTPs), Lower Extremities* and Palmetto's future LCD L39806 *Skin Substitute Grafts/ Cellular and Tissue-Based Products for the Treatment of Diabetic Foot Ulcers and Venous Leg Ulcers* are evidence that human tissue allografts used to treat Medicare beneficiaries are recognized as safe, effective, non-experimental, and non-investigational products, and therefore it is believed that skin substitutes cannot be experimental or investigational when they are currently being covered under existing and future LCDs. File 3, pp. 2-6; Hearing recording. Lastly, the Appellant asserts that Impax's safety, effectiveness, and appropriateness is supported by peer-reviewed, evidence-based literature for chronic ulcer treatment. The Appellant submitted articles of studies for patients diagnosed with diabetic foot ulcers or other pressure injuries and wounds who received skin substitutes to support Impax's safety and effectiveness. File 3, pp. 147-219.

To summarize, contrary to the CMS contractors' belief, it is the Appellant's position that Impax's safety and effectiveness has already been proven and that Impax was medically necessary and clinically appropriate for the management and treatment of the beneficiary's wounds. Therefore, according to the Appellant, they are entitled to Medicare coverage and payment. File 1, pp. 4-8; Hearing recording.

**Medical Necessity**

After full consideration of both positions, I find the preponderance of the evidence does not support that Impax was medically reasonable and necessary for the treatment of the beneficiary's non-pressure chronic ulcers of the right and left ankles. I further find the record lacks sufficient support that Impax is safe, effective, non-experimental, non-investigational, and clinically appropriate for the treatment of the beneficiary's non-pressure chronic ulcers of the right and left ankles.

Here, the Appellant's reliance on Impax's categorization as an FDA regulated § 361 HCT/P product does not prove Impax's safety and effectiveness. Despite the Appellant's alleged homologous use of the product, the FDA's categorization of Impax as an HCT/P product is

[1] 21 C.F.R. § 1271.10(a) sets out the criteria that form the foundation of FDA's tiered, risk-based approach to regulating HCT/Ps. HCT/Ps that meet all of the criteria in 21 C.F.R. § 1271.10(a) are subject only to regulation under § 361 of the Public Health Service Act (PHS Act) and the regulations in 21 C.F.R. part 1271. An HCT/P that falls into this category is sometimes referred to as a "361 HCT/P" and no premarket authorization is required.

only one factor in making a Medicare coverage and payment determination. 42 C.F.R. § 405.201(a)(1). Generally, a product's categorization as a § 361 HCT/P product with the FDA signifies that the product has not had to undergo rigorous clinical trials in both animal and human populations before being marketed to the public. As a result, the FDA permits manufacturers to identify products that they do not believe have to be regulated under § 351, and instead seek to have the product regulated under § 361. The mere acceptance of a registration by the FDA yields no support that Impax is safe and effective, not experimental or investigational for treatment of the beneficiary's wounds. Therefore, without more evidence from the Appellant to support Impax's safety, effectiveness, and non-investigational nature for treating non-pressure chronic ulcers of the ankles, the Appellant has not shown that Impax is reasonable or medically necessary for treatment of the beneficiary's wounds.

Moreover, the fact that that a drug, medical service, or procedure has obtained approval, exception, or exemption under FDA regulations does not mean that Medicare will guarantee coverage or payment for that drug, service, or procedure without conducting its own review for medical necessity. CMS and their contractors, in analyzing whether a particular item or service is medically reasonable and necessary, will make an independent inquiry into whether the item or service is safe and effective and not experimental or investigational. *MPIM*, ch. 3, §3.6.2.2. CMS and its contractors are also charged with inquiring into whether the item or service is supported by "published authoritative evidence derived from definitive randomized clinical trials or other definitive studies." *Id.* CMS's responsibility, unlike the FDA's, includes deciding what items and services it can and should pay for, how it should accomplish payment, and how much to pay. 42 C.F.R. §405.920. Therefore, the contractors' review of the Appellant's claim is focused on the health needs of the Medicare beneficiaries they serve, items and services that fall within a Medicare benefit category, and whether the services are "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member" under § 1862(a)(1)(A) of the Act. Lastly, whether a drug, medical service, or procedure is medically necessary is a clinical and coverage determination and does not rest on the assignment of a Q-code or any other specific billing code. The medical record documentation must substantiate the necessity of the services provided, regardless of the code used on the claim form.

Accordingly, to carry out its review in accordance with § 1862(a)(1)(A) of the Act, CMS contractors may issue LCDs that are determinations on whether a particular item or service is medically reasonable and necessary and covered by Medicare. Act § 1869(f)(2)(B). However, if there is no applicable LCD effective for the item, service, or dates of service at issue, then Medicare considers an item or service reasonable and necessary if it safe and effective, not experimental or investigational, and appropriate. *MPIM*, ch. 3, §3.6.2.2.

In the presenting matter, the Contractor has not issued an LCD effective for Impax for the product, service, or date of service at issue. While I acknowledge the Contractor currently has a future LCD DL39865 and Billing and Coding Article A59740 pertaining to skin substitutes, neither were effective for the product, service, or date of service at issue. Further, the Contractor's DL39865 lists Impax as a non-covered product and Billing and Coding Article A59740 list Impax as a Group 4 non-covered code. Likewise, CGS's LCD L36690 and companion Billing and Coding Article A56696 do not guarantee coverage of Impax for the treatment of non-pressure chronic ulcers of the ankles. To be clear, none of these policies are dispositive of the instant matter, and I have not considered them to be factors supporting

an unfavorable outcome because they are not applicable to the issues before me. However, I do acknowledge that these LCDs and Articles do not otherwise overtly support the Appellant's position that Impax was safe, effective, non-experimental, non-investigational, and clinically appropriate for treatment of the beneficiary's wounds.

Thus, in determining whether an item is reasonable and necessary, Medicare Program Integrity Manual (*MPIM*), publication 100-08, chapter 3, section 3.6.2.2 provides that if no LCD exists for a particular item or service, Medicare contractors shall consider an item or service to be reasonable and necessary if the item or service meets the following criteria:

- It is safe and effective;
- It is not experimental or investigational; and
- It is appropriate, including the duration and frequency in terms of whether the service or item is:
    - Furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the beneficiary's condition or to improve the function of a malformed body member;
    - Furnished in a setting appropriate to the beneficiary's medical needs and condition;
    - Ordered and furnished by qualified personnel; and,
    - One that meets, but does not exceed, the beneficiary's medical need.

Additionally, the evidence must support the coverage determination, including "available evidence of general acceptance by the medical community, such as published original research in peer-reviewed medical journals, systematic reviews and meta-analyses, evidence-based consensus statements and clinical guidelines." *Id.* at §13.5.3.

Here, the Appellant argued that Impax was used as a protective wound covering to aid in the healing process and that use "aligned with the manufacturer's indications [and] objective intent" and as a "commonly accepted method in wound care." File 3, pp. 3-4; Hearing recording. However, the Appellant did not provide sufficient evidence to support this position. Specifically, the record lacks documentation from the manufacturer establishing the intended purpose, indications, and limitations for the use of Impax. The file contains a product label issued by Legacy Medical Consultants, a distributor of Impax, rather than by Surgenex, LLC, the manufacturer. *Id.* at 140-141. Absent the product label or comparable documentation issued by Surgenex, it cannot be determined whether the Appellant's use of Impax was consistent with the manufacturer's stated indications or objective intent. Moreover, due to the insufficiency of the record, it cannot be determined whether the use of Impax for this beneficiary was clinically appropriate as a protective wound covering for the beneficiary's wounds.

Further, the Appellant failed to establish that the use of Impax was safe, effective, non-experimental, and non-investigational, or that its use represented a clinically appropriate method generally accepted within the medical community. Here, the record lacks sufficient peer-reviewed, evidence-based literature to support that Impax is safe, effective, non-experimental, and non-investigational for treatment of the beneficiary's non-pressure chronic ulcers of the ankles. The Appellant's own submission of manuscripts, abstracts, and articles do not offer any additional support. Rather, the Appellant's submission reinforces the position that only specific HCT/Ps and certain lower extremity wounds are eligible for

Medicare coverage and payment. For example, the Appellant's literature supports the use of amniotic allograft membrane products for the treatment of venous leg ulcers and diabetic foot ulcers, and not non-pressure chronic ulcers of the ankles. None of the literature specifically confirms Impax is safe and effective for the treatment of non-pressure chronic ulcers of the ankles or is a product or method generally accepted within the medical community.[2,3,4,5] Moreover, the Appellant's literature indicates the industry funded most of the published studies, which raises significant concerns about possible publication bias or selective outcome reporting in that results unfavorable to industry may not be reported or published.[6,7,8] Without sufficient peer-reviewed, evidence-based literature supporting the use of Impax for the treatment of the beneficiary's wounds, the record falls short of establishing Impax is safe and effective, non-experimental, non-investigational, and clinically appropriate for the treatment of the beneficiary's non-pressure chronic ulcers of the ankles.

Accordingly, I find that the preponderance of the evidence does not support that Impax is safe and effective, non-experimental, non-investigational, and clinically appropriate for the treatment of the beneficiary's non-pressure chronic ulcers of the ankles. The Impax product (Q4262) furnished to the beneficiary for the date of service at issue was not reasonable and necessary, and therefore neither Impax nor the related surgical services are covered or payable by Medicare. Having determined that Medicare does not cover the Impax, I will consider whether the liability of the beneficiary or the Appellant may be waived pursuant to § 1879 of the Act.

**Liability**

Section 1879(a) of the Act provides for the limitation on liability for items or serviced denied Medicare as not medically "reasonable and necessary" under § 1862(a)(1)(A) of the Act, absent knowledge by a beneficiary or provider that the items or services would not be covered. Act, § 1879(a); 42 C.F.R. § 411.400(a). A beneficiary has "knowledge" of non-coverage when he or she has been given written notice of non-coverage by the provider. 42 C.F.R. § 411.404(a). A provider may have knowledge, in relevant part, based on their written notice of non-coverage to the beneficiary or their own experience, actual notice, or constructive notice. 42 C.F.R. § 411.406. CMS has provided further guidance on financial liability protections in its Medicare Claims Processing Manual (*MCPM*), publication 100-04, chapter 30.

[2] Iveta Schmiedova, Alena Dembickaja, Ludmila Kiselakova, Beata Nowakova & Petr Slama, *Using of Amniotic Membrane Derivatives for the Treatment of Chronic Wounds*, 11 Membranes 941 (2021).

[3] Karen Evans & Paul J. Kim, "Overview of Treatment of Chronic Wounds," in *UpToDate*, Section Editors Russell S. Berman & Eduardo Bruera; Deputy Editors Kathryn A. Collins & Sonali Shah (Lit. review current through Dec. 2022; topic last updated July 13, 2022).

[4] Thomas E. Serena et al., *A Multicenter, Randomized, Controlled, Clinical Trial Evaluating Dehydrated Human Amniotic Membrane in the Treatment of Venous Leg Ulcers*, 150 Plast. & Reconstr. Surg. 1128 (2022).

