# Complaint Exhibit 18

Medicare Appeal Number: 1-14286864182

Medicare Reconsideration Decision

SEPTEMBER 13, 2024

April E. Lopez, FNP-BC, LLC.
3705 N. Ware Road
McAllen, TX 78501

RE:
Beneficiary: See Attached List
Appellant: April E. Lopez, FNP-BC, LLC

Dear April E. Lopez, FNP-BC, LLC.:

This letter is to inform you of the decision on your Medicare appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown under the *Analysis* section.

The appeal decision is UNFAVORABLE. The Qualified Independent Contractor's (QIC's) decision is that Medicare will make no additional payment. More information on the decision is provided on the next pages. You are not required to take any action. If you disagree with the decision, you may appeal to an Administrative Law Judge (ALJ). You must file your appeal, in writing, within 60 days of receipt of this letter. For more information on how to appeal, see the page entitled "Important Information about Your Appeal Rights." The amount still in dispute is estimated to be equal to or over $180. However, the ALJ will determine if your appeal case meets the $180 amount in controversy requirement for an ALJ hearing.

If this appeal is partially favorable or unfavorable, and it originated from an overpayment, Novitas Solutions, Inc., the Medicare Administrative Contractor (MAC), is responsible for processing this determination in accordance with standard Medicare methodologies. Any outstanding debts, prior coverage, and prior reimbursement will be taken into account when processing this decision. The MAC will issue a demand letter containing information regarding the collection process, interest accrual, and requesting an extended repayment schedule (ERS).

A copy of this letter was also sent to the parties shown below. C2C Innovative Solutions, Inc. (C2C), the QIC, was contracted by Medicare to review your appeal.

**Contact Information**

If you have questions, write or call:

*C2C Innovative Solutions, Inc.*
Medicare Part B South
QIC Contractor
P.O. Box 45301
Jacksonville, FL 32232-5301

*Telephone:*
904-224-2613

Who we are:
We are a QIC. Medicare has contracted with us to review your file and make an independent decision.

Sincerely,

Frank DelliCarpini, M.D.
Medical Director

CC: Novitas Solutions Inc.
Robert Saltaformaggio, Esq.

## Summary of Facts

From October 11, 2022, through April 21, 2023, April E. Lopez, FNP-BC, LLC (provider), furnished amniotic fluid allograft services to multiple Medicare beneficiaries. The appellant submitted claims for these services for payment to Novitas Solutions Inc., the Medicare Administrative Contractor (MAC), who made payment for the claims.

On October 26, 2023, Qlarant, the Unified Program Integrity Contractor (UPIC), sent the appellant a notification of overpayment review and additional documentation request (ADR). In conducting the post-payment review, the UPIC used a statistically valid random sample (SVRS) of the appellant claims for reimbursement and discovered what it believed to be a "high level of payment error" in the reimbursements provided to the appellant. Specifically, the UPIC reviewed a 20 claim sample involving medical records of seven beneficiaries and 20 claim lines of service. Using that sample of claims, the UPIC found an error rate of 100% and an actual overpayment amount of $1,503,871.89. The appellant was notified of the total overpayment amount on January 30, 2024, in the UPIC's Notice of Overpayment Findings. Notable findings from the medical review include: The documentation was insufficient to support Medicare guidelines

On February 26, 2024, the MAC issued an overpayment notification letter (demand letter) to the appellant for $1,503,871.89.

On March 4, 2024, the MAC received a redetermination request from Liles Parker PLLC, an authorized representative (also referred to as the appellant). On May 17, 2024 and May 20, 2024, the MAC completed the appeals and sent notice of the unfavorable decisions to the appropriate parties. The MAC's decisions were congruent with the UPIC denials.

On July 12, 2024, C2C Innovative Solutions, Inc., the Qualified Independent Contractor (QIC), received a reconsideration request, dated July 10, 2024, for the services referenced in the *"Explanation of Decision"* section of this letter.

