# Complaint Exhibit 25

Department of Health and Human Services
Office of the Secretary

**OFFICE OF MEDICARE HEARINGS AND APPEALS**

Miami Field Office
Claude Pepper Federal Building
51 SW 1st Avenue, Suite 1400A
Miami, FL 33130-1608
(786) 792-3700
(786) 792-3797 (Direct)
(305) 536-5050 (Fax)
(866) 622-0382 (Toll Free)

December 18, 2025

BRIAN G. LODER DPM PLC
ATTN: WILLIAM O'MALLEY
60 PUBLIC SQ STE 602
WILKES-BARRE, PA 18701

## NOTICE OF DECISION

Appellant: BRIAN G. LODER DPM PLC
OMHA Appeal Number: 3-15259989747

Enclosed is the decision for the above case. This decision is based on the administrative record, including any evidence or testimony presented at the hearing, if one was held. The decision is not precedential, does not release the appellant from civil or criminal liability, and may be reopened at any time if it was procured by fraud or similar fault. In addition, the decision may be reopened within 180 calendar days from the date of the decision for good cause. Good cause exists when there is new and material evidence that was not available or known at the time of the decision and may result in a different conclusion, or when the evidence that was considered clearly shows on its face that an obvious error was made at the time of the decision.

**What if I disagree with the decision?**

If you disagree with the decision, you may file an appeal with the Medicare Appeals Council. Other parties may also appeal the decision. In addition, the Medicare Appeals Council may decide to review the decision on its own motion. If no party appeals the decision and the Medicare Appeals Council does not review the decision, the decision is binding on all parties and you and the other parties will not have the right to ask a federal court to review the decision.

If you are not already represented, you may appoint an attorney or other person to represent you.

**How much time do I have to file an appeal?**

The Medicare Appeals Council must receive your written appeal **within 60 calendar days** of the date that you receive this notice. The Medicare Appeals Council assumes you received this notice 5 calendar days after the date of the notice unless you show that you did not receive it within the 5-day period.

The Medicare Appeals Council will dismiss a late request for review unless you show that you had a good reason for not filing it on time.

**How do I file an appeal?**

To appeal, you must ask the Medicare Appeals Council to review the decision. Your appeal must be in writing, except that a request for expedited review of a Part D decision may be made orally as described below. Your appeal must identify the parts of the decision that you disagree with, and explain why you disagree.

You may submit a written request for review to the Medicare Appeals Council using one of three available methods: mail, fax, or electronic filing (E-File). **Please do not submit your request for review using more than one method**. Regardless of how you file your appeal, **you must always send a copy of your written request for review to the other parties who received a copy of the decision.**

If you are filing a written request for review, you may use the enclosed *Request for Review* (Form DAB-101), or you may write a letter containing the following:

- The beneficiary's/enrollee's name (and telephone number for Part D appeals);
- The beneficiary's/enrollee's Medicare number (Health Insurance Claim Number or Medicare Beneficiary Identifier);
- The item(s), service(s), or specific Part D drug(s) in dispute;
- The specific date(s) the item(s) or service(s) were provided, if applicable;
- For Part D appeals, the plan name;
- For Part D appeals, the OMHA Appeal Number on the adjudicator's decision;
- For Part D appeals requesting expedited review, a statement that you are requesting expedited review;
- The date of the adjudicator's decision (not required for Part D appeals); and
- Your name and signature, and, if applicable, the name and signature of your representative.

**Filing by mail:**

Mail your appeal and a copy of the enclosed decision to:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644

330 Independence Ave., S.W.
Washington, D.C. 20201

**Filing by fax:**

Fax your appeal and a copy of the enclosed decision to **(202) 565-0227.**

**Filing by computer:**

Using your web browser, visit the Medicare Operations Division Electronic Filing System (MOD E-File) website at **https://dab.efile.hhs.gov/mod**.

To file a new appeal using MOD E-File, you will need to register by:
1. Clicking **Register** on the MOD E-File home page;
2. Entering the information requested on the "Register New Account" form; and
3. Clicking **Register Account** at the bottom of the form.

You will use the email address and password you provided during registration to access MOD E-File at **https://dab.efile.hhs.gov/mod/users/new.** You will be able to use MOD E-File to file and access the specific materials for appeals to which you are a party or a party's representative. You may check the status of any appeal on the website homepage without registering.

Once registered, you may file your appeal by:
1. Logging into MOD E-File;
2. Clicking the **File New Appeal** menu button on the top right of the screen;
3. Selecting the type of appeal you are filing (Request for Review or Request for Escalation); and
4. Entering the requested Appeal Information and uploading the requested Appeal Documents on the "File New Appeal - Medicare Operations Division" form. You are required to provide information and documents marked with an asterisk.

At a minimum, the Medicare Appeals Council requires an appellant to file a signed Request for Review and a copy of the enclosed decision. All documents should be submitted in Portable Document Format (PDF) whenever possible. Any document, including a Request for Review, will be deemed to have been filed on a given day, if it is uploaded to MOD E-File on or before 11:59 p.m. EST of that day.

Currently, the documents that may be filed electronically are the:
1. Request for Review;
2. Appointment of Representative form (OMB Form 0938-0950);
3. Copy of Administrative Law Judge or attorney adjudicator decision;
4. Memorandum or brief or other written statement in support of your appeal; and
5. Request to Withdraw your appeal

**No other documents aside from the five (5) listed categories above may be submitted through MOD E-File.**

**Filing by oral request (for expedited review only):**

Oral requests for expedited review of a Part D decision may be made by telephone to **(866) 365-8204.** You must provide the information listed in the bullet points above and a statement that you are requesting an expedited review within 60 calendar days after receipt of this notice of decision. The Medicare Appeals Council will document the oral request in writing and maintain the documentation in the case file.

Please note that your request for review will only be expedited (1) the appeal involves an issue specified in 42 C.F.R. § 423.566(b), but does not include solely a request for payment of a Part D drug that has already been furnished, and (2) the prescribing physician (or other prescriber) indicates, or the Medicare Appeals Council determines, that the standard time frame may seriously jeopardize your life, health, or ability to regain maximum function.

**How will the Medicare Appeals Council respond to my appeal?**

The Medicare Appeals Council will limit its review to the issues raised in the appeal, unless the appeal is filed by an unrepresented beneficiary/enrollee. It may change the parts of the decision that you agree with. It may adopt, modify, or reverse the decision, in whole or in part, or it may send the case back to OMHA for further action. It may also dismiss your appeal.

**Questions?**

You may call or write our office. A toll-free phone number and mailing address are at the top of this notice.

Additional information about filing an appeal with the Medicare Appeals Council is available at http://www.hhs.gov/dab/. You can also call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100 or (866) 365-8204 (toll free), if you have questions about filing an appeal.

cc:

QIC - C2C B North
301 W Bay Street
Ste. 1110
Jacksonville, FL 32202

[redacted]

Enclosures:

OMHA-152, Decision
DAB-101, Request for Review
OMHA-156, Exhibit List

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Miami, FL**

| | | | |
|---|---|---|---|
| Appeal of: | **BRIAN G. LODER DPM PLC** | OMHA Appeal No.: | **3-15259989747** |
| Beneficiary: | [redacted] | Medicare Part: | B |
| Medicare No.: | [redacted] | Before: | **Jane Van Duzer** Administrative Law Judge |

## DECISION

After considering the evidence and arguments presented in the record, I enter an **UNFAVORABLE** decision. The appellant remains liable for the non-covered services and any outstanding overpayment amount.

## PROCEDURAL HISTORY

The appellant, Brian G. Loder DPM, PLC., initially received Medicare reimbursement for Dual Layer Impax Membrane (HCPCS code Q4262) and (HCPCS code 15271), furnished to C.R., a Medicare beneficiary on August 17, 2023. Then, on December 11, 2024, WPS, a Medicare Administrative Contractor (MAC), issued an unfavorable decision. (File 4, pp. 8-13) Thereafter, on August 14, 2024, the MAC issued a letter informing the appellant it had received Medicare reimbursement in error, resulting in an overpayment. (File 5, pp. 11-16) Subsequently, on May 21, 2025, C2C Innovative Solutions, Inc., the Qualified Independent Contractor (QIC) upheld the denial of coverage. (File 2) Specifically, the QIC found that the dual layer Impax membrane was experimental and investigational as denoted by the Q code status nomenclature (File 2, p. 5) Thereafter, on July 22, 2025, the Office of Medicare Hearings and Appeals received the appellant's timely request for a hearing by an Administrative Law Judge. (File 1) The amount in controversy satisfies the jurisdictional requirement for a hearing pursuant to Title XVIII of the Social Security Act, (the Act) §1869(b)(1)(E). A telephonic hearing took place on November 4, 2025. William O'Malley testified, under oath, on behalf of the appellant. I received the beneficiary's file into evidence with exhibited record files 1-16, which includes the hearing audio recording and the UPIC's written position statement.

## ISSUE(S)

Is the appellant entitled to Medicare reimbursement under Part B of Title XVIII of the Act for HCPCS codes Q4262 and 15271, provided to the beneficiary on the date of service at issue? In other words, are the services within a covered category under §1861(t) of the Act, and if so, are such services not otherwise excluded from coverage under §1862(a)(1) of the Act?

If payment for the services at issue is denied, can Medicare payment nonetheless be made under the limitations of liability provisions of §1879 of the Act. Additionally, if an overpayment exists, the next issue is whether the appellant is entitled to a waiver, under §1870 of the Act, of the

carrier's assessed overpayment. Specifically, was the appellant "without fault", as defined under §1870 of the Act, in accepting the improper Medicare payments which are the subject of the carrier's overpayment audit.

## APPLICABLE LAW AND POLICY

**Principles of Law**

1. ***Statutes and Regulations***

Title XVIII of the Social Security Act (the Act) §1831 established the Supplemental Medical Insurance Program for the aged and disabled under Part B.

The scope of benefits that are provided to beneficiaries under the Medicare Part B insurance program are set forth in § 1832 of the Act. An individual is entitled to have payment made on his/her behalf for medical and other health services furnished by a provider of services or by others under arrangement with them made by a provider of services. *See* Act §1832(a)(2)(B); *see also* 42 C.F.R. § 410.3.

No payment shall be made to any provider of services unless there has been furnished such information as may be necessary to determine the amounts due such provider. *See* Act § 1833(e); *see also* 42 C.F.R. § 424.5(a)(6).

Payment for services rendered under Part B of the Medicare laws may be made only to providers of services which are eligible under section 1866(a), which outlines the requirement of agreements with providers of service and the enrollment process. Under this section, payment may only be made if the physician appropriately certifies and recertifies, when applicable, that the services provided were medically required. *See* Act § 1835.

The term "medical and other health services" specifically includes "services and supplies (including drugs and biologicals which are not usually self-administered by the patient) furnished as an incident to a physician's professional service, of kinds which are commonly furnished in physicians' offices and are commonly either rendered without charge or included in the physicians' bills (or would have been so included but for the application of section §1847B. *See* Act § 1861(s)(2)(A); *see also* 42 C.F.R. §§ 410.10(b); 410.27 and 410.26(a)(7).

The term 'drugs' and the term 'biologicals', except for purposes of subsection (m)(5) and paragraph (2), include only such drugs (including contrast agents) and biologicals, respectively, as are included (or approved for inclusion) in the United States Pharmacopoeia, the National Formulary, or the United States Homeopathic Pharmacopoeia, or in New Drugs or Accepted Dental Remedies (except for any drugs and biologicals unfavorably evaluated therein), or as are approved by the pharmacy and drug therapeutics committee (or equivalent committee) of the medical staff of the hospital furnishing such drugs and biologicals for use in such hospital. *See* Act § 1861(t)(1); *see also* 42 C.F.R. § 410.29.

Notwithstanding any other provision of the Act, no payment may be made under Part A or Part B for any expenses incurred for items or services, which are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member. *See* Act § 1862(a)(1)(A); *see also* 42 C.F.R. § 411.15(k)(1).

A waiver of an overpayment adjustment or recovery of an incorrect payment may be made to a provider who is "without fault." *See* Act § 1870(b); *see also* 42 C.F.R. §§405.350(a)(2); §405.351; and 405.355.

Section 1879 of the Act limits the liability of the beneficiary and providers of services if the services are found to be not medially reasonable and necessary under §1862(a)(1)(A) or care was custodial in nature under §1862(a)(1)(9). Payment will only be made pursuant to this section if neither the beneficiary nor the provider knew or could reasonably have been expected to know that the services were not covered. *See also* 42 C.F.R. §§ 411.404; 411.406.

### 2. *Policy and Guidance*

Unless promulgated as a regulation by CMS, no rule, requirement, or statement of policy, other than a National Coverage Determination (NCD), can establish or change a substantive legal standard governing the scope of benefits or payment for services under the Medicare program. However, in lieu of binding regulations with the full force and effect of law, CMS and its contractors have issued policy guidance that describe criteria for coverage of selected types of medical items and services in the form of manuals and local medical review policies (LMRPs) or local coverage determinations (LCDs). *See* Act § 1871(a)(2). The undersigned notes that there is no applicable Local Coverage Determination.

National Coverage Determinations are binding upon Administrative Law Judges. *See* Act § 1869(f)(1); *see also* 42 C.F.R. § 405.1060. The undersigned notes that there is no applicable National Coverage Determination. Administrative Law Judges will give substantial deference to local coverage determinations (LCDs), local medical review policies (LMRPs), or CMS program guidance when applicable, and if they do not follow the policy they must explain why in their decision. *See* Act §1869(f)(2); *see also* 42 C.F.R. § 405.1062.
I also gave substantial deference to the manuals implementing the Medicare program, which are of persuasive importance, instructive and influential. Relevant to this case is the Medicare Benefit Policy Manual, Publication 100-2, Chapter 15, Covered and Other Health Services, §30 Physician Services; §50 Drugs and Biologicals; §50.1 Definition of Drugs and Biologicals; §50.2 Determining Self Administration of Drugs and Biologicals; §50.3 Incident to Requirements; §50.4.1 Approved Use of Drug and the Medicare Claims Processing Manual, Publication 100-4, Chapters 4, 17, and Chapter 30, Financial Liability Protections. *See also* C.F.R. §405.1062.

## FINDINGS OF FACT AND ANALYSIS

***Facts***

The appellant submitted medical records pre-dating and post-dating the date of service at issue, which I did not consider. (File 4) On August 17, 2023, Brian Loder DPM treated the beneficiary due to a chief complaint of non-pressure chronic ulcer of the left lower extremity with fat layer exposed. (File 4, p. 15) Dr. Loder documented the beneficiary presented with a 10-week-old non-pressure chronic ulcer of the left lower leg with fat layer exposed. (Id.) On examination, the beneficiary presented with an ulcer to the lower lateral leg that measured 1.5cm x 2.4cm. (File 4, p. 16) The ulcer base was healthy/granular, and it exuded a small amount of serous exudate. (Id.) The beneficiary was diagnosed with a non-pressure chronic ulcer of the left lower leg with fat layer exposed. (Id.) The beneficiary's wound was cleansed and debrided. (Id.) Thereafter, Impax Amniotic Membrane (HCPCS code Q462) 4 x 4 cm was applied to the wound. (File 4, p. 17) It was documented that 3 units were applied, and 1 unit was wasted. (File 4, pp. 17, 113) The lot number used was SG23B-T2035-0017 with an expiration date of April 15, 2028. (File 4, p. 17)

The Legacy Medical Consultants label for Impax Amniotic Allograft states in pertinent part as follows:

A sterile, dual layer amniotic allograft derived from a prescreened mother with a planned delivery. Dual layer Impax Membrane is manufactured in compliance with FDA regulations. The membrane is minimally processed to preserve the native structure of the tissue, dehydrated, and terminally sterilized. Dual Layer Impax membrane is confirmed by the FDA Tissue Reference Group to meet the criteria for regulation solely under section 361 of the PHS Act as defined in 21 CFR Part 1271.[1]

***Hearing testimony***

William O'Malley proffered the appellant's position regarding coverage of the services at issue, which I considered in reaching my decision in this case. I also considered the UPIC's written position statement.

***Analysis***

I reviewed the Medicare coverage criteria for dual layer Impax membrane wound cover, established in accordance with the statutory and regulatory provisions of Part B of Title XVIII of the Act. For the reasons set forth below, I find the appellant did not meet the payment criteria for same.

At the outset, I am not persuaded by the QIC's finding that the Impax Membrane at issue is experimental and investigational as denoted by the Q code status nomenclature (File 2, p. 5) Specifically, Medicare indicates that Q codes are established to identify drugs, biologicals, and medical equipment or services not identified by national HCPCS level II codes, but for which codes are needed for Medicare claims processing.[2]

Medicare is a defined benefit program, which means that it does not cover all available medical services and supplies.[3] Instead, Medicare coverage is limited to those medical services and supplies identified by Congress, by the Secretary of Health and Human Services, and by CMS in implementing Congressional directives. For example, Medicare does not cover medical services that are experimental or investigational. I note there is no Local or National Coverage Determination for the service at issue.

***Reasonable and Necessary Analysis***

Historically, in making coverage determinations, the Centers for Medicare and Medicaid Services (CMS) has interpreted the terms reasonable and necessary to require that the item or

---

[1] https://legacymedicalconsultants.com/products/impax-amniotic-allograft/ (last visited on December 16, 2025).

[2] See https://www.cms.gov/medicare/coding/medhcpcsgeninfo/downloads/2018-11-30-hcpcs-level2-coding-procedure.pdf (last visited on October 27, 2025)

[3] In general, although MAC decisions have no precedential value, the decisions may serve as a guidepost to disposition of similar cases. 70 Fed. Reg. 11420, 11449 (Mar. 8, 2005). *See also Consultants in Pain Medicine, P.A.* (MAC December 2014); *see also* Medicare Program Integrity Manual, Publication 100-08, Chapter 13, §13.5.1.

service in question is safe and effective and not experimental or investigational.[4] CMS has further determined that the relevant tests for applying these terms are whether the service has been proven safe and effective based on authoritative evidence, or, alternatively, whether the service is generally accepted in the medical community as safe and effective for the condition for which it is used. [5] However, acceptance by individual health care providers, or even a limited group of health care providers normally does not indicate general acceptance in the medical community.[6] Testimonials indicating such limited acceptance, and limited case studies distributed by sponsors with financial interest in the outcome, are not sufficient evidence of general acceptance by the medical community.[7] I must consider the broad range of available evidence and evaluate its quality before reaching a conclusion.[8] In addition, the device must be reasonable and necessary for the appellant's condition on the date(s) of service at issue.[9]

In this case, as in all Medicare appeals, the appellant has the burden to establish that he is entitled to Medicare coverage. Historically, in making coverage determinations, CMS has interpreted the terms reasonable and necessary to require that the item or service in question is safe and effective and not experimental or investigational.[10] CMS has further determined that the relevant tests for applying these terms are whether the service has been proven safe and effective based on authoritative evidence, or, alternatively, whether the service is generally accepted in the medical community as safe and effective for the condition for which it is used. [11]

***<u>FDA Approval/Clearance</u>***

At the outset, I find the dual layer Impax membrane wound cover at issue is FDA approved. Nevertheless, I find that FDA clearance is not synonymous with Medicare coverage.[12] Furthermore, I am not persuaded by the appellant's argument, which is not corroborated by the evidence before me, that Dual Layer Impax membrane was confirmed by the FDA Tissue Reference Group to meet the criteria for regulation solely under section 361 of the PHS Act as defined in 21 CFR Part 1271. Additionally, the regulations state "CMS *<u>may</u> consider* for Medicare coverage" FDA approved devices or services "that have been categorized as non-experimental/investigational."[13] The regulations further clarify that CMS uses FDA categorization *"as a factor"* in making coverage decisions.[14] Thus, under Medicare regulations, the fact that the dual layer Impax membrane wound cover may be deemed non-experimental by virtue of its FDA classification means, as a threshold matter, only that it is eligible to be considered for Medicare coverage.[15]

---

[4] *Total Pain Care, PA* (MAC February 2015); *see also, In the Case of Vision Quest Industries, Inc.*, (MAC June 2012).
[5] *Id. See also* 54 Fed. Reg. 4304 (Jan. 30, 1989); 60 Fed. Reg. 48417 (Sept. 19, 1995); Medicare Program Integrity Manual (MPIM), Pub.100-08, Chapter 13, §13.5.1.
[6] *See* §13.7.1 MPIM.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Total Pain Care, PA* (MAC February 2015).
[11] Id. *See also* 54 Fed. Reg. 4304 (Jan. 30, 1989); 60 Fed. Reg. 48417 (Sept. 19, 1995); 68 Fed. Reg. 63693 states "if no NCD or LCD is in place, contractors may make individual claim determinations, including whether a particular DME meets the statutory requirement of being "reasonable and necessary." See also the Medicare Program Integrity Manual (MPIM), Pub.100-08, Chapter 13, §13.5.1.
[12] *In the Case of Vision Quest Industries, Inc.*, (MAC June 2012).
[13] *See* 42 C.F.R. §405.201(a)(2).
[14] *See* 42 C.F.R. §405.201(a)(1).
[15] *In the Case of Vision Quest Industries, Inc.*, (MAC June 2012).

This conclusion is further reinforced by the statements published by CMS and the FDA in the Federal Register explaining the difference between CMS review of a medical device as compared to reviews conducted by the FDA for pre-market approval.[16] Specifically, each process operates under different statutory standards and asks different questions to meet its respective mandates.[17] Moreover, CMS serves a different function by providing health insurance to protect the Nation's aged and disabled. CMS makes determinations regarding the coverage of specific items and services.[18] In short, CMS must decide: "what items and services it can and should pay for; how it should accomplish the payment; and how much to pay."[19] Thus, FDA clearance of an item or service does not preclude CMS or its contractors, in analyzing whether a particular item or service is medically reasonable and necessary, from making an independent inquiry into whether the item or service is safe and effective and not experimental or investigational.[20] Nor does it preclude CMS or its contractors from inquiring whether the item or service is supported by *"[p]ublished authoritative evidence derived from definitive randomized clinical trials or other definitive studies."*[21]

Therefore, although the dual layer Impax membrane wound cover received FDA approval or clearance, I find that such FDA approval/clearance alone does not generally entitle a service to Medicare coverage. Accordingly, I find that FDA clearance for the dual layer Impax membrane wound cover, by itself, does not establish that the service meets Medicare coverage requirements, i.e., that it has been shown to be a medically reasonable and necessary treatment of the enrollee's medical condition.

***Peer Review Literature***

In support of coverage for the dual layer Impax membrane wound cover, the appellant multiple articles. (File 4) Some of the articles discussed the efficacy of skin substitutes on diabetic foot ulcers and pressure injuries. (Id.) However, I find the weight of the medical literature does not support the appellant's position. I considered, but I am not persuaded by, the materials submitted for review. In deciding whether the dual layer Impax membrane wound cover is reasonable and necessary, i.e., safe, and effective, and not experimental or investigational, only evidence that was in existence on or before the date of service at issue is relevant and the beneficiary must prove that the dual layer Impax membrane wound cover is medically reasonable and necessary.

Based on my review of the studies submitted by the appellant, I find they are insufficient to support a finding that the dual layer Impax membrane wound cover is safe and effective for treatment of patients with the appellant's condition. Consequently, I find the evidence does not support a finding that the dual layer Impax membrane wound cover is generally accepted in the medical community and is, therefore, medically reasonable, and necessary.

I must emphasize that I am sympathetic to the beneficiary's position and certainly understand the gravity of her wound. Moreover, I do not question her physician's judgment in prescribing the dual layer Impax membrane wound cover, her desire to undergo the treatment, or the possibility that it may yield some benefit to her. However, I am bound by the statutes and the implementing regulations of the Medicare program. Accordingly, based on the above analysis, I find the dual

---

16 *See* 68 Fed. Reg. 55634 (Sept. 26, 2003); *See also* 75 Fed. Reg. [illegible]045.
17 Id; *See also* MPIM, Publication 100-08, Chapter 13, §5.1.
18 See Act §1862(a) (1.
19 *In the Case of Vision Quest Industries, Inc.*, (MAC June 2012).
20 *Id.*
21 *Consultants in Pain Medicine, P.A.* (December 2014); *In the Case of Vision Quest Industries, Inc.*, (MAC June 2012).

layer Impax membrane wound cover was not reasonable and necessary as established through the appellant's medical records, and that such services were excluded under §1862(a)(1) of the Act. Consequently, I find that HCPCS code 15271 is also not covered, because it is a service related to a non-covered service.

***Liability §1879***

Since I determined the services at issue were not reasonable and necessary, I must consider whether Medicare payment may be made under the limitation of liability provisions of §1879 of the Act. The beneficiary did not know and could not reasonably be expected to know the services furnished to her would not be covered under Medicare. There is no Advanced Beneficiary Notice in the file and the appellant accepted assignment in this matter. Consequently, the liability of the beneficiary is waived pursuant to §1879 of the Act.

The appellant, however, is considered to have acquired knowledge that such services were excluded from Medicare coverage by its receipt of manuals, bulletins, and written guidelines from the carrier.[22] Because the appellant knew or reasonably should have known the services at issue were not covered by Medicare, the waiver of liability provisions of §1879 of the Act cannot be applied to absolve the appellant of liability.

***Liability under §1870***

Additionally, after careful consideration of the record, and for the reasons set forth below, I find that the appellant is not entitled to waiver of the assessed overpayment. In order to determine whether the appellant is entitled to waiver, I must in turn determine whether the appellant was "without fault" as defined in 1870(b) of the Act. I find that there is insufficient evidence to support a finding that the appellant was "without fault." Initially, I note that there is insufficient evidence to support a finding that the appellant suffered from any relevant linguistic, educational, physical or mental limitations, or limitations due to age or intelligence. *See* 20 CFR §404.507 (setting forth the criteria used to determine whether an individual or other person is "without fault")

I further find that the overpayment at issue resulted from the appellant's failure to furnish information which it knew or should have known to be material. *See* 20 CFR §404.507. *See also* the Medicare Financial Management Manual, Publication 100-06, Ch. 3, §90.1F. The appellant failed to provide the requisite records to establish that the services at issue were reasonable and necessary. Accordingly, I find that the appellant is not "without fault" and is therefore not entitled to waiver of the assessed overpayment.

## CONCLUSIONS OF LAW

The appellant did not establish by a preponderance of the evidence that the services furnished to the beneficiary on the date of service at issue were covered under 1861(s)(6) of the Act and were not otherwise excluded under §1862(a)(1) of the Act. Liability of the beneficiary, however, is waived pursuant to §1879 of the Act. Additionally, an overpayment occurred within the meaning of Section 1870 of Title XVIII of the Act for the services at issue. The appellant is not "without fault" and is therefore not entitled to waiver of the overpayment with respect to the services at issue. Accordingly, consistent herewith, the appellant is liable for the overpayment at issue.

[22] *See* 42 C.F.R. § 411.406.

**ORDER**

For the reasons discussed above, this decision is UNFAVORABLE. I direct the Medicare Administrative Contractor to process the claims in accordance with this decision. The appellant remains liable for the non-covered services and the resulting overpayment amount.

**SO ORDERED**

Jane Van Duzer
Administrative Law Judge

DEPARTMENT OF HEALTH AND HUMAN SERVICES (DHHS) / DEPARTMENTAL APPEALS BOARD Form DAB-101 (12/19)

## REQUEST FOR REVIEW OF ADMINISTRATIVE LAW JUDGE (ALJ) MEDICARE DECISION / DISMISSAL

| 1. APPELLANT (the party requesting review) | 2. ALJ APPEAL NUMBER (on the decision or dismissal) |
|---|---|
| 3. BENEFICIARY* | 4. MEDICARE NUMBER (Health Insurance Claim Number (HICN) or Medicare Beneficiary Identifier (MBI))* |

*If the request involves multiple claims or multiple beneficiaries, attach a list of beneficiaries, Medicare numbers, and any other information to identify all claims being appealed.

| 5. PROVIDER, PRACTITIONER, OR SUPPLIER | 6. SPECIFIC ITEM(S) OR SERVICE(S) |
|---|---|

7. Medicare claim type: ☐ Part A ☐ Part B ☐ Part C - Medicare Advantage ☐ Part D - Medicare Prescription Drug Plan ☐ Entitlement/enrollment for Part A or Part B

8. Does this request involve authorization for an item or service that has not yet been furnished?
☐ Yes If Yes, skip to Block 9.
☐ No If No, Specific Dates of Service:

9. If the request involves authorization for a prescription drug under Medicare Part D, would application of the standard appellate timeframe seriously jeopardize the beneficiary's life, health, or ability to regain maximum function (as documented by a physician) such that expedited review is appropriate? ☐ Yes ☐ No

I request that the Medicare Appeals Council review the ALJ's ☐ decision or ☐ dismissal order [check one] dated____________________ I disagree with the ALJ's action because (specify the parts of the ALJ's decision or dismissal you disagree with and why you think the ALJ was wrong):

________________________________________

________________________________________

________________________________________

(Attach additional sheets if you need more space)

**PLEASE ATTACH A COPY OF THE ALJ DECISION OR DISMISSAL ORDER YOU ARE APPEALING.**

| DATE | | | DATE | | |
|---|---|---|---|---|---|
| APPELLANT'S NAME (the party requesting review) | | | REPRESENTATIVE'S NAME (include signed appointment of representative if not already submitted) | | |
| ADDRESS | | | ADDRESS | | |
| CITY, STATE, ZIP CODE | | | CITY, STATE, ZIP CODE | | |
| TELEPHONE NUMBER | FAX NUMBER | E-MAIL | TELEPHONE NUMBER | FAX NUMBER | E-MAIL |

(SEE FURTHER INSTRUCTIONS ON PAGE 2)

If you have additional evidence, submit it with this request for review. If you need more time, you must request an extension of time in writing now, explaining why you are unable to submit the evidence or legal argument now.

