# Complaint Exhibit 26

Department of Health and Human Services
Office of the Secretary

**OFFICE OF MEDICARE HEARINGS AND APPEALS**

Miami Field Office
Claude Pepper Federal Building
51 SW 1st Avenue, Suite 1400A
Miami, FL 33130-1608
(786) 792-3700
(786) 792-3773 (Direct)
(305) 536-5050 (Fax)
(866) 622-0382 (Toll Free)

December 03, 2025

NICHOLSON & EASTIN LLP
ATTN: ERIN FERBER ESQ
1330 SE 4TH AVENUE
STE J
FORT LAUDERDALE, FL 33316

## NOTICE OF DECISION

Appellant: [redacted]
OMHA Appeal Number: 3-15363706639

Enclosed is the decision for the above case. This decision is based on the administrative record, including any evidence or testimony presented at the hearing, if one was held. The decision is not precedential, does not release the appellant from civil or criminal liability, and may be reopened at any time if it was procured by fraud or similar fault. In addition, the decision may be reopened within 180 calendar days from the date of the decision for good cause. Good cause exists when there is new and material evidence that was not available or known at the time of the decision and may result in a different conclusion, or when the evidence that was considered clearly shows on its face that an obvious error was made at the time of the decision.

**What if I disagree with the decision?**

If you disagree with the decision, you may file an appeal with the Medicare Appeals Council. Other parties may also appeal the decision. In addition, the Medicare Appeals Council may decide to review the decision on its own motion. If no party appeals the decision and the Medicare Appeals Council does not review the decision, the decision is binding on all parties and you and the other parties will not have the right to ask a federal court to review the decision.

If you are not already represented, you may appoint an attorney or other person to represent you.

## How much time do I have to file an appeal?

The Medicare Appeals Council must receive your written appeal **within 60 calendar days** of the date that you receive this notice. The Medicare Appeals Council assumes you received this notice 5 calendar days after the date of the notice unless you show that you did not receive it within the 5-day period.

The Medicare Appeals Council will dismiss a late request for review unless you show that you had a good reason for not filing it on time.

## How do I file an appeal?

To appeal, you must ask the Medicare Appeals Council to review the decision. Your appeal must be in writing, except that a request for expedited review of a Part D decision may be made orally as described below. Your appeal must identify the parts of the decision that you disagree with, and explain why you disagree.

You may submit a written request for review to the Medicare Appeals Council using one of three available methods: mail, fax, or electronic filing (E-File). **Please do not submit your request for review using more than one method**. Regardless of how you file your appeal, **you must always send a copy of your written request for review to the other parties who received a copy of the decision.**

If you are filing a written request for review, you may use the enclosed *Request for Review* (Form DAB-101), or you may write a letter containing the following:

- The beneficiary's/enrollee's name (and telephone number for Part D appeals);
- The beneficiary's/enrollee's Medicare number (Health Insurance Claim Number or Medicare Beneficiary Identifier);
- The item(s), service(s), or specific Part D drug(s) in dispute;
- The specific date(s) the item(s) or service(s) were provided, if applicable;
- For Part D appeals, the plan name;
- For Part D appeals, the OMHA Appeal Number on the adjudicator's decision;
- For Part D appeals requesting expedited review, a statement that you are requesting expedited review;
- The date of the adjudicator's decision (not required for Part D appeals); and
- Your name and signature, and, if applicable, the name and signature of your representative.

**Filing by mail:**

Mail your appeal and a copy of the enclosed decision to:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

**Filing by fax:**

Fax your appeal and a copy of the enclosed decision to **(202) 565-0227.**

**Filing by computer:**

Using your web browser, visit the Medicare Operations Division Electronic Filing System (MOD E-File) website at **https://dab.efile.hhs.gov/mod**.

To file a new appeal using MOD E-File, you will need to register by:

1. Clicking **Register** on the MOD E-File home page;
2. Entering the information requested on the "Register New Account" form; and
3. Clicking **Register Account** at the bottom of the form.

You will use the email address and password you provided during registration to access MOD E-File at **https://dab.efile.hhs.gov/mod/users/new**. You will be able to use MOD E-File to file and access the specific materials for appeals to which you are a party or a party's representative. You may check the status of any appeal on the website homepage without registering.

Once registered, you may file your appeal by:

1. Logging into MOD E-File;
2. Clicking the **File New Appeal** menu button on the top right of the screen;
3. Selecting the type of appeal you are filing (Request for Review or Request for Escalation); and
4. Entering the requested Appeal Information and uploading the requested Appeal Documents on the "File New Appeal - Medicare Operations Division" form. You are required to provide information and documents marked with an asterisk.

