# Complaint Exhibit 29

Department of Health and Human Services
Office of the Secretary

**OFFICE OF MEDICARE HEARINGS AND APPEALS**

Kansas City Field Office
601 E. 12th Street
Suite 1753
Kansas City, MO 64106-2817
(816)-599-3300
(505) 407-3839 Team Soulikias
(816) 527-0051 (Fax)
(844) 566-6258 (Toll Free)

February 11, 2026

ENGAGE HEALTH SOULTIONS
ATTN: WILLIAM OMALLEY
60 PUBLIC SQ STE 602
WILKES-BARRE, PA 18701

**NOTICE OF DECISION**

Appellant: INDY WOUND CENTER FOR LIMB PRESERVATION & RECONSTRUCTION LLC
OMHA Appeal Number: 3-15485411801

Enclosed is the decision for the above case. This decision is based on the administrative record, including any evidence or testimony presented at the hearing, if one was held. The decision is not precedential, does not release the appellant from civil or criminal liability, and may be reopened at any time if it was procured by fraud or similar fault. In addition, the decision may be reopened within 180 calendar days from the date of the decision for good cause. Good cause exists when there is new and material evidence that was not available or known at the time of the decision and may result in a different conclusion, or when the evidence that was considered clearly shows on its face that an obvious error was made at the time of the decision.

**<u>What if I disagree with the decision?</u>**

If you disagree with the decision, you may file an appeal with the Medicare Appeals Council. Other parties may also appeal the decision. In addition, the Medicare Appeals Council may decide to review the decision on its own motion. If no party appeals the decision and the Medicare Appeals Council does not review the decision, the decision is binding on all parties and you and the other parties will not have the right to ask a federal court to review the decision.

If you are not already represented, you may appoint an attorney or other person to represent you.

**How much time do I have to file an appeal?**

The Medicare Appeals Council must receive your written appeal **within 60 calendar days** of the date that you receive this notice. The Medicare Appeals Council assumes you received this notice 5 calendar days after the date of the notice unless you show that you did not receive it within the 5-day period.

The Medicare Appeals Council will dismiss a late request for review unless you show that you had a good reason for not filing it on time.

**How do I file an appeal?**

To appeal, you must ask the Medicare Appeals Council to review the decision. Your appeal must be in writing, except that a request for expedited review of a Part D decision may be made orally as described below. Your appeal must identify the parts of the decision that you disagree with, and explain why you disagree.

You may submit a written request for review to the Medicare Appeals Council using one of three available methods: mail, fax, or electronic filing (E-File). **Please do not submit your request for review using more than one method**. Regardless of how you file your appeal, **you must always send a copy of your written request for review to the other parties who received a copy of the decision.**

If you are filing a written request for review, you may use the enclosed *Request for Review* (Form DAB-101), or you may write a letter containing the following:

- The beneficiary's/enrollee's name (and telephone number for Part D appeals);
- The beneficiary's/enrollee's Medicare number (Health Insurance Claim Number or Medicare Beneficiary Identifier);
- The item(s), service(s), or specific Part D drug(s) in dispute;
- The specific date(s) the item(s) or service(s) were provided, if applicable;
- For Part D appeals, the plan name;
- For Part D appeals, the OMHA Appeal Number on the adjudicator's decision;
- For Part D appeals requesting expedited review, a statement that you are requesting expedited review;
- The date of the adjudicator's decision (not required for Part D appeals); and
- Your name and signature, and, if applicable, the name and signature of your representative.

**Filing by mail:**

Mail your appeal and a copy of the enclosed decision to:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

**Filing by fax:**

Fax your appeal and a copy of the enclosed decision to **(202) 565-0227.**

**Filing by computer:**

Using your web browser, visit the Medicare Operations Division Electronic Filing System (MOD E-File) website at **https://dab.efile.hhs.gov/mod**.

To file a new appeal using MOD E-File, you will need to register by:

1. Clicking **Register** on the MOD E-File home page;
2. Entering the information requested on the "Register New Account" form; and
3. Clicking **Register Account** at the bottom of the form.

You will use the email address and password you provided during registration to access MOD E-File at **https://dab.efile.hhs.gov/mod/users/new**. You will be able to use MOD E-File to file and access the specific materials for appeals to which you are a party or a party's representative. You may check the status of any appeal on the website homepage without registering.

Once registered, you may file your appeal by:

1. Logging into MOD E-File;
2. Clicking the **File New Appeal** menu button on the top right of the screen;
3. Selecting the type of appeal you are filing (Request for Review or Request for Escalation); and
4. Entering the requested Appeal Information and uploading the requested Appeal Documents on the "File New Appeal - Medicare Operations Division" form. You are required to provide information and documents marked with an asterisk.

At a minimum, the Medicare Appeals Council requires an appellant to file a signed Request for Review and a copy of the enclosed decision. All documents should be submitted in Portable Document Format (PDF) whenever possible. Any document, including a Request for Review, will be deemed to have been filed on a given day, if it is uploaded to MOD E-File on or before 11:59 p.m. EST of that day.

Currently, the documents that may be filed electronically are the:

1. Request for Review;
2. Appointment of Representative form (OMB Form 0938-0950);
3. Copy of Administrative Law Judge or attorney adjudicator decision;
4. Memorandum or brief or other written statement in support of your appeal; and
5. Request to Withdraw your appeal

**No other documents aside from the five (5) listed categories above may be submitted through MOD E-File.**

**Filing by oral request (for expedited review only):**

Oral requests for expedited review of a Part D decision may be made by telephone to **(866) 365-8204.** You must provide the information listed in the bullet points above and a statement that you are requesting an expedited review within 60 calendar days after receipt of this notice of decision. The Medicare Appeals Council will document the oral request in writing and maintain the documentation in the case file.

Please note that your request for review will only be expedited (1) the appeal involves an issue specified in 42 C.F.R. § 423.566(b), but does not include solely a request for payment of a Part D drug that has already been furnished, and (2) the prescribing physician (or other prescriber) indicates, or the Medicare Appeals Council determines, that the standard time frame may seriously jeopardize your life, health, or ability to regain maximum function.

**How will the Medicare Appeals Council respond to my appeal?**

The Medicare Appeals Council will limit its review to the issues raised in the appeal, unless the appeal is filed by an unrepresented beneficiary/enrollee. It may change the parts of the decision that you agree with. It may adopt, modify, or reverse the decision, in whole or in part, or it may send the case back to OMHA for further action. It may also dismiss your appeal.

**Questions?**

You may call or write our office. A toll-free phone number and mailing address are at the top of this notice.

Additional information about filing an appeal with the Medicare Appeals Council is available at http://www.hhs.gov/dab/. You can also call the Medicare Appeals Council's staff in the Medicare

Operations Division of the Departmental Appeals Board at (202) 565-0100 or (866) 365-8204 (toll free), if you have questions about filing an appeal.

cc:

[redacted]

QIC - C2C B North
301 W Bay Street
Ste. 1110
Jacksonville, FL 32202

Enclosures:
OMHA-152, Decision
DAB-101, Request for Review
OMHA-156, Exhibit List

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Kansas City, MO**

| | | | |
|---|---|---|---|
| Appeal of: | **INDY WOUND CENTER FOR LIMB PRESERVATION & RECONSTRUCTION LLC** | OMHA Appeal No.: | **3-15485411801** |
| Beneficiary: | [redacted] | Medicare Part: | B |
| Medicare No.: | | Before: | **Jenifer J. Soulikias** Administrative Law Judge |

## DECISION

After carefully considering the evidence, I enter an **UNFAVORABLE** decision for **Indy Wound Center for Limb Preservation & Reconstruction LLC.** (Appellant). Medicare does not cover the **Membrane Wrap skin substitute and related services** (the Services) provided to [redacted] (Beneficiary) on **July 2, 2024** (the Date of Service).

## PROCEDURAL HISTORY

Appellant's claim for the Services was initially paid, but a Unified Program Integrity Contractor (UPIC) later determined that the Services were not covered and that Appellant received an overpayment. On redetermination and reconsideration, the Medicare Administrative Contractor (MAC) and the Qualified Independent Contractor (QIC) issued unfavorable decisions finding that the Services were not covered and upholding the overpayment determination. The MAC and the QIC also determined that Appellant was liable and that Beneficiary was not liable for the non-covered costs and any overpayment.

Appellant filed at timely request for an Administrative Law Judge (ALJ) hearing. The amount in controversy meets the requirement for an ALJ hearing. Accordingly, Appellant's appeal satisfies all the jurisdictional requirements for an ALJ hearing. 42 C.F.R. §§ 405.1002(a), 405.1006(b)(1).

I conducted a hearing by telephone on **January 8, 2025. William O'Malley** appeared on behalf of Appellant. Non-duplicative exhibits were admitted into the record without objection.

## ISSUES

The issues before the Administrative Law Judge include all of the issues brought out in the initial determination, coverage determination, or organization determination; redetermination; or reconsideration that were not decided entirely in a party's favor, for the claims or other appealed matters specified in the request for hearing.

## APPLICABLE LAW AND POLICY

ALJs are bound to follow all laws, regulations and national coverage determinations (NCDs) pertaining to the Medicare and Medicaid programs. 42 C.F.R. §§ 405.1060, 405.1063. ALJs are not bound by but must give substantial deference to applicable local coverage determinations (LCDs), local medical review policies (LMRPs), and program guidance issued by the Centers for Medicare and Medicaid Services (CMS) such as program memoranda and manual instructions. 42 C.F.R. § 405.1062.

A claimant must furnish sufficient documentary evidence to support the claim. 42 C.F.R. § 424.5(a)(6). And a claimant bears the burden of proof in this appeal to support the claim by a preponderance of the evidence. 5 U.S.C. § 556(d) (setting forth the burden of proof in an administrative law proceeding as requiring a proffered position to be supported with "reliable, probative, and substantial evidence").

**Medicare Coverage.**

Medicare provides coverage for services and supplies, including biologicals and drugs, furnished incident to a physician's professional services. Act §§ 1831, 1832(a)(2)(C), 1861(s)(2)(A). But to be covered, the services or supplies must have been reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member. Act § 1862(a)(1)(A).

Medicare administrative contractors may develop local coverage determinations (LCDs), which are determinations by the contractor as to whether and when an item or service is reasonable and necessary. Act §1869(f)(2)(B); *Medicare Program Integrity Manual* (*MPIM*), pub. 100-08, ch. 13, §§ 13.1.1, 13.5.4. The Medicare Program Integrity Manual (MPIM) provides guidelines to assist contractors in developing LCDs. *MPIM*, ch. 13, § 13.5.4. ALJs may look to these guidelines to determine medical necessity in the absence of an applicable NCD or LCD.

The MPIM states that a contractor shall consider a service to be reasonable and necessary if it is

(a) Safe and effective;

(b) Not experimental or investigational; and

(c) Appropriate, including the duration and frequency that is considered appropriate for the item or service, in terms of whether it is:

- Furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the patient's condition or to improve the function of a malformed body member;
- Furnished in a setting appropriate to the patient's medical needs and condition;
- Ordered and furnished by qualified personnel;
- One that meets, but does not exceed, the patient's medical need; and
- At least as beneficial as an existing and available medically appropriate alternative.

*MPIM*, ch. 13, § 13.5.4. In conducting a review of medical necessity for a service, contractors "shall use the available evidence of general acceptance by the medical community, such as published original research in peer-reviewed medical journals, systematic reviews and meta-analyses, evidence-based consensus statements, and clinical guidelines." *MPIM*, ch. 13, § 13.5.3.

**Limitation on Liability.**

Section 1879 of the Act provides financial relief to beneficiaries, providers, and suppliers by permitting Medicare payment to be made, or requiring refunds to be made, for services and items for which Medicare payment would otherwise be denied. In order to obtain relief under section 1879, the payment for the services or items furnished must have been denied for one of the reasons specified in section 1879, which includes non-coverage under section 1862(a)(1) of the Act because services or items were "not medically reasonable and necessary." 42 C.F.R. § 411.400. In addition, relief may be provided under section 1879 only if the beneficiary and the provider or supplier did not know and reasonably could not have been expected to know that the items or services were excluded from coverage. 42 C.F.R. 411.400.

Providers and suppliers participating in the Medicare program are considered to have constructive knowledge of published Medicare statues and regulations, CMS manual instructions, bulletins, and contractors' written guides and directives, and standards of practice in conjunction with Medicare reimbursement policies. 42 C.F.R. § 411.406; *Medicare Claims Processing Manual (MCPM),* pub. 100-04, ch. 30 §§ 30.2, 40.1.

A beneficiary is considered to have known that an item or service is not covered if the beneficiary received valid written notice of non-coverage or notice of a recent claim denial for the same or similar item or service. 42 C.F.R. § 411.404; *MCPM,* ch. 30, §§ 30, 30.1, 30.1.1. If a beneficiary did not know or receive notice that Medicare would deny payment, the beneficiary is not financially liable for the non-covered services. Act § 1879(a)-(g); *MCPM,* ch. 30, § 30.

In the event of an overpayment, section 1870(b) of the Act provides the authority to waive the overpayment. Generally, Medicare waives overpayments if a provider or supplier is without fault in causing the overpayment. Act § 1870(b). A provider or supplier is considered to be without fault if it exercised reasonable care in billing for, and accepting, the payment. Act § 1870(b).

## FINDINGS OF FACT AND ANALYSIS

**Medicare Coverage.**

At issue is Appellant's claim for wound surgery services and the application of a skin substitute to a venous ulcer on Beneficiary's left anterior leg.[1] The MAC and QIC denied payment by concluding that the skin substitute product used was experimental or investigational and that the use of a skin substitute product was not reasonable and necessary. (File 5 at 4; File 2 at 4.)

There is no NCD or LCD addressing the reasonable and necessary threshold for coverage of a skin substitute product. In the absence of an applicable NCD or LCD, I may look to the guidelines to be used by contractors in developing LCDs. *MPIM,* ch. 13, § 13.5.4. Under these guidelines, an item is reasonable and necessary if it is safe and effective, not experimental or investigational, and appropriate. *MPIM,* ch. 13, § 13.5.4. And in conducting a review of medical necessity for a service, contractors "shall use the available evidence of general acceptance by the medical community, such as published original research in peer-reviewed medical journals, systematic reviews and meta-analyses, and evidence-based consensus statements and clinical guidelines." *MPIM,* ch. 13, § 13.5.3. The services also must have been appropriate to the patient's medical needs and condition. *MPIM,* ch. 13, § 13.5.4.

[1] Although Beneficiary had multiple wounds on the lower extremities, a skin substitute product was applied only to a wound on the left anterior leg on July 2, 2024. (File 4 at 17-22.)

Beneficiary in this case had a history of multiple longstanding venous insufficiency ulcers to the bilateral lower extremities. (File 4 at 14.) Beneficiary's prior medical history was also significant for morbid obesity, chronic bilateral lower extremity edema, history of deep vein thrombosis, hypertension, hyperlipidemia, pulmonary hypertension, and anemia. (File 4 at 86.)

Beneficiary was admitted to a hospital on May 8, 2024, after having been found covered in her own blood and unable to get up. (File 4 at 86.) She was diagnosed with septic/hemorrhagic shock, acute kidney injury, and metabolic acidosis. (File 4 at 86.) Beneficiary also had wounds on both lower extremities. (File 4 at 87-88.) Beneficiary was very familiar to the hospital care team from previous admissions for severe chronic leg wounds, most recently in January 2024. (File 4 at 86.) She had been at a long-term acute care hospital and was discharged home six weeks prior to the May 8 hospital admission. (File 4 at 86.) She had a steady decline after returning home. (File 4 at 86.) In the past, Beneficiary demonstrated medical and treatment noncompliance. (File 4 at 86.) She tended to refuse care and change her own dressings. (File 4 at 86.) Beneficiary also had a history of refusing wound VAC due to a previous bad experience. (File 4 at 86.) She had an inpatient plastics consult on April 19, 2023, but did not follow up. (File 4 at 86.)

With respect to the wounds present on May 8, 2024, Beneficiary reported recently using silicone primary dressing for non-stick properties. (File 4 at 86.) A bilateral lower extremity CT was negative for abscess or soft tissue gas on admission. (File 4 at 86.) Medical records indicated that skin substitutes were applied to the lower extremities on May 11, 2024. (File 4 at 86.) On May 15, 2024, Beneficiary was noted to have had a nearly circumferential wound around the entire left calf with a depth of 0.2 cm. (File 4 at 88.) No measurements were taken due to Beneficiary's severe pain with any touch. (File 4 at 88.)

Beneficiary was transferred to another facility on May 17, 2024. (File 4 at 96.) On June 3, 2024, a venous ulcer was noted on her lower left leg that measured 18 cm by 32 cm by 0.1 cm. (File 4 at 112.)

Beneficiary was admitted to a rehabilitation hospital on June 11, 2024, where she received wound care. (File 4 at 28-99.) There were limited notations detailing the progress of the wound during this admission, with the first measurements of the left anterior leg wound noted on June 21, 2024. (File 4 at 28-99.) On June 21, 2024, the left anterior leg wound measured 9 cm by 32 cm by 0.4 cm. (File 4 at 34, 36.)

Beneficiary was referred to Appellant for advanced wound care. (File 4 at 14.) When evaluated on July 2, 2024, Beneficiary reported dealing with wounds off and on for 6 plus years. (File 4 at 14.) Beneficiary stated she had seen multiple providers at various wound care centers and hospitals. (File 4 at 14.) She had tried topical treatments (antibiotic ointment, steroid creams, medihoney, silver based topics etc.), alginates, hydrofera, wet to dry with saline and betadine. (File 4 at 14.) Beneficiary reported also having bedside and surgical debridements. (File 4 at 14.) Despite these efforts, her wounds had been resistant to healing. (File 4 at 14.) Beneficiary reported that she had been on both IV and oral antibiotics for off and on cellulitis and for other systemic pathologies. (File 4 at 14.)

At the time of the skin substitute application, Beneficiary was at home with the aid of home health doing dressing changes three times weekly with xeroform, ABD, kerlix, ACE from forefoot to below knee bilateral. (File 4 at 14.)

Although Beneficiary had multiple wounds on the lower extremities, a skin substitute product was applied only to a wound on the left anterior leg on July 2, 2024. (File 4 at 17-22.) The left anterior leg wound was noted to have had an onset date of June 3, 2024, and was described as a chronic venous ulcer of other part of left lower leg with fat layer exposed. (File 4 at 17.) The ulcer bed had exposed subcutaneous tissue. (File 4 at 17.) It was a full thickness ulcer. (File 4 at 17.) The skin around the ulcer was normal. (File 4 at 17.) The ulcer was not malodorous. (File 4 at 17.) There were no signs of epithelialization. (File 4 at 17.) The ulcer border was well defined. (File 4 at 17.) There was over 50 percent granulation with a confluent pattern of beefy red quality. (File 4 at 17.) There was between 0 and 25 percent nonviable material of slough/fibrin quality. (File 4 at 17.) The ulcer measured 8.2 cm by 24.3 cm by 0.2 cm. (File 4 at 17.) The ulcer had a minimum amount of drainage. (File 4 at 17.) The drainage was serosanguineous. (File 4 at 17.)

Appellant applied a BioLab Membrane Wrap product to the wound. (File 4 at 22, 25-26.) The treating practitioner stated,

> [t]reatment with a cellular and/or tissue based therapy is reasonable and necessary because the ulcer failed to show evidence of healing despite 30 days of comprehensive, conservative care. Prior treatments that failed include nutritional optimization, moist wound care, management of infection and debridement of necrotic material. The patient currently has a full thickness tissue defect not involving tendon, muscle, joint capsule or exhibiting exposed bone or sinus tracts, with a clean granular base. There is no evidence of a wound infection and bacterial colonization has been controlled. There is no evidence of underlying osteomyelitis or cellulitis. Adequate treatment of underlying conditions that contributed to the ulcer have been provided.

(File 4 at 26.)

The BioLab Membrane Wrap is a human tissue allograft derived from the amniotic membrane regulated and approved for use as a human cellular and tissue based product (HCT/P) by the US Food and Drug Administration (FDA) under 21 C.F.R. Part 1271. (File 4 at 275-278.) It was approved for use by the FDA when intended for use as a barrier and to provide protective coverage. (File 4 at 277.)

Although approved for use by the FDA, this FDA approval is not sufficient to demonstrate that the Membrane Wrap skin substitute product is not experimental and is reasonable and necessary for Medicare coverage purposes. 68 Fed. Reg. 55634, 55636 (September 26, 2003). And the evidence submitted did not demonstrate that the Membrane Wrap product was not experimental.

The only published studies and reviews submitted by Appellant were evaluations of the efficacy of amniotic membrane derivatives generally. (File 4 at 202-78.) Appellant did not submit published original research studies or systematic reviews and meta-analyses that evaluated the efficacy of the BioLab Membrane Wrap product. (File 10, Hearing Audio.) And Appellant stated that although studies of the BioLab Membrane Wrap product were in the process of being conducted, there were no studies that have been published concerning the BioLab Membrane Wrap. (File 10, Hearing Audio.) Studies of the efficacy of amniotic membrane derivatives generally are not sufficient to establish the efficacy of the BioLab Membrane Wrap product.

Additionally, the medical records submitted were not sufficient to establish that the use of the BioLab Membrane Wrap was reasonable and necessary in this case. Although Beneficiary had

been having trouble with venous leg ulcers for years, the wound at issue was not noted until mid-May 2024. The documentation of the nature of the wound and of the response of the wound to conservative treatment measures was sporadic. There were limited measurements taken of the wound, but the records did demonstrate that the size of the wound decreased from 18 cm by 32 cm by 0.1 cm on June 3, 2024, to 8.2 cm by 24.3 cm by 0.2 cm on July 2, 2024. (File 4 at 17, 112.) And although the wound was serious, the medical records submitted did not show that the wound was not responding to more conservative treatment.

After reviewing the entire record including the testimony presented at the hearing, I find that the Services were not reasonable and necessary and are not covered by Medicare. Appellant was not entitled to payment for the Services. And an overpayment was made.

**Limitation on Liability.**

Beneficiary did not receive notice that Medicare would not cover or pay for the Services, and Beneficiary is not liable for the costs of the Services.

The Medicare guidelines set forth the requirements for coverage and payment. And Appellant is expected to have known that the Services would not be covered or payable based on the applicable guidelines. See 42 C.F.R. § 411.406. Therefore, Appellant remains responsible for the costs of the Services.

Under section 1870 of the Act, recovery of an overpayment from a provider or supplier may be waived if the provider or supplier was not at fault in creating the overpayment. The provider or supplier is considered to be without fault if it exercised reasonable care in billing for, and accepting, the payment. Act § 1870(b).

Since a supplier or provider is expected to know the requirements of Medicare claims, Appellant is not without fault because it billed and received payment for items or services that it should have known were not covered or payable under the Medicare program. Therefore, the overpayment recovery cannot be waived under section 1870 of the Act, and Appellant is liable for the overpayment amount.

## CONCLUSIONS OF LAW

I find that the Services are not covered by Medicare. Appellant was not entitled to payment for the Services. An overpayment was made. Beneficiary is not liable for the Services or any overpayment. Appellant should have known that the Services were not covered and is liable for the Services and any overpayment.

## ORDER

This decision is **UNFAVORABLE**. I direct the Medicare Administrative Contractor to process the claim in accordance with this decision.

**SO ORDERED**

Jenifer J. Soulikias
Administrative Law Judge

DEPARTMENT OF HEALTH AND HUMAN SERVICES (DHHS) / DEPARTMENTAL APPEALS BOARD Form DAB-101 (12/19)

**REQUEST FOR REVIEW OF ADMINISTRATIVE LAW JUDGE (ALJ) MEDICARE DECISION / DISMISSAL**

| 1. APPELLANT (the party requesting review) | 2. ALJ APPEAL NUMBER (on the decision or dismissal) |
|---|---|
| 3. BENEFICIARY* | 4. MEDICARE NUMBER (Health Insurance Claim Number (HICN) or Medicare Beneficiary Identifier (MBI))* |

*If the request involves multiple claims or multiple beneficiaries, attach a list of beneficiaries, Medicare numbers, and any other information to identify all claims being appealed.

| 5. PROVIDER, PRACTITIONER, OR SUPPLIER | 6. SPECIFIC ITEM(S) OR SERVICE(S) |
|---|---|

7. Medicare claim type: ☐ Part A ☐ Part B ☐ Part C - Medicare Advantage
☐ Part D - Medicare Prescription Drug Plan ☐ Entitlement/enrollment for Part A or Part B

8. Does this request involve authorization for an item or service that has not yet been furnished?
☐ Yes If Yes, skip to Block 9.
☐ No If No, Specific Dates of Service:

9. If the request involves authorization for a prescription drug under Medicare Part D, would application of the standard appellate timeframe seriously jeopardize the beneficiary's life, health, or ability to regain maximum function (as documented by a physician) such that expedited review is appropriate? ☐ Yes ☐ No

I request that the Medicare Appeals Council review the ALJ's ☐ decision or ☐ dismissal order [check one] dated__________________________. I disagree with the ALJ's action because (specify the parts of the ALJ's decision or dismissal you disagree with and why you think the ALJ was wrong):

________________________________________________________________

________________________________________________________________

________________________________________________________________

________________________________________________________________

(Attach additional sheets if you need more space)

**PLEASE ATTACH A COPY OF THE ALJ DECISION OR DISMISSAL ORDER YOU ARE APPEALING.**

| DATE | | | DATE | | |
|---|---|---|---|---|---|
| APPELLANT'S NAME (the party requesting review) | | | REPRESENTATIVE'S NAME (include signed appointment of representative if not already submitted) | | |
| ADDRESS | | | ADDRESS | | |
| CITY, STATE, ZIP CODE | | | CITY, STATE, ZIP CODE | | |
| TELEPHONE NUMBER | FAX NUMBER | E-MAIL | TELEPHONE NUMBER | FAX NUMBER | E-MAIL |

(SEE FURTHER INSTRUCTIONS ON PAGE 2)

If you have additional evidence, submit it with this request for review. If you need more time, you must request an extension of time in writing now, explaining why you are unable to submit the evidence or legal argument now.

*If you are a provider, supplier, or a beneficiary represented by a provider or supplier, and your case was reconsidered by a Qualified Independent Contractor (QIC), the Medicare Appeals Council will not consider new evidence related to issues the QIC has already considered unless you show that you have a good reason for submitting it for the first time to the Medicare Appeals Council.*

**IMPORTANT: Include the HICN or MBI and ALJ Appeal Number on any letter or other material you submit.**

This request must be received within 60 calendar days after you receive the ALJ's decision or dismissal, unless we extend the time limit for good cause. We assume you received the decision or dismissal 5 calendar days after it was issued, unless you show you received it later. If this request will not be received within 65 calendar days from the date on the decision or dismissal order, please explain why on a separate sheet.

---

You must file your request for review in writing with the Medicare Appeals Council at:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

You may send the request for review by U.S. Mail, a common carrier such as FedEx, or by fax to (202) 565-0227. If you send a fax, please do not also mail a copy. ***You must send a copy of your appeal to the other parties and indicate that all parties, to include all beneficiaries, have been copied on the request for review. For claims involving multiple beneficiaries, you may submit a copy of the cover letters issued or a spreadsheet of the beneficiaries and addresses who received a copy of the request for review.***

If you have any questions about your request for review or wish to request expedited review of a claim involving authorization of your prescription drug under Medicare Part D, you may call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100. You may also visit our web site at www.hhs.gov/dab for additional information on how to file your request for review.

## PRIVACY ACT STATEMENT

The collection of information on this form is authorized by the Social Security Act (section 205(a) of title II, section 702 of title VII, section 1155 of Title XI, and sections 1852(g)(5), 1869(b)(1), 1871, 1872, and 1876(c)(5)(B) of title XVIII, as appropriate). The information provided will be used to further document your claim. Information requested on this form is voluntary, but failure to provide all or any part of the requested information may affect the determination of your claim. Information you furnish on this form may be disclosed by the Department of Health and Human Services or the Social Security Administration to another person or governmental agency only with respect to programs under the Social Security Act and to comply with Federal laws requiring the disclosure of information or the exchange of information between the Department of Health and Human Services, the Social Security Administration, or other agencies.

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Kansas City, MO**

Appeal of: **INDY WOUND CENTER FOR LIMB PRESERVATION & RECONSTRUCTION**

Beneficiary: [redacted]

Medicare No.: [redacted]

OMHA Appeal No.: **3-15485411801**

Medicare Part: **B**

Before: **Jenifer J. Soulikias**
Administrative Law Judge

Index of the Administrative Record and Exhibit List

| **Exhibit Record** | **Administrative File Reference** File Name | Page Range | | |
|---|---|---|---|---|
| Procedural - CMS Levels: QIC Decision | File 2 | 1 | : | 16 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 3 | 1 | : | 3 |
| Procedural - CMS Levels: Request for Reconsideration | File 4 | 1 | : | 278 |
| Procedural - CMS Levels: Redetermination: Case File | File 5 | 1 | : | 43 |
| Procedural - CMS Levels: Redetermination: cover page | File 6 | 1 | : | 1 |
| Procedural - OMHA Level: Request for ALJ Hearing: w/AOR, QIC dec and docs | File 1 | 1 | : | 21 |
| Procedural - OMHA Level: Notice of Hearing | File 7 | 1 | : | 9 |
| Procedural - OMHA Level: Response to Notice of Hearing: Appellant | File 8 | 1 | : | 2 |
| Procedural - OMHA Level: Notice of Intent: UPIC - Non-Party - Written | File 9 | 1 | : | 2 |
| Proceeding (Audios): Hearing | File 10 | 1 | : | 1 |

Department of Health and Human Services
Office of the Secretary

**OFFICE OF MEDICARE HEARINGS AND APPEALS**

Kansas City Field Office
601 E. 12th Street
Suite 1753
Kansas City, MO 64106-2817
(816)-599-3300
(505) 407-3839 Team Soulikias
(816) 527-0051 (Fax)
(844) 566-6258 (Toll Free)

February 11, 2026

ENGAGE HEALTH SOULTIONS
60 PUBLIC SQUARE SUITE 602
WILKES- BARRE, PA 18701

## NOTICE OF DECISION

Appellant: INDY WOUND CENTER FOR LIMB PRESERVATION & RECONSTRUCTION LLC
OMHA Appeal Number: 3-15485412389

Enclosed is the decision for the above case. This decision is based on the administrative record, including any evidence or testimony presented at the hearing, if one was held. The decision is not precedential, does not release the appellant from civil or criminal liability, and may be reopened at any time if it was procured by fraud or similar fault. In addition, the decision may be reopened within 180 calendar days from the date of the decision for good cause. Good cause exists when there is new and material evidence that was not available or known at the time of the decision and may result in a different conclusion, or when the evidence that was considered clearly shows on its face that an obvious error was made at the time of the decision.

### What if I disagree with the decision?

If you disagree with the decision, you may file an appeal with the Medicare Appeals Council. Other parties may also appeal the decision. In addition, the Medicare Appeals Council may decide to review the decision on its own motion. If no party appeals the decision and the Medicare Appeals Council does not review the decision, the decision is binding on all parties and you and the other parties will not have the right to ask a federal court to review the decision.

If you are not already represented, you may appoint an attorney or other person to represent you.

**<u>How much time do I have to file an appeal?</u>**

The Medicare Appeals Council must receive your written appeal **within 60 calendar days** of the date that you receive this notice. The Medicare Appeals Council assumes you received this notice 5 calendar days after the date of the notice unless you show that you did not receive it within the 5-day period.

The Medicare Appeals Council will dismiss a late request for review unless you show that you had a good reason for not filing it on time.

**<u>How do I file an appeal?</u>**

To appeal, you must ask the Medicare Appeals Council to review the decision. Your appeal must be in writing, except that a request for expedited review of a Part D decision may be made orally as described below. Your appeal must identify the parts of the decision that you disagree with, and explain why you disagree.

