# Complaint Exhibit 34

DEPARTMENT OF HEALTH & HUMAN SERVICES Office of the Secretary

Departmental Appeals Board, MS 6127
Medicare Appeals Council
330 Independence Avenue
Cohen Building, Room G-644
Washington, DC 20201
(202)565-0100/Toll Free:1-866-365-8204

Docket Number: M-25-1655
OMHA Appeal Numbers: 3-14335367184, 3-14347670001, 3-14335367203

[redacted]

# NOTICE OF OWN MOTION REVIEW AND DECISION OF MEDICARE APPEALS COUNCIL

## What This Notice Means

The Medicare Appeals Council, under the authority of 42 C.F.R. § 405.1110, on its own motion, has decided to review the Administrative Law Judge (ALJ)'s actions dated January 21, 2025. In the enclosed decision, we explain why.

In deciding to review the action below, the Council has considered the memorandum from the Centers for Medicare & Medicaid Services (CMS) dated March 20, 2025.

If you have any questions, you may contact the CMS regional office or the local Medicare contractor.

## Your Right to Court Review

If you desire court review of the Council's decision and the amount in controversy is $1,900 or more, you may commence a civil action by filing a complaint in the United States District Court for the judicial district in which you reside or have your principal place of business. *See* § 1869(b) of the Social Security Act, 42 U.S.C. § 1395ff(b). The complaint must be filed within sixty days after the date this letter is received. 42 C.F.R. § 405.1130. It will be presumed that this letter is received within five days after the date

shown above unless a reasonable showing to the contrary is made. 42 C.F.R. § 405.1136(c)(2).

If you cannot file your complaint within sixty days, you may ask the Council to extend the time in which you may begin a civil action. However, the Council will only extend the time if you provide a good reason for not meeting the deadline. Your reason must be set forth clearly in your request. 42 C.F.R. § 405.1134.

If a civil action is commenced, the complaint should name the Secretary of Health and Human Services as the defendant and should include the Council's docket number and ALJ appeal number shown at the top of this notice. 42 C.F.R. § 405.1136(d). The Secretary must be served by sending a copy of the summons and complaint by registered or certified mail to the General Counsel, Department of Health and Human Services, 200 Independence Avenue, S.W., Washington, D.C. 20201. In addition, you must serve the United States Attorney for the district in which you file your complaint and the Attorney General of the United States. *See* rules 4(c) and (i) of the Federal Rules of Civil Procedure and 45 C.F.R. § 4.1.

This notice and enclosed order were mailed on: May 14, 2025 .

Enclosure

cc: Beneficiary
[redacted]

DEPARTMENT OF HEALTH AND HUMAN SERVICES
DEPARTMENTAL APPEALS BOARD
**Medicare Appeals Council**
**Docket No. M-25-1655**

[redacted]

OMHA Appeal No. 3-14335367184 & 2 Others

## DECISION

The Medicare Appeals Council (Council) has decided, on its own motion, to review the Administrative Law Judge (ALJ)'s three decisions dated January 21, 2025, concerning Medicare Part B coverage of Amniowrap2 (billed under Healthcare Common Procedure Coding System (HCPCS) Q4221) that the appellant furnished to the beneficiary on February 13, 2023, and April 10, 2023, and the Xwrap wound cover (HCPCS 4204) that the appellant furnished to the beneficiary on February 20, 2023. The ALJ found that Medicare covers the allografts at issue.

By memorandum dated March 20, 2025, the Centers for Medicare & Medicaid Services (CMS) has asked the Council to review the ALJ's decisions. 42 C.F.R. § 405.1110. The Council limits its consideration of the ALJ's decisions to the specific exceptions raised by CMS. We enter the CMS referral memorandum into the record as Exhibit (Exh.) MAC-1. CMS sent a copy of its referral memorandum to the appellant, but we have not received a response.

For the reasons set forth below, the Council reverses the ALJ's decisions.

