# Complaint Exhibit 35

DEPARTMENT OF
HEALTH & HUMAN SERVICES

DEPARTMENTAL APPEALS BOARD
**MEDICARE APPEALS COUNCIL, MS 6127**
330 INDEPENDENCE AVENUE, S.W.
ROOM G-644, COHEN BUILDING
WASHINGTON, DC 20201

FIRST-CLASS

US OFFICIAL MAIL PENALTY FOR PRIVATE USE $300
US POSTAGE PITNEY BOWES
ZIP 20237 $ 001.32⁰
02 7W
0000057112 DEC 15 2025

[redacted]

**DEPARTMENT OF HEALTH & HUMAN SERVICES** Office of the Secretary

Departmental Appeals Board, MS 6127
Medicare Appeals Council
330 Independence Avenue
Cohen Building, Room G-644
Washington, DC 20201
(202)565-0100/Toll Free:1-866-365-8204

Docket Number: M-25-533
OMHA Appeal Number: 3-13871478037R1

[redacted]

NOTICE OF DECISION OF MEDICARE APPEALS COUNCIL

What This Notice Means

Enclosed is a copy of the decision of the Medicare Appeals Council. If you have any questions, you may contact the Centers for Medicare & Medicaid Services regional office or the local Medicare contractor.

Your Right to Court Review

If you desire court review of the Council's decision, you may commence a civil action by filing a complaint in the United States District Court for the judicial district in which you reside or have your principal place of business. *See* Social Security Act § 1869(b); 42 U.S.C. § 1395ff(b). For calendar year 2025, the minimum amount in controversy required for judicial review is $1,900 (or $1,960 or more for civil actions filed on or after January 1, 2026). *See* 89 Fed. Reg. 79294 (Sept. 27, 2024); 90 Fed. Reg. 55869 (Dec. 4, 2025). Your complaint must be filed within sixty days after the date this letter is received. 42 C.F.R. § 405.1130. It will be presumed that this letter is received within five days after the date indicated below unless a reasonable showing to the contrary is made. *Id.* § 405.1136.

If you cannot file your complaint within sixty days, you may ask the Council to extend the time in which you may begin a civil action. However, the Council will only extend the time if you provide a good reason for not meeting the deadline. Your reason must be set forth clearly in your request. 42 C.F.R. § 405.1134.

If a civil action is commenced, the complaint should name the Secretary of Health and Human Services as the defendant and should include the Council's docket number and ALJ appeal number shown at the top of this notice. 42 C.F.R. § 405.1136(d). The Secretary must be served by sending a copy of the summons and complaint by registered or certified mail to the General Counsel, Department of Health and Human Services, 200 Independence Avenue, S.W., Washington, D.C. 20201. In addition, you must serve the United States Attorney for the district in which you file your complaint and the Attorney General of the United States. *See* rules 4(c) and (i) of the Federal Rules of Civil Procedure and 45 C.F.R. § 4.1.

This notice and enclosed order were mailed on December 15, 2025.

Enclosure

cc: Beneficiary
[redacted]

DEPARTMENT OF HEALTH AND HUMAN SERVICES
DEPARTMENTAL APPEALS BOARD
**Medicare Appeals Council**
**Docket No. M-25-533**

[redacted]
OMHA Appeal No. 3-13871478037R1

## DECISION

The Administrative Law Judge (ALJ) issued a decision dated November 8, 2024, concerning Medicare Part B coverage of 448 units of dual-layer Impax membrane, per square centimeter (Healthcare Common Procedure Coding System Q4262) that the appellant-supplier (appellant) furnished to the beneficiary on May 19, 2023, and May 24, 2023. The ALJ concluded that Medicare did not cover the Impax membrane allograft because it was not medically reasonable and necessary. The ALJ further determined that the appellant was liable for the non-covered costs under § 1879 of the Social Security Act (Act) and not entitled to waiver of the overpayment under § 1870 of the Act.

The appellant has filed a request for review, seeking Medicare Appeals Council (Council) review of the ALJ's decision. The Council enters the request for review into the administrative record as Exhibit (Exh.) MAC-1 and the appellant's supplemental letter received December 3, 2024, as Exh. MAC-2. We enter the Council's interim correspondence dated March 21, 2025, and the appellant's supplemental response received April 29, 2025, as Exh. MAC-3 and Exh. MAC-4, respectively. We also enter the Council's interim correspondence dated May 28, 2025, and the appellant's response dated June 2, 2025, into the record as Exh. MAC-5 and Exh. MAC-6, respectively.

