IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

CHRIS MCGEE, *et al.*,

Plaintiffs,

v.

ROBERT F. KENNEDY, JR., *et al.*,

Defendants.

Civil Action No. 4:26-CV-243-O

# DEFENDANTS' MOTION TO DISMISS

RYAN RAYBOULD
UNITED STATES ATTORNEY

Brian Stoltz
Assistant United States Attorney
Texas Bar No.
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8626
Facsimile: 214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants

# Table of Contents

I. Introduction ..... 1

II. Background ..... 3

A. The Medicare Program ..... 3

B. Administrative and Judicial Review ..... 4

C. Plaintiffs' Lawsuit ..... 6

III. Legal Standards ..... 8

IV. Argument and Authorities ..... 9

A. Plaintiffs fail to establish jurisdiction for their unpresented and unexhausted claims ..... 9

1. Plaintiffs' unexhausted claims should be dismissed. ..... 10

2. Plaintiffs' cursory allegations of futility are legally insufficient. ..... 12

3. Plaintiffs have not administratively presented their claim that the Secretary applies an unlawful "Clawback Policy." ..... 14

B. Venue is improper in this Court for the remaining claims. ..... 17

V. Conclusion ..... 19

## Table of Authorities

Cases

*Action All. of Senior Citizens v. Leavitt*,
483 F.3d 852 (D.C. Cir. 2007) .......... 16

*Affiliated Pro. Home Health Care Agency v. Shalala*,
164 F.3d 282 (5th Cir. 1999) .......... 9

*Am. Hosp. Ass'n v. Azar*,
895 F.3d 822 (D.C. Cir. 2018) .......... 15

*Associated Gen. Contractors of Am., Inc. v. Fed. Acquisition Reg. Council*,
720 F. Supp. 3d 461 (W.D. La. 2024) .......... 18

*Baylor All Saints Med. Ctr. v. Kennedy*,
161 F.4th 298 (5th Cir. 2025) .......... 16

*CAMPs Initiative v. U.S. Dep't Health & Hum. Servs.*,
No. 4:26-CV-99-O (N.D. Tex. Mar. 12, 2026) .......... 12

*Double Eagle Energy Servs., L.L.C. v. MarkWest Utica EMG, L.L.C.*,
936 F.3d 260 (5th Cir. 2019) .......... 11

*Ga. Republican Party v. SEC*,
888 F.3d 1198 (11th Cir. 2018) .......... 18

*Grupo Dataflux v. Atlas Glob. Grp., L.P.*,
541 U.S. 567 (2004) .......... 11

*Haro v. Sebelius*,
747 F.3d 1099 (9th Cir. 2014) .......... 16

*Heckler v. Ringer*,
466 U.S. 602 (1984) .......... 3, 10

*Humana Inc. v. U.S. Dep't Health & Hum. Servs.*,
No. 4:24-CV-1004-O (N.D. Tex. July 18, 2025) .......... 11

*Int'l Truck & Engine Corp. v. Quintana*,
259 F. Supp. 2d 553 (N.D. Tex. 2003) .......... 8

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) .......... 8

*Medwin Fam. Med. & Rehab., P.L.L.C. v. Burwell*,
No. 1:15-CV-151, 2017 WL 685696 (S.D. Tex. Jan. 31, 2017) ............................ 17

*Medwin Fam. Med. & Rehab., P.L.L.C. v. Burwell*,
No. 1:15-CV-151 2017 WL 680689 (S.D. Tex. Feb. 21, 2017) ............................ 17

*Palm Valley Health Care, Inc. v. Azar*,
947 F.3d 321 (5th Cir. 2020) ............................................................ 16, 17

*Physician Hosps. of Am. v. Sebelius*,
691 F.3d 649 (5th Cir. 2012) ............................................................ 12

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001) ............................................................ 8

*Reuben H. Donnelly Corp. v. F.T.C.*,
580 F.2d 264 (7th Cir. 1978) ............................................................ 18

*Shalala v. Ill. Council on Long Term Care, Inc.*,
529 U.S. 1 (2000) ............................................................ 6, 10, 13, 14, 15, 17

*StimLabs, LLC v. Becerra*,
636 F. Supp. 3d 165 (D.D.C. 2022) ............................................................ 15

*Weinberger v. Salfi*,
422 U.S. 749 (1975) ............................................................ 10

*Your Home Visiting Nurse Servs. v. Shalala*,
525 U.S. 449 (1999) ............................................................ 10

