**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| CHRIS MCGEE, MD PA, ET AL.<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, ET AL.<br><br>*Defendants*. | HONORABLE JUDGE REED O'CONNOR<br>Civil Action No.: 4:26-cv-00243-O |

**PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY**

Pursuant to Federal Rule of Civil Procedure 26(d)(1), Plaintiffs respectfully seek leave of court to obtain limited expedited discovery to accomplish the following:

- Obtain documents reflecting the existence and contours of the Clawback Policy that Defendants and their agents have applied to retroactively deny and recoup Medicare reimbursement for skin-substitute products;
- Obtain training materials and directives provided by Defendants to their agents concerning the Clawback Policy, which sworn affidavits confirm exist and are readily accessible to CMS;
- Obtain documents detailing Defendants' denials of claims that are necessary to determine the precise class size and geographic scope to support Plaintiffs' motion for class certification.

While this narrow early discovery imposes relatively little burden on Defendants, it will materially advance the litigation by enabling Plaintiffs to confirm the existence of the Clawback Policy as a centrally directed agency action—the key threshold question in this unusual Administrative Procedure Act ("APA") case—before any preliminary injunction hearing. As discussed below, good cause exists for Plaintiffs' limited early discovery requests, warranting the requested relief.

## I. INTRODUCTION AND PROCEDURAL BACKGROUND

This litigation arises from Defendants' arbitrary and capricious decision to ignore their own skin-substitute coverage policy and claw back hundreds of millions of dollars in legitimately paid Medicare claims as part of an illegal effort to reduce Medicare spending by decimating the ranks of wound-care providers. As set forth in Plaintiffs' First Amended Complaint (the "Complaint"), Defendants have targeted the skin substitute industry through a coordinated, systematic campaign of retroactive audits, referred to herein as the "Clawback Policy," in which their agents reopen previously paid Medicare claims and recoup reimbursement by labeling skin substitute products as "experimental" or "investigational."

Plaintiffs' challenge to the Clawback Policy is not a typical APA case involving review of a publicly promulgated regulation or a grant or denial of an application. Rather, the key threshold question is whether the alleged Clawback Policy in fact exists as a centrally coordinated agency action directed by Defendant Centers for Medicare & Medicaid Services ("CMS"). Although information Plaintiffs have received to date strongly supports the existence of the Clawback Policy, discovery into CMS's internal communications and directives to its agents is required to confirm its existence and ascertain the Policy's scope.

Plaintiffs filed this case on March 4, 2026, ECF 1, and filed their First Amended Complaint on May 8, alleging violations of the APA and the Medicare statute and seeking declaratory and injunctive relief. ECF 25 ¶¶ 301–24. Plaintiffs then moved to certify this case as a class action on May 15, 2026. ECF 27. Later that same day, Plaintiffs served Defendants with the discovery requests at issue here. *See* Exs. A & B, Plaintiffs' Discovery Requests.

Defendants moved to dismiss on May 26, ECF 29, and Plaintiffs filed a Motion for Preliminary Relief shortly before filing this motion on June 9. ECF 36. On June 3, 2026, the

parties' counsel met and conferred pursuant to Local Rule 7.1 and Defendants oppose the relief requested herein.

## II. LEGAL STANDARD

Under the APA, judicial review is typically confined to the administrative record compiled by the agency. 5 U.S.C. § 706. However, courts recognize exceptions and permit discovery in APA cases when "unusual circumstances justifying a departure" exist, such as when "the agency failed to explain administrative action so as to frustrate judicial review." *Medina Cnty. Env't Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010) (quoting *American Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008)). One commonly recognized exception to the no-discovery rule in APA cases is where there is a factual question as to whether the agency's alleged policy actually exists. *See AFL-CIO v. Dep't of Lab.*, 349 F.R.D. 243, 246, 248 (D.D.C. 2025) (when the challenge is "not an ordinary APA case" because "the key question . . . is whether the alleged . . . policy in fact exists," it is prudent to "depart from the default APA no-discovery rule" to "determine the contours of the agency actions that plaintiffs challenge"); *Escobar Molina v. DHS*, 811 F. Supp. 3d 1, 63 (D.D.C. 2025) ("[C]ourts may allow discovery in APA cases when the agency action challenged is unlike the actions normally challenged in APA cases, . . . especially when discovery is needed to ascertain the contours of the precise policy at issue.").

In addition, to obtain expedited discovery, the requesting party must demonstrate good cause. *Munck Wilson Mandala LLP v. Jordan*, No. 3:22-cv-1657, 2022 WL 22848389, at *1 (N.D. Tex. Aug. 23, 2022). Good cause exists when "the need for expedited discovery outweighs the prejudice to the responding party," and "the scope of the requests are narrowly tailored to the necessary information sought." *MODE Glob., LLC v. Kuriger*, 350 F.R.D. 271, 274 (N.D. Tex.