[5] Desman E, Bartow W & Anderson LH, *Human Skin Allograft for Patients With Diabetic Foot Ulcers, Venous Leg Ulcers, or Surgical/Traumatic Wounds: A Retrospective, Descriptive Study*, 61 Wound Management & Prevention (July 2015).

[6] *Id.* at 4.

[7] Thomas E. Serena et al., *A Randomized Controlled Clinical Trial of a Hypothermically Stored Amniotic Membrane for Use in Diabetic Foot Ulcers*, 9 J. Comp. Eff. Res. 23 (2019).

[8] John P. McQuilling et al., *A Prospective Clinical Trial Evaluating Changes in the Wound Microenvironment in Patients with Chronic Venous Leg Ulcers Treated with a Hypothermically Stored Amniotic Membrane*, 19 Int'l Wound J. 144 (2022).

There is no indication in the record that the Appellant provided sufficient written notice to the beneficiary that Medicare might not cover the products, procedures, or services at issue. Therefore, I find that the beneficiary did not know and could not reasonably have been expected to know that the products, procedures, and services at issue may not be covered by Medicare. Accordingly, the beneficiary is not liable for the cost of the non-covered items and services pursuant to § 1879(a) of the Act. Conversely, I find that the Appellant, as a provider participating in the Medicare program, at a minimum had constructive knowledge of the coverage criteria published in the regulations, CMS manuals, and guidance. Therefore, the Appellant knew or should have known that the products, procedures, and services would not be covered as billed. *MCPM*, ch. 30, § 40.1.

Accordingly, the Appellant is liable for the non-covered cost pursuant to § 1879(a) of the Act. The beneficiary's liability is limited, and they shall not be billed or charged for the non-covered services.

Section 1870 of the Act governs the recovery of overpayments based upon provider fault. Section 1870(b) of the Act allows for a waiver of recovery of an overpayment to a provider if it is without fault in incurring the overpayment. Section 1870(b) of the Act does not define the meaning of the term "without fault." However, a provider is without fault if it exercised reasonable care in billing and accepting Medicare payment. CMS, Medicare Financial Management Manual *(MFMM)*, pub. 100-06, ch. 3, § 90 (Effective January 2, 2004). A provider is considered not "without fault" if, it billed, or Medicare paid, for items the provider should have known were not covered. *MFMM*, ch. 3, § 90.1.H. The *MFMM* explains that the provider should have known about a policy or rule if the policy or rule is in the provider manual or in the regulations. *Id.*

Here, the Appellant is a Medicare participating supplier and had constructive notice of the widely published Medicare laws and regulations, CMS Rulings, and the applicable coverage guidelines for billing and filing claims for services furnished to Medicare beneficiaries. The Appellant submitted their claim for investigational products and failed to submit supporting documentation of its use for the treatment of the beneficiary's wounds as required by the regulations and CMS guidelines. Therefore, by failing to produce the required documentation the Appellant knew or should have known that the items likely would not be paid for by Medicare. Thus, I find that the Appellant is not without fault for the overpayment under § 1870(b) of the Act. Accordingly, recovery of the overpayment is not waived.

## CONCLUSIONS OF LAW

The record failed to establish that the use of Impax was safe, effective, non-experimental, and non-investigational, or that its use represented a clinically appropriate method generally accepted within the medical community, and therefore the product and services furnished were not reasonable and necessary for treatment of the beneficiary's chronic non-pressure ulcers. The Appellant remains liable for the costs of the non-covered products and services and repayment of the overpayment. The beneficiary's liability is limited, and the Appellant shall not bill the beneficiary for the cost of the non-covered products or services provided.

## ORDER

For the reasons discussed above, this decision is **UNFAVORABLE.** The Appellant remains liable for the costs of the non-covered products and services and repayment of the overpayment. The beneficiary's liability is limited, and they may not be billed for the costs of the products or services provided. I direct the Medicare administrative contractor to process the claim in accordance with this decision.

**SO ORDERED**

Martin McClelland
Administrative Law Judge

If you have additional evidence, submit it with this request for review. If you need more time, you must request an extension of time in writing now, explaining why you are unable to submit the evidence or legal argument now.

*If you are a provider, supplier, or a beneficiary represented by a provider or supplier, and your case was reconsidered by a Qualified Independent Contractor (QIC), the Medicare Appeals Council will not consider new evidence related to issues the QIC has already considered unless you show that you have a good reason for submitting it for the first time to the Medicare Appeals Council.*

**IMPORTANT: Include the HICN or MBI and ALJ Appeal Number on any letter or other material you submit.**

This request must be received within 60 calendar days after you receive the ALJ's decision or dismissal, unless we extend the time limit for good cause. We assume you received the decision or dismissal 5 calendar days after it was issued, unless you show you received it later. If this request will not be received within 65 calendar days from the date on the decision or dismissal order, please explain why on a separate sheet.

---

You must file your request for review in writing with the Medicare Appeals Council at:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

You may send the request for review by U.S. Mail, a common carrier such as FedEx, or by fax to (202) 565-0227. If you send a fax, please do not also mail a copy. ***You must send a copy of your appeal to the other parties and indicate that all parties, to include all beneficiaries, have been copied on the request for review. For claims involving multiple beneficiaries, you may submit a copy of the cover letters issued or a spreadsheet of the beneficiaries and addresses who received a copy of the request for review.***

If you have any questions about your request for review or wish to request expedited review of a claim involving authorization of your prescription drug under Medicare Part D, you may call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100. You may also visit our web site at www.hhs.gov/dab for additional information on how to file your request for review.

## PRIVACY ACT STATEMENT

The collection of information on this form is authorized by the Social Security Act (section 205(a) of title II, section 702 of title VII, section 1155 of Title XI, and sections 1852(g)(5), 1869(b)(1), 1871, 1872, and 1876(c)(5)(B) of title XVIII, as appropriate). The information provided will be used to further document your claim. Information requested on this form is voluntary, but failure to provide all or any part of the requested information may affect the determination of your claim. Information you furnish on this form may be disclosed by the Department of Health and Human Services or the Social Security Administration to another person or governmental agency only with respect to programs under the Social Security Act and to comply with Federal laws requiring the disclosure of information or the exchange of information between the Department of Health and Human Services, the Social Security Administration, or other agencies.

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Cleveland, OH**

| | | | |
|---|---|---|---|
| Appeal of: | **BRIAN G. LODER DPM PLC** | OMHA Appeal No.: | **3-15259989731** |
| Beneficiary: | [redacted] | Medicare Part: | **B** |
| Medicare No.: | [redacted] | Before: | **Martin McClelland**<br>Administrative Law Judge |

Index of the Administrative Record and Exhibit List

| **Exhibit Record** | **Administrative File Reference** File Name | Page Range | |
|---|---|---|---|
| Medical & Related: Medical Records | File 6 | 1 | : 4181 |
| Position Statements: UPIC Position Paper | File 13 | 1 | : 5 |
| Procedural - CMS Levels: Reconsideration | File 2 | 1 | : 18 |
| Procedural - CMS Levels: Request for Reconsideration | File 3 | 1 | : 219 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 4 | 1 | : 3 |
| Procedural - CMS Levels: Request for Redetermination | File 5 | 1 | : 43 |
| Procedural - CMS Levels: Redetermination Request/Transmittal Form | File 7 | 1 | : 1 |
| Procedural - OMHA Level: Request for ALJ Hearing | File 1 | 1 | : 16 |
| Procedural - OMHA Level: Request to Reschedule | File 10 | 1 | : 3 |
| Procedural - OMHA Level: Amended Notice of Hearing | File 11 | 1 | : 9 |
| Procedural - OMHA Level: Response to Amended Notice of Hearing | File 12 | 1 | : 3 |
| Procedural - OMHA Level: Amended Notice of Hearing (2) | File 14 | 1 | : 9 |
| Procedural - OMHA Level: Response to Amended Notice of Hearing (2) | File 15 | 1 | : 4 |
| Procedural - OMHA Level: Notice of Hearing | File 8 | 1 | : 14 |
| Procedural - OMHA Level: CoventBridge NOI | File 9 | 1 | : 3 |
| Proceeding (Audios): Hearing audio | File 16 | 1 | : 1 |

Department of Health and Human Services
Office of the Secretary

**OFFICE OF MEDICARE HEARINGS AND APPEALS**

Cleveland Field Office
1001 Lakeside Ave
Suite 700
Cleveland, OH 44114
216-462-4100
(216) 462-4145 (Direct)
216-615-9029 (Fax)
866-236-5089 (Toll Free)

November 19, 2025

[redacted]

## NOTICE OF DECISION

Appellant: BRIAN G. LODER DPM PLC
OMHA Appeal Number: 3-15259931569

Enclosed is the decision for the above case. This decision is based on the administrative record, including any evidence or testimony presented at the hearing, if one was held. The decision is not precedential, does not release the appellant from civil or criminal liability, and may be reopened at any time if it was procured by fraud or similar fault. In addition, the decision may be reopened within 180 calendar days from the date of the decision for good cause. Good cause exists when there is new and material evidence that was not available or known at the time of the decision and may result in a different conclusion, or when the evidence that was considered clearly shows on its face that an obvious error was made at the time of the decision.

**What if I disagree with the decision?**

If you disagree with the decision, you may file an appeal with the Medicare Appeals Council. Other parties may also appeal the decision. In addition, the Medicare Appeals Council may decide to review the decision on its own motion. If no party appeals the decision and the Medicare Appeals Council does not review the decision, the decision is binding on all parties and you and the other parties will not have the right to ask a federal court to review the decision.

If you are not already represented, you may appoint an attorney or other person to represent you.

**How much time do I have to file an appeal?**

The Medicare Appeals Council must receive your written appeal **within 60 calendar days** of the date that you receive this notice. The Medicare Appeals Council assumes you received this notice 5 calendar days after the date of the notice unless you show that you did not receive it within the 5-day period.

The Medicare Appeals Council will dismiss a late request for review unless you show that you had a good reason for not filing it on time.

**How do I file an appeal?**

To appeal, you must ask the Medicare Appeals Council to review the decision. Your appeal must be in writing, except that a request for expedited review of a Part D decision may be made orally as described below. Your appeal must identify the parts of the decision that you disagree with, and explain why you disagree.

You may submit a written request for review to the Medicare Appeals Council using one of three available methods: mail, fax, or electronic filing (E-File). **Please do not submit your request for review using more than one method**. Regardless of how you file your appeal, **you must always send a copy of your written request for review to the other parties who received a copy of the decision.**

If you are filing a written request for review, you may use the enclosed *Request for Review* (Form DAB-101), or you may write a letter containing the following:

- The beneficiary's/enrollee's name (and telephone number for Part D appeals);
- The beneficiary's/enrollee's Medicare number (Health Insurance Claim Number or Medicare Beneficiary Identifier);
- The item(s), service(s), or specific Part D drug(s) in dispute;
- The specific date(s) the item(s) or service(s) were provided, if applicable;
- For Part D appeals, the plan name;
- For Part D appeals, the OMHA Appeal Number on the adjudicator's decision;
- For Part D appeals requesting expedited review, a statement that you are requesting expedited review;
- The date of the adjudicator's decision (not required for Part D appeals); and
- Your name and signature, and, if applicable, the name and signature of your representative.