Documentation was evaluated to determine issues such as whether, in conjunction with other credible documentation, the services in question were actually provided or were provided as billed. The responsibilities of the QIC include rendering a decision only on the coverage or payment issues raised by the review request. The QIC may deny or reduce payment if it is believed the items or services at issue were not rendered or not rendered as billed.

The QIC review is a *de novo* review of the case based on the information provided from all prior levels of review and the appellant. The responsibilities of the QIC include rendering a decision only on the coverage or payment issues raised by the review request and the QIC's scope of review.

Key records contained in the case file include:

- Reconsideration Request dated July 10, 2024
- Appointment of Representation dated May 29, 2024
- MAC Redetermination Decision Letter dated May 20, 2024
- MAC Redetermination Decision Letter dated May 17, 2024

- Redetermination Request dated March 4, 2024
- MAC Demand Letter dated February 26, 2024
- UPIC Results Review Letter dated January 30, 2024
- UPIC Records Request Letter dated October 26, 2023
- Medical Records

## Explanation of Decision

A panel of clinical experts, consisting of a physician and a licensed healthcare professional, reviewed the claims.
The decision on your appeal is shown in the Conclusion section. (See below.)

The QIC has determined that April E. Lopez, FNP-BC, LLC is responsible for the denied charges and return of the overpayment.

## Laws, Regulations, and Applicable Policies

The QIC performs reconsideration reviews in accordance with Medicare rules and regulations. The QIC has identified the laws, regulations, and policies below that pertain to this case. An analysis of the QIC's findings and the decision rendered will follow in the QIC's *Medical Necessity Review* section.

### Medical Necessity

Medicare provides coverage for items and services that are reasonable and necessary to diagnose or treat an illness or injury or to improve the functioning of a malformed body member. Payment is excluded if the medical necessity for the service cannot be substantiated. [Section 1862(a)(1)(A) of the Social Security Act (the Act), and the Centers for Medicare & Medicaid (CMS) Internet-Only Manual (IOM), Publication (Pub.) 100-02, Medicare Benefit Policy Manual (MBPM), Chapter 16, Section 20]

### Documentation Requirements

Medicare guidelines place the burden upon the provider to furnish information that may be necessary to determine if payment is due. The service rendered to the patient must be documented in a clear and understandable fashion. The information must be clearly displayed in the medical records. [Section 1833(e) of the Act and 42 Code of Federal Regulations (CFR) Section 424.5(a)(6)]

### Reviewing Claims in the Absence of Policies and Guidelines

The MACs, Comprehensive Error Rate Testing (CERT), Recovery Auditor Contractors (RACs), and Zone Program Integrity Contractors (ZPICs) have the discretion to review claims, in the absence of polices, whether an National Coverage Determination (NCD), coverage provision in an interpretive Medicare manual, or Local Coverage Determination (LCD) exists for that service. When making individual claim determinations, they shall determine that the service in question is covered based on

whether the service meets all of the conditions listed in Section 3.6.2.1, which is noted below. [CMS IOM, Pub. 100-08, Medicare Program Integrity Manual (MPIM), Chapter 3, Section 3.3.3]

**Coverage Determinations**

Contractors shall deny an item or service if it does not meet any of the conditions listed below:

- The item or service does not fall into a Medicare benefit category.
- The item or service is statutorily excluded on grounds other than Section 1862(a)(1)(A) of the Act.
- The item or service is not reasonable and necessary under Section 1862(a)(1)(A) of the Act.
- The item or service does not meet other Medicare program requirements for payment.

[CMS IOM, Pub. 100-08, MPIM, Chapter 3, Section 3.6.2.1]

**Reasonable and Necessary Criteria**

CMS issues NCDs that specify whether certain items, services, procedures or technologies are reasonable and necessary under Section 1862(a)(1)(A) of the Act. In the absence of an NCD, Medicare contractors are responsible for determining whether services are reasonable and necessary. If no LCD exists for a particular item or service, the MACs, CERT, RACs, and ZPICs shall consider an item or service to be reasonable and necessary if the item or service meets the following criteria:

- It is safe and effective;
- It is not experimental or investigational; and
- It is appropriate, including the duration and frequency in terms of whether the service or item is:
  - Furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the beneficiary's condition or to improve the function of a malformed body member;
  - Furnished in a setting appropriate to the beneficiary's medical needs and condition;
  - Ordered and furnished by qualified personnel; and,
  - One that meets, but does not exceed, the beneficiary's medical need.