*If you are a provider, supplier, or a beneficiary represented by a provider or supplier, and your case was reconsidered by a Qualified Independent Contractor (QIC), the Medicare Appeals Council will not consider new evidence related to issues the QIC has already considered unless you show that you have a good reason for submitting it for the first time to the Medicare Appeals Council.*

**IMPORTANT: Include the HICN or MBI and ALJ Appeal Number on any letter or other material you submit.**

This request must be received within 60 calendar days after you receive the ALJ's decision or dismissal, unless we extend the time limit for good cause. We assume you received the decision or dismissal 5 calendar days after it was issued, unless you show you received it later. If this request will not be received within 65 calendar days from the date on the decision or dismissal order, please explain why on a separate sheet.

---

You must file your request for review in writing with the Medicare Appeals Council at:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

You may send the request for review by U.S. Mail, a common carrier such as FedEx, or by fax to (202) 565-0227. If you send a fax, please do not also mail a copy. ***You must send a copy of your appeal to the other parties and indicate that all parties, to include all beneficiaries, have been copied on the request for review. For claims involving multiple beneficiaries, you may submit a copy of the cover letters issued or a spreadsheet of the beneficiaries and addresses who received a copy of the request for review.***

If you have any questions about your request for review or wish to request expedited review of a claim involving authorization of your prescription drug under Medicare Part D, you may call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100. You may also visit our web site at www.hhs.gov/dab for additional information on how to file your request for review.

---

## PRIVACY ACT STATEMENT

The collection of information on this form is authorized by the Social Security Act (section 205(a) of title II, section 702 of title VII, section 1155 of Title XI, and sections 1852(g)(5), 1869(b)(1), 1871, 1872, and 1876(c)(5)(B) of title XVIII, as appropriate). The information provided will be used to further document your claim. Information requested on this form is voluntary, but failure to provide all or any part of the requested information may affect the determination of your claim. Information you furnish on this form may be disclosed by the Department of Health and Human Services or the Social Security Administration to another person or governmental agency only with respect to programs under the Social Security Act and to comply with Federal laws requiring the disclosure of information or the exchange of information between the Department of Health and Human Services, the Social Security Administration, or other agencies.

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Miami, FL**

| | |
|---|---|
| Appeal of: **BRIAN G. LODER DPM PLC** | OMHA Appeal No.: **3-15259989747** |
| Beneficiary: [redacted] | Medicare Part: **B** |
| Medicare No.: [redacted] | Before: **Jane Van Duzer** Administrative Law Judge |

Index of the Administrative Record and Exhibit List

| **Exhibit Record** | **Administrative File Reference** File Name | Page Range |
|---|---|---|
| Medical & Related: Medical Records: w/ Recon pckg | File 4 | 15 : 199 |
| Position Statements: CMS contractor: UPIC | File 9 | 1 : 5 |
| Procedural - CMS Levels: Reconsideration: Decision | File 2 | 1 : 18 |
| Procedural - CMS Levels: Request for Reconsideration Pckg: w/Redt dec | File 4 | 1 : 14 |
| Procedural - CMS Levels: Request for Redetermination Pckg: w/Claim info | File 5 | 1 : 44 |
| Procedural - OMHA Level: Request for ALJ Hearing: w/ AOR | File 1 | 1 : 18 |
| Procedural - OMHA Level: Response to Notice of Hrg: 2nd Resch Req | File 10 | 1 : 4 |
| Procedural - OMHA Level: Amended Notice of Hearing | File 11 | 1 : 10 |
| Procedural - OMHA Level: Notice of Resch Hearing | File 12 | 1 : 10 |
| Procedural - OMHA Level: Response to Notice of Hrg: NOI | File 13 | 1 : 3 |
| Procedural - OMHA Level: Response to Notice of Hrg: NOI - 9//11 HRG | File 14 | 1 : 3 |
| Procedural - OMHA Level: Amended Notice of Hearing | File 15 | 1 : 10 |
| Procedural - OMHA Level: Notice of Hearing | File 17 | 1 : 16 |
| Procedural - OMHA Level: Notice of Hearing | File 18 | 1 : 16 |
| Procedural - OMHA Level: Notice of Hearing | File 7 | 1 : 10 |
| Procedural - OMHA Level: Response to Notice of Hrg: Resch Req | File 8 | 1 : 4 |
| Proceeding (Audios): Hearing audio | File 16 | 1 : 1 |

| **Non-Exhibit Record** | **Administrative File Reference** File Name | Page Range |
|---|---|---|
| Records not considered: General: QIC Acknowledgement Letter | File 3 | 1 : 3 |
| Records not considered: General: redt transm | File 6 | 1 : 1 |

OMHA-156
Dated: 2025-12-18

Department of Health and Human Services
Office of the Secretary

OFFICE OF MEDICARE HEARINGS AND APPEALS

Miami Field Office
Claude Pepper Federal Building
51 SW 1st Avenue, Suite 1400A
Miami, FL 33130-1608
(786) 792-3700
(786) 792-3797 (Direct)
(305) 536-5050 (Fax)
(866) 622-0382 (Toll Free)

December 18, 2025

BRIAN G. LODER DPM PLC
ATTN: WILLIAM O'MALLEY
60 PUBLIC SQ STE 602
WILKES-BARRE, PA 18701

## NOTICE OF DECISION

Appellant: BRIAN G. LODER DPM PLC
OMHA Appeal Number: **3-15259989755**

Enclosed is the decision for the above case. This decision is based on the administrative record, including any evidence or testimony presented at the hearing, if one was held. The decision is not precedential, does not release the appellant from civil or criminal liability, and may be reopened at any time if it was procured by fraud or similar fault. In addition, the decision may be reopened within 180 calendar days from the date of the decision for good cause. Good cause exists when there is new and material evidence that was not available or known at the time of the decision and may result in a different conclusion, or when the evidence that was considered clearly shows on its face that an obvious error was made at the time of the decision.

**What if I disagree with the decision?**

If you disagree with the decision, you may file an appeal with the Medicare Appeals Council. Other parties may also appeal the decision. In addition, the Medicare Appeals Council may decide to review the decision on its own motion. If no party appeals the decision and the Medicare Appeals Council does not review the decision, the decision is binding on all parties and you and the other parties will not have the right to ask a federal court to review the decision.

If you are not already represented, you may appoint an attorney or other person to represent you.

**How much time do I have to file an appeal?**

The Medicare Appeals Council must receive your written appeal **within 60 calendar days** of the date that you receive this notice. The Medicare Appeals Council assumes you received this notice 5 calendar days after the date of the notice unless you show that you did not receive it within the 5-day period.

The Medicare Appeals Council will dismiss a late request for review unless you show that you had a good reason for not filing it on time.

**<u>How do I file an appeal?</u>**

To appeal, you must ask the Medicare Appeals Council to review the decision. Your appeal must be in writing, except that a request for expedited review of a Part D decision may be made orally as described below. Your appeal must identify the parts of the decision that you disagree with, and explain why you disagree.

You may submit a written request for review to the Medicare Appeals Council using one of three available methods: mail, fax, or electronic filing (E-File). **<u>Please do not submit your request for review using more than one method</u>**. Regardless of how you file your appeal, **you must always send a copy of your written request for review to the other parties who received a copy of the decision.**

If you are filing a written request for review, you may use the enclosed *Request for Review* (Form DAB-101), or you may write a letter containing the following:

- The beneficiary's/enrollee's name (and telephone number for Part D appeals);
- The beneficiary's/enrollee's Medicare number (Health Insurance Claim Number or Medicare Beneficiary Identifier);
- The item(s), service(s), or specific Part D drug(s) in dispute;
- The specific date(s) the item(s) or service(s) were provided, if applicable;
- For Part D appeals, the plan name;
- For Part D appeals, the OMHA Appeal Number on the adjudicator's decision;
- For Part D appeals requesting expedited review, a statement that you are requesting expedited review;
- The date of the adjudicator's decision (not required for Part D appeals); and
- Your name and signature, and, if applicable, the name and signature of your representative.

**Filing by mail:**

Mail your appeal and a copy of the enclosed decision to:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644

330 Independence Ave., S.W.
Washington, D.C. 20201

**Filing by fax:**

Fax your appeal and a copy of the enclosed decision to **(202) 565-0227.**

**Filing by computer:**

Using your web browser, visit the Medicare Operations Division Electronic Filing System (MOD E-File) website at **https://dab.efile.hhs.gov/mod**.

To file a new appeal using MOD E-File, you will need to register by:

1. Clicking **Register** on the MOD E-File home page;
2. Entering the information requested on the "Register New Account" form; and
3. Clicking **Register Account** at the bottom of the form.

You will use the email address and password you provided during registration to access MOD E-File at **https://dab.efile.hhs.gov/mod/users/new**. You will be able to use MOD E-File to file and access the specific materials for appeals to which you are a party or a party's representative. You may check the status of any appeal on the website homepage without registering.

Once registered, you may file your appeal by:

1. Logging into MOD E-File;
2. Clicking the **File New Appeal** menu button on the top right of the screen;
3. Selecting the type of appeal you are filing (Request for Review or Request for Escalation); and
4. Entering the requested Appeal Information and uploading the requested Appeal Documents on the "File New Appeal - Medicare Operations Division" form. You are required to provide information and documents marked with an asterisk.

At a minimum, the Medicare Appeals Council requires an appellant to file a signed Request for Review and a copy of the enclosed decision. All documents should be submitted in Portable Document Format (PDF) whenever possible. Any document, including a Request for Review, will be deemed to have been filed on a given day, if it is uploaded to MOD E-File on or before 11:59 p.m. EST of that day.

Currently, the documents that may be filed electronically are the:

1. Request for Review;
2. Appointment of Representative form (OMB Form 0938-0950);
3. Copy of Administrative Law Judge or attorney adjudicator decision;
4. Memorandum or brief or other written statement in support of your appeal; and
5. Request to Withdraw your appeal

**No other documents aside from the five (5) listed categories above may be submitted through MOD E-File.**

**Filing by oral request (for expedited review only):**

Oral requests for expedited review of a Part D decision may be made by telephone to **(866) 365-8204.** You must provide the information listed in the bullet points above and a statement that you are requesting an expedited review within 60 calendar days after receipt of this notice of decision. The Medicare Appeals Council will document the oral request in writing and maintain the documentation in the case file.

Please note that your request for review will only be expedited (1) the appeal involves an issue specified in 42 C.F.R. § 423.566(b), but does not include solely a request for payment of a Part D drug that has already been furnished, and (2) the prescribing physician (or other prescriber) indicates, or the Medicare Appeals Council determines, that the standard time frame may seriously jeopardize your life, health, or ability to regain maximum function.

**How will the Medicare Appeals Council respond to my appeal?**

The Medicare Appeals Council will limit its review to the issues raised in the appeal, unless the appeal is filed by an unrepresented beneficiary/enrollee. It may change the parts of the decision that you agree with. It may adopt, modify, or reverse the decision, in whole or in part, or it may send the case back to OMHA for further action. It may also dismiss your appeal.

**Questions?**

You may call or write our office. A toll-free phone number and mailing address are at the top of this notice.

Additional information about filing an appeal with the Medicare Appeals Council is available at http://www.hhs.gov/dab/. You can also call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100 or (866) 365-8204 (toll free), if you have questions about filing an appeal.

cc:

QIC - C2C B North
301 W Bay Street
Ste. 1110
Jacksonville, FL 32202

[redacted]

Enclosures:
OMHA-152, Decision
DAB-101, Request for Review
OMHA-156, Exhibit List

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Miami, FL**

| | | | |
|---|---|---|---|
| Appeal of: | **BRIAN G. LODER DPM PLC** | OMHA Appeal No.: | **3-15259989755** |
| Beneficiary: | [redacted] | Medicare Part: | B |
| Medicare No.: | [redacted] | Before: | **Jane Van Duzer**<br>Administrative Law Judge |

## DECISION

After considering the evidence and arguments presented in the record, I enter an **UNFAVORABLE** decision. The appellant remains liable for the non-covered services and any outstanding overpayment amount.

## PROCEDURAL HISTORY

The appellant, Brian G. Loder DPM, PLC., initially received Medicare reimbursement for Dual Layer Impax Membrane (HCPCS code Q4262) and (HCPCS code 15271), furnished to C.R., a Medicare beneficiary on August 24, 2023. Then, on December 11, 2024, WPS, a Medicare Administrative Contractor (MAC), issued an unfavorable decision. (File 4, pp. 7-12) Thereafter, on August 12, 2024, the MAC issued a letter informing the appellant it had received Medicare reimbursement in error, resulting in an overpayment. (File 3, pp. 11-16) Subsequently, on May 21, 2025, C2C Innovative Solutions, Inc., the Qualified Independent Contractor (QIC) upheld the denial of coverage. (File 3) Specifically, the QIC that the dual layer Impax membrane was experimental and investigational as denoted by the Q code status nomenclature (File 3, p. 5) Thereafter, on July 22, 2025, the Office of Medicare Hearings and Appeals received the appellant's timely request for a hearing by an Administrative Law Judge. (File 1) The amount in controversy satisfies the jurisdictional requirement for a hearing pursuant to Title XVIII of the Social Security Act, (the Act) §1869(b)(1)(E). A telephonic hearing took place on November 4, 2025. William O'Malley testified, under oath, on behalf of the appellant. I received the beneficiary's file into evidence with exhibited record files 1-17, which includes the hearing audio recording and the UPIC's written position statement.

## ISSUE(S)

Is the appellant entitled to Medicare reimbursement under Part B of Title XVIII of the Act for HCPCS codes Q4262 and 15271, provided to the beneficiary on the date of service at issue? In other words, are the services within a covered category under §1861(t) of the Act, and if so, are such services not otherwise excluded from coverage under §1862(a)(1) of the Act?

If payment for the services at issue is denied, can Medicare payment nonetheless be made under the limitations of liability provisions of §1879 of the Act. Additionally, if an overpayment exists, the next issue is whether the appellant is entitled to a waiver, under §1870 of the Act, of the carrier's assessed overpayment. Specifically, was the appellant "without fault", as defined under §1870 of the Act, in accepting the improper Medicare payments which are the subject of the carrier's overpayment audit.

## APPLICABLE LAW AND POLICY

### Principles of Law

1. ***Statutes and Regulations***

Title XVIII of the Social Security Act (the Act) §1831 established the Supplemental Medical Insurance Program for the aged and disabled under Part B.

The scope of benefits that are provided to beneficiaries under the Medicare Part B insurance program are set forth in § 1832 of the Act. An individual is entitled to have payment made on his/her behalf for medical and other health services furnished by a provider of services or by others under arrangement with them made by a provider of services. *See* Act §1832(a)(2)(B); *see also* 42 C.F.R. § 410.3.

No payment shall be made to any provider of services unless there has been furnished such information as may be necessary to determine the amounts due such provider. *See* Act § 1833(e); *see also* 42 C.F.R. § 424.5(a)(6).

Payment for services rendered under Part B of the Medicare laws may be made only to providers of services which are eligible under section 1866(a), which outlines the requirement of agreements with providers of service and the enrollment process. Under this section, payment may only be made if the physician appropriately certifies and recertifies, when applicable, that the services provided were medically required. *See* Act § 1835.

The term "medical and other health services" specifically includes "services and supplies (including drugs and biologicals which are not usually self-administered by the patient) furnished as an incident to a physician's professional service, of kinds which are commonly furnished in physicians' offices and are commonly either rendered without charge or included in the physicians' bills (or would have been so included but for the application of section §1847B. *See* Act § 1861(s)(2)(A); *see also* 42 C.F.R. §§ 410.10(b); 410.27 and 410.26(a)(7).

The term 'drugs' and the term 'biologicals', except for purposes of subsection (m)(5) and paragraph (2), include only such drugs (including contrast agents) and biologicals, respectively, as are included (or approved for inclusion) in the United States Pharmacopoeia, the National Formulary, or the United States Homeopathic Pharmacopoeia, or in New Drugs or Accepted Dental Remedies (except for any drugs and biologicals unfavorably evaluated therein), or as are approved by the pharmacy and drug therapeutics committee (or equivalent committee) of the medical staff of the hospital furnishing such drugs and biologicals for use in such hospital. *See* Act § 1861(t)(1); *see also* 42 C.F.R. § 410.29.

Notwithstanding any other provision of the Act, no payment may be made under Part A or Part B for any expenses incurred for items or services, which . . . are not reasonable and necessary for

the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member. *See* Act § 1862(a)(1)(A); *see also* 42 C.F.R. § 411.15(k)(1).
A waiver of an overpayment adjustment or recovery of an incorrect payment may be made to a provider who is "without fault." *See* Act § 1870(b); *see also* 42 C.F.R §§405.350(a)(2); §405.351; and 405.355.

Section 1879 of the Act limits the liability of the beneficiary and providers of services if the services are found to be not medially reasonable and necessary under §1862(a)(1)(A) or care was custodial in nature under §1862(a)(1)(9). Payment will only be made pursuant to this section if neither the beneficiary nor the provider knew or could reasonably have been expected to know that the services were not covered. *See also* 42 C.F.R. §§ 411.404; 411.406.

2. ***Policy and Guidance***

Unless promulgated as a regulation by CMS, no rule, requirement, or statement of policy, other than a National Coverage Determination (NCD), can establish or change a substantive legal standard governing the scope of benefits or payment for services under the Medicare program. However, in lieu of binding regulations with the full force and effect of law, CMS and its contractors have issued policy guidance that describe criteria for coverage of selected types of medical items and services in the form of manuals and local medical review policies (LMRPs) or local coverage determinations (LCDs). *See* Act § 1871(a)(2). The undersigned notes that there is no applicable Local Coverage Determination.

National Coverage Determinations are binding upon Administrative Law Judges. *See* Act § 1869(f)(1); *see also* 42 C.F.R. § 405.1060. The undersigned notes that there is no applicable National Coverage Determination. Administrative Law Judges will give substantial deference to local coverage determinations (LCDs), local medical review policies (LMRPs), or CMS program guidance when applicable, and if they do not follow the policy they must explain why in their decision. *See* Act §1869(f)(2); *see also* 42 C.F.R. § 405.1062.
I also gave substantial deference to the manuals implementing the Medicare program, which are of persuasive importance, instructive and influential. Relevant to this case is the Medicare Benefit Policy Manual, Publication 100-2, Chapter 15, Covered and Other Health Services, §30 Physician Services; §50 Drugs and Biologicals; §50.1 Definition of Drugs and Biologicals; §50.2 Determining Self Administration of Drugs and Biologicals; §50.3 Incident to Requirements; §50.4.1 Approved Use of Drug and the Medicare Claims Processing Manual, Publication 100-4, Chapters 4, 17, and Chapter 30, Financial Liability Protections. *See also* C.F.R. §405.1062.

## FINDINGS OF FACT AND ANALYSIS

***Facts***

The appellant submitted medical records pre-dating and post-dating the date of service at issue, which I did not consider. (File 4) On August 24, 2023, Brian Loder DPM treated the beneficiary due to a chief complaint of non-pressure chronic ulcer of the left lower extremity with fat layer exposed. (File 4, p. 14) Dr. Loder documented the beneficiary presented with a 10-week-old non-pressure chronic ulcer of the left lower leg with fat layer exposed. (Id.) On examination, the beneficiary presented with an ulcer to the lower lateral leg that measured 2.1cm x 1.0cm. (File 4, p. 15) The ulcer base was healthy/granular, and it exuded a small amount of serous exudate. (Id.) The beneficiary was diagnosed with a non-pressure chronic ulcer of the left lower leg with fat layer exposed. (File 4, p. 16) The beneficiary's wound was cleansed and debrided. (Id.) Thereafter, Impax Amniotic Membrane (HCPCS code Q4262) 2 x 2 cm was applied to the wound.

(Id.) It was documented that 2 units were applied, and 2 units were wasted. (Id.) The lot number used was RTX231422-003 with an expiration date of June 21, 2025. (Id.)

The Legacy Medical Consultants label for Impax Amniotic Allograft states in pertinent part as follows:

A sterile, dual layer amniotic allograft derived from a prescreened mother with a planned delivery. Dual layer Impax Membrane is manufactured in compliance with FDA regulations. The membrane is minimally processed to preserve the native structure of the tissue, dehydrated, and terminally sterilized. Dual Layer Impax membrane is confirmed by the FDA Tissue Reference Group to meet the criteria for regulation solely under section 361 of the PHS Act as defined in 21 CFR Part 1271.[1]

***Hearing testimony***

William O'Malley proffered the appellant's position regarding coverage of the services at issue, which I considered in reaching my decision in this case. I also considered the UPIC's written position statement.

***Analysis***

I reviewed the Medicare coverage criteria for dual layer Impax membrane wound cover, established in accordance with the statutory and regulatory provisions of Part B of Title XVIII of the Act. For the reasons set forth below, I find the appellant did not meet the payment criteria for same.

At the outset, I am not persuaded by the QIC's finding that the Impax Membrane at issue is experimental and investigational as denoted by the Q code status nomenclature (File 3, p. 5) Specifically, Medicare indicates that Q codes are established to identify drugs, biologicals, and medical equipment or services not identified by national HCPCS level II codes, but for which codes are needed for Medicare claims processing.[2]

Medicare is a defined benefit program, which means that it does not cover all available medical services and supplies.[3] Instead, Medicare coverage is limited to those medical services and supplies identified by Congress, by the Secretary of Health and Human Services, and by CMS in implementing Congressional directives. For example, Medicare does not cover medical services that are experimental or investigational. I note there is no Local or National Coverage Determination for the service at issue.

***Reasonable and Necessary Analysis***

Historically, in making coverage determinations, the Centers for Medicare, and Medicaid Services (CMS) has interpreted the terms reasonable and necessary to require that the item or

---

[1] https://legacymedicalconsultants.com/products/impax-amniotic-allograft/ (last visited on December 16, 2025).
[2] *See* https://www.cms.gov/medicare/coding/medhcpcsgeninfo/downloads/2018-11-30-hcpcs-level2-coding-procedure.pdf (last visited on October 27, 2025)
[3] In general, although MAC decisions have no precedential value, the decisions may serve as a guidepost to disposition of similar cases. 70 Fed. Reg. 11420, 11449 (Mar. 8, 2005). *See also Consultants in Pain Medicine, P.A.* (MAC December 2014); *see also* Medicare Program Integrity Manual, Publication 100-08, Chapter 13, §13.5.1.

service in question is safe and effective and not experimental or investigational.[4] CMS has further determined that the relevant tests for applying these terms are whether the service has been proven safe and effective based on authoritative evidence, or, alternatively, whether the service is generally accepted in the medical community as safe and effective for the condition for which it is used. [5] However, acceptance by individual health care providers, or even a limited group of health care providers normally does not indicate general acceptance in the medical community.[6] Testimonials indicating such limited acceptance, and limited case studies distributed by sponsors with financial interest in the outcome, are not sufficient evidence of general acceptance by the medical community.[7] I must consider the broad range of available evidence and evaluate its quality before reaching a conclusion.[8] In addition, the device must be reasonable and necessary for the appellant's condition on the date(s) of service at issue.[9]

In this case, as in all Medicare appeals, the appellant has the burden to establish that he is entitled to Medicare coverage. Historically, in making coverage determinations, CMS has interpreted the terms reasonable and necessary to require that the item or service in question is safe and effective and not experimental or investigational.[10] CMS has further determined that the relevant tests for applying these terms are whether the service has been proven safe and effective based on authoritative evidence, or, alternatively, whether the service is generally accepted in the medical community as safe and effective for the condition for which it is used. [11]

***FDA Approval/Clearance***

At the outset, I find the dual layer Impax membrane wound cover at issue is FDA approved. Nevertheless, I find that FDA clearance is not synonymous with Medicare coverage.[12] Furthermore, I am not persuaded by the appellant's argument, which is not corroborated by the evidence before me, that Dual Layer Impax membrane was confirmed by the FDA Tissue Reference Group to meet the criteria for regulation solely under section 361 of the PHS Act as defined in 21 CFR Part 1271. Additionally, the regulations state "CMS *may consider* for Medicare coverage" FDA approved devices or services "that have been categorized as non-experimental/investigational."[13] The regulations further clarify that CMS uses FDA categorization *"as a factor"* in making coverage decisions.[14] Thus, under Medicare regulations, the fact that the dual layer Impax membrane wound cover may be deemed non-experimental by virtue of its FDA classification means, as a threshold matter, only that it is eligible to be considered for Medicare coverage.[15]

---

[4] *Total Pain Care, PA* (MAC February 2015); *see also, In the Case of Vision Quest Industries, Inc.*, (MAC June 2012).
[5] *Id. See also* 54 Fed. Reg. 4304 (Jan. 30, 1989); 60 Fed. Reg. 48417 (Sept. 19, 1995); Medicare Program Integrity Manual (MPIM), Pub.100-08, Chapter 13, §13.5.1.
[6] *See* §13.7.1 MPIM.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Total Pain Care, PA* (MAC February 2015).
[11] Id. *See also* 54 Fed. Reg. 4304 (Jan. 30, 1989); 60 Fed. Reg. 48417 (Sept. 19, 1995); 68 Fed. Reg. 63693 states "if no NCD or LCD is in place, contractors may make individual claim determinations, including whether a particular DME meets the statutory requirement of being "reasonable and necessary;" *See also* the Medicare Program Integrity Manual (MPIM), Pub.100-08, Chapter 13, §13.5.1.
[12] *In the Case of Vision Quest Industries, Inc.*, (MAC June 2012).
[13] *See* 42 C.F.R. §405.201(a)(2).
[14] *See* 42 C.F.R. §405.201(a)(1).
[15] *In the Case of Vision Quest Industries, Inc.*, (MAC June 2012).

This conclusion is further reinforced by the statements published by CMS and the FDA in the Federal Register explaining the difference between CMS review of a medical device as compared to reviews conducted by the FDA for pre-market approval.[16] Specifically, each process operates under different statutory standards and asks different questions to meet its respective mandates. [17] Moreover, CMS serves a different function by providing health insurance to protect the Nation's aged and disabled. CMS makes determinations regarding the coverage of specific items and services.[18] In short, CMS must decide: "what items and services it can and should pay for; how it should accomplish the payment; and how much to pay."[19] Thus, FDA clearance of an item or service does not preclude CMS or its contractors, in analyzing whether a particular item or service is medically reasonable and necessary, from making an independent inquiry into whether the item or service is safe and effective and not experimental or investigational.[20] Nor does it preclude CMS or its contractors from inquiring whether the item or service is supported by *"[p]ublished authoritative evidence derived from definitive randomized clinical trials or other definitive studies."*[21]

Therefore, although the dual layer Impax membrane wound cover received FDA approval or clearance, I find that such FDA approval/clearance alone does not generally entitle a service to Medicare coverage. Accordingly, I find that FDA clearance for the dual layer Impax membrane wound cover, by itself, does not establish that the service meets Medicare coverage requirements, i.e., that it has been shown to be a medically reasonable and necessary treatment of the enrollee's medical condition.

***<u>Peer Review Literature</u>***

In support of coverage for the dual layer Impax membrane wound cover, the appellant multiple articles. (File 4) Some of the articles discussed the efficacy of skin substitutes on diabetic foot ulcers and pressure injuries. (Id.) However, I find the weight of the medical literature does not support the appellant's position. I considered, but I am not persuaded by, the materials submitted for review. In deciding whether the dual layer Impax membrane wound cover is reasonable and necessary, i.e., safe, and effective, and not experimental or investigational, only evidence that was in existence on or before the date of service at issue is relevant and the beneficiary must prove that the dual layer Impax membrane wound cover is medically reasonable and necessary.

Based on my review of the studies submitted by the appellant, are insufficient to support a finding the dual layer Impax membrane wound cover is safe and effective for treatment of patients with the appellant's condition. Consequently, I find the evidence does not support a finding the dual layer Impax membrane wound cover is generally accepted in the medical community and is, therefore, medically reasonable, and necessary.