At a minimum, the Medicare Appeals Council requires an appellant to file a signed Request for Review and a copy of the enclosed decision. All documents should be submitted in Portable Document Format (PDF) whenever possible. Any document, including a Request for Review, will be deemed to have been filed on a given day, if it is uploaded to MOD E-File on or before 11:59 p.m. EST of that day.

Currently, the documents that may be filed electronically are the:

1. Request for Review;
2. Appointment of Representative form (OMB Form 0938-0950);
3. Copy of Administrative Law Judge or attorney adjudicator decision;
4. Memorandum or brief or other written statement in support of your appeal; and
5. Request to Withdraw your appeal

**No other documents aside from the five (5) listed categories above may be submitted through MOD E-File.**

**Filing by oral request (for expedited review only):**

Oral requests for expedited review of a Part D decision may be made by telephone to **(866) 365-8204.** You must provide the information listed in the bullet points above and a statement that you are requesting an expedited review within 60 calendar days after receipt of this notice of decision. The Medicare Appeals Council will document the oral request in writing and maintain the documentation in the case file.

Please note that your request for review will only be expedited (1) the appeal involves an issue specified in 42 C.F.R. § 423.566(b), but does not include solely a request for payment of a Part D drug that has already been furnished, and (2) the prescribing physician (or other prescriber) indicates, or the Medicare Appeals Council determines, that the standard time frame may seriously jeopardize your life, health, or ability to regain maximum function.

**<u>How will the Medicare Appeals Council respond to my appeal?</u>**

The Medicare Appeals Council will limit its review to the issues raised in the appeal, unless the appeal is filed by an unrepresented beneficiary/enrollee. It may change the parts of the decision that you agree with. It may adopt, modify, or reverse the decision, in whole or in part, or it may send the case back to OMHA for further action. It may also dismiss your appeal.

**<u>Questions?</u>**

You may call or write our office. A toll-free phone number and mailing address are at the top of this notice.

Additional information about filing an appeal with the Medicare Appeals Council is available at http://www.hhs.gov/dab/. You can also call the Medicare Appeals Council's staff in the Medicare

Operations Division of the Departmental Appeals Board at (202) 565-0100 or (866) 365-8204 (toll free), if you have questions about filing an appeal.

cc:

C2C Innovative Solutions, Inc.
Part B South C2C
301 W Bay Street, Ste. 1110
Jacksonville, FL 32231-4006

[redacted]

[IF MULTIPLE BENEFICIARY APPEAL ONLY INPUT: To protect beneficiary privacy, names and addresses of other individuals have been removed from your copy of this notice.]

Enclosures:
OMHA-152, Decision
DAB-101, Request for Review
OMHA-156, Exhibit List

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Miami, FL**

| | |
|---|---|
| Appeal of: [redacted] | OMHA Appeal No.: **3-15363706639** |
| Beneficiary: [redacted] | Medicare Part: B |
| Medicare No.: [redacted] | Before: **Mark Lacedonia** Administrative Law Judge |

## DECISION

After considering the evidence in the record, I enter an **UNFAVORABLE** decision in the appeal of [redacted] (Appellant). The Q4239 grafts, provided to the Medicare Beneficiary on October 12, 2024 fails to satisfy Medicare coverage criteria. Therefore, coverage must remain denied for this claim. The provider is liable for any unpaid/overpaid amounts pursuant to §§ 1879 and 1870 of the Social Security Act.

## PROCEDURAL HISTORY

A claim was submitted for Q4239 grafts, provided to the Beneficiary on October 12, 2024. The claim was initially covered but it was determined there was an overpayment. The claim was denied at redetermination. On July 22, 2025, the Medicare Part B QIC issued an unfavorable reconsideration decision. (File 1, p. 1). The QIC held that Medicare coverage cannot be extended as Q4239 is experimental and investigational as denoted by the Q code status nomenclature. (File 1, pp. 5-7). The QIC further held that the provider is liable for any unpaid/overpaid amounts. (File 1, p. 7).

The Appellant timely[1] filed a request for Medicare hearing before an administrative law judge (ALJ). The request for ALJ hearing satisfies the amount in controversy and therefore meets the jurisdictional requirements for a hearing before OMHA.[2] As such, the jurisdictional predicates are satisfied and the request for appeal of the unfavorable decision regarding whether Medicare coverage guidelines have been met for coverage of the wound cover, which is covered by this decision, is properly before the ALJ for *de novo* review.

A hearing was held on October 23, 2025, with telephonic participation by Erin Ferber, Esq., on behalf the Appellant, Dr. Joseph Lalia, owner and operator/medical director, and Dr. Adrianna Ross, DPM, expert. The Appellant and First Coast Serve Options submitted position papers (Files 12, 14). The participants were sworn in and the Files listed on the Exhibits Record were entered into evidence without objection. The Appellant submitted a post hearing brief. Good cause was found for this submission and it was entered into evidence at File 17.