You may submit a written request for review to the Medicare Appeals Council using one of three available methods: mail, fax, or electronic filing (E-File). **<u>Please do not submit your request for review using more than one method</u>**. Regardless of how you file your appeal, **you must always send a copy of your written request for review to the other parties who received a copy of the decision.**

If you are filing a written request for review, you may use the enclosed *Request for Review* (Form DAB-101), or you may write a letter containing the following:

- The beneficiary's/enrollee's name (and telephone number for Part D appeals);
- The beneficiary's/enrollee's Medicare number (Health Insurance Claim Number or Medicare Beneficiary Identifier);
- The item(s), service(s), or specific Part D drug(s) in dispute;
- The specific date(s) the item(s) or service(s) were provided, if applicable;
- For Part D appeals, the plan name;
- For Part D appeals, the OMHA Appeal Number on the adjudicator's decision;
- For Part D appeals requesting expedited review, a statement that you are requesting expedited review;
- The date of the adjudicator's decision (not required for Part D appeals); and
- Your name and signature, and, if applicable, the name and signature of your representative.

**Filing by mail:**

Mail your appeal and a copy of the enclosed decision to:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

**Filing by fax:**

Fax your appeal and a copy of the enclosed decision to **(202) 565-0227.**

**Filing by computer:**

Using your web browser, visit the Medicare Operations Division Electronic Filing System (MOD E-File) website at **https://dab.efile.hhs.gov/mod**.

To file a new appeal using MOD E-File, you will need to register by:

1. Clicking **Register** on the MOD E-File home page;
2. Entering the information requested on the "Register New Account" form; and
3. Clicking **Register Account** at the bottom of the form.

You will use the email address and password you provided during registration to access MOD E-File at **https://dab.efile.hhs.gov/mod/users/new**. You will be able to use MOD E-File to file and access the specific materials for appeals to which you are a party or a party's representative. You may check the status of any appeal on the website homepage without registering.

Once registered, you may file your appeal by:

1. Logging into MOD E-File;
2. Clicking the **File New Appeal** menu button on the top right of the screen;
3. Selecting the type of appeal you are filing (Request for Review or Request for Escalation); and
4. Entering the requested Appeal Information and uploading the requested Appeal Documents on the "File New Appeal - Medicare Operations Division" form. You are required to provide information and documents marked with an asterisk.

At a minimum, the Medicare Appeals Council requires an appellant to file a signed Request for Review and a copy of the enclosed decision. All documents should be submitted in Portable Document Format (PDF) whenever possible. Any document, including a Request for Review, will be deemed to have been filed on a given day, if it is uploaded to MOD E-File on or before 11:59 p.m. EST of that day.

Currently, the documents that may be filed electronically are the:

1. Request for Review;
2. Appointment of Representative form (OMB Form 0938-0950);
3. Copy of Administrative Law Judge or attorney adjudicator decision;
4. Memorandum or brief or other written statement in support of your appeal; and
5. Request to Withdraw your appeal

**No other documents aside from the five (5) listed categories above may be submitted through MOD E-File.**

**Filing by oral request (for expedited review only):**

Oral requests for expedited review of a Part D decision may be made by telephone to **(866) 365-8204.** You must provide the information listed in the bullet points above and a statement that you are requesting an expedited review within 60 calendar days after receipt of this notice of decision. The Medicare Appeals Council will document the oral request in writing and maintain the documentation in the case file.

Please note that your request for review will only be expedited (1) the appeal involves an issue specified in 42 C.F.R. § 423.566(b), but does not include solely a request for payment of a Part D drug that has already been furnished, and (2) the prescribing physician (or other prescriber) indicates, or the Medicare Appeals Council determines, that the standard time frame may seriously jeopardize your life, health, or ability to regain maximum function.

**How will the Medicare Appeals Council respond to my appeal?**

The Medicare Appeals Council will limit its review to the issues raised in the appeal, unless the appeal is filed by an unrepresented beneficiary/enrollee. It may change the parts of the decision that you agree with. It may adopt, modify, or reverse the decision, in whole or in part, or it may send the case back to OMHA for further action. It may also dismiss your appeal.

**Questions?**

You may call or write our office. A toll-free phone number and mailing address are at the top of this notice.

Additional information about filing an appeal with the Medicare Appeals Council is available at http://www.hhs.gov/dab/. You can also call the Medicare Appeals Council's staff in the Medicare

Operations Division of the Departmental Appeals Board at (202) 565-0100 or (866) 365-8204 (toll free), if you have questions about filing an appeal.

cc:

[redacted]

QIC - C2C B North
301 W Bay Street
Ste. 1110
Jacksonville, FL 32202

Enclosures:
OMHA-152, Decision
DAB-101, Request for Review
OMHA-156, Exhibit List

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Kansas City, MO**

| | |
|---|---|
| Appeal of: **INDY WOUND CENTER FOR LIMB PRESERVATION & RECONSTRUCTION LLC** | OMHA Appeal No.: **3-15485412389** |
| Beneficiary: [redacted] | Medicare Part: B |
| Medicare No.: [redacted] | Before: **Jenifer J. Soulikias**<br>Administrative Law Judge |

## DECISION

After carefully considering the evidence, I enter an **UNFAVORABLE** decision for **Indy Wound Center for Limb Preservation & Reconstruction LLC.** (Appellant). Medicare does not cover the **Membrane Wrap skin substitute and related services** (the Services) provided to [redacted] (Beneficiary) on **July 2, 2024** (the Date of Service).

## PROCEDURAL HISTORY

Appellant's claim for the Services was initially paid, but a Unified Program Integrity Contractor (UPIC) later determined that the Services were not covered and that Appellant received an overpayment. On redetermination and reconsideration, the Medicare Administrative Contractor (MAC) and the Qualified Independent Contractor (QIC) issued unfavorable decisions finding that the Services were not covered and upholding the overpayment determination. The MAC and the QIC also determined that Appellant was liable and that Beneficiary was not liable for the non-covered costs and any overpayment.

Appellant filed at timely request for an Administrative Law Judge (ALJ) hearing. The amount in controversy meets the requirement for an ALJ hearing. Accordingly, Appellant's appeal satisfies all the jurisdictional requirements for an ALJ hearing. 42 C.F.R. §§ 405.1002(a), 405.1006(b)(1).

I conducted a hearing by telephone on **January 8, 2025. William O'Malley** appeared on behalf of Appellant. The MAC submitted a position paper as a non-party participant. Non-duplicative exhibits were admitted into the record without objection.

## ISSUES

The issues before the Administrative Law Judge include all of the issues brought out in the initial determination, coverage determination, or organization determination; redetermination; or reconsideration that were not decided entirely in a party's favor, for the claims or other appealed matters specified in the request for hearing.

## APPLICABLE LAW AND POLICY

ALJs are bound to follow all laws, regulations and national coverage determinations (NCDs) pertaining to the Medicare and Medicaid programs. 42 C.F.R. §§ 405.1060, 405.1063. ALJs are not bound by but must give substantial deference to applicable local coverage determinations (LCDs), local medical review policies (LMRPs), and program guidance issued by the Centers for Medicare and Medicaid Services (CMS) such as program memoranda and manual instructions. 42 C.F.R. § 405.1062.

A claimant must furnish sufficient documentary evidence to support the claim. 42 C.F.R. § 424.5(a)(6). And a claimant bears the burden of proof in this appeal to support the claim by a preponderance of the evidence. 5 U.S.C. § 556(d) (setting forth the burden of proof in an administrative law proceeding as requiring a proffered position to be supported with "reliable, probative, and substantial evidence").

**Medicare Coverage.**

Medicare provides coverage for services and supplies, including biologicals and drugs, furnished incident to a physician's professional services. Act §§ 1831, 1832(a)(2)(C), 1861(s)(2)(A). But to be covered, the services or supplies must have been reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member. Act § 1862(a)(1)(A).

Medicare administrative contractors may develop local coverage determinations (LCDs), which are determinations by the contractor as to whether and when an item or service is reasonable and necessary. Act §1869(f)(2)(B); *Medicare Program Integrity Manual* (*MPIM*), pub. 100-08, ch. 13, §§ 13.1.1, 13.5.4. The Medicare Program Integrity Manual (MPIM) provides guidelines to assist contractors in developing LCDs. *MPIM*, ch. 13, § 13.5.4. ALJs may look to these guidelines to determine medical necessity in the absence of an applicable NCD or LCD.

The MPIM states that a contractor shall consider a service to be reasonable and necessary if it is

(a) Safe and effective;

(b) Not experimental or investigational; and

(c) Appropriate, including the duration and frequency that is considered appropriate for the item or service, in terms of whether it is:

- Furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the patient's condition or to improve the function of a malformed body member;
- Furnished in a setting appropriate to the patient's medical needs and condition;
- Ordered and furnished by qualified personnel;
- One that meets, but does not exceed, the patient's medical need; and
- At least as beneficial as an existing and available medically appropriate alternative.

*MPIM*, ch. 13, § 13.5.4. In conducting a review of medical necessity for a service, contractors "shall use the available evidence of general acceptance by the medical community, such as published original research in peer-reviewed medical journals, systematic reviews and meta-analyses, evidence-based consensus statements, and clinical guidelines." *MPIM*, ch. 13, § 13.5.3.

**Limitation on Liability.**

Section 1879 of the Act provides financial relief to beneficiaries, providers, and suppliers by permitting Medicare payment to be made, or requiring refunds to be made, for services and items for which Medicare payment would otherwise be denied. In order to obtain relief under section 1879, the payment for the services or items furnished must have been denied for one of the reasons specified in section 1879, which includes non-coverage under section 1862(a)(1) of the Act because services or items were "not medically reasonable and necessary." 42 C.F.R. § 411.400. In addition, relief may be provided under section 1879 only if the beneficiary and the provider or supplier did not know and reasonably could not have been expected to know that the items or services were excluded from coverage. 42 C.F.R. 411.400.

Providers and suppliers participating in the Medicare program are considered to have constructive knowledge of published Medicare statues and regulations, CMS manual instructions, bulletins, and contractors' written guides and directives, and standards of practice in conjunction with Medicare reimbursement policies. 42 C.F.R. § 411.406; *Medicare Claims Processing Manual (MCPM),* pub. 100-04, ch. 30 §§ 30.2, 40.1.

A beneficiary is considered to have known that an item or service is not covered if the beneficiary received valid written notice of non-coverage or notice of a recent claim denial for the same or similar item or service. 42 C.F.R. § 411.404; *MCPM,* ch. 30, §§ 30, 30.1, 30.1.1. If a beneficiary did not know or receive notice that Medicare would deny payment, the beneficiary is not financially liable for the non-covered services. Act § 1879(a)-(g); *MCPM,* ch. 30, § 30.

In the event of an overpayment, section 1870(b) of the Act provides the authority to waive the overpayment. Generally, Medicare waives overpayments if a provider or supplier is without fault in causing the overpayment. Act § 1870(b). A provider or supplier is considered to be without fault if it exercised reasonable care in billing for, and accepting, the payment. Act § 1870(b).

## FINDINGS OF FACT AND ANALYSIS

**Medicare Coverage.**

At issue is Appellant's claim for wound surgery services and the application of a skin substitute to a venous ulcer on Beneficiary's left anterior leg.[1] The MAC and QIC denied payment by concluding that the skin substitute product used was experimental or investigational and that the use of a skin substitute product was not reasonable and necessary. (File 5 at 4-5; File 2 at 3-5.)

There is no NCD or LCD addressing the reasonable and necessary threshold for coverage of a skin substitute product. In the absence of an applicable NCD or LCD, I may look to the guidelines to be used by contractors in developing LCDs. *MPIM,* ch. 13, § 13.5.4. Under these guidelines, an item is reasonable and necessary if it is safe and effective, not experimental or investigational, and appropriate. *MPIM,* ch. 13, § 13.5.4. And in conducting a review of medical necessity for a service, contractors "shall use the available evidence of general acceptance by the medical community, such as published original research in peer-reviewed medical journals, systematic reviews and meta-analyses, and evidence-based consensus statements and clinical guidelines." *MPIM,* ch. 13, § 13.5.3. The services also must have been appropriate to the patient's medical needs and condition. *MPIM,* ch. 13, § 13.5.4.

[1] Although Beneficiary had multiple wounds on the lower extremities, a skin substitute product was applied only to a wound on the left anterior leg on July 2, 2024. (File 4 at 17-22.)

Beneficiary in this case had a history of multiple longstanding venous insufficiency ulcers to the bilateral lower extremities. (File 4 at 14.) Beneficiary's prior medical history was also significant for morbid obesity, chronic bilateral lower extremity edema, history of deep vein thrombosis, hypertension, hyperlipidemia, pulmonary hypertension, and anemia. (File 4 at 86.)

Beneficiary was admitted to a hospital on May 8, 2024, after having been found covered in her own blood and unable to get up. (File 4 at 86.) She was diagnosed with septic/hemorrhagic shock, acute kidney injury, and metabolic acidosis. (File 4 at 86.) Beneficiary also had wounds on both lower extremities. (File 4 at 87-88.) Beneficiary was very familiar to the hospital care team from previous admissions for severe chronic leg wounds, most recently in January 2024. (File 4 at 86.) She had been at a long-term acute care hospital and was discharged home six weeks prior to the May 8 hospital admission. (File 4 at 86.) She had a steady decline after returning home. (File 4 at 86.) In the past, Beneficiary demonstrated medical and treatment noncompliance. (File 4 at 86.) She tended to refuse care and change her own dressings. (File 4 at 86.) Beneficiary also had a history of refusing wound VAC due to a previous bad experience. (File 4 at 86.) She had an inpatient plastics consult on April 19, 2023, but did not follow up. (File 4 at 86.)

With respect to the wounds present on May 8, 2024, Beneficiary reported recently using silicone primary dressing for non-stick properties. (File 4 at 86.) A bilateral lower extremity CT was negative for abscess or soft tissue gas on admission. (File 4 at 86.) Medical records indicated that skin substitutes were applied to the lower extremities on May 11, 2024. (File 4 at 86.) On May 15, 2024, Beneficiary was noted to have had a nearly circumferential wound around the entire left calf with a depth of 0.2 cm. (File 4 at 88.) No measurements were taken due to Beneficiary's severe pain with any touch. (File 4 at 88.)

Beneficiary was transferred to another facility on May 17, 2024. (File 4 at 96.) On June 3, 2024, a venous ulcer was noted on her lower left leg that measured 18 cm by 32 cm by 0.1 cm. (File 4 at 112.)

Beneficiary was admitted to a rehabilitation hospital on June 11, 2024, where she received wound care. (File 4 at 28-99.) There were limited notations detailing the progress of the wound during this admission, with the first measurements of the left anterior leg wound noted on June 21, 2024. (File 4 at 28-99.) On June 21, 2024, the left anterior leg wound measured 9 cm by 32 cm by 0.4 cm. (File 4 at 34, 36.)

Beneficiary was referred to Appellant for advanced wound care. (File 4 at 14.) When evaluated on July 2, 2024, Beneficiary reported dealing with wounds off and on for 6 plus years. (File 4 at 14.) Beneficiary stated she had seen multiple providers at various wound care centers and hospitals. (File 4 at 14.) She had tried topical treatments (antibiotic ointment, steroid creams, medihoney, silver based topics etc.), alginates, Hydrofera, wet to dry with saline and betadine. (File 4 at 14.) Beneficiary reported also having bedside and surgical debridements. (File 4 at 14.) Despite these efforts, her wounds had been resistant to healing. (File 4 at 14.) Beneficiary reported that she had been on both IV and oral antibiotics for off and on cellulitis and for other systemic pathologies. (File 4 at 14.)

At the time of the skin substitute application, Beneficiary was at home with the aid of home health doing dressing changes three times weekly with xeroform, ABD, kerlix, ACE from forefoot to below knee bilateral. (File 4 at 14.)

Although Beneficiary had multiple wounds on the lower extremities, a skin substitute product was applied only to a wound on the left anterior leg on July 2, 2024. (File 4 at 17-27.) The left anterior leg wound was noted to have had an onset date of June 3, 2024, and was described as a chronic venous ulcer of other part of left lower leg with fat layer exposed. (File 4 at 17.) The ulcer bed had exposed subcutaneous tissue. (File 4 at 17.) It was a full thickness ulcer. (File 4 at 17.) The skin around the ulcer was normal. (File 4 at 17.) The ulcer was not malodorous. (File 4 at 17.) There were no signs of epithelialization. (File 4 at 17.) The ulcer border was well defined. (File 4 at 17.) There was over 50 percent granulation with a confluent pattern of beefy red quality. (File 4 at 17.) There was between 0 and 25 percent nonviable material of slough/fibrin quality. (File 4 at 17.) The ulcer measured 8.2 cm by 24.3 cm by 0.2 cm. (File 4 at 17.) The ulcer had a minimum amount of drainage. (File 4 at 17.) The drainage was serosanguineous. (File 4 at 17.)

Appellant applied a BioLab Membrane Wrap product to the wound. (File 4 at 22, 25-26.) The treating practitioner stated,

> [t]reatment with a cellular and/or tissue based therapy is reasonable and necessary because the ulcer failed to show evidence of healing despite 30 days of comprehensive, conservative care. Prior treatments that failed include nutritional optimization, moist wound care, management of infection and debridement of necrotic material. The patient currently has a full thickness tissue defect not involving tendon, muscle, joint capsule or exhibiting exposed bone or sinus tracts, with a clean granular base. There is no evidence of a wound infection and bacterial colonization has been controlled. There is no evidence of underlying osteomyelitis or cellulitis. Adequate treatment of underlying conditions that contributed to the ulcer have been provided.

(File 4 at 26.)

The BioLab Membrane Wrap is a human tissue allograft derived from the amniotic membrane regulated and approved for use as a human cellular and tissue based product (HCT/P) by the US Food and Drug Administration (FDA) under 21 C.F.R. Part 1271. (File 4 at 275-278.) It was approved for use by the FDA when intended for use as a barrier and to provide protective coverage. (File 4 at 277-78.)

Although approved for use by the FDA, this FDA approval is not sufficient to demonstrate that the Membrane Wrap skin substitute product is not experimental and is reasonable and necessary for Medicare coverage purposes. 68 Fed. Reg. 55634, 55636 (September 26, 2003). And the evidence submitted did not demonstrate that the Membrane Wrap product was not experimental.

The only published studies and reviews submitted by Appellant were evaluations of the efficacy of amniotic membrane derivatives generally. (File 4 at 202-74.) Appellant did not submit published original research studies or systematic reviews and meta-analyses that evaluated the efficacy of the BioLab Membrane Wrap product. (File 11, Hearing Audio.) And Appellant stated that although studies of the BioLab Membrane Wrap product were in the process of being conducted, there were no studies that have been published concerning the BioLab Membrane Wrap. (File 11, Hearing Audio.) Studies of the efficacy of amniotic membrane derivatives generally are not sufficient to establish the efficacy of the BioLab Membrane Wrap product.

Additionally, the medical records submitted were not sufficient to establish that the use of the BioLab Membrane Wrap was reasonable and necessary in this case. Although Beneficiary had

been having trouble with venous leg ulcers for years, the wound at issue was not noted until mid-May 2024. The documentation of the nature of the wound and of the response of the wound to conservative treatment measures was sporadic. There were limited measurements taken of the wound, but the records did demonstrate that the size of the wound decreased from 9 cm by 32 cm by 0.4 cm on June 21, 2024, to 8.2 cm by 24.3 cm by 0.2 cm on July 2, 2024. (File 4 at 17, 36.) And although the wound was serious, the medical records submitted did not show that the wound was not responding to more conservative treatment.

After reviewing the entire record including the testimony presented at the hearing, I find that the Services were not reasonable and necessary and are not covered by Medicare. Appellant was not entitled to payment for the Services. And an overpayment was made.

**Limitation on Liability.**

Beneficiary did not receive notice that Medicare would not cover or pay for the Services, and Beneficiary is not liable for the costs of the Services.

The Medicare guidelines set forth the requirements for coverage and payment. And Appellant is expected to have known that the Services would not be covered or payable based on the applicable guidelines. See 42 C.F.R. § 411.406. Therefore, Appellant remains responsible for the costs of the Services.

Under section 1870 of the Act, recovery of an overpayment from a provider or supplier may be waived if the provider or supplier was not at fault in creating the overpayment. The provider or supplier is considered to be without fault if it exercised reasonable care in billing for, and accepting, the payment. Act § 1870(b).

Since a supplier or provider is expected to know the requirements of Medicare claims, Appellant is not without fault because it billed and received payment for items or services that it should have known were not covered or payable under the Medicare program. Therefore, the overpayment recovery cannot be waived under section 1870 of the Act, and Appellant is liable for the overpayment amount.

## CONCLUSIONS OF LAW

I find that the Services are not covered by Medicare. Appellant was not entitled to payment for the Services. An overpayment was made. Beneficiary is not liable for the Services or any overpayment. Appellant should have known that the Services were not covered and is liable for the Services and any overpayment.

## ORDER

This decision is **UNFAVORABLE**. I direct the Medicare Administrative Contractor to process the claim in accordance with this decision.

**SO ORDERED**

Jenifer J. Soulikias
Administrative Law Judge

DEPARTMENT OF HEALTH AND HUMAN SERVICES (DHHS) / DEPARTMENTAL APPEALS BOARD Form DAB-101 (12/19)

# REQUEST FOR REVIEW OF ADMINISTRATIVE LAW JUDGE (ALJ) MEDICARE DECISION / DISMISSAL

| | |
|---|---|
| 1. APPELLANT (the party requesting review) | 2. ALJ APPEAL NUMBER (on the decision or dismissal) |
| 3. BENEFICIARY* | 4. MEDICARE NUMBER (Health Insurance Claim Number (HICN) or Medicare Beneficiary Identifier (MBI))* |

*If the request involves multiple claims or multiple beneficiaries, attach a list of beneficiaries, Medicare numbers, and any other information to identify all claims being appealed.

| | |
|---|---|
| 5. PROVIDER, PRACTITIONER, OR SUPPLIER | 6. SPECIFIC ITEM(S) OR SERVICE(S) |

7. Medicare claim type: ☐ Part A ☐ Part B ☐ Part C - Medicare Advantage
☐ Part D - Medicare Prescription Drug Plan ☐ Entitlement/enrollment for Part A or Part B

8. Does this request involve authorization for an item or service that has not yet been furnished?
☐ Yes If Yes, skip to Block 9.
☐ No If No, Specific Dates of Service:

9. If the request involves authorization for a prescription drug under Medicare Part D, would application of the standard appellate timeframe seriously jeopardize the beneficiary's life, health, or ability to regain maximum function (as documented by a physician) such that expedited review is appropriate? ☐ Yes ☐ No

I request that the Medicare Appeals Council review the ALJ's ☐ decision or ☐ dismissal order [check one] dated__________________________. I disagree with the ALJ's action because (specify the parts of the ALJ's decision or dismissal you disagree with and why you think the ALJ was wrong):

____________________________________________________________

____________________________________________________________

____________________________________________________________

____________________________________________________________

(Attach additional sheets if you need more space)

**PLEASE ATTACH A COPY OF THE ALJ DECISION OR DISMISSAL ORDER YOU ARE APPEALING.**

| | | | | | |
|---|---|---|---|---|---|
| DATE | | | DATE | | |
| APPELLANT'S NAME (the party requesting review) | | | REPRESENTATIVE'S NAME (include signed appointment of representative if not already submitted) | | |
| ADDRESS | | | ADDRESS | | |
| CITY, STATE, ZIP CODE | | | CITY, STATE, ZIP CODE | | |
| TELEPHONE NUMBER | FAX NUMBER | E-MAIL | TELEPHONE NUMBER | FAX NUMBER | E-MAIL |

(SEE FURTHER INSTRUCTIONS ON PAGE 2)

If you have additional evidence, submit it with this request for review. If you need more time, you must request an extension of time in writing now, explaining why you are unable to submit the evidence or legal argument now.

*If you are a provider, supplier, or a beneficiary represented by a provider or supplier, and your case was reconsidered by a Qualified Independent Contractor (QIC), the Medicare Appeals Council will not consider new evidence related to issues the QIC has already considered unless you show that you have a good reason for submitting it for the first time to the Medicare Appeals Council.*

**IMPORTANT: Include the HICN or MBI and ALJ Appeal Number on any letter or other material you submit.**

This request must be received within 60 calendar days after you receive the ALJ's decision or dismissal, unless we extend the time limit for good cause. We assume you received the decision or dismissal 5 calendar days after it was issued, unless you show you received it later. If this request will not be received within 65 calendar days from the date on the decision or dismissal order, please explain why on a separate sheet.

---

You must file your request for review in writing with the Medicare Appeals Council at:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

You may send the request for review by U.S. Mail, a common carrier such as FedEx, or by fax to (202) 565-0227. If you send a fax, please do not also mail a copy. ***You must send a copy of your appeal to the other parties and indicate that all parties, to include all beneficiaries, have been copied on the request for review. For claims involving multiple beneficiaries, you may submit a copy of the cover letters issued or a spreadsheet of the beneficiaries and addresses who received a copy of the request for review.***

If you have any questions about your request for review or wish to request expedited review of a claim involving authorization of your prescription drug under Medicare Part D, you may call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100. You may also visit our web site at www.hhs.gov/dab for additional information on how to file your request for review.

## PRIVACY ACT STATEMENT

The collection of information on this form is authorized by the Social Security Act (section 205(a) of title II, section 702 of title VII, section 1155 of Title XI, and sections 1852(g)(5), 1869(b)(1), 1871, 1872, and 1876(c)(5)(B) of title XVIII, as appropriate). The information provided will be used to further document your claim. Information requested on this form is voluntary, but failure to provide all or any part of the requested information may affect the determination of your claim. Information you furnish on this form may be disclosed by the Department of Health and Human Services or the Social Security Administration to another person or governmental agency only with respect to programs under the Social Security Act and to comply with Federal laws requiring the disclosure of information or the exchange of information between the Department of Health and Human Services, the Social Security Administration, or other agencies.

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Kansas City, MO**

| | |
|---|---|
| Appeal of: **INDY WOUND CENTER FOR LIMB PRESERVATION & RECONSTRUCTION** | OMHA Appeal No.: **3-15485412389** |
| Beneficiary: [redacted] | Medicare Part: **B** |
| Medicare No.: | Before: **Jenifer J. Soulikias** Administrative Law Judge |

Index of the Administrative Record and Exhibit List

| **Exhibit Record** | **Administrative File Reference** File Name | Page Range | | |
|---|---|---|---|---|
| Position Statements: CMS contractor: WPS | File 9 | 1 | : | 8 |
| Procedural - CMS Levels: QIC Decision | File 2 | 1 | : | 16 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 3 | 1 | : | 3 |
| Procedural - CMS Levels: Request for Reconsideration | File 4 | 1 | : | 278 |
| Procedural - CMS Levels: Redetermination: Case File | File 5 | 1 | : | 44 |
| Procedural - CMS Levels: Redetermination: cover page | File 6 | 1 | : | 1 |
| Procedural - OMHA Level: Request for ALJ Hearing: w/AOR, QIC dec, docs | File 1 | 1 | : | 21 |
| Procedural - OMHA Level: Notice of Intent: WPS - Non-party - Written | File 10 | 1 | : | 2 |
| Procedural - OMHA Level: Notice of Hearing | File 7 | 1 | : | 9 |
| Procedural - OMHA Level: Response to Notice of Hrg: App will appear | File 8 | 1 | : | 2 |
| Proceeding (Audios): Hearing | File 11 | 1 | : | 1 |

Department of Health and Human Services
Office of the Secretary

**OFFICE OF MEDICARE HEARINGS AND APPEALS**

Kansas City Field Office
601 E. 12th Street
Suite 1753
Kansas City, MO 64106-2817
(816)-599-3300
(505) 407-3839 Team Soulikias
(816) 527-0051 (Fax)
(844) 566-6258 (Toll Free)

February 11, 2026

ENGAGE HEALTH SOULTIONS
ATTN: WILLIAM OMALLEY
60 PUBLIC SQ STE 602
WILKES-BARRE, PA 18701

## NOTICE OF DECISION

Appellant: INDY WOUND CENTER FOR LIMB PRESERVATION & RECONSTRUCTION LLC
OMHA Appeal Number: 3-15485411849

Enclosed is the decision for the above case. This decision is based on the administrative record, including any evidence or testimony presented at the hearing, if one was held. The decision is not precedential, does not release the appellant from civil or criminal liability, and may be reopened at any time if it was procured by fraud or similar fault. In addition, the decision may be reopened within 180 calendar days from the date of the decision for good cause. Good cause exists when there is new and material evidence that was not available or known at the time of the decision and may result in a different conclusion, or when the evidence that was considered clearly shows on its face that an obvious error was made at the time of the decision.

**What if I disagree with the decision?**

If you disagree with the decision, you may file an appeal with the Medicare Appeals Council. Other parties may also appeal the decision. In addition, the Medicare Appeals Council may decide to review the decision on its own motion. If no party appeals the decision and the Medicare Appeals Council does not review the decision, the decision is binding on all parties and you and the other parties will not have the right to ask a federal court to review the decision.

If you are not already represented, you may appoint an attorney or other person to represent you.

**<u>How much time do I have to file an appeal?</u>**

The Medicare Appeals Council must receive your written appeal **within 60 calendar days** of the date that you receive this notice. The Medicare Appeals Council assumes you received this notice 5 calendar days after the date of the notice unless you show that you did not receive it within the 5-day period.

The Medicare Appeals Council will dismiss a late request for review unless you show that you had a good reason for not filing it on time.

**<u>How do I file an appeal?</u>**

To appeal, you must ask the Medicare Appeals Council to review the decision. Your appeal must be in writing, except that a request for expedited review of a Part D decision may be made orally as described below. Your appeal must identify the parts of the decision that you disagree with, and explain why you disagree.

You may submit a written request for review to the Medicare Appeals Council using one of three available methods: mail, fax, or electronic filing (E-File). **<u>Please do not submit your request for review using more than one method</u>**. Regardless of how you file your appeal, **you must always send a copy of your written request for review to the other parties who received a copy of the decision.**

If you are filing a written request for review, you may use the enclosed *Request for Review* (Form DAB-101), or you may write a letter containing the following:

- The beneficiary's/enrollee's name (and telephone number for Part D appeals);
- The beneficiary's/enrollee's Medicare number (Health Insurance Claim Number or Medicare Beneficiary Identifier);
- The item(s), service(s), or specific Part D drug(s) in dispute;
- The specific date(s) the item(s) or service(s) were provided, if applicable;
- For Part D appeals, the plan name;
- For Part D appeals, the OMHA Appeal Number on the adjudicator's decision;
- For Part D appeals requesting expedited review, a statement that you are requesting expedited review;
- The date of the adjudicator's decision (not required for Part D appeals); and
- Your name and signature, and, if applicable, the name and signature of your representative.

**Filing by mail:**

Mail your appeal and a copy of the enclosed decision to:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

**Filing by fax:**

Fax your appeal and a copy of the enclosed decision to **(202) 565-0227.**

**Filing by computer:**

Using your web browser, visit the Medicare Operations Division Electronic Filing System (MOD E-File) website at **https://dab.efile.hhs.gov/mod**.

To file a new appeal using MOD E-File, you will need to register by:
1. Clicking **Register** on the MOD E-File home page;
2. Entering the information requested on the "Register New Account" form; and
3. Clicking **Register Account** at the bottom of the form.

You will use the email address and password you provided during registration to access MOD E-File at **https://dab.efile.hhs.gov/mod/users/new**. You will be able to use MOD E-File to file and access the specific materials for appeals to which you are a party or a party's representative. You may check the status of any appeal on the website homepage without registering.

Once registered, you may file your appeal by:
1. Logging into MOD E-File;
2. Clicking the **File New Appeal** menu button on the top right of the screen;
3. Selecting the type of appeal you are filing (Request for Review or Request for Escalation); and
4. Entering the requested Appeal Information and uploading the requested Appeal Documents on the "File New Appeal - Medicare Operations Division" form. You are required to provide information and documents marked with an asterisk.

At a minimum, the Medicare Appeals Council requires an appellant to file a signed Request for Review and a copy of the enclosed decision. All documents should be submitted in Portable Document Format (PDF) whenever possible. Any document, including a Request for Review, will be deemed to have been filed on a given day, if it is uploaded to MOD E-File on or before 11:59 p.m. EST of that day.