## DISCUSSION

At issue in this case is Medicare coverage of Amniowrap2, per square centimeter[1] (HCPCS Q4221) that the appellant furnished to the beneficiary on February 13, 2023, and April 10, 2023, and Xwrap wound cover, per square centimeter[2] (HCPCS Q4204) that the appellant furnished to the beneficiary on February 20, 2023. *See* OMHA No. 3-14335367184 (-7184) File 10 at 2-3; OMHA No. 3-14347670001 (-0001) File 12 at 19-20; OMHA No. 3-14335367203 (-7203) File 8 at 19-20. For all dates of service, the appellant also billed Medicare for the related service of the application of skin substitute graft to face, scalp, eyelids, mouth, neck, ears, orbits, genitalia, hands, feet, and/or

[1] According to the manufacturer, AmnioWrap2 is a human amnion tissue allograft. -7184 File 2 at 13; -7203 File 4 at 10.
[2] According to the manufacturer, Xwrap is donated human birth tissue allograft. -0001 File 8 at 10.

multiple digits, total wound surface area up to 100 centimeters squared, Current Procedure Terminology (CPT) code 15275. *See* -7184 File 10 at 2-3; -0001 File 12 at 19-20; -7203 File 8 at 19-20. The allografts were placed to treat the beneficiary's left dorsal foot wound to work towards wound closure. -7184 File 2 at 3-4; -0001 File 8 at 3-4; -7203 File 4 at 3-4, 11. The medical records reflect that the beneficiary was diagnosed with type 2 diabetes mellitus with foot ulcer and non-pressure chronic ulcer of other part of left foot with fat layer exposed. -7184 File 2 at 13; -0001 File 8 at 10; -7203 File 4 at 11.

Medicare initially paid these claims, but a contractor identified errors and found overpayments occurred. *See, e.g.*, -7184 File 11 at 27, 42-44. In its redetermination decisions, the Medicare Administrative Contractor (MAC) denied coverage of the allografts at issue because the documentation did not support that the wound care failed to respond to conservative treatment prior to receiving skin substitute measures, did not indicate wound measurements prior to treatment, and did not describe the specific application of the graft to the wound. -7184 File 10 at 4; -0001 File 12 at 21; -7203 File 8 at 21. This denial of coverage was affirmed by the Qualified Independent Contractor (QIC) in its reconsideration decisions when it determined that there was insufficient peer-reviewed evidence-based literature to support the use of the allografts at issue for wound care. -7184 File 7 at 5; -0001 File 1 at 6; -7203 File 6 at 5.

Following a consolidated hearing, the ALJ issued three substantially similar favorable decisions. The ALJ found that the allografts at issue provided to the beneficiary met Medicare criteria and were medically reasonable and necessary in accordance with § 1862(a) of the Social Security Act (Act). *See* -7184 Decision (Dec.) at 7; -0001 Dec. at 7; -7203 Dec. at 7. The ALJ determined that there was no applicable National Coverage Determination (NCD) or Local Coverage Determination (LCD) in these cases, thus an item or service must be reasonable and necessary based on the factors outlined in the Medicare Program Integrity Manual (MPIM), CMS Pub. 100-08, Ch. 3, § 3.6.2.2. -7184 Dec. at 4; -0001 Dec. at 3-4; -7203 Dec. at 3-4. The ALJ found that the appellant had not submitted any published peer-reviewed, evidence-based literature to support that the allografts at issue were safe, effective, and non-investigational for the treatment of the beneficiary's wound. -7184 Dec. at 7; -0001 Dec. at 6; -7203 Dec. at 7. However, the ALJ determined that an LCD from a different jurisdiction, LCD L35041, provided more relevant guidance for the coverage of the services at issue. -7184 Dec. at 4; -0001 Dec. at 4; -7203 Dec. at 4. For all three dates of service, the ALJ found that the treatment notes indicated that the beneficiary had an arterial, diabetic foot ulcer of full thickness that had failed to respond to conservative wound-care measures of greater than four weeks, and therefore met the criteria of LCD L35041. -7184 Dec. at 7; -0001 Dec. at 7; -7203 Dec. at 7.