With its request for review and supplemental letters, the appellant also submitted new evidence, including copies of favorable ALJ decisions from other appeals that were issued after the ALJ decision at issue in this appeal and copies of superseded Local Coverage Determination (LCD) L36466 and Policy Article A56696. The Council finds good cause for the admission of the recent favorable ALJ decisions and enters them into the administrative record as Exh. MAC-7. *See* 42 C.F.R. § 405.1122(c)(1). We find that the LCD and Policy Article are CMS guidance documents, rather than substantive evidence, and need not admit them as evidence. The appellant also submitted copies of other documents that are already included in the administrative record, and we do not admit these duplicate copies as new evidence. For identification purposes, we admit all excluded documents as Exh. MAC-8 (excluded).

For the reasons explained below, we modify the ALJ's decision to clarify the basis for denial. We find that Medicare does not cover the Impax membrane allograft and that the appellant is liable for the non-covered costs and responsible for the overpayment.

DISCUSSION

At issue in this case are claims for Medicare Part B coverage of 448 units of dual-layer Impax membrane (Impax membrane) furnished to the beneficiary on May 19, 2023, and May 24, 2023.[1] Exh. MAC-1; File 3 at 1, 8. The Medicare Administrative Contractor (MAC) initially paid the claims but subsequently assessed an overpayment. File 7 at 51–54.

On redetermination, the MAC upheld the denial of coverage, finding the documentation insufficient to support medical necessity. File 7 at 40–41 (citing Medicare Program Integrity Manual (MPIM), Centers for Medicare and Medicaid Services (CMS) Pub. 100-08, Ch. 3, § 3.6.2.2). On reconsideration, the Qualified Independent Contractor (QIC) denied coverage, finding the services not reasonable and necessary in accordance with Medicare Program Integrity Manual (MPIM), Ch. 3, § 3.6.2.2 and Act § 1862(a)(1)(A) because the submitted documentation was insufficient to support that Impax membrane was safe and effective when used as a wound covering to treat the beneficiary's condition. File 3 at 7–8. Specifically, the QIC found there was a lack of peer-reviewed, evidence-based literature to support the use of Impax membrane. *Id.* at 8.

Following a hearing, the ALJ issued an unfavorable decision finding that the services were not covered by Medicare. Decision (Dec.) at 1, 4–7. Specifically, the ALJ found that, in the absence of a National Coverage Determination (NCD) or LCD, the appellant was required to submit evidence demonstrating that Impax membrane was safe and effective, not experimental or investigational, and appropriate, as demonstrated by authoritative evidence of general acceptance by the medical community. *Id.* at 4–5 (citing MPIM, Ch. 13, §§ 13.5.1, 13.7.1). The ALJ found that the submitted evidence, including the medical literature in the record, did not establish that the services have been determined safe and effective, nor did the inclusion of HCPCS Q4262 on the physician fee schedule establish Medicare coverage. *Id.* at 5. Finally, the ALJ found that the appellant was liable for the non-covered services under § 1879 of the Act and not without fault in creating the overpayment under § 1870 of the Act. *Id.* at 6.

Before the Council, the appellant argues that the ALJ erred in denying coverage of the services at issue. Exh. MAC-1; Exh. MAC-2; Exh. MAC-4. The appellant argues that the ALJ's decision is inconsistent with other favorable decisions from other ALJs involving similar claims for Impax membrane for this and other beneficiaries. *Id.* The appellant asserts that, in the absence of an NCD or LCD for this jurisdiction, it is

[1] The appellant submitted multiple claims totaling 224 units of Impax on each date of service. *See* File 7 at 6–15.

appropriate to consider LCDs in other jurisdictions and highlights that other MACs have included Impax membrane as a covered benefit. Exh. MAC-1 (citing Policy Article A56696); Exh. MAC-2 (citing LCDs in effect in other jurisdictions and a retired LCD in this jurisdiction). The appellant also emphasizes that the retired LCD for this jurisdiction, L36466, stated that products may be considered reasonable and necessary if they are approved by the FDA or designated as Human Cells, Tissues, or Cellular and Tissue-Based Products (HCT/Ps) under § 361 of the Public Health Services Act and are used in accordance with the product's application guidelines. Exh. MAC-2.