Statutes and Regulations

28 U.S.C. § 1391(e) ............................................................ 18

42 C.F.R. § 405.940 ............................................................ 4

42 C.F.R. § 405.946 ............................................................ 4

42 C.F.R. § 405.960 ............................................................ 4

42 C.F.R. § 405.966 ............................................................ 4

42 C.F.R. § 405.1000 ............................................................ 5

42 C.F.R. § 405.1028 ............................................................ 5

42 C.F.R. § 405.1037 .......... 5

42 C.F.R. § 405.1122 .......... 5

42 C.F.R. § 405.1128 .......... 5

42 C.F.R. § 405.1132 .......... 14

42 U.S.C. § 405(g) .......... 5

42 U.S.C. § 405(h) .......... 5, 10

42 U.S.C. § 1395y(a)(1)(A) .......... 1

42 U.S.C. § 1395ff(a)(1)(A) .......... 3

42 U.S.C. § 1395ff(a)(1)(B) .......... 3

42 U.S.C. § 1395ff(a)(3) .......... 4

42 U.S.C. § 1395ff(b) .......... 4

42 U.S.C. § 1395ff(b)(1)(A) .......... 5, 9

42 U.S.C. § 1395ff(c) .......... 4

42 U.S.C. § 1395ff(c)(3)(A) .......... 4

42 U.S.C. § 1395ff(c)(3)(E) .......... 4

42 U.S.C. § 1395ff(d)(1) .......... 5

42 U.S.C. § 1395ff(d)(2) .......... 5

42 U.S.C. § 1395ff(d)(3) .......... 5

42 U.S.C. § 1395ii .......... 6

42 U.S.C. § 1395ddd .......... 4

## I. Introduction

The Medicare program covers only health care services and related items that are "reasonable and necessary for the diagnosis or treatment of an illness or injury or to improve the functioning of a malformed body member." 42 U.S.C. § 1395y(a)(1)(A). Federal contractors apply this standard in the first instance when making coverage and payment determinations for individual beneficiaries. The Medicare statute then establishes an administrative appeals process under which subsequent reviewers, including administrative law judges (ALJs) and the Medicare Appeals Council, can determine whether coverage of a particular item or service for a particular beneficiary was statutorily appropriate. This administrative appeals process culminates in a final decision by the Secretary of Health and Human Services (HHS). By statute, only that final decision is judicially reviewable.

Plaintiffs in this putative class action are nine Medicare Part B suppliers who provide "skin substitute" products to Medicare beneficiaries. They allege that Defendants have engaged in an "illegal and coordinated scheme" to "eradicate an industry," that may cause Medicare beneficiaries to suffer "amputations and death," First Am. Class Action Compl. for Declaratory & Inj. Relief ("Am. Compl."), Doc. 25, ¶ 1, because the Medicare program has found that some claims involving some products were not reasonable and necessary for the treatment of some beneficiaries. They allege that they filed their lawsuit to "uphold the rule of law and stop" what they deem "this illegal Clawback Policy." *Id.* ¶ 4.

Plaintiffs ask this Court to allow them to bypass the statutorily mandated review

process simply because they believe the Secretary is unlikely to agree with them. But federal courts lack jurisdiction over unpresented and unexhausted claims arising out of the Medicare program, and bare allegations that the administrative process will not result in a favorable decision do not satisfy any exception to that rule. Plaintiffs concede that all but three of them failed to exhaust their administrative remedies. The Plaintiffs with these unexhausted claims should therefore all be dismissed from this case.

Dismissal of those Plaintiffs with unexhausted claims also shows venue to be improper. Plaintiffs' venue allegations depend entirely on the admittedly unexhausted administrative appeals of a single Plaintiff, Dr. Chris McGee. Because Plaintiffs fail to show that jurisdiction exists for Dr. McGee's claims, venue in this district is improper and any remaining claims in this case should be dismissed for lack of venue (or, in the alternative, transferred to a district of proper venue).

Defendants also note one additional jurisdictional defect present in this case. Even though three Plaintiffs have exhausted the administrative process to obtain final decisions that are now subject to judicial review, these Plaintiffs have not shown that they presented the agency with the specific "Clawback Policy" arguments that they now raise in this Court. But Plaintiffs were required to present this kind of issue administratively, thereby affording the agency an opportunity to address or correct the alleged error, before it can properly be subject to judicial review. Thus, while three Plaintiffs may have a right to obtain some judicial review of the final decisions on their claims, that review would be limited to the issues actually raised in the administrative process and jurisdiction would not exist to review previously unpresented claims about the alleged "Clawback Policy."