2025) (cleaned up). Courts in this district consider the following factors to determine whether good cause exists:

> (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.

*Id.* (quoting *EYM Pizza of Ga. LLC v. Pizza Hut LLC*, 2024 WL 1743363, at *1 (N.D. Tex. Mar. 27, 2024)).

## III. ARGUMENT

As explained below, this is an unusual APA case that warrants departure from the default no-discovery rule because Plaintiffs challenge an unpublished, de facto agency policy whose existence can only be confirmed through discovery. Moreover, all five good cause factors favor limited early discovery. First, Plaintiffs have a Motion for Preliminary Relief pending before this Court. Next, the purpose for Plaintiffs' request also weighs heavily in favor of granting limited early discovery because Plaintiffs need information within the government's exclusive possession to establish their likelihood of success on the merits of their claims and for class certification. The breadth of the requested discovery is narrowly tailored to specific, existing documents and targeted interrogatories to achieve these goals, imposing little burden on Defendants. Finally, the timing of the request is only slightly ahead of when discovery would normally occur and is appropriately timed to Plaintiffs' pursuit of preliminary relief and class certification. Plaintiffs face certain irreparable harms associated with waiting for the ordinary course of litigation to commence discovery, while in contrast Defendants face little burden. Therefore, the Court should exercise its discretion and find good cause to permit early limited discovery as requested.

### A. This Is the Unusual APA Case That Requires Discovery

Discovery is appropriate in APA cases "when the agency action challenged is unlike the actions normally challenged in APA cases, . . . especially when discovery is needed to ascertain the contours of the precise policy at issue." *Escobar Molina*, 811 F. Supp. 3d at 63 (cleaned up). It is also appropriate if the plaintiff can "demonstrate some reasonable basis for believing that the administrative record is incomplete." *Texas Steel Co. v. Donovan*, 93 F.R.D. 619, 621 (N.D. Tex. 1982). And discovery is not only appropriate, but it is *necessary* in APA cases where, as here, "the key question . . . is whether the alleged . . . policy in fact exists," *see AFL-CIO*, 349 F.R.D. at 248 (quotation marks omitted), as the government denies the existence of the policy at issue. This is because the government naturally possesses all the information that would prove that it does, in fact, have the policy it is claimed to have. In *AFL-CIO*, for instance, the plaintiff challenged an alleged Department of Labor ("DOL") policy allowing the Department of Governmental Efficiency ("DOGE") to access DOL's information systems in a way that "amount[ed] to a new polic[y] of permitting unlawful disclosures of protected information." *Id.* DOL denied that it had created a new policy, claiming its actions as simply one government agency giving another government agency access to information. *Id.* Because there was a factual dispute as to whether the policy at the center of the dispute even existed, the court found it prudent to "depart from the default APA no-discovery rule" to "determine the contours of the agency actions that plaintiffs challenge." *Id.* at 246, 248.

Here, unlike the typical APA case where a plaintiff challenges a formally promulgated regulation or a discrete agency determination, Plaintiffs challenge an unwritten, de facto agency policy that it has applied to the entire skin-substitute industry. Defendants have never formally promulgated the Clawback Policy through notice-and-comment rulemaking or even announced it

publicly at all (which itself is a violation of the APA). Instead, the Clawback Policy is being implemented as an unpublished, unannounced coverage determination through a coordinated pattern of enforcement actions by CMS's agents. *See* ECF 25 ¶ 288.

The evidence of a systemwide policy is compelling but incomplete. Providers across multiple jurisdictions received form denial language invoking "experimental" and "investigational" rationales; Unified Program Integrity Contractor ("UPIC") reports and Qualified Independent Contractor ("QIC")[1] reconsiderations have repeated the same product-specific literature requirement; and Administrative Law Judges ("ALJ") and Medicare Appeals Council decisions have increasingly adopted that requirement while disregarding the still-operative 2015–2016 Local Coverage Determinations ("LCDs"). *See generally* ECF 25 ¶¶ 94–292 & Exs. 12–57. Moreover, sworn affidavits from witnesses present during a January 7, 2026, off-the-record conference with a CMS ALJ show that Defendants specifically trained their adjudicators to deny skin-substitute claims unless the provider presented product-specific evidence of efficacy because "CMS does not want to pay for [skin substitutes] and will continue to disallow claims until someone takes them to Federal Court." ECF 36-10, Dearman Aff. ¶ 5; ECF 36-9, Harrell Aff. ¶ 4; *see also* ECF 36-21–36-27 (ALJ decisions denying claims explicitly due to cost).