**Filing by mail:**

Mail your appeal and a copy of the enclosed decision to:

> Department of Health and Human Services
> Departmental Appeals Board
> Medicare Appeals Council, MS 6127
> Cohen Building Room G-644
> 330 Independence Ave., S.W.
> Washington, D.C. 20201

**Filing by fax:**

Fax your appeal and a copy of the enclosed decision to **(202) 565-0227.**

**Filing by computer:**

Using your web browser, visit the Medicare Operations Division Electronic Filing System (MOD E-File) website at **https://dab.efile.hhs.gov/mod**.

To file a new appeal using MOD E-File, you will need to register by:

1. Clicking **Register** on the MOD E-File home page;
2. Entering the information requested on the "Register New Account" form; and
3. Clicking **Register Account** at the bottom of the form.

You will use the email address and password you provided during registration to access MOD E-File at **https://dab.efile.hhs.gov/mod/users/new**. You will be able to use MOD E-File to file and access the specific materials for appeals to which you are a party or a party's representative. You may check the status of any appeal on the website homepage without registering.

Once registered, you may file your appeal by:

1. Logging into MOD E-File;
2. Clicking the **File New Appeal** menu button on the top right of the screen;
3. Selecting the type of appeal you are filing (Request for Review or Request for Escalation); and
4. Entering the requested Appeal Information and uploading the requested Appeal Documents on the "File New Appeal - Medicare Operations Division" form. You are required to provide information and documents marked with an asterisk.

At a minimum, the Medicare Appeals Council requires an appellant to file a signed Request for Review and a copy of the enclosed decision. All documents should be submitted in Portable Document Format (PDF) whenever possible. Any document, including a Request for Review, will be deemed to have been filed on a given day, if it is uploaded to MOD E-File on or before 11:59 p.m. EST of that day.

Currently, the documents that may be filed electronically are the:

1. Request for Review;
2. Appointment of Representative form (OMB Form 0938-0950);
3. Copy of Administrative Law Judge or attorney adjudicator decision;
4. Memorandum or brief or other written statement in support of your appeal; and
5. Request to Withdraw your appeal

**No other documents aside from the five (5) listed categories above may be submitted through MOD E-File.**

**Filing by oral request (for expedited review only):**

Oral requests for expedited review of a Part D decision may be made by telephone to **(866) 365-8204.** You must provide the information listed in the bullet points above and a statement that you are requesting an expedited review within 60 calendar days after receipt of this notice of decision. The Medicare Appeals Council will document the oral request in writing and maintain the documentation in the case file.

Please note that your request for review will only be expedited (1) the appeal involves an issue specified in 42 C.F.R. § 423.566(b), but does not include solely a request for payment of a Part D drug that has already been furnished, and (2) the prescribing physician (or other prescriber) indicates, or the Medicare Appeals Council determines, that the standard time frame may seriously jeopardize your life, health, or ability to regain maximum function.

**<u>How will the Medicare Appeals Council respond to my appeal?</u>**

The Medicare Appeals Council will limit its review to the issues raised in the appeal, unless the appeal is filed by an unrepresented beneficiary/enrollee. It may change the parts of the decision that you agree with. It may adopt, modify, or reverse the decision, in whole or in part, or it may send the case back to OMHA for further action. It may also dismiss your appeal.

**<u>Questions?</u>**

You may call or write our office. A toll-free phone number and mailing address are at the top of this notice.

Additional information about filing an appeal with the Medicare Appeals Council is available at http://www.hhs.gov/dab/. You can also call the Medicare Appeals Council's staff in the Medicare

Operations Division of the Departmental Appeals Board at (202) 565-0100 or (866) 365-8204 (toll free), if you have questions about filing an appeal.

cc:

[redacted]

QIC - C2C B North
301 W Bay Street
Ste. 1110
Jacksonville, FL 32202

Enclosures:
OMHA-152, Decision
DAB-101, Request for Review
OMHA-156, Exhibit List

Department of Health and Human Services
OFFICE OF MEDICARE HEARINGS AND APPEALS
Cleveland, OH

| | |
|---|---|
| Appeal of: BRIAN G. LODER DPM PLC | OMHA Appeal No.: 3-15259931569 |
| Beneficiary: [redacted] | Medicare Part: B |
| Medicare No.: [redacted] | Before: Martin McClelland, Administrative Law Judge |

## DECISION

After carefully considering the evidence and arguments presented in the record and at hearing, I enter an **UNFAVORABLE** decision. The record does not support that Dual Layer Impax Membrane is safe, effective, non-experimental, non-investigational, and clinically appropriate for the treatment of the beneficiary's non-pressure chronic ulcer wounds, and therefore the products and services provided were not reasonable and necessary. The Appellant is not entitled to Medicare coverage or payment. The Appellant remains liable for the costs of the non-covered products and services and repayment of the overpayment. The beneficiary's liability is limited, and the Appellant may not bill the beneficiary for the cost of the non-covered products or services.

## PROCEDURAL HISTORY

The Appellant submitted a claim to the Medicare Administrative Contractor Wisconsin Physicians Services (WPS)(Contractor) for reimbursement of 32 units of Dual Layer Impax Membrane (Impax) billed under HCPCS code Q4262 and integumentary/musculoskeletal surgery services billed under HCPCS codes 15271 and 15272. The date of service at issue is May 16, 2023. Initially, the Contractor allowed payment on the claim. Subsequently, the Medicare Unified Program Integrity Contractor Covent Bridge Group (UPIC) determined that an overpayment had been made. File 13, pp. 2-5. On redetermination, the Contractor determined that the Appellant's document submission did not support the use of Impax to treat the beneficiary's wounds as medically reasonable and necessary. File 3, p. 8. The Appellant then requested reconsideration by the Qualified Independent Contractor C2C Innovative Solutions, Inc. (QIC). File 3, p. 1. On reconsideration, the QIC also determined that the use of Impax for the treatment of the beneficiary's wounds was experimental and investigational, and therefore not medically reasonable and necessary. Therefore, the QIC determined that no payment could be allowed for the services and that the overpayment was valid. File 2, pp. 3-5.

The Office of Medicare Hearings and Appeals (OMHA) received the Appellant's request for an Administrative Law Judge (ALJ) hearing, and all jurisdictional requirements were

satisfied. File 1, p. 2. The Appellant identified William O'Malley as its appointed representative. *Id.* at 18. The OMHA issued a Notice of Hearing setting the date and time for hearing. Files 8, 11, and 14.

On October 30, 2025, the telephone hearing was conducted as scheduled from the Cleveland Field Office. The Appellant was represented by William O'Malley who provided testimony under oath. In lieu of an appearance, the UPIC submitted a position paper for consideration. File 13. Documents previously marked and identified as Files 1-15 were admitted into the record without objection. The administrative record is now closed.

## ISSUES

1. **Whether the record supports Medicare coverage and payment for the products and services furnished to the beneficiary for the date of service at issue.**

2. **Whether § 1879 of the Social Security Act (Act) provides relief to limit a party's liability.**

3. **Whether § 1870 of the Act provides a waiver of liability for the overpayment.**

## APPLICABLE LAW AND POLICY

### Medical Necessity

Section 1862(a)(1)(A) of the Act bars coverage of items and services that are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member. Section 1833(e) of the Act provides that no claim for Medicare coverage may be paid unless "there has been furnished such information as may be necessary to determine the amounts due such provider."

ALJs are bound by statutes, regulations, National Coverage Determinations (NCDs) and CMS Rulings. 42 C.F.R. § 405.1060(a)(4), 405. 1063. ALJs are not bound by program guidance such as Local Coverage Determinations (LCDs), program memoranda or manual instructions. However, an ALJ must give such policies substantial deference if applicable in a particular case. 42 C.F.R. § 405.1062(a). If any ALJ declines to follow a policy in a particular case, the rational for not following that policy must be explained. 42 C.F.R. § 405.1062(b).

There are no NCDs or LCDs applicable to the present matter. However, the following are relevant to the instant matter:

WPS, *Skin Substitute Grafts/Cellular and Tissue-Based Products for the Treatment of Diabetic Foot Ulcers and Venous Leg Ulcers*, DL 39865 (Proposed LCD).

WPS, *Billing and Coding: Skin Substitutes Grafts/Cellular Tissue-Based Products for the Treatment of Diabetic Foot Ulcers and Venous Leg Ulcers*, A59740 (Future Effective).

CMS, Medicare Program Integrity Manual (*MPIM*), publication 100-08, chapter 3, section 3.6.2.2, sets forth the coverage criteria for items and services that are medically reasonable and necessary when there is no effective NCD or LCD.

**Liability**

Section 1879 of the Act provides that when Medicare excludes coverage pursuant to § 1862(a) (1) of the Act, payment may nevertheless be made for items or services if neither the beneficiary nor the provider or supplier knew, or could not reasonably be expected to have known, that the items or services would not be covered or payable by Medicare. Section 1870 of the Act governs the recovery of overpayments based upon provider fault. Section 1870(b) of the Act allows for a waiver of recovery of an overpayment to a provider if it is without fault in incurring the overpayment.

## FINDINGS OF FACT AND ANALYSIS

This appeal concerns the use of Impax to treat the beneficiary's non-pressure chronic ulcer wounds of the ankles. Impax is a human allograft tissue that is regulated as a human cells, tissues, and cellular and tissue-based product (HCT/P) as defined by 21 C.F.R. Part 1271. Throughout this appeal, the Appellant has maintained that the use of Impax was medically reasonable, necessary, and appropriate as a protective covering to aid in the healing of the beneficiary's wounds. File 3, pp. 3, 140. On May 16, 2023, the beneficiary presented to the Appellant's clinic for a wound assessment and care. The beneficiary was diagnosed with non-pressure chronic ulcers of the right and left ankle with fat layers exposed. Prior wound care treatments included bilateral Unna boots, compression therapy, elevation, narcotic pain relievers, and patient education. The plan of treatment called for debridement and application of Impax to the left and right ankle wounds. *Id.* at 14-18.

The Appellant now seeks Medicare reimbursement for the 32 units of Impax applied to the beneficiary's ankle wounds on the date of service at issue. At the most recent level of the appeals process, the QIC denied payment on the Appellant's claim because it determined that the use of Impax for non-pressure chronic ulcers of the ankles was experimental and investigational as denoted by the Q-code status nomenclature, and therefore no payment could be made under Medicare. File 2, pp. 3-5.

In its position paper, the UPIC presented several additional arguments against Medicare coverage and payment. First, it contended that Impax was not an appropriate treatment for the beneficiary's ankle wounds. According to the UPIC, the beneficiary's medical records showed that prior use of skin substitutes had not resulted in significant clinical improvement and that there was insufficient evidence demonstrating a failure of conservative treatment. In response, the Appellant pointed to an out-of-jurisdiction LCD to support the claim that Impax is safe, effective, non-experimental, and non-investigational. However, the UPIC determined that the cited LCD did not apply to the product or the date of service within the Contractor's jurisdiction. Moreover, the UPIC stated that even if the LCD was applicable, the Appellant's claim would still be denied because the services did not meet the necessity requirements under that LCD. File 13, pp. 2-5.