[CMS IOM, Pub. 100-08, MPIM, Chapter 3, Section 3.6.2.2]

**Particular Services Excluded From Coverage**

Any services are excluded from coverage that are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member. [42 CFR Section 411.15(k)(1)]

**Services Related to and Required as a Result of Services Which Are Not Covered Under Medicare**

Medical and hospital services are sometimes required to treat a condition that arises as a result of services that are not covered because they are determined to be not reasonable and necessary or because they are excluded from coverage for other reasons.

Services "related to" non-covered services (e.g., cosmetic surgery, non-covered organ transplants, non-covered artificial organ implants, etc.), including services related to follow-up care and complications of non-covered services which require treatment during a hospital stay in which the non-covered service was performed, are not covered services under Medicare. Services "not related to" non-covered services are covered under Medicare. [CMS IOM, Pub. 100-02, MBPM, Chapter 16, Section 180]

**Limitation on Liability**

With regard to limitation on liability, Section 1879 of the Act provides as follows:

(a) Where-

(1) a determination is made that, by reason of Section 1862(a)(1) or (9) of the Act, or by reason of a coverage denial described in subsection (g), payment may not be made under part A or part B of this title for any expenses incurred for items or services furnished an individual by a provider of services or by another person pursuant to an assignment under Section 1842(b)(3)(B)(ii), and

(2) both such individual and such provider of services or such other person, as the case may be, did not know, and could not reasonably have been expected to know, that payment would not be made for such items or services under such part A or part B, then to the extent permitted by this title, payment shall, notwithstanding such determination, be made for such items or services (and for such period of time as the Secretary finds will carry out the objectives of this title), as though Section1862(a)(1) and 1862(a)(9) did not apply and as though the coverage denial described in subsection (g) had not occurred. [Section 1879 of the Act]

**When to Make Limitation on Liability Decisions**

A - Initial Claims
In implementing the limitation on liability provision, the contractor makes a coverage decision before making a limitation on liability decision. Section 1879 of the Act provides that limitation on liability can be allowed only in cases:

> Where - (1) a determination is made that, by reason of Section1862(a)(l) or (9) or by reason of a coverage denial described in subsection (g) of the Act, payment may not be made under Part A or Part B of this title for any expenses incurred for items or services furnished an individual by a provider of services... (Section 1879(a)(1) of the Act.)

Only after the contractor makes a decision that care is not reasonable or necessary, is custodial, is not reasonable and necessary for the palliation or management of terminal illness in hospice denials, or does not meet the homebound or intermittent nursing care requirements in home health service denials, or does not meet the "terminally ill" condition for hospice care, should a determination be made regarding limitation on liability. In every such case, there will be two parts to the limitation on liability determination:

1. Whether and when the beneficiary knew or should have known that the services were non-covered; and

2. Whether and when the provider knew or should have known that the services were non-covered.

In any case where the provider gave the beneficiary notice that the services would be non-covered, the contractor will find that the provider knew that the services were non-covered.



C2C Innovative Solutions, Inc.
P.O. Box 45301, Jacksonville, Florida 32232-5301

B – Redetermination

At the redetermination level, again the contractor first makes a determination on the coverage issue. It considers the question of limitation on liability, if applicable, only if the initial adverse coverage decision is wholly or partially affirmed. [CMS IOM, Pub. 100-04, Medicare Claims Processing Manual (MCPM), Chapter 30, Section 100.2]

Fault

With regard to the application of fault, Medicare regulations provide as follows:
a) Any payment under this title to any provider of services or other person with respect to any items or services furnished any individual shall be regarded as a payment to such individual.
b) Where –