I must emphasize that I am sympathetic to the beneficiary's position and certainly understand the gravity of her wound. Moreover, I do not question her physician's judgment in prescribing the dual layer Impax membrane wound cover, her desire to undergo the treatment, or the possibility that it may yield some benefit to her. However, I am bound by the statutes and the implementing regulations of the Medicare program. Accordingly, based on the above analysis, I find the dual

---

[16] *See* 68 Fed. Reg. 55634 (Sept. 26, 2003); *See also* 75 Fed. Reg. 7045.
[17] Id; *See also* MPIM, Publication 100-08, Chapter 13, §5.1.
[18] See Act §1862(a) (1.
[19] *In the Case of Vision Quest Industries, Inc.*, (MAC June 2012).
[20] *Id.*
[21] *Consultants in Pain Medicine, P.A.* (December 2014); *In the Case of Vision Quest Industries, Inc.*, (MAC June 2012).

layer Impax membrane wound cover was not reasonable and necessary as established through the appellant's medical records, and that such services were excluded under §1862(a)(1) of the Act. Consequently, I find that HCPCS code 15271 is also not covered, as a service related to an uncovered service.

***Liability §1879***

Since I determined the services at issue were not reasonable and necessary, I must consider whether Medicare payment may be made under the limitation of liability provisions of §1879 of the Act. The beneficiary did not know and could not reasonably be expected to know the services furnished to her would not be covered under Medicare. There is no Advanced Beneficiary Notice in the file and the appellant accepted assignment in this matter. Consequently, the liability of the beneficiary is waived pursuant to §1879 of the Act.

The appellant, however, is considered to have acquired knowledge that such services were excluded from Medicare coverage by its receipt of manuals, bulletins, and written guidelines from the carrier.[22] Because the appellant knew or reasonably should have known the services at issue were not covered by Medicare, the waiver of liability provisions of §1879 of the Act cannot be applied to absolve the appellant of liability.

***Liability under §1870***

Additionally, after careful consideration of the record, and for the reasons set forth below, I find that the appellant is not entitled to waiver of the assessed overpayment. In order to determine whether the appellant is entitled to waiver, I must in turn determine whether the appellant was "without fault" as defined in 1870(b) of the Act. I find that there is insufficient evidence to support a finding that the appellant was "without fault." Initially, I note that there is insufficient evidence to support a finding that the appellant suffered from any relevant linguistic, educational, physical or mental limitations, or limitations due to age or intelligence. *See* 20 CFR §404.507 (setting forth the criteria used to determine whether an individual or other person is "without fault")

I further find that the overpayment at issue resulted from the appellant's failure to furnish information which it knew or should have known to be material. *See* 20 CFR §404.507. *See also* the Medicare Financial Management Manual, Publication 100-06, Ch. 3, §90.1F. The appellant failed to provide the requisite records to establish that the services at issue were reasonable and necessary. Accordingly, I find that the appellant is not "without fault" and is therefore not entitled to waiver of the assessed overpayment.

## CONCLUSIONS OF LAW

The appellant did not establish by a preponderance of the evidence that the services furnished to the beneficiary on the date of service at issue were covered under 1861(s)(6) of the Act and were not otherwise excluded under §1862(a)(1) of the Act. Liability of the beneficiary, however, is waived pursuant to §1879 of the Act. Additionally, an overpayment occurred within the meaning of Section 1870 of Title XVIII of the Act for the services at issue. The appellant is not "without fault" and is therefore not entitled to waiver of the overpayment with respect to the services at issue. Accordingly, consistent herewith, the appellant is liable for the overpayment at issue.

[22] See 42 C.F.R. § 411.406.

Department of Health and Human Services
Office of the Secretary

**OFFICE OF MEDICARE HEARINGS AND APPEALS**

Miami Field Office
Claude Pepper Federal Building
51 SW 1st Avenue, Suite 1400A
Miami, FL 33130-1608
(786) 792-3700
(786) 792-3797 (Direct)
(305) 536-5050 (Fax)
(866) 622-0382 (Toll Free)

December 18, 2025

BRIAN G. LODER DPM PLC
ATTN: WILLIAM O'MALLEY
60 PUBLIC SQ STE 602
WILKES-BARRE, PA 18701

**NOTICE OF DECISION**

Appellant: BRIAN G. LODER DPM PLC
OMHA Appeal Number: **3-15259989763**

Enclosed is the decision for the above case. This decision is based on the administrative record, including any evidence or testimony presented at the hearing, if one was held. The decision is not precedential, does not release the appellant from civil or criminal liability, and may be reopened at any time if it was procured by fraud or similar fault. In addition, the decision may be reopened within 180 calendar days from the date of the decision for good cause. Good cause exists when there is new and material evidence that was not available or known at the time of the decision and may result in a different conclusion, or when the evidence that was considered clearly shows on its face that an obvious error was made at the time of the decision.

**What if I disagree with the decision?**

If you disagree with the decision, you may file an appeal with the Medicare Appeals Council. Other parties may also appeal the decision. In addition, the Medicare Appeals Council may decide to review the decision on its own motion. If no party appeals the decision and the Medicare Appeals Council does not review the decision, the decision is binding on all parties and you and the other parties will not have the right to ask a federal court to review the decision.

If you are not already represented, you may appoint an attorney or other person to represent you.

**How much time do I have to file an appeal?**

The Medicare Appeals Council must receive your written appeal **within 60 calendar days** of the date that you receive this notice. The Medicare Appeals Council assumes you received this notice 5 calendar days after the date of the notice unless you show that you did not receive it within the 5-day period.

The Medicare Appeals Council will dismiss a late request for review unless you show that you had a good reason for not filing it on time.

**How do I file an appeal?**

To appeal, you must ask the Medicare Appeals Council to review the decision. Your appeal must be in writing, except that a request for expedited review of a Part D decision may be made orally as described below. Your appeal must identify the parts of the decision that you disagree with, and explain why you disagree.

You may submit a written request for review to the Medicare Appeals Council using one of three available methods: mail, fax, or electronic filing (E-File). **Please do not submit your request for review using more than one method**. Regardless of how you file your appeal, **you must always send a copy of your written request for review to the other parties who received a copy of the decision.**

If you are filing a written request for review, you may use the enclosed *Request for Review* (Form DAB-101), or you may write a letter containing the following:

- The beneficiary's/enrollee's name (and telephone number for Part D appeals);
- The beneficiary's/enrollee's Medicare number (Health Insurance Claim Number or Medicare Beneficiary Identifier);
- The item(s), service(s), or specific Part D drug(s) in dispute;
- The specific date(s) the item(s) or service(s) were provided, if applicable;
- For Part D appeals, the plan name;
- For Part D appeals, the OMHA Appeal Number on the adjudicator's decision;
- For Part D appeals requesting expedited review, a statement that you are requesting expedited review;
- The date of the adjudicator's decision (not required for Part D appeals); and
- Your name and signature, and, if applicable, the name and signature of your representative.

**Filing by mail:**

Mail your appeal and a copy of the enclosed decision to:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644

330 Independence Ave., S.W.
Washington, D.C. 20201

**Filing by fax:**

Fax your appeal and a copy of the enclosed decision to **(202) 565-0227.**

**Filing by computer:**

Using your web browser, visit the Medicare Operations Division Electronic Filing System (MOD E-File) website at **https://dab.efile.hhs.gov/mod**.

To file a new appeal using MOD E-File, you will need to register by:

1. Clicking **Register** on the MOD E-File home page;
2. Entering the information requested on the "Register New Account" form; and
3. Clicking **Register Account** at the bottom of the form.

You will use the email address and password you provided during registration to access MOD E-File at **https://dab.efile.hhs.gov/mod/users/new**. You will be able to use MOD E-File to file and access the specific materials for appeals to which you are a party or a party's representative. You may check the status of any appeal on the website homepage without registering.

Once registered, you may file your appeal by:

1. Logging into MOD E-File;
2. Clicking the **File New Appeal** menu button on the top right of the screen;
3. Selecting the type of appeal you are filing (Request for Review or Request for Escalation); and
4. Entering the requested Appeal Information and uploading the requested Appeal Documents on the "File New Appeal - Medicare Operations Division" form. You are required to provide information and documents marked with an asterisk.

At a minimum, the Medicare Appeals Council requires an appellant to file a signed Request for Review and a copy of the enclosed decision. All documents should be submitted in Portable Document Format (PDF) whenever possible. Any document, including a Request for Review, will be deemed to have been filed on a given day, if it is uploaded to MOD E-File on or before 11:59 p.m. EST of that day.

Currently, the documents that may be filed electronically are the:

1. Request for Review;
2. Appointment of Representative form (OMB Form 0938-0950);
3. Copy of Administrative Law Judge or attorney adjudicator decision;
4. Memorandum or brief or other written statement in support of your appeal; and
5. Request to Withdraw your appeal

**No other documents aside from the five (5) listed categories above may be submitted through MOD E-File.**

**Filing by oral request (for expedited review only):**

Oral requests for expedited review of a Part D decision may be made by telephone to **(866) 365-8204.** You must provide the information listed in the bullet points above and a statement that you are requesting an expedited review within 60 calendar days after receipt of this notice of decision. The Medicare Appeals Council will document the oral request in writing and maintain the documentation in the case file.

Please note that your request for review will only be expedited (1) the appeal involves an issue specified in 42 C.F.R. § 423.566(b), but does not include solely a request for payment of a Part D drug that has already been furnished, and (2) the prescribing physician (or other prescriber) indicates, or the Medicare Appeals Council determines, that the standard time frame may seriously jeopardize your life, health, or ability to regain maximum function.

**How will the Medicare Appeals Council respond to my appeal?**

The Medicare Appeals Council will limit its review to the issues raised in the appeal, unless the appeal is filed by an unrepresented beneficiary/enrollee. It may change the parts of the decision that you agree with. It may adopt, modify, or reverse the decision, in whole or in part, or it may send the case back to OMHA for further action. It may also dismiss your appeal.

**Questions?**

You may call or write our office. A toll-free phone number and mailing address are at the top of this notice.

Additional information about filing an appeal with the Medicare Appeals Council is available at http://www.hhs.gov/dab/. You can also call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100 or (866) 365-8204 (toll free), if you have questions about filing an appeal.

cc:

QIC - C2C B North
301 W Bay Street
Ste. 1110
Jacksonville, FL 32202

[redacted]

Enclosures:
OMHA-152, Decision

DAB-101, Request for Review
OMHA-156, Exhibit List

Department of Health and Human Services
OFFICE OF MEDICARE HEARINGS AND APPEALS
Miami, FL

| | | | |
|---|---|---|---|
| Appeal of: | **BRIAN G. LODER DPM PLC** | OMHA Appeal No.: | **3-15259989763** |
| Beneficiary: | [redacted] | Medicare Part: | B |
| Medicare No.: | | Before: | **Jane Van Duzer** Administrative Law Judge |

## DECISION

After considering the evidence and arguments presented in the record, I enter an **UNFAVORABLE** decision. The appellant remains liable for the non-covered services and any outstanding overpayment amount.

## PROCEDURAL HISTORY

The appellant, Brian G. Loder DPM, PLC., initially received Medicare reimbursement for Dual Layer Impax Membrane (HCPCS code Q4262) and (HCPCS code 15271), furnished to C.R., a Medicare beneficiary on August 31, 2023. Then, on December 10, 2024, WPS, a Medicare Administrative Contractor (MAC), issued an unfavorable decision. (File 5, pp. 8-13) Thereafter, the MAC issued a letter informing the appellant it had received Medicare reimbursement in error, resulting in an overpayment. Subsequently, on May 21, 2025, C2C Innovative Solutions, Inc., the Qualified Independent Contractor (QIC) upheld the denial of coverage. (File 2) Specifically, the QIC found that dual layer Impax membrane was experimental and investigational as denoted by the Q code status nomenclature (File 2, p. 5) Thereafter, on July 22, 2025, the Office of Medicare Hearings and Appeals received the appellant's timely request for a hearing by an Administrative Law Judge. (File 1) The amount in controversy satisfies the jurisdictional requirement for a hearing pursuant to Title XVIII of the Social Security Act, (the Act) §1869(b)(1)(E). A telephonic hearing took place on November 4, 2025. William O'Malley testified, under oath, on behalf of the appellant. I received the beneficiary's file into evidence with exhibited record files 1-16, which includes the hearing audio recording and the UPIC's written position statement.

## ISSUE(S)

Is the appellant entitled to Medicare reimbursement under Part B of Title XVIII of the Act for the services at issue, provided to the beneficiary on the date of service at issue? In other words, are the services within a covered category under §1861(s) of the Act, and if so, are such services not otherwise excluded from coverage under §1862(a)(1) of the Act?

If payment for the services at issue is denied, can Medicare payment nonetheless be made under the limitations of liability provisions of §1879 of the Act. Additionally, if an overpayment exists, the next issue is whether the appellant is entitled to a waiver, under §1870 of the Social Security Act, of the carrier's assessed overpayment. Specifically, was the appellant "without fault", as defined under §1870 of the Act, in accepting the improper Medicare payments which are the subject of the carrier's overpayment audit.

## APPLICABLE LAW AND POLICY

### Principles of Law

#### 1. *Statutes and Regulations*

Title XVIII of the Social Security Act (the Act) §1831 established the Supplemental Medical Insurance Program for the aged and disabled under Part B.

The scope of benefits that are provided to beneficiaries under the Medicare Part B insurance program are set forth in § 1832 of the Act. An individual is entitled to have payment made on his/her behalf for medical and other health services furnished by a provider of services or by others under arrangement with them made by a provider of services. *See* Act §1832(a)(2)(B); *see also* 42 C.F.R. § 410.3.

No payment shall be made to any provider of services unless there has been furnished such information as may be necessary to determine the amounts due such provider. *See* Act § 1833(e); *see also* 42 C.F.R. § 424.5(a)(6).

Payment for services rendered under Part B of the Medicare laws may be made only to providers of services which are eligible under section 1866(a), which outlines the requirement of agreements with providers of service and the enrollment process. Under this section, payment may only be made if the physician appropriately certifies and recertifies, when applicable, that the services provided were medically required. *See* Act § 1835.

The term "medical and other health services" specifically includes "services and supplies (including drugs and biologicals which are not usually self-administered by the patient) furnished as an incident to a physician's professional service, of kinds which are commonly furnished in physicians' offices and are commonly either rendered without charge or included in the physicians' bills (or would have been so included but for the application of section §1847B. *See* Act § 1861(s)(2)(A); *see also* 42 C.F.R. §§ 410.10(b); 410.27 and 410.26(a)(7).

The term 'drugs' and the term 'biologicals', except for purposes of subsection (m)(5) and paragraph (2), include only such drugs (including contrast agents) and biologicals, respectively, as are included (or approved for inclusion) in the United States Pharmacopoeia, the National Formulary, or the United States Homeopathic Pharmacopoeia, or in New Drugs or Accepted Dental Remedies (except for any drugs and biologicals unfavorably evaluated therein), or as are approved by the pharmacy and drug therapeutics committee (or equivalent committee) of the medical staff of the hospital furnishing such drugs and biologicals for use in such hospital. *See* Act § 1861(t)(1); *see also* 42 C.F.R. § 410.29.

Notwithstanding any other provision of the Act, no payment may be made under Part A or Part B for any expenses incurred for items or services, which ... are not reasonable and necessary for

the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member. *See* Act § 1862(a)(1)(A); *see also* 42 C.F.R. § 411.15(k)(1).
A waiver of an overpayment adjustment or recovery of an incorrect payment may be made to a provider who is "without fault." *See* Act § 1870(b), *see also* 42 C.F.R. §§405.350(a)(2); §405.351; and 405.355.

Section 1879 of the Act limits the liability of the beneficiary and providers of services if the services are found to be not medially reasonable and necessary under §1862(a)(1)(A) or care was custodial in nature under §1862(a)(1)(9). Payment will only be made pursuant to this section if neither the beneficiary nor the provider knew or could reasonably have been expected to know that the services were not covered. *See also* 42 C.F.R. §§ 411.404; 411.406.

2. ***Policy and Guidance***

Unless promulgated as a regulation by CMS, no rule, requirement, or statement of policy, other than a National Coverage Determination (NCD), can establish or change a substantive legal standard governing the scope of benefits or payment for services under the Medicare program. However, in lieu of binding regulations with the full force and effect of law, CMS and its contractors have issued policy guidance that describe criteria for coverage of selected types of medical items and services in the form of manuals and local medical review policies (LMRPs) or local coverage determinations (LCDs). *See* Act § 1871(a)(2). The undersigned notes that there is no applicable Local Coverage Determination.

National Coverage Determinations are binding upon Administrative Law Judges. *See* Act § 1869(f)(1); *see also* 42 C.F.R. § 405.1060, The undersigned notes that there is no applicable National Coverage Determination. Administrative Law Judges will give substantial deference to local coverage determinations (LCDs), local medical review policies (LMRPs), or CMS program guidance when applicable, and if they do not follow the policy they must explain why in their decision. *See* Act §1869(f)(2); *see also* 42 C.F.R. § 405.1062.
I also gave substantial deference to the manuals implementing the Medicare program, which are of persuasive importance, instructive and influential. Relevant to this case is the Medicare Benefit Policy Manual, Publication 100-2, Chapter 15, Covered and Other Health Services, §30 Physician Services; §50 Drugs and Biologicals; §50.1 Definition of Drugs and Biologicals; §50.2 Determining Self Administration of Drugs and Biologicals; §50.3 Incident to Requirements; §50.4.1 Approved Use of Drug and the Medicare Claims Processing Manual, Publication 100-4, Chapters 4, 17, and Chapter 30, Financial Liability Protections. *See also* C.F.R. §405.1062.

## FINDINGS OF FACT AND ANALYSIS

***Facts***

The appellant submitted medical records pre-dating and post-dating the date of service at issue, which I did not consider. (File 5) On August 31, 2023, Brian Loder DPM treated the beneficiary due to a chief complaint of non-pressure chronic ulcer of the left lower extremity with fat layer exposed. (File 5, p. 15) Dr. Loder documented the beneficiary presented with an over three-month old non-pressure chronic ulcer of the left lower leg with fat layer exposed. (Id.) On examination, the beneficiary presented with an ulcer to the lower lateral leg that measured 1.9cm x 1.1cm. (File 5, p. 16) The ulcer base was healthy/granular, and it exuded a small amount of serous exudate. (Id.) The beneficiary was diagnosed with a non-pressure chronic ulcer of the left lower leg with fat layer exposed. (Id.) The beneficiary's wound was cleansed and debrided. (File 5, p. 17) Thereafter, Impax Amniotic Membrane (HCPCS code Q462) 2 x 2 cm was applied to

the wound. (Id.) It was documented that 2 units were applied, and 2 units were wasted. (Id.) The lot number used was SG23B-T2386-0015 with an expiration date of April 28, 2028. (Id.)

The Legacy Medical Consultants label for Impax Amniotic Allograft states in pertinent part as follows:

A sterile, dual layer amniotic allograft derived from a prescreened mother with a planned delivery. Dual layer Impax Membrane is manufactured in compliance with FDA regulations. The membrane is minimally processed to preserve the native structure of the tissue, dehydrated, and terminally sterilized. Dual Layer Impax membrane is confirmed by the FDA Tissue Reference Group to meet the criteria for regulation solely under section 361 of the PHS Act as defined in 21 CFR Part 1271.[1]

***Hearing testimony***

William O'Malley proffered the appellant's position regarding coverage of the services at issue, which I considered in reaching my decision in this case. I also considered the UPIC's written position statement.

***Analysis***

I reviewed the Medicare coverage criteria for dual layer Impax membrane wound cover, established in accordance with the statutory and regulatory provisions of Part B of Title XVIII of the Act. For the reasons set forth below, I find the appellant did not meet the payment criteria for same.

At the outset, I am not persuaded by the QIC's finding that the Impax Membrane at issue is experimental and investigational as denoted by the Q code status nomenclature (File 2, p. 5) Specifically, Medicare indicates that Q codes are established to identify drugs, biologicals, and medical equipment or services not identified by national HCPCS level II codes, but for which codes are needed for Medicare claims processing.[2]

Medicare is a defined benefit program, which means that it does not cover all available medical services and supplies.[3] Instead, Medicare coverage is limited to those medical services and supplies identified by Congress, by the Secretary of Health and Human Services, and by CMS in implementing Congressional directives. For example, Medicare does not cover medical services that are experimental or investigational. I note there is no Local or National Coverage Determination for the service at issue.

***Reasonable and Necessary Analysis***

---

[1] https://legacymedicalconsultants.com/products/impax-amniotic-allograft/ (last visited on December 16, 2025).
[2] *See* https://www.cms.gov/medicare/coding/medhcpcsgeninfo/downloads/2018-11-30-hcpcs-level2-coding-procedure.pdf (last visited on October 27, 2025)
[3] In general, although MAC decisions have no precedential value, the decisions may serve as a guidepost to disposition of similar cases. 70 Fed. Reg. 11420, 11449 (Mar. 8, 2005). *See also Consultants in Pain Medicine, P.A.* (MAC December 2014); *see also* Medicare Program Integrity Manual, Publication 100-08, Chapter 13, §13.5.1.

Historically, in making coverage determinations, the Centers for Medicare and Medicaid Services (CMS) has interpreted the terms reasonable and necessary to require that the item or service in question is safe and effective and not experimental or investigational.[4] CMS has further determined that the relevant tests for applying these terms are whether the service has been proven safe and effective based on authoritative evidence, or, alternatively, whether the service is generally accepted in the medical community as safe and effective for the condition for which it is used. [5] However, acceptance by individual health care providers, or even a limited group of health care providers normally does not indicate general acceptance in the medical community.[6] Testimonials indicating such limited acceptance, and limited case studies distributed by sponsors with financial interest in the outcome, are not sufficient evidence of general acceptance by the medical community.[7] I must consider the broad range of available evidence and evaluate its quality before reaching a conclusion.[8] In addition, the device must be reasonable and necessary for the appellant's condition on the date(s) of service at issue.[9]

In this case, as in all Medicare appeals, the enrollee has the burden to establish that he is entitled to Medicare coverage. Historically, in making coverage determinations, CMS has interpreted the terms reasonable and necessary to require that the item or service in question is safe and effective and not experimental or investigational.[10] CMS has further determined that the relevant tests for applying these terms are whether the service has been proven safe and effective based on authoritative evidence, or, alternatively, whether the service is generally accepted in the medical community as safe and effective for the condition for which it is used. [11]

***FDA Approval/Clearance***

At the outset, I find the dual layer Impax membrane wound cover at issue is FDA approved. Nevertheless, I find that FDA clearance is not synonymous with Medicare coverage.[12] Furthermore, I am not persuaded by the appellant's argument, which is not corroborated by the evidence before me, that Dual Layer Impax membrane was confirmed by the FDA Tissue Reference Group to meet the criteria for regulation solely under section 361 of the PHS Act as defined in 21 CFR Part 1271. The regulations state "CMS *may consider* for Medicare coverage" FDA approved devices or services "that have been categorized as non-experimental/investigational."[13] The regulations further clarify that CMS uses FDA categorization "*as a factor*" in making coverage decisions.[14] Thus, under Medicare regulations, the fact that the dual layer Impax membrane wound cover may be deemed non-experimental by virtue of its FDA classification means, as a threshold matter, only that it is eligible to be considered for Medicare coverage.[15]

---

[4] *Total Pain Care, PA* (MAC February 2015); *see also*, *In the Case of Vision Quest Industries, Inc.*, (MAC June 2012).

[5] *Id. See also* 54 Fed. Reg. 4304 (Jan. 30, 1989); 60 Fed. Reg. 48417 (Sept. 19, 1995); Medicare Program Integrity Manual (MPIM), Pub.100-08, Chapter 13, §13.5.1.

[6] *See* §13.7.1 MPIM.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Total Pain Care, PA* (MAC February 2015).

[11] Id. *See also* 54 Fed. Reg. 4304 (Jan. 30, 1989); 60 Fed. Reg. 48417 (Sept. 19, 1995); 68 Fed. Reg. 63693 states "if no NCD or LCD is in place, contractors may make individual claim determinations, including whether a particular DME meets the statutory requirement of being "reasonable and necessary;" *See also* the Medicare Program Integrity Manual (MPIM), Pub.100-08, Chapter 13, §13.5.1

[12] *In the Case of Vision Quest Industries, Inc.*, (MAC June 2012)

[13] *See* 42 C.F.R. §405.201(a)(2).

[14] *See* 42 C.F.R. §405.201(a)(1).

[15] *In the Case of Vision Quest Industries, Inc.*, (MAC June 2012).

This conclusion is further reinforced by the statements published by CMS and the FDA in the Federal Register explaining the difference between CMS review of a medical device as compared to reviews conducted by the FDA for pre-market approval.[16] Specifically, each process operates under different statutory standards and asks different questions to meet its respective mandates. [17] Moreover, CMS serves a different function by providing health insurance to protect the Nation's aged and disabled. CMS makes determinations regarding the coverage of specific items and services.[18] In short, CMS must decide: "what items and services it can and should pay for; how it should accomplish the payment; and how much to pay."[19] Thus, FDA clearance of an item or service does not preclude CMS or its contractors, in analyzing whether a particular item or service is medically reasonable and necessary, from making an independent inquiry into whether the item or service is safe and effective and not experimental or investigational.[20] Nor does it preclude CMS or its contractors from inquiring whether the item or service is supported by *"[p]ublished authoritative evidence derived from definitive randomized clinical trials or other definitive studies."*[21]

Therefore, although the dual layer Impax membrane wound cover received FDA approval or clearance, I find that such FDA approval/clearance alone does not generally entitle a service to Medicare coverage. Accordingly, I find that FDA clearance for the dual layer Impax membrane wound cover, by itself, does not establish that the service meets Medicare coverage requirements, i.e., that it has been shown to be a medically reasonable and necessary treatment of the enrollee's medical condition.

***Peer Review Literature***

In support of coverage for the dual layer Impax membrane wound cover, the appellant submitted multiple articles. (File 4) Some of the articles discussed the efficacy of skin substitutes on diabetic foot ulcers and pressure injuries. (Id.) However, I find the weight of the medical literature does not support the appellant's position. I considered, but I am not persuaded by, the materials submitted for review. In deciding whether the dual layer Impax membrane wound cover is reasonable and necessary, i.e., safe, and effective, and not experimental or investigational, only evidence that was in existence on or before the date of service at issue is relevant and the beneficiary must prove that the dual layer Impax membrane wound cover is medically reasonable and necessary.

Based on my review of the studies submitted by the appellant, I find they are insufficient to support a finding the dual layer Impax membrane wound cover is safe and effective for treatment of patients with the appellant's condition. Consequently, I find the evidence does not support a finding that the dual layer Impax membrane wound cover is generally accepted in the medical community and is, therefore, medically reasonable, and necessary.

I must emphasize that I am sympathetic to the beneficiary's position and certainly understand the gravity of her wound. Moreover, I do not question her physician's judgment in prescribing the dual layer Impax membrane wound cover, her desire to undergo the treatment, or the possibility

---

[16] *See* 68 Fed. Reg. 55634 (Sept. 26, 2003); *See also* 75 Fed. Ref. 57045.
[17] Id; *See also* MPIM, Publication 100-08, Chapter 13, §5.1.
[18] See Act §1862(a) (1.
[19] *In the Case of Vision Quest Industries, Inc.*, (MAC June 2012).
[20] Id.
[21] *Consultants in Pain Medicine, P.A.* (December 2014); *In the Case of Vision Quest Industries, Inc.* (MAC June 2012).

that it may yield some benefit to her. However, I am bound by the statutes and the implementing regulations of the Medicare program. Accordingly, based on the above analysis, I find the dual layer Impax membrane wound cover was not reasonable and necessary as established through the appellant's medical records, and that such services were excluded under §1862(a)(1) of the Act. Consequently, I find that HCPCS code 15271 is also not covered, as a service related to a non-covered service.

***Liability §1879***

Since I determined the services at issue were not reasonable and necessary, I must consider whether Medicare payment may be made under the limitation of liability provisions of §1879 of the Act. The beneficiary did not know and could not reasonably be expected to know the services at issue would not be covered under Medicare. There is no Advanced Beneficiary Notice in the file and the appellant accepted assignment in this matter. Consequently, the liability of the beneficiary is waived pursuant to §1879 of the Act.

The appellant, however, is considered to have acquired knowledge that such services were excluded from Medicare coverage by its receipt of manuals, bulletins, and written guidelines from the carrier.[22] Because the appellant knew or reasonably should have known services at issue were not covered by Medicare, the waiver of liability provisions of §1879 of the Act cannot be applied to absolve the appellant of liability.

***Liability under §1870***

Additionally, after careful consideration of the record, and for the reasons set forth below, I find that the appellant is not entitled to waiver of the assessed overpayment. In order to determine whether the appellant is entitled to waiver, I must in turn determine whether the appellant was "without fault" as defined in 1870(b) of the Act. I find that there is insufficient evidence to support a finding that the appellant was "without fault." Initially, I note that there is insufficient evidence to support a finding that the appellant suffered from any relevant linguistic, educational, physical or mental limitations, or limitations due to age or intelligence. *See* 20 CFR §404.507 (setting forth the criteria used to determine whether an individual or other person is "without fault")

I further find that the overpayment at issue resulted from the appellant's failure to furnish information which it knew or should have known to be material. *See* 20 CFR §404.507. *See also* the Medicare Financial Management Manual, Publication 100-06, Ch. 3, §90.1F. The appellant failed to provide the requisite records to establish that the services at issue were reasonable and necessary. Accordingly, I find that the appellant is not "without fault" and is therefore not entitled to waiver of the assessed overpayment.