---

[1] 42 C.F.R. § 405.1002(a)(1).
[2] 42 C.F.R. § 478.44.

## ISSUE(S)

The issue before me is whether Medicare must extend coverage for the Q4239 grafts, provided to the Beneficiary on October 12, 2024 and, if not, to determine who is liable for any unpaid/overpaid amounts.

## APPLICABLE LAW AND POLICY

The Medicare program, Title XVIII of the Act, is administered through the Centers for Medicare and Medicaid Services. §1835 of the Act sets forth the procedures for payment of claims of providers of services. §1835(a)(2) of the Act sets forth the general physician certification and recertification requirements. See also, 42 CFR §424.10 and 42 CFR §424.24(c). §1835(a)(2)(C) of the Act provides that "in the case of outpatient physical therapy services or outpatient occupational therapy services, (i) such services are or were required because the individual needed physical therapy services or occupational therapy services, respectively, (ii) a plan for furnishing such services has been established by a physician or by the qualified physical therapist or qualified occupational therapist, respectively, providing such services and is periodically reviewed by a physician, and (iii) such services are or were furnished while the individual is or was under the care of a physician.". *See also*, 42 CFR §410.60(a)(3)(ii); 42 CFR §410.60(a)(3)(iii); 42 CFR §410.61(plan of treatment requirements); 42 CFR §424.11(d).

§1862(a)(1)(A) of the Act limits Medicare coverage and payment to those services or items that are reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member.

42 CRF §424.5(a)(6) states: "The provider, supplier, or beneficiary, as appropriate, must furnish to the intermediary or carrier sufficient information to determine whether payment is due and the amount of payment."

Medicare statutes clearly establish that when a beneficiary is in a home health episode (HHE) or a skilled nursing facility (SNF), the providers of the Part A services are responsible for providing all medically necessary care and items required for treatment. *See* Social Security Act §§ 1862(a)(14), 1862(a)(18), 1862(a)(21) These services and supplies are subject to consolidated billing. *Id.;* BBA, Public Law 105-33, and *MCPM*, (Internet Only Pub. 100-04), Chapter 3, § 20.A.

§1870(b)(1) of the Act provides, where " more than the correct amount is paid under this title to a provider of services or other person for items or services furnished an individual and the Secretary determines (A) that, within such period as he may specify, the excess over the correct amount cannot be recouped from such provider of services or other person, or (B) that such provider of services or other person was without fault with respect to the payment of such excess over the correct amount...(2) any payment has been made under section 1814(e) to a provider of services or other person for items or services furnished an individual,-proper adjustments shall be made, under regulations prescribed (after consultation with the Railroad Retirement Board) by the Secretary, by decreasing subsequent payments—

As soon as practicable after any adjustment under paragraph (3) or (4) is determined to be necessary, the Secretary, for purposes of this section, section 1817(g), and section 1841(f), shall certify (to the Railroad Retirement Board if the adjustment is to be made by decreasing subsequent payments under the Railroad Retirement Act of 1974) the amount of the overpayment as to which the adjustment is to be made. For purposes of clause (B) of paragraph (1), such provider of services or such other person shall, in the absence of evidence to the

contrary, be deemed to be without fault if the Secretary's determination that more than such correct amount was paid was made subsequent to the third year following the year in which notice was sent to such individual that such amount had been paid, except that the Secretary may reduce such three-year period to not less than one year if he finds such reduction is consistent with the objectives of this title.

(c) There shall be no adjustment as provided in subsection (b) (nor shall there be recovery) in any case where the incorrect payment has been made (including payments under section 1814(e)) with respect to an individual who is without fault or where the adjustment (or recovery) would be made by decreasing payments to which another person who is without fault is entitled as provided in subsection (b)(4), if such adjustment (or recovery) would defeat the purposes of title II or title XVIII or would be against equity and good conscience. Adjustment or recovery of an incorrect payment (or only such part of an incorrect payment as the Secretary determines to be inconsistent with the purposes of this title) against an individual who is without fault shall be deemed to be against equity and good conscience if (A) the incorrect payment was made for expenses incurred for items or services for which payment may not be made under this title by reason of the provisions of paragraph (1) or (9) of section 1862(a) and (B) if the Secretary's determination that such payment was incorrect was made subsequent to the third year following the year in which notice of such payment was sent to such individual, except that the Secretary may reduce such three-year period to not less than one year if he finds such reduction is consistent with the objectives of this title. *See also*, 42 CFR §411.28, 42 CFR §405.350, 42 CFR §405.351, 42 CFR §405.352, 42 CFR §405.355, 42 CFR §405.356 and 42 CFR §405.358.