Currently, the documents that may be filed electronically are the:

1. Request for Review;
2. Appointment of Representative form (OMB Form 0938-0950);
3. Copy of Administrative Law Judge or attorney adjudicator decision;
4. Memorandum or brief or other written statement in support of your appeal; and
5. Request to Withdraw your appeal

**No other documents aside from the five (5) listed categories above may be submitted through MOD E-File.**

**Filing by oral request (for expedited review only):**

Oral requests for expedited review of a Part D decision may be made by telephone to **(866) 365-8204.** You must provide the information listed in the bullet points above and a statement that you are requesting an expedited review within 60 calendar days after receipt of this notice of decision. The Medicare Appeals Council will document the oral request in writing and maintain the documentation in the case file.

Please note that your request for review will only be expedited (1) the appeal involves an issue specified in 42 C.F.R. § 423.566(b), but does not include solely a request for payment of a Part D drug that has already been furnished, and (2) the prescribing physician (or other prescriber) indicates, or the Medicare Appeals Council determines, that the standard time frame may seriously jeopardize your life, health, or ability to regain maximum function.

**How will the Medicare Appeals Council respond to my appeal?**

The Medicare Appeals Council will limit its review to the issues raised in the appeal, unless the appeal is filed by an unrepresented beneficiary/enrollee. It may change the parts of the decision that you agree with. It may adopt, modify, or reverse the decision, in whole or in part, or it may send the case back to OMHA for further action. It may also dismiss your appeal.

**Questions?**

You may call or write our office. A toll-free phone number and mailing address are at the top of this notice.

Additional information about filing an appeal with the Medicare Appeals Council is available at http://www.hhs.gov/dab/. You can also call the Medicare Appeals Council's staff in the Medicare

Operations Division of the Departmental Appeals Board at (202) 565-0100 or (866) 365-8204 (toll free), if you have questions about filing an appeal.

cc: [redacted]
QIC - C2C B North
301 W Bay Street
Ste. 1110
Jacksonville, FL 32202

Enclosures:
OMHA-152, Decision
DAB-101, Request for Review
OMHA-156, Exhibit List

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Kansas City, MO**

| | |
|---|---|
| Appeal of: **INDY WOUND CENTER FOR LIMB PRESERVATION & RECONSTRUCTION LLC** | OMHA Appeal No.: **3-15485411849** |
| Beneficiary: [redacted] | Medicare Part: B |
| Medicare No.: | Before: **Jenifer J. Soulikias** Administrative Law Judge |

## DECISION

After carefully considering the evidence, I enter an **UNFAVORABLE** decision for **Indy Wound Center for Limb Preservation & Reconstruction LLC.** (Appellant). Medicare does not cover the **BioLab Membrane Wrap skin substitute and related services** (the Services) provided t[redacted] (Beneficiary) on **August 13, 2024** (the Date of Service).

## PROCEDURAL HISTORY

Appellant's claim for the Services was initially paid, but a Unified Program Integrity Contractor (UPIC) later determined that the Services were not covered and that Appellant received an overpayment. On redetermination and reconsideration, the Medicare Administrative Contractor (MAC) and the Qualified Independent Contractor (QIC) issued unfavorable decisions finding that the Services were not covered and upholding the overpayment determination. The MAC and the QIC also determined that Appellant was liable and that Beneficiary was not liable for the non-covered costs and any overpayment.

Appellant filed at timely request for an Administrative Law Judge (ALJ) hearing. The amount in controversy meets the requirement for an ALJ hearing. Accordingly, Appellant's appeal satisfies all the jurisdictional requirements for an ALJ hearing. 42 C.F.R. §§ 405.1002(a), 405.1006(b)(1).

I conducted a hearing by telephone on **January 8, 2025. William O'Malley** appeared on behalf of Appellant. The UPIC submitted a position paper as a non-party participant. Non-duplicative exhibits were admitted into the record without objection.

## ISSUES

The issues before the Administrative Law Judge include all of the issues brought out in the initial determination, coverage determination, or organization determination; redetermination; or reconsideration that were not decided entirely in a party's favor, for the claims or other appealed matters specified in the request for hearing.

## APPLICABLE LAW AND POLICY

ALJs are bound to follow all laws, regulations and national coverage determinations (NCDs) pertaining to the Medicare and Medicaid programs. 42 C.F.R. §§ 405.1060, 405.1063. ALJs are not bound by but must give substantial deference to applicable local coverage determinations (LCDs), local medical review policies (LMRPs), and program guidance issued by the Centers for Medicare and Medicaid Services (CMS) such as program memoranda and manual instructions. 42 C.F.R. § 405.1062.

A claimant must furnish sufficient documentary evidence to support the claim. 42 C.F.R. § 424.5(a)(6). And a claimant bears the burden of proof in this appeal to support the claim by a preponderance of the evidence. 5 U.S.C. § 556(d) (setting forth the burden of proof in an administrative law proceeding as requiring a proffered position to be supported with "reliable, probative, and substantial evidence").

**Medicare Coverage.**

Medicare provides coverage for services and supplies, including biologicals and drugs, furnished incident to a physician's professional services. Act §§ 1831, 1832(a)(2)(C), 1861(s)(2)(A). But to be covered, the services or supplies must have been reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member. Act § 1862(a)(1)(A).

Medicare administrative contractors may develop local coverage determinations (LCDs), which are determinations by the contractor as to whether and when an item or service is reasonable and necessary. Act §1869(f)(2)(B); *Medicare Program Integrity Manual* (*MPIM*), pub. 100-08, ch. 13, §§ 13.1.1, 13.5.4. The Medicare Program Integrity Manual (MPIM) provides guidelines to assist contractors in developing LCDs. *MPIM*, ch. 13, § 13.5.4. ALJs may look to these guidelines to determine medical necessity in the absence of an applicable NCD or LCD.

The MPIM states that a contractor shall consider a service to be reasonable and necessary if it is

(a) Safe and effective;

(b) Not experimental or investigational; and

(c) Appropriate, including the duration and frequency that is considered appropriate for the item or service, in terms of whether it is:

- Furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the patient's condition or to improve the function of a malformed body member;
- Furnished in a setting appropriate to the patient's medical needs and condition;
- Ordered and furnished by qualified personnel;
- One that meets, but does not exceed, the patient's medical need; and
- At least as beneficial as an existing and available medically appropriate alternative.

*MPIM*, ch. 13, § 13.5.4. In conducting a review of medical necessity for a service, contractors "shall use the available evidence of general acceptance by the medical community, such as published original research in peer-reviewed medical journals, systematic reviews and meta-analyses, evidence-based consensus statements, and clinical guidelines." *MPIM*, ch. 13, § 13.5.3.

**Limitation on Liability.**

Section 1879 of the Act provides financial relief to beneficiaries, providers, and suppliers by permitting Medicare payment to be made, or requiring refunds to be made, for services and items for which Medicare payment would otherwise be denied. In order to obtain relief under section 1879, the payment for the services or items furnished must have been denied for one of the reasons specified in section 1879, which includes non-coverage under section 1862(a)(1) of the Act because services or items were "not medically reasonable and necessary." 42 C.F.R. § 411.400. In addition, relief may be provided under section 1879 only if the beneficiary and the provider or supplier did not know and reasonably could not have been expected to know that the items or services were excluded from coverage. 42 C.F.R. 411.400.

Providers and suppliers participating in the Medicare program are considered to have constructive knowledge of published Medicare statues and regulations, CMS manual instructions, bulletins, and contractors' written guides and directives, and standards of practice in conjunction with Medicare reimbursement policies. 42 C.F.R. § 411.406; *Medicare Claims Processing Manual (MCPM),* pub. 100-04, ch. 30 §§ 30.2, 40.1.

A beneficiary is considered to have known that an item or service is not covered if the beneficiary received valid written notice of non-coverage or notice of a recent claim denial for the same or similar item or service. 42 C.F.R. § 411.404; *MCPM*, ch. 30, §§ 30, 30.1, 30.1.1. If a beneficiary did not know or receive notice that Medicare would deny payment, the beneficiary is not financially liable for the non-covered services. Act § 1879(a)-(g); *MCPM*, ch. 30, § 30.

In the event of an overpayment, section 1870(b) of the Act provides the authority to waive the overpayment. Generally, Medicare waives overpayments if a provider or supplier is without fault in causing the overpayment. Act § 1870(b). A provider or supplier is considered to be without fault if it exercised reasonable care in billing for, and accepting, the payment. Act § 1870(b).

## FINDINGS OF FACT AND ANALYSIS

**Medicare Coverage.**

At issue is Appellant's claim for wound surgery services and the application of a skin substitute to a venous ulcer on Beneficiary's left anterior leg.[1] The claim at issue in this appeal is for the second application of a skin substitute product to the wound. (File 4 at 14-43.) The MAC and QIC denied payment by concluding that the skin substitute product used was experimental or investigational and that the use of a skin substitute product was not reasonable and necessary. (File 5 at 4-5; File 2 at 3-5.)

There is no NCD or LCD addressing the reasonable and necessary threshold for coverage of a skin substitute product. In the absence of an applicable NCD or LCD, I may look to the guidelines to be used by contractors in developing LCDs. *MPIM*, ch. 13, § 13.5.4. Under these guidelines, an item is reasonable and necessary if it is safe and effective, not experimental or investigational, and appropriate. *MPIM*, ch. 13, § 13.5.4. And in conducting a review of medical necessity for a service, contractors "shall use the available evidence of general acceptance by the medical community, such as published original research in peer-reviewed medical journals, systematic reviews and meta-analyses, and evidence-based consensus statements and clinical

---

[1] Although Beneficiary had multiple wounds on the lower extremities, a skin substitute product was applied only to a wound on the left anterior leg on the Date of Service. (File 4 at 23-29.)

guidelines." *MPIM*, ch. 13, § 13.5.3. The services also must have been appropriate to the patient's medical needs and condition. *MPIM*, ch. 13, § 13.5.4.

Beneficiary in this case had a history of multiple longstanding venous insufficiency ulcers to the bilateral lower extremities. (File 4 at 14.) Beneficiary's prior medical history was also significant for morbid obesity, chronic bilateral lower extremity edema, history of deep vein thrombosis, hypertension, hyperlipidemia, pulmonary hypertension, and anemia. (File 4 at 102.)

Beneficiary was admitted to a hospital on May 8, 2024, after having been found covered in her own blood and unable to get up. (File 4 at 102.) She was diagnosed with septic/hemorrhagic shock, acute kidney injury, and metabolic acidosis. (File 4 at 102.) Beneficiary also had wounds on both lower extremities. (File 4 at 103-04.) Beneficiary was very familiar to the hospital care team from previous admissions for severe chronic leg wounds, most recently in January 2024. (File 4 at 102.) She had been at a long-term acute care hospital and was discharged home six weeks prior to the May 8 hospital admission. (File 4 at 102.) She had a steady decline after returning home. (File 4 at 102.) In the past, Beneficiary demonstrated medical and treatment noncompliance. (File 4 at 102.) She tended to refuse care and change her own dressings. (File 4 at 102.) Beneficiary also had a history of refusing wound VAC due to a previous bad experience. (File 4 at 102.) She had an inpatient plastics consult on April 19, 2023, but did not follow up. (File 4 at 102.)

With respect to the wounds present on May 8, 2024, Beneficiary reported recently using silicone primary dressing for non-stick properties. (File 4 at 102.) A bilateral lower extremity CT was negative for abscess or soft tissue gas on admission. (File 4 at 102.) Medical records indicated that skin substitutes were applied to the lower extremities on May 11, 2024. (File 4 at 102.) On May 15, 2024, Beneficiary was noted to have had a nearly circumferential wound around the entire left calf with a depth of 0.2 cm. (File 4 at 104.) No measurements were taken due to Beneficiary's severe pain with any touch. (File 4 at 104.)

Beneficiary was transferred to another facility on May 17, 2024. (File 4 at 44-45.) On June 3, 2024, a venous ulcer was noted on her lower left leg that measured 18 cm by 32 cm by 0.1 cm. (File 4 at 128.)

Beneficiary was admitted to a rehabilitation hospital on June 11, 2024, where she received wound care. (File 4 at 44-115.) There were limited notations detailing the progress of the wound during this admission, with the first measurements of the left anterior leg wound noted on June 21, 2024. (File 4 at 44-115.) On June 21, 2024, the left anterior leg wound measured 9 cm by 32 cm by 0.4 cm. (File 4 at 50, 52.)

Beneficiary was referred to Appellant for advanced wound care. (File 4 at 30.) When evaluated on July 2, 2024, Beneficiary reported dealing with wounds off and on for 6 plus years. (File 4 at 30.) Beneficiary stated she had seen multiple providers at various wound care centers and hospitals. (File 4 at 30.) She had tried topical treatments (antibiotic ointment, steroid creams, medihoney, silver based topics etc.), alginates, hydrofera, wet to dry with saline and betadine. (File 4 at 30.) Beneficiary reported also having bedside and surgical debridements. (File 4 at 30.) Despite these efforts, her wounds had been resistant to healing. (File 4 at 14.) Beneficiary reported that she had been on both IV and oral antibiotics for off and on cellulitis and for other systemic pathologies. (File 4 at 30.)

At the time of the skin substitute application, Beneficiary was at home with the aid of home health doing dressing changes three times weekly with xeroform, ABD, kerlix, and ACE from forefoot to below knee bilateral. (File 4 at 14.)

Although Beneficiary had multiple wounds on the lower extremities, a skin substitute product was applied only to a wound on the left anterior leg on the Date of Service. (File 4 at 17-22.) A skin substitute product was first applied to the wound on July 2, 2024. (File 4 at 41-43.) On July 2, 2024, the ulcer measured 8.2 cm by 24.3 cm by 0.2 cm. (File 4 at 42.) With respect to the necessity of applying the skin substitute product, the treating practitioner stated,

> [t]reatment with a cellular and/or tissue based therapy is reasonable and necessary because the ulcer failed to show evidence of healing despite 30 days of comprehensive, conservative care. Prior treatments that failed include nutritional optimization, moist wound care, management of infection and debridement of necrotic material. The patient currently has a full thickness tissue defect not involving tendon, muscle, joint capsule or exhibiting exposed bone or sinus tracts, with a clean granular base. There is no evidence of a wound infection and bacterial colonization has been controlled. There is no evidence of underlying osteomyelitis or cellulitis. Adequate treatment of underlying conditions that contributed to the ulcer have been provided.

(File 4 at 42.)

On the Date of Service, the left anterior leg wound was noted as follows:

> The ulcer bed has exposed subcutaneous tissue. This is a full thickness ulcer. The skin around the ulcer is normal. There are no signs of epithelialization. The ulcer border is well defined. There is over 50% granulation with a confluent pattern of beefy red quality. There is between 0 and 25% nonviable material of slough/fibrin quality.
>
> Measurements were taken of a well defined single wound on the left anterior leg. The ulcer measures 7.5 cm x 19.1 cm x 0.2 cm. The VLU was debrided 100%. Post debridement, the ulcer measures 7.6 cm x 19.2 cm x 0.2 cm. The VLU has minimum amount of drainage. The drainage is serous.

(File 4 at 18-19.)

Appellant applied a second application of the BioLab Membrane Wrap product to the wound on the Date of Service. (File 4 at 23, 27-28.) The treating practitioner stated,

> The re-application of a cellular tissue product (CTP) is deemed both reasonable and necessary due to the persistence of an open wound. Previous CTP application demonstrated positive outcomes, including improved granulation tissue and a reduction in wound size.

(File 4 at 28.)

The BioLab Membrane Wrap is a human tissue allograft derived from the amniotic membrane regulated and approved for use as a human cellular and tissue based product (HCT/P) by the US Food and Drug Administration (FDA) under 21 C.F.R. Part 1271. (File 4 at 275-278.) It was approved for use by the FDA when intended for use as a barrier and to provide protective coverage. (File 4 at 277.)

Although approved for use by the FDA, this FDA approval is not sufficient to demonstrate that the Membrane Wrap skin substitute product is not experimental and is reasonable and necessary for Medicare coverage purposes. *See* 68 Fed. Reg. 55634, 55636 (September 26, 2003)(noting that FDA approval or clearance alone does not generally entitle a product to coverage). And the evidence submitted did not demonstrate that the Membrane Wrap product was not experimental.

The only published studies and reviews submitted by Appellant were evaluations of the efficacy of amniotic membrane derivatives generally. (File 4 at 202-78.) Appellant did not submit published original research studies or systematic reviews or meta-analyses that evaluated the efficacy of the BioLab Membrane Wrap product. (File 10, Hearing Audio.) And Appellant stated that although studies of the BioLab Membrane Wrap product were in the process of being conducted, there were no studies that have been published concerning the BioLab Membrane Wrap. (File 10, Hearing Audio.) Studies of the efficacy of amniotic membrane derivatives generally are not sufficient to establish the efficacy of the BioLab Membrane Wrap product.

Additionally, the medical records submitted were not sufficient to establish that the use of the BioLab Membrane Wrap was reasonable and necessary in this case. Although Beneficiary had been having trouble with venous leg ulcers for years, the wound at issue was not noted until mid-May 2024. The documentation of the nature of the wound and of the response of the wound to conservative treatment measures was sporadic. There were limited measurements taken of the wound, but the records did demonstrate that the size of the wound decreased from 18 cm by 32 cm by 0.1 cm on June 3, 2024, to 8.2 cm by 24.3 cm by 0.2 cm on July 2, 2024. (File 4 at 40, 128.) And although the wound was serious, the medical records submitted did not show that the wound was not responding to more conservative treatment.

After reviewing the entire record including the testimony presented at the hearing, I find that the Services were not reasonable and necessary and are not covered by Medicare. Appellant was not entitled to payment for the Services. And an overpayment was made.

**Limitation on Liability.**

Beneficiary did not receive notice that Medicare would not cover or pay for the Services, and Beneficiary is not liable for the costs of the Services.

The Medicare guidelines set forth the requirements for coverage and payment. And Appellant is expected to have known that the Services would not be covered or payable based on the applicable guidelines. See 42 C.F.R. § 411.406. Therefore, Appellant remains responsible for the costs of the Services.

Under section 1870 of the Act, recovery of an overpayment from a provider or supplier may be waived if the provider or supplier was not at fault in creating the overpayment. The provider or supplier is considered to be without fault if it exercised reasonable care in billing for, and accepting, the payment. Act § 1870(b).

Since a supplier or provider is expected to know the requirements of Medicare claims, Appellant is not without fault because it billed and received payment for items or services that it should have known were not covered or payable under the Medicare program. Therefore, the overpayment recovery cannot be waived under section 1870 of the Act, and Appellant is liable for the overpayment amount.

## CONCLUSIONS OF LAW

I find that the Services are not covered by Medicare. Appellant was not entitled to payment for the Services. An overpayment was made. Beneficiary is not liable for the Services or any overpayment. Appellant should have known that the Services were not covered and is liable for the Services and any overpayment.

## ORDER

This decision is **UNFAVORABLE**. I direct the Medicare Administrative Contractor to process the claim in accordance with this decision.

**SO ORDERED**

Jenifer J. Soulikias
Administrative Law Judge

DEPARTMENT OF HEALTH AND HUMAN SERVICES (DHHS) / DEPARTMENTAL APPEALS BOARD Form DAB-101 (12/19)

## REQUEST FOR REVIEW OF ADMINISTRATIVE LAW JUDGE (ALJ) MEDICARE DECISION / DISMISSAL

| 1. APPELLANT (the party requesting review) | 2. ALJ APPEAL NUMBER (on the decision or dismissal) |
|---|---|
| 3. BENEFICIARY* | 4. MEDICARE NUMBER (Health Insurance Claim Number (HICN) or Medicare Beneficiary Identifier (MBI))* |

*If the request involves multiple claims or multiple beneficiaries, attach a list of beneficiaries, Medicare numbers, and any other information to identify all claims being appealed.

| 5. PROVIDER, PRACTITIONER, OR SUPPLIER | 6. SPECIFIC ITEM(S) OR SERVICE(S) |
|---|---|

7. Medicare claim type: ☐ Part A ☐ Part B ☐ Part C - Medicare Advantage
☐ Part D - Medicare Prescription Drug Plan ☐ Entitlement/enrollment for Part A or Part B

8. Does this request involve authorization for an item or service that has not yet been furnished?
☐ Yes If Yes, skip to Block 9.
☐ No If No, Specific Dates of Service:

9. If the request involves authorization for a prescription drug under Medicare Part D, would application of the standard appellate timeframe seriously jeopardize the beneficiary's life, health, or ability to regain maximum function (as documented by a physician) such that expedited review is appropriate? ☐ Yes ☐ No

I request that the Medicare Appeals Council review the ALJ's ☐ decision or ☐ dismissal order [check one] dated________________________. I disagree with the ALJ's action because (specify the parts of the ALJ's decision or dismissal you disagree with and why you think the ALJ was wrong):

______________________________________________________________________________

______________________________________________________________________________

______________________________________________________________________________

______________________________________________________________________________

(Attach additional sheets if you need more space)

**PLEASE ATTACH A COPY OF THE ALJ DECISION OR DISMISSAL ORDER YOU ARE APPEALING.**

| DATE | | | DATE | | |
|---|---|---|---|---|---|
| APPELLANT'S NAME (the party requesting review) | | | REPRESENTATIVE'S NAME (include signed appointment of representative if not already submitted) | | |
| ADDRESS | | | ADDRESS | | |
| CITY, STATE, ZIP CODE | | | CITY, STATE, ZIP CODE | | |
| TELEPHONE NUMBER | FAX NUMBER | E-MAIL | TELEPHONE NUMBER | FAX NUMBER | E-MAIL |

(SEE FURTHER INSTRUCTIONS ON PAGE 2)

If you have additional evidence, submit it with this request for review. If you need more time, you must request an extension of time in writing now, explaining why you are unable to submit the evidence or legal argument now.

*If you are a provider, supplier, or a beneficiary represented by a provider or supplier, and your case was reconsidered by a Qualified Independent Contractor (QIC), the Medicare Appeals Council will not consider new evidence related to issues the QIC has already considered unless you show that you have a good reason for submitting it for the first time to the Medicare Appeals Council.*

**IMPORTANT: Include the HICN or MBI and ALJ Appeal Number on any letter or other material you submit.**

This request must be received within 60 calendar days after you receive the ALJ's decision or dismissal, unless we extend the time limit for good cause. We assume you received the decision or dismissal 5 calendar days after it was issued, unless you show you received it later. If this request will not be received within 65 calendar days from the date on the decision or dismissal order, please explain why on a separate sheet.

---

You must file your request for review in writing with the Medicare Appeals Council at:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

You may send the request for review by U.S. Mail, a common carrier such as FedEx, or by fax to (202) 565-0227. If you send a fax, please do not also mail a copy. ***You must send a copy of your appeal to the other parties and indicate that all parties, to include all beneficiaries, have been copied on the request for review. For claims involving multiple beneficiaries, you may submit a copy of the cover letters issued or a spreadsheet of the beneficiaries and addresses who received a copy of the request for review.***

If you have any questions about your request for review or wish to request expedited review of a claim involving authorization of your prescription drug under Medicare Part D, you may call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100. You may also visit our web site at www.hhs.gov/dab for additional information on how to file your request for review.

---

## PRIVACY ACT STATEMENT

The collection of information on this form is authorized by the Social Security Act (section 205(a) of title II, section 702 of title VII, section 1155 of Title XI, and sections 1852(g)(5), 1869(b)(1), 1871, 1872, and 1876(c)(5)(B) of title XVIII, as appropriate). The information provided will be used to further document your claim. Information requested on this form is voluntary, but failure to provide all or any part of the requested information may affect the determination of your claim. Information you furnish on this form may be disclosed by the Department of Health and Human Services or the Social Security Administration to another person or governmental agency only with respect to programs under the Social Security Act and to comply with Federal laws requiring the disclosure of information or the exchange of information between the Department of Health and Human Services, the Social Security Administration, or other agencies.

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Kansas City, MO**

Appeal of: **INDY WOUND CENTER FOR LIMB PRESERVATION & RECONSTRUCTION**

Beneficiary: [redacted]

Medicare No.: [redacted]

OMHA Appeal No.: **3-15485411849**

Medicare Part: **B**

Before: **Jenifer J. Soulikias**
Administrative Law Judge

Index of the Administrative Record and Exhibit List

| Exhibit Record | Administrative File Reference: File Name | Page Range | | |
|---|---|---|---|---|
| Position Statements: UPIC | File 8 | 1 | : | 4 |
| Procedural - CMS Levels: QIC Decision | File 2 | 1 | : | 16 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 3 | 1 | : | 3 |
| Procedural - CMS Levels: Request for Reconsideration | File 4 | 1 | : | 286 |
| Procedural - CMS Levels: Redetermination: Case File | File 5 | 1 | : | 44 |
| Procedural - CMS Levels: Redetermination: cover page | File 6 | 1 | : | 1 |
| Procedural - OMHA Level: Request for ALJ Hearing: w/ AOR, QIC dec, docs | File 1 | 1 | : | 21 |
| Procedural - OMHA Level: Notice of Intent: UPIC -Non-Party - Written | File 10 | 1 | : | 2 |
| Procedural - OMHA Level: Notice of Hearing | File 7 | 1 | : | 9 |
| Procedural - OMHA Level: Response to Notice of Hearing: Appellant | File 9 | 1 | : | 2 |
| Proceeding (Audios): Hearing | File 11 | 1 | : | 1 |

Department of Health and Human Services
Office of the Secretary

**OFFICE OF MEDICARE HEARINGS AND APPEALS**

Kansas City Field Office
601 E. 12th Street
Suite 1753
Kansas City, MO 64106-2817
(816)-599-3300
(505) 407-3839 (Direct)
(816) 527-0051 (Fax)
(844) 566-6258 (Toll Free)

February 11, 2026

ENGAGE HEALTH SOULTIONS
ATTN: WILLIAM OMALLEY
60 PUBLIC SQ STE 602
WILKES-BARRE, PA 18701

**NOTICE OF DECISION**

Appellant: INDY WOUND CENTER FOR LIMB PRESERVATION & RECONSTRUCTION LLC
OMHA Appeal Number: 3-15485411857

Enclosed is the decision for the above case. This decision is based on the administrative record, including any evidence or testimony presented at the hearing, if one was held. The decision is not precedential, does not release the appellant from civil or criminal liability, and may be reopened at any time if it was procured by fraud or similar fault. In addition, the decision may be reopened within 180 calendar days from the date of the decision for good cause. Good cause exists when there is new and material evidence that was not available or known at the time of the decision and may result in a different conclusion, or when the evidence that was considered clearly shows on its face that an obvious error was made at the time of the decision.

**What if I disagree with the decision?**

If you disagree with the decision, you may file an appeal with the Medicare Appeals Council. Other parties may also appeal the decision. In addition, the Medicare Appeals Council may decide to review the decision on its own motion. If no party appeals the decision and the Medicare Appeals Council does not review the decision, the decision is binding on all parties and you and the other parties will not have the right to ask a federal court to review the decision.

If you are not already represented, you may appoint an attorney or other person to represent you.

**<u>How much time do I have to file an appeal?</u>**

The Medicare Appeals Council must receive your written appeal **within 60 calendar days** of the date that you receive this notice. The Medicare Appeals Council assumes you received this notice 5 calendar days after the date of the notice unless you show that you did not receive it within the 5-day period.

The Medicare Appeals Council will dismiss a late request for review unless you show that you had a good reason for not filing it on time.

**<u>How do I file an appeal?</u>**

To appeal, you must ask the Medicare Appeals Council to review the decision. Your appeal must be in writing, except that a request for expedited review of a Part D decision may be made orally as described below. Your appeal must identify the parts of the decision that you disagree with, and explain why you disagree.

You may submit a written request for review to the Medicare Appeals Council using one of three available methods: mail, fax, or electronic filing (E-File). **<u>Please do not submit your request for review using more than one method</u>**. Regardless of how you file your appeal, **you must always send a copy of your written request for review to the other parties who received a copy of the decision.**

If you are filing a written request for review, you may use the enclosed *Request for Review* (Form DAB-101), or you may write a letter containing the following:

- The beneficiary's/enrollee's name (and telephone number for Part D appeals);
- The beneficiary's/enrollee's Medicare number (Health Insurance Claim Number or Medicare Beneficiary Identifier);
- The item(s), service(s), or specific Part D drug(s) in dispute;
- The specific date(s) the item(s) or service(s) were provided, if applicable;
- For Part D appeals, the plan name;
- For Part D appeals, the OMHA Appeal Number on the adjudicator's decision;
- For Part D appeals requesting expedited review, a statement that you are requesting expedited review;
- The date of the adjudicator's decision (not required for Part D appeals); and
- Your name and signature, and, if applicable, the name and signature of your representative.

**Filing by mail:**

Mail your appeal and a copy of the enclosed decision to:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

**Filing by fax:**

Fax your appeal and a copy of the enclosed decision to **(202) 565-0227.**

**Filing by computer:**

Using your web browser, visit the Medicare Operations Division Electronic Filing System (MOD E-File) website at **https://dab.efile.hhs.gov/mod**.

To file a new appeal using MOD E-File, you will need to register by:
1. Clicking **Register** on the MOD E-File home page;
2. Entering the information requested on the "Register New Account" form; and
3. Clicking **Register Account** at the bottom of the form.

You will use the email address and password you provided during registration to access MOD E-File at **https://dab.efile.hhs.gov/mod/users/new**. You will be able to use MOD E-File to file and access the specific materials for appeals to which you are a party or a party's representative. You may check the status of any appeal on the website homepage without registering.

Once registered, you may file your appeal by:
1. Logging into MOD E-File;
2. Clicking the **File New Appeal** menu button on the top right of the screen;
3. Selecting the type of appeal you are filing (Request for Review or Request for Escalation); and
4. Entering the requested Appeal Information and uploading the requested Appeal Documents on the "File New Appeal - Medicare Operations Division" form. You are required to provide information and documents marked with an asterisk.

At a minimum, the Medicare Appeals Council requires an appellant to file a signed Request for Review and a copy of the enclosed decision. All documents should be submitted in Portable Document Format (PDF) whenever possible. Any document, including a Request for Review, will be deemed to have been filed on a given day, if it is uploaded to MOD E-File on or before 11:59 p.m. EST of that day.

Currently, the documents that may be filed electronically are the:

1. Request for Review;
2. Appointment of Representative form (OMB Form 0938-0950);
3. Copy of Administrative Law Judge or attorney adjudicator decision;
4. Memorandum or brief or other written statement in support of your appeal; and
5. Request to Withdraw your appeal

**No other documents aside from the five (5) listed categories above may be submitted through MOD E-File.**

**Filing by oral request (for expedited review only):**

Oral requests for expedited review of a Part D decision may be made by telephone to **(866) 365-8204.** You must provide the information listed in the bullet points above and a statement that you are requesting an expedited review within 60 calendar days after receipt of this notice of decision. The Medicare Appeals Council will document the oral request in writing and maintain the documentation in the case file.

Please note that your request for review will only be expedited (1) the appeal involves an issue specified in 42 C.F.R. § 423.566(b), but does not include solely a request for payment of a Part D drug that has already been furnished, and (2) the prescribing physician (or other prescriber) indicates, or the Medicare Appeals Council determines, that the standard time frame may seriously jeopardize your life, health, or ability to regain maximum function.

## How will the Medicare Appeals Council respond to my appeal?

The Medicare Appeals Council will limit its review to the issues raised in the appeal, unless the appeal is filed by an unrepresented beneficiary/enrollee. It may change the parts of the decision that you agree with. It may adopt, modify, or reverse the decision, in whole or in part, or it may send the case back to OMHA for further action. It may also dismiss your appeal.

## Questions?

You may call or write our office. A toll-free phone number and mailing address are at the top of this notice.