Before the Council, CMS contends that the ALJ materially erred by determining that the AmnioWrap2 and Xwrap at issue were medically reasonable and necessary, because the

ALJ did not properly apply the pertinent Medicare authorities. Exh. MAC-1 at 2, 11-14. Specifically CMS contends that, although the ALJ acknowledged that the reasonableness and necessary criteria under MPIM Ch. 3 applies in the absence of NCDs or LCDs, the ALJ did not perform an analysis in accordance with the MPIM to determine whether Amniowrap2 and Xwrap were safe and effective, not experimental or investigational, and appropriate for the beneficiary's specific type of wound, based on the available evidence of general acceptance by the medical community. *Id.* at 12; *see also* MPIM, Ch. 3, §§ 3.3.3, 3.6.2.1-3.6.2.2; MPIM, Ch. 13, §§ 13.5.3, 13.5.4. CMS contends that the ALJ instead erroneously relied on LCD L35041, an LCD from a different jurisdiction. Exh. MAC-1 at 12-13. Further, CMS asserts that even in the jurisdiction where it is effective, LCD L35041 does not provide any insight into coverage of the specific items themselves or whether they are reasonable and necessary for specific uses. *Id.* at 13-14. Thus, CMS concludes that the ALJ's decisions contain errors of law material to the outcome of the appellant's claims because it resulted in an order for Medicare coverage and payment without a determination that the items were medically reasonable and necessary in accordance with CMS policies. *Id.* at 4, 14.

Having reviewed the administrative record, we agree with CMS that the ALJ materially erred as a matter of law by not fully reviewing and applying pertinent CMS guidance for determining medical reasonableness and necessity in the absence of an NCD, LCD, or other guidance. *See* Exh. MAC-1; 42 C.F.R. § 405.1110(b)(1).

Relevant here, § 1862(a)(1)(A) of the Act provides that Medicare will only cover items and services that are medically reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the function of a malformed body member. As the party seeking payment, the appellant has the burden to demonstrate the services for which it seeks coverage are reasonable and necessary for the purposes provided. 42 C.F.R. § 424.5(a)(6).

Absent an applicable NCD, LCD, or policy manual guidance, as is the case here, contractors and adjudicators must make individual reasonable and necessary determinations by assessing whether the service is safe and effective, not experimental or investigational, and appropriate. MPIM, Ch. 3, §§ 3.3.3, 3.6.2.1-3.6.2.2. Medicare defines "appropriate" to require, among other things, that the service must be furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the beneficiary's condition or to improve the function of a malformed body member; that it is a service that meets, but does not exceed, the beneficiary's medical need; and that it is furnished in a setting appropriate to the beneficiary's medical needs and condition. *See id.* § 3.6.2.2.

The MPIM further states that, when developing an LCD, a MAC shall use evidence of "general acceptance by the medical community" including "published original research in peer-reviewed medical journals, systematic reviews and meta-analyses, evidence-based

consensus statements and clinical guidelines." MPIM, Ch. 13, § 13.5.3; *see also id.* § 13.2.3 ("[a]cceptance by individual health care providers, or even a limited group of health care providers, does not indicate general acceptance of the item or service by the medical community."). While these MPIM provisions constitute guidance for contractors assessing medical reasonableness and necessity and in conducting an evidentiary review during an LCD's development, they necessarily apply to adjudicators, including ALJs and the Council, reviewing the contractor's medical reasonableness and necessity determination in the absence of an applicable NCD or LCD. The manual provisions thus treat the underlying medical literature as an inherent part of evaluating whether an item or service is reasonable and necessary, including whether it is safe, effective, appropriate, and experimental or investigational. *See* MPIM, Ch. 3, § 3.6.2.2; 42 C.F.R. § 405.1046(a) (noting that the ALJ's decision should include "a summary of any clinical or scientific evidence used in making the determination"); *see also* MPIM, Ch. 13, §§ 13.2.3, 13.5.3, 13.5.4.