Absent an applicable NCD, LCD, or policy manual guidance, as is the case here, contractors and adjudicators must make individual reasonable and necessary determinations by assessing whether the service is safe and effective, not experimental or investigational, and appropriate. MPIM, Ch. 3, §§ 3.3.3, 3.6.2.1–3.6.2.2 (Rev. 10365, Effective Aug. 27, 2020). Medicare defines "appropriate" to require, among other things, that the service be furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the beneficiary's condition or to improve the function of a malformed body member; that it is a service that meets, but does not exceed, the beneficiary's medical need; and that it is furnished in a setting appropriate to the beneficiary's medical needs and condition. *See id.* § 3.6.2.2.

The MPIM further states that, when developing an LCD, a MAC "shall use the available evidence of general acceptance by the medical community" including "published original research in peer-reviewed medical journals, systematic reviews and meta-analyses, evidence-based consensus statements and clinical guidelines." MPIM, Ch. 13, § 13.5.3 (Rev. 863, Effective Oct. 3, 2018). *See also id.* § 13.2.3 (noting that "[a]cceptance by individual health care providers, or even a limited group of health care providers, does not indicate general acceptance of the item or service by the medical community"). While the aforementioned MPIM provisions constitute guidance for contractors determining medical reasonableness and necessity in developing an LCD, they necessarily apply to adjudicators, including ALJs and the Council, reviewing the contractor's medical reasonableness and necessity determination in the absence of an applicable NCD or LCD. The manual provisions treat the underlying peer-reviewed medical literature as an inherent part of evaluating whether an item or service is reasonable and necessary, including whether it is safe, effective, appropriate, and not experimental or investigational. *See* MPIM, Ch. 3, § 3.6.2.2; 42 C.F.R. § 405.1046(a) (noting that the ALJ's decision should include "a summary of any clinical or scientific evidence used in making the determination"); *see also* MPIM, Ch. 13, §§ 13.2.3, 13.5.3, 13.5.4; Medicare Claims Processing Manual (MCPM), CMS Pub. 100-04, Ch. 30, § 30.2.3 (providing that contractors will consider peer-reviewed medical literature in determining what "accepted standards of practice" exist in the medical community).

All statutes and regulations pertaining to the Medicare program are binding on ALJs, attorney adjudicators, and the Council. 42 C.F.R. § 405.1063(a). While not bound by the

MPIM guidance, ALJs and the Council must give the MPIM substantial deference if it is applicable to a particular case. *Id.* § 405.1062(a). If an ALJ or the Council declines to follow MPIM guidance, the decision must explain the reasons why the ALJ or the Council departed from the MPIM, and it does not have precedential effect. *Id.* § 405.1062(b).

After careful review, we agree with the ALJ that the evidence in the record does not support that Impax membrane was medically reasonable and necessary. However, we modify the ALJ's decision to clarify that the coverage denial is based on the MPIM Ch. 3 analysis outlined above and our application of those guidelines to the record evidence. *See* MPIM, Ch. 3, § 3.6.2.2; *see also* MPIM, Ch. 13, §§ 13.2.3, 13.5.3–13.5.4.

As an initial matter, we acknowledge the appellant's references to medical literature articles cited in the bibliographies of LCDs that do not apply to this MAC's jurisdiction. *See* Exh. MAC-2; File 15 at 116–21. We clarify, however, that our review is limited to the evidence contained in the record, and we do not consider any literature that the appellant has not submitted as evidence. *See* 42 C.F.R. §§ 405.1108(a), 405.1122(a)(1), 405.1128(a); *see also* Act § 1833(e); 42 C.F.R. § 424.5(a)(6) (stating that the appellant has the burden to furnish sufficient information to demonstrate entitlement to Medicare payment).