## II. Background

### A. The Medicare Program

Title XVIII of the Social Security Act, commonly known as the Medicare statute, establishes a program of health insurance for the elderly and disabled. Medicare Part A pays for inpatient hospital services and other institutional care, while Medicare Part B is a supplementary program that covers non-institutional medical and other health-care services, including physicians' services, durable medical equipment, and supplies. Medicare is administered by the Centers for Medicare & Medicaid Services (CMS), which works with and through private contractors known as Medicare Administrative Contractors (MACs).

Congress did not define every item or service covered by Medicare. Instead, it delegated to the Secretary broad authority to determine whether services are "reasonable and necessary" under § 1395y(a)(1)(A). *See* 42 U.S.C. § 1395ff(a)(1)(A)–(B) ("The Secretary shall . . . make initial determinations with respect to benefits under part A or part B" regarding "whether an individual is entitled to benefits" for particular services and "the amount of benefits available."); *see also Heckler v. Ringer*, 466 U.S. 602, 617 (1984). The Secretary implements the coverage standard through a range of mechanisms, including regulations, so-called National Coverage Determinations and Local Coverage Determinations,[1] and claim-by-claim review.

[1] National Coverage Determinations are binding throughout the administrative process, but Local Coverage Determinations are not binding on ALJs or the Medicare Appeals Council.

Congress also expressly authorized the Secretary to audit claims, identify overpayments, and recoup improperly paid funds—work that is often performed with the assistance of recovery audit contractors and unified program integrity contractors. *See* 42 U.S.C. § 1395ddd. When a contractor identifies an improper payment, it issues a notice to the provider that explains its full administrative appeal rights, including opportunities to halt recoupment temporarily through administrative review requests. Any challenge to the contractor's determination or recoupment must then proceed through that administrative process before judicial review is available.

## B. Administrative and Judicial Review

This case arises squarely within that administrative review framework, which is a four-step process:

First, a provider may request a redetermination from the first-line Medicare contractor. 42 U.S.C. § 1395ff(a)(3); 42 C.F.R. § 405.940. As part of this request, the provider may offer additional arguments and evidence on the disputed issue. 42 C.F.R. § 405.946.

Second, after that redetermination, the provider may request reconsideration. 42 U.S.C. § 1395ff(b), (c); 42 C.F.R. § 405.960. At this stage, the provider has another opportunity to offer more arguments and evidence. 42 C.F.R. § 405.966. Reconsideration is conducted by a different, independent contractor—a separate private entity with "sufficient medical, legal, and other expertise" to review claims. 42 U.S.C. § 1395ff(c)(3)(A). In reaching a decision, the independent contractor also issues "a detailed explanation of the decision." *Id.* § 1395ff(c)(3)(E).

Third, after reconsideration, the provider may request a hearing before an HHS ALJ. 42 U.S.C. § 1395ff(b)(1)(A), (d)(1); 42 C.F.R. § 405.1000. Unlike at earlier levels of review, there is no automatic right for the provider to submit new evidence or otherwise develop the factual record before the ALJ. *See* 42 C.F.R. §§ 405.1028, 405.1037 (requiring good cause for new evidence and outlining when discovery may occur).

Fourth, after an ALJ decision, or if the ALJ does not reach a decision within 90 days, the provider may request review from HHS's Medicare Appeals Council. 42 U.S.C. §§ 1395ff(b)(1)(A), (d)(2), (d)(3); 42 C.F.R. § 405.1100. The Council generally considers the record that was before the ALJ (although certain circumstances allow for supplementation) and issues its own decision. *See* 42 C.F.R. §§ 405.1122, 405.1128. The Council's decision is generally "the Secretary's final decision" on the provider's claim. 42 U.S.C. § 1395ff(b)(1)(A).

Finally, the provider may request "judicial review of the Secretary's final decision" in district court.[2] 42 U.S.C. § 1395ff(b)(1)(A) (incorporating 42 U.S.C. § 405(g)). Judicial review is also available if, after a request for review by the Council, the Council does not reach a decision within 90 days. *Id.* § 1395ff(d)(3).

The Medicare statute bars other forms of judicial review by providing that "[n]o findings of fact or decision" of the Secretary "shall be reviewed by any person, tribunal, or governmental agency except as herein provided." 42 U.S.C. § 405(h) (made

---

[2] In some instances, the ALJ's decision is the Secretary's final decision that is subject to judicial review.

applicable to Medicare by 42 U.S.C. § 1395ii). Outside of this scheme, "[n]o action against the United States, the [Secretary], or any officer or employee thereof shall be brought under [28 U.S.C. §§ 1331 or 1346] to recover on any claim arising under" the Medicare statute. *Id.*; *see also Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 5 (2000) (explaining that the Medicare statute creates a "special review channel" that must be followed and that bars federal question jurisdiction).