Despite the evidence Plaintiffs already possess, Defendants still deny that the Clawback Policy even exists. Defendants are expected to argue in this litigation that there is no broad-based Clawback Policy in place being directed by CMS to its agents and will limit the administrative records compiled to the records of each Plaintiff's denied Medicare Part B claims. Like *AFL-CIO*, there is a factual dispute over whether the government's policy even exists, and discovery is

[1] The terms "Unified Program Integrity Contractor" and "Qualified Independent Contractor" refers to entities contracted by Defendants to monitor the application of Medicare payment and coverage policies in independent cases.

necessary to resolve it. *See AFL-CIO*, 349 F.R.D. at 248. Treating this matter, as Defendants would, like a typical Medicare appeal and confining it purely to a claim-denial record will shed no light at all on the Clawback Policy's origins, terms, the extent of its dissemination, and the number of improperly denied claims. *See id.* (noting that the case's existing record had "not clarified matters regarding the alleged policies' scope" (cleaned up)). Plaintiffs have every reason to believe the limited Administrative Records the government plans to compile will be insufficient for this case. *See Texas Steel*, 93 F.R.D. at 621.

The full scope of the Clawback Policy—its origin within CMS, its precise terms, the extent of its dissemination, and the number of improperly denied claims—remains hidden from Plaintiffs and can only be ascertained through discovery. Thus, the default APA rule limiting review to the administrative record should not apply here. *See AFL-CIO*, 349 F.R.D. at 248.

**B. Good Cause Exists to Allow Early Limited Discovery**

Good cause exists when "the need for expedited discovery outweighs the prejudice to the responding party." *MODE Glob., LLC*, 350 F.R.D. at 274 (quotation omitted). Defendants will not be prejudiced by limited early discovery that will materially advance the litigation by enabling Plaintiffs to certify the class and demonstrate the existence of the Clawback Policy and its precise contours before any preliminary injunction hearing. The evidence concerning this key question resides solely in the government's possession. Securing copies of existing documents that Defendants already maintain as the federal agency that oversees the Medicare program is a minimal burden and does not unduly expand the scope of discovery.

As discussed *supra*, courts in this district consider the following factors to determine good cause for early discovery: (1) whether a preliminary injunction is pending; (2) the purpose for requesting expedited discovery; (3) the breadth of the discovery requests; (4) the burden on

defendants to comply with the request for discovery; and (5) how far in advance of the typical discovery process the request is made. *See id.*; *EYM Pizza of Ga. LLC*, 2024 WL 1743363, at *1. Here, each of these factors tip heavily in favor of early discovery.

A pending motion for a preliminary injunction "can provide a basis for good cause" and weighs heavily in favor of allowing expedited discovery. *MODE Global*, 350 F.R.D. at 274 (quoting *Talon Transaction Techs., Inc. v. Stoneagle Servs., Inc.*, 2013 WL 12172925, at *2 (N.D. Tex. May 14, 2013)). Here, Plaintiffs recently filed a motion for a preliminary injunction, ECF 36, and they need information within Defendants' possession to prove their likelihood of succeeding on the merits of their claims.

As to the second factor, the purpose of this discovery request is urgent: Plaintiffs must establish the existence of the Clawback Policy as a centrally directed agency action to support its request for a preliminary injunction. The information that would clearly establish the Clawback Policy's centralized nature are, of course, internal agency documents that are entirely within Defendants' possession, and Plaintiffs will be at a disadvantage if they cannot review those documents before needing to prove their likelihood of success on the merits. Further, limited early discovery will support class certification by revealing the precise size and geographic scope of the class as discussed in Plaintiffs' Motion for Class Certification. *See generally* ECF 27. Here, the purpose for expedited discovery points in favor of allowing limited discovery now because Plaintiffs face certain irreparable harm associated with waiting for the ordinary course of litigation.

As to the third and fourth factors, the requested discovery is narrowly tailored and does not impose a significant burden on Defendants. Plaintiffs are not seeking expedited discovery on all its discovery requests, which it served on Defendants on May 15, 2026, but only on the following topics:

- Documents and responses reflecting the ways CMS trained its contractors to deny claims for skin substitutes. *See* Ex. A, Plaintiffs' Requests for Production, at Requests Nos. 2–4, 7. Ex. B, Plaintiffs' Interrogatories, Interrogatories Nos. 3, 11.

- Documents and responses showing that skin substitutes' cost is the primary driving force behind the Clawback Policy. *See* Ex. A, Requests Nos. 6, 9, 12–15; Ex. B, Interrogatories Nos. 14, 16–17, 20.