Throughout the appeals process, the Appellant has maintained that the use of Impax was medically reasonable, necessary, and appropriate as a protective covering to aid in the

healing of the beneficiary's wounds. File 3, pp. 3, 140. The Appellant argues that the QIC's denial was inappropriate because Impax's Q-code status does not preclude individual consideration of medical necessity. Q-codes are administrative billing tools, not indicators of medical necessity. If CMS intended for Q-coded products like Impax to be automatically considered investigational or non-covered, it would have issued a policy to that effect, and no such policy exists. File 1, pp. 4-5. The Appellant also argues that determinations related to the safety and effectiveness of medical products like Impax fall exclusively within the jurisdiction of the U.S. Food and Drug Administration (FDA). According to the FDA, Impax is exempt from FDA premarket approval requirements and thorough formal regulatory reviews by the FDA satisfies the federal requirements for establishing a product's safety profile. More specifically, the Appellant argues that Impax's safety and effectiveness are supported by the FDA's classification of Impax as an HCT/P under § 361 of the Public Health Services Act.[1] File 1, pp. 4-15; Hearing Recording, October 30, 2025.

The Appellant further argues that Impax cannot be considered experimental or investigational when CMS contractors have issued LCDs that provide coverage guidance for skin substitutes. As referenced in this matter, CGS's LCD L36690 *Wound Application of Cellular and/or Tissue Based Products (CTPs), Lower Extremities* and Palmetto's future LCD L39806 *Skin Substitute Grafts/ Cellular and Tissue-Based Products for the Treatment of Diabetic Foot Ulcers and Venous Leg Ulcers* are evidence that human tissue allografts used to treat Medicare beneficiaries are recognized as safe, effective, non-experimental, and non-investigational products, and therefore it is believed that skin substitutes cannot be experimental or investigational when they are currently being covered under existing and future LCDs. File 3, pp. 2-6; Hearing recording. Lastly, the Appellant asserts that Impax's safety, effectiveness, and appropriateness is supported by peer-reviewed, evidence-based literature for chronic ulcer treatment. The Appellant submitted articles of studies for patients diagnosed with diabetic foot ulcers or other pressure injuries and wounds who received skin substitutes to support Impax's safety and effectiveness. File 3, pp. 147-219.

To summarize, contrary to the CMS contractors' belief, it is the Appellant's position that Impax's safety and effectiveness has already been proven and that Impax was medically necessary and clinically appropriate for the management and treatment of the beneficiary's wounds. Therefore, according to the Appellant, they are entitled to Medicare coverage and payment. File 1, pp. 4-8; Hearing recording.

**Medical Necessity**

After full consideration of both positions, I find the preponderance of the evidence does not support that Impax was medically reasonable and necessary for the treatment of the beneficiary's non-pressure chronic ulcers of the right and left ankles. I further find the record lacks sufficient support that Impax is safe, effective, non-experimental, non-investigational, and clinically appropriate for the treatment of the beneficiary's non-pressure chronic ulcers of the right and left ankles.

---

[1] 21 C.F.R. § 1271.10(a) sets out the criteria that form the foundation of FDA's tiered, risk-based approach to regulating HCT/Ps. HCT/Ps that meet all of the criteria in 21 C.F.R. § 1271.10(a) are subject only to regulation under § 361 of the Public Health Service Act (PHS Act) and the regulations in 21 C.F.R. part 1271. An HCT/P that falls into this category is sometimes referred to as a "361 HCT/P" and no premarket authorization is required.

Here, the Appellant's reliance on Impax's categorization as an FDA regulated § 361 HCT/P product does not prove Impax's safety and effectiveness. Despite the Appellant's alleged homologous use of the product, the FDA's categorization of Impax as an HCT/P product is only one factor in making a Medicare coverage and payment determination. 42 C.F.R. § 405.201(a)(1). Generally, a product's categorization as a § 361 HCT/P product with the FDA signifies that the product has not had to undergo rigorous clinical trials in both animal and human populations before being marketed to the public. As a result, the FDA permits manufacturers to identify products that they do not believe have to be regulated under § 351 and instead seek to have the product regulated under § 361. The mere acceptance of a registration by the FDA yields no support that Impax is safe and effective, not experimental or investigational for treatment of the beneficiary's wounds. Therefore, without more evidence from the Appellant to support Impax's safety, effectiveness, and non-investigational nature for treating non-pressure chronic ulcers of the ankles, the Appellant has not shown that Impax is reasonable or medically necessary for treatment of the beneficiary's wounds.

Moreover, the fact that that a drug, medical service, or procedure has obtained approval, exception, or exemption under FDA regulations does not mean that Medicare will guarantee coverage or payment for that drug, service, or procedure without conducting its own review for medical necessity. CMS and their contractors, in analyzing whether a particular item or service is medically reasonable and necessary, will make an independent inquiry into whether the item or service is safe and effective and not experimental or investigational. *MPIM*, ch. 3, §3.6.2.2. CMS and its contractors are also charged with inquiring into whether the item or service is supported by "published authoritative evidence derived from definitive randomized clinical trials or other definitive studies." *Id.* CMS's responsibility, unlike the FDA's, includes deciding what items and services it can and should pay for, how it should accomplish payment, and how much to pay. 42 C.F.R. §405.920. Therefore, the contractors' review of the Appellant's claim is focused on the health needs of the Medicare beneficiaries they serve, items and services that fall within a Medicare benefit category, and whether the services are "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member" under § 1862(a)(1)(A) of the Act. Lastly, whether a drug, medical service, or procedure is medically necessary is a clinical and coverage determination and does not rest on the assignment of a Q-code or any other specific billing code. The medical record documentation must substantiate the necessity of the services provided, regardless of the code used on the claim form.

Accordingly, to carry out its review in accordance with § 1862(a)(1)(A) of the Act, CMS contractors may issue LCDs that are determinations on whether a particular item or service is medically reasonable and necessary and covered by Medicare. Act § 1869(f)(2)(B). However, if there is no applicable LCD effective for the item, service, or dates of service at issue, then Medicare considers an item or service reasonable and necessary if it safe and effective, not experimental or investigational, and appropriate. *MPIM*, ch. 3, §3.6.2.2.

In the presenting matter, the Contractor has not issued an LCD effective for Impax for the product, service, or date of service at issue. While I acknowledge the Contractor currently has a future LCD DL39865 and Billing and Coding Article A59740 pertaining to skin substitutes, neither were effective for the product, service, or date of service at issue. Further, the Contractor's DL39865 lists Impax as a non-covered product and Billing and Coding Article A59740 list Impax as a Group 4 non-covered code. Likewise, CGS's LCD L36690

and companion Billing and Coding Article A56696 do not guarantee coverage of Impax for the treatment of non-pressure chronic ulcers of the ankles. To be clear, none of these policies are dispositive of the instant matter, and I have not considered them to be factors supporting an unfavorable outcome because they are not applicable to the issues before me. However, I do acknowledge that these LCDs and Articles do not otherwise overtly support the Appellant's position that Impax was safe, effective, non-experimental, non-investigational, and clinically appropriate for treatment of the beneficiary's wounds.

In determining whether an item is reasonable and necessary, Medicare Program Integrity Manual (*MPIM*), publication 100-08, chapter 3, section 3.6.2.2 provides that if no LCD exists for a particular item or service, Medicare contractors shall consider an item or service to be reasonable and necessary if the item or service meets the following criteria:

- It is safe and effective;
- It is not experimental or investigational; and
- It is appropriate, including the duration and frequency in terms of whether the service or item is:
    - Furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the beneficiary's condition or to improve the function of a malformed body member;
    - Furnished in a setting appropriate to the beneficiary's medical needs and condition;
    - Ordered and furnished by qualified personnel; and,
    - One that meets, but does not exceed, the beneficiary's medical need.

Additionally, the evidence must support the coverage determination, including "available evidence of general acceptance by the medical community, such as published original research in peer-reviewed medical journals, systematic reviews and meta-analyses, evidence-based consensus statements and clinical guidelines." *Id.* at §13.5.3.

Here, the Appellant argued that Impax was used as a protective wound covering to aid in the healing process and that use "aligned with the manufacturer's indications [and] objective intent" and as a "commonly accepted method in wound care." File 3, pp. 3-4; Hearing recording. However, the Appellant did not provide sufficient evidence to support this position. Specifically, the record lacks documentation from the manufacturer establishing the intended purpose, indications, and limitations for the use of Impax. The file contains a product label issued by Legacy Medical Consultants, a distributor of Impax, rather than by Surgenex, LLC, the manufacturer. *Id.* at 140-141. Absent the product label or comparable documentation issued by Surgenex, it cannot be determined whether the Appellant's use of Impax was consistent with the manufacturer's stated indications or objective intent. Moreover, due to the insufficiency of the record, it cannot be determined whether the use of Impax for this beneficiary was clinically appropriate as a protective wound covering for the beneficiary's wounds.

Further, the Appellant failed to establish that the use of Impax was safe, effective, non-experimental, and non-investigational, or that its use represented a clinically appropriate method generally accepted within the medical community. Here, the record lacks sufficient peer-reviewed, evidence-based literature to support that Impax is safe, effective, non-experimental, and non-investigational for treatment of the beneficiary's non-pressure chronic

ulcers of the ankles. The Appellant's own submission of manuscripts, abstracts, and articles do not offer any additional support. Rather, the Appellant's submission reinforces the position that only specific HCT/Ps and certain lower extremity wounds are eligible for Medicare coverage and payment. For example, the Appellant's literature supports the use of amniotic allograft membrane products for the treatment of venous leg ulcers and diabetic foot ulcers, and not non-pressure chronic ulcers of the ankles. None of the literature specifically confirms Impax is safe and effective for the treatment of non-pressure chronic ulcers of the ankles or is a product or method generally accepted within the medical community.[2,3,4,5] Moreover, the Appellant's literature indicates the industry funded most of the published studies, which raises significant concerns about possible publication bias or selective outcome reporting in that results unfavorable to industry may not be reported or published.[6,7,8] Without sufficient peer-reviewed, evidence-based literature supporting the use of Impax for the treatment of the beneficiary's wounds, the record falls short of establishing Impax is safe and effective, non-experimental, non-investigational, and clinically appropriate for the treatment of the beneficiary's non-pressure chronic ulcers of the ankles.

Accordingly, I find that the preponderance of the evidence does not support that Impax is safe and effective, non-experimental, non-investigational, and clinically appropriate for the treatment of the beneficiary's non-pressure chronic ulcers of the ankles. The Impax product (Q4262) furnished to the beneficiary for the date of service at issue was not reasonable and necessary, and therefore neither Impax nor the related surgical services are covered or payable by Medicare. Having determined that Medicare does not cover the Impax, I will consider whether the liability of the beneficiary or the Appellant may be waived pursuant to § 1879 of the Act.