(1) more than the correct amount is paid under this title to a provider of services or other person for items or services furnished an individual and the Secretary determines (A) that, within such period as he may specify, the excess over the correct amount cannot be recouped from such provider of services or other person, or (B) that such provider of services or other person was without fault with respect to the payment of such excess over the correct amount. [Section 1870 of the Act]

**Determining Provider, Practitioner, or Supplier Liability**

The contractor considers a provider, physician, or other supplier without fault, if it exercised reasonable care in billing for, and accepting, the payment; i.e.,

- It made full disclosure of all material facts; and
- On the basis of the information available to it, including, but not limited to, the Medicare instructions and regulations, it had a reasonable basis for assuming that the payment was correct, or, if it had reason to question the payment; it promptly brought the question to the contractor's attention.

[CMS IOM, Pub. 100-06, Medicare Financial Management Manual (MFMM), Chapter 3, Section 90]

**Overpayments**

Overpayments are Medicare payments a provider or beneficiary has received in excess of amounts due and payable under the statute and regulations. Once a determination of an overpayment has been made, the amount is a debt owed by the debtor to the United States (U.S.) Government. Under the Federal Claims Collection Act of 1966, as amended, each agency of the Federal Government (pursuant to regulations jointly promulgated by the Attorney General and the Comptroller General of the U.S.) must attempt collection of claims of the Federal Government for money arising out of the activities of the agency. The Contractor will not be liable for overpayments it makes to debtors in the absence of fraud or gross negligence on its part; however, once a Contractor determines an overpayment has been made, it must attempt recovery of overpayments in accordance with CMS regulations. The Federal Claims Collection Act requires timely and aggressive efforts to recover overpayments, including efforts to locate the debtor where necessary, demands for repayment, and establishment of repayment schedules, suspension of interim payments by intermediaries to institutional providers, and recoupment or setoff, where appropriate. [CMS IOM, Pub. 100-06, MFMM, Chapter 3, Section 10]

## Analysis

The following services are at issue for reconsideration:

**Q4253** - Zenith Amniotic Membrane, per square (sq) centimeter (cm)
**Q4236** - carePATCH, per sq cm

The following modifiers are at issue (insert if appropriate):

76 – Repeat procedure or service by same physician or other qualified health care professional
KX – Requirements specified in the medical policy have been met

## Appellant Arguments and QIC Responses

**Appellant Argument:** The appellant submitted a brief, which includes applicable laws and regulations in relation to the services at issue. The appellant disagrees with each of Novitas's unfavorable determinations. A review of the medical record documentation provided in support of these services indicates that these services met the requirements for coverage and payment and the Novitas's adverse redetermination findings should be reversed.

> **QIC Response:** The QIC finds that the appellant's issues regarding the MAC's redetermination decision are cured with the QIC reconsideration, which is a new and independent review. The QIC conducts a thorough review of the medical records in conjunction with applicable law, regulation and policy and provides a complete and detailed decision. The QIC's detailed review of the claims at issue can be found in the section titled, "*Claim Review*".

**Appellant Argument:** The application of skin substitutes or cellular or tissue-based products (CTPs) is medically reasonable and necessary as coverage against persistent superficial skin deficits. LCD L35041 provides guidelines for determining coverage and payment for the application of skin substitutes or CTPs to non-healing wounds resulting from diabetic foot ulcers and venous leg ulcers of the lower extremities.