## CONCLUSIONS OF LAW

The appellant did not establish by a preponderance of the evidence that the services furnished to the beneficiary on the date of service at issue were covered under 1861(s)(6) of the Act and were not otherwise excluded under §1862(a)(1) of the Act. Liability of the beneficiary, however, is waived pursuant to §1879 of the Act. Additionally, an overpayment occurred within the meaning of Section 1870 of Title XVIII of the Act for the services at issue. The appellant is not "without fault" and is therefore not entitled to waiver of the overpayment with respect to services

[22] *See* 42 C.F.R. § 411.406.

provided to the beneficiary. Accordingly, consistent herewith, the appellant is liable for non-covered services and any outstanding overpayment amount(s).

## ORDER

For the reasons discussed above, this decision is **UNFAVORABLE**. I direct the Medicare Administrative Contractor to process the claims in accordance with this decision. The appellant remains liable for the non-covered services and any resulting overpayment amount(s).

**SO ORDERED**

Jane Van Duzer

Jane Van Duzer
Administrative Law Judge

DEPARTMENT OF HEALTH AND HUMAN SERVICES (DHHS) / DEPARTMENTAL APPEALS BOARD Form DAB-101 (12/19)

**REQUEST FOR REVIEW OF ADMINISTRATIVE LAW JUDGE (ALJ) MEDICARE DECISION / DISMISSAL**

| | |
|---|---|
| 1. APPELLANT (the party requesting review) | 2. ALJ APPEAL NUMBER (on the decision or dismissal) |
| 3. BENEFICIARY* | 4. MEDICARE NUMBER (Health Insurance Claim Number (HICN) or Medicare Beneficiary Identifier (MBI))* |

*If the request involves multiple claims or multiple beneficiaries, attach a list of beneficiaries, Medicare numbers, and any other information to identify all claims being appealed.

| | |
|---|---|
| 5. PROVIDER, PRACTITIONER, OR SUPPLIER | 6. SPECIFIC ITEM(S) OR SERVICE(S) |

7. Medicare claim type: ☐ Part A ☐ Part B ☐ Part C - Medicare Advantage
☐ Part D - Medicare Prescription Drug Plan ☐ Entitlement/enrollment for Part A or Part B

8. Does this request involve authorization for an item or service that has not yet been furnished?
☐ Yes If Yes, skip to Block 9.
☐ No If No, Specific Dates of Service:

9. If the request involves authorization for a prescription drug under Medicare Part D, would application of the standard appellate timeframe seriously jeopardize the beneficiary's life, health, or ability to regain maximum function (as documented by a physician) such that expedited review is appropriate? ☐ Yes ☐ No

I request that the Medicare Appeals Council review the ALJ's ☐ decision or ☐ dismissal order [check one] dated________________. I disagree with the ALJ's action because (specify the parts of the ALJ's decision or dismissal you disagree with and why you think the ALJ was wrong):

(Attach additional sheets if you need more space)

**PLEASE ATTACH A COPY OF THE ALJ DECISION OR DISMISSAL ORDER YOU ARE APPEALING.**

| | | | | | |
|---|---|---|---|---|---|
| DATE | | | DATE | | |
| APPELLANT'S NAME (the party requesting review) | | | REPRESENTATIVE'S NAME (include signed appointment of representative if not already submitted) | | |
| ADDRESS | | | ADDRESS | | |
| CITY, STATE, ZIP CODE | | | CITY, STATE, ZIP CODE | | |
| TELEPHONE NUMBER | FAX NUMBER | E-MAIL | TELEPHONE NUMBER | FAX NUMBER | E-MAIL |

(SEE FURTHER INSTRUCTIONS ON PAGE 2)

Form DAB-101 (12/19)

If you have additional evidence, submit it with this request for review. If you need more time, you must request an extension of time in writing now, explaining why you are unable to submit the evidence or legal argument now.

*If you are a provider, supplier, or a beneficiary represented by a provider or supplier, and your case was reconsidered by a Qualified Independent Contractor (QIC), the Medicare Appeals Council will not consider new evidence related to issues the QIC has already considered unless you show that you have a good reason for submitting it for the first time to the Medicare Appeals Council.*

**IMPORTANT: Include the HICN or MBI and ALJ Appeal Number on any letter or other material you submit.**

This request must be received within 60 calendar days after you receive the ALJ's decision or dismissal, unless we extend the time limit for good cause. We assume you received the decision or dismissal 5 calendar days after it was issued, unless you show you received it later. If this request will not be received within 65 calendar days from the date on the decision or dismissal order, please explain why on a separate sheet.

---

You must file your request for review in writing with the Medicare Appeals Council at:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

You may send the request for review by U.S. Mail, a common carrier such as FedEx, or by fax to (202) 565-0227. If you send a fax, please do not also mail a copy. ***You must send a copy of your appeal to the other parties and indicate that all parties, to include all beneficiaries, have been copied on the request for review. For claims involving multiple beneficiaries, you may submit a copy of the cover letters issued or a spreadsheet of the beneficiaries and addresses who received a copy of the request for review.***

If you have any questions about your request for review or wish to request expedited review of a claim involving authorization of your prescription drug under Medicare Part D, you may call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100. You may also visit our web site at www.hhs.gov/dab for additional information on how to file your request for review.

## PRIVACY ACT STATEMENT

The collection of information on this form is authorized by the Social Security Act (section 205(a) of title II, section 702 of title VII, section 1155 of Title XI, and sections 1852(g)(5), 1869(b)(1), 1871, 1872, and 1876(c)(5)(B) of title XVIII, as appropriate). The information provided will be used to further document your claim. Information requested on this form is voluntary, but failure to provide all or any part of the requested information may affect the determination of your claim. Information you furnish on this form may be disclosed by the Department of Health and Human Services or the Social Security Administration to another person or governmental agency only with respect to programs under the Social Security Act and to comply with Federal laws requiring the disclosure of information or the exchange of information between the Department of Health and Human Services, the Social Security Administration, or other agencies.

Department of Health and Human Services
OFFICE OF MEDICARE HEARINGS AND APPEALS
Miami, FL

| | | | |
|---|---|---|---|
| Appeal of: | BRIAN G. LODER DPM PLC | OMHA Appeal No.: | 3-15259989763 |
| Beneficiary: | [redacted] | Medicare Part: | B |
| Medicare No.: | | Before: | Jane Van Duzer<br>Administrative Law Judge |

Index of the Administrative Record and Exhibit List

**Exhibit Record** — **Administrative File Reference**

| | File Name | Page Range | |
|---|---|---|---|
| Medical & Related: Medical Records: w/ Recon Pckg | File 5 | 15 | 199 |
| Position Statements: UPIC | File 8 | 1 | 5 |
| Procedural - CMS Levels: Reconsideration: Decision | File 2 | 1 | 18 |
| Procedural - CMS Levels: Request for documentation: UPIC Letter | File 3 | 1 | 10 |
| Procedural - CMS Levels: Claim information: w/ ADR | File 3 | 2545 | 2547 |
| Procedural - CMS Levels: Request for Reconsideration Pckg | File 5 | 1 | 14 |
| Procedural - CMS Levels: Request for Redetermination Pckg: w/ Redt Dec | File 6 | 1 | 44 |
| Procedural - OMHA Level: Request for ALJ Hearing: w/ AOR | File 1 | 1 | 18 |
| Procedural - OMHA Level: NOI: CoventBridge - UPIC | File 10 | 1 | 3 |
| Procedural - OMHA Level: Notice of Hearing | File 11 | 1 | 10 |
| Procedural - OMHA Level: Response to NOH: Rescheduling Request | File 12 | 1 | 4 |
| Procedural - OMHA Level: NOI: CoventBridge - NPW | File 13 | 1 | 3 |
| Procedural - OMHA Level: Amended NOH | File 14 | 1 | 10 |
| Procedural - OMHA Level: Notice of Hearing | File 15 | 1 | 10 |
| Procedural - OMHA Level: Notice of Hearing | File 17 | 1 | 16 |
| Procedural - OMHA Level: Response to Notice of Hearing: Request to Reschedule | File 18 | 1 | 4 |
| Procedural - OMHA Level: Notice of Hearing | File 19 | 1 | 16 |
| Procedural - OMHA Level: Seconded Amended NOH | File 9 | 1 | 10 |
| Proceeding (Audios): Hearing audio | File 16 | 1 | 1 |

**Non-Exhibit Record** — **Administrative File Reference**

| | File Name | Page Range | |
|---|---|---|---|
| Records not considered: Duplicate MR: ADR Resp | File 3 | 870 | 1074 |
| Records not considered: General: QIC Acknowledgement Letter | File 4 | 1 | 3 |
| Records not considered: General: redt | File 7 | 1 | 1 |

Index of the Administrative Record and Exhibit List

Department of Health and Human Services
Office of the Secretary

OFFICE OF MEDICARE HEARINGS AND APPEALS

Miami Field Office
Claude Pepper Federal Building
51 SW 1st Avenue, Suite 1400A
Miami, FL 33130-1608
(786) 792-3700
(786) 792-3797 (Direct)
(305) 536-5050 (Fax)
(866) 622-0382 (Toll Free)

December 18, 2025

BRIAN G. LODER DPM PLC
ATTN: WILLIAM O'MALLEY
60 PUBLIC SQ STE 602
WILKES-BARRE, PA 18701

# NOTICE OF DECISION

Appellant: BRIAN G. LODER DPM PLC
OMHA Appeal Number: **3-15259990031**

Enclosed is the decision for the above case. This decision is based on the administrative record, including any evidence or testimony presented at the hearing, if one was held. The decision is not precedential, does not release the appellant from civil or criminal liability, and may be reopened at any time if it was procured by fraud or similar fault. In addition, the decision may be reopened within 180 calendar days from the date of the decision for good cause. Good cause exists when there is new and material evidence that was not available or known at the time of the decision and may result in a different conclusion, or when the evidence that was considered clearly shows on its face that an obvious error was made at the time of the decision.

## What if I disagree with the decision?

If you disagree with the decision, you may file an appeal with the Medicare Appeals Council. Other parties may also appeal the decision. In addition, the Medicare Appeals Council may decide to review the decision on its own motion. If no party appeals the decision and the Medicare Appeals Council does not review the decision, the decision is binding on all parties and you and the other parties will not have the right to ask a federal court to review the decision.

If you are not already represented, you may appoint an attorney or other person to represent you.

## How much time do I have to file an appeal?

The Medicare Appeals Council must receive your written appeal **within 60 calendar days** of the date that you receive this notice. The Medicare Appeals Council assumes you received this notice 5 calendar days after the date of the notice unless you show that you did not receive it within the 5-day period.

The Medicare Appeals Council will dismiss a late request for review unless you show that you had a good reason for not filing it on time.

**How do I file an appeal?**

To appeal, you must ask the Medicare Appeals Council to review the decision. Your appeal must be in writing, except that a request for expedited review of a Part D decision may be made orally as described below. Your appeal must identify the parts of the decision that you disagree with, and explain why you disagree.

You may submit a written request for review to the Medicare Appeals Council using one of three available methods: mail, fax, or electronic filing (E-File). **Please do not submit your request for review using more than one method**. Regardless of how you file your appeal, **you must always send a copy of your written request for review to the other parties who received a copy of the decision.**

If you are filing a written request for review, you may use the enclosed *Request for Review* (Form DAB-101), or you may write a letter containing the following:

- The beneficiary's/enrollee's name (and telephone number for Part D appeals);
- The beneficiary's/enrollee's Medicare number (Health Insurance Claim Number or Medicare Beneficiary Identifier);
- The item(s), service(s), or specific Part D drug(s) in dispute;
- The specific date(s) the item(s) or service(s) were provided, if applicable;
- For Part D appeals, the plan name;
- For Part D appeals, the OMHA Appeal Number on the adjudicator's decision;
- For Part D appeals requesting expedited review, a statement that you are requesting expedited review;
- The date of the adjudicator's decision (not required for Part D appeals); and
- Your name and signature, and, if applicable, the name and signature of your representative.

**Filing by mail:**

Mail your appeal and a copy of the enclosed decision to:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644

330 Independence Ave., S.W.
Washington, D.C. 20201

**Filing by fax:**

Fax your appeal and a copy of the enclosed decision to **(202) 565-0227.**

**Filing by computer:**

Using your web browser, visit the Medicare Operations Division Electronic Filing System (MOD E-File) website at **https://dab.efile.hhs.gov/mod**.

To file a new appeal using MOD E-File, you will need to register by:

1. Clicking **Register** on the MOD E-File home page;
2. Entering the information requested on the "Register New Account" form; and
3. Clicking **Register Account** at the bottom of the form.

You will use the email address and password you provided during registration to access MOD E-File at **https://dab.efile.hhs.gov/mod/users/new**. You will be able to use MOD E-File to file and access the specific materials for appeals to which you are a party or a party's representative. You may check the status of any appeal on the website homepage without registering.

Once registered, you may file your appeal by:

1. Logging into MOD E-File;
2. Clicking the **File New Appeal** menu button on the top right of the screen;
3. Selecting the type of appeal you are filing (Request for Review or Request for Escalation); and
4. Entering the requested Appeal Information and uploading the requested Appeal Documents on the "File New Appeal - Medicare Operations Division" form. You are required to provide information and documents marked with an asterisk.

At a minimum, the Medicare Appeals Council requires an appellant to file a signed Request for Review and a copy of the enclosed decision. All documents should be submitted in Portable Document Format (PDF) whenever possible. Any document, including a Request for Review, will be deemed to have been filed on a given day, if it is uploaded to MOD E-File on or before 11:59 p.m. EST of that day.

Currently, the documents that may be filed electronically are the:

1. Request for Review;
2. Appointment of Representative form (OMB Form 0938-0950);
3. Copy of Administrative Law Judge or attorney adjudicator decision;
4. Memorandum or brief or other written statement in support of your appeal; and
5. Request to Withdraw your appeal

**No other documents aside from the five (5) listed categories above may be submitted through MOD E-File.**

**Filing by oral request (for expedited review only):**

Oral requests for expedited review of a Part D decision may be made by telephone to **(866) 365-8204.** You must provide the information listed in the bullet points above and a statement that you are requesting an expedited review within 60 calendar days after receipt of this notice of decision. The Medicare Appeals Council will document the oral request in writing and maintain the documentation in the case file.

Please note that your request for review will only be expedited (1) the appeal involves an issue specified in 42 C.F.R. § 423.566(b), but does not include solely a request for payment of a Part D drug that has already been furnished, and (2) the prescribing physician (or other prescriber) indicates, or the Medicare Appeals Council determines, that the standard time frame may seriously jeopardize your life, health, or ability to regain maximum function.

**How will the Medicare Appeals Council respond to my appeal?**

The Medicare Appeals Council will limit its review to the issues raised in the appeal, unless the appeal is filed by an unrepresented beneficiary/enrollee. It may change the parts of the decision that you agree with. It may adopt, modify, or reverse the decision, in whole or in part, or it may send the case back to OMHA for further action. It may also dismiss your appeal.

**Questions?**

You may call or write our office. A toll-free phone number and mailing address are at the top of this notice.

Additional information about filing an appeal with the Medicare Appeals Council is available at http://www.hhs.gov/dab/. You can also call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100 or (866) 365-8204 (toll free), if you have questions about filing an appeal.

cc: [redacted]

QIC - C2C B North
301 W Bay Street
Ste. 1110
Jacksonville, FL 32202

Enclosures:

OMHA-152, Decision
DAB-101, Request for Review
OMHA-156, Exhibit List

Department of Health and Human Services
OFFICE OF MEDICARE HEARINGS AND APPEALS
Miami, FL

| | |
|---|---|
| Appeal of: **BRIAN G. LODER DPM PLC** | OMHA Appeal No.: **3-15259990031** |
| Beneficiary: [redacted] | Medicare Part: B |
| Medicare No.: [redacted] | Before: **Jane Van Duzer** Administrative Law Judge |

## DECISION

After considering the evidence and arguments presented in the record, I enter an **UNFAVORABLE** decision. The appellant remains liable for the non-covered services and any outstanding overpayment amount.

## PROCEDURAL HISTORY

The appellant, Brian G. Loder DPM, PLC., initially received Medicare reimbursement for Dual Layer Impax Membrane (HCPCS code Q4262), (HCPCS codes15271 and 15472) furnished to K.S., a Medicare beneficiary on October 3, 2023. Then, on December 10, 2024, WPS, a Medicare Administrative Contractor (MAC), issued an unfavorable decision. (File 5, pp. 8-13) Thereafter, the MAC issued a letter informing the appellant it had received Medicare reimbursement in error, resulting in an overpayment. Subsequently, on May 21, 2025, C2C Innovative Solutions, Inc., the Qualified Independent Contractor (QIC) upheld the denial of coverage. (File 2) Specifically, the QIC found that dual layer Impax membrane was experimental and investigational as denoted by the Q code status nomenclature (File 2, p. 5) The QIC further found that HCPCS codes 15271 and 15272 were also not covered. (Id.) Thereafter, on July 22, 2025, the Office of Medicare Hearings and Appeals received the appellant's timely request for a hearing by an Administrative Law Judge. (File 1) The amount in controversy satisfies the jurisdictional requirement for a hearing pursuant to Title XVIII of the Social Security Act, (the Act) §1869(b)(1)(E). A telephonic hearing took place on November 4, 2025. William O'Malley testified, under oath, on behalf of the appellant. I received the beneficiary's file into evidence with exhibited record files 1-17, which includes the hearing audio recording and the UPIC's written position statement.

## ISSUE(S)

Is the appellant entitled to Medicare reimbursement under Part B of Title XVIII of the Act for the services at issue, provided to the beneficiary on the date of service at issue? In other words, are the services within a covered category under §1861(s) of the Act, and if so, are such services not otherwise excluded from coverage under §1862(a)(1) of the Act?

If payment for the services at issue is denied, can Medicare payment nonetheless be made under the limitations of liability provisions of §1879 of the Act. Additionally, if an overpayment exists, the next issue is whether the appellant is entitled to a waiver, under §1870 of the Act, of the carrier's assessed overpayment. Specifically, was the appellant "without fault", as defined under §1870 of the Act, in accepting the improper Medicare payments which are the subject of the carrier's overpayment audit.

## APPLICABLE LAW AND POLICY

### Principles of Law

#### 1. *Statutes and Regulations*

Title XVIII of the Social Security Act (the Act) §1831 established the Supplemental Medical Insurance Program for the aged and disabled under Part B.

The scope of benefits that are provided to beneficiaries under the Medicare Part B insurance program are set forth in § 1832 of the Act. An individual is entitled to have payment made on his/her behalf for medical and other health services furnished by a provider of services or by others under arrangement with them made by a provider of services. *See* Act §1832(a)(2)(B); *see also* 42 C.F.R. § 410.3.

No payment shall be made to any provider of services unless there has been furnished such information as may be necessary to determine the amounts due such provider. *See* Act § 1833(e); *see also* 42 C.F.R. § 424.5(a)(6).

Payment for services rendered under Part B of the Medicare laws may be made only to providers of services which are eligible under section 1866(a), which outlines the requirement of agreements with providers of service and the enrollment process. Under this section, payment may only be made if the physician appropriately certifies and recertifies, when applicable, that the services provided were medically required. *See* Act § 1835.

The term "medical and other health services" specifically includes "services and supplies (including drugs and biologicals which are not usually self-administered by the patient) furnished as an incident to a physician's professional service, of kinds which are commonly furnished in physicians' offices and are commonly either rendered without charge or included in the physicians' bills (or would have been so included but for the application of section §1847B. *See* Act § 1861(s)(2)(A); *see also* 42 C.F.R. §§ 410.10(b); 410.27 and 410.26(a)(7).

The term 'drugs' and the term 'biologicals', except for purposes of subsection (m)(5) and paragraph (2), include only such drugs (including contrast agents) and biologicals, respectively, as are included (or approved for inclusion) in the United States Pharmacopoeia, the National Formulary, or the United States Homeopathic Pharmacopoeia, or in New Drugs or Accepted Dental Remedies (except for any drugs and biologicals unfavorably evaluated therein), or as are approved by the pharmacy and drug therapeutics committee (or equivalent committee) of the medical staff of the hospital furnishing such drugs and biologicals for use in such hospital. *See* Act § 1861(t)(1); *see also* 42 C.F.R. § 410.29.

Notwithstanding any other provision of the Act, no payment may be made under Part A or Part B for any expenses incurred for items or services, which ... are not reasonable and necessary for

the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member. *See* Act § 1862(a)(1)(A); *see also* 42 C.F.R. § 411.15(k)(1).

A waiver of an overpayment adjustment or recovery of an incorrect payment may be made to a provider who is "without fault." *See* Act § 1870(b); *see also* 42 C.F.R. §§405.350(a)(2); §405.351; and 405.355.

Section 1879 of the Act limits the liability of the beneficiary and providers of services if the services are found to be not medially reasonable and necessary under §1862(a)(1)(A) or care was custodial in nature under §1862(a)(1)(9). Payment will only be made pursuant to this section if neither the beneficiary nor the provider knew or could reasonably have been expected to know that the services were not covered. *See also* 42 C.F.R. §§ 411.404; 411.406.

**2. *Policy and Guidance***

Unless promulgated as a regulation by CMS, no rule, requirement, or statement of policy, other than a National Coverage Determination (NCD), can establish or change a substantive legal standard governing the scope of benefits or payment for services under the Medicare program. However, in lieu of binding regulations with the full force and effect of law, CMS and its contractors have issued policy guidance that describe criteria for coverage of selected types of medical items and services in the form of manuals and local medical review policies (LMRPs) or local coverage determinations (LCDs). *See* Act § 1871(a)(2). The undersigned notes that there is no applicable Local Coverage Determination.

National Coverage Determinations are binding upon Administrative Law Judges. *See* Act § 1869(f)(1); *see also* 42 C.F.R. § 405.1060. The undersigned notes that there is no applicable National Coverage Determination. Administrative Law Judges will give substantial deference to local coverage determinations (LCDs), local medical review policies (LMRPs), or CMS program guidance when applicable, and if they do not follow the policy they must explain why in their decision. *See* Act §1869(f)(2); *see also* 42 C.F.R. § 405.1062.
I also gave substantial deference to the manuals implementing the Medicare program, which are of persuasive importance, instructive and influential. Relevant to this case is the Medicare Benefit Policy Manual, Publication 100-2, Chapter 15, Covered and Other Health Services, §30 Physician Services; §50 Drugs and Biologicals; §50.1 Definition of Drugs and Biologicals; §50.2 Determining Self Administration of Drugs and Biologicals; §50.3 Incident to Requirements; §50.4.1 Approved Use of Drug and the Medicare Claims Processing Manual, Publication 100-4, Chapters 4, 17, and Chapter 30, Financial Liability Protections. *See also* C.F.R. §405.1062.

**FINDINGS OF FACT AND ANALYSIS**

***Facts***

The appellant submitted medical records pre-dating and post-dating the date of service at issue, which I did not consider. (File 5) October 3, 2023, Brian Loder DPM treated the beneficiary due to a chief complaint of non-pressure chronic ulcer of the right ankle and fat layer exposed. (File 5, p. 15) Dr. Loder documented the beneficiary presented to resume wound care with biologics, which had worked well in the past. (Id.) Her wounds had been treated at the wound care center for the past three months with no change in wound size. (Id.)

On examination, the beneficiary presented with an ulcer to the right medial ankle, which measured 6cm x 5cm. (File 5, p. 16) The ulcer base was healthy/granular, and it exuded a small amount of serous exudate. (Id.) The beneficiary was diagnosed with a non-pressure chronic ulcer

of the right ankle with fat layer exposed. (Id.) The beneficiary's wound was cleansed and debrided. (Id.) Thereafter, Impax Amniotic Membrane (HCPCS code Q462) 4 x 8 cm was surgically applied to the wound on the beneficiary's medial right ankle wound. (Id.) It was documented that based on its measurements, the wound required 30 units of application and 2 units of waste. (Id.) The lot number used was RTX231038-039 with an expiration date of May 3, 2025. (Id.)

The Legacy Medical Consultants label for Impax Amniotic Allograft states in pertinent part as follows:

A sterile, dual layer amniotic allograft derived from a prescreened mother with a planned delivery. Dual layer Impax Membrane is manufactured in compliance with FDA regulations. The membrane is minimally processed to preserve the native structure of the tissue, dehydrated, and terminally sterilized. Dual Layer Impax membrane is confirmed by the FDA Tissue Reference Group to meet the criteria for regulation solely under section 361 of the PHS Act as defined in 21 CFR Part 1271.[1]

***Hearing testimony***

William O'Malley proffered the appellant's position regarding coverage of the services at issue, which I considered in reaching my decision in this case. I also considered the UPIC's written position statement.

***Analysis***

I reviewed the Medicare coverage criteria for dual layer Impax membrane wound cover, established in accordance with the statutory and regulatory provisions of Part B of Title XVIII of the Act. For the reasons set forth below, I find the appellant did not meet the payment criteria for same.

At the outset, I am not persuaded by the QIC's finding that the Impax Membrane at issue is experimental and investigational as denoted by the Q code status nomenclature. Specifically, Medicare indicates that Q codes are established to identify drugs, biologicals, and medical equipment or services not identified by national HCPCS level II codes, but for which codes are needed for Medicare claims processing.[2]

Medicare is a defined benefit program, which means that it does not cover all available medical services and supplies.[3] Instead, Medicare coverage is limited to those medical services and supplies identified by Congress, by the Secretary of Health and Human Services, and by CMS in implementing Congressional directives. For example, Medicare does not cover medical services that are experimental or investigational. I note there is no Local or National Coverage Determination for the service at issue.

***Reasonable and Necessary Analysis***

---

[1] https://legacymedicalconsultants.com/products/impax-amniotic-allograft/ (last visited on December 16, 2025).

[2] See https://www.cms.gov/medicare/coding/medhcpcsgeninfo/downloads/2018-11-30-hcpcs-level2-coding-procedure.pdf (last visited on October 27, 2025)

[3] In general, although MAC decisions have no precedential value, the decisions may serve as a guidepost to disposition of similar cases. 70 Fed. Reg. 11420, 11449 (Mar. 8, 2005). *See also Consultants in Pain Medicine, P.A.* (MAC December 2014); *see also* Medicare Program Integrity Manual, Publication 100-08, Chapter 13, §13.5.1.

Historically, in making coverage determinations, the Centers for Medicare, and Medicaid Services (CMS) has interpreted the terms reasonable and necessary to require that the item or service in question is safe and effective and not experimental or investigational.[4] CMS has further determined that the relevant tests for applying these terms are whether the service has been proven safe and effective based on authoritative evidence, or, alternatively, whether the service is generally accepted in the medical community as safe and effective for the condition for which it is used. [5] However, acceptance by individual health care providers, or even a limited group of health care providers normally does not indicate general acceptance in the medical community.[6] Testimonials indicating such limited acceptance, and limited case studies distributed by sponsors with financial interest in the outcome, are not sufficient evidence of general acceptance by the medical community.[7] I must consider the broad range of available evidence and evaluate its quality before reaching a conclusion.[8] In addition, the device must be reasonable and necessary for the appellant's condition on the date(s) of service at issue.[9]

In this case, as in all Medicare appeals, the enrollee has the burden to establish that he is entitled to Medicare coverage. Historically, in making coverage determinations, CMS has interpreted the terms reasonable and necessary to require that the item or service in question is safe and effective and not experimental or investigational.[10] CMS has further determined that the relevant tests for applying these terms are whether the service has been proven safe and effective based on authoritative evidence, or, alternatively, whether the service is generally accepted in the medical community as safe and effective for the condition for which it is used. [11]

***FDA Approval/Clearance***

At the outset, I find the dual layer Impax membrane wound cover at issue is FDA approved. Nevertheless, I find that FDA clearance is not synonymous with Medicare coverage.[12] Furthermore, I am not persuaded by the appellant's argument, which is not corroborated by the evidence before me, that Dual Layer Impax membrane was confirmed by the FDA Tissue Reference Group to meet the criteria for regulation solely under section 361 of the PHS Act as defined in 21 CFR Part 1271. The regulations state "CMS *may consider* for Medicare coverage" FDA approved devices or services "that have been categorized as non-experimental/investigational."[13] The regulations further clarify that CMS uses FDA categorization "*as a factor*" in making coverage decisions. [14] Thus, under Medicare regulations, the fact that the dual layer Impax membrane wound cover may be deemed non-experimental by virtue of its FDA classification means, as a threshold matter, only that it is eligible to be considered for Medicare coverage.[15]

---

[4] *Total Pain Care, PA* (MAC February 2015); *see also, In the Case of Vision Quest Industries, Inc.*, (MAC June 2012).

[5] *Id. See also* 54 Fed. Reg. 4304 (Jan. 30, 1989); 60 Fed. Reg. 48417 (Sept. 19, 1995); Medicare Program Integrity Manual (MPIM), Pub.100-08, Chapter 13, §13.5.1.

[6] *See* §13.7.1 MPIM.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Total Pain Care, PA* (MAC February 2015).