§1879 of the Act limits the liability of the beneficiary and providers of services if the services are found to be not medically reasonable and necessary under §1862(a)(1)(A) or care was custodial in nature under §1862(a)(9). Payment will only be made pursuant to this section if neither the beneficiary nor the provider knew or could reasonably have been expected to know that the services were not covered. *See also* 42 CFR §411.404; 42 CFR §411.406. § 1870 of the Act waives overpayments when the Beneficiary and/or Provider are without fault with respect to the overpayment.

The CMS *Medicare Program Integrity Manual*, Chapter 3, §3.11, explains that "[f]or Medicare to consider coverage and payment for any item or service, the information submitted by the supplier or provider [] must be corroborated by the documentation in the patient's medical records that Medicare coverage criteria have been met." It continues that the patient's medical records must be maintained by the physician, provider, and/or supplier and that they must be available to the contractor upon request. Moreover, sufficient documentation is required in order to confirm that an item or service was actually provided and billed at the appropriate level.

Section 3.6.2.2 further states that for an item or service to be considered reasonable and necessary, it must meet the following criteria:

- It is safe and effective;
- It is not experimental or investigational; and
- It is appropriate, including the duration and frequency in terms of whether the service or item is:
  - Furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the beneficiary's condition or to improve the function of a malformed body member;
  - Furnished in a setting appropriate to the beneficiary's medical needs and condition;

- Ordered and furnished by qualified personnel; and,
- One that meets, but does not exceed, the beneficiary's medical need.

The CMS *Medicare Benefit Policy Manual*, Pub. 100-02, Chapter 15, §50.4.1 states:

> Use of the drug or biological must be safe and effective and otherwise reasonable and necessary. (See the Medicare Benefit Policy Manual, Chapter 16, "General Exclusions from Coverage," §20.) Drugs or biologicals approved for marketing by the Food and Drug Administration (FDA) are considered safe and effective for purposes of this requirement when used for indications specified on the labeling. Therefore, the program may pay for the use of an FDA approved drug or biological, if:
>
> - It was injected on or after the date of the FDA's approval;
> - It is reasonable and necessary for the individual patient; and
> - All other applicable coverage requirements are met.
>
> The carrier, DMERC, or intermediary will deny coverage for drugs and biologicals, which have not received final marketing approval by the FDA unless it receives instructions from CMS to the contrary. For specific guidelines on coverage of Group C cancer drugs, see the Medicare National Coverage Determinations Manual.
>
> If there is reason to question whether the FDA has approved a drug or biological for marketing, the carrier or intermediary must obtain satisfactory evidence of FDA's approval. Acceptable evidence includes:
>
> - A copy of the FDA's letter to the drug's manufacturer approving the new drug application (NDA);
> - A listing of the drug or biological in the FDA's "Approved Drug Products" or "FDA Drug and Device Product Approvals";
> - A copy of the manufacturer's package insert, approved by the FDA as part of the labeling of the drug, containing its recommended uses and dosage, as well as possible adverse reactions and recommended precautions in using it; or
> - Information from the FDA's Web site.
>
> When necessary, the regional office (RO) may be able to help in obtaining information.

**FDA**

For a product to be regulated as a human cells, tissues, and cellular and tissue-based product (HCT/P), it must meet specific regulatory requirements as established under section 361 of the of the Public Health Service (PHS) Act and further delineated in regulations at 21 C.F.R. § 1271.10. In general, if a product does not qualify as an HCT/P, by default the product must be regulated as a drug and/or biological under section 351 of the PHS Act and the Food, Drug, and Cosmetic (FC&C) Act; or must seek approval as a 510K medical device as per the FD&C Act. However, should a product be appropriately designated as an HCT/P under section 361, it may bypass the normal FDA drug/biological/device approval process and go straight to market to be sold to the public. The four criteria are:

(1) The HCT/P is minimally manipulated;
(2) The HCT/P is intended for homologous use only, as reflected by the labeling, advertising, or other indications of the manufacturer's objective intent;
(3) The manufacture of the HCT/P does not involve the combination of the cells or tissues with another article, except for water, crystalloids, or a sterilizing, preserving, or storage agent, provided that the addition of water, crystalloids, or the sterilizing, preserving, or storage agent does not raise new clinical safety concerns with respect to the HCT/P; and
(4) Either:
(i) The HCT/P does not have a systemic effect and is not dependent upon the metabolic activity of living cells for its primary function; or
(ii) The HCT/P has a systemic effect or is dependent upon the metabolic activity of living cells for its primary function, and:
(a) Is for autologous use;
(b) Is for allogeneic use in a first-degree or second-degree blood relative; or
(c) Is for reproductive use.

*See* 21 C.F.R. § 1271.10(a).