Additional information about filing an appeal with the Medicare Appeals Council is available at http://www.hhs.gov/dab/. You can also call the Medicare Appeals Council's staff in the Medicare

Operations Division of the Departmental Appeals Board at (202) 565-0100 or (866) 365-8204 (toll free), if you have questions about filing an appeal.

cc: [redacted]

QIC - C2C B North
301 W Bay Street
Ste. 1110
Jacksonville, FL 32202

Enclosures:
OMHA-152, Decision
DAB-101, Request for Review
OMHA-156, Exhibit List

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Kansas City, MO**

| | | | |
|---|---|---|---|
| Appeal of: | **INDY WOUND CENTER FOR LIMB PRESERVATION & RECONSTRUCTION LLC** | OMHA Appeal No.: | **3-15485411857** |
| Beneficiary: | [redacted] | Medicare Part: | B |
| Medicare No.: | | Before: | **Jenifer J. Soulikias**<br>Administrative Law Judge |

## DECISION

After carefully considering the evidence, I enter an **UNFAVORABLE** decision for **Indy Wound Center for Limb Preservation & Reconstruction LLC.** (Appellant). Medicare does not cover the **BioLab Membrane Wrap skin substitute and related services** (the Services) provided to [redacted] (Beneficiary) on **August 13, 2024** (the Date of Service).

## PROCEDURAL HISTORY

Appellant's claim for the Services was initially paid, but a Unified Program Integrity Contractor (UPIC) later determined that the Services were not covered and that Appellant received an overpayment. On redetermination and reconsideration, the Medicare Administrative Contractor (MAC) and the Qualified Independent Contractor (QIC) issued unfavorable decisions finding that the Services were not covered and upholding the overpayment determination. The MAC and the QIC also determined that Appellant was liable and that Beneficiary was not liable for the non-covered costs and any overpayment.

Appellant filed at timely request for an Administrative Law Judge (ALJ) hearing. The amount in controversy meets the requirement for an ALJ hearing. Accordingly, Appellant's appeal satisfies all the jurisdictional requirements for an ALJ hearing. 42 C.F.R. §§ 405.1002(a), 405.1006(b)(1).

I conducted a hearing by telephone on **January 8, 2025. William O'Malley** appeared on behalf of Appellant. The QIC submitted a position paper as a non-party participant. Non-duplicative exhibits were admitted into the record without objection.

## ISSUES

The issues before the Administrative Law Judge include all of the issues brought out in the initial determination, coverage determination, or organization determination; redetermination; or reconsideration that were not decided entirely in a party's favor, for the claims or other appealed matters specified in the request for hearing.

## APPLICABLE LAW AND POLICY

ALJs are bound to follow all laws, regulations and national coverage determinations (NCDs) pertaining to the Medicare and Medicaid programs. 42 C.F.R. §§ 405.1060, 405.1063. ALJs are not bound by but must give substantial deference to applicable local coverage determinations (LCDs), local medical review policies (LMRPs), and program guidance issued by the Centers for Medicare and Medicaid Services (CMS) such as program memoranda and manual instructions. 42 C.F.R. § 405.1062.

A claimant must furnish sufficient documentary evidence to support the claim. 42 C.F.R. § 424.5(a)(6). And a claimant bears the burden of proof in this appeal to support the claim by a preponderance of the evidence. 5 U.S.C. § 556(d) (setting forth the burden of proof in an administrative law proceeding as requiring a proffered position to be supported with "reliable, probative, and substantial evidence").

**Medicare Coverage.**

Medicare provides coverage for services and supplies, including biologicals and drugs, furnished incident to a physician's professional services. Act §§ 1831, 1832(a)(2)(C), 1861(s)(2)(A). But to be covered, the services or supplies must have been reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member. Act § 1862(a)(1)(A).

Medicare administrative contractors may develop local coverage determinations (LCDs), which are determinations by the contractor as to whether and when an item or service is reasonable and necessary. Act §1869(f)(2)(B); *Medicare Program Integrity Manual* (*MPIM*), pub. 100-08, ch. 13, §§ 13.1.1, 13.5.4. The Medicare Program Integrity Manual (MPIM) provides guidelines to assist contractors in developing LCDs. *MPIM*, ch. 13, § 13.5.4. ALJs may look to these guidelines to determine medical necessity in the absence of an applicable NCD or LCD.

The MPIM states that a contractor shall consider a service to be reasonable and necessary if it is

(a) Safe and effective;

(b) Not experimental or investigational; and

(c) Appropriate, including the duration and frequency that is considered appropriate for the item or service, in terms of whether it is:

- Furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the patient's condition or to improve the function of a malformed body member;
- Furnished in a setting appropriate to the patient's medical needs and condition;
- Ordered and furnished by qualified personnel;
- One that meets, but does not exceed, the patient's medical need; and
- At least as beneficial as an existing and available medically appropriate alternative.

*MPIM*, ch. 13, § 13.5.4. In conducting a review of medical necessity for a service, contractors "shall use the available evidence of general acceptance by the medical community, such as published original research in peer-reviewed medical journals, systematic reviews and meta-analyses, evidence-based consensus statements, and clinical guidelines." *MPIM*, ch. 13, § 13.5.3.

**Limitation on Liability.**

Section 1879 of the Act provides financial relief to beneficiaries, providers, and suppliers by permitting Medicare payment to be made, or requiring refunds to be made, for services and items for which Medicare payment would otherwise be denied. In order to obtain relief under section 1879, the payment for the services or items furnished must have been denied for one of the reasons specified in section 1879, which includes non-coverage under section 1862(a)(1) of the Act because services or items were "not medically reasonable and necessary." 42 C.F.R. § 411.400. In addition, relief may be provided under section 1879 only if the beneficiary and the provider or supplier did not know and reasonably could not have been expected to know that the items or services were excluded from coverage. 42 C.F.R. 411.400.

Providers and suppliers participating in the Medicare program are considered to have constructive knowledge of published Medicare statues and regulations, CMS manual instructions, bulletins, and contractors' written guides and directives, and standards of practice in conjunction with Medicare reimbursement policies. 42 C.F.R. § 411.406; *Medicare Claims Processing Manual (MCPM),* pub. 100-04, ch. 30 §§ 30.2, 40.1.

A beneficiary is considered to have known that an item or service is not covered if the beneficiary received valid written notice of non-coverage or notice of a recent claim denial for the same or similar item or service. 42 C.F.R. § 411.404; *MCPM*, ch. 30, §§ 30, 30.1, 30.1.1. If a beneficiary did not know or receive notice that Medicare would deny payment, the beneficiary is not financially liable for the non-covered services. Act § 1879(a)-(g); *MCPM,* ch. 30, § 30.

In the event of an overpayment, section 1870(b) of the Act provides the authority to waive the overpayment. Generally, Medicare waives overpayments if a provider or supplier is without fault in causing the overpayment. Act § 1870(b). A provider or supplier is considered to be without fault if it exercised reasonable care in billing for, and accepting, the payment. Act § 1870(b).

## FINDINGS OF FACT AND ANALYSIS

**Medicare Coverage.**

At issue is Appellant's claim for wound surgery services and the application of a skin substitute to a venous ulcer on Beneficiary's left anterior leg.[1] The claim at issue in this appeal is for the second application of a skin substitute product to the wound. (File 4 at 14-43.) The MAC and QIC denied payment by concluding that the skin substitute product used was experimental or investigational and that the use of a skin substitute product was not reasonable and necessary. (File 5 at 3-6; File 2 at 3-4.)

There is no NCD or LCD addressing the reasonable and necessary threshold for coverage of a skin substitute product. In the absence of an applicable NCD or LCD, I may look to the guidelines to be used by contractors in developing LCDs. *MPIM*, ch. 13, § 13.5.4. Under these guidelines, an item is reasonable and necessary if it is safe and effective, not experimental or investigational, and appropriate. *MPIM*, ch. 13, § 13.5.4. And in conducting a review of medical necessity for a service, contractors "shall use the available evidence of general acceptance by the medical community, such as published original research in peer-reviewed medical journals, systematic reviews and meta-analyses, and evidence-based consensus statements and clinical

---

[1] Although Beneficiary had multiple wounds on the lower extremities, a skin substitute product was applied only to a wound on the left anterior leg on the Date of Service. (File 4 at 37-38.)

guidelines." *MPIM*, ch. 13, § 13.5.3. The services also must have been appropriate to the patient's medical needs and condition. *MPIM*, ch. 13, § 13.5.4.

Beneficiary in this case had a history of multiple longstanding venous insufficiency ulcers to the bilateral lower extremities. (File 4 at 14.) Beneficiary's prior medical history was also significant for morbid obesity, chronic bilateral lower extremity edema, history of deep vein thrombosis, hypertension, hyperlipidemia, pulmonary hypertension, and anemia. (File 4 at 102.)

Beneficiary was admitted to a hospital on May 8, 2024, after having been found covered in her own blood and unable to get up. (File 4 at 102.) She was diagnosed with septic/hemorrhagic shock, acute kidney injury, and metabolic acidosis. (File 4 at 102.) Beneficiary also had wounds on both lower extremities. (File 4 at 103-04.) Beneficiary was very familiar to the hospital care team from previous admissions for severe chronic leg wounds, most recently in January 2024. (File 4 at 102.) She had been at a long-term acute care hospital and was discharged home six weeks prior to the May 8 hospital admission. (File 4 at 102.) She had a steady decline after returning home. (File 4 at 102.) In the past, Beneficiary demonstrated medical and treatment noncompliance. (File 4 at 102.) She tended to refuse care and change her own dressings. (File 4 at 102.) Beneficiary also had a history of refusing wound VAC due to a previous bad experience. (File 4 at 102.) She had an inpatient plastics consult on April 19, 2023, but did not follow up. (File 4 at 102.)

With respect to the wounds present on May 8, 2024, Beneficiary reported recently using silicone primary dressing for non-stick properties. (File 4 at 102.) A bilateral lower extremity CT was negative for abscess or soft tissue gas on admission. (File 4 at 102.) Medical records indicated that skin substitutes were applied to the lower extremities on May 11, 2024. (File 4 at 102.) On May 15, 2024, Beneficiary was noted to have had a nearly circumferential wound around the entire left calf with a depth of 0.2 cm. (File 4 at 104.) No measurements were taken due to Beneficiary's severe pain with any touch. (File 4 at 104.)

Beneficiary was transferred to another facility on May 17, 2024. (File 4 at 44-45.) On June 3, 2024, a venous ulcer was noted on her lower left leg that measured 18 cm by 32 cm by 0.1 cm. (File 4 at 128.)

Beneficiary was admitted to a rehabilitation hospital on June 11, 2024, where she received wound care. (File 4 at 44-115.) There were limited notations detailing the progress of the wound during this admission, with the first measurements of the left anterior leg wound noted on June 21, 2024. (File 4 at 44-115.) On June 21, 2024, the left anterior leg wound measured 9 cm by 32 cm by 0.4 cm. (File 4 at 50, 52.)

Beneficiary was referred to Appellant for advanced wound care. (File 4 at 30.) When evaluated on July 2, 2024, Beneficiary reported dealing with wounds off and on for 6 plus years. (File 4 at 30.) Beneficiary stated she had seen multiple providers at various wound care centers and hospitals. (File 4 at 30.) She had tried topical treatments (antibiotic ointment, steroid creams, medihoney, silver based topics etc.), alginates, hydrofera, wet to dry with saline and betadine. (File 4 at 30.) Beneficiary reported also having bedside and surgical debridements. (File 4 at 30.) Despite these efforts, her wounds had been resistant to healing. (File 4 at 14.) Beneficiary reported that she had been on both IV and oral antibiotics for off and on cellulitis and for other systemic pathologies. (File 4 at 30.)

At the time of the skin substitute application, Beneficiary was at home with the aid of home health doing dressing changes three times weekly with xeroform, ABD, kerlix, and ACE from forefoot to below knee bilateral. (File 4 at 14.)

Although Beneficiary had multiple wounds on the lower extremities, a skin substitute product was applied only to a wound on the left anterior leg on the Date of Service. (File 4 at 17-22.) A skin substitute product was first applied to the wound on July 2, 2024. (File 4 at 41-43.) On July 2, 2024, the ulcer measured 8.2 cm by 24.3 cm by 0.2 cm. (File 4 at 42.) With respect to the necessity of applying the skin substitute product, the treating practitioner stated,

> [t]reatment with a cellular and/or tissue based therapy is reasonable and necessary because the ulcer failed to show evidence of healing despite 30 days of comprehensive, conservative care. Prior treatments that failed include nutritional optimization, moist wound care, management of infection and debridement of necrotic material. The patient currently has a full thickness tissue defect not involving tendon, muscle, joint capsule or exhibiting exposed bone or sinus tracts, with a clean granular base. There is no evidence of a wound infection and bacterial colonization has been controlled. There is no evidence of underlying osteomyelitis or cellulitis. Adequate treatment of underlying conditions that contributed to the ulcer have been provided.

(File 4 at 42.)

On the Date of Service, the left anterior leg wound was noted as follows:

> The ulcer bed has exposed subcutaneous tissue. This is a full thickness ulcer. The skin around the ulcer is normal. There are no signs of epithelialization. The ulcer border is well defined. There is over 50% granulation with a confluent pattern of beefy red quality. There is between 0 and 25% nonviable material of slough/fibrin quality.
>
> Measurements were taken of a well defined single wound on the left anterior leg. The ulcer measures 7.5 cm x 19.1 cm x 0.2 cm. The VLU was debrided 100%. Post debridement, the ulcer measures 7.6 cm x 19.2 cm x 0.2 cm. The VLU has minimum amount of drainage. The drainage is serous.

(File 4 at 18-19.)

Appellant applied a second application of the BioLab Membrane Wrap product to the wound on the Date of Service. (File 4 at 23, 27-28.) The treating practitioner stated,

> The re-application of a cellular tissue product (CTP) is deemed both reasonable and necessary due to the persistence of an open wound. Previous CTP application demonstrated positive outcomes, including improved granulation tissue and a reduction in wound size.

(File 4 at 28.)

The BioLab Membrane Wrap is a human tissue allograft derived from the amniotic membrane regulated and approved for use as a human cellular and tissue based product (HCT/P) by the US Food and Drug Administration (FDA) under 21 C.F.R. Part 1271. (File 4 at 283-86.) It was approved for use by the FDA when intended for use as a barrier and to provide protective coverage. (File 4 at 285.)

Although approved for use by the FDA, this FDA approval is not sufficient to demonstrate that the Membrane Wrap skin substitute product is not experimental and is reasonable and necessary for Medicare coverage purposes. *See* 68 Fed. Reg. 55634, 55636 (September 26, 2003)(noting that FDA approval or clearance alone does not generally entitle a product to coverage). And the evidence submitted did not demonstrate that the Membrane Wrap product was not experimental.

The only published studies and reviews submitted by Appellant were evaluations of the efficacy of amniotic membrane derivatives generally. (File 4 at 210-82.) Appellant did not submit published original research studies or systematic reviews or meta-analyses that evaluated the efficacy of the BioLab Membrane Wrap product. (File 13, Hearing Audio.) And Appellant stated that although studies of the BioLab Membrane Wrap product were in the process of being conducted, there were no studies that have been published concerning the BioLab Membrane Wrap. (File 13, Hearing Audio.) Studies of the efficacy of amniotic membrane derivatives generally are not sufficient to establish the efficacy of the BioLab Membrane Wrap product.

Additionally, the medical records submitted were not sufficient to establish that the use of the BioLab Membrane Wrap was reasonable and necessary in this case. Although Beneficiary had been having trouble with venous leg ulcers for years, the wound at issue was not noted until mid-May 2024. The documentation of the nature of the wound and of the response of the wound to conservative treatment measures was sporadic. There were limited measurements taken of the wound, but the records did demonstrate that the size of the wound decreased from 18 cm by 32 cm by 1.0 cm on June 3, 2024, to 8.2 cm by 24.3 cm by 0.2 cm on July 2, 2024. (File 4 at 42, 128.) And although the wound was serious, the medical records submitted did not show that the wound was not responding to more conservative treatment.

After reviewing the entire record including the testimony presented at the hearing, I find that the Services were not reasonable and necessary and are not covered by Medicare. Appellant was not entitled to payment for the Services. And an overpayment was made.

**Limitation on Liability.**

Beneficiary did not receive notice that Medicare would not cover or pay for the Services, and Beneficiary is not liable for the costs of the Services.

The Medicare guidelines set forth the requirements for coverage and payment. And Appellant is expected to have known that the Services would not be covered or payable based on the applicable guidelines. See 42 C.F.R. § 411.406. Therefore, Appellant remains responsible for the costs of the Services.

Under section 1870 of the Act, recovery of an overpayment from a provider or supplier may be waived if the provider or supplier was not at fault in creating the overpayment. The provider or supplier is considered to be without fault if it exercised reasonable care in billing for, and accepting, the payment. Act § 1870(b).

Since a supplier or provider is expected to know the requirements of Medicare claims, Appellant is not without fault because it billed and received payment for items or services that it should have known were not covered or payable under the Medicare program. Therefore, the overpayment recovery cannot be waived under section 1870 of the Act, and Appellant is liable for the overpayment amount.

## CONCLUSIONS OF LAW

I find that the Services are not covered by Medicare. Appellant was not entitled to payment for the Services. An overpayment was made. Beneficiary is not liable for the Services or any overpayment. Appellant should have known that the Services were not covered and is liable for the Services and any overpayment.

## ORDER

This decision is **UNFAVORABLE**. I direct the Medicare Administrative Contractor to process the claim in accordance with this decision.

**SO ORDERED**

Jenifer J. Soulikias
Administrative Law Judge

DEPARTMENT OF HEALTH AND HUMAN SERVICES (DHHS) / DEPARTMENTAL APPEALS BOARD Form DAB-101 (12/19)

# REQUEST FOR REVIEW OF ADMINISTRATIVE LAW JUDGE (ALJ) MEDICARE DECISION / DISMISSAL

| | |
|---|---|
| 1. APPELLANT (the party requesting review) | 2. ALJ APPEAL NUMBER (on the decision or dismissal) |
| 3. BENEFICIARY* | 4. MEDICARE NUMBER (Health Insurance Claim Number (HICN) or Medicare Beneficiary Identifier (MBI))* |

*If the request involves multiple claims or multiple beneficiaries, attach a list of beneficiaries, Medicare numbers, and any other information to identify all claims being appealed.

| | |
|---|---|
| 5. PROVIDER, PRACTITIONER, OR SUPPLIER | 6. SPECIFIC ITEM(S) OR SERVICE(S) |

7. Medicare claim type: ☐ Part A ☐ Part B ☐ Part C - Medicare Advantage
☐ Part D - Medicare Prescription Drug Plan ☐ Entitlement/enrollment for Part A or Part B

8. Does this request involve authorization for an item or service that has not yet been furnished?
☐ Yes If Yes, skip to Block 9.
☐ No If No, Specific Dates of Service:

9. If the request involves authorization for a prescription drug under Medicare Part D, would application of the standard appellate timeframe seriously jeopardize the beneficiary's life, health, or ability to regain maximum function (as documented by a physician) such that expedited review is appropriate? ☐ Yes ☐ No

I request that the Medicare Appeals Council review the ALJ's ☐ decision or ☐ dismissal order [check one] dated___________________________. I disagree with the ALJ's action because (specify the parts of the ALJ's decision or dismissal you disagree with and why you think the ALJ was wrong):

__________________________________________________________

__________________________________________________________

__________________________________________________________

__________________________________________________________

(Attach additional sheets if you need more space)

**PLEASE ATTACH A COPY OF THE ALJ DECISION OR DISMISSAL ORDER YOU ARE APPEALING.**

| | | | | | |
|---|---|---|---|---|---|
| DATE | | | DATE | | |
| APPELLANT'S NAME (the party requesting review) | | | REPRESENTATIVE'S NAME (include signed appointment of representative if not already submitted) | | |
| ADDRESS | | | ADDRESS | | |
| CITY, STATE, ZIP CODE | | | CITY, STATE, ZIP CODE | | |
| TELEPHONE NUMBER | FAX NUMBER | E-MAIL | TELEPHONE NUMBER | FAX NUMBER | E-MAIL |

(SEE FURTHER INSTRUCTIONS ON PAGE 2)

If you have additional evidence, submit it with this request for review. If you need more time, you must request an extension of time in writing now, explaining why you are unable to submit the evidence or legal argument now.

*If you are a provider, supplier, or a beneficiary represented by a provider or supplier, and your case was reconsidered by a Qualified Independent Contractor (QIC), the Medicare Appeals Council will not consider new evidence related to issues the QIC has already considered unless you show that you have a good reason for submitting it for the first time to the Medicare Appeals Council.*

**IMPORTANT: Include the HICN or MBI and ALJ Appeal Number on any letter or other material you submit.**

This request must be received within 60 calendar days after you receive the ALJ's decision or dismissal, unless we extend the time limit for good cause. We assume you received the decision or dismissal 5 calendar days after it was issued, unless you show you received it later. If this request will not be received within 65 calendar days from the date on the decision or dismissal order, please explain why on a separate sheet.

---

You must file your request for review in writing with the Medicare Appeals Council at:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

You may send the request for review by U.S. Mail, a common carrier such as FedEx, or by fax to (202) 565-0227. If you send a fax, please do not also mail a copy. ***You must send a copy of your appeal to the other parties and indicate that all parties, to include all beneficiaries, have been copied on the request for review. For claims involving multiple beneficiaries, you may submit a copy of the cover letters issued or a spreadsheet of the beneficiaries and addresses who received a copy of the request for review.***

If you have any questions about your request for review or wish to request expedited review of a claim involving authorization of your prescription drug under Medicare Part D, you may call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100. You may also visit our web site at www.hhs.gov/dab for additional information on how to file your request for review.

## PRIVACY ACT STATEMENT

The collection of information on this form is authorized by the Social Security Act (section 205(a) of title II, section 702 of title VII, section 1155 of Title XI, and sections 1852(g)(5), 1869(b)(1), 1871, 1872, and 1876(c)(5)(B) of title XVIII, as appropriate). The information provided will be used to further document your claim. Information requested on this form is voluntary, but failure to provide all or any part of the requested information may affect the determination of your claim. Information you furnish on this form may be disclosed by the Department of Health and Human Services or the Social Security Administration to another person or governmental agency only with respect to programs under the Social Security Act and to comply with Federal laws requiring the disclosure of information or the exchange of information between the Department of Health and Human Services, the Social Security Administration, or other agencies.

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Kansas City, MO**

| | |
|---|---|
| Appeal of: **INDY WOUND CENTER FOR LIMB PRESERVATION & RECONSTRUCTION** | OMHA Appeal No.: **3-15485411857** |
| Beneficiary: [redacted] | Medicare Part: **B** |
| Medicare No.: [redacted] | Before: **Jenifer J. Soulikias** Administrative Law Judge |

Index of the Administrative Record and Exhibit List

| **Exhibit Record** | **Administrative File Reference** File Name | | Page Range |
|---|---|---|---|
| Position Statements: C2C | File 9 | 1 | : 7 |
| Procedural - CMS Levels: QIC Decision | File 2 | 1 | : 16 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 3 | 1 | : 3 |
| Procedural - CMS Levels: Request for Reconsideration | File 4 | 1 | : 286 |
| Procedural - CMS Levels: Redetermination: Case File | File 5 | 1 | : 43 |
| Procedural - CMS Levels: Redetermination: cover page | File 6 | 1 | : 1 |
| Procedural - OMHA Level: Request for ALJ Hearing: w/AOR, QIC dec, docs | File 1 | 1 | : 21 |
| Procedural - OMHA Level: Response to Notice of Hearing: Appellant | File 10 | 1 | : 2 |
| Procedural - OMHA Level: Notice of Intent: C2C - Non-Party - Written | File 11 | 1 | : 2 |
| Procedural - OMHA Level: Notice of Intent: UPIC - Non-Party - Written | File 12 | 1 | : 2 |
| Procedural - OMHA Level: Notice of Hearing | File 7 | 1 | : 9 |
| Procedural - OMHA Level: Response to Notice of Hrg: C2C- Non-Party - Written | File 8 | 1 | : 3 |
| Proceeding (Audios): Hearing | File 13 | 1 | : 1 |

Department of Health and Human Services
Office of the Secretary

**OFFICE OF MEDICARE HEARINGS AND APPEALS**

Kansas City Field Office
601 E. 12th Street
Suite 1753
Kansas City, MO 64106-2817
(816)-599-3300
(505) 407-3839 (Direct)
(816) 527-0051 (Fax)
(844) 566-6258 (Toll Free)

February 11, 2026

ENGAGE HEALTH SOULTIONS
60 PUBLIC SQUARE SUITE 602
WILKES- BARRE, PA 18701

**NOTICE OF DECISION**

Appellant: INDY WOUND CENTER FOR LIMB PRESERVATION & RECONSTRUCTION LLC
OMHA Appeal Number: 3-15485412213

Enclosed is the decision for the above case. This decision is based on the administrative record, including any evidence or testimony presented at the hearing, if one was held. The decision is not precedential, does not release the appellant from civil or criminal liability, and may be reopened at any time if it was procured by fraud or similar fault. In addition, the decision may be reopened within 180 calendar days from the date of the decision for good cause. Good cause exists when there is new and material evidence that was not available or known at the time of the decision and may result in a different conclusion, or when the evidence that was considered clearly shows on its face that an obvious error was made at the time of the decision.

**What if I disagree with the decision?**

If you disagree with the decision, you may file an appeal with the Medicare Appeals Council. Other parties may also appeal the decision. In addition, the Medicare Appeals Council may decide to review the decision on its own motion. If no party appeals the decision and the Medicare Appeals Council does not review the decision, the decision is binding on all parties and you and the other parties will not have the right to ask a federal court to review the decision.

If you are not already represented, you may appoint an attorney or other person to represent you.

**<u>How much time do I have to file an appeal?</u>**

The Medicare Appeals Council must receive your written appeal **within 60 calendar days** of the date that you receive this notice. The Medicare Appeals Council assumes you received this notice 5 calendar days after the date of the notice unless you show that you did not receive it within the 5-day period.

The Medicare Appeals Council will dismiss a late request for review unless you show that you had a good reason for not filing it on time.

**<u>How do I file an appeal?</u>**

To appeal, you must ask the Medicare Appeals Council to review the decision. Your appeal must be in writing, except that a request for expedited review of a Part D decision may be made orally as described below. Your appeal must identify the parts of the decision that you disagree with, and explain why you disagree.

You may submit a written request for review to the Medicare Appeals Council using one of three available methods: mail, fax, or electronic filing (E-File). **<u>Please do not submit your request for review using more than one method</u>**. Regardless of how you file your appeal, **you must always send a copy of your written request for review to the other parties who received a copy of the decision.**

If you are filing a written request for review, you may use the enclosed *Request for Review* (Form DAB-101), or you may write a letter containing the following:

- The beneficiary's/enrollee's name (and telephone number for Part D appeals);
- The beneficiary's/enrollee's Medicare number (Health Insurance Claim Number or Medicare Beneficiary Identifier);
- The item(s), service(s), or specific Part D drug(s) in dispute;
- The specific date(s) the item(s) or service(s) were provided, if applicable;
- For Part D appeals, the plan name;
- For Part D appeals, the OMHA Appeal Number on the adjudicator's decision;
- For Part D appeals requesting expedited review, a statement that you are requesting expedited review;
- The date of the adjudicator's decision (not required for Part D appeals); and
- Your name and signature, and, if applicable, the name and signature of your representative.

**Filing by mail:**

Mail your appeal and a copy of the enclosed decision to:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

**Filing by fax:**

Fax your appeal and a copy of the enclosed decision to **(202) 565-0227.**

**Filing by computer:**

Using your web browser, visit the Medicare Operations Division Electronic Filing System (MOD E-File) website at **https://dab.efile.hhs.gov/mod**.

To file a new appeal using MOD E-File, you will need to register by:

1. Clicking **Register** on the MOD E-File home page;
2. Entering the information requested on the "Register New Account" form; and
3. Clicking **Register Account** at the bottom of the form.

You will use the email address and password you provided during registration to access MOD E-File at **https://dab.efile.hhs.gov/mod/users/new**. You will be able to use MOD E-File to file and access the specific materials for appeals to which you are a party or a party's representative. You may check the status of any appeal on the website homepage without registering.

Once registered, you may file your appeal by:

1. Logging into MOD E-File;
2. Clicking the **File New Appeal** menu button on the top right of the screen;
3. Selecting the type of appeal you are filing (Request for Review or Request for Escalation); and
4. Entering the requested Appeal Information and uploading the requested Appeal Documents on the "File New Appeal - Medicare Operations Division" form. You are required to provide information and documents marked with an asterisk.

At a minimum, the Medicare Appeals Council requires an appellant to file a signed Request for Review and a copy of the enclosed decision. All documents should be submitted in Portable Document Format (PDF) whenever possible. Any document, including a Request for Review, will be deemed to have been filed on a given day, if it is uploaded to MOD E-File on or before 11:59 p.m. EST of that day.

Currently, the documents that may be filed electronically are the:

1. Request for Review;
2. Appointment of Representative form (OMB Form 0938-0950);
3. Copy of Administrative Law Judge or attorney adjudicator decision;
4. Memorandum or brief or other written statement in support of your appeal; and
5. Request to Withdraw your appeal

**No other documents aside from the five (5) listed categories above may be submitted through MOD E-File.**

**Filing by oral request (for expedited review only):**

Oral requests for expedited review of a Part D decision may be made by telephone to **(866) 365-8204.** You must provide the information listed in the bullet points above and a statement that you are requesting an expedited review within 60 calendar days after receipt of this notice of decision. The Medicare Appeals Council will document the oral request in writing and maintain the documentation in the case file.

Please note that your request for review will only be expedited (1) the appeal involves an issue specified in 42 C.F.R. § 423.566(b), but does not include solely a request for payment of a Part D drug that has already been furnished, and (2) the prescribing physician (or other prescriber) indicates, or the Medicare Appeals Council determines, that the standard time frame may seriously jeopardize your life, health, or ability to regain maximum function.

**How will the Medicare Appeals Council respond to my appeal?**

The Medicare Appeals Council will limit its review to the issues raised in the appeal, unless the appeal is filed by an unrepresented beneficiary/enrollee. It may change the parts of the decision that you agree with. It may adopt, modify, or reverse the decision, in whole or in part, or it may send the case back to OMHA for further action. It may also dismiss your appeal.

**Questions?**

You may call or write our office. A toll-free phone number and mailing address are at the top of this notice.

Additional information about filing an appeal with the Medicare Appeals Council is available at http://www.hhs.gov/dab/. You can also call the Medicare Appeals Council's staff in the Medicare

Operations Division of the Departmental Appeals Board at (202) 565-0100 or (866) 365-8204 (toll free), if you have questions about filing an appeal.

cc: [redacted]
QIC - C2C B North
301 W Bay Street
Ste. 1110
Jacksonville, FL 32202

Enclosures:
OMHA-152, Decision
DAB-101, Request for Review
OMHA-156, Exhibit List

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Kansas City, MO**

| | |
|---|---|
| Appeal of: **INDY WOUND CENTER FOR LIMB PRESERVATION & RECONSTRUCTION LLC** | OMHA Appeal No.: **3-15485412213** |
| Beneficiary: [redacted] | Medicare Part: B |
| Medicare No. [redacted] | Before: **Jenifer J. Soulikias** Administrative Law Judge |

## DECISION

After carefully considering the evidence, I enter an **UNFAVORABLE** decision for **Indy Wound Center for Limb Preservation & Reconstruction LLC.** (Appellant). Medicare does not cover the **BioLab Membrane Wrap skin substitute and related services** (the Services) provided to [redacted] (Beneficiary) on **August 13, 2024** (the Date of Service).

## PROCEDURAL HISTORY

Appellant's claim for the Services was initially paid, but a Unified Program Integrity Contractor (UPIC) later determined that the Services were not covered and that Appellant received an overpayment. On redetermination and reconsideration, the Medicare Administrative Contractor (MAC) and the Qualified Independent Contractor (QIC) issued unfavorable decisions finding that the Services were not covered and upholding the overpayment determination. The MAC and the QIC also determined that Appellant was liable and that Beneficiary was not liable for the non-covered costs and any overpayment.