All statutes and regulations pertaining to the Medicare program are binding on ALJs, attorney adjudicators and the Council. 42 C.F.R. § 405.1063(a). And while not bound by the MPIM guidance, the ALJ should have afforded these guidance provisions substantial deference. 42 C.F.R. § 405.1062. Therefore, the ALJ erred as a matter of law by not adhering to the regulatory requirements and by not giving substantial deference to the applicable MPIM requirements. *Id.* The ALJ's error was material to the outcome of the claims because it resulted in the ALJ ordering Medicare coverage and payment for services without a full consideration of medical necessity under the relevant MPIM provisions. *Id.* § 405.1110(b)(1).

In this case, despite the absence of an applicable NCD, LCD, or other policy manual guidance addressing the use of Amniowrap2 or Xwrap on the dates of service, and although the ALJ referred to the applicable statutory provisions and CMS guidance, the ALJ failed to perform a proper and complete analysis of the reasonable and necessary standards set forth in the MPIM. *See* MPIM, Ch. 3, §§ 3.3.3, 3.6.2.1-3.6.2.2; MPIM, Ch. 13, §§ 13.5.3, 13.5.4; *see also* -7184 Dec. at 4-7; -0001 Dec. at 3-7; -7203 Dec. at 3-7. The ALJ made findings that there was no applicable NCD or LCD to address coverage of Amniowrap2 and Xwrap and that the appellant has not submitted any published, peer-reviewed, evidence-based literature to support that the Amniowrap2 and Xwrap were safe, effective, and non-investigational for the treatment of the beneficiary's wound. -7184 Dec. at 4, 7; -0001 Dec. at 3, 6; -7203 Dec. at 3, 7. However, the ALJ also made findings that an LCD from a different jurisdiction, LCD L35041, provided more relevant guidance and found that Amniowrap2 and Xwrap met the coverage criteria in that LCD and were therefore reasonable and necessary for treatment of the beneficiary's wound. -7184 Dec. at 4-7; -0001 Dec. at 4-7; -7203 Dec. at 4-7. Thus, the ALJ failed to properly determine under the MPIM provisions whether the product is "safe and effective," "not experimental or investigational," and "appropriate" based on "the

available evidence of general acceptance by the medical community." *See, e.g.*, *id.*; MPIM, Ch. 3, § 3.6.2.2; MPIM, Ch. 13, § 13.5.3.

Having taken own motion review, the Council finds that the evidence in the record does not support that the use of Amniowrap2 or Xwrap were medically reasonable and necessary pursuant to the standards in the MPIM. MPIM, Ch. 3, § 3.6.2.2; MPIM, Ch. 13, §§ 13.2.3, 13.5.3, 13.5.4.

At the lower levels of review, the appellant submitted evidence, including the appellant's testimony, the beneficiary's medical records which include a discussion of the medical necessity of the grafting, a news release from the manufacturer of Amniowrap2 about a study showing that Amniowrap2 performed better than a competitor, and a letter from the Food and Drug Administration (FDA) providing that the Xwrap appeared to meet the criteria of a § 361 product of the Public Health Service Act (PHSA) when used a "protective barrier" or "wound covering" but not as a "skin graft" or used for "wound healing." *See* -7184 File 2; File 10 at 30-35; -0001 File 8; File 9; -7203 File 4; File 8 at 28-33; Hearing CDs. However, this evidence does not demonstrate that the Amniowrap2 or Xwrap are safe and effective under Medicare criteria.

We acknowledge that the appellant provided a news release from the manufacturer of the Amniowrap2 that briefly describes an article about a study of the Amniowrap2 that was published in a medical journal. *See, e.g.*, -7184 File 10 at 30-35; -7203 File 8 at 28-33. According to the news release, the journal article claims that the Amniowrap2 required fewer applications and achieved a higher expected percent area reduction compared to a competitive product. *Id.* However, the appellant did not provide the article itself. Without the full text of the referenced article, we cannot evaluate whether it would support coverage in this case. To the extent the appellant wished for consideration of the information within the article generally referenced within the news release, the appellant should have provided a complete copy of the article. *See* 42 C.F.R. § 424.5(a)(6). Therefore, the appellant has not properly provided support in the form of medical literature. Without such medical literature we cannot say that Anmiowrap2 or Xwrap are safe and effective, not experimental or investigational, and appropriate treatment for the beneficiary's conditions, pursuant to the standards in the MPIM. We also note that hearing testimony alone is insufficient to support coverage under the MPIM criteria.