The record in this case includes the following evidence that the appellant submitted in support of its claim for coverage of the services at issue: the beneficiary's medical records, excerpts of product information for Grafix PL Prime (a lyopreserved placental membrane) and Impax membrane, an excerpt from proposed LCD L35041, an email from the MAC, product invoices, and medical literature. File 7 at 22, 24–37, 56–219; File 15 at 1–4, 7–121. The medical literature submitted provides an overview of placental, amniotic membrane, and umbilical cord products, their efficacy when used for wound healing including when compared to the standard of care, and a comparison of different preservation techniques for these products, consisting of the following articles:

- Iveta Schmiedova et al., *Using of Amniotic Membrane Derivatives for the Treatment of Chronic Wounds*, Membranes (Nov. 29, 2021);
- Yasmine Mohammed, et al., *Human Amniotic Membrane Products for Patients with Diabetic Foot Ulcers. Do They Help? A Systematic Review and Meta-analysis*, 15 J. Foot Ankle Res. (Sept. 14, 2022);
- C.M. Zelen, ABSTRACT: *An Evaluation of Dehydrated Human Amniotic Membrane Allografts in Patients with DFUs*, 22 J. Wound Care No. 7 (Sept. 29, 2013);
- William V. Padula, PhD et al., MANUSCRIPT: *Comparative Effectiveness of Placental Allografts in the Treatment of Diabetic Lower Extremity Ulcers and Venous Leg Ulcers in U.S. Medicare Beneficiaries: A Retrospective Observational Cohort Study Using Real-World Evidence*;

- Lawrence A. Lavery, et al., MANUSCRIPT: *Randomized Clinical Trial to Compare Cryopreserved and Lyopreserved Umbilical Cord Tissue to Treat Complex Diabetic Foot Wounds: A Proof of Concept Study.*

File 15 at 10–121.

Based on our review of the record, we find that the submitted documentation does not demonstrate that Impax membrane was medically reasonable and necessary. Act § 1862(a)(1)(A). Without an applicable NCD or LCD, the MPIM clarifies that determining medical reasonableness and necessity depends on whether the treatment is safe and effective, not experimental or investigational, and appropriate. *See* MPIM, Ch. 3, § 3.6.2.2.

Applying the MPIM criteria, we find that the records submitted do not demonstrate that Impax membrane was a safe and effective treatment for the beneficiary. None of the submitted medical literature articles discuss Impax membrane at all, much less specifically for the treatment of chronic venous insufficiency ulcers. *See generally* File 15 at 10–121. For example, the Schmiedova et al. article provides a general overview of the use of amniotic membrane derivatives in various wound healing applications, but there is no mention of Impax membrane or its use in the treatment of the wounds at issue in this case. *Id.* at 54–75. Also, the Mohammad et al. article reviewed 11 existing studies that compared the use of other human amniotic membrane products (including Grafix, Grafix PL PRIME, AmnioBand, Stravix, and EpiFix) along with the standard of care versus standard of care alone for treating diabetic foot ulcers. File 15 at 79–97. However, it did not discuss Impax membrane, and the beneficiary in this case denied being diabetic. *Id.*; *see also* File 7 at 83.

The Zelen document highlights an 11-patient study involving the use of an unspecified dehydrated human amniotic membrane in the treatment of diabetic foot ulcers. File 15 at 76. However, the document submitted was only an abstract. *Id.* Without the full text of the Zelen document, we cannot ascertain whether this publication actually supports coverage. To the extent the appellant wished the Council to consider information within the document, the appellant should have provided the actual, published article for our consideration. *See* 42 C.F.R. § 424.5(a)(6).

Additionally, two of the articles submitted (the Padula et al. and Lavery et al. articles) were submitted in manuscript or draft format, and there is no indication in the record that these articles were accepted for publication and, if so, in what journal and when. *See* File 15 at 10–53, 98–115. Nonetheless, we have reviewed these articles and find that they do not demonstrate the safety and efficacy of Impax membrane, as required by the MPIM.

These articles review the use of different amniotic allografts and do not discuss or review the efficacy of Impax membrane. *Id.* at 10–53 (Padula et al. discussing Grafix Prime and

Grafix PL Prime), 98–115 (Lavery et al. discussing Stravix). We note, for instance, that the Padula et al. article highlights that "multiple [cellular tissue product] classes are available" and "[b]ecause of the inherent feature of the products, there is variability in [cellular tissue product] composition, tissue source, and preservation methods." File 15 at 16. Here, the appellant submitted only a portion of the product information for Impax membrane and has not submitted any literature that, for example, discusses the product specifications for Impax or compares it to the products reviewed in the submitted articles. *See generally* File 7, File 10, File 15. As a general matter, we are strained to find that evidentiary support for the use of one product can translate into evidentiary support for the use of another, different, product, especially when the submitted literature acknowledges the significance of variation between products and we have not been presented with complete evidence regarding the product at issue.