**C. Plaintiffs' Lawsuit**

Plaintiffs filed suit in this Court, not to specifically challenge any particular final agency decision, but instead based on a claim that the Secretary has engaged in a "Clawback Policy," which they define as a "retroactive recoupment program in which Defendants' agents now claim, without any factual basis, that skin substitute products are 'investigational' or 'experimental.'" Am. Compl., Doc. 25, ¶ 15. Plaintiffs allege that the Secretary is assisted in this by Medicare contractors who may audit paid claims for skin substitute products and find that they should not have been covered by Medicare. Am. Compl., Doc. 25, ¶¶ 14, 31.

Although the original complaint included five Plaintiffs, only one—Dr. McGee—resided in the Northern District of Texas. *See* Class Action Compl. For Declaratory & Inj. Relief, ("Compl."), Doc. 1, ¶ 33 (Plaintiff Brian Loder, DPM is a resident of Michigan); ¶ 34 (Plaintiff Healthcare Housecalls LLC is located in Florida); ¶ 35 (Plaintiff Indy Wound Center is located in Indiana); ¶ 46 (asserting venue was proper because Plaintiff McGee resides in this judicial district); *see* Pls.' Ex. 18, Doc. 25-18, at 2 (giving a McAllen, Texas address for Plaintiff April Lopez, FNP-BC, LLC).

Plaintiffs amended their Complaint on May 8, 2026, adding four new Plaintiffs, none of whom reside in this judicial district. *See* Am. Compl., Doc. 25, ¶ 38 (Plaintiff Wyoming Medical Associates, LLC is located in Gillette, Wyoming); ¶ 39 (Plaintiff Wound Management Specialists, LLC is located in Flowood, Mississippi); ¶ 43 (Plaintiff Integrated Wound Care Connecticut PLLC is located in Connecticut); ¶ 44 (Plaintiff Carlo Domingo, AGNP-C is based in Batavia, Illinois). Thus, like the original Complaint, the Amended Complaint bases venue solely on the allegation that Dr. McGee resides in this district. Am. Compl., Doc. 25, ¶ 55.

Six Plaintiffs—McGee, Loder, Healthcare Housecalls, Indy Wound Center, IWC CT, and Domingo—concede that they have not exhausted the administrative remedies available through the Medicare appeals process, and therefore have not obtained a final decision from the Secretary that is subject to judicial review. *See* Am. Compl., Doc. 25, ¶¶ 111, 216, 230, 243, 274, 285. For the three Plaintiffs who have obtained final decisions, the Amended Complaint describes their challenges at the ALJ-level, but it does not allege that any of the Plaintiffs at any point in the administrative process ever alleged the claim they advance here, i.e., that the agency created an unlawful "Clawback Policy" applicable to skin substitute claims. *See also* Am. Compl., Doc. 25, ¶¶ 105–11 (no allegation that Plaintiff McGee presented a "Clawback Policy" claim in the administrative appeals of his claims); ¶¶ 142–54 (no allegation that Plaintiff Lopez presented a "Clawback Policy" claim in the administrative appeals of her claims); ¶¶ 158–66 (no allegation that Plaintiff Wyoming Medical Associates presented a "Clawback Policy" claim in the administrative appeals of its claims); ¶¶ 185–91 (no

allegation that Plaintiff Wound Management Specialists presented a "Clawback Policy" claim in the administrative appeals of its claims); ¶¶ 192–14 (no allegation that Plaintiff Loder presented a "Clawback Policy" claim in the administrative appeals of his claims); ¶¶ 217–27 (no allegation that Plaintiff Healthcare Housecalls presented a "Clawback Policy" claim in the administrative appeals of its claims); ¶¶ 231–40 (no allegation that Plaintiff Indy Wound Center presented a "Clawback Policy" claim in the administrative appeals of its claims); ¶¶ 244–72 (no allegation that Plaintiff IWC CT presented a "Clawback Policy" claim in the administrative appeals of its claims); ¶¶ 275–84 (no allegation that Plaintiff Domingo presented a "Clawback Policy" claim in the administrative appeals of its claims).

## III. Legal Standards

"Federal courts are courts of limited jurisdiction," and it "is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* Likewise, on a Rule 12(b)(3) motion, once a defendant raises the issue of improper venue, the plaintiff has the burden to prove that the chosen venue is proper. *Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 558 (N.D. Tex. 2003).