- Documents and responses reflecting that the Clawback policy is broad and nationwide in scope. Ex. A, Requests Nos. 1[2], 5; Ex. B, Interrogatories Nos. 4–10, 12, 19.

*See generally* Exs. A & B, Plaintiffs' Discovery Requests.

Plaintiffs have a good faith belief that these documents exist. Sworn affidavits from witnesses confirm that CMS's agents received training materials instructing them to deny skin substitute claims simply because Medicare does not want to pay for them. ECF 36-10, Dearman Aff. ¶ 5; ECF 36-9, Harrell Aff. ¶ 4. Plaintiffs also know that Defendants possess documents showing that cost concerns are driving the Clawback Policy; emails Plaintiffs obtained from Freedom of Information Act ("FOIA") requests show precisely that, and they are likely just the tip of the iceberg. *See, e.g.,* ECF 25-1 (asking how much money Medicare would save if the MACs adopt LCDs which exclude skin substitutes from coverage); ECF 27-9 (noting that CGS's proposed LCD was "very much needed" to protect Medicare's "Trust Fund"). The documents Plaintiffs seek—CMS directives, training materials, and limited communications to its contractors—are thus real and identifiable and should be readily accessible to Defendants, making the burden on them minimal. By contrast, the harm to Plaintiffs and the class from delay is severe and ongoing for the reasons specified in Plaintiffs' Motion for Preliminary Relief.

[2] For the purposes of expedited discovery, only ALJ and Medicare Appeals Council decisions need be produced. The contractor decisions may be produced later during the ordinary course of discovery.

The final factor, the timing of the expedited discovery request, also weighs in favor of permitting the limited early discovery requested. Defendants' Motion to Dismiss will be fully briefed by the end of this month, and the normal course of discovery will begin shortly after the Court issues a ruling. So, the limited discovery Plaintiffs seek now is only a couple months in advance of the normal discovery timeline, at most. Plaintiffs' targeted requests thus impose no undue burden on the litigation timeline.

## IV. CONCLUSION

For the foregoing reasons, discovery is appropriate in this case, and good cause supports *expedited* discovery. Plaintiffs respectfully request the Court grant this motion and order Defendants to answer the discovery requests mentioned herein within thirty (30) days of granting this motion.

Dated: June 9, 2026

Respectfully submitted,

/s/ *William R. Morris III*
William R. Morris III
Texas Bar No. 24124582
Robert M. Hill ("Bobby")
Texas Bar No. 24125624
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
Tel: 214-764-4414
Fax: 214-764-4601
wrmorris@kslaw.com
rhill@kslaw.com

Mark D. Polston (admitted *pro hac vice*)
Nikesh Jindal (admitted *pro hac vice*)
Ahsin Azim (admitted *pro hac vice*)
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
Tel: 202-737-0500
Fax: 202-626-3737
mpolston@kslaw.com
njindal@kslaw.com
aazim@kslaw.com

Kyle Gotchy (admitted *pro hac vice*)
KING & SPALDING LLP
621 Capitol Mall, Suite 1500
Sacramento, CA 95814
Tel: 916-321-4800
Fax: 916-321-4900
kgotchy@kslaw.com

Paul d'Ambrosio (admitted *pro hac vice*)
KING & SPALDING LLP
110 N. Wacker Drive, Suite 3800
Chicago, IL 60606
Tel: 312-995-6333
Fax: 312-995-6330
pdambrosio@kslaw.com

Preeya Noronha Pinto (admitted *pro hac vice*)
Josh Gardner (admitted *pro hac vice*)
Deborah Samenow (admitted *pro hac vice*)

DLA PIPER
500 Eighth Street, NW
Washington, DC 20004
(202) 799-4000
Preeya.pinto@us.dlapiper.com
Josh.gardner@us.dlapiper.com
Deborah.samenow@us.dlapiper.com

Allison Velez (admitted *pro hac vice*)
One Liberty Place
1650 Market Street, Suite 5000
Philadelphia, PA 19103-7300
(215) 656-3312
Allison.Velez@us.dlapiper.com

*Counsel for Plaintiffs*

**CERTIFICATE OF CONFERENCE**

I hereby certify that Plaintiffs' counsel Nikesh Jindal and Mark Polston conferred with Defendants' Counsel Brian Stoltz and Glen Girdharry on June 3, 2026, regarding the Motion for Preliminary Relief and this Motion for Expedited Discovery. Defendants' counsel advised that Defendants wished to oppose both motions, that their clients were not open to providing Plaintiffs with any preliminary relief, and that they do not believe that any discovery is appropriate at this stage in the case.

/s/ *William R. Morris III*

## CERTIFICATE OF SERVICE

On June 9, 2026, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the court's electronic case filing system. Thus, all parties were served electronically.

/s/ *William R. Morris III*