## Liability

Section 1879(a) of the Act provides for the limitation on liability for items or serviced denied Medicare as not medically "reasonable and necessary" under § 1862(a)(1)(A) of the Act, absent knowledge by a beneficiary or provider that the items or services would not be covered. Act, § 1879(a); 42 C.F.R. § 411.400(a). A beneficiary has "knowledge" of non-coverage when he or she has been given written notice of non-coverage by the provider. 42

---

[2] Iveta Schmiedova, Alena Dembickaja, Ludmila Kiselakova, Beata Nowakova & Petr Slama, *Using of Amniotic Membrane Derivatives for the Treatment of Chronic Wounds*, 11 *Membranes* 941 (2021).

[3] Karen Evans & Paul J. Kim, "Overview of Treatment of Chronic Wounds," in *UpToDate*, Section Editors Russell S. Berman & Eduardo Bruera; Deputy Editors Kathryn A. Collins & Sonali Shah (Lit. review current through Dec. 2022; topic last updated July 13, 2022).

[4] Thomas E. Serena et al., *A Multicenter, Randomized, Controlled, Clinical Trial Evaluating Dehydrated Human Amniotic Membrane in the Treatment of Venous Leg Ulcers*, 150 Plast. & Reconstr. Surg. 1128 (2022).

[5] Desman E, Bartow W & Anderson LH, *Human Skin Allograft for Patients With Diabetic Foot Ulcers, Venous Leg Ulcers, or Surgical/Traumatic Wounds: A Retrospective, Descriptive Study*, 61 Wound Management & Prevention (July 2015).

[6] *Id.* at 4.

[7] Thomas E. Serena et al., *A Randomized Controlled Clinical Trial of a Hypothermically Stored Amniotic Membrane for Use in Diabetic Foot Ulcers*, 9 J. Comp. Eff. Res. 23 (2019).

[8] John P. McQuilling et al., *A Prospective Clinical Trial Evaluating Changes in the Wound Microenvironment in Patients with Chronic Venous Leg Ulcers Treated with a Hypothermically Stored Amniotic Membrane*, 19 Int'l Wound J. 144 (2022).

C.F.R. § 411.404(a). A provider may have knowledge, in relevant part, based on their written notice of non-coverage to the beneficiary or their own experience, actual notice, or constructive notice. 42 C.F.R. § 411.406. CMS has provided further guidance on financial liability protections in its Medicare Claims Processing Manual (*MCPM*), publication 100-04, chapter 30.

There is no indication in the record that the Appellant provided sufficient written notice to the beneficiary that Medicare might not cover the products, procedures, or services at issue. Therefore, I find that the beneficiary did not know and could not reasonably have been expected to know that the products, procedures, and services at issue may not be covered by Medicare. Accordingly, the beneficiary is not liable for the cost of the non-covered items and services pursuant to § 1879(a) of the Act. Conversely, I find that the Appellant, as a provider participating in the Medicare program, at a minimum had constructive knowledge of the coverage criteria published in the regulations, CMS manuals, and guidance. Therefore, the Appellant knew or should have known that the products, procedures, and services would not be covered as billed. *MCPM*, ch. 30, § 40.1.

Accordingly, the Appellant is liable for the non-covered cost pursuant to § 1879(a) of the Act. The beneficiary's liability is limited, and they shall not be billed or charged for the non-covered services.

Section 1870 of the Act governs the recovery of overpayments based upon provider fault. Section 1870(b) of the Act allows for a waiver of recovery of an overpayment to a provider if it is without fault in incurring the overpayment. Section 1870(b) of the Act does not define the meaning of the term "without fault." However, a provider is without fault if it exercised reasonable care in billing and accepting Medicare payment. CMS, Medicare Financial Management Manual *(MFMM)*, pub. 100-06, ch. 3, § 90 (Effective January 2, 2004). A provider is considered not "without fault" if, it billed, or Medicare paid, for items the provider should have known were not covered. *MFMM*, ch. 3, § 90.1.H. The *MFMM* explains that the provider should have known about a policy or rule if the policy or rule is in the provider manual or in the regulations. *Id.*

Here, the Appellant is a Medicare participating supplier and had constructive notice of the widely published Medicare laws and regulations, CMS Rulings, and the applicable coverage guidelines for billing and filing claims for services furnished to Medicare beneficiaries. The Appellant submitted their claim for investigational products and failed to submit supporting documentation of its use for the treatment of the beneficiary's wounds as required by the regulations and CMS guidelines. Therefore, by failing to produce required documentation the Appellant knew or should have known that the items likely would not be paid for by Medicare. Thus, I find that the Appellant is not without fault for the overpayment under § 1870(b) of the Act. Accordingly, recovery of the overpayment is not waived.

## CONCLUSIONS OF LAW

The Appellant failed to establish that the use of Impax was safe, effective, non-experimental, and non-investigational, or that its use represented a clinically appropriate method generally accepted within the medical community, and therefore the product and services furnished were not reasonable and necessary for treatment of the beneficiary's non-pressure chronic ulcers of the ankles. The Appellant remains liable for the costs of the non-covered products

and services and repayment of the overpayment. The beneficiary's liability is limited, and the Appellant shall not bill the beneficiary for the cost of the products or services provided.

**ORDER**

For the reasons discussed above, this decision is **UNFAVORABLE**. The Appellant remains liable for the costs of the non-covered products and services and repayment of the overpayment. The beneficiary's liability is limited, and they may not be billed for the costs of the products or services provided. I direct the Medicare administrative contractor to process the claim in accordance with this decision.

SO ORDERED

Martin McClelland
Administrative Law Judge

If you have additional evidence, submit it with this request for review. If you need more time, you must request an extension of time in writing now, explaining why you are unable to submit the evidence or legal argument now.

*If you are a provider, supplier, or a beneficiary represented by a provider or supplier, and your case was reconsidered by a Qualified Independent Contractor (QIC), the Medicare Appeals Council will not consider new evidence related to issues the QIC has already considered unless you show that you have a good reason for submitting it for the first time to the Medicare Appeals Council.*

**IMPORTANT: Include the HICN or MBI and ALJ Appeal Number on any letter or other material you submit.**

This request must be received within 60 calendar days after you receive the ALJ's decision or dismissal, unless we extend the time limit for good cause. We assume you received the decision or dismissal 5 calendar days after it was issued, unless you show you received it later. If this request will not be received within 65 calendar days from the date on the decision or dismissal order, please explain why on a separate sheet.

---

You must file your request for review in writing with the Medicare Appeals Council at:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

You may send the request for review by U.S. Mail, a common carrier such as FedEx, or by fax to (202) 565-0227. If you send a fax, please do not also mail a copy. ***You must send a copy of your appeal to the other parties and indicate that all parties, to include all beneficiaries, have been copied on the request for review. For claims involving multiple beneficiaries, you may submit a copy of the cover letters issued or a spreadsheet of the beneficiaries and addresses who received a copy of the request for review.***

If you have any questions about your request for review or wish to request expedited review of a claim involving authorization of your prescription drug under Medicare Part D, you may call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100. You may also visit our web site at www.hhs.gov/dab for additional information on how to file your request for review.

## PRIVACY ACT STATEMENT

The collection of information on this form is authorized by the Social Security Act (section 205(a) of title II, section 702 of title VII, section 1155 of Title XI, and sections 1852(g)(5), 1869(b)(1), 1871, 1872, and 1876(c)(5)(B) of title XVIII, as appropriate). The information provided will be used to further document your claim. Information requested on this form is voluntary, but failure to provide all or any part of the requested information may affect the determination of your claim. Information you furnish on this form may be disclosed by the Department of Health and Human Services or the Social Security Administration to another person or governmental agency only with respect to programs under the Social Security Act and to comply with Federal laws requiring the disclosure of information or the exchange of information between the Department of Health and Human Services, the Social Security Administration, or other agencies.

Department of Health and Human Services
OFFICE OF MEDICARE HEARINGS AND APPEALS
Cleveland, OH

| | | | |
|---|---|---|---|
| Appeal of: | BRIAN G. LODER DPM PLC | OMHA Appeal No.: | 3-15259931569 |
| Beneficiary: | [redacted] | Medicare Part: | B |
| Medicare No.: | | Before: | Martin McClelland<br>Administrative Law Judge |

Index of the Administrative Record and Exhibit List

| Exhibit Record | Administrative File Reference: File Name | Page Range | |
|---|---|---|---|
| Medical & Related: Medical Records | File 6 | 1 | 4182 |
| Position Statements: UPIC Position Paper | File 13 | 1 | 5 |
| Procedural - CMS Levels: Reconsideration | File 2 | 1 | 18 |
| Procedural - CMS Levels: Request for Reconsideration | File 3 | 1 | 219 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 4 | 1 | 3 |
| Procedural - CMS Levels: Request for Redetermination | File 5 | 1 | 44 |
| Procedural - OMHA Level: Request for ALJ Hearing | File 1 | 1 | 18 |
| Procedural - OMHA Level: Request to Reschedule | File 10 | 1 | 3 |
| Procedural - OMHA Level: Amended Notice of Hearing | File 11 | 1 | 9 |
| Procedural - OMHA Level: Response to Amended Notice of Hearing | File 12 | 1 | 3 |
| Procedural - OMHA Level: Amended Notice of Hearing (2) | File 14 | 1 | 9 |
| Procedural - OMHA Level: Response to Amended Notice of Hearing (2) | File 15 | 1 | 4 |
| Procedural - OMHA Level: Notice of Hearing | File 8 | 1 | 14 |
| Procedural - OMHA Level: CoventBridge NOI | File 9 | 1 | 3 |
| Proceeding (Audios): Hearing audio | File 16 | 1 | 1 |

OMHA-156
Dated: 2025-10-30

Department of Health and Human Services
Office of the Secretary

**OFFICE OF MEDICARE HEARINGS AND APPEALS**

Cleveland Field Office
1001 Lakeside Ave
Suite 700
Cleveland, OH 44114
216-462-4100
(216) 462-4145 (Direct)
216-615-9029 (Fax)
866-236-5089 (Toll Free)

November 19, 2025

[redacted]

## NOTICE OF DECISION

Appellant: BRIAN G. LODER DPM PLC
OMHA Appeal Number: 3-15259931669

Enclosed is the decision for the above case. This decision is based on the administrative record, including any evidence or testimony presented at the hearing, if one was held. The decision is not precedential, does not release the appellant from civil or criminal liability, and may be reopened at any time if it was procured by fraud or similar fault. In addition, the decision may be reopened within 180 calendar days from the date of the decision for good cause. Good cause exists when there is new and material evidence that was not available or known at the time of the decision and may result in a different conclusion, or when the evidence that was considered clearly shows on its face that an obvious error was made at the time of the decision.

**What if I disagree with the decision?**

If you disagree with the decision, you may file an appeal with the Medicare Appeals Council. Other parties may also appeal the decision. In addition, the Medicare Appeals Council may decide to review the decision on its own motion. If no party appeals the decision and the Medicare Appeals Council does not review the decision, the decision is binding on all parties and you and the other parties will not have the right to ask a federal court to review the decision.