> **QIC Response:** In regard to appellant's argument that the services were medically reasonable and necessary according to LCD L35041, QIC points out that the LCD does not state that all Human Cells, Tissues, and Cellular and Tissue-Based Products (HCT/P) are considered to be reasonable and necessary under the LCD's detailed provisions. Rather, the LCD states that HCT/P products (when used in accordance with the products' individualized application guidelines) may be considered reasonable and necessary for purposes of the LCD. Thus, the MAC will review whether a particular HCT/P is reasonable and necessary under CMS' rules and policies, for the use proposed and the individual beneficiary.
>
> The MAC determined the HCT/P product at issue was not medically reasonable and necessary, and hence not eligible to be covered, under the provisions of LCD L35041. Medicare will only pay for items or services that are reasonable and necessary under section 1862(a)(1)(A) of the Social Security Act. CMS interprets reasonable and necessary to mean that the item or service is safe, effective, not experimental or investigational, and that it is appropriate for use, which includes that it is furnished in accordance with accepted standards of medical practice for the

diagnosis or treatment of the beneficiary's condition or to improve the function of a malformed body member. 54 Fed. Reg. 4302, 4304 (Jan. 30, 1989), 60 Fed .Reg. 48417, 48418 (Sept. 19, 1995), 85 Fed. Reg. 54327, 54328 (Sept. 1, 2020). This policy is codified in CMS IOM, Pub. 100-08, MPIM, Chapter 3, Section 3.6.2.2. Accordingly, the QIC has analyzed coverage in accordance with CMS' rules and policies for reasonable and necessary under section 1862(a)(1)(A) of the Social Security Act. Further information regarding the QIC's detailed review is located under the section titled, "*Claim Review*". In addition, CMS IOM, Pub. 100-08, MPIM, Chapter 3, Section 3.6.2.2, was utilized in this review as the services at issue were not part of an LCD or NCD. This policy states that when no LCD or NCD exists, a product/service can be considered reasonable and necessary if it is safe and effective, is not experimental or investigational and is appropriate, including the duration and frequency. When making individual claim determinations, the reviewer shall determine that the service in question is covered based on whether the service meets all of the conditions listed in MPIM Section 3.6.2.1. Further information regarding the QIC's detailed review is located under the section titled, "*Claim Review*"

**Appellant Argument:** The appellant's liability for any alleged Medicare overpayment should be limited or waived. Pursuant to section 1879 of the Act, the appellant should be relieved of liability with respect to any alleged overpayment. Pursuant to section 1870(c) of the Act, the appellant should not be held liable for any overpayments.

**QIC Response:** Per CMS IOM 100-04 MCPM Chapter 30 Section 100.2, the contractor has determined that the provider, practitioner, or supplier is liable under Section 1879 for the items and services furnished to the beneficiary. Regarding the limitation of liability, this portion of the Act, 1879, provides financial relief to beneficiaries, providers, practitioners, physicians, and other suppliers by permitting Medicare payment to be made, or requiring refunds to be made, for certain services and items for which Medicare payment would otherwise be denied. First, it is important that the management of any medical practice treating a significant number of Medicare beneficiaries understand the conditions governing which services will be reimbursed under the Medicare Program. Pertinent information was available from the Law and Regulations, from Medicare Bulletins and from your peers in the medical community. Lacking any information that the provider is "without fault"; Section 1879 of the Act does not apply.

Section 1870 of the Act permits Medicare to not recover inappropriate payments with respect to an individual deemed without fault in having caused the overpayment. For the "without fault" provision to apply, the individual must have complied with all pertinent regulations and instruction materials. These include CPT procedure code definitions and Medicare bulletins. The individual is expected to have had a reasonable basis for assuming the payments received were correct or, if there was reason to question the payment, to promptly bring such a question to the contractor's attention. In addition, the individual is expected to have made full and accurate disclosure of material facts.

It is important that the management personnel of any medical practice treating a significant number of Medicare beneficiaries understand the conditions governing which services will be reimbursed under the Medicare Program. Pertinent information was available from the Law and Regulations, from Medicare Bulletins and from your peers in the medical community. With respect to acceptance of payment, 20 CFR Section 404.507 indicates that what constitutes fault depends upon whether the facts show that the incorrect payment to the individual or to a

provider of services or other person resulted from whether he either knew or could have been expected to know the payment was incorrect. In this instance, there is nothing in the case file that which would indicate that appellant could not have been expected to know that the payment was incorrect. Providers in the Medicare Program are presumed to have knowledge of published Medicare coverage criteria, pursuant to 42 CFR Section 411.406. Lacking any information that the provider is "without fault"; we have found that Section 1870 of the Act does not apply.