[11] Id. *See also* 54 Fed. Reg. 4304 (Jan. 30, 1989); 60 Fed. Reg. 48417 (Sept. 19, 1995); 68 Fed. Reg. 63693 states "if no NCD or LCD is in place, contractors may make individual claim determinations, including whether a particular DME meets the statutory requirement of being "reasonable and necessary;" *See also* the Medicare Program Integrity Manual (MPIM), Pub.100-08, Chapter 13, §13.5.1.

[12] *In the Case of Vision Quest Industries, Inc.*, (MAC June 2012).

[13] See 42 C.F.R. §405.201(a)(2)

[14] See 42 C.F.R. §405.201(a)(1)

[15] *In the Case of Vision Quest Industries, Inc.*, (MAC June 2012).

This conclusion is further reinforced by the statements published by CMS and the FDA in the Federal Register explaining the difference between CMS review of a medical device as compared to reviews conducted by the FDA for pre-market approval.[16] Specifically, each process operates under different statutory standards and asks different questions to meet its respective mandates.[17] Moreover, CMS serves a different function by providing health insurance to protect the Nation's aged and disabled. CMS makes determinations regarding the coverage of specific items and services.[18] In short, CMS must decide: "what items and services it can and should pay for; how it should accomplish the payment; and how much to pay."[19] Thus, FDA clearance of an item or service does not preclude CMS or its contractors, in analyzing whether a particular item or service is medically reasonable and necessary, from making an independent inquiry into whether the item or service is safe and effective and not experimental or investigational.[20] Nor does it preclude CMS or its contractors from inquiring whether the item or service is supported by "*[p]ublished authoritative evidence derived from definitive randomized clinical trials or other definitive studies.*"[21]

Therefore, although the dual layer Impax membrane wound cover received FDA approval or clearance, I find that such FDA approval/clearance alone does not generally entitle a service to Medicare coverage. Accordingly, I find that FDA clearance for the dual layer Impax membrane wound cover, by itself, does not establish that the service meets Medicare coverage requirements, i.e., that it has been shown to be a medically reasonable and necessary treatment of the enrollee's medical condition.

***Peer Review Literature***

In support of coverage for the dual layer Impax membrane wound cover, the appellant submitted multiple articles. (File 5) Some of the articles discussed the efficacy of skin substitutes on diabetic foot ulcers and pressure injuries. (Id.) However, I find the weight of the medical literature does not support the appellant's position. I considered, but I am not persuaded by, the materials submitted for review. In deciding whether the dual layer Impax membrane wound cover is reasonable and necessary, i.e., safe, and effective, and not experimental or investigational, only evidence that was in existence on or before the date of service at issue is relevant and the beneficiary must prove that the dual layer Impax membrane wound cover is medically reasonable and necessary.

Based on my review of the studies submitted by the appellant, I find they are insufficient to support a finding the dual layer Impax membrane wound cover is safe and effective for treatment of patients with the appellant's condition. Consequently, I find the evidence does not support a finding that the dual layer Impax membrane wound cover is generally accepted in the medical community and is, therefore, medically reasonable and necessary.

I must emphasize that I am sympathetic to the beneficiary's position and certainly understand the gravity of her wound. Moreover, I do not question her physician's judgment in prescribing the dual layer Impax membrane wound cover, her desire to undergo the treatment, or the possibility

[16] *See* 68 Fed. Reg. 55634 (Sept. 26, 2003); *See also* 75 Fed. Ref. 57045.
[17] Id; *See also* MPIM, Publication 100-08, Chapter 13, §5.1.
[18] See Act §1862(a) (1.
[19] *In the Case of Vision Quest Industries, Inc.*, (MAC June 2012).
[20] *Id.*
[21] *Consultants in Pain Medicine, P.A.* (December 2014); *In the Case of Vision Quest Industries, Inc.*, (MAC June 2012).

that it may yield some benefit to her. However, I am bound by the statutes and the implementing regulations of the Medicare program. Accordingly, based on the above analysis, I find the dual layer Impax membrane wound cover was not reasonable and necessary as established through the appellant's medical records, and that such services were excluded under §1862(a)(1) of the Act. Consequently, I find that HCPCS codes 15271 and 15272 were also not covered, as services related to a non-covered service.

***Liability §1879***

Since I determined the services at issue were not reasonable and necessary, I must consider whether Medicare payment may be made under the limitation of liability provisions of §1879 of the Act. The beneficiary did not know and could not reasonably be expected to know the services at issue would not be covered under Medicare. There is no Advanced Beneficiary Notice in the file and the appellant accepted assignment in this matter. Consequently, the liability of the beneficiary is waived pursuant to §1879 of the Act.

The appellant, however, is considered to have acquired knowledge that such services were excluded from Medicare coverage by its receipt of manuals, bulletins, and written guidelines from the carrier.[22] Because the appellant knew or reasonably should have known services at issue were not covered by Medicare, the waiver of liability provisions of §1879 of the Act cannot be applied to absolve the appellant of liability.

***Liability under §1870***

Additionally, after careful consideration of the record, and for the reasons set forth below, I find that the appellant is not entitled to waiver of the assessed overpayment. In order to determine whether the appellant is entitled to waiver, I must in turn determine whether the appellant was "without fault" as defined in 1870(b) of the Act. I find that there is insufficient evidence to support a finding that the appellant was "without fault." Initially, I note that there is insufficient evidence to support a finding that the appellant suffered from any relevant linguistic, educational, physical or mental limitations, or limitations due to age or intelligence. *See* 20 CFR §404.507 (setting forth the criteria used to determine whether an individual or other person is "without fault")

I further find that the overpayment at issue resulted from the appellant's failure to furnish information which it knew or should have known to be material. *See* 20 CFR §404.507. *See also* the Medicare Financial Management Manual, Publication 100-06, Ch. 3, §90.1F. The appellant failed to provide the requisite records to establish that the services at issue were reasonable and necessary. Accordingly, I find that the appellant is not "without fault" and is therefore not entitled to waiver of the assessed overpayment.

## CONCLUSIONS OF LAW

The appellant did not establish by a preponderance of the evidence that the services furnished to the beneficiary on the date of service at issue were covered under 1861(s)(6) of the Act and were not otherwise excluded under §1862(a)(1) of the Act. Liability of the beneficiary, however, is waived pursuant to §1879 of the Act. Additionally, an overpayment occurred within the meaning of Section 1870 of Title XVIII of the Act for the services at issue. The appellant is not "without fault" and is therefore not entitled to waiver of the overpayment with respect to services

---

[22] *See* 42 C.F.R. § 411.406.

provided to the beneficiary. Accordingly, consistent herewith, the appellant is liable for non-covered services and any outstanding overpayment amount(s).

## ORDER

For the reasons discussed above, this decision is **UNFAVORABLE**. I direct the Medicare Administrative Contractor to process the claims in accordance with this decision. The appellant remains liable for the non-covered services and any resulting overpayment amount(s).

**SO ORDERED**

Jane Van Duzer
Administrative Law Judge

DEPARTMENT OF HEALTH AND HUMAN SERVICES (DHHS) / DEPARTMENTAL APPEALS BOARD Form DAB-101 (12/19)

**REQUEST FOR REVIEW OF ADMINISTRATIVE LAW JUDGE (ALJ) MEDICARE DECISION / DISMISSAL**

| | |
|---|---|
| 1. APPELLANT (the party requesting review) | 2. ALJ APPEAL NUMBER (on the decision or dismissal) |
| 3. BENEFICIARY* | 4. MEDICARE NUMBER (Health Insurance Claim Number (HICN) or Medicare Beneficiary Identifier (MBI))* |

*If the request involves multiple claims or multiple beneficiaries, attach a list of beneficiaries, Medicare numbers, and any other information to identify all claims being appealed.

| | |
|---|---|
| 5. PROVIDER, PRACTITIONER, OR SUPPLIER | 6. SPECIFIC ITEM(S) OR SERVICE(S) |

7. Medicare claim type: ☐ Part A ☐ Part B ☐ Part C - Medicare Advantage
☐ Part D - Medicare Prescription Drug Plan ☐ Entitlement/enrollment for Part A or Part B

8. Does this request involve authorization for an item or service that has not yet been furnished?
☐ Yes If Yes, skip to Block 9.
☐ No If No, Specific Dates of Service:

9. If the request involves authorization for a prescription drug under Medicare Part D, would application of the standard appellate timeframe seriously jeopardize the beneficiary's life, health, or ability to regain maximum function (as documented by a physician) such that expedited review is appropriate? ☐ Yes ☐ No

I request that the Medicare Appeals Council review the ALJ's ☐ decision or ☐ dismissal order [check one] dated____________________. I disagree with the ALJ's action because (specify the parts of the ALJ's decision or dismissal you disagree with and why you think the ALJ was wrong):

(Attach additional sheets if you need more space)

**PLEASE ATTACH A COPY OF THE ALJ DECISION OR DISMISSAL ORDER YOU ARE APPEALING.**

| | | | | | |
|---|---|---|---|---|---|
| DATE | | | DATE | | |
| APPELLANT'S NAME (the party requesting review) | | | REPRESENTATIVE'S NAME (include signed appointment of representative if not already submitted) | | |
| ADDRESS | | | ADDRESS | | |
| CITY, STATE, ZIP CODE | | | CITY, STATE, ZIP CODE | | |
| TELEPHONE NUMBER | FAX NUMBER | E-MAIL | TELEPHONE NUMBER | FAX NUMBER | E-MAIL |

(SEE FURTHER INSTRUCTIONS ON PAGE 2)

Form DAB-101 (12/19)

If you have additional evidence, submit it with this request for review. If you need more time, you must request an extension of time in writing now, explaining why you are unable to submit the evidence or legal argument now.

*If you are a provider, supplier, or a beneficiary represented by a provider or supplier, and your case was reconsidered by a Qualified Independent Contractor (QIC), the Medicare Appeals Council will not consider new evidence related to issues the QIC has already considered unless you show that you have a good reason for submitting it for the first time to the Medicare Appeals Council.*

**IMPORTANT: Include the HICN or MBI and ALJ Appeal Number on any letter or other material you submit.**

This request must be received within 60 calendar days after you receive the ALJ's decision or dismissal, unless we extend the time limit for good cause. We assume you received the decision or dismissal 5 calendar days after it was issued, unless you show you received it later. If this request will not be received within 65 calendar days from the date on the decision or dismissal order, please explain why on a separate sheet.

---

You must file your request for review in writing with the Medicare Appeals Council at:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

You may send the request for review by U.S. Mail, a common carrier such as FedEx, or by fax to (202) 565-0227. If you send a fax, please do not also mail a copy. ***<u>You must send a copy of your appeal to the other parties and indicate that all parties, to include all beneficiaries, have been copied on the request for review.</u> For claims involving multiple beneficiaries, you may submit a copy of the cover letters issued or a spreadsheet of the beneficiaries and addresses who received a copy of the request for review.***

If you have any questions about your request for review or wish to request expedited review of a claim involving authorization of your prescription drug under Medicare Part D, you may call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100. You may also visit our web site at www.hhs.gov/dab for additional information on how to file your request for review.

---

## PRIVACY ACT STATEMENT

The collection of information on this form is authorized by the Social Security Act (section 205(a) of title II, section 702 of title VII, section 1155 of Title XI, and sections 1852(g)(5), 1869(b)(1), 1871, 1872, and 1876(c)(5)(B) of title XVIII, as appropriate). The information provided will be used to further document your claim. Information requested on this form is voluntary, but failure to provide all or any part of the requested information may affect the determination of your claim. Information you furnish on this form may be disclosed by the Department of Health and Human Services or the Social Security Administration to another person or governmental agency only with respect to programs under the Social Security Act and to comply with Federal laws requiring the disclosure of information or the exchange of information between the Department of Health and Human Services, the Social Security Administration, or other agencies.

Department of Health and Human Services
OFFICE OF MEDICARE HEARINGS AND APPEALS
Miami, FL

| | |
|---|---|
| Appeal of: BRIAN G. LODER DPM PLC | OMHA Appeal No.: 3-15259990031 |
| Beneficiary: [redacted] | Medicare Part: B |
| Medicare No.: [redacted] | Before: Jane Van Duzer, Administrative Law Judge |

Index of the Administrative Record and Exhibit List

**Exhibit Record** / **Administrative File Reference**

| | File Name | Page Range |
|---|---|---|
| Medical & Related: Medical Records: w/ Recon pckg | File 5 | 15 : 187 |
| Position Statements: UPIC | File 15 | 1 : 5 |
| Procedural - CMS Levels: Reconsideration: Decision | File 2 | 1 : 18 |
| Procedural - CMS Levels: Request for Redetermination Pckg: w/ Redt Dec | File 4 | 1 : 44 |
| Procedural - CMS Levels: Request for Reconsideration Pckg | File 5 | 1 : 14 |
| Procedural - CMS Levels: Claim information: w/ ADR | File 7 | 2550 : 2557 |
| Procedural - OMHA Level: Request for ALJ Hearing: w/AOR | File 1 | 1 : 18 |
| Procedural - OMHA Level: NOI - CoventBridge: NPW | File 10 | 1 : 3 |
| Procedural - OMHA Level: Response to Notice of Hearing: Rescheduling Request | File 11 | 1 : 4 |
| Procedural - OMHA Level: Notice of Hearing | File 12 | 1 : 10 |
| Procedural - OMHA Level: Amended Notice of Hearing | File 13 | 1 : 10 |
| Procedural - OMHA Level: NOI - CoventBridge: NPW | File 14 | 1 : 3 |
| Procedural - OMHA Level: Amended Notice of Hearing | File 16 | 1 : 10 |
| Procedural - OMHA Level: Notice of Hearing | File 18 | 1 : 16 |
| Procedural - OMHA Level: Response to Notice of Hearing | File 19 | 1 : 4 |
| Procedural - OMHA Level: Notice of Hearing | File 20 | 1 : 16 |
| Procedural - OMHA Level: Notice of Hearing | File 8 | 1 : 10 |
| Procedural - OMHA Level: Response to Notice of Hearing: Rescheduling Request | File 9 | 1 : 4 |
| Proceeding (Audios): Hearing audio | File 17 | 1 : 1 |

**Non-Exhibit Record** / **Administrative File Reference**

| | File Name | Page Range |
|---|---|---|
| Records not considered: General: QIC Acknowledgement Letter | File 3 | 1 : 3 |
| Records not considered: General: redt | File 6 | 1 : 1 |
| Records not considered: Duplicate MR: ADR Resp | File 7 | 1075 : 1267 |
| Records not considered: Beneficiary not at issue: ADR | File 7 | 2557 : 4181 |

Index of the Administrative Record and Exhibit List

Department of Health and Human Services
Office of the Secretary

OFFICE OF MEDICARE HEARINGS AND APPEALS

Miami Field Office
Claude Pepper Federal Building
51 SW 1st Avenue, Suite 1400A
Miami, FL 33130-1608
(786) 792-3700
(786) 792-3797 (Direct)
(305) 536-5050 (Fax)
(866) 622-0382 (Toll Free)

December 18, 2025

BRIAN G. LODER DPM PLC
ATTN: WILLIAM O'MALLEY
60 PUBLIC SQ STE 602
WILKES-BARRE, PA 18701

## NOTICE OF DECISION

Appellant: BRIAN G. LODER DPM PLC
OMHA Appeal Number: **3-15259990039**

Enclosed is the decision for the above case. This decision is based on the administrative record, including any evidence or testimony presented at the hearing, if one was held. The decision is not precedential, does not release the appellant from civil or criminal liability, and may be reopened at any time if it was procured by fraud or similar fault. In addition, the decision may be reopened within 180 calendar days from the date of the decision for good cause. Good cause exists when there is new and material evidence that was not available or known at the time of the decision and may result in a different conclusion, or when the evidence that was considered clearly shows on its face that an obvious error was made at the time of the decision.

**What if I disagree with the decision?**

If you disagree with the decision, you may file an appeal with the Medicare Appeals Council. Other parties may also appeal the decision. In addition, the Medicare Appeals Council may decide to review the decision on its own motion. If no party appeals the decision and the Medicare Appeals Council does not review the decision, the decision is binding on all parties and you and the other parties will not have the right to ask a federal court to review the decision.

If you are not already represented, you may appoint an attorney or other person to represent you.

**How much time do I have to file an appeal?**

The Medicare Appeals Council must receive your written appeal **within 60 calendar days** of the date that you receive this notice. The Medicare Appeals Council assumes you received this notice 5 calendar days after the date of the notice unless you show that you did not receive it within the 5-day period.

The Medicare Appeals Council will dismiss a late request for review unless you show that you had a good reason for not filing it on time.

**How do I file an appeal?**

To appeal, you must ask the Medicare Appeals Council to review the decision. Your appeal must be in writing, except that a request for expedited review of a Part D decision may be made orally as described below. Your appeal must identify the parts of the decision that you disagree with, and explain why you disagree.

You may submit a written request for review to the Medicare Appeals Council using one of three available methods: mail, fax, or electronic filing (E-File). **Please do not submit your request for review using more than one method**. Regardless of how you file your appeal, **you must always send a copy of your written request for review to the other parties who received a copy of the decision.**

If you are filing a written request for review, you may use the enclosed *Request for Review* (Form DAB-101), or you may write a letter containing the following:

- The beneficiary's/enrollee's name (and telephone number for Part D appeals);
- The beneficiary's/enrollee's Medicare number (Health Insurance Claim Number or Medicare Beneficiary Identifier);
- The item(s), service(s), or specific Part D drug(s) in dispute;
- The specific date(s) the item(s) or service(s) were provided, if applicable;
- For Part D appeals, the plan name;
- For Part D appeals, the OMHA Appeal Number on the adjudicator's decision;
- For Part D appeals requesting expedited review, a statement that you are requesting expedited review;
- The date of the adjudicator's decision (not required for Part D appeals); and
- Your name and signature, and, if applicable, the name and signature of your representative.

**Filing by mail:**

Mail your appeal and a copy of the enclosed decision to:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644

330 Independence Ave., S.W.
Washington, D.C. 20201

**Filing by fax:**

Fax your appeal and a copy of the enclosed decision to **(202) 565-0227.**

**Filing by computer:**

Using your web browser, visit the Medicare Operations Division Electronic Filing System (MOD E-File) website at **https://dab.efile.hhs.gov/mod**.

To file a new appeal using MOD E-File, you will need to register by:

1. Clicking **Register** on the MOD E-File home page;
2. Entering the information requested on the "Register New Account" form; and
3. Clicking **Register Account** at the bottom of the form.

You will use the email address and password you provided during registration to access MOD E-File at **https://dab.efile.hhs.gov/mod/users/new**. You will be able to use MOD E-File to file and access the specific materials for appeals to which you are a party or a party's representative. You may check the status of any appeal on the website homepage without registering.

Once registered, you may file your appeal by:

1. Logging into MOD E-File;
2. Clicking the **File New Appeal** menu button on the top right of the screen;
3. Selecting the type of appeal you are filing (Request for Review or Request for Escalation); and
4. Entering the requested Appeal Information and uploading the requested Appeal Documents on the "File New Appeal - Medicare Operations Division" form. You are required to provide information and documents marked with an asterisk.

At a minimum, the Medicare Appeals Council requires an appellant to file a signed Request for Review and a copy of the enclosed decision. All documents should be submitted in Portable Document Format (PDF) whenever possible. Any document, including a Request for Review, will be deemed to have been filed on a given day, if it is uploaded to MOD E-File on or before 11:59 p.m. EST of that day.

Currently, the documents that may be filed electronically are the:

1. Request for Review;
2. Appointment of Representative form (OMB Form 0938-0950);
3. Copy of Administrative Law Judge or attorney adjudicator decision;
4. Memorandum or brief or other written statement in support of your appeal; and
5. Request to Withdraw your appeal

**No other documents aside from the five (5) listed categories above may be submitted through MOD E-File.**

**Filing by oral request (for expedited review only):**

Oral requests for expedited review of a Part D decision may be made by telephone to **(866) 365-8204.** You must provide the information listed in the bullet points above and a statement that you are requesting an expedited review within 60 calendar days after receipt of this notice of decision. The Medicare Appeals Council will document the oral request in writing and maintain the documentation in the case file.

Please note that your request for review will only be expedited (1) the appeal involves an issue specified in 42 C.F.R. § 423.566(b), but does not include solely a request for payment of a Part D drug that has already been furnished, and (2) the prescribing physician (or other prescriber) indicates, or the Medicare Appeals Council determines, that the standard time frame may seriously jeopardize your life, health, or ability to regain maximum function.

**How will the Medicare Appeals Council respond to my appeal?**

The Medicare Appeals Council will limit its review to the issues raised in the appeal, unless the appeal is filed by an unrepresented beneficiary/enrollee. It may change the parts of the decision that you agree with. It may adopt, modify, or reverse the decision, in whole or in part, or it may send the case back to OMHA for further action. It may also dismiss your appeal.

**Questions?**

You may call or write our office. A toll-free phone number and mailing address are at the top of this notice.

Additional information about filing an appeal with the Medicare Appeals Council is available at http://www.hhs.gov/dab/. You can also call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100 or (866) 365-8204 (toll free), if you have questions about filing an appeal.

cc: [redacted]

QIC - C2C B North
301 W Bay Street
Ste. 1110
Jacksonville, FL 32202

Enclosures:

OMHA-152, Decision
DAB-101, Request for Review
OMHA-156, Exhibit List

Department of Health and Human Services
OFFICE OF MEDICARE HEARINGS AND APPEALS
Miami, FL

| | |
|---|---|
| Appeal of: **BRIAN G. LODER DPM PLC** | OMHA Appeal No.: **3-15259990039** |
| Beneficiary: [redacted] | Medicare Part: B |
| Medicare No.: [redacted] | Before: **Jane Van Duzer** Administrative Law Judge |

## DECISION

After considering the evidence and arguments presented in the record, I enter an **UNFAVORABLE** decision. The appellant remains liable for the non-covered services and any outstanding overpayment amount.

## PROCEDURAL HISTORY

The appellant, Brian G. Loder DPM, PLC., initially received Medicare reimbursement for Dual Layer Impax Membrane (HCPCS code Q4262), and (HCPCS codes15271) furnished to K.S., a Medicare beneficiary on October 10, 2023. Then, on December 11, 2024, WPS, a Medicare Administrative Contractor (MAC), issued an unfavorable decision. (File 6, pp. 8-13) Thereafter, the MAC issued a letter informing the appellant it had received Medicare reimbursement in error, resulting in an overpayment. Subsequently, on May 21, 2025, C2C Innovative Solutions, Inc., the Qualified Independent Contractor (QIC) upheld the denial of coverage. (File 3) Specifically, the QIC found that dual layer Impax membrane was experimental and investigational as denoted by the Q code status nomenclature (File 3, p. 4) The QIC further found that HCPCS codes 15271 was also not covered. (Id.) Thereafter, on July 22, 2025, the Office of Medicare Hearings and Appeals received the appellant's timely request for a hearing by an Administrative Law Judge. (File 1) The amount in controversy satisfies the jurisdictional requirement for a hearing pursuant to Title XVIII of the Social Security Act, (the Act) §1869(b)(1)(E). A telephonic hearing took place on November 4, 2025. William O'Malley testified, under oath, on behalf of the appellant. I received the beneficiary's file into evidence with exhibited record files 1-17, which includes the hearing audio recording and the UPIC's written position statement.

## ISSUE(S)

Is the appellant entitled to Medicare reimbursement under Part B of Title XVIII of the Act for the services at issue, provided to the beneficiary on the date of service at issue? In other words, are the services within a covered category under §1861(t) of the Act, and if so, are such services not otherwise excluded from coverage under §1862(a)(1) of the Act?

If payment for the services at issue is denied, can Medicare payment nonetheless be made under the limitations of liability provisions of §1879 of the Act. Additionally, if an overpayment exists, the next issue is whether the appellant is entitled to a waiver, under §1870 of the Act, of the carrier's assessed overpayment. Specifically, was the appellant "without fault", as defined under §1870 of the Act, in accepting the improper Medicare payments which are the subject of the carrier's overpayment audit.

## APPLICABLE LAW AND POLICY

### Principles of Law

#### 1. *Statutes and Regulations*

Title XVIII of the Social Security Act (the Act) §1831 established the Supplemental Medical Insurance Program for the aged and disabled under Part B.

The scope of benefits that are provided to beneficiaries under the Medicare Part B insurance program are set forth in § 1832 of the Act. An individual is entitled to have payment made on his/her behalf for medical and other health services furnished by a provider of services or by others under arrangement with them made by a provider of services. *See* Act §1832(a)(2)(B); *see also* 42 C.F.R. § 410.3.

No payment shall be made to any provider of services unless there has been furnished such information as may be necessary to determine the amounts due such provider. *See* Act § 1833(e); *see also* 42 C.F.R. § 424.5(a)(6).

Payment for services rendered under Part B of the Medicare laws may be made only to providers of services which are eligible under section 1866(a), which outlines the requirement of agreements with providers of service and the enrollment process. Under this section, payment may only be made if the physician appropriately certifies and recertifies, when applicable, that the services provided were medically required. *See* Act § 1835.

The term "medical and other health services" specifically includes "services and supplies (including drugs and biologicals which are not usually self-administered by the patient) furnished as an incident to a physician's professional service, of kinds which are commonly furnished in physicians' offices and are commonly either rendered without charge or included in the physicians' bills (or would have been so included but for the application of section §1847B. *See* Act § 1861(s)(2)(A); *see also* 42 C.F.R. §§ 410.10(b); 410.27 and 410.26(a)(7).

The term 'drugs' and the term 'biologicals', except for purposes of subsection (m)(5) and paragraph (2), include only such drugs (including contrast agents) and biologicals, respectively, as are included (or approved for inclusion) in the United States Pharmacopoeia, the National Formulary, or the United States Homeopathic Pharmacopoeia, or in New Drugs or Accepted Dental Remedies (except for any drugs and biologicals unfavorably evaluated therein), or as are approved by the pharmacy and drug therapeutics committee (or equivalent committee) of the medical staff of the hospital furnishing such drugs and biologicals for use in such hospital. *See* Act § 1861(t)(1); *see also* 42 C.F.R. § 410.29.

Notwithstanding any other provision of the Act, no payment may be made under Part A or Part B for any expenses incurred for items or services, which . . . are not reasonable and necessary for

the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member. *See* Act § 1862(a)(1)(A); *see also* 42 C.F.R. § 411.15(k)(1).

A waiver of an overpayment adjustment or recovery of an incorrect payment may be made to a provider who is "without fault." *See* Act § 1870(b); *see also* 42 C.F.R. §§405.350(a)(2); §405.351; and 405.355.

Section 1879 of the Act limits the liability of the beneficiary and providers of services if the services are found to be not medially reasonable and necessary under §1862(a)(1)(A) or care was custodial in nature under §1862(a)(1)(9). Payment will only be made pursuant to this section if neither the beneficiary nor the provider knew or could reasonably have been expected to know that the services were not covered. *See also* 42 C.F.R. §§ 411.404; 411.406.

### 2. *Policy and Guidance*

Unless promulgated as a regulation by CMS, no rule, requirement, or statement of policy, other than a National Coverage Determination (NCD), can establish or change a substantive legal standard governing the scope of benefits or payment for services under the Medicare program. However, in lieu of binding regulations with the full force and effect of law, CMS and its contractors have issued policy guidance that describe criteria for coverage of selected types of medical items and services in the form of manuals and local medical review policies (LMRPs) or local coverage determinations (LCDs). *See* Act § 1871(a)(2). The undersigned notes that there is no applicable Local Coverage Determination.

National Coverage Determinations are binding upon Administrative Law Judges. *See* Act § 1869(f)(1); *see also* 42 C.F.R. § 405.1060. The undersigned notes that there is no applicable National Coverage Determination. Administrative Law Judges will give substantial deference to local coverage determinations (LCDs), local medical review policies (LMRPs), or CMS program guidance when applicable, and if they do not follow the policy they must explain why in their decision. *See* Act §1869(f)(2); *see also* 42 C.F.R. § 405.1062.
I also gave substantial deference to the manuals implementing the Medicare program, which are of persuasive importance, instructive and influential. Relevant to this case is the Medicare Benefit Policy Manual, Publication 100-2, Chapter 15, Covered and Other Health Services, §30 Physician Services; §50 Drugs and Biologicals; §50.1 Definition of Drugs and Biologicals; §50.2 Determining Self Administration of Drugs and Biologicals; §50.3 Incident to Requirements; §50.4.1 Approved Use of Drug and the Medicare Claims Processing Manual, Publication 100-4, Chapters 4, 17, and Chapter 30, Financial Liability Protections. *See also* C.F.R. §405.1062.

## FINDINGS OF FACT AND ANALYSIS

### *Facts*

The appellant submitted medical records pre-dating the date of service at issue, which I did not consider. (File 6) On October 10, 2023, Brian Loder DPM treated the beneficiary due to a chief complaint of non-pressure chronic ulcer of the right ankle and fat layer exposed. (File 6, p. 15) Dr. Loder documented the beneficiary presented for a follow-up of non-pressure chronic ulcer of the right ankle and fat layer exposed. (Id.) Additionally, she presented to resume wound care treatment with biologics which worked well in the past. (Id.) Her wound had been treated at the wound center for the past three months with no change in wound size. (Id.) The beneficiary noted she believed the wound was still painful and the dressing got stuck. (Id.)