## FINDINGS OF FACT AND ANALYSIS

After conducting a *de novo* review of the evidence, I find that coverage requirements have not been satisfied for the Q4239 grafts, provided to the Medicare Beneficiary on October 12, 2024. The QIC denied the claim holding that Medicare coverage cannot be extended as Q4239 is experimental and investigational as denoted by the Q code status nomenclature. (File 1, pp. 5-7).

According to Medicare rules and regulations, the use of a drug or biological must be safe and effective and otherwise reasonable and necessary. *See* CMS *Medicare Benefit Policy Manual*, (Internet only publication 100-02), Chapter 15, Section 50.1. Drugs or biologicals approved for marketing by the FDA are considered safe and effective for the purposes of this requirements when used for indications specified on the labeling. Further, Medicare will deny coverage for drugs and biologicals that have not received approval by the FDA unless there are instructions from CMS to the contrary. Drugs and biologicals that contain human cells, tissues and cellular and tissue based products are subject to 21 CFR Part 1271.

Pursuant to 21 C.F.R. § 1271.10(a), for a product to be regulated as a human cells, tissues, and cellular and tissue-based product (HCT/P), it must meet specific regulatory requirements as established under section 361 of the of the Public Health Service (PHS) Act and further delineated in regulations at 21 C.F.R. § 1271.10. In general, if a product does not qualify as an HCT/P, by default the product must be regulated as a drug and/or biological under section 351 of the PHS Act and the Food, Drug, and Cosmetic (FC&C) Act; or must seek approval as a 510K medical device as per the FD&C Act. However, should a product be appropriately designated as an HCT/P under section 361, it may bypass the normal FDA drug/biological/device approval process and go straight to market to be sold to the public. The four criteria are:

(1) The HCT/P is minimally manipulated;
(2) The HCT/P is intended for homologous use only, as reflected by the labeling, advertising, or other indications of the manufacturer's objective intent;
(3) The manufacture of the HCT/P does not involve the combination of the cells or tissues with another article, except for water, crystalloids, or a sterilizing, preserving, or storage agent, provided that the addition of water, crystalloids, or the sterilizing,

preserving, or storage agent does not raise new clinical safety concerns with respect to the HCT/P; and

(4) Either:

(i) The HCT/P does not have a systemic effect and is not dependent upon the metabolic activity of living cells for its primary function; or

(ii) The HCT/P has a systemic effect or is dependent upon the metabolic activity of living cells for its primary function, and:

(a) Is for autologous use;

(b) Is for allogeneic use in a first-degree or second-degree blood relative; or

(c) Is for reproductive use.

*See* 21 C.F.R. § 1271.10(a).

In the instant matter, the Beneficiary was seen on October 12, 2024 for wound management. (File 5, p. 33). The Beneficiary had a medical history significant for diabetes, hypertension, chronic kidney disease, PAD with nonhealing wounds, and venous insufficiently with edema/ulceration. *Id.* He is s/p RLE angiogram performed on August 30, 2024 by vascular surgeon Dr. Emilio Lopez due to a non-healing RLE wound, with subsequent sclerotherapy and follow-up on September 5, 2024. *Id.* The Beneficiary reported that vascular surgeon endorsed the use amniotic skin grafts as an advanced treatment method for the chronic, non-healing RLE venous leg ulcers, as they have stalled healing despite adequate wound care. *Id.* After examination, the plan was to clean, debride, and apply the ordered amniotic skin graft products, Amnio-Maxx, to the affected area. *Id.* The Beneficiary's RLE venous leg ulcers have been present for months (approaching a year) and healing has stalled to date after applying standard of care treatment, including compression therapy, meeting medical necessity, implemented treatment plan has included debridement, pressure relief, infection control, management of exudate-maintenance of a moist environment, and the use classic dressings and non-adherent dressings to the base of the wound bed. *Id.* Total wound dimensions observed were approximately the same as last week, with a cumulative measurable surface area of 106 square centimeters. *Id.*

The Appellant submitted a position paper arguing that the claims at issue were appropriately paid. (File 12, p. 13). The Appellant alleges that the grafts were used in accordance with the product's guidelines, consistent with the appropriate use of an amniotic membrane as regulated by § 361, and that they were reasonable and necessary. (File 12, pp. 11-12). The Appellant also submitted peer reviewed literature regarding the efficacy of amniotic membranes in the management and treatment of wounds. *See*, Files 12, 13.

First Coast Services Options also submitted a position paper. (File 14). First Coast argued that the medical records do not support that the applications of Amnio-Maxx to the right lower extremity venous wounds were reasonable and necessary. (File 14, p. 4). First Coase acknowledged that the Beneficiary had multiple wounds upon which sharp and mechanical debridement were performed. (File 14, p. 7). Amino-Maxx was applied with no wastage. *Id.* The grafts were covered with Adaptic interface dressing and secured with Seri strips. *Id.* First Coast argues that the grafts were used for wound healing purposes as skin substitute grafts are not merely meant to cover or dress wounds, but they are intended to help facilitate wound healing. (File 14, pp. 7-8).