Appellant filed at timely request for an Administrative Law Judge (ALJ) hearing. The amount in controversy meets the requirement for an ALJ hearing. Accordingly, Appellant's appeal satisfies all the jurisdictional requirements for an ALJ hearing. 42 C.F.R. §§ 405.1002(a), 405.1006(b)(1).

I conducted a hearing by telephone on **January 8, 2025. William O'Malley** appeared on behalf of Appellant. Non-duplicative exhibits were admitted into the record without objection.

## ISSUES

The issues before the Administrative Law Judge include all of the issues brought out in the initial determination, coverage determination, or organization determination; redetermination; or reconsideration that were not decided entirely in a party's favor, for the claims or other appealed matters specified in the request for hearing.

## APPLICABLE LAW AND POLICY

ALJs are bound to follow all laws, regulations and national coverage determinations (NCDs) pertaining to the Medicare and Medicaid programs. 42 C.F.R. §§ 405.1060, 405.1063. ALJs are not bound by but must give substantial deference to applicable local coverage determinations (LCDs), local medical review policies (LMRPs), and program guidance issued by the Centers for Medicare and Medicaid Services (CMS) such as program memoranda and manual instructions. 42 C.F.R. § 405.1062.

A claimant must furnish sufficient documentary evidence to support the claim. 42 C.F.R. § 424.5(a)(6). And a claimant bears the burden of proof in this appeal to support the claim by a preponderance of the evidence. 5 U.S.C. § 556(d) (setting forth the burden of proof in an administrative law proceeding as requiring a proffered position to be supported with "reliable, probative, and substantial evidence").

**Medicare Coverage.**

Medicare provides coverage for services and supplies, including biologicals and drugs, furnished incident to a physician's professional services. Act §§ 1831, 1832(a)(2)(C), 1861(s)(2)(A). But to be covered, the services or supplies must have been reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member. Act § 1862(a)(1)(A).

Medicare administrative contractors may develop local coverage determinations (LCDs), which are determinations by the contractor as to whether and when an item or service is reasonable and necessary. Act §1869(f)(2)(B); *Medicare Program Integrity Manual* (*MPIM*), pub. 100-08, ch. 13, §§ 13.1.1, 13.5.4. The Medicare Program Integrity Manual (MPIM) provides guidelines to assist contractors in developing LCDs. *MPIM*, ch. 13, § 13.5.4. ALJs may look to these guidelines to determine medical necessity in the absence of an applicable NCD or LCD.

The MPIM states that a contractor shall consider a service to be reasonable and necessary if it is

(a) Safe and effective;

(b) Not experimental or investigational; and

(c) Appropriate, including the duration and frequency that is considered appropriate for the item or service, in terms of whether it is:

- Furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the patient's condition or to improve the function of a malformed body member;
- Furnished in a setting appropriate to the patient's medical needs and condition;
- Ordered and furnished by qualified personnel;
- One that meets, but does not exceed, the patient's medical need; and
- At least as beneficial as an existing and available medically appropriate alternative.

*MPIM*, ch. 13, § 13.5.4. In conducting a review of medical necessity for a service, contractors "shall use the available evidence of general acceptance by the medical community, such as published original research in peer-reviewed medical journals, systematic reviews and meta-analyses, evidence-based consensus statements, and clinical guidelines." *MPIM*, ch. 13, § 13.5.3.

**Limitation on Liability.**

Section 1879 of the Act provides financial relief to beneficiaries, providers, and suppliers by permitting Medicare payment to be made, or requiring refunds to be made, for services and items for which Medicare payment would otherwise be denied. In order to obtain relief under section 1879, the payment for the services or items furnished must have been denied for one of the reasons specified in section 1879, which includes non-coverage under section 1862(a)(1) of the Act because services or items were "not medically reasonable and necessary." 42 C.F.R. § 411.400. In addition, relief may be provided under section 1879 only if the beneficiary and the provider or supplier did not know and reasonably could not have been expected to know that the items or services were excluded from coverage. 42 C.F.R. 411.400.

Providers and suppliers participating in the Medicare program are considered to have constructive knowledge of published Medicare statues and regulations, CMS manual instructions, bulletins, and contractors' written guides and directives, and standards of practice in conjunction with Medicare reimbursement policies. 42 C.F.R. § 411.406; *Medicare Claims Processing Manual (MCPM)*, pub. 100-04, ch. 30 §§ 30.2, 40.1.

A beneficiary is considered to have known that an item or service is not covered if the beneficiary received valid written notice of non-coverage or notice of a recent claim denial for the same or similar item or service. 42 C.F.R. § 411.404; *MCPM*, ch. 30, §§ 30, 30.1, 30.1.1. If a beneficiary did not know or receive notice that Medicare would deny payment, the beneficiary is not financially liable for the non-covered services. Act § 1879(a)-(g); *MCPM*, ch. 30, § 30.

In the event of an overpayment, section 1870(b) of the Act provides the authority to waive the overpayment. Generally, Medicare waives overpayments if a provider or supplier is without fault in causing the overpayment. Act § 1870(b). A provider or supplier is considered to be without fault if it exercised reasonable care in billing for, and accepting, the payment. Act § 1870(b).

## FINDINGS OF FACT AND ANALYSIS

**Medicare Coverage.**

At issue is Appellant's claim for wound surgery services and the application of a skin substitute to a venous ulcer on Beneficiary's left anterior leg.[1] The claim at issue in this appeal is for the second application of a skin substitute product to the wound. (File 4 at 14-43.) The MAC and QIC denied payment by concluding that the skin substitute product used was experimental or investigational and that the use of a skin substitute product was not reasonable and necessary. (File 5 at 4; File 2 at 3-4.)

There is no NCD or LCD addressing the reasonable and necessary threshold for coverage of a skin substitute product. In the absence of an applicable NCD or LCD, I may look to the guidelines to be used by contractors in developing LCDs. *MPIM*, ch. 13, § 13.5.4. Under these guidelines, an item is reasonable and necessary if it is safe and effective, not experimental or investigational, and appropriate. *MPIM*, ch. 13, § 13.5.4. And in conducting a review of medical necessity for a service, contractors "shall use the available evidence of general acceptance by the medical community, such as published original research in peer-reviewed medical journals, systematic reviews and meta-analyses, and evidence-based consensus statements and clinical

[1] Although Beneficiary had multiple wounds on the lower extremities, a skin substitute product was applied only to a wound on the left anterior leg on the Date of Service. (File 4 at 23-29.)

guidelines." *MPIM*, ch. 13, § 13.5.3. The services also must have been appropriate to the patient's medical needs and condition. *MPIM*, ch. 13, § 13.5.4.

Beneficiary in this case had a history of multiple longstanding venous insufficiency ulcers to the bilateral lower extremities. (File 4 at 14.) Beneficiary's prior medical history was also significant for morbid obesity, chronic bilateral lower extremity edema, history of deep vein thrombosis, hypertension, hyperlipidemia, pulmonary hypertension, and anemia. (File 4 at 102.)

Beneficiary was admitted to a hospital on May 8, 2024, after having been found covered in her own blood and unable to get up. (File 4 at 102.) She was diagnosed with septic/hemorrhagic shock, acute kidney injury, and metabolic acidosis. (File 4 at 102.) Beneficiary also had wounds on both lower extremities. (File 4 at 103-04.) Beneficiary was very familiar to the hospital care team from previous admissions for severe chronic leg wounds, most recently in January 2024. (File 4 at 102.) She had been at a long-term acute care hospital and was discharged home six weeks prior to the May 8 hospital admission. (File 4 at 102.) She had a steady decline after returning home. (File 4 at 102.) In the past, Beneficiary demonstrated medical and treatment noncompliance. (File 4 at 102.) She tended to refuse care and change her own dressings. (File 4 at 102.) Beneficiary also had a history of refusing wound VAC due to a previous bad experience. (File 4 at 102.) She had an inpatient plastics consult on April 19, 2023, but did not follow up. (File 4 at 102.)

With respect to the wounds present on May 8, 2024, Beneficiary reported recently using silicone primary dressing for non-stick properties. (File 4 at 102.) A bilateral lower extremity CT was negative for abscess or soft tissue gas on admission. (File 4 at 102.) Medical records indicated that skin substitutes were applied to the lower extremities on May 11, 2024. (File 4 at 102.) On May 15, 2024, Beneficiary was noted to have had a nearly circumferential wound around the entire left calf with a depth of 0.2 cm. (File 4 at 104.) No measurements were taken due to Beneficiary's severe pain with any touch. (File 4 at 104.)

Beneficiary was transferred to another facility on May 17, 2024. (File 4 at 44-45.) On June 3, 2024, a venous ulcer was noted on her lower left leg that measured 18 cm by 32 cm by 0.1 cm. (File 4 at 128.)

Beneficiary was admitted to a rehabilitation hospital on June 11, 2024, where she received wound care. (File 4 at 44-115.) There were limited notations detailing the progress of the wound during this admission, with the first measurements of the left anterior leg wound noted on June 21, 2024. (File 4 at 44-115.) On June 21, 2024, the left anterior leg wound measured 9 cm by 32 cm by 0.4 cm. (File 4 at 50, 52.)

Beneficiary was referred to Appellant for advanced wound care. (File 4 at 30.) When evaluated on July 2, 2024, Beneficiary reported dealing with wounds off and on for 6 plus years. (File 4 at 30.) Beneficiary stated she had seen multiple providers at various wound care centers and hospitals. (File 4 at 30.) She had tried topical treatments (antibiotic ointment, steroid creams, medihoney, silver based topics etc.), alginates, hydrofera, wet to dry with saline and betadine. (File 4 at 30.) Beneficiary reported also having bedside and surgical debridements. (File 4 at 30.) Despite these efforts, her wounds had been resistant to healing. (File 4 at 14.) Beneficiary reported that she had been on both IV and oral antibiotics for off and on cellulitis and for other systemic pathologies. (File 4 at 30.)

At the time of the skin substitute application, Beneficiary was at home with the aid of home health doing dressing changes three times weekly with xeroform, ABD, kerlix, and ACE from forefoot to below knee bilateral. (File 4 at 14.)

Although Beneficiary had multiple wounds on the lower extremities, a skin substitute product was applied only to a wound on the left anterior leg on the Date of Service. (File 4 at 17-27.) A skin substitute product was first applied to the wound on July 2, 2024. (File 4 at 41-43.) On July 2, 2024, the ulcer measured 8.2 cm by 24.3 cm by 0.2 cm. (File 4 at 42.) With respect to the necessity of applying the skin substitute product, the treating practitioner stated,

> [t]reatment with a cellular and/or tissue based therapy is reasonable and necessary because the ulcer failed to show evidence of healing despite 30 days of comprehensive, conservative care. Prior treatments that failed include nutritional optimization, moist wound care, management of infection and debridement of necrotic material. The patient currently has a full thickness tissue defect not involving tendon, muscle, joint capsule or exhibiting exposed bone or sinus tracts, with a clean granular base. There is no evidence of a wound infection and bacterial colonization has been controlled. There is no evidence of underlying osteomyelitis or cellulitis. Adequate treatment of underlying conditions that contributed to the ulcer have been provided.

(File 4 at 42.)

On the Date of Service, the left anterior leg wound was noted as follows:

> The ulcer bed has exposed subcutaneous tissue. This is a full thickness ulcer. The skin around the ulcer is normal. There are no signs of epithelialization. The ulcer border is well defined. There is over 50% granulation with a confluent pattern of beefy red quality. There is between 0 and 25% nonviable material of slough/fibrin quality.
>
> Measurements were taken of a well defined single wound on the left anterior leg. The ulcer measures 7.5 cm x 19.1 cm x 0.2 cm. The VLU was debrided 100%. Post debridement, the ulcer measures 7.6 cm x 19.2 cm x 0.2 cm. The VLU has minimum amount of drainage. The drainage is serous.

(File 4 at 18-19.)

Appellant applied a second application of the BioLab Membrane Wrap product to the wound on the Date of Service. (File 4 at 23, 27-28.) The treating practitioner stated,

> The re-application of a cellular tissue product (CTP) is deemed both reasonable and necessary due to the persistence of an open wound. Previous CTP application demonstrated positive outcomes, including improved granulation tissue and a reduction in wound size.

(File 4 at 28.)

The BioLab Membrane Wrap is a human tissue allograft derived from the amniotic membrane regulated and approved for use as a human cellular and tissue based product (HCT/P) by the US Food and Drug Administration (FDA) under 21 C.F.R. Part 1271. (File 4 at 283-86.) It was approved for use by the FDA when intended for use as a barrier and to provide protective coverage. (File 4 at 285-86.)

Although approved for use by the FDA, this FDA approval is not sufficient to demonstrate that the Membrane Wrap skin substitute product is not experimental and is reasonable and necessary for Medicare coverage purposes. *See* 68 Fed. Reg. 55634, 55636 (September 26, 2003)(noting that FDA approval or clearance alone does not generally entitle a product to coverage). And the evidence submitted did not demonstrate that the Membrane Wrap product was not experimental.

The only published studies and reviews submitted by Appellant were evaluations of the efficacy of amniotic membrane derivatives generally. (File 4 at 210-82.) Appellant did not submit published original research studies or systematic reviews or meta-analyses that evaluated the efficacy of the BioLab Membrane Wrap product. (File 10, Hearing Audio.) And Appellant stated that although studies of the BioLab Membrane Wrap product were in the process of being conducted, there were no studies that have been published concerning the BioLab Membrane Wrap. (File 10, Hearing Audio.) Studies of the efficacy of amniotic membrane derivatives generally are not sufficient to establish the efficacy of the BioLab Membrane Wrap product.

Additionally, the medical records submitted were not sufficient to establish that the use of the BioLab Membrane Wrap was reasonable and necessary in this case. Although Beneficiary had been having trouble with venous leg ulcers for years, the wound at issue was not noted until mid-May 2024. The documentation of the nature of the wound and of the response of the wound to conservative treatment measures was sporadic. There were limited measurements taken of the wound, but the records did demonstrate that the size of the wound decreased from 18 cm by 32 cm by 0.1 cm on June 3, 2024, to 8.2 cm by 24.3 cm by 0.2 cm on July 2, 2024. (File 4 at 42, 128.) And although the wound was serious, the medical records submitted did not show that the wound was not responding to more conservative treatment.

After reviewing the entire record including the testimony presented at the hearing, I find that the Services were not reasonable and necessary and are not covered by Medicare. Appellant was not entitled to payment for the Services. And an overpayment was made.

**Limitation on Liability.**

Beneficiary did not receive notice that Medicare would not cover or pay for the Services, and Beneficiary is not liable for the costs of the Services.

The Medicare guidelines set forth the requirements for coverage and payment. And Appellant is expected to have known that the Services would not be covered or payable based on the applicable guidelines. See 42 C.F.R. § 411.406. Therefore, Appellant remains responsible for the costs of the Services.

Under section 1870 of the Act, recovery of an overpayment from a provider or supplier may be waived if the provider or supplier was not at fault in creating the overpayment. The provider or supplier is considered to be without fault if it exercised reasonable care in billing for, and accepting, the payment. Act § 1870(b).

Since a supplier or provider is expected to know the requirements of Medicare claims, Appellant is not without fault because it billed and received payment for items or services that it should have known were not covered or payable under the Medicare program. Therefore, the overpayment recovery cannot be waived under section 1870 of the Act, and Appellant is liable for the overpayment amount.

## CONCLUSIONS OF LAW

I find that the Services are not covered by Medicare. Appellant was not entitled to payment for the Services. An overpayment was made. Beneficiary is not liable for the Services or any overpayment. Appellant should have known that the Services were not covered and is liable for the Services and any overpayment.

## ORDER

This decision is **UNFAVORABLE**. I direct the Medicare Administrative Contractor to process the claim in accordance with this decision.

**SO ORDERED**

Jenifer J. Soulikias
Administrative Law Judge

DEPARTMENT OF HEALTH AND HUMAN SERVICES (DHHS) / DEPARTMENTAL APPEALS BOARD Form DAB-101 (12/19)

# REQUEST FOR REVIEW OF ADMINISTRATIVE LAW JUDGE (ALJ) MEDICARE DECISION / DISMISSAL

| | |
|---|---|
| 1. APPELLANT (the party requesting review) | 2. ALJ APPEAL NUMBER (on the decision or dismissal) |
| 3. BENEFICIARY* | 4. MEDICARE NUMBER (Health Insurance Claim Number (HICN) or Medicare Beneficiary Identifier (MBI))* |

*If the request involves multiple claims or multiple beneficiaries, attach a list of beneficiaries, Medicare numbers, and any other information to identify all claims being appealed.

| | |
|---|---|
| 5. PROVIDER, PRACTITIONER, OR SUPPLIER | 6. SPECIFIC ITEM(S) OR SERVICE(S) |

7. Medicare claim type: ☐ Part A ☐ Part B ☐ Part C - Medicare Advantage
☐ Part D - Medicare Prescription Drug Plan ☐ Entitlement/enrollment for Part A or Part B

8. Does this request involve authorization for an item or service that has not yet been furnished?
☐ Yes If Yes, skip to Block 9.
☐ No If No, Specific Dates of Service:

9. If the request involves authorization for a prescription drug under Medicare Part D, would application of the standard appellate timeframe seriously jeopardize the beneficiary's life, health, or ability to regain maximum function (as documented by a physician) such that expedited review is appropriate? ☐ Yes ☐ No

I request that the Medicare Appeals Council review the ALJ's ☐ decision or ☐ dismissal order [check one] dated______________________________. I disagree with the ALJ's action because (specify the parts of the ALJ's decision or dismissal you disagree with and why you think the ALJ was wrong):

______________________________________________________________________________

______________________________________________________________________________

______________________________________________________________________________

______________________________________________________________________________

(Attach additional sheets if you need more space)

**PLEASE ATTACH A COPY OF THE ALJ DECISION OR DISMISSAL ORDER YOU ARE APPEALING.**

| | | | | | |
|---|---|---|---|---|---|
| DATE | | | DATE | | |
| APPELLANT'S NAME (the party requesting review) | | | REPRESENTATIVE'S NAME (include signed appointment of representative if not already submitted) | | |
| ADDRESS | | | ADDRESS | | |
| CITY, STATE, ZIP CODE | | | CITY, STATE, ZIP CODE | | |
| TELEPHONE NUMBER | FAX NUMBER | E-MAIL | TELEPHONE NUMBER | FAX NUMBER | E-MAIL |

(SEE FURTHER INSTRUCTIONS ON PAGE 2)

If you have additional evidence, submit it with this request for review. If you need more time, you must request an extension of time in writing now, explaining why you are unable to submit the evidence or legal argument now.

*If you are a provider, supplier, or a beneficiary represented by a provider or supplier, and your case was reconsidered by a Qualified Independent Contractor (QIC), the Medicare Appeals Council will not consider new evidence related to issues the QIC has already considered unless you show that you have a good reason for submitting it for the first time to the Medicare Appeals Council.*

**IMPORTANT: Include the HICN or MBI and ALJ Appeal Number on any letter or other material you submit.**

This request must be received within 60 calendar days after you receive the ALJ's decision or dismissal, unless we extend the time limit for good cause. We assume you received the decision or dismissal 5 calendar days after it was issued, unless you show you received it later. If this request will not be received within 65 calendar days from the date on the decision or dismissal order, please explain why on a separate sheet.

---

You must file your request for review in writing with the Medicare Appeals Council at:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

You may send the request for review by U.S. Mail, a common carrier such as FedEx, or by fax to (202) 565-0227. If you send a fax, please do not also mail a copy. ***You must send a copy of your appeal to the other parties and indicate that all parties, to include all beneficiaries, have been copied on the request for review. For claims involving multiple beneficiaries, you may submit a copy of the cover letters issued or a spreadsheet of the beneficiaries and addresses who received a copy of the request for review.***

If you have any questions about your request for review or wish to request expedited review of a claim involving authorization of your prescription drug under Medicare Part D, you may call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100. You may also visit our web site at www.hhs.gov/dab for additional information on how to file your request for review.

## PRIVACY ACT STATEMENT

The collection of information on this form is authorized by the Social Security Act (section 205(a) of title II, section 702 of title VII, section 1155 of Title XI, and sections 1852(g)(5), 1869(b)(1), 1871, 1872, and 1876(c)(5)(B) of title XVIII, as appropriate). The information provided will be used to further document your claim. Information requested on this form is voluntary, but failure to provide all or any part of the requested information may affect the determination of your claim. Information you furnish on this form may be disclosed by the Department of Health and Human Services or the Social Security Administration to another person or governmental agency only with respect to programs under the Social Security Act and to comply with Federal laws requiring the disclosure of information or the exchange of information between the Department of Health and Human Services, the Social Security Administration, or other agencies.

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Kansas City, MO**

| | | | |
|---|---|---|---|
| Appeal of: | **INDY WOUND CENTER FOR LIMB PRESERVATION & RECONSTRUCTION** | OMHA Appeal No.: | **3-15485412213** |
| Beneficiary: | [redacted] | Medicare Part: | **B** |
| Medicare No.: | | Before: | **Jenifer J. Soulikias** Administrative Law Judge |

Index of the Administrative Record and Exhibit List

| **Exhibit Record** | **Administrative File Reference** File Name | Page Range | | |
|---|---|---|---|---|
| Procedural - CMS Levels: QIC Decision | File 2 | 1 | : | 16 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 3 | 1 | : | 3 |
| Procedural - CMS Levels: Request for Reconsideration | File 4 | 1 | : | 286 |
| Procedural - CMS Levels: Redetermination: Case File | File 5 | 1 | : | 44 |
| Procedural - CMS Levels: Redetermination: cover page | File 6 | 1 | : | 1 |
| Procedural - OMHA Level: Request for ALJ Hearing: w/AOR, QIC dec, docs | File 1 | 1 | : | 21 |
| Procedural - OMHA Level: Notice of Hearing | File 7 | 1 | : | 9 |
| Procedural - OMHA Level: Response to Notice of Hearing | File 8 | 1 | : | 2 |
| Procedural - OMHA Level: Notice of Intent: UPIC - Non-party- Written | File 9 | 1 | : | 2 |
| Proceeding (Audios): Hearing | File 10 | 1 | : | 1 |

Department of Health and Human Services
Office of the Secretary

**OFFICE OF MEDICARE HEARINGS AND APPEALS**

Kansas City Field Office
601 E. 12th Street
Suite 1753
Kansas City, MO 64106-2817
(816)-599-3300
(505) 407-3839 Team Soulikias
(816) 527-0051 (Fax)
(844) 566-6258 (Toll Free)

February 11, 2026

ENGAGE HEALTH SOULTIONS
60 PUBLIC SQUARE SUITE 602
WILKES- BARRE, PA 18701

**NOTICE OF DECISION**

Appellant: INDY WOUND CENTER FOR LIMB PRESERVATION & RECONSTRUCTION LLC
OMHA Appeal Number: 3-15485411873

Enclosed is the decision for the above case. This decision is based on the administrative record, including any evidence or testimony presented at the hearing, if one was held. The decision is not precedential, does not release the appellant from civil or criminal liability, and may be reopened at any time if it was procured by fraud or similar fault. In addition, the decision may be reopened within 180 calendar days from the date of the decision for good cause. Good cause exists when there is new and material evidence that was not available or known at the time of the decision and may result in a different conclusion, or when the evidence that was considered clearly shows on its face that an obvious error was made at the time of the decision.

**What if I disagree with the decision?**

If you disagree with the decision, you may file an appeal with the Medicare Appeals Council. Other parties may also appeal the decision. In addition, the Medicare Appeals Council may decide to review the decision on its own motion. If no party appeals the decision and the Medicare Appeals Council does not review the decision, the decision is binding on all parties and you and the other parties will not have the right to ask a federal court to review the decision.

If you are not already represented, you may appoint an attorney or other person to represent you.

**<u>How much time do I have to file an appeal?</u>**

The Medicare Appeals Council must receive your written appeal **within 60 calendar days** of the date that you receive this notice. The Medicare Appeals Council assumes you received this notice 5 calendar days after the date of the notice unless you show that you did not receive it within the 5-day period.

The Medicare Appeals Council will dismiss a late request for review unless you show that you had a good reason for not filing it on time.

**<u>How do I file an appeal?</u>**

To appeal, you must ask the Medicare Appeals Council to review the decision. Your appeal must be in writing, except that a request for expedited review of a Part D decision may be made orally as described below. Your appeal must identify the parts of the decision that you disagree with, and explain why you disagree.

You may submit a written request for review to the Medicare Appeals Council using one of three available methods: mail, fax, or electronic filing (E-File). **<u>Please do not submit your request for review using more than one method</u>**. Regardless of how you file your appeal, **you must always send a copy of your written request for review to the other parties who received a copy of the decision.**

If you are filing a written request for review, you may use the enclosed *Request for Review* (Form DAB-101), or you may write a letter containing the following:

- The beneficiary's/enrollee's name (and telephone number for Part D appeals);
- The beneficiary's/enrollee's Medicare number (Health Insurance Claim Number or Medicare Beneficiary Identifier);
- The item(s), service(s), or specific Part D drug(s) in dispute;
- The specific date(s) the item(s) or service(s) were provided, if applicable;
- For Part D appeals, the plan name;
- For Part D appeals, the OMHA Appeal Number on the adjudicator's decision;
- For Part D appeals requesting expedited review, a statement that you are requesting expedited review;
- The date of the adjudicator's decision (not required for Part D appeals); and
- Your name and signature, and, if applicable, the name and signature of your representative.

**Filing by mail:**

Mail your appeal and a copy of the enclosed decision to:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

**Filing by fax:**

Fax your appeal and a copy of the enclosed decision to **(202) 565-0227.**

**Filing by computer:**

Using your web browser, visit the Medicare Operations Division Electronic Filing System (MOD E-File) website at **https://dab.efile.hhs.gov/mod**.

To file a new appeal using MOD E-File, you will need to register by:

1. Clicking **Register** on the MOD E-File home page;
2. Entering the information requested on the "Register New Account" form; and
3. Clicking **Register Account** at the bottom of the form.

You will use the email address and password you provided during registration to access MOD E-File at **https://dab.efile.hhs.gov/mod/users/new**. You will be able to use MOD E-File to file and access the specific materials for appeals to which you are a party or a party's representative. You may check the status of any appeal on the website homepage without registering.

Once registered, you may file your appeal by:

1. Logging into MOD E-File;
2. Clicking the **File New Appeal** menu button on the top right of the screen;
3. Selecting the type of appeal you are filing (Request for Review or Request for Escalation); and
4. Entering the requested Appeal Information and uploading the requested Appeal Documents on the "File New Appeal - Medicare Operations Division" form. You are required to provide information and documents marked with an asterisk.

At a minimum, the Medicare Appeals Council requires an appellant to file a signed Request for Review and a copy of the enclosed decision. All documents should be submitted in Portable Document Format (PDF) whenever possible. Any document, including a Request for Review, will be deemed to have been filed on a given day, if it is uploaded to MOD E-File on or before 11:59 p.m. EST of that day.

Operations Division of the Departmental Appeals Board at (202) 565-0100 or (866) 365-8204 (toll free), if you have questions about filing an appeal.

cc:

[redacted]
QIC - C2C B North
301 W Bay Street
Ste. 1110
Jacksonville, FL 32202

Enclosures:
OMHA-152, Decision
DAB-101, Request for Review
OMHA-156, Exhibit List

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Kansas City, MO**

| | |
|---|---|
| Appeal of: **INDY WOUND CENTER FOR LIMB PRESERVATION & RECONSTRUCTION LLC** | OMHA Appeal No.: **3-15485411873** |
| Beneficiary: [redacted] | Medicare Part: B |
| Medicare No.: [redacted] | Before: **Jenifer J. Soulikias** Administrative Law Judge |

## DECISION

After carefully considering the evidence, I enter an **UNFAVORABLE** decision for **Indy Wound Center for Limb Preservation & Reconstruction LLC.** (Appellant). Medicare does not cover the **BioLab Membrane Wrap skin substitute and related services** (the Services) provided to [redacted] (Beneficiary) on **September 24, 2024** (the Date of Service).

## PROCEDURAL HISTORY

Appellant's claim for the Services was initially paid, but a Unified Program Integrity Contractor (UPIC) later determined that the Services were not covered and that Appellant received an overpayment. On redetermination and reconsideration, the Medicare Administrative Contractor (MAC) and the Qualified Independent Contractor (QIC) issued unfavorable decisions finding that the Services were not covered and upholding the overpayment determination. The MAC and the QIC also determined that Appellant was liable and that Beneficiary was not liable for the non-covered costs and any overpayment.

Appellant filed at timely request for an Administrative Law Judge (ALJ) hearing. The amount in controversy meets the requirement for an ALJ hearing. Accordingly, Appellant's appeal satisfies all the jurisdictional requirements for an ALJ hearing. 42 C.F.R. §§ 405.1002(a), 405.1006(b)(1).

I conducted a hearing by telephone on **January 8, 2025. William O'Malley** appeared on behalf of Appellant. Non-duplicative exhibits were admitted into the record without objection.

## ISSUES

The issues before the Administrative Law Judge include all of the issues brought out in the initial determination, coverage determination, or organization determination; redetermination; or reconsideration that were not decided entirely in a party's favor, for the claims or other appealed matters specified in the request for hearing.

## APPLICABLE LAW AND POLICY

ALJs are bound to follow all laws, regulations and national coverage determinations (NCDs) pertaining to the Medicare and Medicaid programs. 42 C.F.R. §§ 405.1060, 405.1063. ALJs are not bound by but must give substantial deference to applicable local coverage determinations (LCDs), local medical review policies (LMRPs), and program guidance issued by the Centers for Medicare and Medicaid Services (CMS) such as program memoranda and manual instructions. 42 C.F.R. § 405.1062.

A claimant must furnish sufficient documentary evidence to support the claim. 42 C.F.R. § 424.5(a)(6). And a claimant bears the burden of proof in this appeal to support the claim by a preponderance of the evidence. 5 U.S.C. § 556(d) (setting forth the burden of proof in an administrative law proceeding as requiring a proffered position to be supported with "reliable, probative, and substantial evidence").

**Medicare Coverage.**

Medicare provides coverage for services and supplies, including biologicals and drugs, furnished incident to a physician's professional services. Act §§ 1831, 1832(a)(2)(C), 1861(s)(2)(A). But to be covered, the services or supplies must have been reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member. Act § 1862(a)(1)(A).

Medicare administrative contractors may develop local coverage determinations (LCDs), which are determinations by the contractor as to whether and when an item or service is reasonable and necessary. Act §1869(f)(2)(B); *Medicare Program Integrity Manual* (*MPIM*), pub. 100-08, ch. 13, §§ 13.1.1, 13.5.4. The Medicare Program Integrity Manual (MPIM) provides guidelines to assist contractors in developing LCDs. *MPIM*, ch. 13, § 13.5.4. ALJs may look to these guidelines to determine medical necessity in the absence of an applicable NCD or LCD.

The MPIM states that a contractor shall consider a service to be reasonable and necessary if it is

(a) Safe and effective;

(b) Not experimental or investigational; and

(c) Appropriate, including the duration and frequency that is considered appropriate for the item or service, in terms of whether it is:

- Furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the patient's condition or to improve the function of a malformed body member;
- Furnished in a setting appropriate to the patient's medical needs and condition;
- Ordered and furnished by qualified personnel;
- One that meets, but does not exceed, the patient's medical need; and
- At least as beneficial as an existing and available medically appropriate alternative.

*MPIM*, ch. 13, § 13.5.4. In conducting a review of medical necessity for a service, contractors "shall use the available evidence of general acceptance by the medical community, such as published original research in peer-reviewed medical journals, systematic reviews and meta-analyses, evidence-based consensus statements, and clinical guidelines." *MPIM*, ch. 13, § 13.5.3.