Notwithstanding the lack of medical literature, we have reviewed the remaining evidence that is present in the administrative records, however, we find that they do not include sufficient evidence that Amniowrap2 and Xwrap are safe and effective, not "experimental or investigational," and appropriate" for the treatment of the beneficiary's condition, as defined in the MPIM. *See* MPIM, Ch. 3, § 3.6.2.2.

We acknowledge that the within each medical record for each date of service, the appellant included a section explaining the medical necessity of the grafting. *See e.g.*

-7184 File 2 at 14-15. The treating physician's conclusions about whether the beneficiary is deriving benefit, however, are insufficient to establish coverage. *See, e.g.*, *Ottinger v. Sebelius*, Civ. Act. No. 2:12-CV-2 at 12 (D. Vt. 2012), *citing Goodman v. Sullivan*, 712 F. Supp. 334, 338 (S.D.N.Y. 1989). Indeed, such evidence is not sufficient to demonstrate that Amniowrap2 and Xwrap were appropriate, safe and effective, and not experimental or investigational.

For instance, Medicare defines "appropriate" to require, among other things, that the service must be furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the beneficiary's condition or to improve the function of a malformed body member. MPIM, Ch. 3, § 3.6.2.2. Although a treating physician may conclude that an item or service may be beneficial or even necessary for the treatment of a Medicare beneficiary, that does not mean that the item or service is furnished in accordance with accepted standards of medical practice. Acceptance by individual health care providers, or even a limited group of health care providers, is not sufficient to establish general acceptance of the item or service by the medical community. MPIM, Ch. 13, § 13.2.3. Instead, published original research in peer-reviewed medical journals, systematic reviews and meta-analyses, evidence-based consensus statements and clinical guidelines" must be considered. MPIM, Ch. 13, § 13.5.3. Given the lack of such evidence, the record does not demonstrate that treatment with Amniowrap2 or Xwrap is the standard of care for the beneficiary's condition or that Amniowrap2 or Xwrap were generally accepted by the medical community as "appropriate."

Further, we acknowledge the FDA letter about Xwrap in the record, and the appellant's related argument that Xwrap and Amniowrap2 are considered § 361 products of in the PHSA and meet the criteria for regulation under 21 C.F.R. § 1271, and therefore meet the reasonable and necessary requirement of the MPIM. -7184 File 3; -0001 File 7; File 9; -7203 File 1. Nevertheless, the regulations state that "CMS *may consider* for Medicare coverage" FDA approved devices "that have been categorized as . . . nonexperimental/ investigational." 42 C.F.R. § 405.201(a)(2) (emphasis added). The regulations further clarify that CMS uses FDA categorization "as a factor in making Medicare coverage decisions." *Id.* § 405.201(a)(1). Thus, under Medicare regulations, FDA approval or categorization alone is not determinative of Medicare coverage. Accordingly, any determination that Amniowrap2 or Xwrap met (or did not meet) criteria for regulation under 21 C.F.R. § 1271.10(a) and § 361 of the PHSA is not sufficient to demonstrate that Amniowrap2 and Xwrap are not experimental or investigational for purposes of Medicare. *See* MPIM, Ch. 3, § 3.6.2.2.

Ultimately, the burden is on the appellant to submit sufficient information for coverage of the services. Act § 1833(e). Here, the appellant has not submitted any authoritative evidence, such as peer-reviewed journals, studies, and clinical guidelines, to support a finding that the items at issue are safe and effective, not experimental or investigational, and appropriate for the beneficiary's condition. MPIM, Ch. 3, § 3.6.2.2; MPIM, Ch. 13,

§§ 13.5.3-13.5.4. Without such evidence, we simply cannot determine the medical reasonableness and necessity of the items in accordance with the applicable authorities.