In addition to the submitted articles not addressing the product at issue, there are several limitations to them. For example, two of the articles acknowledged a small sample size for the studies discussed. File 15 at 76 (Zelen abstract noting that 11 patients were included in the study), 106 (Lavery et al. article acknowledging a small sample size of 40 patients). Three of the studies addressed the use of amniotic products to treat diabetic foot ulcers, but the medical record reflects that the beneficiary received Impax membrane to treat venous insufficiency ulcers and was not diabetic. *See* File 7 at 83–84, 87, 90; File 15 at 76–115. Several studies highlighted various other limitations, including study demographics, a lack of comparison to standard of care treatment, and a need for future research. *See* File 15 at 24–26, 92, 106 (Lavery et al. article noting that it was a pilot study).

The record also does not include sufficient evidence to demonstrate that Impax membrane is not "experimental or investigational," as defined in the MPIM. *See* MPIM, Ch. 3, § 3.6.2.2. We acknowledge the appellant's contention that Impax membrane is designated a § 361 HCT/P and its use should be considered reasonable and necessary if used in accordance with the product's application guidelines. *See* Exh. MAC-2 (citing retired LCD L36466). However, the regulations state that "CMS *may consider* for Medicare coverage" FDA-approved devices "that have been categorized as . . . Nonexperimental/investigational." 42 C.F.R. § 405.201(a)(2) (emphasis added). The regulations further clarify that CMS uses FDA categorization "as a factor in making Medicare coverage decisions." *Id.* § 405.201(a)(1). Thus, under Medicare regulations, FDA approval or categorization alone is not determinative of Medicare coverage. Accordingly, the fact that Impax membrane meets (or does not meet) criteria for regulation as a § 361 HCT/P is a factor that we consider, but it does not determine Medicare coverage.

Additionally, as mentioned above, none of the submitted medical literature discusses Impax membrane or its use for the treatment of venous insufficiency ulcers. *See generally* File 15 at 10–121. Those articles, some of which were submitted in draft form,

discussed other products, mostly for treatment of diabetic foot ulcers, and acknowledged a need for future studies with larger sample sizes and comparison to standard of care wound treatment. *Id.* Thus, we find that the record does not include sufficient evidence to demonstrate that Impax membrane is not experimental or investigational. *See* MPIM, Ch. 3, § 3.6.2.2; *see also* MPIM, Ch. 13, § 13.5.3-13.5.4.

We further find that the record does not include evidence to support that Impax membrane was "appropriate" for the treatment of the beneficiary's condition, as defined in the MPIM. As previously stated, none of the medical literature submitted addressed the use of Impax membrane at all. *See generally* File 15 at 10–121. There was no evidence submitted to support that the use of Impax membrane here was in accordance with accepted standards of medical practice for the treatment of venous insufficiency wounds. *Id.* Nor has the appellant demonstrated that the application of Impax membrane for this beneficiary, within a month of placement of a different amniotic allograft, was in accordance with accepted standards of medical practice and met but did not exceed the beneficiary's medical need. *See* File 7 at 84, 87, 218–19; *see* MPIM, Ch. 3, § 3.6.2.2. The record does not demonstrate that the use of Impax membrane is generally accepted by the medical community for the treatment of the beneficiary's condition, that it met but did not exceed the beneficiary's medical need, and that it was at least as beneficial as existing and available medically appropriate alternatives. *See* MPIM, Ch. 3, § 3.6.2.2; *see also* MPIM, Ch. 13, § 13.5.4. As such, the record does not demonstrate that Impax membrane was appropriate for this beneficiary.