## IV. Argument and Authorities

### A. Plaintiffs fail to establish jurisdiction for their unpresented and unexhausted claims.

Plaintiffs allege that jurisdiction exists for their claims under 42 U.S.C. §§ 1395ff(b)(1)(A) and 405(g) and 28 U.S.C. § 1331. Am. Compl., Doc. 25, ¶¶ 50–51. They also concede, as they must, that their suit "arises under . . . the Medicare statute." *Id.* ¶ 50. But because this suit "arises under" the Medicare statute, Congress has conditioned Plaintiffs' right to obtain judicial review on first presenting their claims to the Secretary and exhausting administrative remedies.

The Medicare statute provides the sole avenue for judicial review of a Medicare reimbursement dispute, and that avenue becomes available only after a "final" administrative decision "made after a hearing," which has not occurred for six (of nine) Plaintiffs here. 42 U.S.C. § 1395ff(b)(1)(A); *see also Affiliated Pro. Home Health Care Agency v. Shalala*, 164 F.3d 282, 285 (5th Cir. 1999) ("Title 42 U.S.C. § 405(g) is the sole avenue for judicial review of all claims arising under the Medicare Act."). Specifically, § 1395ff(b)(1)(A) provides that "any individual dissatisfied . . . shall be entitled to . . . judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title." In turn, § 405(g) provides for review through a civil action filed within sixty days after the Secretary's final decision.

Additionally, 42 U.S.C. § 405(h) makes clear that § 405(g) is the exclusive vehicle for any possible jurisdiction over a Medicare-related claim, as follows:

> The findings and decision of the [Secretary] after a hearing shall be binding upon all individuals who were parties to such

> hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h). Therefore, a Medicare provider's access to federal court may only occur after the provider first presents a claim to the Secretary and channels "all aspects" of that claim through the agency's administrative processes. *Ill. Council*, 529 U.S. at 12. Only when the Secretary issues a final decision after a hearing will jurisdiction exist in federal court. *See id*.

The Supreme Court has characterized the § 405(h) bar as "sweeping and direct." *Weinberger v. Salfi*, 422 U.S. 749, 757 (1975). It applies to "all 'claim[s] arising under' the Medicare [statute]," *Ringer*, 466 U.S. at 614–15, regardless of the nature of the particular claim, *Ill. Council*, 529 U.S. at 14. *See also Your Home Visiting Nurse Servs. v. Shalala*, 525 U.S. 449, 456 (1999) (explaining that "judicial review under the federal-question statute, 28 U.S.C. § 1331, is precluded by 42 U.S.C. § 405(h)"). Thus, so long as a claim arises under the Medicare statute, as Plaintiffs' claims all do here, it must be channeled through the exclusive administrative and judicial review provisions of that statute.

**1. Plaintiffs' unexhausted claims should be dismissed.**

Plaintiffs acknowledge that, as of the date they filed this action, all but three Plaintiffs had failed to fully present and exhaust their claims before the agency. *See* Compl., Doc. 1, ¶ 96 ("Dr. McGee plans to file an appeal from the ALJ's unfavorable

decision”); ¶ 164 (“Dr. Loder has filed appeals from the ALJ denials to the Council” but there are no allegations that the Council has acted on those appeals); ¶ 178 (“Healthcare Housecalls has filed an appeal from the ALJ’s unfavorable decision to the Council” but there are no allegations that the Council has acted on those appeals); ¶ 191 (“Indy Wound Center plans to file an appeal from the ALJ’s unfavorable decision”); *see also* Am. Compl., Doc. 25, ¶ 111, 216, 230, 243, 274, 285 (similar concessions in the Amended Complaint).

It is black-letter law that “‘the jurisdiction of the court depends upon the state of things at the time of the action brought.’” *Double Eagle Energy Servs., L.L.C. v. MarkWest Utica EMG, L.L.C.*, 936 F.3d 260, 263 (5th Cir. 2019) (quoting *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004)); *see also* Order, *Humana Inc. v. U.S. Dep’t Health & Hum. Servs.*, No. 4:24-CV-1004-O (N.D. Tex. July 18, 2025). Much like in *Humana*, all but three Plaintiffs here “admittingly did not exhaust the appeals process and thus the Court cannot proceed to the merits of this action.” *See Humana*, Order at 5. This alone is sufficient grounds for a dismissal without prejudice of these Plaintiffs’ claims. Plaintiffs can later re-file actions challenging claims that have been properly exhausted.