If you are not already represented, you may appoint an attorney or other person to represent you.

**How much time do I have to file an appeal?**

The Medicare Appeals Council must receive your written appeal **within 60 calendar days** of the date that you receive this notice. The Medicare Appeals Council assumes you received this notice 5 calendar days after the date of the notice unless you show that you did not receive it within the 5-day period.

The Medicare Appeals Council will dismiss a late request for review unless you show that you had a good reason for not filing it on time.

**How do I file an appeal?**

To appeal, you must ask the Medicare Appeals Council to review the decision. Your appeal must be in writing, except that a request for expedited review of a Part D decision may be made orally as described below. Your appeal must identify the parts of the decision that you disagree with, and explain why you disagree.

You may submit a written request for review to the Medicare Appeals Council using one of three available methods: mail, fax, or electronic filing (E-File). **Please do not submit your request for review using more than one method**. Regardless of how you file your appeal, **you must always send a copy of your written request for review to the other parties who received a copy of the decision.**

If you are filing a written request for review, you may use the enclosed *Request for Review* (Form DAB-101), or you may write a letter containing the following:

- The beneficiary's/enrollee's name (and telephone number for Part D appeals);
- The beneficiary's/enrollee's Medicare number (Health Insurance Claim Number or Medicare Beneficiary Identifier);
- The item(s), service(s), or specific Part D drug(s) in dispute;
- The specific date(s) the item(s) or service(s) were provided, if applicable;
- For Part D appeals, the plan name;
- For Part D appeals, the OMHA Appeal Number on the adjudicator's decision;
- For Part D appeals requesting expedited review, a statement that you are requesting expedited review;
- The date of the adjudicator's decision (not required for Part D appeals); and
- Your name and signature, and, if applicable, the name and signature of your representative.

**Filing by mail:**

Mail your appeal and a copy of the enclosed decision to:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

**Filing by fax:**

Fax your appeal and a copy of the enclosed decision to **(202) 565-0227.**

**Filing by computer:**

Using your web browser, visit the Medicare Operations Division Electronic Filing System (MOD E-File) website at **https://dab.efile.hhs.gov/mod**.

To file a new appeal using MOD E-File, you will need to register by:

1. Clicking **Register** on the MOD E-File home page;
2. Entering the information requested on the "Register New Account" form; and
3. Clicking **Register Account** at the bottom of the form.

You will use the email address and password you provided during registration to access MOD E-File at **https://dab.efile.hhs.gov/mod/users/new**. You will be able to use MOD E-File to file and access the specific materials for appeals to which you are a party or a party's representative. You may check the status of any appeal on the website homepage without registering.

Once registered, you may file your appeal by:

1. Logging into MOD E-File;
2. Clicking the **File New Appeal** menu button on the top right of the screen;
3. Selecting the type of appeal you are filing (Request for Review or Request for Escalation); and
4. Entering the requested Appeal Information and uploading the requested Appeal Documents on the "File New Appeal - Medicare Operations Division" form. You are required to provide information and documents marked with an asterisk.

At a minimum, the Medicare Appeals Council requires an appellant to file a signed Request for Review and a copy of the enclosed decision. All documents should be submitted in Portable Document Format (PDF) whenever possible. Any document, including a Request for Review, will be deemed to have been filed on a given day, if it is uploaded to MOD E-File on or before 11:59 p.m. EST of that day.

Currently, the documents that may be filed electronically are the:

1. Request for Review;
2. Appointment of Representative form (OMB Form 0938-0950);
3. Copy of Administrative Law Judge or attorney adjudicator decision;
4. Memorandum or brief or other written statement in support of your appeal; and
5. Request to Withdraw your appeal

**No other documents aside from the five (5) listed categories above may be submitted through MOD E-File.**

**Filing by oral request (for expedited review only):**

Oral requests for expedited review of a Part D decision may be made by telephone to **(866) 365-8204.** You must provide the information listed in the bullet points above and a statement that you are requesting an expedited review within 60 calendar days after receipt of this notice of decision. The Medicare Appeals Council will document the oral request in writing and maintain the documentation in the case file.

Please note that your request for review will only be expedited (1) the appeal involves an issue specified in 42 C.F.R. § 423.566(b), but does not include solely a request for payment of a Part D drug that has already been furnished, and (2) the prescribing physician (or other prescriber) indicates, or the Medicare Appeals Council determines, that the standard time frame may seriously jeopardize your life, health, or ability to regain maximum function.

**<u>How will the Medicare Appeals Council respond to my appeal?</u>**

The Medicare Appeals Council will limit its review to the issues raised in the appeal, unless the appeal is filed by an unrepresented beneficiary/enrollee. It may change the parts of the decision that you agree with. It may adopt, modify, or reverse the decision, in whole or in part, or it may send the case back to OMHA for further action. It may also dismiss your appeal.

**<u>Questions?</u>**

You may call or write our office. A toll-free phone number and mailing address are at the top of this notice.

Additional information about filing an appeal with the Medicare Appeals Council is available at http://www.hhs.gov/dab/. You can also call the Medicare Appeals Council's staff in the Medicare

Operations Division of the Departmental Appeals Board at (202) 565-0100 or (866) 365-8204 (toll free), if you have questions about filing an appeal.

cc:

[redacted]

QIC - C2C B North
301 W Bay Street
Ste. 1110
Jacksonville, FL 32202

Enclosures:
OMHA-152, Decision
DAB-101, Request for Review
OMHA-156, Exhibit List

Department of Health and Human Services
OFFICE OF MEDICARE HEARINGS AND APPEALS
Cleveland, OH

| | |
|---|---|
| Appeal of: **BRIAN G. LODER DPM PLC** | OMHA Appeal No.: **3-15259931669** |
| Beneficiary: [redacted] | Medicare Part: B |
| Medicare No.: [redacted] | Before: **Martin McClelland** Administrative Law Judge |

## DECISION

After carefully considering the evidence and arguments presented in the record and at hearing, I enter an **UNFAVORABLE** decision. The record does not support that Dual Layer Impax Membrane is safe, effective, non-experimental, and non-investigational for the treatment of the beneficiary's non-pressure chronic ulcer wounds, and therefore the products and services provided were not medically reasonable and necessary. The Appellant is not entitled to Medicare coverage or payment. The Appellant remains liable for the costs of the non-covered products and services and repayment of the overpayment. The beneficiary's liability is limited, and the Appellant may not bill the beneficiary for the cost of the non-covered products or services.

## PROCEDURAL HISTORY

The Appellant submitted a claim to the Medicare Administrative Contractor Wisconsin Physicians Services (WPS)(Contractor) for reimbursement of 40 units of Dual Layer Impax Membrane (Impax) billed under HCPCS code Q4262. The date of service at issue is April 4, 2023. Initially, the Contractor allowed payment on the claim. Subsequently, the Medicare Unified Program Integrity Contractor Covent Bridge Group (UPIC) determined that an overpayment had been made. File 13, pp. 2-5. On redetermination, the Contractor determined that the Appellant's document submission did not support the use of Impax to treat the beneficiary's wounds as medically reasonable and necessary. File 3, p. 8. The Appellant then requested reconsideration by the Qualified Independent Contractor C2C Innovative Solutions, Inc. (QIC). *Id.* at 1. On reconsideration, the QIC also determined that the use of Impax for the treatment of the beneficiary's wounds was experimental and investigational, and therefore not medically reasonable and necessary. As a result, the QIC determined that no payment could be allowed for the services, and that the overpayment was valid. File 2, pp. 3-5.

The Office of Medicare Hearings and Appeals (OMHA) received the Appellant's request for an Administrative Law Judge (ALJ) hearing, and all jurisdictional requirements were satisfied. File 1, p. 2. The Appellant identified William O'Malley as its appointed

representative. *Id.* at 16. The OMHA issued a Notice of Hearing setting the date and time for hearing. File 11, p. 1; File 14, p. 1.

On October 30, 2025, the telephone hearing was conducted as scheduled from the Cleveland Field Office. The Appellant was represented by William O'Malley who provided testimony under oath. In lieu of an appearance, the UPIC submitted a position paper for consideration. File 13. Documents previously marked and identified as Files 1-14 were admitted into the record without objection. The administrative record is now closed.

## ISSUES

1. **Whether the record supports Medicare coverage and payment for the products and services furnished to the beneficiary for the date of service at issue.**
2. **Whether § 1879 of the Social Security Act (Act) provides relief to limit a party's liability.**
3. **Whether § 1870 of the Act provides a waiver of liability for the overpayment.**

## APPLICABLE LAW AND POLICY

### Medical Necessity

Section 1862(a)(1)(A) of the Act bars coverage of items and services that are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member. Section 1833(e) of the Act provides that no claim for Medicare coverage may be paid unless "there has been furnished such information as may be necessary to determine the amounts due such provider."

ALJs are bound by statutes, regulations, National Coverage Determinations (NCDs) and CMS Rulings. 42 C.F.R. § 405.1060(a)(4), 405. 1063. ALJs are not bound by program guidance such as Local Coverage Determinations (LCDs), program memoranda or manual instructions. However, an ALJ must give such policies substantial deference if applicable in a particular case. 42 C.F.R. § 405.1062(a). If any ALJ declines to follow a policy in a particular case, the rational for not following that policy must be explained. 42 C.F.R. § 405.1062(b).

There are no NCDs or LCDs applicable to the present matter. However, the following are relevant to the instant matter:

WPS, *Skin Substitute Grafts/Cellular and Tissue-Based Products for the Treatment of Diabetic Foot Ulcers and Venous Leg Ulcers*, DL 39865 (Proposed LCD).

WPS, *Billing and Coding: Skin Substitutes Grafts/Cellular Tissue-Based Products for the Treatment of Diabetic Foot Ulcers and Venous Leg Ulcers*, A59740 (Future Effective).

CMS, Medicare Program Integrity Manual (*MPIM*), publication 100-08, chapter 3, section 3.6.2.2, sets forth the coverage criteria for items and services that are medically reasonable and necessary when there is no effective NCD or LCD.

**Liability**

Section 1879 of the Act provides that when Medicare excludes coverage pursuant to § 1862(a) (1) of the Act, payment may nevertheless be made for items or services if neither the beneficiary nor the provider or supplier knew, or could not reasonably be expected to have known, that the items or services would not be covered or payable by Medicare. Section 1870 of the Act governs the recovery of overpayments based upon provider fault. Section 1870(b) of the Act allows for a waiver of recovery of an overpayment to a provider if it is without fault in incurring the overpayment.

## FINDINGS OF FACT AND ANALYSIS

This appeal concerns the use of Impax to treat the beneficiary's non-pressure chronic ulcer wounds of the ankles. Impax is a human allograft tissue that is regulated as a human cells, tissues, and cellular and tissue-based product (HCT/P) as defined by 21 C.F.R. Part 1271. Throughout this appeal, the Appellant has maintained that the use of Impax was medically reasonable, necessary, and appropriate as a protective covering to aid in the healing of the beneficiary's wounds. File 3, pp. 3, 140. On April 4, 2023, the beneficiary presented to the Appellant's clinic for a wound assessment and care. The beneficiary was diagnosed with non-pressure chronic ulcers of the right and left ankle with fat layers exposed. Prior wound care treatments included bilateral Unna boots, compression therapy, elevation, narcotic pain relievers, and patient education. The plan of treatment called for debridement and application of Impax to the left and right ankle wounds. *Id.* at 15-19.