## Claim Review

At issue are claims involving amniotic allograft services for the beneficiaries listed below. The services were denied at post-payment review by the UPIC review as not medically reasonable, due to the submitted documentation being insufficient to support the Medicare guidelines for the service. The provider submitted medical records and the MAC denied services, finding the documentation did not support the service as billed. The MAC's redetermination decision was congruent with the UPIC review denials.

The appellant submitted medical records for review. The appellant contends the services were medically necessary. Medicare guidelines place the burden upon the provider to furnish information that may be necessary to determine if payment is due. The services rendered to the patient must be documented in a clear and understandable fashion. The information must be clearly displayed in the medical records.

After a review of the case file, the QIC notes the amniotic allograft services are not reasonable and necessary for payment. Upon review of the documentation, the QIC finds that each of the beneficiaries were treated for non-healing wounds. The provider submitted documentation which included office visit notes, treatment notes and photographs of the wounds being treated. The record supports that wound debridement and application of the amniotic wound covering services were provided to the beneficiaries. However, the submitted documentation does not detail why wound healing was not progressing as expected or why the wounds did not respond to any previous treatments provided. The documentation did not address the management for any underlying conditions that were a contributing factor to the beneficiaries' wounds. Further, the documentation includes photographs of the wounds, however, the appearance of the wounds could not be determined due to the quality of the photographs. The submitted documentation did not adequately support the services provided.

CarePATCH, per square centimeter (sq cm) (Q4236) and Zenith Amniotic Membrane, per sq cm (Q4253) are amniotic liquid allografts derived from human amniotic tissue. The amniotic membrane is separated from the placenta and morselized into particulate form, then combined with amniotic fluid components to form the allograft. Although the service is eligible to be marketed under section 361 of the PHS Act, there is insufficient support from double-blinded, randomized human clinical trials for safety and effectiveness when used as a skin substitute wound covering to treat the specific condition(s) at issue. Given the lack of peer-reviewed, evidence-based literature in support of the carePATCH, per sq cm (Q4236) and Zenith Amniotic Membrane, per sq cm (Q4253), it is the QIC's determination that the provider/appellant has not met their burden of showing that the services meet the medically reasonable and necessary requirements of Section 1862(a)(1)(A) of the Act and CMS IOM 100-08, MPIM, Chapter 3, Section 3.6.2.2.

## Conclusion

The decision of the QIC is UNFAVORABLE and finds the services did not meet the requirements to be considered reasonable and necessary in the treatment of the patients. After careful consideration, the QIC finds an overpayment was made. The QIC finds the overpayment amounts may not be waived because the provider/supplier was at fault for causing or accepting the Part B payments for the services at issue. The provider is responsible to return the overpaid amount.



C2C Innovative Solutions, Inc.
P.O. Box 45301, Jacksonville, Florida 32232-5301

## Individual Decision Spreadsheet

**Decision Key for Individual Spreadsheet**

U1 - The documentation does not support the service as reasonable and necessary

| Internal Control Number | Medicare Number Redacted | Beneficiary Name | Date of Service | Procedure Code | Modifier | EXPLANATION | DECISION |
|---|---|---|---|---|---|---|---|
| 5724045900039 | [redacted] | [redacted] | 11/29/2022 | Q4253 | 76 | U1 | Unfavorable |
| 5724045900040 | [redacted] | [redacted] | 12/09/2022 | Q4253 | 76 | U1 | Unfavorable |
| 5724045900041 | [redacted] | [redacted] | 12/20/2022 | Q4253 | 76 | U1 | Unfavorable |
| 5724045900046 | [redacted] | [redacted] | 12/14/2022 | Q4253 | | U1 | Unfavorable |
| 5724045900047 | [redacted] | [redacted] | 12/14/2022 | Q4253 | 76 | U1 | Unfavorable |
| 5724045900048 | [redacted] | [redacted] | 11/25/2022 | Q4253 | 76 | U1 | Unfavorable |
| 5724045900049 | [redacted] | [redacted] | 12/22/2022 | Q4253 | 76 | U1 | Unfavorable |
| 5724045900050 | [redacted] | [redacted] | 01/02/2023 | Q4253 | 76 | U1 | Unfavorable |
| 5724045900051 | [redacted] | [redacted] | 11/15/2022 | Q4253 | 76 | U1 | Unfavorable |
| 5724045900052 | [redacted] | [redacted] | 11/11/2022 | Q4253 | 76 | U1 | Unfavorable |
| 6724045900042 | [redacted] | [redacted] | 01/31/2023 | Q4253 | 76 | U1 | Unfavorable |