On examination, the beneficiary presented with an ulcer to the right medial ankle, which measured 3cm x 4.7cm. (File 6, p. 16) The ulcer base was healthy/granular, and it exuded a small amount of serous exudate. (Id.) The beneficiary was diagnosed with a non-pressure chronic ulcer of the right ankle with fat layer exposed. (Id.) The beneficiary's wound was cleansed and debrided. (Id.) Thereafter, Impax Amniotic Membrane (HCPCS code Q462) 4 x 4 cm was surgically applied to the wound on the beneficiary's medial right ankle wound. (Id.) It was documented that based on the wound's geography, the wound required 14 units of application and 2 units of waste. (Id.) The lot number used was 231589-004 with an expiration date of September 22, 2026. (Id.)

The Legacy Medical Consultants label for Impax Amniotic Allograft states in pertinent part as follows:

A sterile, dual layer amniotic allograft derived from a prescreened mother with a planned delivery. Dual layer Impax Membrane is manufactured in compliance with FDA regulations. The membrane is minimally processed to preserve the native structure of the tissue, dehydrated, and terminally sterilized. Dual Layer Impax membrane is confirmed by the FDA Tissue Reference Group to meet the criteria for regulation solely under section 361 of the PHS Act as defined in 21 CFR Part 1271.[1]

***Hearing testimony***

William O'Malley proffered the appellant's position regarding coverage of the services at issue, which I considered in reaching my decision in this case. I also considered the UPIC's written position statement.

***Analysis***

I reviewed the Medicare coverage criteria for dual layer Impax membrane wound cover, established in accordance with the statutory and regulatory provisions of Part B of Title XVIII of the Act. For the reasons set forth below, I find the appellant did not meet the payment criteria for same.

At the outset, I am not persuaded by the QIC's finding that the Impax Membrane at issue is experimental and investigational as denoted by the Q code status nomenclature. Specifically, Medicare indicates that Q codes are established to identify drugs, biologicals, and medical equipment or services not identified by national HCPCS level II codes, but for which codes are needed for Medicare claims processing.[2]

Medicare is a defined benefit program, which means that it does not cover all available medical services and supplies.[3] Instead, Medicare coverage is limited to those medical services and supplies identified by Congress, by the Secretary of Health and Human Services, and by CMS in implementing Congressional directives. For example, Medicare does not cover medical services that are experimental or investigational. I note there is no Local or National Coverage Determination for the service at issue.

---

[1] https://legacymedicalconsultants.com/products/impax-amniotic-allograft/ (last visited on December 16, 2025).
[2] *See* https://www.cms.gov/medicare/coding/medhcpcsgeninfo/downloads/2018-11-30-hcpcs-level2-coding-procedure.pdf (last visited on October 27, 2025)
[3] In general, although MAC decisions have no precedential value, the decisions may serve as a guidepost to disposition of similar cases. 70 Fed. Reg. 11420, 11449 (Mar. 8, 2005). *See also Consultants in Pain Medicine, P.A.* (MAC December 2014); *see also* Medicare Program Integrity Manual, Publication 100-08, Chapter 13, §13.5.1.

***Reasonable and Necessary Analysis***

Historically, in making coverage determinations, the Centers for Medicare, and Medicaid Services (CMS) has interpreted the terms reasonable and necessary to require that the item or service in question is safe and effective and not experimental or investigational.[4] CMS has further determined that the relevant tests for applying these terms are whether the service has been proven safe and effective based on authoritative evidence, or, alternatively, whether the service is generally accepted in the medical community as safe and effective for the condition for which it is used. [5] However, acceptance by individual health care providers, or even a limited group of health care providers normally does not indicate general acceptance in the medical community.[6] Testimonials indicating such limited acceptance, and limited case studies distributed by sponsors with financial interest in the outcome, are not sufficient evidence of general acceptance by the medical community.[7] I must consider the broad range of available evidence and evaluate its quality before reaching a conclusion.[8] In addition, the device must be reasonable and necessary for the appellant's condition on the date(s) of service at issue.[9]

In this case, as in all Medicare appeals, the enrollee has the burden to establish that he is entitled to Medicare coverage. Historically, in making coverage determinations, CMS has interpreted the terms reasonable and necessary to require that the item or service in question is safe and effective and not experimental or investigational.[10] CMS has further determined that the relevant tests for applying these terms are whether the service has been proven safe and effective based on authoritative evidence, or, alternatively, whether the service is generally accepted in the medical community as safe and effective for the condition for which it is used. [11]

***FDA Approval/Clearance***

At the outset, I find the dual layer Impax membrane wound cover at issue is FDA approved. Nevertheless, I find that FDA clearance is not synonymous with Medicare coverage.[12] Furthermore, I am not persuaded by the appellant's argument, which is not corroborated by the evidence before me, that Dual Layer Impax membrane was confirmed by the FDA Tissue Reference Group to meet the criteria for regulation solely under section 361 of the PHS Act as defined in 21 CFR Part 1271. The regulations state "CMS *may consider* for Medicare coverage" FDA approved devices or services "that have been categorized as non-experimental/investigational."[13] The regulations further clarify that CMS uses FDA

[4] *Total Pain Care, PA* (MAC February 2015); *see also, In the Case of Vision Quest Industries, Inc.*, (MAC June 2012).
[5] *Id. See also* 54 Fed. Reg. 4304 (Jan. 30, 1989); 60 Fed. Reg. 48417 (Sept. 19, 1995); Medicare Program Integrity Manual (MPIM), Pub.100-08, Chapter 13, §13.5.1.
[6] *See* §13.7.1 MPIM.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Total Pain Care, PA* (MAC February 2015).
[11] Id. *See also* 54 Fed. Reg. 4304 (Jan. 30, 1989); 60 Fed. Reg. 48417 (Sept. 19, 1995); 68 Fed. Reg. 63693 states "if no NCD or LCD is in place, contractors may make individual claim determinations, including whether a particular DME meets the statutory requirement of being "reasonable and necessary;" *See also* the Medicare Program Integrity Manual (MPIM), Pub.100-08, Chapter 13, §13.5.1.
[12] *In the Case of Vision Quest Industries, Inc.*, (MAC June 2012).
[13] *See* 42 C.F.R. §405.201(a)(2).

categorization *"as a factor"* in making coverage decisions.[14] Thus, under Medicare regulations, the fact that the dual layer Impax membrane wound cover may be deemed non-experimental by virtue of its FDA classification means, as a threshold matter, only that it is eligible to be considered for Medicare coverage.[15]

This conclusion is further reinforced by the statements published by CMS and the FDA in the Federal Register explaining the difference between CMS review of a medical device as compared to reviews conducted by the FDA for pre-market approval.[16] Specifically, each process operates under different statutory standards and asks different questions to meet its respective mandates. [17] Moreover, CMS serves a different function by providing health insurance to protect the Nation's aged and disabled. CMS makes determinations regarding the coverage of specific items and services.[18] In short, CMS must decide: "what items and services it can and should pay for; how it should accomplish the payment; and how much to pay."[19] Thus, FDA clearance of an item or service does not preclude CMS or its contractors, in analyzing whether a particular item or service is medically reasonable and necessary, from making an independent inquiry into whether the item or service is safe and effective and not experimental or investigational.[20] Nor does it preclude CMS or its contractors from inquiring whether the item or service is supported by *"[p]ublished authoritative evidence derived from definitive randomized clinical trials or other definitive studies."*[21]

Therefore, although the dual layer Impax membrane wound cover received FDA approval or clearance, I find that such FDA approval/clearance alone does not generally entitle a service to Medicare coverage. Accordingly, I find that FDA clearance for the dual layer Impax membrane wound cover, by itself, does not establish that the service meets Medicare coverage requirements, i.e., that it has been shown to be a medically reasonable and necessary treatment of the enrollee's medical condition.

***Peer Review Literature***

In support of coverage for the dual layer Impax membrane wound cover, the appellant submitted multiple articles. (File 5) However, I find the weight of the medical literature does not support the appellant's position. I considered, but I am not persuaded by, the materials submitted for review. In deciding whether the dual layer Impax membrane wound cover was reasonable and necessary, i.e., safe, and effective, and not experimental or investigational, only evidence that was in existence on or before the date of service at issue is relevant and the beneficiary must prove that the dual layer Impax membrane wound cover is medically reasonable and necessary.

Based on my review of the studies submitted by the appellant, I find they are insufficient to support a finding the dual layer Impax membrane wound cover is safe and effective for treatment of patients with the appellant's condition. Consequently, I find the evidence does not support a

---

[14] *See* 42 C.F.R. §405.201(a)(1).
[15] *In the Case of Vision Quest Industries, Inc.*, (MAC June 2012).
[16] *See* 68 Fed. Reg. 55634 (Sept. 26, 2003); *See also* 75 Fed. Reg. 57045.
[17] Id; *See also* MPIM, Publication 100-08, Chapter 13, §5.1.
[18] See Act §1862(a) (1.
[19] *In the Case of Vision Quest Industries, Inc.*, (MAC June 2012).
[20] *Id.*
[21] *Consultants in Pain Medicine, P.A.* (December 2014); *In the Case of Vision Quest Industries, Inc.*, (MAC June 2012).

finding that the dual layer Impax membrane wound cover was generally accepted in the medical community and was, therefore, medically reasonable, and necessary.

I must emphasize that I am sympathetic to the beneficiary's position and certainly understand the gravity of her wound. Moreover, I do not question her physician's judgment in prescribing the dual layer Impax membrane wound cover, her desire to undergo the treatment, or the possibility that it may yield some benefit to her. However, I am bound by the statutes and the implementing regulations of the Medicare program. Accordingly, based on the above analysis, I find the dual layer Impax membrane wound cover was not reasonable and necessary as established through the appellant's medical records, and that such services were excluded under §1862(a)(1) of the Act. Consequently, I find that HCPCS code 15271 was also not covered, as services related to a non-covered service.

***Liability §1879***

Since I determined the services at issue were not reasonable and necessary, I must consider whether Medicare payment may be made under the limitation of liability provisions of §1879 of the Act. The beneficiary did not know and could not reasonably be expected to know the services at issue would not be covered under Medicare. There is no Advanced Beneficiary Notice in the file and the appellant accepted assignment in this matter. Consequently, the liability of the beneficiary is waived pursuant to §1879 of the Act.

The appellant, however, is considered to have acquired knowledge that such services were excluded from Medicare coverage by its receipt of manuals, bulletins, and written guidelines from the carrier.[22] Because the appellant knew or reasonably should have known services at issue were not covered by Medicare, the waiver of liability provisions of §1879 of the Act cannot be applied to absolve the appellant of liability.

***Liability under §1870***

Additionally, after careful consideration of the record, and for the reasons set forth below, I find that the appellant is not entitled to waiver of the assessed overpayment. In order to determine whether the appellant is entitled to waiver, I must in turn determine whether the appellant was "without fault" as defined in 1870(b) of the Act. I find that there is insufficient evidence to support a finding that the appellant was "without fault." Initially, I note that there is insufficient evidence to support a finding that the appellant suffered from any relevant linguistic, educational, physical or mental limitations, or limitations due to age or intelligence. *See* 20 CFR §404.507 (setting forth the criteria used to determine whether an individual or other person is "without fault")

I further find that the overpayment at issue resulted from the appellant's failure to furnish information which it knew or should have known to be material. *See* 20 CFR §404.507. *See also* the Medicare Financial Management Manual, Publication 100-06, Ch. 3, §90.1F. The appellant failed to provide the requisite records to establish that the services at issue were reasonable and necessary. Accordingly, I find that the appellant is not "without fault" and is therefore not entitled to waiver of the assessed overpayment.

## CONCLUSIONS OF LAW

The appellant did not establish by a preponderance of the evidence that the services furnished to

[22] *See* 42 C.F.R. § 411.406.

the beneficiary on the date of service at issue were covered under 1861(s)(6) of the Act and were not otherwise excluded under §1862(a)(1) of the Act. Liability of the beneficiary, however, is waived pursuant to §1879 of the Act. Additionally, an overpayment occurred within the meaning of Section 1870 of Title XVIII of the Act for the services at issue. The appellant is not "without fault" and is therefore not entitled to waiver of the overpayment with respect to services provided to the beneficiary. Accordingly, consistent herewith, the appellant is liable for non-covered services and any outstanding overpayment amount(s).

## ORDER

For the reasons discussed above, this decision is **UNFAVORABLE**. I direct the Medicare Administrative Contractor to process the claims in accordance with this decision. The appellant remains liable for the non-covered services and any resulting overpayment amount(s).

**SO ORDERED**

Jane Van Duzer

Jane Van Duzer
Administrative Law Judge

DEPARTMENT OF HEALTH AND HUMAN SERVICES (DHHS) / DEPARTMENTAL APPEALS BOARD Form DAB-101 (12/19)

**REQUEST FOR REVIEW OF ADMINISTRATIVE LAW JUDGE (ALJ) MEDICARE DECISION / DISMISSAL**

| | |
|---|---|
| 1. APPELLANT (the party requesting review) | 2. ALJ APPEAL NUMBER (on the decision or dismissal) |
| 3. BENEFICIARY* | 4. MEDICARE NUMBER (Health Insurance Claim Number (HICN) or Medicare Beneficiary Identifier (MBI))* |

*If the request involves multiple claims or multiple beneficiaries, attach a list of beneficiaries, Medicare numbers, and any other information to identify all claims being appealed.

| | |
|---|---|
| 5. PROVIDER, PRACTITIONER, OR SUPPLIER | 6. SPECIFIC ITEM(S) OR SERVICE(S) |

7. Medicare claim type: ☐ Part A ☐ Part B ☐ Part C - Medicare Advantage
☐ Part D - Medicare Prescription Drug Plan ☐ Entitlement/enrollment for Part A or Part B

8. Does this request involve authorization for an item or service that has not yet been furnished?
☐ Yes If Yes, skip to Block 9.
☐ No If No, Specific Dates of Service:

9. If the request involves authorization for a prescription drug under Medicare Part D, would application of the standard appellate timeframe seriously jeopardize the beneficiary's life, health, or ability to regain maximum function (as documented by a physician) such that expedited review is appropriate? ☐ Yes ☐ No

I request that the Medicare Appeals Council review the ALJ's ☐ decision or ☐ dismissal order [check one] dated____________________. I disagree with the ALJ's action because (specify the parts of the ALJ's decision or dismissal you disagree with and why you think the ALJ was wrong):

________________________________________

________________________________________

________________________________________

(Attach additional sheets if you need more space)

**PLEASE ATTACH A COPY OF THE ALJ DECISION OR DISMISSAL ORDER YOU ARE APPEALING.**

| | | | | | |
|---|---|---|---|---|---|
| DATE | | | DATE | | |
| APPELLANT'S NAME (the party requesting review) | | | REPRESENTATIVE'S NAME (include signed appointment of representative if not already submitted) | | |
| ADDRESS | | | ADDRESS | | |
| CITY, STATE, ZIP CODE | | | CITY, STATE, ZIP CODE | | |
| TELEPHONE NUMBER | FAX NUMBER | E-MAIL | TELEPHONE NUMBER | FAX NUMBER | E-MAIL |

(SEE FURTHER INSTRUCTIONS ON PAGE 2)

If you have additional evidence, submit it with this request for review. If you need more time, you must request an extension of time in writing now, explaining why you are unable to submit the evidence or legal argument now.

*If you are a provider, supplier, or a beneficiary represented by a provider or supplier, and your case was reconsidered by a Qualified Independent Contractor (QIC), the Medicare Appeals Council will not consider new evidence related to issues the QIC has already considered unless you show that you have a good reason for submitting it for the first time to the Medicare Appeals Council.*

**IMPORTANT: Include the HICN or MBI and ALJ Appeal Number on any letter or other material you submit.**

This request must be received within 60 calendar days after you receive the ALJ's decision or dismissal, unless we extend the time limit for good cause. We assume you received the decision or dismissal 5 calendar days after it was issued, unless you show you received it later. If this request will not be received within 65 calendar days from the date on the decision or dismissal order, please explain why on a separate sheet.

---

You must file your request for review in writing with the Medicare Appeals Council at:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

You may send the request for review by U.S. Mail, a common carrier such as FedEx, or by fax to (202) 565-0227. If you send a fax, please do not also mail a copy. ***<u>You must send a copy of your appeal to the other parties and indicate that all parties, to include all beneficiaries, have been copied on the request for review.</u> For claims involving multiple beneficiaries, you may submit a copy of the cover letters issued or a spreadsheet of the beneficiaries and addresses who received a copy of the request for review.***

If you have any questions about your request for review or wish to request expedited review of a claim involving authorization of your prescription drug under Medicare Part D, you may call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100. You may also visit our web site at www.hhs.gov/dab for additional information on how to file your request for review.

---

## PRIVACY ACT STATEMENT

The collection of information on this form is authorized by the Social Security Act (section 205(a) of title II, section 702 of title VII, section 1155 of Title XI, and sections 1852(g)(5), 1869(b)(1), 1871, 1872, and 1876(c)(5)(B) of title XVIII, as appropriate). The information provided will be used to further document your claim. Information requested on this form is voluntary, but failure to provide all or any part of the requested information may affect the determination of your claim. Information you furnish on this form may be disclosed by the Department of Health and Human Services or the Social Security Administration to another person or governmental agency only with respect to programs under the Social Security Act and to comply with Federal laws requiring the disclosure of information or the exchange of information between the Department of Health and Human Services, the Social Security Administration, or other agencies.

Department of Health and Human Services
OFFICE OF MEDICARE HEARINGS AND APPEALS
Miami, FL

| | |
|---|---|
| Appeal of: BRIAN G. LODER DPM PLC | OMHA Appeal No.: 3-15259990039 |
| Beneficiary: [redacted] | Medicare Part: B |
| Medicare No.: | Before: Jane Van Duzer, Administrative Law Judge |

Index of the Administrative Record and Exhibit List

| Exhibit Record | Administrative File Reference: File Name | Page Range |
|---|---|---|
| Medical & Related: With Reconsideration Request | File 6 | 15 : 188 |
| Position Statements: UPIC | File 15 | 1 : 5 |
| Procedural - CMS Levels: Reconsideration: Decision | File 3 | 1 : 18 |
| Procedural - CMS Levels: Request for Redetermination Pckg: w/ Redt Dec | File 4 | 1 : 44 |
| Procedural - CMS Levels: Request for Reconsideration Pckg | File 6 | 1 : 14 |
| Procedural - CMS Levels: Claim information | File 7 | 2550 : 2557 |
| Procedural - OMHA Level: Request for ALJ Hearing: w/ AOR | File 1 | 1 : 18 |
| Procedural - OMHA Level: Response to NOH: Rescheduling Racuest | File 10 | 1 : 4 |
| Procedural - OMHA Level: Notice of Second Amended Hearing | File 11 | 1 : 10 |
| Procedural - OMHA Level: Notice of Hearing | File 12 | 1 : 10 |
| Procedural - OMHA Level: Response to NOH: Rescheduling Request | File 13 | 1 : 4 |
| Procedural - OMHA Level: Amended Notice of Hearing | File 14 | 1 : 10 |
| Procedural - OMHA Level: Notice of Hearing | File 16 | 1 : 10 |
| Procedural - OMHA Level: Notice of Hearing | File 18 | 1 : 16 |
| Procedural - OMHA Level: Notice of Hearing | File 19 | 1 : 16 |
| Procedural - OMHA Level: Response to Notice of Hrg | File 20 | 1 : 4 |
| Procedural - OMHA Level: Response to NOH: NOI - NPW - CoventBridge | File 8 | 1 : 3 |
| Procedural - OMHA Level: Response to NOH: CoventBridge - NPW | File 9 | 1 : 3 |
| Proceeding (Audios): Hearing audio | File 17 | 1 : 1 |

| Non-Exhibit Record | Administrative File Reference: File Name | Page Range |
|---|---|---|
| Records not considered: General: QIC Acknowledgement Letter | File 2 | 1 : 3 |
| Records not considered: General: Redt | File 5 | 1 : 1 |

Index of the Administrative Record and Exhibit List

| | | | |
|---|---|---|---|
| Records not considered: Duplicates | File 6 | 1 | 14 |
| Records not considered: Duplicate MR: w/ ADR | File 7 | 1075 | 2455 |
| Records not considered: Beneficiary not at issue: ADR | File 7 | 2558 | 4181 |

Department of Health and Human Services
Office of the Secretary

**OFFICE OF MEDICARE HEARINGS AND APPEALS**

Miami Field Office
Claude Pepper Federal Building
51 SW 1st Avenue, Suite 1400A
Miami, FL 33130-1608
(786) 792-3700
(786) 792-3797 (Direct)
(305) 536-5050 (Fax)
(866) 622-0382 (Toll Free)

December 18, 2025

BRIAN G. LODER DPM PLC
ATTN: WILLIAM O'MALLEY
60 PUBLIC SQ STE 602
WILKES-BARRE, PA 18701

**NOTICE OF DECISION**

Appellant: BRIAN G. LODER DPM PLC
OMHA Appeal Number: **3-15259990047**

Enclosed is the decision for the above case. This decision is based on the administrative record, including any evidence or testimony presented at the hearing, if one was held. The decision is not precedential, does not release the appellant from civil or criminal liability, and may be reopened at any time if it was procured by fraud or similar fault. In addition, the decision may be reopened within 180 calendar days from the date of the decision for good cause. Good cause exists when there is new and material evidence that was not available or known at the time of the decision and may result in a different conclusion, or when the evidence that was considered clearly shows on its face that an obvious error was made at the time of the decision.

**What if I disagree with the decision?**

If you disagree with the decision, you may file an appeal with the Medicare Appeals Council. Other parties may also appeal the decision. In addition, the Medicare Appeals Council may decide to review the decision on its own motion. If no party appeals the decision and the Medicare Appeals Council does not review the decision, the decision is binding on all parties and you and the other parties will not have the right to ask a federal court to review the decision.

If you are not already represented, you may appoint an attorney or other person to represent you.

**How much time do I have to file an appeal?**

The Medicare Appeals Council must receive your written appeal **within 60 calendar days** of the date that you receive this notice. The Medicare Appeals Council assumes you received this notice 5 calendar days after the date of the notice unless you show that you did not receive it within the 5-day period.

The Medicare Appeals Council will dismiss a late request for review unless you show that you had a good reason for not filing it on time.

**How do I file an appeal?**

To appeal, you must ask the Medicare Appeals Council to review the decision. Your appeal must be in writing, except that a request for expedited review of a Part D decision may be made orally as described below. Your appeal must identify the parts of the decision that you disagree with, and explain why you disagree.

You may submit a written request for review to the Medicare Appeals Council using one of three available methods: mail, fax, or electronic filing (E-File). **Please do not submit your request for review using more than one method**. Regardless of how you file your appeal, **you must always send a copy of your written request for review to the other parties who received a copy of the decision.**

If you are filing a written request for review, you may use the enclosed *Request for Review* (Form DAB-101), or you may write a letter containing the following:

- The beneficiary's/enrollee's name (and telephone number for Part D appeals);
- The beneficiary's/enrollee's Medicare number (Health Insurance Claim Number or Medicare Beneficiary Identifier);
- The item(s), service(s), or specific Part D drug(s) in dispute;
- The specific date(s) the item(s) or service(s) were provided, if applicable;
- For Part D appeals, the plan name;
- For Part D appeals, the OMHA Appeal Number on the adjudicator's decision;
- For Part D appeals requesting expedited review, a statement that you are requesting expedited review;
- The date of the adjudicator's decision (not required for Part D appeals); and
- Your name and signature, and, if applicable, the name and signature of your representative.

**Filing by mail:**

Mail your appeal and a copy of the enclosed decision to:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644

Department of Health and Human Services
OFFICE OF MEDICARE HEARINGS AND APPEALS
Miami, FL

| | |
|---|---|
| Appeal of: **BRIAN G. LODER DPM PLC** | OMHA Appeal No.: **3-15259990047** |
| Beneficiary: [redacted] | Medicare Part: B |
| Medicare No.: [redacted] | Before: **Jane Van Duzer** Administrative Law Judge |

## DECISION

After considering the evidence and arguments presented in the record, I enter an **UNFAVORABLE** decision. The appellant remains liable for the non-covered services and any outstanding overpayment amount.

## PROCEDURAL HISTORY

The appellant, Brian G. Loder DPM, PLC., initially received Medicare reimbursement for Dual Layer Impax Membrane (HCPCS code Q4262), and (HCPCS codes15271) furnished to K.S., a Medicare beneficiary on October 17, 2023. Then, on December 10, 2024, WPS, a Medicare Administrative Contractor (MAC), issued an unfavorable decision. (File 4, pp. 8-13) Thereafter, the MAC issued a letter informing the appellant it had received Medicare reimbursement in error, resulting in an overpayment. Subsequently, on May 21, 2025, C2C Innovative Solutions, Inc., the Qualified Independent Contractor (QIC) upheld the denial of coverage. (File 2) Specifically, the QIC found that dual layer Impax membrane was experimental and investigational as denoted by the Q code status nomenclature (File 2, p. 5) The QIC further found that HCPCS code 15271 was also not covered. (Id.) Thereafter, on July 22, 2025, the Office of Medicare Hearings and Appeals received the appellant's timely request for a hearing by an Administrative Law Judge. (File 1) The amount in controversy satisfies the jurisdictional requirement for a hearing pursuant to Title XVIII of the Social Security Act, (the Act) §1869(b)(1)(E). A telephonic hearing took place on November 4, 2025. William O'Malley testified, under oath, on behalf of the appellant. I received the beneficiary's file into evidence with exhibited record files 1-20, which includes the hearing audio recording and the UPIC's written position statement.

## ISSUE(S)

Is the appellant entitled to Medicare reimbursement under Part B of Title XVIII of the Act for the services at issue, provided to the beneficiary on the date of service at issue? In other words, are the services within a covered category under §1861(t) of the Act, and if so, are such services not otherwise excluded from coverage under §1862(a)(1) of the Act?

If payment for the services at issue is denied, can Medicare payment nonetheless be made under the limitations of liability provisions of §1879 of the Act. Additionally, if an overpayment exists, the next issue is whether the appellant is entitled to a waiver, under §1870 of the Act, of the carrier's assessed overpayment. Specifically, was the appellant "without fault", as defined under §1870 of the Act, in accepting the improper Medicare payments which are the subject of the carrier's overpayment audit.

## APPLICABLE LAW AND POLICY

**Principles of Law**

1. ***Statutes and Regulations***

Title XVIII of the Social Security Act (the Act) §1831 established the Supplemental Medical Insurance Program for the aged and disabled under Part B.

The scope of benefits that are provided to beneficiaries under the Medicare Part B insurance program are set forth in § 1832 of the Act. An individual is entitled to have payment made on his/her behalf for medical and other health services furnished by a provider of services or by others under arrangement with them made by a provider of services. *See* Act §1832(a)(2)(B); *see also* 42 C.F.R. § 410.3.

No payment shall be made to any provider of services unless there has been furnished such information as may be necessary to determine the amounts due such provider. *See* Act § 1833(e); *see also* 42 C.F.R. § 424.5(a)(6).

Payment for services rendered under Part B of the Medicare laws may be made only to providers of services which are eligible under section 1866(a), which outlines the requirement of agreements with providers of service and the enrollment process. Under this section, payment may only be made if the physician appropriately certifies and recertifies, when applicable, that the services provided were medically required. *See* Act § 1835.

The term "medical and other health services" specifically includes "services and supplies (including drugs and biologicals which are not usually self-administered by the patient) furnished as an incident to a physician's professional service, of kinds which are commonly furnished in physicians' offices and are commonly either rendered without charge or included in the physicians' bills (or would have been so included but for the application of section §1847B. *See* Act § 1861(s)(2)(A); *see also* 42 C.F.R. §§ 410.10(b); 410.27 and 410.26(a)(7).

The term 'drugs' and the term 'biologicals', except for purposes of subsection (m)(5) and paragraph (2), include only such drugs (including contrast agents) and biologicals, respectively, as are included (or approved for inclusion) in the United States Pharmacopoeia, the National Formulary, or the United States Homeopathic Pharmacopoeia, or in New Drugs or Accepted Dental Remedies (except for any drugs and biologicals unfavorably evaluated therein), or as are approved by the pharmacy and drug therapeutics committee (or equivalent committee) of the medical staff of the hospital furnishing such drugs and biologicals for use in such hospital. *See* Act § 1861(t)(1); *see also* 42 C.F.R. § 410.29.

Notwithstanding any other provision of the Act, no payment may be made under Part A or Part B for any expenses incurred for items or services, which . . . are not reasonable and necessary for

the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member. *See* Act § 1862(a)(1)(A); *see also* 42 C.F.R. § 411.15(k)(1).

A waiver of an overpayment adjustment or recovery of an incorrect payment may be made to a provider who is "without fault." *See* Act § 1870(b); *see also* 42 C.F.R. §§405.350(a)(2); §405.351; and 405.355.