At the hearing, Ms. Ferber argued that the Beneficiary was referred from a vascular surgeon due to non-healing wounds. The services were not experimental or investigational. The graft was used as a barrier. The initial basis for denial was that the claim was processed incorrectly.

Contractors have an obligation to be specific regarding the reason for denial. They throw up a broad argument that could mean anything. For allografts, you have to submit two claims because of the amount. The initial overpayment demand leaves the Appellant guessing what the reason for denial is. First Coast then narrowed the issue claiming that it was non-homologous use, investigational, and not reasonable and necessary. Then QIC said it was homologous use – used the same way for the Beneficiary as it was for the donor. Then the QIC said the claim was denied as experimental only because it has a Q code, which is a false statement.

Dr. Ross testified that in other Medicare cases allografts have been covered and therefore they are experimental. Skin substitutes are taken from another donor site from the patient. The amniotic products are used or processed in a membrane type form to cover over a skin deficit. Once the graft is over the wound, it is used as a protective barrier and scaffolds onto wound itself and heals. A brand name has no clinical significance. It is a human based product. Regarding the produce at issue, it is designated under §361 as human based. It is intended to be used as a wound covering for treatment of chronic wounds. It is a dehydrated product and comes as a membrane or sheet. It lays over the wound as a true covering. This is supported by the medical literature and a staple for these indications. The product was used appropriately per the indications and clinical scenario for this beneficiary.

Dr. Lalia testified that he is owner and operator of the Appellant. He relies on third party contractors for billing. The provider is a mobile clinic and he goes to the patients to perform wound care. He was the caregiver in this case for Beneficiary. He first saw the Beneficiary on September 2, 2024 after being referred from HH and the vascular surgeon. Then again on September 9, 2024, October 4, 2024, and October 12, 2024. Dr. Lalia saw him at his home every week after until December. He had extensive leg ulcers for a year despite receiving conservative care. Given the size of the wounds, they did not heal. The wounds were over 100 square centimeters. With Amnio-Maxx and compression therapy, there was a reduction in size. The guidelines provide for 10 applications.

The Q4239 grafts are a family of amnion patch allografts that use the natural properties of amniotic tissue to help provide mechanical protection to damaged tissue.[3] However, the basic functions of ammonic membrane include serving as a selective barrier for the movement of nutrients between the external and in utero environment and retain fluid in utero. *See*, File 13, p. 71; File 14, p. 10. Repairing or reconstructing damaged cartilage, bones, ligaments, tendons, inflamed tissues, or wound hearing are not basic functions of amniotic tissue donor. Therefore, Q4239 grafts, which are regulated under §361 of the PHS Act, do not meet the definition of homologous use by the recipient according to 21 CFR 1270.3(c). While the Appellant submitted several articles regarding the use of amniotic membranes for wound management, these articles do not support a homologous use. *See*., Exhibits 12, 13. The articles submitted are mostly observational and fail to include a study design or control group that definitely attribute outcomes to the product itself and not other variables. Accordingly, the Appellant has not established that the treatment is safe, effective, and not experimental or investigational in nature. Fort these reasons, Medicare rules and regulations have not been satisfied and coverage cannot be extended for this claim.

I further find that the Appellant is liable for any unpaid/overpaid amounts. Section 1879(a) of the Act provides for waiver of liability of Medicare payments. This section applies only to a denial by reason of "not medically reasonable and necessary," and when the item or service was furnished under assignment or when neither the beneficiary, nor the supplier knew or reasonably

[3] *See*, https://advancedsolution.health/amnio-maxx/#:~:text=Amnion%20Patches,barrier%20in%20numerous%20clinical%20applications..

could have been expected to know that such services would be excluded from Medicare coverage. The CMS Medicare Claims Processing Manual, Pub. 100-04, Chapter 30, §40.1.1 requires that providers be familiar with Medicare rules and regulations. Pursuant to §40.1.1, providers are presumed to have knowledge of published Medicare coverage rules, regulations, and policies. Therefore, it is the Appellant's, and not the Beneficiary's, responsibility to submit sufficient documentation to establish medical necessity and to properly bill a claim. Further, the case file did not include an Advanced Beneficiary Notice providing the Beneficiary written notice that Medicare would not pay the claim. Therefore, the Beneficiary did not know, or could not have reasonably known, that coverage would be denied. As the Appellant knew, or should have known, that the services would not be found reasonable and necessary, the Appellant is not without fault for the overpayment. As such, the Appellant is liable for any unpaid/overpaid amounts. *See*, § 1870 of the Act.