**Limitation on Liability.**

Section 1879 of the Act provides financial relief to beneficiaries, providers, and suppliers by permitting Medicare payment to be made, or requiring refunds to be made, for services and items for which Medicare payment would otherwise be denied. In order to obtain relief under section 1879, the payment for the services or items furnished must have been denied for one of the reasons specified in section 1879, which includes non-coverage under section 1862(a)(1) of the Act because services or items were "not medically reasonable and necessary." 42 C.F.R. § 411.400. In addition, relief may be provided under section 1879 only if the beneficiary and the provider or supplier did not know and reasonably could not have been expected to know that the items or services were excluded from coverage. 42 C.F.R. 411.400.

Providers and suppliers participating in the Medicare program are considered to have constructive knowledge of published Medicare statues and regulations, CMS manual instructions, bulletins, and contractors' written guides and directives, and standards of practice in conjunction with Medicare reimbursement policies. 42 C.F.R. § 411.406; *Medicare Claims Processing Manual (MCPM),* pub. 100-04, ch. 30 §§ 30.2, 40.1.

A beneficiary is considered to have known that an item or service is not covered if the beneficiary received valid written notice of non-coverage or notice of a recent claim denial for the same or similar item or service. 42 C.F.R. § 411.404; *MCPM*, ch. 30, §§ 30, 30.1, 30.1.1. If a beneficiary did not know or receive notice that Medicare would deny payment, the beneficiary is not financially liable for the non-covered services. Act § 1879(a)-(g); *MCPM,* ch. 30, § 30.

In the event of an overpayment, section 1870(b) of the Act provides the authority to waive the overpayment. Generally, Medicare waives overpayments if a provider or supplier is without fault in causing the overpayment. Act § 1870(b). A provider or supplier is considered to be without fault if it exercised reasonable care in billing for, and accepting, the payment. Act § 1870(b).

## FINDINGS OF FACT AND ANALYSIS

**Medicare Coverage.**

At issue is Appellant's claim for wound surgery services and the application of a skin substitute to a venous ulcer on Beneficiary's left posterior leg.[1] The claim at issue in this appeal is for the first application of a skin substitute product to the wound. (File 4 at 22-27.) The MAC and QIC denied payment by concluding that the skin substitute product used was experimental or investigational and that the use of a skin substitute product was not reasonable and necessary. (File 5 at 4; File 2 at 3-5.)

There is no NCD or LCD addressing the reasonable and necessary threshold for coverage of a skin substitute product. In the absence of an applicable NCD or LCD, I may look to the guidelines to be used by contractors in developing LCDs. *MPIM*, ch. 13, § 13.5.4. Under these guidelines, an item is reasonable and necessary if it is safe and effective, not experimental or investigational, and appropriate. *MPIM*, ch. 13, § 13.5.4. And in conducting a review of medical necessity for a service, contractors "shall use the available evidence of general acceptance by the medical community, such as published original research in peer-reviewed medical journals, systematic reviews and meta-analyses, and evidence-based consensus statements and clinical

[1] Although Beneficiary had multiple wounds on the lower extremities, a skin substitute product was applied only to a wound on the left posterior leg on the Date of Service. (File 4 at 22-27.)

guidelines." *MPIM*, ch. 13, § 13.5.3. The services also must have been appropriate to the patient's medical needs and condition. *MPIM*, ch. 13, § 13.5.4.

Beneficiary in this case had a history of multiple longstanding venous insufficiency ulcers to the bilateral lower extremities. (File 4 at 14-15.) Beneficiary's prior medical history was also significant for morbid obesity, chronic bilateral lower extremity edema, history of deep vein thrombosis, hypertension, hyperlipidemia, pulmonary hypertension, and anemia. (File 4 at 100.)

Beneficiary was admitted to a hospital on May 8, 2024, after having been found covered in her own blood and unable to get up. (File 4 at 100.) She was diagnosed with septic/hemorrhagic shock, acute kidney injury, and metabolic acidosis. (File 4 at 100.) Beneficiary also had wounds on both lower extremities. (File 4 at 101-02.) Beneficiary was very familiar to the hospital care team from previous admissions for severe chronic leg wounds, most recently in January 2024. (File 4 at 100.) She had been at a long-term acute care hospital and was discharged home six weeks prior to the May 8 hospital admission. (File 4 at 100.) She had a steady decline after returning home. (File 4 at 100.) In the past, Beneficiary demonstrated medical and treatment noncompliance. (File 4 at 100.) She tended to refuse care and change her own dressings. (File 4 at 100.) Beneficiary also had a history of refusing wound VAC due to a previous bad experience. (File 4 at 100.) She had an inpatient plastics consult on April 19, 2023, but did not follow up. (File 4 at 100.)

With respect to the wounds present on May 8, 2024, Beneficiary reported recently using silicone primary dressing for non-stick properties. (File 4 at 100.) A bilateral lower extremity CT was negative for abscess or soft tissue gas on admission. (File 4 at 100.) Medical records indicated that skin substitutes were applied to the lower extremities on May 11, 2024. (File 4 at 100.) On May 15, 2024, Beneficiary was noted to have had a nearly circumferential wound around the entire left calf with a depth of 0.2 cm. (File 4 at 102.) No measurements were taken due to Beneficiary's severe pain with any touch. (File 4 at 102.)

Beneficiary was transferred to another facility on May 17, 2024. (File 4 at 42-43.) On June 3, 2024, a venous ulcer was noted on her lower left leg that measured 18 cm by 32 cm by 0.1 cm. (File 4 at 126-27.)

Beneficiary was admitted to a rehabilitation hospital on June 11, 2024, where she received wound care. (File 4 at 42-113.) There were limited notations detailing the progress of the wound during this admission, with the first measurements of the left posterior leg wound noted on June 21, 2024. (File 4 at 42-113.) On June 21, 2024, the left posterior leg wound measured 32 cm by 9 cm by 0.4 cm. (File 4 at 48, 50.)

Beneficiary was referred to Appellant for advanced wound care. (File 4 at 28.) When evaluated on July 2, 2024, Beneficiary reported dealing with wounds off and on for 6 plus years. (File 4 at 28.) Beneficiary stated she had seen multiple providers at various wound care centers and hospitals. (File 4 at 28.) She had tried topical treatments (antibiotic ointment, steroid creams, medihoney, silver based topics etc.), alginates, hydrofera, wet to dry with saline and betadine. (File 4 at 28.) Beneficiary reported also having bedside and surgical debridements. (File 4 at 28.) Despite these efforts, her wounds had been resistant to healing. (File 4 at 28.) Beneficiary reported that she had been on both IV and oral antibiotics for off and on cellulitis and for other systemic pathologies. (File 4 at 28.)

Although Beneficiary had multiple wounds on the lower extremities, a skin substitute product was applied only to a wound on the left posterior leg on the Date of Service. (File 4 at 18-25.)

On July 2, 2024, the left posterior leg wound measured 32.1 cm by 8.9 cm by 0.3 cm. (File 4 at 32.) The wound was described as follows:

> The ulcer bed has exposed subcutaneous tissue. This is a full thickness ulcer. The skin around the ulcer is normal. The ulcer is not malodorous. There are no signs of epithelialization. The ulcer border is well defined. There is over 50% granulation with a confluent pattern of beefy red quality. There is between 0 and 25% nonviable material of slough/fibrin quality.

(File 4 at 32.) Given tissue exposure and fibrotic tissue bed, the wound was not optimized for advanced therapies on July 2, 2024. (File 4 at 35.)

At the time of the skin substitute application, Beneficiary was at home with the aid of home health doing dressing changes three times weekly with xeroform, ABD, kerlix, and ACE from forefoot to below knee bilateral. (File 4 at 14.)

On the Date of Service, the condition of the left posterior leg wound was noted as follows:

> The ulcer bed has exposed subcutaneous tissue. This is a full thickness ulcer. The skin around the ulcer is normal. The ulcer is not malodorous. There are no signs of epithelialization. The ulcer border is well defined. There is over 50% granulation with a confluent pattern of beefy red quality. There is between 0 and 25% nonviable material of slough/fibrin quality.
>
> Measurements were taken of a well defined single wound on the left posterior leg/calf. The ulcer measures 24.9 cm x 7.8 cm x 0.2 cm. The VLU was debrided 100%. Post debridement, the ulcer measures 25.0 cm x 7.9 cm x 0.2 cm. The VLU has minimum amount of drainage. The drainage is serosanguineous.

(File 4 at 19.)

Appellant applied the BioLab Membrane Wrap product to the wound on the Date of Service. (File 4 at 26-27.) The treating practitioner stated,

> The initial application of a cellular tissue product (CTP) is deemed both reasonable and necessary due to the persistence of an open wound. Consent: The patient was informed of the risks and benefits associated with the procedure and had the opportunity to ask questions. Appropriate consent has been obtained. Clinical Justification: The use of cellular and/or tissue based therapy is warranted due to the ulcer's failure to show significant healing despite 30 days of comprehensive conservative care. Prior interventions, including nutritional optimization, moist wound care, infection management, and debridement of necrotic material, have been insufficient. The patient's ulcer currently presents as a full-thickness tissue defect without involvement of tendon, muscle, joint capsule, exposed bone, or sinus tracts, and exhibits a clean, granular base. There is no evidence of wound infection, bacterial colonization, osteomyelitis, or cellulitis. Underlying conditions contributing to the ulcer have been adequately managed.

(File 4 at 27.)

The BioLab Membrane Wrap is a human tissue allograft derived from the amniotic membrane regulated and approved for use as a human cellular and tissue based product (HCT/P) by the US Food and Drug Administration (FDA) under 21 C.F.R. Part 1271. (File 4 at 283-86.) It was

approved for use by the FDA when intended for use as a barrier and to provide protective coverage. (File 4 at 285.)

Although approved for use by the FDA, this FDA approval is not sufficient to demonstrate that the Membrane Wrap skin substitute product is not experimental and is reasonable and necessary for Medicare coverage purposes. *See* 68 Fed. Reg. 55634, 55636 (September 26, 2003)(noting that FDA approval or clearance alone does not generally entitle a product to coverage). And the evidence submitted did not demonstrate that the Membrane Wrap product was not experimental.

The only published studies and reviews submitted by Appellant were evaluations of the efficacy of amniotic membrane derivatives generally. (File 4 at 210-82.) Appellant did not submit published original research studies or systematic reviews or meta-analyses that evaluated the efficacy of the BioLab Membrane Wrap product. (File 10, Hearing Audio.) And Appellant stated that although studies of the BioLab Membrane Wrap product were in the process of being conducted, there were no studies that have been published concerning the BioLab Membrane Wrap. (File 10, Hearing Audio.) Studies of the efficacy of amniotic membrane derivatives generally are not sufficient to establish the efficacy of the BioLab Membrane Wrap product.

Additionally, the medical records submitted were not sufficient to establish that the use of the BioLab Membrane Wrap was reasonable and necessary in this case. Although Beneficiary had been having trouble with venous leg ulcers for years, the wound at issue was not noted until mid-May 2024. The documentation of the nature of the wound and of the response of the wound to conservative treatment measures was sporadic. There were limited measurements taken of the wound, but the records did demonstrate that the size of the wound decreased from 32.1 cm by 8.9 cm by 0.3 cm on July 2, 2024 (File 4 at 32), to 24.9 cm by 7.8 cm by 0.2 cm on September 24, 2024 (File 4 at 27).

After reviewing the entire record including the testimony presented at the hearing, I find that the Services were not reasonable and necessary and are not covered by Medicare. Appellant was not entitled to payment for the Services. And an overpayment was made.

**Limitation on Liability.**

Beneficiary did not receive notice that Medicare would not cover or pay for the Services, and Beneficiary is not liable for the costs of the Services.

The Medicare guidelines set forth the requirements for coverage and payment. And Appellant is expected to have known that the Services would not be covered or payable based on the applicable guidelines. See 42 C.F.R. § 411.406. Therefore, Appellant remains responsible for the costs of the Services.

Under section 1870 of the Act, recovery of an overpayment from a provider or supplier may be waived if the provider or supplier was not at fault in creating the overpayment. The provider or supplier is considered to be without fault if it exercised reasonable care in billing for, and accepting, the payment. Act § 1870(b).

Since a supplier or provider is expected to know the requirements of Medicare claims, Appellant is not without fault because it billed and received payment for items or services that it should have known were not covered or payable under the Medicare program. Therefore, the overpayment recovery cannot be waived under section 1870 of the Act, and Appellant is liable for the overpayment amount.

## CONCLUSIONS OF LAW

I find that the Services are not covered by Medicare. Appellant was not entitled to payment for the Services. An overpayment was made. Beneficiary is not liable for the Services or any overpayment. Appellant should have known that the Services were not covered and is liable for the Services and any overpayment.

## ORDER

This decision is **UNFAVORABLE**. I direct the Medicare Administrative Contractor to process the claim in accordance with this decision.

**SO ORDERED**

Jenifer J. Soulikias
Administrative Law Judge

DEPARTMENT OF HEALTH AND HUMAN SERVICES (DHHS) / DEPARTMENTAL APPEALS BOARD Form DAB-101 (12/19)

**REQUEST FOR REVIEW OF ADMINISTRATIVE LAW JUDGE (ALJ) MEDICARE DECISION / DISMISSAL**

| | |
|---|---|
| 1. APPELLANT (the party requesting review) | 2. ALJ APPEAL NUMBER (on the decision or dismissal) |
| 3. BENEFICIARY* | 4. MEDICARE NUMBER (Health Insurance Claim Number (HICN) or Medicare Beneficiary Identifier (MBI))* |

*If the request involves multiple claims or multiple beneficiaries, attach a list of beneficiaries, Medicare numbers, and any other information to identify all claims being appealed.

| | |
|---|---|
| 5. PROVIDER, PRACTITIONER, OR SUPPLIER | 6. SPECIFIC ITEM(S) OR SERVICE(S) |

7. Medicare claim type: ☐ Part A ☐ Part B ☐ Part C - Medicare Advantage
☐ Part D - Medicare Prescription Drug Plan ☐ Entitlement/enrollment for Part A or Part B

8. Does this request involve authorization for an item or service that has not yet been furnished?
☐ Yes If Yes, skip to Block 9.
☐ No If No, Specific Dates of Service:

9. If the request involves authorization for a prescription drug under Medicare Part D, would application of the standard appellate timeframe seriously jeopardize the beneficiary's life, health, or ability to regain maximum function (as documented by a physician) such that expedited review is appropriate? ☐ Yes ☐ No

I request that the Medicare Appeals Council review the ALJ's ☐ decision or ☐ dismissal order [check one] dated_____________________________. I disagree with the ALJ's action because (specify the parts of the ALJ's decision or dismissal you disagree with and why you think the ALJ was wrong):

(Attach additional sheets if you need more space)

**PLEASE ATTACH A COPY OF THE ALJ DECISION OR DISMISSAL ORDER YOU ARE APPEALING.**

| | | | | | |
|---|---|---|---|---|---|
| DATE | | | DATE | | |
| APPELLANT'S NAME (the party requesting review) | | | REPRESENTATIVE'S NAME (include signed appointment of representative if not already submitted) | | |
| ADDRESS | | | ADDRESS | | |
| CITY, STATE, ZIP CODE | | | CITY, STATE, ZIP CODE | | |
| TELEPHONE NUMBER | FAX NUMBER | E-MAIL | TELEPHONE NUMBER | FAX NUMBER | E-MAIL |

(SEE FURTHER INSTRUCTIONS ON PAGE 2)

If you have additional evidence, submit it with this request for review. If you need more time, you must request an extension of time in writing now, explaining why you are unable to submit the evidence or legal argument now.

*If you are a provider, supplier, or a beneficiary represented by a provider or supplier, and your case was reconsidered by a Qualified Independent Contractor (QIC), the Medicare Appeals Council will not consider new evidence related to issues the QIC has already considered unless you show that you have a good reason for submitting it for the first time to the Medicare Appeals Council.*

**IMPORTANT: Include the HICN or MBI and ALJ Appeal Number on any letter or other material you submit.**

This request must be received within 60 calendar days after you receive the ALJ's decision or dismissal, unless we extend the time limit for good cause. We assume you received the decision or dismissal 5 calendar days after it was issued, unless you show you received it later. If this request will not be received within 65 calendar days from the date on the decision or dismissal order, please explain why on a separate sheet.

---

You must file your request for review in writing with the Medicare Appeals Council at:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

You may send the request for review by U.S. Mail, a common carrier such as FedEx, or by fax to (202) 565-0227. If you send a fax, please do not also mail a copy. ***You must send a copy of your appeal to the other parties and indicate that all parties, to include all beneficiaries, have been copied on the request for review. For claims involving multiple beneficiaries, you may submit a copy of the cover letters issued or a spreadsheet of the beneficiaries and addresses who received a copy of the request for review.***

If you have any questions about your request for review or wish to request expedited review of a claim involving authorization of your prescription drug under Medicare Part D, you may call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100. You may also visit our web site at www.hhs.gov/dab for additional information on how to file your request for review.

## PRIVACY ACT STATEMENT

The collection of information on this form is authorized by the Social Security Act (section 205(a) of title II, section 702 of title VII, section 1155 of Title XI, and sections 1852(g)(5), 1869(b)(1), 1871, 1872, and 1876(c)(5)(B) of title XVIII, as appropriate). The information provided will be used to further document your claim. Information requested on this form is voluntary, but failure to provide all or any part of the requested information may affect the determination of your claim. Information you furnish on this form may be disclosed by the Department of Health and Human Services or the Social Security Administration to another person or governmental agency only with respect to programs under the Social Security Act and to comply with Federal laws requiring the disclosure of information or the exchange of information between the Department of Health and Human Services, the Social Security Administration, or other agencies.

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Kansas City, MO**

| | | | |
|---|---|---|---|
| Appeal of: | **INDY WOUND CENTER FOR LIMB PRESERVATION & RECONSTRUCTION** | OMHA Appeal No.: | **3-15485411873** |
| Beneficiary: | [redacted] | Medicare Part: | **B** |
| Medicare No.: | | Before: | **Jenifer J. Soulikias** Administrative Law Judge |

Index of the Administrative Record and Exhibit List

| **Exhibit Record** | **Administrative File Reference** File Name | Page Range | |
|---|---|---|---|
| Procedural - CMS Levels: QIC Decision | File 2 | 1 | : 16 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 3 | 1 | : 3 |
| Procedural - CMS Levels: Request for Reconsideration | File 4 | 1 | : 286 |
| Procedural - CMS Levels: Redetermination: Case File | File 5 | 1 | : 43 |
| Procedural - CMS Levels: Redetermination: cover page | File 6 | 1 | : 1 |
| Procedural - OMHA Level: Request for ALJ Hearing: w/AOR, QIC dec, docs | File 1 | 1 | : 21 |
| Procedural - OMHA Level: Notice of Hearing | File 7 | 1 | : 9 |
| Procedural - OMHA Level: Response to Notice of Hearing: Appellant | File 8 | 1 | : 2 |
| Procedural - OMHA Level: Notice of Intent: UPIC - Non-Party - Written | File 9 | 1 | : 2 |
| Proceeding (Audios): Hearing | File 10 | 1 | : 1 |

Department of Health and Human Services
Office of the Secretary

**OFFICE OF MEDICARE HEARINGS AND APPEALS**

Kansas City Field Office
601 E. 12th Street
Suite 1753
Kansas City, MO 64106-2817
(816)-599-3300
(505) 407-3839 Team Soulikias
(816) 527-0051 (Fax)
(844) 566-6258 (Toll Free)

February 11, 2026

ENGAGE HEALTH SOULTIONS
ATTN: WILLIAM OMALLEY
60 PUBLIC SQ STE 602
WILKES-BARRE, PA 18701

## NOTICE OF DECISION

Appellant: INDY WOUND CENTER FOR LIMB PRESERVATION & RECONSTRUCTION LLC
OMHA Appeal Number: 3-15485411995

Enclosed is the decision for the above case. This decision is based on the administrative record, including any evidence or testimony presented at the hearing, if one was held. The decision is not precedential, does not release the appellant from civil or criminal liability, and may be reopened at any time if it was procured by fraud or similar fault. In addition, the decision may be reopened within 180 calendar days from the date of the decision for good cause. Good cause exists when there is new and material evidence that was not available or known at the time of the decision and may result in a different conclusion, or when the evidence that was considered clearly shows on its face that an obvious error was made at the time of the decision.

**What if I disagree with the decision?**

If you disagree with the decision, you may file an appeal with the Medicare Appeals Council. Other parties may also appeal the decision. In addition, the Medicare Appeals Council may decide to review the decision on its own motion. If no party appeals the decision and the Medicare Appeals Council does not review the decision, the decision is binding on all parties and you and the other parties will not have the right to ask a federal court to review the decision.

If you are not already represented, you may appoint an attorney or other person to represent you.

**<u>How much time do I have to file an appeal?</u>**

The Medicare Appeals Council must receive your written appeal **within 60 calendar days** of the date that you receive this notice. The Medicare Appeals Council assumes you received this notice 5 calendar days after the date of the notice unless you show that you did not receive it within the 5-day period.

The Medicare Appeals Council will dismiss a late request for review unless you show that you had a good reason for not filing it on time.

**<u>How do I file an appeal?</u>**

To appeal, you must ask the Medicare Appeals Council to review the decision. Your appeal must be in writing, except that a request for expedited review of a Part D decision may be made orally as described below. Your appeal must identify the parts of the decision that you disagree with, and explain why you disagree.

You may submit a written request for review to the Medicare Appeals Council using one of three available methods: mail, fax, or electronic filing (E-File). **<u>Please do not submit your request for review using more than one method</u>**. Regardless of how you file your appeal, **you must always send a copy of your written request for review to the other parties who received a copy of the decision.**

If you are filing a written request for review, you may use the enclosed *Request for Review* (Form DAB-101), or you may write a letter containing the following:

- The beneficiary's/enrollee's name (and telephone number for Part D appeals);
- The beneficiary's/enrollee's Medicare number (Health Insurance Claim Number or Medicare Beneficiary Identifier);
- The item(s), service(s), or specific Part D drug(s) in dispute;
- The specific date(s) the item(s) or service(s) were provided, if applicable;
- For Part D appeals, the plan name;
- For Part D appeals, the OMHA Appeal Number on the adjudicator's decision;
- For Part D appeals requesting expedited review, a statement that you are requesting expedited review;
- The date of the adjudicator's decision (not required for Part D appeals); and
- Your name and signature, and, if applicable, the name and signature of your representative.

**Filing by mail:**

Mail your appeal and a copy of the enclosed decision to:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

**Filing by fax:**

Fax your appeal and a copy of the enclosed decision to **(202) 565-0227.**

**Filing by computer:**

Using your web browser, visit the Medicare Operations Division Electronic Filing System (MOD E-File) website at **https://dab.efile.hhs.gov/mod**.

To file a new appeal using MOD E-File, you will need to register by:

1. Clicking **Register** on the MOD E-File home page;
2. Entering the information requested on the "Register New Account" form; and
3. Clicking **Register Account** at the bottom of the form.

You will use the email address and password you provided during registration to access MOD E-File at **https://dab.efile.hhs.gov/mod/users/new**. You will be able to use MOD E-File to file and access the specific materials for appeals to which you are a party or a party's representative. You may check the status of any appeal on the website homepage without registering.

Once registered, you may file your appeal by:

1. Logging into MOD E-File;
2. Clicking the **File New Appeal** menu button on the top right of the screen;
3. Selecting the type of appeal you are filing (Request for Review or Request for Escalation); and
4. Entering the requested Appeal Information and uploading the requested Appeal Documents on the "File New Appeal - Medicare Operations Division" form. You are required to provide information and documents marked with an asterisk.

At a minimum, the Medicare Appeals Council requires an appellant to file a signed Request for Review and a copy of the enclosed decision. All documents should be submitted in Portable Document Format (PDF) whenever possible. Any document, including a Request for Review, will be deemed to have been filed on a given day, if it is uploaded to MOD E-File on or before 11:59 p.m. EST of that day.

Currently, the documents that may be filed electronically are the:

1. Request for Review;
2. Appointment of Representative form (OMB Form 0938-0950);
3. Copy of Administrative Law Judge or attorney adjudicator decision;
4. Memorandum or brief or other written statement in support of your appeal; and
5. Request to Withdraw your appeal

**No other documents aside from the five (5) listed categories above may be submitted through MOD E-File.**

**Filing by oral request (for expedited review only):**

Oral requests for expedited review of a Part D decision may be made by telephone to **(866) 365-8204.** You must provide the information listed in the bullet points above and a statement that you are requesting an expedited review within 60 calendar days after receipt of this notice of decision. The Medicare Appeals Council will document the oral request in writing and maintain the documentation in the case file.

Please note that your request for review will only be expedited (1) the appeal involves an issue specified in 42 C.F.R. § 423.566(b), but does not include solely a request for payment of a Part D drug that has already been furnished, and (2) the prescribing physician (or other prescriber) indicates, or the Medicare Appeals Council determines, that the standard time frame may seriously jeopardize your life, health, or ability to regain maximum function.

**How will the Medicare Appeals Council respond to my appeal?**

The Medicare Appeals Council will limit its review to the issues raised in the appeal, unless the appeal is filed by an unrepresented beneficiary/enrollee. It may change the parts of the decision that you agree with. It may adopt, modify, or reverse the decision, in whole or in part, or it may send the case back to OMHA for further action. It may also dismiss your appeal.

**Questions?**

You may call or write our office. A toll-free phone number and mailing address are at the top of this notice.

Additional information about filing an appeal with the Medicare Appeals Council is available at http://www.hhs.gov/dab/. You can also call the Medicare Appeals Council's staff in the Medicare

Operations Division of the Departmental Appeals Board at (202) 565-0100 or (866) 365-8204 (toll free), if you have questions about filing an appeal.

cc:

[redacted]

QIC - C2C B North
301 W Bay Street
Ste. 1110
Jacksonville, FL 32202

Enclosures:
OMHA-152, Decision
DAB-101, Request for Review
OMHA-156, Exhibit List

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Kansas City, MO**

| | | | |
|---|---|---|---|
| Appeal of: | **INDY WOUND CENTER FOR LIMB PRESERVATION & RECONSTRUCTION LLC** | OMHA Appeal No.: | **3-15485411995** |
| Beneficiary: | [redacted] | Medicare Part: | B |
| Medicare No.: | | Before: | **Jenifer J. Soulikias**<br>Administrative Law Judge |

## DECISION

After carefully considering the evidence, I enter an **UNFAVORABLE** decision for **Indy Wound Center for Limb Preservation & Reconstruction LLC.** (Appellant). Medicare does not cover **the BioLab Membrane Wrap skin substitute and related services** (the Services) provided to [redacted] Beneficiary) on **September 24, 2024** (the Date of Service).

## PROCEDURAL HISTORY

Appellant's claim for the Services was initially paid, but a Unified Program Integrity Contractor (UPIC) later determined that the Services were not covered and that Appellant received an overpayment. On redetermination and reconsideration, the Medicare Administrative Contractor (MAC) and the Qualified Independent Contractor (QIC) issued unfavorable decisions finding that the Services were not covered and upholding the overpayment determination. The MAC and the QIC also determined that Appellant was liable and that Beneficiary was not liable for the non-covered costs and any overpayment.

Appellant filed at timely request for an Administrative Law Judge (ALJ) hearing. The amount in controversy meets the requirement for an ALJ hearing. Accordingly, Appellant's appeal satisfies all the jurisdictional requirements for an ALJ hearing. 42 C.F.R. §§ 405.1002(a), 405.1006(b)(1).

I conducted a hearing by telephone on **January 8, 2025. William O'Malley** appeared on behalf of Appellant. Non-duplicative exhibits were admitted into the record without objection.

## ISSUES

The issues before the Administrative Law Judge include all of the issues brought out in the initial determination, coverage determination, or organization determination; redetermination; or reconsideration that were not decided entirely in a party's favor, for the claims or other appealed matters specified in the request for hearing.

## APPLICABLE LAW AND POLICY

ALJs are bound to follow all laws, regulations and national coverage determinations (NCDs) pertaining to the Medicare and Medicaid programs. 42 C.F.R. §§ 405.1060, 405.1063. ALJs are not bound by but must give substantial deference to applicable local coverage determinations (LCDs), local medical review policies (LMRPs), and program guidance issued by the Centers for Medicare and Medicaid Services (CMS) such as program memoranda and manual instructions. 42 C.F.R. § 405.1062.

A claimant must furnish sufficient documentary evidence to support the claim. 42 C.F.R. § 424.5(a)(6). And a claimant bears the burden of proof in this appeal to support the claim by a preponderance of the evidence. 5 U.S.C. § 556(d) (setting forth the burden of proof in an administrative law proceeding as requiring a proffered position to be supported with "reliable, probative, and substantial evidence").

**Medicare Coverage.**

Medicare provides coverage for services and supplies, including biologicals and drugs, furnished incident to a physician's professional services. Act §§ 1831, 1832(a)(2)(C), 1861(s)(2)(A). But to be covered, the services or supplies must have been reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member. Act § 1862(a)(1)(A).

Medicare administrative contractors may develop local coverage determinations (LCDs), which are determinations by the contractor as to whether and when an item or service is reasonable and necessary. Act §1869(f)(2)(B); *Medicare Program Integrity Manual* (*MPIM*), pub. 100-08, ch. 13, §§ 13.1.1, 13.5.4. The Medicare Program Integrity Manual (MPIM) provides guidelines to assist contractors in developing LCDs. *MPIM*, ch. 13, § 13.5.4. ALJs may look to these guidelines to determine medical necessity in the absence of an applicable NCD or LCD.

The MPIM states that a contractor shall consider a service to be reasonable and necessary if it is

(a) Safe and effective;

(b) Not experimental or investigational; and

(c) Appropriate, including the duration and frequency that is considered appropriate for the item or service, in terms of whether it is:

- Furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the patient's condition or to improve the function of a malformed body member;
- Furnished in a setting appropriate to the patient's medical needs and condition;
- Ordered and furnished by qualified personnel;
- One that meets, but does not exceed, the patient's medical need; and
- At least as beneficial as an existing and available medically appropriate alternative.

*MPIM*, ch. 13, § 13.5.4. In conducting a review of medical necessity for a service, contractors "shall use the available evidence of general acceptance by the medical community, such as published original research in peer-reviewed medical journals, systematic reviews and meta-analyses, evidence-based consensus statements, and clinical guidelines." *MPIM*, ch. 13, § 13.5.3.

**Limitation on Liability.**

Section 1879 of the Act provides financial relief to beneficiaries, providers, and suppliers by permitting Medicare payment to be made, or requiring refunds to be made, for services and items for which Medicare payment would otherwise be denied. In order to obtain relief under section 1879, the payment for the services or items furnished must have been denied for one of the reasons specified in section 1879, which includes non-coverage under section 1862(a)(1) of the Act because services or items were "not medically reasonable and necessary." 42 C.F.R. § 411.400. In addition, relief may be provided under section 1879 only if the beneficiary and the provider or supplier did not know and reasonably could not have been expected to know that the items or services were excluded from coverage. 42 C.F.R. 411.400.

Providers and suppliers participating in the Medicare program are considered to have constructive knowledge of published Medicare statues and regulations, CMS manual instructions, bulletins, and contractors' written guides and directives, and standards of practice in conjunction with Medicare reimbursement policies. 42 C.F.R. § 411.406; *Medicare Claims Processing Manual (MCPM),* pub. 100-04, ch. 30 §§ 30.2, 40.1.

A beneficiary is considered to have known that an item or service is not covered if the beneficiary received valid written notice of non-coverage or notice of a recent claim denial for the same or similar item or service. 42 C.F.R. § 411.404; *MCPM*, ch. 30, §§ 30, 30.1, 30.1.1. If a beneficiary did not know or receive notice that Medicare would deny payment, the beneficiary is not financially liable for the non-covered services. Act § 1879(a)-(g); *MCPM*, ch. 30, § 30.

In the event of an overpayment, section 1870(b) of the Act provides the authority to waive the overpayment. Generally, Medicare waives overpayments if a provider or supplier is without fault in causing the overpayment. Act § 1870(b). A provider or supplier is considered to be without fault if it exercised reasonable care in billing for, and accepting, the payment. Act § 1870(b).