We have also considered the ALJ's finding that LCD L35041, issued by a different Medicare Administrative Contractor, Novitas Solutions, Inc., provides relevant guidance that Amniowrap2 and Xwrap are medically reasonable and necessary, however, we disagree. *See* -7184 Dec. at 4-7; -0001 Dec. at 4-7; -7203 Dec. at 4-7.; L35041 (Effective Sept. 26, 2019). LCDs are determinations of whether a particular item or service is medically reasonable and necessary that are effective on a carrier-wide basis, and it is undisputed that LCD L35041 is inapplicable to these cases. *See* Act § 1869(f)(2)(B). Each LCD contains specific coverage limitations, conditions, and documentation requirements, which we do not analyze here, that must be satisfied for a particular product to be considered medically reasonable and necessary under the LCD. It is undisputed that there were no applicable LCDs (or NCDs) for this jurisdiction on the dates of service at issue. *See* Exh. MAC-1 at 3, 11-13; -7184 Dec. at 4; -0001 Dec. at 3; -7203 Dec. at 3. In the absence of an LCD, NCD, or other Medicare coverage policy, the record must demonstrate that the MPIM criteria are met. MPIM, Ch. 3, §§ 3.3.3, 3.6.2.2. Here, as set forth in our discussion above, we find that the appellant has not met its burden of demonstrating that Amniowrap2 and Xwrap were reasonable and necessary in accordance with the MPIM.

Based on the discussion above, and in accordance with the standards set forth in the MPIM, the Council concludes that the appellant has not demonstrated that Amniowrap2 and Xwrap were medically reasonable and necessary under the applicable manual requirements, which is necessary to support coverage. 42 C.F.R. § 424.5(a)(6). Therefore, Medicare Part B does not cover the Amniowrap2 and Xwrap allografts at issue.

At the lower levels of review, the contractors found that the appellant was financially liable for the non-covered costs and overpayments pursuant to §§ 1879 and 1870 of the Act. *See* -7184 File 7 at 5-6; File 10 at 5; -0001 File 1 at 6; File 12 at 22; -7203 File 6 at 5-6; File 8 at 22. The appellant did not previously raise any contentions regarding its financial liability for the non-covered costs and has not submitted any exceptions on this issue to the Council. *See* -7184 File 1; File 3; File 10 at 1; -0001 File 3 at 1; File 6; File 7; -7203 File 1; File 2; File 8 at 1. Therefore, the Council summarily affirms the QIC's determinations on this issue and finds that the appellant is financially liable for the non-covered costs, and not entitled to a wavier of the overpayment. *See* 42 C.F.R. § 405.1112(c).

(Continued on next page.)

## DECISION

The Council reverses the ALJ's decisions. The Council finds that Medicare Part B does not cover the Amniowrap2, furnished to the beneficiary on February 13, 2023, and April 10, 2023, and the Xwrap furnished to the beneficiary on February 20, 2023. The appellant is liable for the non-covered costs and not entitled to a waiver of the overpayment.

**MEDICARE APPEALS COUNCIL**

M. Katharine Duncan
Administrative Appeals Judge

Cherise V. Neville
Administrative Appeals Judge

Date: May 14, 2025

DEPARTMENT OF HEALTH & HUMAN SERVICES Office of the Secretary

Departmental Appeals Board
Room G-644, MS 6127
330 Independence Avenue S.W.
Washington, DC 20201

# Nondiscrimination Notice

The Departmental Appeals Board (DAB) complies with applicable Federal civil rights laws and does not discriminate based on race, color, national origin, age, disability, or sex. The DAB does not exclude people or treat them differently because of race, color, national origin, age, disability, or sex.