The appellant's remaining contentions do not alter our conclusion. We acknowledge the appellant's contention that other MACs have issued LCDs that provide coverage guidelines for skin substitutes under certain circumstances, including retired LCD L36466, which was in effect for the MAC for this jurisdiction but retired prior to the dates of service. *See* Exh. MAC-1; Exh. MAC-2; LCD L36466 (retired Jan. 1, 2019). However, LCDs are determinations of whether a particular item or service is medically reasonable and necessary that are effective on a MAC-wide basis. *See* Act § 1869(f)(2)(B). Each LCD contains specific coverage limitations, conditions, and documentation requirements, which we do not analyze here, that must be satisfied for a particular product to be considered medically reasonable and necessary under the LCD.

It is undisputed that there were no applicable LCDs (or NCDs) for the jurisdiction at issue in this appeal on the dates of service at issue. *See, e.g.*, Exh. MAC-1; Exh. MAC-2; Dec.; File 1 at 14–15, 19. In the absence of an LCD, NCD, or other Medicare coverage policy, the record must demonstrate that the MPIM criteria are met. MPIM, Ch. 3, §§ 3.3.3, 3.6.2.2. Here, as set forth in our discussion above, we find that the appellant has not met its burden of demonstrating that Impax membrane was reasonable and necessary in accordance with the MPIM.

We are also unpersuaded by the appellant's assertion that its receipt of favorable

decisions from other ALJs regarding coverage of Impax membrane for this or any other beneficiary warrants a favorable determination in this case. *See* Exh. MAC-1; Exh. MAC-2; Exh. MAC-4; Exh. MAC-7. The fact that other ALJs may have decided in the appellant's favor is irrelevant because ALJ decisions are not precedential and are not binding at the Council's subsequent level of appellate review. *See, e.g., Almy v. Sebelius*, 679 F.3d 297, 310 (4th Cir. 2012) ("[I]t is undisputed that these lower-level decisions are not precedential and not binding on the [Council]. . . . [T]here is no authority for the proposition that a lower component of a government agency may bind the decision making of the highest level.") (internal citations omitted); *Christenson v. Azar*, No. 20-C-194, 2020 WL 3642315 at 5 (E.D. Wis. July 6, 2020) ("Medicare regulations reveal an administrative review structure incompatible with applying collateral estoppel at the agency level."). ALJs and the Council consider each claim individually and conduct *de novo* consideration of the facts and laws based on the record developed for the claim at issue. 42 C.F.R. §§ 405.1000(d), 405.1100(c). Thus, our decision is not influenced by any prior ALJ determinations. Rather, the decision is based solely on the MPIM analysis described above and our application of those guidelines to the record evidence in this case.

Based on the foregoing, in accordance with the standards set forth in the MPIM, the Council concludes that the appellant has not demonstrated that the services were medically reasonable and necessary under the applicable manual requirements, which is necessary to support coverage. 42 C.F.R. § 424.5(a)(6). Therefore, Medicare Part B does not cover the 448 units of Impax membrane at issue.

Regarding liability, the appellant has not raised any exception to the ALJ's conclusion that it, and not the beneficiary, is liable for the non-covered costs under § 1879. *See* Exh. MAC-1; Exh. MAC-2; Exh. MAC-4; Exh. MAC-6; Dec. at 6. Nor has the appellant raised any exceptions to the ALJ's conclusion that it is not entitled to waiver of the overpayment under § 1870. *See* Exh. MAC-1; Exh. MAC-2; Exh. MAC-4; Exh. MAC-6; Dec. at 6. Thus, the Council does not disturb the ALJ's findings, and the appellant remains liable for the non-covered costs and responsible for the overpayment. 42 C.F.R. § 405.1112(c).

(Continued on next page.)

DECISION

The Council modifies the ALJ's decision, consistent with the analysis above. Medicare does not cover the dual-layer Impax membrane, per square centimeter (HCPCS Q4262) furnished to the beneficiary on May 19, 2023, and May 24, 2023. The appellant remains liable for the non-covered charges and is responsible for the overpayment.

**MEDICARE APPEALS COUNCIL**

Cherise V. Neville
Administrative Appeals Judge

Cecilia Traini
Administrative Appeals Judge

Date: December 15, 2025

DEPARTMENT OF HEALTH & HUMAN SERVICES Office of the Secretary

Departmental Appeals Board
Room G-644, MS 6127
330 Independence Avenue S.W.
Washington, DC 20201

# Nondiscrimination Notice

The Departmental Appeals Board (DAB) complies with applicable Federal civil rights laws and does not discriminate based on race, color, national origin, age, disability, or sex. The DAB does not exclude people or treat them differently because of race, color, national origin, age, disability, or sex.