Three Plaintiffs, by contrast, have exhausted administrative appeals before the agency: April Lopez, *see* Am. Compl., Doc. 25, ¶ 154 (Notice and Order from Medicare Appeals Council granting request for escalation to federal court); Wyoming Medical Associates, *see id.* ¶ 166 (final Medicare Appeals Council decision dated March 9, 2026); and Wound Management Specialists, LLC, *see id.* ¶ 191 (Notice and Order from

Medicare Appeals Council granting request for escalation to federal court). As explained below, though, even though the necessary prerequisite for federal jurisdiction has been met for these Plaintiffs (with an important caveat noted below about the scope of issues raised administratively), their claims nonetheless are subject to dismissal for improper venue (as also discussed below).

**2. Plaintiffs' cursory allegations of futility are legally insufficient.**

Plaintiffs assert that administrative exhaustion should be waived for two reasons, but neither has merit. First, Plaintiffs argue that "further delays before [named plaintiffs] could seek relief in court would exacerbate the substantial harm that the Clawback Policy has already imposed upon [them] and that threatens [their] ability to continue serving [their] patients." Am. Compl., Doc. 25, ¶¶ 111, 216, 230, 274, 285. But the Fifth Circuit has held that "[a] party may not circumvent the channeling requirement by showing merely that postponement of judicial review would mean added inconvenience or cost in an isolated, particular case." *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 657 (5th Cir. 2012) (internal quotation marks and citation omitted); *see also* Order at 9, *CAMPs Initiative v. U.S. Dep't Health & Hum. Servs.*, No. 4:26-CV-99-O (N.D. Tex. Mar. 12, 2026) (rejecting a similar argument about alleged business and other harms in connection with an attempt to evade the channeling requirement). Plaintiffs' assertions that administrative delays might cause them hardship are thus insufficient in the Fifth Circuit to excuse their acknowledged refusal to channel their claims.

Second, Plaintiffs allege that seeking review before the Medicare Appeals Council "is an exercise in futility given the broad application of the Clawback Policy by the

Council in similar circumstances." Am. Compl., Doc. 25, ¶¶ 111, 216, 230, 243, 274, 285. But the Amended Complaint contains no allegations describing any such "broad application of the Clawback Policy" in analogous circumstances. The exhibits submitted by Plaintiffs with their pleadings actually include four final decisions on the merits by the Medicare Appeals Council. *See* Doc. 25, Pls.' Exs. 23 & 53–55. And none reflects the application of any such broad policy. To the contrary, in each decision the Council repeatedly emphasizes that, "[a]bsent an applicable NCD, LCD, or policy manual guidance . . . contractors and adjudicators must make *individual reasonable and necessary determinations* by assessing whether the service is safe and effective, not experimental or investigational, and appropriate." Doc. 25-55 at 7 (emphasis added); *see also* Doc. 25-21 at 7 (same); Doc. 25-53 at 6 (same); Doc. 25-54 at 8 (same). Far from supporting Plaintiffs' futility claim, these decisions demonstrate that their administrative appeals can, in fact, be exhausted. There is no indication of a "broad application" of any unwritten policy by the Council, nor—more importantly—any hint that Plaintiffs raised such an argument below.

Even if Plaintiffs were correct that the Council is likely to disagree with their position in individual appeals, that does not excuse a failure to present and exhaust. The futility exception to the general rule requiring channeling applies only when "application of § 405(h) would not simply channel review through the agency, but would mean no review at all." *Ill. Council*, 529 U.S. at 19. Here, there is no dispute that each Plaintiff can ultimately obtain judicial review of the payment determinations at issue, either by seeking judicial review of an adverse decision by the Council or, if the Council fails to

act within the regulatory timeline, requesting "escalation to Federal court." *See* 42 C.F.R. § 405.1132. Indeed, Plaintiffs' Amended Complaint demonstrates that administrative appeals challenging skin substitute payment denials can be, and have been, fully exhausted. In these circumstances, channeling is not "futile"—it is a consequence of Congress's decision to "assure[] the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by individual courts." *Ill. Council*, 529 U.S. at 13.

Because only three Plaintiffs have exhausted any claim as required by the Medicare statute, and because the remaining Plaintiffs' allegations of futility are legally insufficient, this Court should dismiss each of the unexhausted claims—namely, those brought by Dr. McGee, Brian Loder, Healthcare Housecalls, Indy Wound Center, Integrated Wound Care Connecticut, and Carlo Domingo.