The Appellant now seeks Medicare reimbursement for the 40 units of Impax applied to the beneficiary's ankle wounds on the date of service at issue. At the most recent level of the appeals process, the QIC denied payment on the Appellant's claim because it determined that the use of Impax for non-pressure chronic ulcers of the ankles was experimental and investigational as denoted by the Q-code status nomenclature, and therefore no payment could be made under Medicare. File 2, pp. 4-5.

In its position paper, the UPIC presented several additional arguments against Medicare coverage and payment. First, it contended that Impax was not an appropriate treatment for the beneficiary's ankle wounds. According to the UPIC, the beneficiary's medical records showed that prior use of skin substitutes had not resulted in significant clinical improvement and that there was insufficient evidence demonstrating failure of conservative treatment. In response, the Appellant pointed to an out-of-jurisdiction LCD to support the claim that Impax is safe, effective, non-experimental, and non-investigational. However, the QIC determined that the cited LCD did not apply to the product or the date of service within the Contractor's jurisdiction. Moreover, the QIC stated that even if the LCD were applicable, the Appellant's claim would still be denied because the services did not meet the necessity requirements under that LCD. File 13, pp. 2-5.

Throughout the appeals process, the Appellant has maintained that the use of Impax was medically reasonable, necessary, and appropriate as a protective covering to aid in the healing of the beneficiary's wounds. File 3, pp. 3, 140. The Appellant argues that the QIC's

denial was inappropriate because Impax's Q-code status does not preclude individual consideration of medical necessity. Q-codes are administrative billing tools, not indicators of medical necessity. If CMS intended for Q-coded products like Impax to be automatically considered investigational or non-covered, it would have issued a policy to that effect, and no such policy exists. File 1, pp. 4-5. The Appellant also argues that determinations related to the safety and effectiveness of medical products like Impax fall exclusively within the jurisdiction of the U.S. Food and Drug Administration (FDA). According to the FDA, Impax is exempt from FDA premarket approval requirements and thorough formal regulatory reviews by the FDA satisfies the federal requirements for establishing a product's safety profile. More specifically, the Appellant argues that Impax's safety and effectiveness are supported by the FDA's classification of Impax as an HCT/P under § 361 of the Public Health Services Act. [1] File 1, pp. 4-15; Hearing Recording, October 30, 2025.

The Appellant further argues that Impax cannot be considered experimental or investigational when CMS contractors have issued LCDs that provide coverage guidance for skin substitutes. As referenced in this matter, CGS's LCD L36690 *Wound Application of Cellular and/or Tissue Based Products (CTPs), Lower Extremities* and Palmetto's future LCD L39806 *Skin Substitute Grafts/ Cellular and Tissue-Based Products for the Treatment of Diabetic Foot Ulcers and Venous Leg Ulcers* are evidence that human tissue allografts used to treat Medicare beneficiaries are recognized as safe, effective, non-experimental, and non-investigational products, and therefore it is believed that skin substitutes cannot be experimental or investigational when they are currently being covered under existing and future LCDs. File 3, pp. 2-6; Hearing recording. Lastly, the Appellant asserts that Impax's safety, effectiveness, and appropriateness is supported by peer-reviewed, evidence-based literature for chronic ulcer treatment. The Appellant submitted articles of studies for patients diagnosed with diabetic foot ulcers or other pressure injuries and wounds who received skin substitutes to support Impax's safety and effectiveness. File 3, pp. 147-219.

To summarize, contrary to the CMS contractors' belief, it is the Appellant's position that Impax's safety and effectiveness has already been proven and that Impax was medically necessary and clinically appropriate for the management and treatment of the beneficiary's wounds. Therefore, according to the Appellant, they are entitled to Medicare coverage and payment. File 1, pp. 4-8; Hearing recording.

**Medical Necessity**

After full consideration of both positions, I find the preponderance of the evidence does not support that Impax was medically reasonable and necessary for the treatment of the beneficiary's non-pressure chronic ulcers of the right and left ankles. I further find the record lacks sufficient support that Impax is safe, effective, non-experimental, non-investigational, and clinically appropriate for the treatment of the beneficiary's non-pressure chronic ulcers of the right and left ankles.

[1] 21 C.F.R. § 1271.10(a) sets out the criteria that form the foundation of FDA's tiered, risk-based approach to regulating HCT/Ps. HCT/Ps that meet all of the criteria in 21 C.F.R. § 1271.10(a) are subject only to regulation under § 361 of the Public Health Service Act (PHS Act) and the regulations in 21 C.F.R. part 1271. An HCT/P that falls into this category is sometimes referred to as a "361 HCT/P" and no premarket authorization is required.

Here, the Appellant's reliance on Impax's categorization as an FDA regulated § 361 HCT/P product does not prove Impax's safety and effectiveness. Despite the Appellant's alleged homologous use of the product, the FDA's categorization of Impax as an HCT/P product is only one factor in making a Medicare coverage and payment determination. 42 C.F.R. § 405.201(a)(1). Generally, a product's categorization as a § 361 HCT/P product with the FDA signifies that the product has not had to undergo rigorous clinical trials in both animal and human populations before being marketed to the public. As a result, the FDA permits manufacturers to identify products that they do not believe have to be regulated under § 351, and instead seek to have the product regulated under § 361. The mere acceptance of a registration by the FDA yields no support that Impax is safe and effective, not experimental or investigational for treatment of the beneficiary's wounds. Therefore, without more evidence from the Appellant to support Impax's safety, effectiveness, and non-investigational nature for treating non-pressure chronic ulcers of the ankles, the Appellant has not shown that Impax is reasonable or medically necessary for treatment of the beneficiary's wounds.

Moreover, the fact that that a drug, medical service, or procedure has obtained approval, exception, or exemption under FDA regulations does not mean that Medicare will guarantee coverage or payment for that drug, service, or procedure without conducting its own review for medical necessity. CMS and their contractors, in analyzing whether a particular item or service is medically reasonable and necessary, will make an independent inquiry into whether the item or service is safe and effective and not experimental or investigational. *MPIM*, ch. 3, §3.6.2.2. CMS and its contractors are also charged with inquiring into whether the item or service is supported by "published authoritative evidence derived from definitive randomized clinical trials or other definitive studies." *Id.* CMS's responsibility, unlike the FDA's, includes deciding what items and services it can and should pay for, how it should accomplish payment, and how much to pay. 42 C.F.R. §405.920. Therefore, the contractors' review of the Appellant's claim is focused on the health needs of the Medicare beneficiaries they serve, items and services that fall within a Medicare benefit category, and whether the services are "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member" under § 1862(a)(1)(A) of the Act. Lastly, whether a drug, medical service, or procedure is medically necessary is a clinical and coverage determination and does not rest on the assignment of a Q-code or any other specific billing code. The medical record documentation must substantiate the necessity of the services provided, regardless of the code used on the claim form.

Accordingly, to carry out its review in accordance with § 1862(a)(1)(A) of the Act, CMS contractors may issue LCDs that are determinations on whether a particular item or service is medically reasonable and necessary and covered by Medicare. Act § 1869(f)(2)(B). However, if there is no applicable LCD effective for the item, service, or dates of service at issue, then Medicare considers an item or service reasonable and necessary if it safe and effective, not experimental or investigational, and appropriate. *MPIM*, ch. 3, §3.6.2.2.

In the presenting matter, the Contractor has not issued an LCD effective for Impax for the product, service, or date of service at issue. While I acknowledge the Contractor currently has a future LCD DL39865 and Billing and Coding Article A59740 pertaining to skin substitutes, neither were effective for the product, service, or date of service at issue. Further, the Contractor's DL39865 lists Impax as a non-covered product and Billing and Coding Article A59740 list Impax as a Group 4 non-covered code. Likewise, CGS's LCD L36690

and companion Billing and Coding Article A56696 do not guarantee coverage of Impax for the treatment of non-pressure chronic ulcers of the ankles. To be clear, none of these policies are dispositive of the instant matter, and I have not considered them to be factors supporting an unfavorable outcome because they are not applicable to the issues before me. However, I do acknowledge that these LCDs and Articles do not otherwise overtly support the Appellant's position that Impax was safe, effective, non-experimental, non-investigational, and clinically appropriate for treatment of the beneficiary's wounds.

Thus, in determining whether an item is reasonable and necessary, Medicare Program Integrity Manual (*MPIM*), publication 100-08, chapter 3, section 3.6.2.2 provides that if no LCD exists for a particular item or service, Medicare contractors shall consider an item or service to be reasonable and necessary if the item or service meets the following criteria:

- It is safe and effective;
- It is not experimental or investigational; and
- It is appropriate, including the duration and frequency in terms of whether the service or item is:
    - Furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the beneficiary's condition or to improve the function of a malformed body member;
    - Furnished in a setting appropriate to the beneficiary's medical needs and condition;
    - Ordered and furnished by qualified personnel; and,
    - One that meets, but does not exceed, the beneficiary's medical need.

Additionally, the evidence must support the coverage determination, including "available evidence of general acceptance by the medical community, such as published original research in peer-reviewed medical journals, systematic reviews and meta-analyses, evidence-based consensus statements and clinical guidelines." *Id.* at §13.5.3.

Here, the Appellant argued that Impax was used as a protective wound covering to aid in the healing process and that use "aligned with the manufacturer's indications [and] objective intent" and as a "commonly accepted method in wound care." File 3, pp. 3-4; Hearing recording. However, the Appellant did not provide sufficient evidence to support this position. Specifically, the record lacks documentation from the manufacturer establishing the intended purpose, indications, and limitations for the use of Impax. The file contains a product label issued by Legacy Medical Consultants, a distributor of Impax, rather than by Surgenex, LLC, the manufacturer. *Id.* at 140-141. Absent the product label or comparable documentation issued by Surgenex, it cannot be determined whether the Appellant's use of Impax was consistent with the manufacturer's stated indications or objective intent. Moreover, due to the insufficiency of the record, it cannot be determined whether the use of Impax for this beneficiary was clinically appropriate as a protective wound covering for the beneficiary's wounds.