| Internal Control Number | Medicare Number Redacted | Beneficiary Name | Date of Service | Procedure Code | Modifier | EXPLANATION | DECISION |
|---|---|---|---|---|---|---|---|
| 6724045900053 | [redacted] | | 01/13/2023 | Q4253 | 76 | U1 | Unfavorable |
| 5724045900043 | | | 11/16/2022 | Q4253 | | U1 | Unfavorable |
| 6724045900038 | | | 10/11/2022 | Q4253 | KX | U1 | Unfavorable |
| 6724045900044 | | | 02/09/2023 | Q4253 | | U1 | Unfavorable |
| 6724045900056 | | | 04/21/2023 | Q4236 | | U1 | Unfavorable |
| 5724045900054 | | | 03/07/2023 | Q4236 | | U1 | Unfavorable |
| 5724045900055 | | | 04/19/2023 | Q4236 | | U1 | Unfavorable |
| 6724045900058 | | | 10/11/2022 | Q4253 | KX | U1 | Unfavorable |
| 5724045900057 | | | 03/23/2023 | Q4236 | | U1 | Unfavorable |

## Who is Responsible for the Bill?

When services are denied as not medically reasonable and necessary under the Medicare program, we must also determine if the provider or beneficiary is liable for payment. Section 1879(a)-(g) of the Act, also referred to as "the limitation on liability provision," spells out how to arrive at this decision.

Medicare regulations, 42 CFR Section 424.5(a)(6), require providers to be familiar with Medicare rules and regulations. In addition, 42 CFR Section 411.406 provides criteria for determining when a provider is responsible for payment for the services considered not reasonable and necessary. This regulation states that providers are presumed to have knowledge of published Medicare coverage rules and regulations, CMS Rulings, Medicare coverage policies in Novitas Solutions, Inc. bulletins or websites, and acceptable standards within the local community. We find that April E. Lopez FNP-BC. is liable for the denied charges and found at fault in causing an overpayment for the denied services. The records did not support the beneficiaries were notified in advance that Medicare would likely deny payment for the services at issue. The beneficiaries cannot be charged for these services. [Section 1870 of the Act]

## Other Important Information

If you appeal this decision, the Administrative Law Judge (ALJ) will not consider new evidence unless you show good cause for not presenting the evidence to the QIC. This requirement does not apply to beneficiaries, unless a provider or supplier represents the beneficiary.

For information on how to appeal this decision, refer to the page titled "Important Information about Your Appeal Rights." If you need more information or have any questions, please call 1-800-Medicare (1-800-633-4227) [TTY/TDD: 1-800-486-2048] or the phone number listed on page one.

You can receive copies of statutes, regulations, policies, and/or manual instructions we used to arrive at this decision. For instructions on how to do this, please see 'Other Important Information' on the page entitled "Important Information about Your Appeal Rights." The request must be submitted in writing to this office.

## Your Right to Appeal this Decision

If you disagree with this decision, you may appeal the decision to an Administrative Law Judge (ALJ) at the Office of Medicare Hearings and Appeals (OMHA).

*As of 1/1/2023, you must have $180.00 in dispute to appeal to an ALJ.* A claim can be combined ("aggregated") with others to reach this amount if: (1) the other claims have also been decided by a QIC; (2) all of the claims are listed on your request for hearing; (3) your request for hearing is filed within 60 days of receipt of all of the QIC reconsiderations being appealed; and (4) you explain why you believe the claims involve similar or related services.