Section 1879 of the Act limits the liability of the beneficiary and providers of services if the services are found to be not medially reasonable and necessary under §1862(a)(1)(A) or care was custodial in nature under §1862(a)(1)(9). Payment will only be made pursuant to this section if neither the beneficiary nor the provider knew or could reasonably have been expected to know that the services were not covered. *See also* 42 C.F.R. §§ 411.404; 411.406.

2. ***Policy and Guidance***

Unless promulgated as a regulation by CMS, no rule, requirement, or statement of policy, other than a National Coverage Determination (NCD), can establish or change a substantive legal standard governing the scope of benefits or payment for services under the Medicare program. However, in lieu of binding regulations with the full force and effect of law, CMS and its contractors have issued policy guidance that describe criteria for coverage of selected types of medical items and services in the form of manuals and local medical review policies (LMRPs) or local coverage determinations (LCDs). *See* Act § 1871(a)(2). The undersigned notes that there is no applicable Local Coverage Determination.

National Coverage Determinations are binding upon Administrative Law Judges. *See* Act § 1869(f)(1); *see also* 42 C.F.R. § 405.1060. The undersigned notes that there is no applicable National Coverage Determination. Administrative Law Judges will give substantial deference to local coverage determinations (LCDs), local medical review policies (LMRPs), or CMS program guidance when applicable, and if they do not follow the policy they must explain why in their decision. *See* Act §1869(f)(2); *see also* 42 C.F.R. § 405.1062.
I also gave substantial deference to the manuals implementing the Medicare program, which are of persuasive importance, instructive and influential. Relevant to this case is the Medicare Benefit Policy Manual, Publication 100-2, Chapter 15, Covered and Other Health Services, §30 Physician Services; §50 Drugs and Biologicals; §50.1 Definition of Drugs and Biologicals; §50.2 Determining Self Administration of Drugs and Biologicals; §50.3 Incident to Requirements; §50.4.1 Approved Use of Drug and the Medicare Claims Processing Manual, Publication 100-4, Chapters 4, 17, and Chapter 30, Financial Liability Protections. *See also* C.F.R. §405.1062.

**FINDINGS OF FACT AND ANALYSIS**

***Facts***

The appellant submitted medical records pre-dating the date of service at issue, which I did not consider. (File 4) On October 17, 2023, Brian Loder DPM treated the beneficiary due to a chief complaint of non-pressure chronic ulcer of the right ankle and fat layer exposed. (File 4, p. 15) Dr. Loder documented the beneficiary presented for a follow-up of non-pressure chronic ulcer of the right ankle and fat layer exposed. (Id.) The beneficiary reported her wounds were improving and she had just one remaining wound that was getting smaller, was less painful, and the drainage and odor was controlled. (Id.)

On examination, the beneficiary presented with an ulcer to the right medial ankle, which measured 3cm x 4.5cm. (File 4, p. 16) The ulcer base was healthy/granular, and it exuded a small

amount of serous exudate without infection. (Id.) The beneficiary was diagnosed with a non-pressure chronic ulcer of the right ankle with fat layer exposed. (File 4, p. 17) The beneficiary's wound was cleansed and debrided. (Id.) Thereafter, Impax Amniotic Membrane (HCPCS code Q462) 4 x 4 cm was surgically applied to the wound on the beneficiary's medial right ankle wound. (Id.) It was documented that based on the wound's geography and measurements, the wound required 13 units of application and 3 units of waste. (Id.) The lot number used was 23j1686-013 with an expiration date of September 22, 2026. (Id.)

The Legacy Medical Consultants label for Impax Amniotic Allograft states in pertinent part as follows:

A sterile, dual layer amniotic allograft derived from a prescreened mother with a planned delivery. Dual layer Impax Membrane is manufactured in compliance with FDA regulations. The membrane is minimally processed to preserve the native structure of the tissue, dehydrated, and terminally sterilized. Dual Layer Impax membrane is confirmed by the FDA Tissue Reference Group to meet the criteria for regulation solely under section 361 of the PHS Act as defined in 21 CFR Part 1271.[1]

***Hearing testimony***

William O'Malley proffered the appellant's position regarding coverage of the services at issue, which I considered in reaching my decision in this case. I also considered the UPIC's written position statement.

***Analysis***

I reviewed the Medicare coverage criteria for dual layer Impax membrane wound cover, established in accordance with the statutory and regulatory provisions of Part B of Title XVIII of the Act. For the reasons set forth below, I find the appellant did not meet the payment criteria for same.

At the outset, I am not persuaded by the QIC's finding that the Impax Membrane at issue is experimental and investigational as denoted by the Q code status nomenclature. Specifically, Medicare indicates that Q codes are established to identify drugs, biologicals, and medical equipment or services not identified by national HCPCS level II codes, but for which codes are needed for Medicare claims processing.[2]

Medicare is a defined benefit program, which means that it does not cover all available medical services and supplies.[3] Instead, Medicare coverage is limited to those medical services and supplies identified by Congress, by the Secretary of Health and Human Services, and by CMS in implementing Congressional directives. For example, Medicare does not cover medical services that are experimental or investigational. I note there is no Local or National Coverage Determination for the service at issue.

***Reasonable and Necessary Analysis***

---

[1] https://legacymedicalconsultants.com/products/impax-amniotic-allograft/ (last visited on December 16, 2025).

[2] *See* https://www.cms.gov/medicare/coding/medhcpcsgeninfo/downloads/2018-11-30-hcpcs-level2-coding-procedure.pdf (last visited on October 27, 2025)

[3] In general, although MAC decisions have no precedential value, the decisions may serve as a guidepost to disposition of similar cases. 70 Fed. Reg. 11420, 11449 (Mar. 8, 2005). *See also Consultants in Pain Medicine, P.A.* (MAC December 2014); *see also* Medicare Program Integrity Manual, Publication 100-08, Chapter 13, §13.5.1.

Historically, in making coverage determinations, the Centers for Medicare, and Medicaid Services (CMS) has interpreted the terms reasonable and necessary to require that the item or service in question is safe and effective and not experimental or investigational.[4] CMS has further determined that the relevant tests for applying these terms are whether the service has been proven safe and effective based on authoritative evidence, or, alternatively, whether the service is generally accepted in the medical community as safe and effective for the condition for which it is used. [5] However, acceptance by individual health care providers, or even a limited group of health care providers normally does not indicate general acceptance in the medical community.[6] Testimonials indicating such limited acceptance, and limited case studies distributed by sponsors with financial interest in the outcome, are not sufficient evidence of general acceptance by the medical community.[7] I must consider the broad range of available evidence and evaluate its quality before reaching a conclusion.[8] In addition, the device must be reasonable and necessary for the appellant's condition on the date(s) of service at issue.[9]

In this case, as in all Medicare appeals, the enrollee has the burden to establish that he is entitled to Medicare coverage. Historically, in making coverage determinations, CMS has interpreted the terms reasonable and necessary to require that the item or service in question is safe and effective and not experimental or investigational.[10] CMS has further determined that the relevant tests for applying these terms are whether the service has been proven safe and effective based on authoritative evidence, or, alternatively, whether the service is generally accepted in the medical community as safe and effective for the condition for which it is used. [11]

***FDA Approval/Clearance***

At the outset, I find the dual layer Impax membrane wound cover at issue is FDA approved. Nevertheless, I find that FDA clearance is not synonymous with Medicare coverage.[12] Furthermore, I am not persuaded by the appellant's argument, which is not corroborated by the evidence before me, that Dual Layer Impax membrane was confirmed by the FDA Tissue Reference Group to meet the criteria for regulation solely under section 361 of the PHS Act as defined in 21 CFR Part 1271. The regulations state "CMS *may consider* for Medicare coverage" FDA approved devices or services "that have been categorized as non-experimental/investigational."[13] The regulations further clarify that CMS uses FDA categorization "*as a factor*" in making coverage decisions. [14] Thus, under Medicare regulations,

[4] *Total Pain Care, PA* (MAC February 2015); *see also, In the Case of Vision Quest Industries, Inc.*, (MAC June 2012).
[5] *Id. See also* 54 Fed. Reg. 4304 (Jan. 30, 1989); 60 Fed. Reg. 48417 (Sept. 19, 1995); Medicare Program Integrity Manual (MPIM), Pub.100-08, Chapter 13, §13.5.1.
[6] *See* §13.7.1 MPIM.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Total Pain Care, PA* (MAC February 2015).
[11] Id. *See also* 54 Fed. Reg. 4304 (Jan. 30, 1989); 60 Fed. Reg. 48417 (Sept. 19, 1995); 68 Fed. Reg. 63693 states "if no NCD or LCD is in place, contractors may make individual claim determinations, including whether a particular DME meets the statutory requirement of being "reasonable and necessary;" *See also* the Medicare Program Integrity Manual (MPIM), Pub.100-08, Chapter 13, §13.5.1.
[12] *In the Case of Vision Quest Industries, Inc.*, (MAC June 2012).
[13] *See* 42 C.F.R. §405.201(a)(2).
[14] *See* 42 C.F.R. §405.201(a)(1).

the fact that the dual layer Impax membrane wound cover may be deemed non-experimental by virtue of its FDA classification means, as a threshold matter, only that it is eligible to be considered for Medicare coverage.[15]

This conclusion is further reinforced by the statements published by CMS and the FDA in the Federal Register explaining the difference between CMS review of a medical device as compared to reviews conducted by the FDA for pre-market approval.[16] Specifically, each process operates under different statutory standards and asks different questions to meet its respective mandates. [17] Moreover, CMS serves a different function by providing health insurance to protect the Nation's aged and disabled. CMS makes determinations regarding the coverage of specific items and services.[18] In short, CMS must decide: "what items and services it can and should pay for; how it should accomplish the payment; and how much to pay."[19] Thus, FDA clearance of an item or service does not preclude CMS or its contractors, in analyzing whether a particular item or service is medically reasonable and necessary, from making an independent inquiry into whether the item or service is safe and effective and not experimental or investigational.[20] Nor does it preclude CMS or its contractors from inquiring whether the item or service is supported by *"[p]ublished authoritative evidence derived from definitive randomized clinical trials or other definitive studies."*[21]

Therefore, although the dual layer Impax membrane wound cover received FDA approval or clearance, I find that such FDA approval/clearance alone does not generally entitle a service to Medicare coverage. Accordingly, I find that FDA clearance for the dual layer Impax membrane wound cover, by itself, does not establish that the service meets Medicare coverage requirements, i.e., that it has been shown to be a medically reasonable and necessary treatment of the enrollee's medical condition.

***Peer Review Literature***

In support of coverage for the dual layer Impax membrane wound cover, the appellant submitted multiple articles. (File 4) However, I find the weight of the medical literature does not support the appellant's position. I considered, but I am not persuaded by, the materials submitted for review. In deciding whether the dual layer Impax membrane wound cover was reasonable and necessary, i.e., safe, and effective, and not experimental or investigational, only evidence that was in existence on or before the date of service at issue is relevant and the beneficiary must prove that the dual layer Impax membrane wound cover is medically reasonable and necessary.

Based on my review of the studies submitted by the appellant, I find they are insufficient to support a finding the dual layer Impax membrane wound cover is safe and effective for treatment of patients with the appellant's condition. Consequently, I find the evidence does not support a finding that the dual layer Impax membrane wound cover was generally accepted in the medical community and was, therefore, medically reasonable, and necessary.

---

[15] *In the Case of Vision Quest Industries, Inc.*, (MAC June 2012).
[16] See 68 Fed. Reg. 55634 (Sept. 26, 2003); *See also* 75 Fed. Ref. 57045.
[17] Id; *See also* MPIM, Publication 100-08, Chapter 13, §5.1.
[18] See Act §1862(a) (1.
[19] *In the Case of Vision Quest Industries, Inc.*, (MAC June 2012).
[20] *Id.*
[21] *Consultants in Pain Medicine, P.A.* (December 2014); *In the Case of Vision Quest Industries, Inc.*, (MAC June 2012).

I must emphasize that I am sympathetic to the beneficiary's position and certainly understand the gravity of her wound. Moreover, I do not question her physician's judgment in prescribing the dual layer Impax membrane wound cover, her desire to undergo the treatment, or the possibility that it may yield some benefit to her. However, I am bound by the statutes and the implementing regulations of the Medicare program. Accordingly, based on the above analysis, I find the dual layer Impax membrane wound cover was not reasonable and necessary as established through the appellant's medical records, and that such services were excluded under §1862(a)(1) of the Act. Consequently, I find that HCPCS code 15271 was also not covered, as services related to a non-covered service.

***Liability §1879***

Since I determined the services at issue were not reasonable and necessary, I must consider whether Medicare payment may be made under the limitation of liability provisions of §1879 of the Act. The beneficiary did not know and could not reasonably be expected to know the services at issue would not be covered under Medicare. There is no Advanced Beneficiary Notice in the file and the appellant accepted assignment in this matter. Consequently, the liability of the beneficiary is waived pursuant to §1879 of the Act.

The appellant, however, is considered to have acquired knowledge that such services were excluded from Medicare coverage by its receipt of manuals, bulletins, and written guidelines from the carrier.[22] Because the appellant knew or reasonably should have known services at issue were not covered by Medicare, the waiver of liability provisions of §1879 of the Act cannot be applied to absolve the appellant of liability.

***Liability under §1870***

Additionally, after careful consideration of the record, and for the reasons set forth below, I find that the appellant is not entitled to waiver of the assessed overpayment. In order to determine whether the appellant is entitled to waiver, I must in turn determine whether the appellant was "without fault" as defined in 1870(b) of the Act. I find that there is insufficient evidence to support a finding that the appellant was "without fault." Initially, I note that there is insufficient evidence to support a finding that the appellant suffered from any relevant linguistic, educational, physical or mental limitations, or limitations due to age or intelligence. *See* 20 CFR §404.507 (setting forth the criteria used to determine whether an individual or other person is "without fault")

I further find that the overpayment at issue resulted from the appellant's failure to furnish information which it knew or should have known to be material. *See* 20 CFR §404.507. *See also* the Medicare Financial Management Manual, Publication 100-06, Ch. 3, §90.1F. The appellant failed to provide the requisite records to establish that the services at issue were reasonable and necessary. Accordingly, I find that the appellant is not "without fault" and is therefore not entitled to waiver of the assessed overpayment.

## CONCLUSIONS OF LAW

The appellant did not establish by a preponderance of the evidence that the services furnished to the beneficiary on the date of service at issue were covered under 1861(s)(6) of the Act and were not otherwise excluded under §1862(a)(1) of the Act. Liability of the beneficiary, however, is waived pursuant to §1879 of the Act. Additionally, an overpayment occurred within the

[22] *See* 42 C.F.R. § 411.406.

meaning of Section 1870 of Title XVIII of the Act for the services at issue. The appellant is not "without fault" and is therefore not entitled to waiver of the overpayment with respect to services provided to the beneficiary. Accordingly, consistent herewith, the appellant is liable for non-covered services and any outstanding overpayment amount(s).

**ORDER**

For the reasons discussed above, this decision is **UNFAVORABLE**. I direct the Medicare Administrative Contractor to process the claims in accordance with this decision. The appellant remains liable for the non-covered services and any resulting overpayment amount(s).

**SO ORDERED**

Jane Van Duzer

Jane Van Duzer
Administrative Law Judge

DEPARTMENT OF HEALTH AND HUMAN SERVICES (DHHS) / DEPARTMENTAL APPEALS BOARD Form DAB-101 (12/19)

**REQUEST FOR REVIEW OF ADMINISTRATIVE LAW JUDGE (ALJ) MEDICARE DECISION / DISMISSAL**

| 1. APPELLANT (the party requesting review) | 2. ALJ APPEAL NUMBER (on the decision or dismissal) |
|---|---|
| 3. BENEFICIARY* | 4. MEDICARE NUMBER (Health Insurance Claim Number (HICN) or Medicare Beneficiary Identifier (MBI))* |

*If the request involves multiple claims or multiple beneficiaries, attach a list of beneficiaries, Medicare numbers, and any other information to identify all claims being appealed.

| 5. PROVIDER, PRACTITIONER, OR SUPPLIER | 6. SPECIFIC ITEM(S) OR SERVICE(S) |
|---|---|

7. Medicare claim type: ☐ Part A ☐ Part B ☐ Part C - Medicare Advantage ☐ Part D - Medicare Prescription Drug Plan ☐ Entitlement/enrollment for Part A or Part B

8. Does this request involve authorization for an item or service that has not yet been furnished?
☐ Yes If Yes, skip to Block 9.
☐ No If No, Specific Dates of Service:

9. If the request involves authorization for a prescription drug under Medicare Part D, would application of the standard appellate timeframe seriously jeopardize the beneficiary's life, health, or ability to regain maximum function (as documented by a physician) such that expedited review is appropriate? ☐ Yes ☐ No

I request that the Medicare Appeals Council review the ALJ's ☐ decision or ☐ dismissal order [check one] dated________________________. I disagree with the ALJ's action because (specify the parts of the ALJ's decision or dismissal you disagree with and why you think the ALJ was wrong):

________________________________________________________

________________________________________________________

________________________________________________________

(Attach additional sheets if you need more space)

**PLEASE ATTACH A COPY OF THE ALJ DECISION OR DISMISSAL ORDER YOU ARE APPEALING.**

| | | | | | |
|---|---|---|---|---|---|
| DATE | | | DATE | | |
| APPELLANT'S NAME (the party requesting review) | | | REPRESENTATIVE'S NAME (include signed appointment of representative if not already submitted) | | |
| ADDRESS | | | ADDRESS | | |
| CITY, STATE, ZIP CODE | | | CITY, STATE, ZIP CODE | | |
| TELEPHONE NUMBER | FAX NUMBER | E-MAIL | TELEPHONE NUMBER | FAX NUMBER | E-MAIL |

(SEE FURTHER INSTRUCTIONS ON PAGE 2)

Form DAB-101 (12/19)

If you have additional evidence, submit it with this request for review. If you need more time, you must request an extension of time in writing now, explaining why you are unable to submit the evidence or legal argument now.

*If you are a provider, supplier, or a beneficiary represented by a provider or supplier, and your case was reconsidered by a Qualified Independent Contractor (QIC), the Medicare Appeals Council will not consider new evidence related to issues the QIC has already considered unless you show that you have a good reason for submitting it for the first time to the Medicare Appeals Council.*

**IMPORTANT: Include the HICN or MBI and ALJ Appeal Number on any letter or other material you submit.**

This request must be received within 60 calendar days after you receive the ALJ's decision or dismissal, unless we extend the time limit for good cause. We assume you received the decision or dismissal 5 calendar days after it was issued, unless you show you received it later. If this request will not be received within 65 calendar days from the date on the decision or dismissal order, please explain why on a separate sheet.

---

You must file your request for review in writing with the Medicare Appeals Council at:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

You may send the request for review by U.S. Mail, a common carrier such as FedEx, or by fax to (202) 565-0227. If you send a fax, please do not also mail a copy. ***You must send a copy of your appeal to the other parties and indicate that all parties, to include all beneficiaries, have been copied on the request for review. For claims involving multiple beneficiaries, you may submit a copy of the cover letters issued or a spreadsheet of the beneficiaries and addresses who received a copy of the request for review.***

If you have any questions about your request for review or wish to request expedited review of a claim involving authorization of your prescription drug under Medicare Part D, you may call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100. You may also visit our web site at www.hhs.gov/dab for additional information on how to file your request for review.

## PRIVACY ACT STATEMENT

The collection of information on this form is authorized by the Social Security Act (section 205(a) of title II, section 702 of title VII, section 1155 of Title XI, and sections 1852(g)(5), 1869(b)(1), 1871, 1872, and 1876(c)(5)(B) of title XVIII, as appropriate). The information provided will be used to further document your claim. Information requested on this form is voluntary, but failure to provide all or any part of the requested information may affect the determination of your claim. Information you furnish on this form may be disclosed by the Department of Health and Human Services or the Social Security Administration to another person or governmental agency only with respect to programs under the Social Security Act and to comply with Federal laws requiring the disclosure of information or the exchange of information between the Department of Health and Human Services, the Social Security Administration, or other agencies.

Department of Health and Human Services
OFFICE OF MEDICARE HEARINGS AND APPEALS
Miami, FL

| | |
|---|---|
| Appeal of: BRIAN G. LODER DPM PLC | OMHA Appeal No.: 3-15259990047 |
| Beneficiary: [redacted] | Medicare Part: B |
| Medicare No.: [redacted] | Before: Jane Van Duzer<br>Administrative Law Judge |

Index of the Administrative Record and Exhibit List

**Exhibit Record** — **Administrative File Reference**

| Exhibit Record | File Name | Page Range | |
|---|---|---|---|
| Medical & Related: Medical Records: w/ Recon Pckg | File 4 | 15 | : 184 |
| Position Statements: UPIC | File 8 | 1 | : 5 |
| Procedural - CMS Levels: Reconsideration: Decision | File 2 | 1 | : 18 |
| Procedural - CMS Levels: Request for Reconsideration Pckg | File 4 | 1 | : 14 |
| Procedural - CMS Levels: Request for Redetermination Pckg: w/ Redt doc | File 5 | 1 | : 44 |
| Procedural - CMS Levels: Claim information: w/ ADR | File 7 | 2550 | : 2557 |
| Procedural - OMHA Level: Request for ALJ Hearing: w/ AOR | File 1 | 1 | : 18 |
| Procedural - OMHA Level: Response to Notice of Hearing: Rescheduling Request | File 11 | 1 | : 4 |
| Procedural - OMHA Level: Amended Notice of Hearing | File 12 | 1 | : 10 |
| Procedural - OMHA Level: Second Amended Notice of Hearing | File 13 | 1 | : 10 |
| Procedural - OMHA Level: Notice of Hearing | File 14 | 1 | : 10 |
| Procedural - OMHA Level: Notice of Hearing | File 15 | 1 | : 10 |
| Procedural - OMHA Level: Response to Notice of Hearing: NOI - CoventBridge | File 16 | 1 | : 3 |
| Procedural - OMHA Level: Response to Notice of Hearing: NOI - CoventBridge | File 17 | 1 | : 3 |
| Procedural - OMHA Level: Notice of Hearing | File 18 | 1 | : 16 |
| Procedural - OMHA Level: Notice of Hearing | File 19 | 1 | : 16 |
| Procedural - OMHA Level: Response to Notice of Hearing: Request to Reschedule | File 20 | 1 | : 4 |
| Procedural - OMHA Level: Response to Notice of Hearing : Rescheduling Request | File 9 | 1 | : 4 |
| Proceeding (Audios): Hearing audio | File 10 | 1 | : 1 |

**Non-Exhibit Record** — **Administrative File Reference**

| Non-Exhibit Record | File Name | Page Range | |
|---|---|---|---|
| Records not considered: General: QIC Acknowledgement Letter | File 3 | 1 | : 3 |
| Records not considered: General: Redt | File 6 | 1 | : 1 |

Index of the Administrative Record and Exhibit List

| | | | | |
|---|---|---|---|---|
| Records not considered: Beneficiary not at issue: ADR | File 7 | 1 | : | 1074 |
| Records not considered: Dup MR: ADR | File 7 | 1075 | : | 2445 |
| Records not considered: Beneficiary not at issue: ADR | File 7 | 2558 | : | 4181 |

Department of Health and Human Services
Office of the Secretary

**OFFICE OF MEDICARE HEARINGS AND APPEALS**

Miami Field Office
Claude Pepper Federal Building
51 SW 1st Avenue, Suite 1400A
Miami, FL 33130-1608
(786) 792-3700
(786) 792-3797 (Direct)
(305) 536-5050 (Fax)
(866) 622-0382 (Toll Free)

December 18, 2025

BRIAN G. LODER DPM PLC
ATTN: WILLIAM O'MALLEY
60 PUBLIC SQ STE 602
WILKES-BARRE, PA 18701

## NOTICE OF DECISION

Appellant: BRIAN G. LODER DPM PLC
OMHA Appeal Number: **3-15259990063**

Enclosed is the decision for the above case. This decision is based on the administrative record, including any evidence or testimony presented at the hearing, if one was held. The decision is not precedential, does not release the appellant from civil or criminal liability, and may be reopened at any time if it was procured by fraud or similar fault. In addition, the decision may be reopened within 180 calendar days from the date of the decision for good cause. Good cause exists when there is new and material evidence that was not available or known at the time of the decision and may result in a different conclusion, or when the evidence that was considered clearly shows on its face that an obvious error was made at the time of the decision.

### What if I disagree with the decision?

If you disagree with the decision, you may file an appeal with the Medicare Appeals Council. Other parties may also appeal the decision. In addition, the Medicare Appeals Council may decide to review the decision on its own motion. If no party appeals the decision and the Medicare Appeals Council does not review the decision, the decision is binding on all parties and you and the other parties will not have the right to ask a federal court to review the decision.

If you are not already represented, you may appoint an attorney or other person to represent you.

### How much time do I have to file an appeal?

The Medicare Appeals Council must receive your written appeal **within 60 calendar days** of the date that you receive this notice. The Medicare Appeals Council assumes you received this notice 5 calendar days after the date of the notice unless you show that you did not receive it within the 5-day period.

The Medicare Appeals Council will dismiss a late request for review unless you show that you had a good reason for not filing it on time.

**How do I file an appeal?**

To appeal, you must ask the Medicare Appeals Council to review the decision. Your appeal must be in writing, except that a request for expedited review of a Part D decision may be made orally as described below. Your appeal must identify the parts of the decision that you disagree with, and explain why you disagree.

You may submit a written request for review to the Medicare Appeals Council using one of three available methods: mail, fax, or electronic filing (E-File). **Please do not submit your request for review using more than one method**. Regardless of how you file your appeal, **you must always send a copy of your written request for review to the other parties who received a copy of the decision.**

If you are filing a written request for review, you may use the enclosed *Request for Review* (Form DAB-101), or you may write a letter containing the following:

- The beneficiary's/enrollee's name (and telephone number for Part D appeals);
- The beneficiary's/enrollee's Medicare number (Health Insurance Claim Number or Medicare Beneficiary Identifier);
- The item(s), service(s), or specific Part D drug(s) in dispute;
- The specific date(s) the item(s) or service(s) were provided, if applicable;
- For Part D appeals, the plan name;
- For Part D appeals, the OMHA Appeal Number on the adjudicator's decision;
- For Part D appeals requesting expedited review, a statement that you are requesting expedited review;
- The date of the adjudicator's decision (not required for Part D appeals); and
- Your name and signature, and, if applicable, the name and signature of your representative.

**Filing by mail:**

Mail your appeal and a copy of the enclosed decision to:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644

330 Independence Ave., S.W.
Washington, D.C. 20201

**Filing by fax:**

Fax your appeal and a copy of the enclosed decision to **(202) 565-0227.**

**Filing by computer:**

Using your web browser, visit the Medicare Operations Division Electronic Filing System (MOD E-File) website at **https://dab.efile.hhs.gov/mod**.

To file a new appeal using MOD E-File, you will need to register by:

1. Clicking **Register** on the MOD E-File home page;
2. Entering the information requested on the "Register New Account" form; and
3. Clicking **Register Account** at the bottom of the form.

You will use the email address and password you provided during registration to access MOD E-File at **https://dab.efile.hhs.gov/mod/users/new**. You will be able to use MOD E-File to file and access the specific materials for appeals to which you are a party or a party's representative. You may check the status of any appeal on the website homepage without registering.

Once registered, you may file your appeal by:

1. Logging into MOD E-File;
2. Clicking the **File New Appeal** menu button on the top right of the screen;
3. Selecting the type of appeal you are filing (Request for Review or Request for Escalation); and
4. Entering the requested Appeal Information and uploading the requested Appeal Documents on the "File New Appeal - Medicare Operations Division" form. You are required to provide information and documents marked with an asterisk.

At a minimum, the Medicare Appeals Council requires an appellant to file a signed Request for Review and a copy of the enclosed decision. All documents should be submitted in Portable Document Format (PDF) whenever possible. Any document, including a Request for Review, will be deemed to have been filed on a given day, if it is uploaded to MOD E-File on or before 11:59 p.m. EST of that day.

Currently, the documents that may be filed electronically are the:

1. Request for Review;
2. Appointment of Representative form (OMB Form 0938-0950);
3. Copy of Administrative Law Judge or attorney adjudicator decision;
4. Memorandum or brief or other written statement in support of your appeal; and
5. Request to Withdraw your appeal

**No other documents aside from the five (5) listed categories above may be submitted through MOD E-File.**

**Filing by oral request (for expedited review only):**

Oral requests for expedited review of a Part D decision may be made by telephone to **(866) 365-8204.** You must provide the information listed in the bullet points above and a statement that you are requesting an expedited review within 60 calendar days after receipt of this notice of decision. The Medicare Appeals Council will document the oral request in writing and maintain the documentation in the case file.

Please note that your request for review will only be expedited (1) the appeal involves an issue specified in 42 C.F.R. § 423.566(b), but does not include solely a request for payment of a Part D drug that has already been furnished, and (2) the prescribing physician (or other prescriber) indicates, or the Medicare Appeals Council determines, that the standard time frame may seriously jeopardize your life, health, or ability to regain maximum function.