## CONCLUSIONS OF LAW

Medicare coverage requirements have not been satisfied for the Q4239 grafts, provided to the Medicare Beneficiary on October 12, 2024. Therefore, coverage must remain denied. The Appellant is liable for any unpaid/overpaid amounts pursuant to §§ 1879 and 1870 of the Act.

## ORDER

For the reasons discussed above, this decision is **UNFAVORABLE**. The Medicare Administrative Contractor is directed to process Appellant's appeal and claim in accordance with this decision.

**SO ORDERED**

Mark Lacedonia
Administrative Law Judge

DEPARTMENT OF HEALTH AND HUMAN SERVICES (DHHS) / DEPARTMENTAL APPEALS BOARD Form DAB-101 (12/19)

**REQUEST FOR REVIEW OF ADMINISTRATIVE LAW JUDGE (ALJ) MEDICARE DECISION / DISMISSAL**

| | |
|---|---|
| 1. APPELLANT (the party requesting review) | 2. ALJ APPEAL NUMBER (on the decision or dismissal) |
| 3. BENEFICIARY* | 4. MEDICARE NUMBER (Health Insurance Claim Number (HICN) or Medicare Beneficiary Identifier (MBI))* |

*If the request involves multiple claims or multiple beneficiaries, attach a list of beneficiaries, Medicare numbers, and any other information to identify all claims being appealed.

| | |
|---|---|
| 5. PROVIDER, PRACTITIONER, OR SUPPLIER | 6. SPECIFIC ITEM(S) OR SERVICE(S) |

7. Medicare claim type: ☐ Part A ☐ Part B ☐ Part C - Medicare Advantage
☐ Part D - Medicare Prescription Drug Plan ☐ Entitlement/enrollment for Part A or Part B

8. Does this request involve authorization for an item or service that has not yet been furnished?
☐ Yes If Yes, skip to Block 9.
☐ No If No, Specific Dates of Service:

9. If the request involves authorization for a prescription drug under Medicare Part D, would application of the standard appellate timeframe seriously jeopardize the beneficiary's life, health, or ability to regain maximum function (as documented by a physician) such that expedited review is appropriate? ☐ Yes ☐ No

I request that the Medicare Appeals Council review the ALJ's ☐ decision or ☐ dismissal order [check one] dated____________________. I disagree with the ALJ's action because (specify the parts of the ALJ's decision or dismissal you disagree with and why you think the ALJ was wrong):

________________________________________

________________________________________

________________________________________

________________________________________

(Attach additional sheets if you need more space)

**PLEASE ATTACH A COPY OF THE ALJ DECISION OR DISMISSAL ORDER YOU ARE APPEALING.**

| | | | | | |
|---|---|---|---|---|---|
| DATE | | | DATE | | |
| APPELLANT'S NAME (the party requesting review) | | | REPRESENTATIVE'S NAME (include signed appointment of representative if not already submitted) | | |
| ADDRESS | | | ADDRESS | | |
| CITY, STATE, ZIP CODE | | | CITY, STATE, ZIP CODE | | |
| TELEPHONE NUMBER | FAX NUMBER | E-MAIL | TELEPHONE NUMBER | FAX NUMBER | E-MAIL |

(SEE FURTHER INSTRUCTIONS ON PAGE 2)

Form DAB-101 (12/19)

If you have additional evidence, submit it with this request for review. If you need more time, you must request an extension of time in writing now, explaining why you are unable to submit the evidence or legal argument now.

*If you are a provider, supplier, or a beneficiary represented by a provider or supplier, and your case was reconsidered by a Qualified Independent Contractor (QIC), the Medicare Appeals Council will not consider new evidence related to issues the QIC has already considered unless you show that you have a good reason for submitting it for the first time to the Medicare Appeals Council.*

**IMPORTANT: Include the HICN or MBI and ALJ Appeal Number on any letter or other material you submit.**

This request must be received within 60 calendar days after you receive the ALJ's decision or dismissal, unless we extend the time limit for good cause. We assume you received the decision or dismissal 5 calendar days after it was issued, unless you show you received it later. If this request will not be received within 65 calendar days from the date on the decision or dismissal order, please explain why on a separate sheet.

---

You must file your request for review in writing with the Medicare Appeals Council at:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

You may send the request for review by U.S. Mail, a common carrier such as FedEx, or by fax to (202) 565-0227. If you send a fax, please do not also mail a copy. ***You must send a copy of your appeal to the other parties and indicate that all parties, to include all beneficiaries, have been copied on the request for review. For claims involving multiple beneficiaries, you may submit a copy of the cover letters issued or a spreadsheet of the beneficiaries and addresses who received a copy of the request for review.***

If you have any questions about your request for review or wish to request expedited review of a claim involving authorization of your prescription drug under Medicare Part D, you may call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100. You may also visit our web site at www.hhs.gov/dab for additional information on how to file your request for review.