## FINDINGS OF FACT AND ANALYSIS

**Medicare Coverage.**

At issue is Appellant's claim for wound surgery services and the application of a skin substitute to a venous ulcer on Beneficiary's left posterior leg.[1] The claim at issue in this appeal is for the first application of a skin substitute product to the wound. (File 4 at 14-27.) The MAC and QIC denied payment by concluding that the skin substitute product used was experimental or investigational and that the use of a skin substitute product was not reasonable and necessary. (File 5 at 4; File 2 at 3-4.)

There is no NCD or LCD addressing the reasonable and necessary threshold for coverage of a skin substitute product. In the absence of an applicable NCD or LCD, I may look to the guidelines to be used by contractors in developing LCDs. *MPIM*, ch. 13, § 13.5.4. Under these guidelines, an item is reasonable and necessary if it is safe and effective, not experimental or investigational, and appropriate. *MPIM*, ch. 13, § 13.5.4. And in conducting a review of medical necessity for a service, contractors "shall use the available evidence of general acceptance by the medical community, such as published original research in peer-reviewed medical journals, systematic reviews and meta-analyses, and evidence-based consensus statements and clinical

[1] Although Beneficiary had multiple wounds on the lower extremities, a skin substitute product was applied only to a wound on the left posterior leg on the Date of Service. (File 4 at 23-27.)

guidelines." *MPIM*, ch. 13, § 13.5.3. The services also must have been appropriate to the patient's medical needs and condition. *MPIM*, ch. 13, § 13.5.4.

Beneficiary in this case had a history of multiple longstanding venous insufficiency ulcers to the bilateral lower extremities. (File 4 at 14-15.) Beneficiary's prior medical history was also significant for morbid obesity, chronic bilateral lower extremity edema, history of deep vein thrombosis, hypertension, hyperlipidemia, pulmonary hypertension, and anemia. (File 4 at 100.)

Beneficiary was admitted to a hospital on May 8, 2024, after having been found covered in her own blood and unable to get up. (File 4 at 100.) She was diagnosed with septic/hemorrhagic shock, acute kidney injury, and metabolic acidosis. (File 4 at 100.) Beneficiary also had wounds on both lower extremities. (File 4 at 101-02.) Beneficiary was very familiar to the hospital care team from previous admissions for severe chronic leg wounds, most recently in January 2024. (File 4 at 100.) She had been at a long-term acute care hospital and was discharged home six weeks prior to the May 8 hospital admission. (File 4 at 100.) She had a steady decline after returning home. (File 4 at 100.) In the past, Beneficiary demonstrated medical and treatment noncompliance. (File 4 at 100.) She tended to refuse care and change her own dressings. (File 4 at 100.) Beneficiary also had a history of refusing wound VAC due to a previous bad experience. (File 4 at 100.) She had an inpatient plastics consult on April 19, 2023, but did not follow up. (File 4 at 100.)

With respect to the wounds present on May 8, 2024, Beneficiary reported recently using silicone primary dressing for non-stick properties. (File 4 at 100.) A bilateral lower extremity CT was negative for abscess or soft tissue gas on admission. (File 4 at 100.) Medical records indicated that skin substitutes were applied to the lower extremities on May 11, 2024. (File 4 at 100.) On May 15, 2024, Beneficiary was noted to have had a nearly circumferential wound around the entire left calf with a depth of 0.2 cm. (File 4 at 102.) No measurements were taken due to Beneficiary's severe pain with any touch. (File 4 at 102.)

Beneficiary was transferred to another facility on May 17, 2024. (File 4 at 42-43.) On June 3, 2024, a venous ulcer was noted on her lower left leg that measured 18 cm by 32 cm by 0.1 cm. (File 4 at 126-27.)

Beneficiary was admitted to a rehabilitation hospital on June 11, 2024, where she received wound care. (File 4 at 42-113.) There were limited notations detailing the progress of the wound during this admission, with the first measurements of the left posterior leg wound noted on June 21, 2024. (File 4 at 42-113.) On June 21, 2024, the left posterior leg wound measured 32 cm by 9 cm by 0.4 cm. (File 4 at 48, 51.)

Beneficiary was referred to Appellant for advanced wound care. (File 4 at 28.) When evaluated on July 2, 2024, Beneficiary reported dealing with wounds off and on for 6 plus years. (File 4 at 28.) Beneficiary stated she had seen multiple providers at various wound care centers and hospitals. (File 4 at 28.) She had tried topical treatments (antibiotic ointment, steroid creams, medihoney, silver based topics etc.), alginates, hydrofera, wet to dry with saline and betadine. (File 4 at 28.) Beneficiary reported also having bedside and surgical debridements. (File 4 at 28.) Despite these efforts, her wounds had been resistant to healing. (File 4 at 28.) Beneficiary reported that she had been on both IV and oral antibiotics for off and on cellulitis and for other systemic pathologies. (File 4 at 28.)

Although Beneficiary had multiple wounds on the lower extremities, a skin substitute product was applied only to a wound on the left posterior leg on the Date of Service. (File 4 at 18-27.)

On July 2, 2024, the left posterior leg wound measured 32.1 cm by 8.9 cm by 0.3 cm. (File 4 at 32.) The wound was described as follows:

> The ulcer bed has exposed subcutaneous tissue. This is a full thickness ulcer. The skin around the ulcer is normal. The ulcer is not malodorous. There are no signs of epithelialization. The ulcer border is well defined. There is over 50% granulation with a confluent pattern of beefy red quality. There is between 0 and 25% nonviable material of slough/fibrin quality.

(File 4 at 32.) Given tissue exposure and fibrotic tissue bed, the wound was not optimized for advanced therapies on July 2, 2024. (File 4 at 35.)

At the time of the skin substitute application, Beneficiary was at home with the aid of home health doing dressing changes three times weekly with xeroform, ABD, kerlix, and ACE from forefoot to below knee bilateral. (File 4 at 14.)

On the Date of Service, the condition of the left posterior leg wound was noted as follows:

> The ulcer bed has exposed subcutaneous tissue. This is a full thickness ulcer. The skin around the ulcer is normal. The ulcer is not malodorous. There are no signs of epithelialization. The ulcer border is well defined. There is over 50% granulation with a confluent pattern of beefy red quality. There is between 0 and 25% nonviable material of slough/fibrin quality.
>
> Measurements were taken of a well defined single wound on the left posterior leg/calf. The ulcer measures 24.9 cm x 7.8 cm x 0.2 cm. The VLU was debrided 100%. Post debridement, the ulcer measures 25.0 cm x 7.9 cm x 0.2 cm. The VLU has minimum amount of drainage. The drainage is serosanguineous.

(File 4 at 19.)

Appellant applied the BioLab Membrane Wrap product to the wound on the Date of Service. (File 4 at 26-27.) The treating practitioner stated,

> The initial application of a cellular tissue product (CTP) is deemed both reasonable and necessary due to the persistence of an open wound. Consent: The patient was informed of the risks and benefits associated with the procedure and had the opportunity to ask questions. Appropriate consent has been obtained. Clinical Justification: The use of cellular and/or tissue based therapy is warranted due to the ulcer's failure to show significant healing despite 30 days of comprehensive conservative care. Prior interventions, including nutritional optimization, moist wound care, infection management, and debridement of necrotic material, have been insufficient. The patient's ulcer currently presents as a full-thickness tissue defect without involvement of tendon, muscle, joint capsule, exposed bone, or sinus tracts, and exhibits a clean, granular base. There is no evidence of wound infection, bacterial colonization, osteomyelitis, or cellulitis. Underlying conditions contributing to the ulcer have been adequately managed.

(File 4 at 27.)

The BioLab Membrane Wrap is a human tissue allograft derived from the amniotic membrane regulated and approved for use as a human cellular and tissue based product (HCT/P) by the US Food and Drug Administration (FDA) under 21 C.F.R. Part 1271. (File 4 at 283-86.) It was

approved for use by the FDA when intended for use as a barrier and to provide protective coverage. (File 4 at 285.)

Although approved for use by the FDA, this FDA approval is not sufficient to demonstrate that the Membrane Wrap skin substitute product is not experimental and is reasonable and necessary for Medicare coverage purposes. *See* 68 Fed. Reg. 55634, 55636 (September 26, 2003)(noting that FDA approval or clearance alone does not generally entitle a product to coverage). And the evidence submitted did not demonstrate that the Membrane Wrap product was not experimental.

The only published studies and reviews submitted by Appellant were evaluations of the efficacy of amniotic membrane derivatives generally. (File 4 at 210-82.) Appellant did not submit published original research studies or systematic reviews or meta-analyses that evaluated the efficacy of the BioLab Membrane Wrap product. (File 10, Hearing Audio.) And Appellant stated that although studies of the BioLab Membrane Wrap product were in the process of being conducted, there were no studies that have been published concerning the BioLab Membrane Wrap. (File 10, Hearing Audio.) Studies of the efficacy of amniotic membrane derivatives generally are not sufficient to establish the efficacy of the BioLab Membrane Wrap product.

Additionally, the medical records submitted were not sufficient to establish that the use of the BioLab Membrane Wrap was reasonable and necessary in this case. Although Beneficiary had been having trouble with venous leg ulcers for years, the wound at issue was not noted until mid-May 2024. The documentation of the nature of the wound and of the response of the wound to conservative treatment measures was sporadic. There were limited measurements taken of the wound, but the records did demonstrate that the size of the wound decreased from 32.1 cm by 8.9 cm by 0.3 cm on July 2, 2024 (File 4 at 32), to 24.9 cm by 7.8 cm by 0.2 cm on September 24, 2024 (File 4 at 27).

After reviewing the entire record including the testimony presented at the hearing, I find that the Services were not reasonable and necessary and are not covered by Medicare. Appellant was not entitled to payment for the Services. And an overpayment was made.

**Limitation on Liability.**

Beneficiary did not receive notice that Medicare would not cover or pay for the Services, and Beneficiary is not liable for the costs of the Services.

The Medicare guidelines set forth the requirements for coverage and payment. And Appellant is expected to have known that the Services would not be covered or payable based on the applicable guidelines. See 42 C.F.R. § 411.406. Therefore, Appellant remains responsible for the costs of the Services.

Under section 1870 of the Act, recovery of an overpayment from a provider or supplier may be waived if the provider or supplier was not at fault in creating the overpayment. The provider or supplier is considered to be without fault if it exercised reasonable care in billing for, and accepting, the payment. Act § 1870(b).

Since a supplier or provider is expected to know the requirements of Medicare claims, Appellant is not without fault because it billed and received payment for items or services that it should have known were not covered or payable under the Medicare program. Therefore, the overpayment recovery cannot be waived under section 1870 of the Act, and Appellant is liable for the overpayment amount.

## CONCLUSIONS OF LAW

I find that the Services are not covered by Medicare. Appellant was not entitled to payment for the Services. An overpayment was made. Beneficiary is not liable for the Services or any overpayment. Appellant should have known that the Services were not covered and is liable for the Services and any overpayment.

## ORDER

This decision is **UNFAVORABLE**. I direct the Medicare Administrative Contractor to process the claim in accordance with this decision.

**SO ORDERED**

Jenifer J. Soulikias
Administrative Law Judge

DEPARTMENT OF HEALTH AND HUMAN SERVICES (DHHS) / DEPARTMENTAL APPEALS BOARD Form DAB-101 (12/19)

**REQUEST FOR REVIEW OF ADMINISTRATIVE LAW JUDGE (ALJ) MEDICARE DECISION / DISMISSAL**

| | |
|---|---|
| 1. APPELLANT (the party requesting review) | 2. ALJ APPEAL NUMBER (on the decision or dismissal) |
| 3. BENEFICIARY* | 4. MEDICARE NUMBER (Health Insurance Claim Number (HICN) or Medicare Beneficiary Identifier (MBI))* |

*If the request involves multiple claims or multiple beneficiaries, attach a list of beneficiaries, Medicare numbers, and any other information to identify all claims being appealed.

| | |
|---|---|
| 5. PROVIDER, PRACTITIONER, OR SUPPLIER | 6. SPECIFIC ITEM(S) OR SERVICE(S) |

7. Medicare claim type: ☐ Part A ☐ Part B ☐ Part C - Medicare Advantage
☐ Part D - Medicare Prescription Drug Plan ☐ Entitlement/enrollment for Part A or Part B

8. Does this request involve authorization for an item or service that has not yet been furnished?
☐ Yes If Yes, skip to Block 9.
☐ No If No, Specific Dates of Service:

9. If the request involves authorization for a prescription drug under Medicare Part D, would application of the standard appellate timeframe seriously jeopardize the beneficiary's life, health, or ability to regain maximum function (as documented by a physician) such that expedited review is appropriate? ☐ Yes ☐ No

I request that the Medicare Appeals Council review the ALJ's ☐ decision or ☐ dismissal order [check one] dated____________________________. I disagree with the ALJ's action because (specify the parts of the ALJ's decision or dismissal you disagree with and why you think the ALJ was wrong):

____________________________________________________________

____________________________________________________________

____________________________________________________________

____________________________________________________________

(Attach additional sheets if you need more space)

**PLEASE ATTACH A COPY OF THE ALJ DECISION OR DISMISSAL ORDER YOU ARE APPEALING.**

| | | | | | |
|---|---|---|---|---|---|
| DATE | | | DATE | | |
| APPELLANT'S NAME (the party requesting review) | | | REPRESENTATIVE'S NAME (include signed appointment of representative if not already submitted) | | |
| ADDRESS | | | ADDRESS | | |
| CITY, STATE, ZIP CODE | | | CITY, STATE, ZIP CODE | | |
| TELEPHONE NUMBER | FAX NUMBER | E-MAIL | TELEPHONE NUMBER | FAX NUMBER | E-MAIL |

(SEE FURTHER INSTRUCTIONS ON PAGE 2)

Form DAB-101 (12/19)

If you have additional evidence, submit it with this request for review. If you need more time, you must request an extension of time in writing now, explaining why you are unable to submit the evidence or legal argument now.

*If you are a provider, supplier, or a beneficiary represented by a provider or supplier, and your case was reconsidered by a Qualified Independent Contractor (QIC), the Medicare Appeals Council will not consider new evidence related to issues the QIC has already considered unless you show that you have a good reason for submitting it for the first time to the Medicare Appeals Council.*

**IMPORTANT: Include the HICN or MBI and ALJ Appeal Number on any letter or other material you submit.**

This request must be received within 60 calendar days after you receive the ALJ's decision or dismissal, unless we extend the time limit for good cause. We assume you received the decision or dismissal 5 calendar days after it was issued, unless you show you received it later. If this request will not be received within 65 calendar days from the date on the decision or dismissal order, please explain why on a separate sheet.

---

You must file your request for review in writing with the Medicare Appeals Council at:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

You may send the request for review by U.S. Mail, a common carrier such as FedEx, or by fax to (202) 565-0227. If you send a fax, please do not also mail a copy. ***You must send a copy of your appeal to the other parties and indicate that all parties, to include all beneficiaries, have been copied on the request for review. For claims involving multiple beneficiaries, you may submit a copy of the cover letters issued or a spreadsheet of the beneficiaries and addresses who received a copy of the request for review.***

If you have any questions about your request for review or wish to request expedited review of a claim involving authorization of your prescription drug under Medicare Part D, you may call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100. You may also visit our web site at www.hhs.gov/dab for additional information on how to file your request for review.

---

**PRIVACY ACT STATEMENT**

The collection of information on this form is authorized by the Social Security Act (section 205(a) of title II, section 702 of title VII, section 1155 of Title XI, and sections 1852(g)(5), 1869(b)(1), 1871, 1872, and 1876(c)(5)(B) of title XVIII, as appropriate). The information provided will be used to further document your claim. Information requested on this form is voluntary, but failure to provide all or any part of the requested information may affect the determination of your claim. Information you furnish on this form may be disclosed by the Department of Health and Human Services or the Social Security Administration to another person or governmental agency only with respect to programs under the Social Security Act and to comply with Federal laws requiring the disclosure of information or the exchange of information between the Department of Health and Human Services, the Social Security Administration, or other agencies.

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Kansas City, MO**

| | |
|---|---|
| Appeal of: **INDY WOUND CENTER FOR LIMB PRESERVATION & RECONSTRUCTION** | OMHA Appeal No.: **3-15485411995** |
| Beneficiary: [redacted] | Medicare Part: **B** |
| Medicare No.: | Before: **Jenifer J. Soulikias** Administrative Law Judge |

Index of the Administrative Record and Exhibit List

| **Exhibit Record** | **Administrative File Reference** File Name | Page Range | | |
|---|---|---|---|---|
| Procedural - CMS Levels: QIC Decision | File 2 | 1 | : | 16 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 3 | 1 | : | 3 |
| Procedural - CMS Levels: Request for Reconsideration | File 4 | 1 | : | 286 |
| Procedural - CMS Levels: Redetermination: Case File | File 5 | 1 | : | 44 |
| Procedural - CMS Levels: Redetermination: cover page | File 6 | 1 | : | 1 |
| Procedural - OMHA Level: Request for ALJ Hearing: w/AOR, QIC dec, docs | File 1 | 1 | : | 21 |
| Procedural - OMHA Level: Notice of Hearing | File 7 | 1 | : | 9 |
| Procedural - OMHA Level: Response to Notice of Hearing | File 8 | 1 | : | 2 |
| Procedural - OMHA Level: Notice of Intent: UPIC - Non-Party - Written | File 9 | 1 | : | 2 |
| Proceeding (Audios): Hearing | File 10 | 1 | : | 1 |

Department of Health and Human Services
Office of the Secretary

**OFFICE OF MEDICARE HEARINGS AND APPEALS**

Kansas City Field Office
601 E. 12th Street
Suite 1753
Kansas City, MO 64106-2817
(816)-599-3300
(505) 407-3839 Team Soulikias
(816) 527-0051 (Fax)
(844) 566-6258 (Toll Free)

February 11, 2026

ENGAGE HEALTH SOULTIONS
ATTN: WILLIAM OMALLEY
60 PUBLIC SQ STE 602
WILKES-BARRE, PA 18701

**NOTICE OF DECISION**

Appellant: INDY WOUND CENTER FOR LIMB PRESERVATION & RECONSTRUCTION LLC
OMHA Appeal Number: 3-15485412259

Enclosed is the decision for the above case. This decision is based on the administrative record, including any evidence or testimony presented at the hearing, if one was held. The decision is not precedential, does not release the appellant from civil or criminal liability, and may be reopened at any time if it was procured by fraud or similar fault. In addition, the decision may be reopened within 180 calendar days from the date of the decision for good cause. Good cause exists when there is new and material evidence that was not available or known at the time of the decision and may result in a different conclusion, or when the evidence that was considered clearly shows on its face that an obvious error was made at the time of the decision.

**<u>What if I disagree with the decision?</u>**

If you disagree with the decision, you may file an appeal with the Medicare Appeals Council. Other parties may also appeal the decision. In addition, the Medicare Appeals Council may decide to review the decision on its own motion. If no party appeals the decision and the Medicare Appeals Council does not review the decision, the decision is binding on all parties and you and the other parties will not have the right to ask a federal court to review the decision.

If you are not already represented, you may appoint an attorney or other person to represent you.

**How much time do I have to file an appeal?**

The Medicare Appeals Council must receive your written appeal **within 60 calendar days** of the date that you receive this notice. The Medicare Appeals Council assumes you received this notice 5 calendar days after the date of the notice unless you show that you did not receive it within the 5-day period.

The Medicare Appeals Council will dismiss a late request for review unless you show that you had a good reason for not filing it on time.

**How do I file an appeal?**

To appeal, you must ask the Medicare Appeals Council to review the decision. Your appeal must be in writing, except that a request for expedited review of a Part D decision may be made orally as described below. Your appeal must identify the parts of the decision that you disagree with, and explain why you disagree.

You may submit a written request for review to the Medicare Appeals Council using one of three available methods: mail, fax, or electronic filing (E-File). **Please do not submit your request for review using more than one method**. Regardless of how you file your appeal, **you must always send a copy of your written request for review to the other parties who received a copy of the decision.**

If you are filing a written request for review, you may use the enclosed *Request for Review* (Form DAB-101), or you may write a letter containing the following:

- The beneficiary's/enrollee's name (and telephone number for Part D appeals);
- The beneficiary's/enrollee's Medicare number (Health Insurance Claim Number or Medicare Beneficiary Identifier);
- The item(s), service(s), or specific Part D drug(s) in dispute;
- The specific date(s) the item(s) or service(s) were provided, if applicable;
- For Part D appeals, the plan name;
- For Part D appeals, the OMHA Appeal Number on the adjudicator's decision;
- For Part D appeals requesting expedited review, a statement that you are requesting expedited review;
- The date of the adjudicator's decision (not required for Part D appeals); and
- Your name and signature, and, if applicable, the name and signature of your representative.

**Filing by mail:**

Mail your appeal and a copy of the enclosed decision to:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

**Filing by fax:**

Fax your appeal and a copy of the enclosed decision to **(202) 565-0227.**

**Filing by computer:**

Using your web browser, visit the Medicare Operations Division Electronic Filing System (MOD E-File) website at **https://dab.efile.hhs.gov/mod**.

To file a new appeal using MOD E-File, you will need to register by:

1. Clicking **Register** on the MOD E-File home page;
2. Entering the information requested on the "Register New Account" form; and
3. Clicking **Register Account** at the bottom of the form.

You will use the email address and password you provided during registration to access MOD E-File at **https://dab.efile.hhs.gov/mod/users/new**. You will be able to use MOD E-File to file and access the specific materials for appeals to which you are a party or a party's representative. You may check the status of any appeal on the website homepage without registering.

Once registered, you may file your appeal by:

1. Logging into MOD E-File;
2. Clicking the **File New Appeal** menu button on the top right of the screen;
3. Selecting the type of appeal you are filing (Request for Review or Request for Escalation); and
4. Entering the requested Appeal Information and uploading the requested Appeal Documents on the "File New Appeal - Medicare Operations Division" form. You are required to provide information and documents marked with an asterisk.

At a minimum, the Medicare Appeals Council requires an appellant to file a signed Request for Review and a copy of the enclosed decision. All documents should be submitted in Portable Document Format (PDF) whenever possible. Any document, including a Request for Review,

will be deemed to have been filed on a given day, if it is uploaded to MOD E-File on or before 11:59 p.m. EST of that day.

Currently, the documents that may be filed electronically are the:

1. Request for Review;
2. Appointment of Representative form (OMB Form 0938-0950);
3. Copy of Administrative Law Judge or attorney adjudicator decision;
4. Memorandum or brief or other written statement in support of your appeal; and
5. Request to Withdraw your appeal

**No other documents aside from the five (5) listed categories above may be submitted through MOD E-File.**

**Filing by oral request (for expedited review only):**

Oral requests for expedited review of a Part D decision may be made by telephone to **(866) 365-8204.** You must provide the information listed in the bullet points above and a statement that you are requesting an expedited review within 60 calendar days after receipt of this notice of decision. The Medicare Appeals Council will document the oral request in writing and maintain the documentation in the case file.

Please note that your request for review will only be expedited (1) the appeal involves an issue specified in 42 C.F.R. § 423.566(b), but does not include solely a request for payment of a Part D drug that has already been furnished, and (2) the prescribing physician (or other prescriber) indicates, or the Medicare Appeals Council determines, that the standard time frame may seriously jeopardize your life, health, or ability to regain maximum function.

**How will the Medicare Appeals Council respond to my appeal?**

The Medicare Appeals Council will limit its review to the issues raised in the appeal, unless the appeal is filed by an unrepresented beneficiary/enrollee. It may change the parts of the decision that you agree with. It may adopt, modify, or reverse the decision, in whole or in part, or it may send the case back to OMHA for further action. It may also dismiss your appeal.

**Questions?**

You may call or write our office. A toll-free phone number and mailing address are at the top of this notice.

Additional information about filing an appeal with the Medicare Appeals Council is available at http://www.hhs.gov/dab/. You can also call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100 or (866) 365-8204 (toll free), if you have questions about filing an appeal.

cc: [redacted]

QIC - C2C B North
301 W Bay Street
Ste. 1110
Jacksonville, FL 32202

Enclosures:
OMHA-152, Decision
DAB-101, Request for Review
OMHA-156, Exhibit List

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Kansas City, MO**

| | | | |
|---|---|---|---|
| Appeal of: | **INDY WOUND CENTER FOR LIMB PRESERVATION & RECONSTRUCTION LLC** | OMHA Appeal No.: | **3-15485412259** |
| Beneficiary: | [redacted] | Medicare Part: | B |
| Medicare No.: | | Before: | **Jenifer J. Soulikias** Administrative Law Judge |

## DECISION

After carefully considering the evidence, I enter an **UNFAVORABLE** decision for **Indy Wound Center for Limb Preservation & Reconstruction LLC.** (Appellant). Medicare does not cover **the BioLab Membrane Wrap skin substitute and related services** (the Services) provided to [redacted] (Beneficiary) on **September 24, 2024** (the Date of Service).

## PROCEDURAL HISTORY

Appellant's claim for the Services was initially paid, but a Unified Program Integrity Contractor (UPIC) later determined that the Services were not covered and that Appellant received an overpayment. On redetermination and reconsideration, the Medicare Administrative Contractor (MAC) and the Qualified Independent Contractor (QIC) issued unfavorable decisions finding that the Services were not covered and upholding the overpayment determination. The MAC and the QIC also determined that Appellant was liable and that Beneficiary was not liable for the non-covered costs and any overpayment.

Appellant filed at timely request for an Administrative Law Judge (ALJ) hearing. The amount in controversy meets the requirement for an ALJ hearing. Accordingly, Appellant's appeal satisfies all the jurisdictional requirements for an ALJ hearing. 42 C.F.R. §§ 405.1002(a), 405.1006(b)(1).

I conducted a hearing by telephone on **January 8, 2025. William O'Malley** appeared on behalf of Appellant. The UPIC submitted a position paper as a non-party participant. Non-duplicative exhibits were admitted into the record without objection.

## ISSUES

The issues before the Administrative Law Judge include all of the issues brought out in the initial determination, coverage determination, or organization determination; redetermination; or reconsideration that were not decided entirely in a party's favor, for the claims or other appealed matters specified in the request for hearing.

## APPLICABLE LAW AND POLICY

ALJs are bound to follow all laws, regulations and national coverage determinations (NCDs) pertaining to the Medicare and Medicaid programs. 42 C.F.R. §§ 405.1060, 405.1063. ALJs are not bound by but must give substantial deference to applicable local coverage determinations (LCDs), local medical review policies (LMRPs), and program guidance issued by the Centers for Medicare and Medicaid Services (CMS) such as program memoranda and manual instructions. 42 C.F.R. § 405.1062.

A claimant must furnish sufficient documentary evidence to support the claim. 42 C.F.R. § 424.5(a)(6). And a claimant bears the burden of proof in this appeal to support the claim by a preponderance of the evidence. 5 U.S.C. § 556(d) (setting forth the burden of proof in an administrative law proceeding as requiring a proffered position to be supported with "reliable, probative, and substantial evidence").

**Medicare Coverage.**

Medicare provides coverage for services and supplies, including biologicals and drugs, furnished incident to a physician's professional services. Act §§ 1831, 1832(a)(2)(C), 1861(s)(2)(A). But to be covered, the services or supplies must have been reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member. Act § 1862(a)(1)(A).

Medicare administrative contractors may develop local coverage determinations (LCDs), which are determinations by the contractor as to whether and when an item or service is reasonable and necessary. Act §1869(f)(2)(B); *Medicare Program Integrity Manual* (*MPIM*), pub. 100-08, ch. 13, §§ 13.1.1, 13.5.4. The Medicare Program Integrity Manual (MPIM) provides guidelines to assist contractors in developing LCDs. *MPIM*, ch. 13, § 13.5.4. ALJs may look to these guidelines to determine medical necessity in the absence of an applicable NCD or LCD.

The MPIM states that a contractor shall consider a service to be reasonable and necessary if it is

(a) Safe and effective;

(b) Not experimental or investigational; and

(c) Appropriate, including the duration and frequency that is considered appropriate for the item or service, in terms of whether it is:

- Furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the patient's condition or to improve the function of a malformed body member;
- Furnished in a setting appropriate to the patient's medical needs and condition;
- Ordered and furnished by qualified personnel;
- One that meets, but does not exceed, the patient's medical need; and
- At least as beneficial as an existing and available medically appropriate alternative.

*MPIM*, ch. 13, § 13.5.4. In conducting a review of medical necessity for a service, contractors "shall use the available evidence of general acceptance by the medical community, such as published original research in peer-reviewed medical journals, systematic reviews and meta-analyses, evidence-based consensus statements, and clinical guidelines." *MPIM*, ch. 13, § 13.5.3.

**Limitation on Liability.**

Section 1879 of the Act provides financial relief to beneficiaries, providers, and suppliers by permitting Medicare payment to be made, or requiring refunds to be made, for services and items for which Medicare payment would otherwise be denied. In order to obtain relief under section 1879, the payment for the services or items furnished must have been denied for one of the reasons specified in section 1879, which includes non-coverage under section 1862(a)(1) of the Act because services or items were "not medically reasonable and necessary." 42 C.F.R. § 411.400. In addition, relief may be provided under section 1879 only if the beneficiary and the provider or supplier did not know and reasonably could not have been expected to know that the items or services were excluded from coverage. 42 C.F.R. 411.400.

Providers and suppliers participating in the Medicare program are considered to have constructive knowledge of published Medicare statues and regulations, CMS manual instructions, bulletins, and contractors' written guides and directives, and standards of practice in conjunction with Medicare reimbursement policies. 42 C.F.R. § 411.406; *Medicare Claims Processing Manual (MCPM),* pub. 100-04, ch. 30 §§ 30.2, 40.1.

A beneficiary is considered to have known that an item or service is not covered if the beneficiary received valid written notice of non-coverage or notice of a recent claim denial for the same or similar item or service. 42 C.F.R. § 411.404; *MCPM,* ch. 30, §§ 30, 30.1, 30.1.1. If a beneficiary did not know or receive notice that Medicare would deny payment, the beneficiary is not financially liable for the non-covered services. Act § 1879(a)-(g); *MCPM,* ch. 30, § 30.

In the event of an overpayment, section 1870(b) of the Act provides the authority to waive the overpayment. Generally, Medicare waives overpayments if a provider or supplier is without fault in causing the overpayment. Act § 1870(b). A provider or supplier is considered to be without fault if it exercised reasonable care in billing for, and accepting, the payment. Act § 1870(b).

## FINDINGS OF FACT AND ANALYSIS

**Medicare Coverage.**

At issue is Appellant's claim for wound surgery services and the application of a skin substitute to a venous ulcer on Beneficiary's left posterior leg.[1] The claim at issue in this appeal is for the first application of a skin substitute product to the wound. (File 4 at 22-27.) The MAC and QIC denied payment by concluding that the skin substitute product used was experimental or investigational and that the use of a skin substitute product was not reasonable and necessary. (File 5 at 4; File 2 at 3-4.)

There is no NCD or LCD addressing the reasonable and necessary threshold for coverage of a skin substitute product. In the absence of an applicable NCD or LCD, I may look to the guidelines to be used by contractors in developing LCDs. *MPIM,* ch. 13, § 13.5.4. Under these guidelines, an item is reasonable and necessary if it is safe and effective, not experimental or investigational, and appropriate. *MPIM,* ch. 13, § 13.5.4. And in conducting a review of medical necessity for a service, contractors "shall use the available evidence of general acceptance by the medical community, such as published original research in peer-reviewed medical journals, systematic reviews and meta-analyses, and evidence-based consensus statements and clinical

[1] Although Beneficiary had multiple wounds on the lower extremities, a skin substitute product was applied only to a wound on the left posterior leg on the Date of Service. (File 4 at 22-27.)

guidelines." *MPIM,* ch. 13, § 13.5.3. The services also must have been appropriate to the patient's medical needs and condition. *MPIM,* ch. 13, § 13.5.4.

Beneficiary in this case had a history of multiple longstanding venous insufficiency ulcers to the bilateral lower extremities. (File 4 at 14-15.) Beneficiary's prior medical history was also significant for morbid obesity, chronic bilateral lower extremity edema, history of deep vein thrombosis, hypertension, hyperlipidemia, pulmonary hypertension, and anemia. (File 4 at 100.)