The DAB provides free aids and services to people with disabilities to communicate effectively with us, such as:

- Qualified sign language interpreters
- Written information in other formats (large print, audio, accessible electronic formats, other formats)

The DAB also provides free language services to people whose primary language is not English, such as:

- Qualified interpreters
- Information written in other languages

If you need these services, contact the DAB Administration Division at (202) 565-0200 or DABAdministrationDivision@hhs.gov.

If you believe the DAB has failed to provide these services or discriminated in another way on the basis of race, color, national origin, age, disability, or sex, you can file a grievance with the U.S. Department of Health and Human Services, Office for Civil Rights, electronically through the Office for Civil Rights Complaint Portal (https://ocrportal.hhs.gov/ocr/portal/lobby.jsf), or by mail or phone at:

U.S. Department of Health and Human Services
200 Independence Avenue, SW
Room 509F, HHH Building
Washington, D.C. 20201
1-800-368-1019, 800-537-7697 (TDD)

Complaint forms are available at http://www.hhs.gov/ocr/office/file/index.html.

## DAB Language Access Services:

**Español (Spanish)**
ATENCIÓN: si habla español, tiene a su disposición servicios gratuitos de asistencia lingüística. Llame al 1-202-565-0200.

**繁體中文 (Chinese)**

注意：如果您使用繁體中文，您可以免費獲得語言援助服務。請致電 1-202-565-0200。

**Tiếng Việt (Vietnamese)**
CHÚ Ý: Nếu bạn nói Tiếng Việt, có các dịch vụ hỗ trợ ngôn ngữ miễn phí dành cho bạn. Gọi số 1-202-565-0200.

**한국어 (Korean)**
주의: 한국어를 사용하시는 경우, 언어 지원 서비스를 무료로 이용하실 수 있습니다. 1-202-565-0200 번으로 전화해 주십시오.

**Tagalog (Tagalog – Filipino)**
PAUNAWA: Kung nagsasalita ka ng Tagalog, maaari kang gumamit ng mga serbisyo ng tulong sa wika nang walang bayad. Tumawag sa 1-202-565-0200.

**Русский (Russian)**
ВНИМАНИЕ: Если вы говорите на русском языке, то вам доступны бесплатные услуги перевода. Звоните 1-202-565-0200.

**العربية (Arabic)**
ملحوظة: اذا كنت تتحدث اذكر اللغة، فإن خدمات المساعدة اللغوية تتوافر لك بالمجان. اتصل برقم 1-202-565-0200 (رقم هاتف الصم والبكم: .

**Kreyòl Ayisyen (French Creole)**
ATANSYON: Si w pale Kreyòl Ayisyen, gen sèvis èd pou lang ki disponib gratis pou ou. Rele 1-202-565-0200.

**Français (French)**
ATTENTION : Si vous parlez français, des services d'aide linguistique vous sont proposés gratuitement. Appelez le 1-202-565-0200.

**Polski (Polish)**
UWAGA: Jeżeli mówisz po polsku, możesz skorzystać z bezpłatnej pomocy językowej. Zadzwoń pod numer 1-202-565-0200.

**Português (Portuguese)**
ATENÇÃO: Se fala português, encontram-se disponíveis serviços linguísticos, grátis. Ligue para 1-202-565-0200.

**Italiano (Italian)**
ATTENZIONE: In caso la lingua parlata sia l'italiano, sono disponibili servizi di assistenza linguistica gratuiti. Chiamare il numero 1-202-565-0200.

**Deutsch (German)**
ACHTUNG: Wenn Sie Deutsch sprechen, stehen Ihnen kostenlos sprachliche Hilfsdienstleistungen zur Verfügung. Rufnummer: 1-202-565-0200.

**日本語 (Japanese)**
注意事項：日本語を話される場合、無料の言語支援をご利用いただけます。1-202-565-0200 まで、お電話にてご連絡ください。

**فارسی (Farsi)**
**توجه:** اگر به زبان فارسی گفتگو می کنید، تسهیلات زبانی بصورت رایگان برای شما فراهم می باشد. با 1-202-565-0200 تماس بگیرید.