The DAB provides free aids and services to people with disabilities to communicate effectively with us, such as:

- Qualified sign language interpreters
- Written information in other formats (large print, audio, accessible electronic formats, other formats)

The DAB also provides free language services to people whose primary language is not English, such as:

- Qualified interpreters
- Information written in other languages

If you need these services, contact the DAB Administration Division at (202) 565-0200 or DABAdministrationDivision@hhs.gov.

If you believe the DAB has failed to provide these services or discriminated in another way on the basis of race, color, national origin, age, disability, or sex, you can file a grievance with the U.S. Department of Health and Human Services, Office for Civil Rights, electronically through the Office for Civil Rights Complaint Portal (https://ocrportal.hhs.gov/ocr/portal/lobby.jsf), or by mail or phone at:

U.S. Department of Health and Human Services
200 Independence Avenue, SW
Room 509F, HHH Building
Washington, D.C. 20201
1-800-368-1019, 800-537-7697 (TDD)

Complaint forms are available at http://www.hhs.gov/ocr/office/file/index.html.

## DAB Language Access Services:

**Español (Spanish)**
ATENCIÓN: si habla español, tiene a su disposición servicios gratuitos de asistencia lingüística. Llame al 1-202-565-0200.

**繁體中文 (Chinese)**

注意：如果您使用繁體中文，您可以免費獲得語言援助服務。請致電 1-202-565-0200。

**Tiếng Việt (Vietnamese)**
CHÚ Ý: Nếu bạn nói Tiếng Việt, có các dịch vụ hỗ trợ ngôn ngữ miễn phí dành cho bạn. Gọi số 1-202-565-0200.

**한국어 (Korean)**

주의: 한국어를 사용하시는 경우, 언어 지원 서비스를 무료로 이용하실 수 있습니다. 1-202-565-0200 번으로 전화해 주십시오.

**Tagalog (Tagalog – Filipino)**

PAUNAWA: Kung nagsasalita ka ng Tagalog, maaari kang gumamit ng mga serbisyo ng tulong sa wika nang walang bayad. Tumawag sa 1-202-565-0200.

**Русский (Russian)**

ВНИМАНИЕ: Если вы говорите на русском языке, то вам доступны бесплатные услуги перевода. Звоните 1-202-565-0200.

**العربية (Arabic)**

والبكم: . ملحوظة: إذا كنت تتحدث اذكر اللغة، فإن خدمات المساعدة اللغوية تتوافر لك بالمجان. اتصل برقم 1-202-565-0200 (رقم هاتف الصم

**Kreyòl Ayisyen (French Creole)**

ATANSYON: Si w pale Kreyòl Ayisyen, gen sèvis èd pou lang ki disponib gratis pou ou. Rele 1-202-565-0200.

**Français (French)**

ATTENTION : Si vous parlez français, des services d'aide linguistique vous sont proposés gratuitement. Appelez le 1-202-565-0200.

**Polski (Polish)**

UWAGA: Jeżeli mówisz po polsku, możesz skorzystać z bezpłatnej pomocy językowej. Zadzwoń pod numer 1-202-565-0200.

**Português (Portuguese)**

ATENÇÃO: Se fala português, encontram-se disponíveis serviços linguísticos, grátis. Ligue para 1-202-565-0200.

**Italiano (Italian)**

ATTENZIONE: In caso la lingua parlata sia l'italiano, sono disponibili servizi di assistenza linguistica gratuiti. Chiamare il numero 1-202-565-0200.

**Deutsch (German)**

ACHTUNG: Wenn Sie Deutsch sprechen, stehen Ihnen kostenlos sprachliche Hilfsdienstleistungen zur Verfügung. Rufnummer: 1-202-565-0200.

**日本語 (Japanese)**

注意事項：日本語を話される場合、無料の言語支援をご利用いただけます。1-202-565-0200 まで、お電話にてご連絡ください。

**فارسی (Farsi)**

**توجه:** اگر به زبان فارسی گفتگو می کنید، تسهیلات زبانی بصورت رایگان برای شما فراهم می باشد. با 1-202-565-0200 تماس بگیرید.