**3. Plaintiffs have not administratively presented their claim that the Secretary applies an unlawful "Clawback Policy."**

Even for those Plaintiffs who did exhaust certain claims, Defendants note that Plaintiff still fail to establish jurisdiction for any claim relating to the alleged "Clawback Policy" because there is no indication that *any* Plaintiff presented to the agency the claims asserted here. Specifically, Plaintiffs do not allege that any of them presented to the agency the claim that Defendants engaged in a scheme to apply an illegal "Clawback Policy" to deny coverage and payment for skin substitutes. *E.g.*, Am. Compl., Doc. 25, ¶¶ 1–4, 34, 45, 47, 52, 54, 56, 60. Although Plaintiffs challenged coverage denials by arguing that their products were "reasonable and

necessary," none appear to have alleged the application of the "Clawback Policy" that they now advance in this Court. This omission is fatal. Plaintiffs cannot simply submit claims for payment to Medicare, receive denials or recoupment of a wrongful payment, and then bring a legal challenge in court that they never presented to the agency. "[A] claimant cannot bring a challenge in federal court that it has not raised before the agency." *StimLabs, LLC v. Becerra*, 636 F. Supp. 3d 165, 176 (D.D.C. 2022) (citing *Am. Hosp. Ass'n v. Azar*, 895 F.3d 822, 826 (D.C. Cir. 2018))).

Condoning the approach envisioned by Plaintiffs would render the presentment requirement meaningless and deprive the agency of an "opportunity to reconsider its policies, interpretations, and regulations in light of th[e] challenges." *Ill. Council*, 529 U.S. at 24. The Fifth Circuit has applied this principle in a Medicare case, holding that a provider may not raise a challenge in court that was not raised before the agency:

> But Palm Valley raised this argument for the first time in the district court. A federal court reviewing an agency determination will not ordinarily consider arguments that a litigant could have raised before the agency but chose not to. *Gulf Restoration Network v. Salazar*, 683 F.3d 158, 174–75 (5th Cir. 2012). HHS limits the Medicare Appeals Council's review to objections a represented party asserts challenging the ALJ's ruling. 42 C.F.R. § 405.1112(c). The regulation tells a party that it must inform the Appeals Council if it believes the ALJ's ruling "is inconsistent with a statute, regulation, CMS ruling, or other authority." *Id.* § 405.1112(b). That covers the "homebound" argument Palm Valley raises now but did not mention before the Appeals Council. To allow Palm Valley to litigate an issue in federal court that it did not present to the Appeals Council would inappropriately "bypass[ ]" the agency's internal requirement. *Sims v. Apfel*, 530 U.S. 103, 108 (2000); *see also*, *e.g.*, *Medwin Family Med. & Rehab., P.L.L.C. v. Burwell*, 2017 WL 685696, at *17 (Jan. 31, 2017 S.D. Tex. 2017) (declining

> to consider issues not raised before the Medicare Appeals Council). A failure to dispute the governing legal standard before the agency is especially problematic given that the issue permeates the review process. Raising the "must" versus "should" issue before the agency would have allowed it to determine whether there is any practical daylight between those standards on these facts, something that is far from apparent. While judicial review of agency decisions plays an important role in correcting agency errors, it does not allow an inefficient redo based on arguments never presented to the agency the first time around. Because Palm Valley failed to exhaust its challenge to the "homebound" standard, we cannot consider the question.

*Palm Valley Health Care, Inc. v. Azar*, 947 F.3d 321, 327–28 (5th Cir. 2020) (citations cleaned up).[3]

Plaintiffs urge this Court to create an exception to this rule because they allege that there is "a systemic violation of the proper procedures for claims determinations and appeals" such that "exhaustion of administrative proceedings cannot address the merits of the claims alleged." Am. Compl., Doc. 25, ¶ 300. But Plaintiffs seek to create a rule that finds no support in either the statute or case law. Congress could have created such an exception but chose not to: it made the presentment requirement unwaivable, and that requirement is not excused simply because a plaintiff speculates that the agency will not adequately address its allegations. *See Ill. Council*, 529 U.S. at 15 ("[Section] 405(g)

[3] Other courts of appeals have held likewise. *See Haro v. Sebelius*, 747 F.3d 1099, 1113 (9th Cir. 2014) (concluding that plaintiff failed to satisfy the presentment requirement because it did not alert the Agency to the basis of the claim that it later pursued in court); *Action All. of Senior Citizens v. Leavitt*, 483 F.3d 852, 857 (D.C. Cir. 2007) (same); *see also Baylor All Saints Med. Ctr. v. Kennedy*, 161 F.4th 298, 303 (5th Cir. 2025) (hospitals seeking to challenge a Medicare regulation must present the claim through the administrative appeals process even when the Departmental Appeals Board has no authority to decide the validity of the regulation).

contains the nonwaivable and nonexcusable requirement that an individual present a claim to the agency before raising it in court.").