Further, the Appellant failed to establish that the use of Impax was safe, effective, non-experimental, and non-investigational, or that its use represented a clinically appropriate method generally accepted within the medical community. Here, the record lacks sufficient peer-reviewed, evidence-based literature to support that Impax is safe, effective, non-

experimental, and non-investigational for treatment of the beneficiary's non-pressure chronic ulcers of the ankles. The Appellant's own submission of manuscripts, abstracts, and articles do not offer any additional support. Rather, the Appellant's submission reinforces the position that only specific HCT/Ps and certain lower extremity wounds are eligible for Medicare coverage and payment. For example, the Appellant's literature supports the use of amniotic allograft membrane products for the treatment of venous leg ulcers and diabetic foot ulcers, and not non-pressure chronic ulcers of the ankles. None of the literature specifically confirms Impax is safe and effective for the treatment of non-pressure chronic ulcers of the ankles or is a product or method generally accepted within the medical community.[2,3,4,5] Moreover, the Appellant's literature indicates the industry funded most of the published studies, which raises significant concerns about possible publication bias or selective outcome reporting in that results unfavorable to industry may not be reported or published.[6,7,8] Without sufficient peer-reviewed, evidence-based literature supporting the use of Impax for the treatment of the beneficiary's wounds, the record falls short of establishing Impax is safe and effective, non-experimental, non-investigational, and clinically appropriate for the treatment of the beneficiary's non-pressure chronic ulcers of the ankles.

Accordingly, I find that the preponderance of the evidence does not support that Impax is safe and effective, non-experimental, non-investigational, and clinically appropriate for the treatment of the beneficiary's non-pressure chronic ulcers of the ankles. The Impax product (Q4262) furnished to the beneficiary for the date of service at issue was not reasonable and necessary, and therefore neither Impax nor the related surgical services are covered or payable by Medicare. Having determined that Medicare does not cover the Impax, I will consider whether the liability of the beneficiary or the Appellant may be waived pursuant to § 1879 of the Act.

**Liability**

Section 1879(a) of the Act provides for the limitation on liability for items or serviced denied Medicare as not medically "reasonable and necessary" under § 1862(a)(1)(A) of the Act, absent knowledge by a beneficiary or provider that the items or services would not be covered. Act, § 1879(a); 42 C.F.R. § 411.400(a). A beneficiary has "knowledge" of non-coverage when he or she has been given written notice of non-coverage by the provider. 42 C.F.R. § 411.404(a). A provider may have knowledge, in relevant part, based on their written

[2] Iveta Schmiedova, Alena Dembickaja, Ludmila Kiselakova, Beata Nowakova & Petr Slama, *Using of Amniotic Membrane Derivatives for the Treatment of Chronic Wounds*, 11 *Membranes* 941 (2021).
[3] Karen Evans & Paul J. Kim, "Overview of Treatment of Chronic Wounds," in *UpToDate*, Section Editors Russell S. Berman & Eduardo Bruera, Deputy Editors Kathryn A. Collins & Sonali Shah (Lit. review current through Dec. 2022; topic last updated July 13, 2022).
[4] Thomas E. Serena et al., *A Multicenter, Randomized, Controlled, Clinical Trial Evaluating Dehydrated Human Amniotic Membrane in the Treatment of Venous Leg Ulcers*, 150 Plast. & Reconstr. Surg. 1128 (2022).
[5] Desman E, Bartow W & Anderson LH, *Human Skin Allograft for Patients With Diabetic Foot Ulcers, Venous Leg Ulcers, or Surgical/Traumatic Wounds: A Retrospective, Descriptive Study*, 61 Wound Management & Prevention (July 2015).
[6] *Id.* at 4.
[7] Thomas E. Serena et al., *A Randomized Controlled Clinical Trial of a Hypothermically Stored Amniotic Membrane for Use in Diabetic Foot Ulcers*, 9 J. Comp. Eff. Res. 23 (2019).
[8] John P. McQuilling et al., *A Prospective Clinical Trial Evaluating Changes in the Wound Microenvironment in Patients with Chronic Venous Leg Ulcers Treated with a Hypothermically Stored Amniotic Membrane*, 19 Int'l Wound J. 144 (2022).

notice of non-coverage to the beneficiary or their own experience, actual notice, or constructive notice. 42 C.F.R. § 411.406. CMS has provided further guidance on financial liability protections in its Medicare Claims Processing Manual (*MCPM*), publication 100-04, chapter 30.

There is no indication in the record that the Appellant provided sufficient written notice to the beneficiary that Medicare might not cover the products, procedures, or services at issue. Therefore, I find that the beneficiary did not know and could not reasonably have been expected to know that the products, procedures, and services at issue may not be covered by Medicare. Accordingly, the beneficiary is not liable for the cost of the non-covered items and services pursuant to § 1879(a) of the Act. Conversely, I find that the Appellant, as a provider participating in the Medicare program, at a minimum had constructive knowledge of the coverage criteria published in the regulations, CMS manuals, and guidance. Therefore, the Appellant knew or should have known that the products, procedures, and services would not be covered as billed. *MCPM*, ch. 30, § 40.1.

Accordingly, the Appellant is liable for the non-covered cost pursuant to § 1879(a) of the Act. The beneficiary's liability is limited, and they shall not be billed or charged for the non-covered services.

Section 1870 of the Act governs the recovery of overpayments based upon provider fault. Section 1870(b) of the Act allows for a waiver of recovery of an overpayment to a provider if it is without fault in incurring the overpayment. Section 1870(b) of the Act does not define the meaning of the term "without fault." However, a provider is without fault if it exercised reasonable care in billing and accepting Medicare payment. CMS, Medicare Financial Management Manual *(MFMM)*, pub. 100-06, ch. 3, § 90 (Effective January 2, 2004). A provider is considered not "without fault" if, it billed, or Medicare paid, for items the provider should have known were not covered. *MFMM*, ch. 3, § 90.1.H. The *MFMM* explains that the provider should have known about a policy or rule if the policy or rule is in the provider manual or in the regulations. *Id.*

Here, the Appellant is a Medicare participating supplier and had constructive notice of the widely published Medicare laws and regulations, CMS Rulings, and the applicable coverage guidelines for billing and filing claims for services furnished to Medicare beneficiaries. The Appellant submitted their claim for investigational products and failed to submit supporting documentation of its use for the treatment of the beneficiary's wounds as required by the regulations and CMS guidelines. Therefore, by failing to produce the required documentation the Appellant knew or should have known that the items likely would not be paid for by Medicare. Thus, I find that the Appellant is not without fault for the overpayment under § 1870(b) of the Act. Accordingly, recovery of the overpayment is not waived.

## CONCLUSIONS OF LAW

The record failed to establish that the use of Impax was safe, effective, non-experimental, and non-investigational, or that its use represented a clinically appropriate method generally accepted within the medical community, and therefore the product and services furnished were not reasonable and necessary for treatment of the beneficiary's chronic non-pressure ulcers. The Appellant remains liable for the costs of the non-covered products and services

and repayment of the overpayment. The beneficiary's liability is limited, and the Appellant shall not bill the beneficiary for the cost of the non-covered products or services provided.

## ORDER

For the reasons discussed above, this decision is **UNFAVORABLE**. The Appellant remains liable for the costs of the non-covered products and services and repayment of the overpayment. The beneficiary's liability is limited, and they may not be billed for the costs of the products or services provided. I direct the Medicare administrative contractor to process the claim in accordance with this decision.

**SO ORDERED**

M. C. McClelland

Martin McClelland
Administrative Law Judge

Form DAB-101 (12/19)

If you have additional evidence, submit it with this request for review. If you need more time, you must request an extension of time in writing now, explaining why you are unable to submit the evidence or legal argument now.

*If you are a provider, supplier, or a beneficiary represented by a provider or supplier, and your case was reconsidered by a Qualified Independent Contractor (QIC), the Medicare Appeals Council will not consider new evidence related to issues the QIC has already considered unless you show that you have a good reason for submitting it for the first time to the Medicare Appeals Council.*

**IMPORTANT: Include the HICN or MBI and ALJ Appeal Number on any letter or other material you submit.**

This request must be received within 60 calendar days after you receive the ALJ's decision or dismissal, unless we extend the time limit for good cause. We assume you received the decision or dismissal 5 calendar days after it was issued, unless you show you received it later. If this request will not be received within 65 calendar days from the date on the decision or dismissal order, please explain why on a separate sheet.

---

You must file your request for review in writing with the Medicare Appeals Council at:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

You may send the request for review by U.S. Mail, a common carrier such as FedEx, or by fax to (202) 565-0227. If you send a fax, please do not also mail a copy. ***You must send a copy of your appeal to the other parties and indicate that all parties, to include all beneficiaries, have been copied on the request for review. For claims involving multiple beneficiaries, you may submit a copy of the cover letters issued or a spreadsheet of the beneficiaries and addresses who received a copy of the request for review.***

If you have any questions about your request for review or wish to request expedited review of a claim involving authorization of your prescription drug under Medicare Part D, you may call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100. You may also visit our web site at www.hhs.gov/dab for additional information on how to file your request for review.

## PRIVACY ACT STATEMENT

The collection of information on this form is authorized by the Social Security Act (section 205(a) of title II, section 702 of title VII, section 1155 of Title XI, and sections 1852(g)(5), 1869(b)(1), 1871, 1872, and 1876(c)(5)(B) of title XVIII, as appropriate). The information provided will be used to further document your claim. Information requested on this form is voluntary, but failure to provide all or any part of the requested information may affect the determination of your claim. Information you furnish on this form may be disclosed by the Department of Health and Human Services or the Social Security Administration to another person or governmental agency only with respect to programs under the Social Security Act and to comply with Federal laws requiring the disclosure of information or the exchange of information between the Department of Health and Human Services, the Social Security Administration, or other agencies.

Department of Health and Human Services
OFFICE OF MEDICARE HEARINGS AND APPEALS
Cleveland, OH

Appeal of: **BRIAN G. LODER DPM PLC**

Beneficiary: [redacted]

Medicare No: [redacted]

OMHA Appeal No.: **3-15259931669**

Medicare Part: **B**

Before: **Martin McClelland**
Administrative Law Judge

Index of the Administrative Record and Exhibit List

| Exhibit Record | Administrative File Reference: File Name | | Page Range |
|---|---|---|---|
| Medical & Related: Medical Records | File 5 | 1 | : 4181 |
| Position Statements: UPIC Position Paper | File 12 | 1 | : 5 |
| Procedural - CMS Levels: Reconsideration | File 2 | 1 | : 18 |
| Procedural - CMS Levels: Request for Reconsideration | File 3 | 1 | : 219 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 4 | 1 | : 3 |
| Procedural - CMS Levels: Redetermination Request/Transmittal Form | File 6 | 1 | : 1 |
| Procedural - OMHA Level: Request for ALJ Hearing | File 1 | 1 | : 16 |
| Procedural - OMHA Level: Amended Notice of Hearing | File 10 | 1 | : 9 |
| Procedural - OMHA Level: Response to Amended Notice of Hearing | File 11 | 1 | : 3 |
| Procedural - OMHA Level: Amended Notice of Hearing (2) | File 13 | 1 | : 9 |
| Procedural - OMHA Level: Response to Amended Notice of Hearing (2) | File 14 | 1 | : 4 |
| Procedural - OMHA Level: Notice of Hearing | File 7 | 1 | : 14 |
| Procedural - OMHA Level: CoventBridge NOI | File 8 | 1 | : 3 |
| Procedural - OMHA Level: Request to Reschedule | File 9 | 1 | : 3 |
| Proceeding (Audios): Hearing audio | File 15 | 1 | : 1 |