You can find more information about your right to an ALJ hearing at www.hhs.gov/omha or call toll-free 1-855-556-8475.

## How to Appeal

To exercise your right to appeal, you must file a written request for an ALJ hearing. You may appeal by mail or online within 60 days of receiving this letter. Receipt of this letter is presumed to be 5 days after the date on this notice unless you can show you did not receive the letter within that time. If you are filing your request late, you must explain why your request is being filed late. More information on late filing is available at: http://cms.gov/latefile. After you file an appeal, you may check your appeal's status via the OMHA website at www.hhs.gov/omha (click on Appeal Status Lookup).

To file your request, please use Form OMHA-100, available at: www.hhs.gov/omha/forms/index.html. If you do not use the form, your request for hearing must include the following:

1. The beneficiary's name, address, and Medicare number;
2. The name and address of the person appealing, if the person is not the beneficiary;
3. The representative's name and address, if any;
4. The Medicare appeal number listed on the front page of this reconsideration notice;
5. The dates of service for the claims at issue;
6. The reasons why you disagree with the QIC's reconsideration; and
7. A statement of any additional evidence to be submitted and the date it will be submitted.

To appeal **ONLINE**, visit the OMHA e-Appeal Portal (Portal) at https://hhs-ecape-portal.entellitrak.com and register for an account. Through the Portal, you may directly upload Form OMHA-100 or a request for hearing that includes the elements above. To learn more about the Portal, visit www.hhs.gov/omha or call toll-free at 1-855-556-8475. Beneficiaries and their representatives can also call the OMHA Beneficiary toll-free line at 1-844-419-3358.

To appeal BY MAIL (tracked delivery is suggested), send your request to:

**OMHA Central Operations**
**1001 Lakeside Ave., Suite 930**
**Cleveland, OH 44114-1158**

If you are a beneficiary or you represent a beneficiary, mail your hearing request to:

**OMHA Central Operations**
**Attn: Beneficiary Mail Stop**
**1001 Lakeside Ave., Suite 930**
**Cleveland, OH 44114-1158**

For help, or more information on the OMHA beneficiary prioritization program, including limitations for beneficiaries represented by a provider/supplier, or a shared representative, beneficiaries and their representatives can call the OMHA Beneficiary toll-free line at 1-844-419-3358 or visit the OMHA website at www.hhs.gov/omha.

Whether you file by mail or online, you must send a copy of your request for hearing to the other parties who received a copy of this decision (for example, the beneficiary or provider/supplier). Please do not send a copy of your hearing request to the QIC that issued this decision or to the Medicare Administrative Contractor that issued the redetermination.

## Who May File an Appeal

You or someone you name to act for you (your **appointed representative**) may file an appeal. You can name a relative, friend, advocate, attorney, doctor, or someone else to act for you. You and your appointed representative must sign and date a statement naming that person and send it with your request for hearing. To learn more about having a representative, visit www.hhs.gov/omha or call toll-free at 1-855-556-8475.

## Help With Your Appeal

You can have a friend or someone else help you with your appeal. If you have any questions about payment denials or appeals, you can also contact your State Health Insurance Assistance Program (SHIP). To find out how to contact your local SHIP, call 1-800-MEDICARE (1-800-633-4227).

## Other Important Information

If you want copies of statutes, regulations, and/or policies we used to arrive at this decision, please write to us and attach a copy of this letter, at:

**C2C Innovative Solutions, Inc.**
**A Medicare Contractor**
**P.O. Box 45301**
**Jacksonville FL 32232-5301**

If you have questions, please call us at the phone number provided on the front of this notice.

## Other Resources To Help You

1-800-MEDICARE (1-800-633-4227),
TTY/TDD: 1-800-486-2048

If you need large print or assistance, call 1-800-633-4227

# IMPORTANT INFORMATION ABOUT YOUR APPEAL RIGHTS