**How will the Medicare Appeals Council respond to my appeal?**

The Medicare Appeals Council will limit its review to the issues raised in the appeal, unless the appeal is filed by an unrepresented beneficiary/enrollee. It may change the parts of the decision that you agree with. It may adopt, modify, or reverse the decision, in whole or in part, or it may send the case back to OMHA for further action. It may also dismiss your appeal.

**Questions?**

You may call or write our office. A toll-free phone number and mailing address are at the top of this notice.

Additional information about filing an appeal with the Medicare Appeals Council is available at http://www.hhs.gov/dab/. You can also call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100 or (866) 365-8204 (toll free), if you have questions about filing an appeal.

cc:

[redacted]

QIC - C2C B North
301 W Bay Street
Ste. 1110
Jacksonville, FL 32202

Enclosures:

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Miami, FL**

| | | | |
|---|---|---|---|
| Appeal of: | **BRIAN G. LODER DPM PLC** | OMHA Appeal No.: | **3-15259990063** |
| Beneficiary: | [redacted] | Medicare Part: | B |
| Medicare No.: | | Before: | **Jane Van Duzer** Administrative Law Judge |

## DECISION

After considering the evidence and arguments presented in the record, I enter an **UNFAVORABLE** decision. The appellant remains liable for the non-covered services and any outstanding overpayment amount.

## PROCEDURAL HISTORY

The appellant, Brian G. Loder DPM, PLC., initially received Medicare reimbursement for Dual Layer Impax Membrane (HCPCS code Q4262), and (HCPCS codes15271) furnished to K.S., a Medicare beneficiary on October 24, 2023. Then, on December 9, 2024, WPS, a Medicare Administrative Contractor (MAC), issued an unfavorable decision. (File 6, pp. 7-13) Thereafter, the MAC issued a letter informing the appellant it had received Medicare reimbursement in error, resulting in an overpayment. Subsequently, on May 21, 2025, C2C Innovative Solutions, Inc., the Qualified Independent Contractor (QIC) upheld the denial of coverage. (File 4) Specifically, the QIC found that dual layer Impax membrane was experimental and investigational as denoted by the Q code status nomenclature (File 4, p. 5) The QIC further found that HCPCS code 15271 was also not covered. (Id.) Thereafter, on July 22, 2025, the Office of Medicare Hearings and Appeals received the appellant's timely request for a hearing by an Administrative Law Judge. (File 1) The amount in controversy satisfies the jurisdictional requirement for a hearing pursuant to Title XVIII of the Social Security Act, (the Act) §1869(b)(1)(E). A telephonic hearing took place on November 4, 2025. William O'Malley testified, under oath, on behalf of the appellant. I received the beneficiary's file into evidence with exhibited record files 1-16, which includes the hearing audio recording and the UPIC's written position statement.

## ISSUE(S)

Is the appellant entitled to Medicare reimbursement under Part B of Title XVIII of the Act for the services at issue, provided to the beneficiary on the date of service at issue? In other words, are the services within a covered category under §1861(t) of the Act, and if so, are such services not otherwise excluded from coverage under §1862(a)(1) of the Act?

If payment for the services at issue is denied, can Medicare payment nonetheless be made under the limitations of liability provisions of §1879 of the Act. Additionally, if an overpayment exists, the next issue is whether the appellant is entitled to a waiver, under §1870 of the Act, of the carrier's assessed overpayment. Specifically, was the appellant "without fault", as defined under §1870 of the Act, in accepting the improper Medicare payments which are the subject of the carrier's overpayment audit.

## APPLICABLE LAW AND POLICY

**Principles of Law**

1. ***Statutes and Regulations***

Title XVIII of the Social Security Act (the Act) §1831 established the Supplemental Medical Insurance Program for the aged and disabled under Part B.

The scope of benefits that are provided to beneficiaries under the Medicare Part B insurance program are set forth in § 1832 of the Act. An individual is entitled to have payment made on his/her behalf for medical and other health services furnished by a provider of services or by others under arrangement with them made by a provider of services. *See* Act §1832(a)(2)(B); *see also* 42 C.F.R. § 410.3.

No payment shall be made to any provider of services unless there has been furnished such information as may be necessary to determine the amounts due such provider. *See* Act § 1833(e); *see also* 42 C.F.R. § 424.5(a)(6).

Payment for services rendered under Part B of the Medicare laws may be made only to providers of services which are eligible under section 1866(a), which outlines the requirement of agreements with providers of service and the enrollment process. Under this section, payment may only be made if the physician appropriately certifies and recertifies, when applicable, that the services provided were medically required. *See* Act § 1835.

The term "medical and other health services" specifically includes "services and supplies (including drugs and biologicals which are not usually self-administered by the patient) furnished as an incident to a physician's professional service, of kinds which are commonly furnished in physicians' offices and are commonly either rendered without charge or included in the physicians' bills (or would have been so included but for the application of section §1847B. *See* Act § 1861(s)(2)(A); *see also* 42 C.F.R. §§ 410.10(b); 410.27 and 410.26(a)(7).

The term 'drugs' and the term 'biologicals', except for purposes of subsection (m)(5) and paragraph (2), include only such drugs (including contrast agents) and biologicals, respectively, as are included (or approved for inclusion) in the United States Pharmacopoeia, the National Formulary, or the United States Homeopathic Pharmacopoeia, or in New Drugs or Accepted Dental Remedies (except for any drugs and biologicals unfavorably evaluated therein), or as are approved by the pharmacy and drug therapeutics committee (or equivalent committee) of the medical staff of the hospital furnishing such drugs and biologicals for use in such hospital. *See* Act § 1861(t)(1); *see also* 42 C.F.R. § 410.29.

Notwithstanding any other provision of the Act, no payment may be made under Part A or Part B for any expenses incurred for items or services, which . . . are not reasonable and necessary for

the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member. *See* Act § 1862(a)(1)(A); *see also* 42 C.F.R. § 411.15(k)(1).

A waiver of an overpayment adjustment or recovery of an incorrect payment may be made to a provider who is "without fault." *See* Act § 1870(b); *see also* 42 C.F.R. §§405.350(a)(2); §405.351; and 405.355.

Section 1879 of the Act limits the liability of the beneficiary and providers of services if the services are found to be not medially reasonable and necessary under §1862(a)(1)(A) or care was custodial in nature under §1862(a)(1)(9). Payment will only be made pursuant to this section if neither the beneficiary nor the provider knew or could reasonably have been expected to know that the services were not covered. *See also* 42 C.F.R. §§ 411.404; 411.406.

2. ***Policy and Guidance***

Unless promulgated as a regulation by CMS, no rule, requirement, or statement of policy, other than a National Coverage Determination (NCD), can establish or change a substantive legal standard governing the scope of benefits or payment for services under the Medicare program. However, in lieu of binding regulations with the full force and effect of law, CMS and its contractors have issued policy guidance that describe criteria for coverage of selected types of medical items and services in the form of manuals and local medical review policies (LMRPs) or local coverage determinations (LCDs). *See* Act § 1871(a)(2). The undersigned notes that there is no applicable Local Coverage Determination.

National Coverage Determinations are binding upon Administrative Law Judges. *See* Act § 1869(f)(1); *see also* 42 C.F.R. § 405.1060. The undersigned notes that there is no applicable National Coverage Determination. Administrative Law Judges will give substantial deference to local coverage determinations (LCDs), local medical review policies (LMRPs), or CMS program guidance when applicable, and if they do not follow the policy they must explain why in their decision. *See* Act §1869(f)(2); *see also* 42 C.F.R. § 405.1062.
I also gave substantial deference to the manuals implementing the Medicare program, which are of persuasive importance, instructive and influential. Relevant to this case is the Medicare Benefit Policy Manual, Publication 100-2, Chapter 15, Covered and Other Health Services, §30 Physician Services; §50 Drugs and Biologicals; §50.1 Definition of Drugs and Biologicals; §50.2 Determining Self Administration of Drugs and Biologicals; §50.3 Incident to Requirements; §50.4.1 Approved Use of Drug and the Medicare Claims Processing Manual, Publication 100-4, Chapters 4, 17, and Chapter 30, Financial Liability Protections. *See also* C.F.R. §405.1062.

**FINDINGS OF FACT AND ANALYSIS**

***Facts***

The appellant submitted medical records pre-dating the date of service at issue, which I did not consider. (File 6) On October 24, 2023, Brian Loder DPM treated the beneficiary due to a chief complaint of non-pressure chronic ulcer of the right ankle and fat layer exposed. (File 4, p. 15) The beneficiary reported her wounds were improving and she had just one remaining wound that was getting smaller, was less painful, and the drainage and odor was controlled. (Id.)

On examination, the beneficiary presented with an ulcer to the right medial ankle, which measured 3cm x 4.5cm. (File 6, p. 17) The ulcer base was healthy/granular, and it exuded a small amount of serous exudate without infection, and with epithelium and skin islands throughout the wound edge. (Id.) The beneficiary was diagnosed with a non-pressure chronic ulcer of the right

ankle with fat layer exposed. (File 6, p. 18) The beneficiary's wound was cleansed and debrided. (Id.) Thereafter, Impax Amniotic Membrane (HCPCS code Q462) 4 x 4 cm was surgically applied to the wound on the beneficiary's medial right ankle wound. (Id.) It was documented that based on the wound's geography and measurements, the wound required 13 units of application and 3 units of waste. (Id.) The lot number used was 23j1636-008 with an expiration date of September 22, 2026. (Id.)

The Legacy Medical Consultants label for Impax Amniotic Allograft states in pertinent part as follows:

A sterile, dual layer amniotic allograft derived from a prescreened mother with a planned delivery. Dual layer Impax Membrane is manufactured in compliance with FDA regulations. The membrane is minimally processed to preserve the native structure of the tissue, dehydrated, and terminally sterilized. Dual Layer Impax membrane is confirmed by the FDA Tissue Reference Group to meet the criteria for regulation solely under section 361 of the PHS Act as defined in 21 CFR Part 1271.[1]

***Hearing testimony***

William O'Malley proffered the appellant's position regarding coverage of the services at issue, which I considered in reaching my decision in this case. I also considered the UPIC's written position statement.

***Analysis***

I reviewed the Medicare coverage criteria for dual layer Impax membrane wound cover, established in accordance with the statutory and regulatory provisions of Part B of Title XVIII of the Act. For the reasons set forth below, I find the appellant did not meet the payment criteria for same.

At the outset, I am not persuaded by the QIC's finding that the Impax Membrane at issue is experimental and investigational as denoted by the Q code status nomenclature. Specifically, Medicare indicates that Q codes are established to identify drugs, biologicals, and medical equipment or services not identified by national HCPCS level II codes, but for which codes are needed for Medicare claims processing.[2]

Medicare is a defined benefit program, which means that it does not cover all available medical services and supplies.[3] Instead, Medicare coverage is limited to those medical services and supplies identified by Congress, by the Secretary of Health and Human Services, and by CMS in implementing Congressional directives. For example, Medicare does not cover medical services that are experimental or investigational. I note there is no Local or National Coverage Determination for the service at issue.

***Reasonable and Necessary Analysis***

[1] https://legacymedicalconsultants.com/products/impax-amniotic-allograft/ (last visited on December 16, 2025).
[2] See https://www.cms.gov/medicare/coding/medhcpcsgeninfo/downloads/2018-11-30-hcpcs-level2-coding-procedure.pdf (last visited on October 27, 2025)
[3] In general, although MAC decisions have no precedential value, the decisions may serve as a guidepost to disposition of similar cases. 70 Fed. Reg. 11420, 11449 (Mar. 8, 2005). *See also Consultants in Pain Medicine*, P.A. (MAC December 2014); *see also* Medicare Program Integrity Manual, Publication 100-08, Chapter 13, §13.5.1.

Historically, in making coverage determinations, the Centers for Medicare, and Medicaid Services (CMS) has interpreted the terms reasonable and necessary to require that the item or service in question is safe and effective and not experimental or investigational.[4] CMS has further determined that the relevant tests for applying these terms are whether the service has been proven safe and effective based on authoritative evidence, or, alternatively, whether the service is generally accepted in the medical community as safe and effective for the condition for which it is used. [5] However, acceptance by individual health care providers, or even a limited group of health care providers normally does not indicate general acceptance in the medical community.[6] Testimonials indicating such limited acceptance, and limited case studies distributed by sponsors with financial interest in the outcome, are not sufficient evidence of general acceptance by the medical community.[7] I must consider the broad range of available evidence and evaluate its quality before reaching a conclusion.[8] In addition, the device must be reasonable and necessary for the appellant's condition on the date(s) of service at issue.[9]

In this case, as in all Medicare appeals, the enrollee has the burden to establish that he is entitled to Medicare coverage. Historically, in making coverage determinations, CMS has interpreted the terms reasonable and necessary to require that the item or service in question is safe and effective and not experimental or investigational.[10] CMS has further determined that the relevant tests for applying these terms are whether the service has been proven safe and effective based on authoritative evidence, or, alternatively, whether the service is generally accepted in the medical community as safe and effective for the condition for which it is used. [11]

***<u>FDA Approval/Clearance</u>***

At the outset, I find the dual layer Impax membrane wound cover at issue is FDA approved. Nevertheless, I find that FDA clearance is not synonymous with Medicare coverage.[12] Furthermore, I am not persuaded by the appellant's argument, which is not corroborated by the evidence before me, that Dual Layer Impax membrane was confirmed by the FDA Tissue Reference Group to meet the criteria for regulation solely under section 361 of the PHS Act as defined in 21 CFR Part 1271. The regulations state "CMS *<u>may</u> consider* for Medicare coverage" FDA approved devices or services "that have been categorized as non-experimental/investigational."[13] The regulations further clarify that CMS uses FDA categorization "*as a factor*" in making coverage decisions.[14] Thus, under Medicare regulations, the fact that the dual layer Impax membrane wound cover may be deemed non-experimental by virtue of its FDA classification means, as a threshold matter, only that it is eligible to be considered for Medicare coverage.[15]

---

[4] *Total Pain Care, PA* (MAC February 2015); see *also, In the Case of Vision Quest Industries, Inc.,* (MAC June 2012).

[5] *Id. See also* 54 Fed. Reg. 4304 (Jan. 30, 1989); 60 Fed. Reg. 48417 (Sept. 19, 1995); Medicare Program Integrity Manual (MPIM), Pub.100-08, Chapter 13, §13.5.1.

[6] *See* §13.7.1 MPIM.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Total Pain Care, PA* (MAC February 2015).

[11] Id. *See also* 54 Fed. Reg. 4304 (Jan. 30, 1989); 60 Fed. Reg. 48417 (Sept. 19, 1995); 68 Fed. Reg. 63693 states "if no NCD or LCD is in place, contractors may make individual claim determinations, including whether a particular DME meets the statutory requirement of being "reasonable and necessary;" *See also* the Medicare Program Integrity Manual (MPIM), Pub.100-08, Chapter 13, §13.5.1.

[12] *In the Case of Vision Quest Industries, Inc.,* (MAC June 2012).

[13] *See* 42 C.F.R. §405.201(a)(2).

[14] *See* 42 C.F.R. §405.201(a)(1).

[15] *In the Case of Vision Quest Industries, Inc.,* (MAC June 2012).

This conclusion is further reinforced by the statements published by CMS and the FDA in the Federal Register explaining the difference between CMS review of a medical device as compared to reviews conducted by the FDA for pre-market approval.[16] Specifically, each process operates under different statutory standards and asks different questions to meet its respective mandates.[17] Moreover, CMS serves a different function by providing health insurance to protect the Nation's aged and disabled. CMS makes determinations regarding the coverage of specific items and services.[18] In short, CMS must decide: "what items and services it can and should pay for; how it should accomplish the payment; and how much to pay."[19] Thus, FDA clearance of an item or service does not preclude CMS or its contractors, in analyzing whether a particular item or service is medically reasonable and necessary, from making an independent inquiry into whether the item or service is safe and effective and not experimental or investigational.[20] Nor does it preclude CMS or its contractors from inquiring whether the item or service is supported by *"[p]ublished authoritative evidence derived from definitive randomized clinical trials or other definitive studies."*[21]

Therefore, although the dual layer Impax membrane wound cover received FDA approval or clearance, I find that such FDA approval/clearance alone does not generally entitle a service to Medicare coverage. Accordingly, I find that FDA clearance for the dual layer Impax membrane wound cover, by itself, does not establish that the service meets Medicare coverage requirements, i.e., that it has been shown to be a medically reasonable and necessary treatment of the enrollee's medical condition.

***Peer Review Literature***

In support of coverage for the dual layer Impax membrane wound cover, the appellant submitted multiple articles. (File 6) However, I find the weight of the medical literature does not support the appellant's position. I considered, but I am not persuaded by, the materials submitted for review. In deciding whether the dual layer Impax membrane wound cover was reasonable and necessary, i.e., safe, and effective, and not experimental or investigational, only evidence that was in existence on or before the date of service at issue is relevant and the beneficiary must prove that the dual layer Impax membrane wound cover is medically reasonable and necessary.

Based on my review of the studies submitted by the appellant, I find they are insufficient to support a finding the dual layer Impax membrane wound cover is safe and effective for treatment of patients with the appellant's condition. Consequently, I find the evidence does not support a finding that the dual layer Impax membrane wound cover was generally accepted in the medical community and was, therefore, medically reasonable, and necessary.

I must emphasize that I am sympathetic to the beneficiary's position and certainly understand the gravity of her wound. Moreover, I do not question her physician's judgment in prescribing the dual layer Impax membrane wound cover, her desire to undergo the treatment, or the possibility that it may yield some benefit to her. However, I am bound by the statutes and the implementing regulations of the Medicare program. Accordingly, based on the above analysis, I find the dual

---

[16] See 68 Fed. Reg. 55634 (Sept. 26, 2003); *See also* 75 Fed. Ref. 57045.
[17] Id; *See also* MPIM, Publication 100-08, Chapter 13, §5.1.
[18] See Act §1862(a) (1.
[19] *In the Case of Vision Quest Industries, Inc.*, (MAC June 2012).
[20] *Id.*
[21] *Consultants in Pain Medicine, P.A.* (December 2014); *In the Case of Vision Quest Industries, Inc.*, (MAC June 2012).

layer Impax membrane wound cover was not reasonable and necessary as established through the appellant's medical records, and that such services were excluded under §1862(a)(1) of the Act. Consequently, I find that HCPCS code 15271 was also not covered, as services related to a non-covered service.

***Liability §1879***

Since I determined the services at issue were not reasonable and necessary, I must consider whether Medicare payment may be made under the limitation of liability provisions of §1879 of the Act. The beneficiary did not know and could not reasonably be expected to know the services at issue would not be covered under Medicare. There is no Advanced Beneficiary Notice in the file and the appellant accepted assignment in this matter. Consequently, the liability of the beneficiary is waived pursuant to §1879 of the Act.

The appellant, however, is considered to have acquired knowledge that such services were excluded from Medicare coverage by its receipt of manuals, bulletins, and written guidelines from the carrier.[22] Because the appellant knew or reasonably should have known services at issue were not covered by Medicare, the waiver of liability provisions of §1879 of the Act cannot be applied to absolve the appellant of liability.

***Liability under §1870***

Additionally, after careful consideration of the record, and for the reasons set forth below, I find that the appellant is not entitled to waiver of the assessed overpayment. In order to determine whether the appellant is entitled to waiver, I must in turn determine whether the appellant was "without fault" as defined in 1870(b) of the Act. I find that there is insufficient evidence to support a finding that the appellant was "without fault." Initially, I note that there is insufficient evidence to support a finding that the appellant suffered from any relevant linguistic, educational, physical or mental limitations, or limitations due to age or intelligence. *See* 20 CFR §404.507 (setting forth the criteria used to determine whether an individual or other person is "without fault")

I further find that the overpayment at issue resulted from the appellant's failure to furnish information which it knew or should have known to be material. *See* 20 CFR §404.507. *See also* the Medicare Financial Management Manual, Publication 100-06, Ch. 3, §90.1F. The appellant failed to provide the requisite records to establish that the services at issue were reasonable and necessary. Accordingly, I find that the appellant is not "without fault" and is therefore not entitled to waiver of the assessed overpayment.

## CONCLUSIONS OF LAW

The appellant did not establish by a preponderance of the evidence that the services furnished to the beneficiary on the date of service at issue were covered under 1861(s)(6) of the Act and were not otherwise excluded under §1862(a)(1) of the Act. Liability of the beneficiary, however, is waived pursuant to §1879 of the Act. Additionally, an overpayment occurred within the meaning of Section 1870 of Title XVIII of the Act for the services at issue. The appellant is not "without fault" and is therefore not entitled to waiver of the overpayment with respect to services provided to the beneficiary. Accordingly, consistent herewith, the appellant is liable for non-covered services and any outstanding overpayment amount(s).

---

22 *See* 42 C.F.R. § 411.406.

OMHA Appeal No 3-15259390063

**ORDER**

For the reasons discussed above, this decision is **UNFAVORABLE**. I direct the Medicare Administrative Contractor to process the claims in accordance with this decision. The appellant remains liable for the non-covered services and any resulting overpayment amount(s).

**SO ORDERED**

Jane Van Duzer

Jane Van Duzer
Administrative Law Judge

DEPARTMENT OF HEALTH AND HUMAN SERVICES (DHHS) / DEPARTMENTAL APPEALS BOARD Form DAB-101 (12/19)

**REQUEST FOR REVIEW OF ADMINISTRATIVE LAW JUDGE (ALJ) MEDICARE DECISION / DISMISSAL**

| 1. APPELLANT (the party requesting review) | 2. ALJ APPEAL NUMBER (on the decision or dismissal) |
|---|---|
| 3. BENEFICIARY* | 4. MEDICARE NUMBER (Health Insurance Claim Number (HICN) or Medicare Beneficiary Identifier (MBI))* |

*If the request involves multiple claims or multiple beneficiaries, attach a list of beneficiaries, Medicare numbers, and any other information to identify all claims being appealed.

| 5. PROVIDER, PRACTITIONER, OR SUPPLIER | 6. SPECIFIC ITEM(S) OR SERVICE(S) |
|---|---|

7. Medicare claim type: ☐ Part A ☐ Part B ☐ Part C - Medicare Advantage
☐ Part D - Medicare Prescription Drug Plan ☐ Entitlement/enrollment for Part A or Part B

8. Does this request involve authorization for an item or service that has not yet been furnished?
☐ Yes If Yes, skip to Block 9.
☐ No If No, Specific Dates of Service:

9. If the request involves authorization for a prescription drug under Medicare Part D, would application of the standard appellate timeframe seriously jeopardize the beneficiary's life, health, or ability to regain maximum function (as documented by a physician) such that expedited review is appropriate? ☐ Yes ☐ No

I request that the Medicare Appeals Council review the ALJ's ☐ decision or ☐ dismissal order [check one] dated__________________________. I disagree with the ALJ's action because (specify the parts of the ALJ's decision or dismissal you disagree with and why you think the ALJ was wrong):

____________________________________________________________

____________________________________________________________

____________________________________________________________

(Attach additional sheets if you need more space)

**PLEASE ATTACH A COPY OF THE ALJ DECISION OR DISMISSAL ORDER YOU ARE APPEALING.**

| DATE | | | DATE | | |
|---|---|---|---|---|---|
| APPELLANT'S NAME (the party requesting review) | | | REPRESENTATIVE'S NAME (include signed appointment of representative if not already submitted) | | |
| ADDRESS | | | ADDRESS | | |
| CITY, STATE, ZIP CODE | | | CITY, STATE, ZIP CODE | | |
| TELEPHONE NUMBER | FAX NUMBER | E-MAIL | TELEPHONE NUMBER | FAX NUMBER | E-MAIL |

(SEE FURTHER INSTRUCTIONS ON PAGE 2)

If you have additional evidence, submit it with this request for review. If you need more time, you must request an extension of time in writing now, explaining why you are unable to submit the evidence or legal argument now.

*If you are a provider, supplier, or a beneficiary represented by a provider or supplier, and your case was reconsidered by a Qualified Independent Contractor (QIC), the Medicare Appeals Council will not consider new evidence related to issues the QIC has already considered unless you show that you have a good reason for submitting it for the first time to the Medicare Appeals Council.*

**IMPORTANT: Include the HICN or MBI and ALJ Appeal Number on any letter or other material you submit.**

This request must be received within 60 calendar days after you receive the ALJ's decision or dismissal, unless we extend the time limit for good cause. We assume you received the decision or dismissal 5 calendar days after it was issued, unless you show you received it later. If this request will not be received within 65 calendar days from the date on the decision or dismissal order, please explain why on a separate sheet.

---

You must file your request for review in writing with the Medicare Appeals Council at:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

You may send the request for review by U.S. Mail, a common carrier such as FedEx, or by fax to (202) 565-0227. If you send a fax, please do not also mail a copy. ***You must send a copy of your appeal to the other parties and indicate that all parties, to include all beneficiaries, have been copied on the request for review. For claims involving multiple beneficiaries, you may submit a copy of the cover letters issued or a spreadsheet of the beneficiaries and addresses who received a copy of the request for review.***

If you have any questions about your request for review or wish to request expedited review of a claim involving authorization of your prescription drug under Medicare Part D, you may call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100. You may also visit our web site at www.hhs.gov/dab for additional information on how to file your request for review.

## PRIVACY ACT STATEMENT

The collection of information on this form is authorized by the Social Security Act (section 205(a) of title II, section 702 of title VII, section 1155 of Title XI, and sections 1852(g)(5), 1869(b)(1), 1871, 1872, and 1876(c)(5)(B) of title XVIII, as appropriate). The information provided will be used to further document your claim. Information requested on this form is voluntary, but failure to provide all or any part of the requested information may affect the determination of your claim. Information you furnish on this form may be disclosed by the Department of Health and Human Services or the Social Security Administration to another person or governmental agency only with respect to programs under the Social Security Act and to comply with Federal laws requiring the disclosure of information or the exchange of information between the Department of Health and Human Services, the Social Security Administration, or other agencies.

Department of Health and Human Services
OFFICE OF MEDICARE HEARINGS AND APPEALS
Miami, FL

Appeal of: **BRIAN G. LODER DPM PLC**

Beneficiary: [redacted]

Medicare No.: [redacted]

OMHA Appeal No.: **3-15259990063**

Medicare Part: **B**

Before: **Jane Van Duzer**
Administrative Law Judge

Index of the Administrative Record and Exhibit List

| **Exhibit Record** | **Administrative File Reference** File Name | Page Range | |
|---|---|---|---|
| Medical & Related: Medical Records: w/ Recon pckg | File 6 | 15 | 187 |
| Position Statements: WPS | File 16 | 1 | 8 |
| Procedural - CMS Levels: Request for Redetermination Pckg: w/ Redt dec | File 3 | 1 | 44 |
| Procedural - CMS Levels: Reconsideration: Decision | File 4 | 1 | 18 |
| Procedural - CMS Levels: Request for Reconsideration Pckg | File 6 | 1 | 14 |
| Procedural - CMS Levels: Claim information: w/ ADR | File 7 | 2550 | 2557 |
| Procedural - OMHA Level: Request for ALJ Hearing: w/ AOR | File 1 | 1 | 18 |
| Procedural - OMHA Level: Response to Notice of Hearing: NOI - CoventBridge | File 10 | 1 | 3 |
| Procedural - OMHA Level: Second Amended Notice of Hearing | File 11 | 1 | 10 |
| Procedural - OMHA Level: Notice of Hearing | File 13 | 1 | 10 |
| Procedural - OMHA Level: Response to NOH: NOI - WPS - NPW | File 14 | 1 | 3 |
| Procedural - OMHA Level: Notice of Hearing | File 17 | 1 | 10 |
| Procedural - OMHA Level: Notice of Hearing | File 18 | 1 | 16 |
| Procedural - OMHA Level: Notice of Hearing | File 19 | 1 | 16 |
| Procedural - OMHA Level: Response to Notice of Hearing: Request to Rescheduling | File 20 | 1 | 4 |
| Procedural - OMHA Level: Response to Notice of Hearing: Rescheduling Request | File 8 | 1 | 4 |
| Procedural - OMHA Level: Amended Notice of Hearing | File 9 | 1 | 10 |
| Proceeding (Audios): Hearing audio | File 12 | 1 | 1 |

| **Non-Exhibit Record** | **Administrative File Reference** File Name | Page Range | |
|---|---|---|---|
| Records not considered: Not Relevant | File 15 | 1 | 5 |
| Records not considered: General: QIC Acknowledgement Letter | File 2 | 1 | 3 |
| Records not considered: General: Redt | File 5 | 1 | 1 |

OMHA-156
Dated: 2025-12-18

Index of the Administrative Record and Exhibit List

| | | | | |
|---|---|---|---|---|
| Records not considered: Beneficiary not at issue: ADR | File 7 | 1 | : | 1075 |
| Records not considered: Duplicate MR: w/ ADR | File 7 | 1075 | : | 2445 |
| Records not considered: Beneficiary not at issue: ADR | File 7 | 2558 | : | 4181 |