## PRIVACY ACT STATEMENT

The collection of information on this form is authorized by the Social Security Act (section 205(a) of title II, section 702 of title VII, section 1155 of Title XI, and sections 1852(g)(5), 1869(b)(1), 1871, 1872, and 1876(c)(5)(B) of title XVIII, as appropriate). The information provided will be used to further document your claim. Information requested on this form is voluntary, but failure to provide all or any part of the requested information may affect the determination of your claim. Information you furnish on this form may be disclosed by the Department of Health and Human Services or the Social Security Administration to another person or governmental agency only with respect to programs under the Social Security Act and to comply with Federal laws requiring the disclosure of information or the exchange of information between the Department of Health and Human Services, the Social Security Administration, or other agencies.

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Miami, FL**

| | |
|---|---|
| Appeal of: [redacted] | OMHA Appeal No.: **3-15363706639** |
| Beneficiary: | Medicare Part: **B** |
| Medicare No.: | Before: **Mark Lacedonia**<br>Administrative Law Judge |

Index of the Administrative Record and Exhibit List

| **Exhibit Record** | **Administrative File Reference** File Name | Page Range | | |
|---|---|---|---|---|
| Medical & Related: Medical Records | File 5 | 31 | : | 108 |
| Medical & Related: Medical Records | File 6 | 139 | : | 362 |
| Procedural - CMS Levels: Reconsideration: Decision | File 1 | 1 | : | 29 |
| Procedural - CMS Levels: Request for Reconsideration: Acknowledgement | File 3 | 1 | : | 3 |
| Procedural - CMS Levels: Request for Redetermination | File 4 | 1 | : | 2 |
| Procedural - CMS Levels: Redetermination: Overpayment Letter | File 5 | 5 | : | 10 |
| Procedural - CMS Levels: Overpayment Demand Letter | File 5 | 17 | : | 30 |
| Procedural - CMS Levels: General: When amount exceeds $99,999.99 | File 5 | 109 | : | 114 |
| Procedural - CMS Levels: General: Pinnacle Transplant Technologies | File 5 | 115 | : | 125 |
| Procedural - CMS Levels: Redetermination: Decision | File 5 | 126 | : | 146 |
| Procedural - CMS Levels: Request for Reconsideration | File 6 | 1 | : | 10 |
| Procedural - CMS Levels: General: Amnion Patches | File 6 | 36 | : | 46 |
| Procedural - CMS Levels: General: Guidance for FDA Staff | File 6 | 47 | : | 75 |
| Procedural - CMS Levels: General: Exhibit 6 Medical Articles | File 6 | 76 | : | 138 |
| Procedural - OMHA Level: General: Copy of Case File Request | File 10 | 1 | : | 4 |
| Procedural - OMHA Level: General: Position Paper | File 11 | 1 | : | 42 |
| Procedural - OMHA Level: General: Appellants Position Paper Part 1 | File 12 | 1 | : | 754 |
| Procedural - OMHA Level: General: Position Papers Part 2 | File 13 | 1 | : | 1437 |
| Procedural - OMHA Level: General: Position Paper | File 14 | 1 | : | 40 |
| Procedural - OMHA Level: General: Appellant Post Hearing Brief | File 15 | 1 | : | 53 |
| Procedural - OMHA Level: General: Post Hearing Brief Part II | File 17 | 1 | : | 47 |
| Procedural - OMHA Level: General: Signed Document | File 18 | 1 | : | 8 |
| Procedural - OMHA Level: Request for ALJ Hearing: Request, Cover Letter and AOR | File 2 | 1 | : | 7 |
| Procedural - OMHA Level: Response to Notice of Hrg | File 7 | 1 | : | 3 |
| Procedural - OMHA Level: Response to Notice of Hrg: Intent to submit position paper | File 8 | 1 | : | 2 |

Index of the Administrative Record and Exhibit List

| | | | | |
|---|---|---|---|---|
| Procedural - OMHA Level: Notice of Hearing | File 9 | 1 | : | 10 |
| Proceeding (Audios): General: Audio | File 16 | 1 | : | 1 |

| **Non-Exhibit Record** | **Administrative File Reference** | | | |
|---|---|---|---|---|
| | File Name | Page Range | | |
| Records not considered: Duplicate evidence | File 2 | 8 | : | 20 |
| Records not considered: Duplicate evidence | File 5 | 1 | : | 4 |
| Records not considered: Duplicate evidence | File 5 | 11 | : | 16 |
| Records not considered: Duplicate evidence | File 5 | 147 | : | 153 |
| Records not considered: Duplicate evidence | File 6 | 11 | : | 35 |