Beneficiary was admitted to a hospital on May 8, 2024, after having been found covered in her own blood and unable to get up. (File 4 at 100.) She was diagnosed with septic/hemorrhagic shock, acute kidney injury, and metabolic acidosis. (File 4 at 100.) Beneficiary also had wounds on both lower extremities. (File 4 at 101-02.) Beneficiary was very familiar to the hospital care team from previous admissions for severe chronic leg wounds, most recently in January 2024. (File 4 at 100.) She had been at a long-term acute care hospital and was discharged home six weeks prior to the May 8 hospital admission. (File 4 at 100.) She had a steady decline after returning home. (File 4 at 100.) In the past, Beneficiary demonstrated medical and treatment noncompliance. (File 4 at 100.) She tended to refuse care and change her own dressings. (File 4 at 100.) Beneficiary also had a history of refusing wound VAC due to a previous bad experience. (File 4 at 100.) She had an inpatient plastics consult on April 19, 2023, but did not follow up. (File 4 at 100.)

With respect to the wounds present on May 8, 2024, Beneficiary reported recently using silicone primary dressing for non-stick properties. (File 4 at 100.) A bilateral lower extremity CT was negative for abscess or soft tissue gas on admission. (File 4 at 100.) Medical records indicated that skin substitutes were applied to the lower extremities on May 11, 2024. (File 4 at 100.) On May 15, 2024, Beneficiary was noted to have had a nearly circumferential wound around the entire left calf with a depth of 0.2 cm. (File 4 at 102.) No measurements were taken due to Beneficiary's severe pain with any touch. (File 4 at 102.)

Beneficiary was transferred to another facility on May 17, 2024. (File 4 at 42-43.) On June 3, 2024, a venous ulcer was noted on her lower left leg that measured 18 cm by 32 cm by 0.1 cm. (File 4 at 126-27.)

Beneficiary was admitted to a rehabilitation hospital on June 11, 2024, where she received wound care. (File 4 at 42-113.) There were limited notations detailing the progress of the wound during this admission, with the first measurements of the left posterior leg wound noted on June 21, 2024. (File 4 at 42-113.) On June 21, 2024, the left posterior leg wound measured 32 cm by 9 cm by 0.4 cm. (File 4 at 48, 51.)

Beneficiary was referred to Appellant for advanced wound care. (File 4 at 28.) When evaluated on July 2, 2024, Beneficiary reported dealing with wounds off and on for 6 plus years. (File 4 at 28.) Beneficiary stated she had seen multiple providers at various wound care centers and hospitals. (File 4 at 28.) She had tried topical treatments (antibiotic ointment, steroid creams, medihoney, silver based topics etc.), alginates, hydrofera, wet to dry with saline and betadine. (File 4 at 28.) Beneficiary reported also having bedside and surgical debridements. (File 4 at 28.) Despite these efforts, her wounds had been resistant to healing. (File 4 at 28.) Beneficiary reported that she had been on both IV and oral antibiotics for off and on cellulitis and for other systemic pathologies. (File 4 at 28.)

Although Beneficiary had multiple wounds on the lower extremities, a skin substitute product was applied only to a wound on the left posterior leg on the Date of Service. (File 4 at 18-27.)

On July 2, 2024, the left posterior leg wound measured 32.1 cm by 8.9 cm by 0.3 cm. (File 4 at 32.) The wound was described as follows:

> The ulcer bed has exposed subcutaneous tissue. This is a full thickness ulcer. The skin around the ulcer is normal. The ulcer is not malodorous. There are no signs of epithelialization. The ulcer border is well defined. There is over 50% granulation with a confluent pattern of beefy red quality. There is between 0 and 25% nonviable material of slough/fibrin quality.

(File 4 at 32.) Given tissue exposure and fibrotic tissue bed, the wound was not optimized for advanced therapies on July 2, 2024. (File 4 at 35.)

At the time of the skin substitute application, Beneficiary was at home with the aid of home health doing dressing changes three times weekly with xeroform, ABD, kerlix, and ACE from forefoot to below knee bilateral. (File 4 at 14.)

On the Date of Service, the condition of the left posterior leg wound was noted as follows:

> The ulcer bed has exposed subcutaneous tissue. This is a full thickness ulcer. The skin around the ulcer is normal. The ulcer is not malodorous. There are no signs of epithelialization. The ulcer border is well defined. There is over 50% granulation with a confluent pattern of beefy red quality. There is between 0 and 25% nonviable material of slough/fibrin quality.
>
> Measurements were taken of a well defined single wound on the left posterior leg/calf. The ulcer measures 24.9 cm x 7.8 cm x 0.2 cm. The VLU was debrided 100%. Post debridement, the ulcer measures 25.0 cm x 7.9 cm x 0.2 cm. The VLU has minimum amount of drainage. The drainage is serosanguineous.

(File 4 at 19.)

Appellant applied the BioLab Membrane Wrap product to the wound on the Date of Service. (File 4 at 26-27.) The treating practitioner stated,

> The initial application of a cellular tissue product (CTP) is deemed both reasonable and necessary due to the persistence of an open wound. Consent: The patient was informed of the risks and benefits associated with the procedure and had the opportunity to ask questions. Appropriate consent has been obtained. Clinical Justification: The use of cellular and/or tissue based therapy is warranted due to the ulcer's failure to show significant healing despite 30 days of comprehensive conservative care. Prior interventions, including nutritional optimization, moist wound care, infection management, and debridement of necrotic material, have been insufficient. The patient's ulcer currently presents as a full-thickness tissue defect without involvement of tendon, muscle, joint capsule, exposed bone, or sinus tracts, and exhibits a clean, granular base. There is no evidence of wound infection, bacterial colonization, osteomyelitis, or cellulitis. Underlying conditions contributing to the ulcer have been adequately managed.

(File 4 at 27.)

The BioLab Membrane Wrap is a human tissue allograft derived from the amniotic membrane regulated and approved for use as a human cellular and tissue based product (HCT/P) by the US Food and Drug Administration (FDA) under 21 C.F.R. Part 1271. (File 4 at 283-86.) It was

approved for use by the FDA when intended for use as a barrier and to provide protective coverage. (File 4 at 285-86.)

Although approved for use by the FDA, this FDA approval is not sufficient to demonstrate that the Membrane Wrap skin substitute product is not experimental and is reasonable and necessary for Medicare coverage purposes. *See* 68 Fed. Reg. 55634, 55636 (September 26, 2003)(noting that FDA approval or clearance alone does not generally entitle a product to coverage). And the evidence submitted did not demonstrate that the Membrane Wrap product was not experimental.

The only published studies and reviews submitted by Appellant were evaluations of the efficacy of amniotic membrane derivatives generally. (File 4 at 210-82.) Appellant did not submit published original research studies or systematic reviews or meta-analyses that evaluated the efficacy of the BioLab Membrane Wrap product. (File 12, Hearing Audio.) And Appellant stated that although studies of the BioLab Membrane Wrap product were in the process of being conducted, there were no studies that have been published concerning the BioLab Membrane Wrap. (File 12, Hearing Audio.) Studies of the efficacy of amniotic membrane derivatives generally are not sufficient to establish the efficacy of the BioLab Membrane Wrap product.

Additionally, the medical records submitted were not sufficient to establish that the use of the BioLab Membrane Wrap was reasonable and necessary in this case. Although Beneficiary had been having trouble with venous leg ulcers for years, the wound at issue was not noted until mid-May 2024. The documentation of the nature of the wound and of the response of the wound to conservative treatment measures was sporadic. There were limited measurements taken of the wound, but the records did demonstrate that the size of the wound decreased from 32.1 cm by 8.9 cm by 0.3 cm on July 2, 2024 (File 4 at 32), to 24.9 cm by 7.8 cm by 0.2 cm on September 24, 2024 (File 4 at 19).

After reviewing the entire record including the testimony presented at the hearing, I find that the Services were not reasonable and necessary and are not covered by Medicare. Appellant was not entitled to payment for the Services. And an overpayment was made.

**Limitation on Liability.**

Beneficiary did not receive notice that Medicare would not cover or pay for the Services, and Beneficiary is not liable for the costs of the Services.

The Medicare guidelines set forth the requirements for coverage and payment. And Appellant is expected to have known that the Services would not be covered or payable based on the applicable guidelines. See 42 C.F.R. § 411.406. Therefore, Appellant remains responsible for the costs of the Services.

Under section 1870 of the Act, recovery of an overpayment from a provider or supplier may be waived if the provider or supplier was not at fault in creating the overpayment. The provider or supplier is considered to be without fault if it exercised reasonable care in billing for, and accepting, the payment. Act § 1870(b).

Since a supplier or provider is expected to know the requirements of Medicare claims, Appellant is not without fault because it billed and received payment for items or services that it should have known were not covered or payable under the Medicare program. Therefore, the overpayment recovery cannot be waived under section 1870 of the Act, and Appellant is liable for the overpayment amount.

## CONCLUSIONS OF LAW

I find that the Services are not covered by Medicare. Appellant was not entitled to payment for the Services. An overpayment was made. Beneficiary is not liable for the Services or any overpayment. Appellant should have known that the Services were not covered and is liable for the Services and any overpayment.

## ORDER

This decision is **UNFAVORABLE**. I direct the Medicare Administrative Contractor to process the claim in accordance with this decision.

**SO ORDERED**

Jenifer J. Soulikias
Administrative Law Judge

DEPARTMENT OF HEALTH AND HUMAN SERVICES (DHHS) / DEPARTMENTAL APPEALS BOARD Form DAB-101 (12/19)

# REQUEST FOR REVIEW OF ADMINISTRATIVE LAW JUDGE (ALJ) MEDICARE DECISION / DISMISSAL

| | |
|---|---|
| 1. APPELLANT (the party requesting review) | 2. ALJ APPEAL NUMBER (on the decision or dismissal) |
| 3. BENEFICIARY* | 4. MEDICARE NUMBER (Health Insurance Claim Number (HICN) or Medicare Beneficiary Identifier (MBI))* |

*If the request involves multiple claims or multiple beneficiaries, attach a list of beneficiaries, Medicare numbers, and any other information to identify all claims being appealed.

| | |
|---|---|
| 5. PROVIDER, PRACTITIONER, OR SUPPLIER | 6. SPECIFIC ITEM(S) OR SERVICE(S) |

7. Medicare claim type: ☐ Part A ☐ Part B ☐ Part C - Medicare Advantage
☐ Part D - Medicare Prescription Drug Plan ☐ Entitlement/enrollment for Part A or Part B

8. Does this request involve authorization for an item or service that has not yet been furnished?
☐ Yes If Yes, skip to Block 9.
☐ No If No, Specific Dates of Service:

9. If the request involves authorization for a prescription drug under Medicare Part D, would application of the standard appellate timeframe seriously jeopardize the beneficiary's life, health, or ability to regain maximum function (as documented by a physician) such that expedited review is appropriate? ☐ Yes ☐ No

I request that the Medicare Appeals Council review the ALJ's ☐ decision or ☐ dismissal order [check one] dated________________________. I disagree with the ALJ's action because (specify the parts of the ALJ's decision or dismissal you disagree with and why you think the ALJ was wrong):

__________________________________________________________

__________________________________________________________

__________________________________________________________

__________________________________________________________

(Attach additional sheets if you need more space)

**PLEASE ATTACH A COPY OF THE ALJ DECISION OR DISMISSAL ORDER YOU ARE APPEALING.**

| | | | | | |
|---|---|---|---|---|---|
| DATE | | | DATE | | |
| APPELLANT'S NAME (the party requesting review) | | | REPRESENTATIVE'S NAME (include signed appointment of representative if not already submitted) | | |
| ADDRESS | | | ADDRESS | | |
| CITY, STATE, ZIP CODE | | | CITY, STATE, ZIP CODE | | |
| TELEPHONE NUMBER | FAX NUMBER | E-MAIL | TELEPHONE NUMBER | FAX NUMBER | E-MAIL |

(SEE FURTHER INSTRUCTIONS ON PAGE 2)

If you have additional evidence, submit it with this request for review. If you need more time, you must request an extension of time in writing now, explaining why you are unable to submit the evidence or legal argument now.

*If you are a provider, supplier, or a beneficiary represented by a provider or supplier, and your case was reconsidered by a Qualified Independent Contractor (QIC), the Medicare Appeals Council will not consider new evidence related to issues the QIC has already considered unless you show that you have a good reason for submitting it for the first time to the Medicare Appeals Council.*

**IMPORTANT: Include the HICN or MBI and ALJ Appeal Number on any letter or other material you submit.**

This request must be received within 60 calendar days after you receive the ALJ's decision or dismissal, unless we extend the time limit for good cause. We assume you received the decision or dismissal 5 calendar days after it was issued, unless you show you received it later. If this request will not be received within 65 calendar days from the date on the decision or dismissal order, please explain why on a separate sheet.

---

You must file your request for review in writing with the Medicare Appeals Council at:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

You may send the request for review by U.S. Mail, a common carrier such as FedEx, or by fax to (202) 565-0227. If you send a fax, please do not also mail a copy. ***You must send a copy of your appeal to the other parties and indicate that all parties, to include all beneficiaries, have been copied on the request for review. For claims involving multiple beneficiaries, you may submit a copy of the cover letters issued or a spreadsheet of the beneficiaries and addresses who received a copy of the request for review.***

If you have any questions about your request for review or wish to request expedited review of a claim involving authorization of your prescription drug under Medicare Part D, you may call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100. You may also visit our web site at www.hhs.gov/dab for additional information on how to file your request for review.

## PRIVACY ACT STATEMENT

The collection of information on this form is authorized by the Social Security Act (section 205(a) of title II, section 702 of title VII, section 1155 of Title XI, and sections 1852(g)(5), 1869(b)(1), 1871, 1872, and 1876(c)(5)(B) of title XVIII, as appropriate). The information provided will be used to further document your claim. Information requested on this form is voluntary, but failure to provide all or any part of the requested information may affect the determination of your claim. Information you furnish on this form may be disclosed by the Department of Health and Human Services or the Social Security Administration to another person or governmental agency only with respect to programs under the Social Security Act and to comply with Federal laws requiring the disclosure of information or the exchange of information between the Department of Health and Human Services, the Social Security Administration, or other agencies.

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Kansas City, MO**

| | | | |
|---|---|---|---|
| Appeal of: | **INDY WOUND CENTER FOR LIMB PRESERVATION & RECONSTRUCTION** | OMHA Appeal No.: | **3-15485412259** |
| Beneficiary: | [redacted] | Medicare Part: | **B** |
| Medicare No.: | | Before: | **Jenifer J. Soulikias** Administrative Law Judge |

Index of the Administrative Record and Exhibit List

| **Exhibit Record** | **Administrative File Reference** File Name | | Page Range |
|---|---|---|---|
| Position Statements: UPIC | File 10 | 1 | : 4 |
| Procedural - CMS Levels: QIC Decision | File 2 | 1 | : 16 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 3 | 1 | : 3 |
| Procedural - CMS Levels: Request for Reconsideration | File 4 | 1 | : 286 |
| Procedural - CMS Levels: Redetermination: cover page | File 5 | 1 | : 1 |
| Procedural - OMHA Level: Request for ALJ Hearing: w/AOR, QIC dec, docs | File 1 | 1 | : 21 |
| Procedural - OMHA Level: Notice of Intent: UPIC - Non-party - Written | File 11 | 1 | : 2 |
| Procedural - OMHA Level: Notice of Hearing | File 6 | 1 | : 9 |
| Procedural - OMHA Level: Amended Notice of Hearing | File 7 | 1 | : 9 |
| Procedural - OMHA Level: Response to Notice of Hearing: Appellant | File 8 | 1 | : 3 |
| Proceeding (Audios): Hearing | File 12 | 1 | : 1 |

| **Non-Exhibit Record** | **Administrative File Reference** File Name | | Page Range |
|---|---|---|---|
| Records not considered: Response to Notice of Hearing: App-Duplicate | File 9 | 1 | : 3 |

Department of Health and Human Services
OFFICE OF MEDICARE HEARINGS AND APPEALS
Kansas City, MO

Appeal of: [redacted]

Beneficiary:

Medicare No.: *******WY81

Before: **Jenifer J. Soulikias**
Administrative Law Judge

## DECISION

After carefully considering the evidence, I enter an **UNFAVORABLE** decision for [redacted]

## PROCEDURAL HISTORY

Appellant's claim for the Services was initially paid, but a Unified Program Integrity Contractor (UPIC) later determined that the Services were not covered and that Appellant received an overpayment. On redetermination and reconsideration, the Medicare Administrative Contractor (MAC) and the Qualified Independent Contractor (QIC) issued unfavorable decisions finding that the Services were not covered and upholding the overpayment determination. The MAC and the QIC also determined that Appellant was liable and that Beneficiary was not liable for the non-covered costs and any overpayment.

Appellant filed at timely request for an Administrative Law Judge (ALJ) hearing. The amount in controversy meets the requirement for an ALJ hearing. Accordingly, Appellant's appeal satisfies all the jurisdictional requirements for an ALJ hearing. 42 C.F.R. §§ 405.1002(a), 405.1006(b)(1).

I conducted a hearing by telephone on **January 8, 2025. William O'Malley** appeared on behalf of Appellant. Non-duplicative exhibits were admitted into the record without objection.

## ISSUES

The issues before the Administrative Law Judge include all of the issues brought out in the initial determination, coverage determination, or organization determination; redetermination; or reconsideration that were not decided entirely in a party's favor, for the claims or other appealed matters specified in the request for hearing.

## APPLICABLE LAW AND POLICY

ALJs are bound to follow all laws, regulations and national coverage determinations (NCDs) pertaining to the Medicare and Medicaid programs. 42 C.F.R. §§ 405.1060, 405.1063. ALJs are not bound by but must give substantial deference to applicable local coverage determinations (LCDs), local medical review policies (LMRPs), and program guidance issued by the Centers for Medicare and Medicaid Services (CMS) such as program memoranda and manual instructions. 42 C.F.R. § 405.1062.

A claimant must furnish sufficient documentary evidence to support the claim. 42 C.F.R. § 424.5(a)(6). And a claimant bears the burden of proof in this appeal to support the claim by a preponderance of the evidence. 5 U.S.C. § 556(d) (setting forth the burden of proof in an administrative law proceeding as requiring a proffered position to be supported with "reliable, probative, and substantial evidence").

**Medicare Coverage.**

Medicare provides coverage for services and supplies, including biologicals and drugs, furnished incident to a physician's professional services. Act §§ 1831, 1832(a)(2)(C), 1861(s)(2)(A). But to be covered, the services or supplies must have been reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member. Act § 1862(a)(1)(A).

Medicare administrative contractors may develop local coverage determinations (LCDs), which are determinations by the contractor as to whether and when an item or service is reasonable and necessary. Act §1869(f)(2)(B); *Medicare Program Integrity Manual* (*MPIM*), pub. 100-08, ch. 13, §§ 13.1.1, 13.5.4. The Medicare Program Integrity Manual (MPIM) provides guidelines to assist contractors in developing LCDs. *MPIM*, ch. 13, § 13.5.4. ALJs may look to these guidelines to determine medical necessity in the absence of an applicable NCD or LCD.

The MPIM states that a contractor shall consider a service to be reasonable and necessary if it is

(a) Safe and effective;

(b) Not experimental or investigational; and

(c) Appropriate, including the duration and frequency that is considered appropriate for the item or service, in terms of whether it is:

- Furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the patient's condition or to improve the function of a malformed body member;
- Furnished in a setting appropriate to the patient's medical needs and condition;
- Ordered and furnished by qualified personnel;
- One that meets, but does not exceed, the patient's medical need; and
- At least as beneficial as an existing and available medically appropriate alternative.

*MPIM*, ch. 13, § 13.5.4. In conducting a review of medical necessity for a service, contractors "shall use the available evidence of general acceptance by the medical community, such as published original research in peer-reviewed medical journals, systematic reviews and meta-analyses, evidence-based consensus statements, and clinical guidelines." *MPIM*, ch. 13, § 13.5.3.

**Limitation on Liability.**

Section 1879 of the Act provides financial relief to beneficiaries, providers, and suppliers by permitting Medicare payment to be made, or requiring refunds to be made, for services and items for which Medicare payment would otherwise be denied. In order to obtain relief under section 1879, the payment for the services or items furnished must have been denied for one of the reasons specified in section 1879, which includes non-coverage under section 1862(a)(1) of the Act because services or items were "not medically reasonable and necessary." 42 C.F.R. § 411.400. In addition, relief may be provided under section 1879 only if the beneficiary and the provider or supplier did not know and reasonably could not have been expected to know that the items or services were excluded from coverage. 42 C.F.R. 411.400.

Providers and suppliers participating in the Medicare program are considered to have constructive knowledge of published Medicare statues and regulations, CMS manual instructions, bulletins, and contractors' written guides and directives, and standards of practice in conjunction with Medicare reimbursement policies. 42 C.F.R. § 411.406; *Medicare Claims Processing Manual (MCPM)*, pub. 100-04, ch. 30 §§ 30.2, 40.1.

A beneficiary is considered to have known that an item or service is not covered if the beneficiary received valid written notice of non-coverage or notice of a recent claim denial for the same or similar item or service. 42 C.F.R. § 411.404; *MCPM*, ch. 30, §§ 30, 30.1, 30.1.1. If a beneficiary did not know or receive notice that Medicare would deny payment, the beneficiary is not financially liable for the non-covered services. Act § 1879(a)-(g); *MCPM*, ch. 30, § 30.

In the event of an overpayment, section 1870(b) of the Act provides the authority to waive the overpayment. Generally, Medicare waives overpayments if a provider or supplier is without fault in causing the overpayment. Act § 1870(b). A provider or supplier is considered to be without fault if it exercised reasonable care in billing for, and accepting, the payment. Act § 1870(b).

## FINDINGS OF FACT AND ANALYSIS

**Medicare Coverage.**

At issue is Appellant's claim for wound surgery services and the application of a skin substitute to a venous ulcer on Beneficiary's left anterior leg.[1] The MAC and QIC denied payment by concluding that the skin substitute product used was experimental or investigational and that the use of a skin substitute product was not reasonable and necessary. (File 5 at 4; File 2 at 4.)

There is no NCD or LCD addressing the reasonable and necessary threshold for coverage of a skin substitute product. In the absence of an applicable NCD or LCD, I may look to the guidelines to be used by contractors in developing LCDs. *MPIM*, ch. 13, § 13.5.4. Under these guidelines, an item is reasonable and necessary if it is safe and effective, not experimental or investigational, and appropriate. *MPIM*, ch. 13, § 13.5.4. And in conducting a review of medical necessity for a service, contractors "shall use the available evidence of general acceptance by the medical community, such as published original research in peer-reviewed medical journals, systematic reviews and meta-analyses, and evidence-based consensus statements and clinical guidelines." *MPIM*, ch. 13, § 13.5.3. The services also must have been appropriate to the patient's medical needs and condition. *MPIM*, ch. 13, § 13.5.4.

---

[1] Although Beneficiary had multiple wounds on the lower extremities, a skin substitute product was applied only to a wound on the left anterior leg on July 2, 2024. (File 4 at 17-22.)

Beneficiary in this case had a history of multiple longstanding venous insufficiency ulcers to the bilateral lower extremities. (File 4 at 14.) Beneficiary's prior medical history was also significant for morbid obesity, chronic bilateral lower extremity edema, history of deep vein thrombosis, hypertension, hyperlipidemia, pulmonary hypertension, and anemia. (File 4 at 86.)

Beneficiary was admitted to a hospital on May 8, 2024, after having been found covered in her own blood and unable to get up. (File 4 at 86.) She was diagnosed with septic/hemorrhagic shock, acute kidney injury, and metabolic acidosis. (File 4 at 86.) Beneficiary also had wounds on both lower extremities. (File 4 at 87-88.) Beneficiary was very familiar to the hospital care team from previous admissions for severe chronic leg wounds, most recently in January 2024. (File 4 at 86.) She had been at a long-term acute care hospital and was discharged home six weeks prior to the May 8 hospital admission. (File 4 at 86.) She had a steady decline after returning home. (File 4 at 86.) In the past, Beneficiary demonstrated medical and treatment noncompliance. (File 4 at 86.) She tended to refuse care and change her own dressings. (File 4 at 86.) Beneficiary also had a history of refusing wound VAC due to a previous bad experience. (File 4 at 86.) She had an inpatient plastics consult on April 19, 2023, but did not follow up. (File 4 at 86.)

With respect to the wounds present on May 8, 2024, Beneficiary reported recently using silicone primary dressing for non-stick properties. (File 4 at 86.) A bilateral lower extremity CT was negative for abscess or soft tissue gas on admission. (File 4 at 86.) Medical records indicated that skin substitutes were applied to the lower extremities on May 11, 2024. (File 4 at 86.) On May 15, 2024, Beneficiary was noted to have had a nearly circumferential wound around the entire left calf with a depth of 0.2 cm. (File 4 at 88.) No measurements were taken due to Beneficiary's severe pain with any touch. (File 4 at 88.)

Beneficiary was transferred to another facility on May 17, 2024. (File 4 at 96.) On June 3, 2024, a venous ulcer was noted on her lower left leg that measured 18 cm by 32 cm by 0.1 cm. (File 4 at 112.)

Beneficiary was admitted to a rehabilitation hospital on June 11, 2024, where she received wound care. (File 4 at 28-99.) There were limited notations detailing the progress of the wound during this admission, with the first measurements of the left anterior leg wound noted on June 21, 2024. (File 4 at 28-99.) On June 21, 2024, the left anterior leg wound measured 9 cm by 32 cm by 0.4 cm. (File 4 at 34, 36.)

Beneficiary was referred to Appellant for advanced wound care. (File 4 at 14.) When evaluated on July 2, 2024, Beneficiary reported dealing with wounds off and on for 6 plus years. (File 4 at 14.) Beneficiary stated she had seen multiple providers at various wound care centers and hospitals. (File 4 at 14.) She had tried topical treatments (antibiotic ointment, steroid creams, medihoney, silver based topics etc.), alginates, hydrofera, wet to dry with saline and betadine. (File 4 at 14.) Beneficiary reported also having bedside and surgical debridements. (File 4 at 14.) Despite these efforts, her wounds had been resistant to healing. (File 4 at 14.) Beneficiary reported that she had been on both IV and oral antibiotics for off and on cellulitis and for other systemic pathologies. (File 4 at 14.)

At the time of the skin substitute application, Beneficiary was at home with the aid of home health doing dressing changes three times weekly with xeroform, ABD, kerlix, ACE from forefoot to below knee bilateral. (File 4 at 14.)

Although Beneficiary had multiple wounds on the lower extremities, a skin substitute product was applied only to a wound on the left anterior leg on July 2, 2024. (File 4 at 17-22.) The left anterior leg wound was noted to have had an onset date of June 3, 2024, and was described as a chronic venous ulcer of other part of left lower leg with fat layer exposed. (File 4 at 17.) The ulcer bed had exposed subcutaneous tissue. (File 4 at 17.) It was a full thickness ulcer. (File 4 at 17.) The skin around the ulcer was normal. (File 4 at 17.) The ulcer was not malodorous. (File 4 at 17.) There were no signs of epithelialization. (File 4 at 17.) The ulcer border was well defined. (File 4 at 17.) There was over 50 percent granulation with a confluent pattern of beefy red quality. (File 4 at 17.) There was between 0 and 25 percent nonviable material of slough/fibrin quality. (File 4 at 17.) The ulcer measured 8.2 cm by 24.3 cm by 0.2 cm. (File 4 at 17.) The ulcer had a minimum amount of drainage. (File 4 at 17.) The drainage was serosanguineous. (File 4 at 17.)

Appellant applied a BioLab Membrane Wrap product to the wound. (File 4 at 22, 25-26.) The treating practitioner stated,

> [t]reatment with a cellular and/or tissue based therapy is reasonable and necessary because the ulcer failed to show evidence of healing despite 30 days of comprehensive, conservative care. Prior treatments that failed include nutritional optimization, moist wound care, management of infection and debridement of necrotic material. The patient currently has a full thickness tissue defect not involving tendon, muscle, joint capsule or exhibiting exposed bone or sinus tracts, with a clean granular base. There is no evidence of a wound infection and bacterial colonization has been controlled. There is no evidence of underlying osteomyelitis or cellulitis. Adequate treatment of underlying conditions that contributed to the ulcer have been provided.

(File 4 at 26.)

The BioLab Membrane Wrap is a human tissue allograft derived from the amniotic membrane regulated and approved for use as a human cellular and tissue based product (HCT/P) by the US Food and Drug Administration (FDA) under 21 C.F.R. Part 1271. (File 4 at 275-278.) It was approved for use by the FDA when intended for use as a barrier and to provide protective coverage. (File 4 at 277.)

Although approved for use by the FDA, this FDA approval is not sufficient to demonstrate that the Membrane Wrap skin substitute product is not experimental and is reasonable and necessary for Medicare coverage purposes. 68 Fed. Reg. 55634, 55636 (September 26, 2003). And the evidence submitted did not demonstrate that the Membrane Wrap product was not experimental.

The only published studies and reviews submitted by Appellant were evaluations of the efficacy of amniotic membrane derivatives generally. (File 4 at 202-78.) Appellant did not submit published original research studies or systematic reviews and meta-analyses that evaluated the efficacy of the BioLab Membrane Wrap product. (File 10, Hearing Audio.) And Appellant stated that although studies of the BioLab Membrane Wrap product were in the process of being conducted, there were no studies that have been published concerning the BioLab Membrane Wrap. (File 10, Hearing Audio.) Studies of the efficacy of amniotic membrane derivatives generally are not sufficient to establish the efficacy of the BioLab Membrane Wrap product.

Additionally, the medical records submitted were not sufficient to establish that the use of the BioLab Membrane Wrap was reasonable and necessary in this case. Although Beneficiary had

been having trouble with venous leg ulcers for years, the wound at issue was not noted until mid-May 2024. The documentation of the nature of the wound and of the response of the wound to conservative treatment measures was sporadic. There were limited measurements taken of the wound, but the records did demonstrate that the size of the wound decreased from 18 cm by 32 cm by 0.1 cm on June 3, 2024, to 8.2 cm by 24.3 cm by 0.2 cm on July 2, 2024. (File 4 at 17, 112.) And although the wound was serious, the medical records submitted did not show that the wound was not responding to more conservative treatment.

After reviewing the entire record including the testimony presented at the hearing, I find that the Services were not reasonable and necessary and are not covered by Medicare. Appellant was not entitled to payment for the Services. And an overpayment was made.

**Limitation on Liability.**

Beneficiary did not receive notice that Medicare would not cover or pay for the Services, and Beneficiary is not liable for the costs of the Services.

The Medicare guidelines set forth the requirements for coverage and payment. And Appellant is expected to have known that the Services would not be covered or payable based on the applicable guidelines. See 42 C.F.R. § 411.406. Therefore, Appellant remains responsible for the costs of the Services.

Under section 1870 of the Act, recovery of an overpayment from a provider or supplier may be waived if the provider or supplier was not at fault in creating the overpayment. The provider or supplier is considered to be without fault if it exercised reasonable care in billing for, and accepting, the payment. Act § 1870(b).

Since a supplier or provider is expected to know the requirements of Medicare claims, Appellant is not without fault because it billed and received payment for items or services that it should have known were not covered or payable under the Medicare program. Therefore, the overpayment recovery cannot be waived under section 1870 of the Act, and Appellant is liable for the overpayment amount.

## CONCLUSIONS OF LAW

I find that the Services are not covered by Medicare. Appellant was not entitled to payment for the Services. An overpayment was made. Beneficiary is not liable for the Services or any overpayment. Appellant should have known that the Services were not covered and is liable for the Services and any overpayment.

**ORDER**

This decision is **UNFAVORABLE**. I direct the Medicare Administrative Contractor to process the claim in accordance with this decision.

**SO ORDERED**

Jenifer J. Soulikias
Administrative Law Judge