Presentment of Plaintiffs' argument to the Secretary requires providing sufficient facts in the administrative process for the Secretary to examine the "Clawback Policy" and respond, including with actions necessary to correct any alleged errors of any Medicare contractors or others. The Medicare statute requires that the Secretary be afforded this opportunity before any court reviews the claim. *See Palm Valley*, 947 F.3d at 327 ("To allow [Plaintiff] to litigate an issue in federal court that it did not present to the Appeals Council would inappropriately 'bypass[ ]' the agency's internal requirement."); *see also Medwin Fam. Med. & Rehab., P.L.L.C. v. Burwell*, No. 1:15-CV-151, 2017 WL 685696, at *15 (S.D. Tex. Jan. 31, 2017), *rec. adopted*, 2017 WL 680689 (S.D. Tex. Feb. 21, 2017) ("A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the [agency] of an opportunity to consider the matter, make its ruling, and state the reasons for its action." (quoting *Unemployment Comp. Comm'n of Alaska v. Aragon*, 329 U.S. 143, 155 (1946))).

Because Plaintiffs have not shown that they presented any argument to the agency raising the alleged "Clawback Policy"—which is a nonwaivable statutory requirement—no jurisdiction exists for judicial review of this aspect of Plaintiffs' suit.

**B. Venue is improper in this Court for the remaining claims.**

Finally, even for the three Plaintiffs who have exhausted administrative procedures (at least partially, i.e., with respect to issues other than the "Clawback

Policy"), venue is improper in this Court. The Amended Complaint asserts a single basis for venue: "Plaintiff Dr. Chris McGee resides in this judicial district." Doc. 25, ¶ 55. But as discussed above, no jurisdiction exists for Dr. McGee's claims because he concedes he has not exhausted his administrative appeals. And without any jurisdictionally viable claims from Dr. McGee to anchor venue here, Plaintiffs have made no showing that venue is proper in this judicial district for any remaining Plaintiffs. *See Associated Gen. Contractors of Am., Inc. v. Fed. Acquisition Reg. Council*, 720 F. Supp. 3d 461, 472 (W.D. La. 2024) (explaining, that, after dismissing certain plaintiffs who could not establish jurisdiction for their claims, the court "must determine whether venue is proper in this district in their absence"); *see also Ga. Republican Party v. SEC*, 888 F.3d 1198, 1202–05 (11th Cir. 2018) (transferring a case where the only party that satisfied venue did not have standing).

Here, Plaintiffs have not alleged that any Plaintiff other than Dr. McGee satisfied venue in this district, and none does. When a federal officer or employee is a defendant, venue is proper where (1) a plaintiff resides, (2) a defendant resides, or (3) a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(e). None of the federal defendants reside in this district; the defendant agencies and their leaders are based in Washington, D.C. and Baltimore, Maryland. *See Reuben H. Donnelly Corp. v. F.T.C.*, 580 F.2d 264, 266 n.3 (7th Cir. 1978). Further, the Amended Complaint does not allege that any of the events giving rise to the claims occurred in the Northern District of Texas. And none of the Plaintiffs who properly exhausted any portion of their claims is a resident of this district: April Lopez's clinic is in McAllen,

Texas, which is in the Southern District of Texas, *see* Pls.' Ex. 18, Doc. 25-18, at 2; Wyoming Medical Associates, LLC is located in the District of Wyoming, Doc. 25, ¶ 38; and Wound Management Specialists, LLC is located in Flowood, Mississippi, which is in the Southern District of Mississippi, Doc. 25, ¶ 39.

Plaintiffs' venue allegations rest wholly on the residency of a single Plaintiff whose claim must be dismissed for lack of subject matter jurisdiction. This Court should therefore dismiss this lawsuit for lack of venue or, in the alternative, transfer it to the United States District Court for the District of Columbia or the District of Maryland, where the federal defendants do reside.

## V. Conclusion

For the reasons described above, the Court should dismiss this action in its entirety (or, in the alternative, transfer the claims of the Plaintiffs who have at least partially exhausted their claims).

RYAN RAYBOULD
UNITED STATES ATTORNEY

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8626
Facsimile: 214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants

Certificate of Service

On May 26, 2026, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney