IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

CHRIS MCGEE, *et al*.,

Plaintiffs,

v.

ROBERT F. KENNEDY, JR., *et al*.,

Defendants.

Civil Action No. 4:26-CV-243-O

**APPENDIX TO DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY RELIEF**

RYAN RAYBOULD
UNITED STATES ATTORNEY

Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8626
Facsimile: 214-659-8807
brian.stoltz@usdoj.gov

Contents

Page Number
(in lower right corner)

1. Decision—Foot and Ankle Specialists of Central PA, P.C. .................................. App. 001

2. Decision—Crescent Wound Care Inc. .................................................................. App. 013

3. Decision—Wound Management Specialists, LLC ................................................ App. 025

4. Letter to Wound Management Specialists, LLC.................................................... App. 039

Respectfully submitted,

RYAN RAYBOULD
UNITED STATES ATTORNEY

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8626
Facsimile: 214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants

Certificate of Service

On June 30, 2026, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney

Department of Health and Human Services
Office of the Secretary

**OFFICE OF MEDICARE HEARINGS AND APPEALS**

Cleveland Field Office
1001 Lakeside Ave
Suite 700
Cleveland, OH 44114
216-462-4100
(786) 792-3775 (Direct)
216-615-9029 (Fax)
866-236-5089 (Toll Free)

December 10, 2025

ARTZ MAYERNICK HEALTH LAW
ATTN: CHARLES ARTZ
200 N 3RD ST STE 12-B
HARRISBURG, PA 17101

**NOTICE OF DECISION**

Appellant: FOOT AND ANKLE SPECIALISTS OF CENTRAL PA, P.C.
OMHA Appeal Number: 3-14506748806

Enclosed is the decision for the above case. This decision is based on the administrative record, including any evidence or testimony presented at the hearing, if one was held. The decision is not precedential, does not release the appellant from civil or criminal liability, and may be reopened at any time if it was procured by fraud or similar fault. In addition, the decision may be reopened within 180 calendar days from the date of the decision for good cause. Good cause exists when there is new and material evidence that was not available or known at the time of the decision and may result in a different conclusion, or when the evidence that was considered clearly shows on its face that an obvious error was made at the time of the decision.

**What if I disagree with the decision?**

If you disagree with the decision, you may file an appeal with the Medicare Appeals Council. Other parties may also appeal the decision. In addition, the Medicare Appeals Council may decide to review the decision on its own motion. If no party appeals the decision and the Medicare Appeals Council does not review the decision, the decision is binding on all parties and you and the other parties will not have the right to ask a federal court to review the decision.

If you are not already represented, you may appoint an attorney or other person to represent you.

**How much time do I have to file an appeal?**

The Medicare Appeals Council must receive your written appeal **within 60 calendar days** of the date that you receive this notice. The Medicare Appeals Council assumes you received this notice 5 calendar days after the date of the notice unless you show that you did not receive it within the 5-day period.

The Medicare Appeals Council will dismiss a late request for review unless you show that you had a good reason for not filing it on time.

**How do I file an appeal?**

To appeal, you must ask the Medicare Appeals Council to review the decision. Your appeal must be in writing, except that a request for expedited review of a Part D decision may be made orally as described below. Your appeal must identify the parts of the decision that you disagree with, and explain why you disagree.

You may submit a written request for review to the Medicare Appeals Council using one of three available methods: mail, fax, or electronic filing (E-File). **Please do not submit your request for review using more than one method**. Regardless of how you file your appeal, **you must always send a copy of your written request for review to the other parties who received a copy of the decision.**

If you are filing a written request for review, you may use the enclosed *Request for Review* (Form DAB-101), or you may write a letter containing the following:

- The beneficiary's/enrollee's name (and telephone number for Part D appeals);
- The beneficiary's/enrollee's Medicare number (Health Insurance Claim Number or Medicare Beneficiary Identifier);
- The item(s), service(s), or specific Part D drug(s) in dispute;
- The specific date(s) the item(s) or service(s) were provided, if applicable;
- For Part D appeals, the plan name;
- For Part D appeals, the OMHA Appeal Number on the adjudicator's decision;
- For Part D appeals requesting expedited review, a statement that you are requesting expedited review;
- The date of the adjudicator's decision (not required for Part D appeals); and
- Your name and signature, and, if applicable, the name and signature of your representative.

**Filing by mail:**

Mail your appeal and a copy of the enclosed decision to:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

**Filing by fax:**

Fax your appeal and a copy of the enclosed decision to **(202) 565-0227.**

**Filing by computer:**

Using your web browser, visit the Medicare Operations Division Electronic Filing System (MOD E-File) website at **https://dab.efile.hhs.gov/mod**.

To file a new appeal using MOD E-File, you will need to register by:

1. Clicking **Register** on the MOD E-File home page;
2. Entering the information requested on the "Register New Account" form; and
3. Clicking **Register Account** at the bottom of the form.

You will use the email address and password you provided during registration to access MOD E-File at **https://dab.efile.hhs.gov/mod/users/new**. You will be able to use MOD E-File to file and access the specific materials for appeals to which you are a party or a party's representative. You may check the status of any appeal on the website homepage without registering.

Once registered, you may file your appeal by:

1. Logging into MOD E-File;
2. Clicking the **File New Appeal** menu button on the top right of the screen;
3. Selecting the type of appeal you are filing (Request for Review or Request for Escalation); and
4. Entering the requested Appeal Information and uploading the requested Appeal Documents on the "File New Appeal - Medicare Operations Division" form. You are required to provide information and documents marked with an asterisk.

At a minimum, the Medicare Appeals Council requires an appellant to file a signed Request for Review and a copy of the enclosed decision. All documents should be submitted in Portable Document Format (PDF) whenever possible. Any document, including a Request for Review, will be deemed to have been filed on a given day, if it is uploaded to MOD E-File on or before 11:59 p.m. EST of that day.

Currently, the documents that may be filed electronically are the:

1. Request for Review;
2. Appointment of Representative form (OMB Form 0938-0950);
3. Copy of Administrative Law Judge or attorney adjudicator decision;
4. Memorandum or brief or other written statement in support of your appeal; and
5. Request to Withdraw your appeal

**No other documents aside from the five (5) listed categories above may be submitted through MOD E-File.**

**Filing by oral request (for expedited review only):**

Oral requests for expedited review of a Part D decision may be made by telephone to **(866) 365-8204.** You must provide the information listed in the bullet points above and a statement that you are requesting an expedited review within 60 calendar days after receipt of this notice of decision. The Medicare Appeals Council will document the oral request in writing and maintain the documentation in the case file.

Please note that your request for review will only be expedited (1) the appeal involves an issue specified in 42 C.F.R. § 423.566(b), but does not include solely a request for payment of a Part D drug that has already been furnished, and (2) the prescribing physician (or other prescriber) indicates, or the Medicare Appeals Council determines, that the standard time frame may seriously jeopardize your life, health, or ability to regain maximum function.

**How will the Medicare Appeals Council respond to my appeal?**

The Medicare Appeals Council will limit its review to the issues raised in the appeal, unless the appeal is filed by an unrepresented beneficiary/enrollee. It may change the parts of the decision that you agree with. It may adopt, modify, or reverse the decision, in whole or in part, or it may send the case back to OMHA for further action. It may also dismiss your appeal.

**Questions?**

You may call or write our office. A toll-free phone number and mailing address are at the top of this notice.

Additional information about filing an appeal with the Medicare Appeals Council is available at http://www.hhs.gov/dab/. You can also call the Medicare Appeals Council's staff in the Medicare

Operations Division of the Departmental Appeals Board at (202) 565-0100 or (866) 365-8204 (toll free), if you have questions about filing an appeal.

cc:

QIC - C2C B North
301 W Bay Street
Ste. 1110
Jacksonville, FL 32202

[redacted]

[IF MULTIPLE BENEFICIARY APPEAL ONLY INPUT: To protect beneficiary privacy, names and addresses of other individuals have been removed from your copy of this notice.]

Enclosures:
OMHA-152, Decision
DAB-101, Request for Review
OMHA-156, Exhibit List

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Cleveland, OH**

| | | | |
|---|---|---|---|
| Appeal of: | **FOOT AND ANKLE SPECIALISTS OF CENTRAL PA, P.C.** | OMHA Appeal No.: | **3-14506748806** |
| Beneficiary: | [redacted] | Medicare Part: B | |
| Medicare No.: | [redacted] | Before: | **PA McAfee**<br>Administrative Law Judge |

## DECISION

After considering the evidence and arguments presented in the record, I enter a **FULLY FAVORABLE** decision. The wound care services Q4205: Membrane Graft Or Wrap, Per Square Cm-provided to the Beneficiary on 12/06/2023 ("Date of Service") is covered under Medicare Part B. The remaining claims for the same Date of Service (1124033836640, 4724226680000, 4724226680010, and 4724226680020 were properly dismissed by the QIC and thus are not addressed in the instant Decision)[1].

## PROCEDURAL HISTORY

A Medicare claim was submitted for wound care services referenced above provided to the Beneficiary on the Date of Service referenced herein which was initially denied. (File 1) Upon redetermination, an unfavorable decision was made because the use of these products were not payable and medically necessary. Subsequently, upon reconsideration, the Qualified Independent Contractor (QIC), C2C Innovative Solutions, Inc., issued an Unfavorable decision on November 14, 2024. (Id.) The QIC held the Appellant liable for the non-covered charges. (Id.)

The Appellant filed a timely request for an expedited Administrative Law Judge ("ALJ") hearing before the Office of Medicare Hearings and Appeals ("OMHA"). (File 1). The amount in controversy meets the jurisdictional requirements for an ALJ hearing before OMHA. (Id.)

An ALJ Telephonic hearing was initially conducted on October 28, 2025, from Cleveland, Ohio. A supplemental hearing was subsequently held on December 3, 2025. Present for Hearing: Charles Artz (Attorney); Rosemary Young (Billing Representative); Joannie Long (VP of Keymed Partners); and Dr. Terry Clark DPM (Wound care specialist) All files were admitted into evidence without objection and considered herein.

[1] The Qualified Independent Contract previously dismissed the claims referenced herein as a redetermination (first level appeal) was not conducted by Novitas Solutions, Inc. as required Accordingly, I find the dismissal by the QIC was appropriate based on the evidence available at the time of the QIC's review.

## ISSUE(S)

Whether the wound care services/items provided to the Beneficiary on the Date of Service is covered under Medicare Part B, and if not, who is responsible for the non-covered charges?

## APPLICABLE LAW AND POLICY

Section 1833(e) of the Act and 42 C.F.R. § 424.5(a)(6) preclude payment to any provider of services unless there has been such information as may be necessary to determine the amounts due such provider.

Section 1861(q) of the Act and 42 C.F.R. § 410.20 define the term physician services as professional services performed by physicians, including surgery, consultation, and home, office, and institutional calls (but not including services described in subsection (b)(6)).

Section 1861(s)(1) of the Act and 42 C.F.R. § 410.10(a) define the term "medical and other health services" to include physician services.

Section 1862(a)(18) of the Act and 42 C.F.R. § 411.15(p)(1) provide that payment may not be made for services which are covered SNF services and which are furnished to an individual who is a resident of a SNF during a period in which the resident is provided covered post-hospital extended care services by an entity other than the SNF, unless the services are furnished under arrangements with the entity made by the SNF.

Section 1869(f)(1) of the Act and 42 C.F.R. § 405.1060 provide that National Coverage Determinations (NCDs) are binding upon ALJs and Attorney Adjudicators. There is no applicable NCD.

Section 1869(f)(2) of the Act and 42 C.F.R. § 405.1062 provide that ALJs and Attorney Adjudicators will give substantial deference to LCDs or CMS program guidance when applicable, and if they do not follow the policy, they must explain why in their decision.

Medicare provides coverage for items and services that are reasonable and necessary to diagnose or treat an illness or injury or to improve the functioning of a malformed body member. Payment is excluded if the medical necessity for the service cannot be substantiated. [Section 1862(a)(1)(A) of the Social Security Act (the Act)]

Items and services which are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member are not covered, e.g., payment cannot be made for the rental of a special hospital bed to be used by the patient in their home unless it was a reasonable and necessary part of the beneficiary's treatment. [The Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM), Publication (Pub.) 100-02, Medicare Benefit Policy Manual (MBPM), Chapter 16, Section 20]

CMS issues National Coverage Determinations (NCDs) that specify whether certain items, services, procedures or technologies are reasonable and necessary under Section 1862(a)(1)(A)

of the Act. In the absence of an NCD, Medicare contractors are responsible for determining whether services are reasonable and necessary. If no Local Coverage Determination (LCD) exists for a particular item or service, the Medicare Administrative Contractors (MACs), Comprehensive Error Rate Testing (CERT), Recovery Auditors (RAs), and Unified Program Integrity Contractors (UPICs) shall consider an item or service to be reasonable and necessary if the item or service meets the following criteria:

- It is safe and effective;
- It is not experimental or investigational; and
-
- It is appropriate, including the duration and frequency in terms of whether the service or item is:

- Furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the beneficiary's condition or to improve the function of a malformed body member;
- Furnished in a setting appropriate to the beneficiary's medical needs and condition;
- Ordered and furnished by qualified personnel; and,
- One that meets, but does not exceed, the beneficiary's medical need.

[CMS IOM, Pub. 100-08, Medicare Program Integrity Manual (MPIM), Chapter 3, Section 3.6.2.2]

## FINDINGS OF FACT AND ANALYSIS

The QIC previously denied payment for the wound services at issue, finding that Q4250 is experimental and investigational as denoted by the Q code status nomenclature. (File 1) The QIC further noted that under Medicare law, no payment can be made under Medicare for and expenses incurred for items or services that are considered investigational and are not considered reasonable and necessary. As the item/service is considered investigational and is not payable as per CMS, it is the QIC's determination that the Q4250 does not meet the medically reasonable and necessary requirements of Section 1862(a)(1)(A) of the Act. Lastly, the QIC held the Appellant liable for the non-covered costs. (Id.)

The clinical documentation submitted indicates that the Beneficiary, a 63-year-old female, had a past medical history significant for hypertension, circulatory disorder, nerve pain/injury, and skin problems. (File 2) Notes stated the Beneficiary presented for follow up of bilateral lower extremity venous stasis ulcers which have been presented for the past several years. The Beneficiary developed new venous ulcers on the upper calves below the knee, likely due to pressure. The Beneficiary reported that the upper calf venous ulcers have been "very painful" due to their location and were prone to infection. The Beneficiary's left lower leg posterior upper calf venous ulcer has been present for more than 3 months since 02/15/23 and treated with debridement and standard of care. Notes stated that despite prior treatment the ulcer has not demonstrated healing or improvement and subsequently developed an infection for which she was prescribed antibiotics. The Beneficiary was status post bilateral lower leg venous ulcer debridement with application of Theraskin on 11/03/23. Notes generated December 2023 stated she experienced minimal pain following the procedure with minimal drainage and improvement observed. The Beneficiary also utilized strict compression and elevation. (Id.)

Both in its request for hearing and testimony presented at ALJ Hearing, the Appellant's representative argued that the QIC's prior denial reasons are insufficient, and there peer-reviewed, evidence-based literature to support the use of skin substitute wound coverings billed under the applicable HCPCS Q Code/investigational and experimental - do not exist in the

Medicare Act, Medicare regulations, Medicare Manual, NCD or LCD, is not a condition of payment. (See, File 2 and Hearing Audio). The Appellant argues that same was unlawfully applied from the text of a draft LCD that the Medicare Contractor rescinded on September 29, 2023, or from a future effective LCD that only applies to dates of service on or after January 1, 2026. Moreover, the Appellant notes that the Beneficiary had bilateral chronic non-healing venous stasis leg ulcers that failed to heal despite conservative standard of care treatment provided. The patient's venous leg ulcers constituted lower extremity chronic non-healing wounds. FAS applied the Membrane Wrap skin substitute, which has been assigned its own HCPCS Code Q4205; thus the services at issue fall within the purview of LCD L35041. (Id.)

After reviewing the evidence in the record and testimony at the ALJ hearing, I find that Medicare coverage exists for the wound care services at issue. Specifically, the record reflects the Beneficiary received ongoing wound care for bilateral non-healing venous bilateral extremity ulcers, for which she received antibiotics due to an infection. The record reflects that the Beneficiary tried and failed multiple conservative treatments and experienced minimal pain and improvement with the item at issue. Accordingly, the wound care services at issue are covered under Medicare Part B.

## CONCLUSIONS OF LAW

The wound care items/services referenced herein provided to the Beneficiary on the date of service at issue are covered under Medicare Part B.

## ORDER

For the reasons discussed above, this decision is **FULLY FAVORABLE**. I direct the Medicare Administrative Contractor to process the claim in accordance with this decision.

**SO ORDERED**

PA McAfee
Administrative Law Judge

DEPARTMENT OF HEALTH AND HUMAN SERVICES (DHHS) / DEPARTMENTAL APPEALS BOARD Form DAB-101 (12/19)

## REQUEST FOR REVIEW OF ADMINISTRATIVE LAW JUDGE (ALJ) MEDICARE DECISION / DISMISSAL

| | |
|---|---|
| 1. APPELLANT (the party requesting review) | 2. ALJ APPEAL NUMBER (on the decision or dismissal) |
| 3. BENEFICIARY* | 4. MEDICARE NUMBER (Health Insurance Claim Number (HICN) or Medicare Beneficiary Identifier (MBI))* |

*If the request involves multiple claims or multiple beneficiaries, attach a list of beneficiaries, Medicare numbers, and any other information to identify all claims being appealed.

| | |
|---|---|
| 5. PROVIDER, PRACTITIONER, OR SUPPLIER | 6. SPECIFIC ITEM(S) OR SERVICE(S) |

7. Medicare claim type: ☐ Part A ☐ Part B ☐ Part C - Medicare Advantage
☐ Part D - Medicare Prescription Drug Plan ☐ Entitlement/enrollment for Part A or Part B

8. Does this request involve authorization for an item or service that has not yet been furnished?
☐ Yes If Yes, skip to Block 9.
☐ No If No, Specific Dates of Service:

9. If the request involves authorization for a prescription drug under Medicare Part D, would application of the standard appellate timeframe seriously jeopardize the beneficiary's life, health, or ability to regain maximum function (as documented by a physician) such that expedited review is appropriate? ☐ Yes ☐ No

I request that the Medicare Appeals Council review the ALJ's ☐ decision or ☐ dismissal order [check one] dated_________________________. I disagree with the ALJ's action because (specify the parts of the ALJ's decision or dismissal you disagree with and why you think the ALJ was wrong):

________________________________________________________

________________________________________________________

________________________________________________________

________________________________________________________

(Attach additional sheets if you need more space)

**PLEASE ATTACH A COPY OF THE ALJ DECISION OR DISMISSAL ORDER YOU ARE APPEALING.**

| | | | | | |
|---|---|---|---|---|---|
| DATE | | | DATE | | |
| APPELLANT'S NAME (the party requesting review) | | | REPRESENTATIVE'S NAME (include signed appointment of representative if not already submitted) | | |
| ADDRESS | | | ADDRESS | | |
| CITY, STATE, ZIP CODE | | | CITY, STATE, ZIP CODE | | |
| TELEPHONE NUMBER | FAX NUMBER | E-MAIL | TELEPHONE NUMBER | FAX NUMBER | E-MAIL |

(SEE FURTHER INSTRUCTIONS ON PAGE 2)

Form DAB-101 (12/19)

If you have additional evidence, submit it with this request for review. If you need more time, you must request an extension of time in writing now, explaining why you are unable to submit the evidence or legal argument now.

*If you are a provider, supplier, or a beneficiary represented by a provider or supplier, and your case was reconsidered by a Qualified Independent Contractor (QIC), the Medicare Appeals Council will not consider new evidence related to issues the QIC has already considered unless you show that you have a good reason for submitting it for the first time to the Medicare Appeals Council.*

**IMPORTANT: Include the HICN or MBI and ALJ Appeal Number on any letter or other material you submit.**

This request must be received within 60 calendar days after you receive the ALJ's decision or dismissal, unless we extend the time limit for good cause. We assume you received the decision or dismissal 5 calendar days after it was issued, unless you show you received it later. If this request will not be received within 65 calendar days from the date on the decision or dismissal order, please explain why on a separate sheet.

---

You must file your request for review in writing with the Medicare Appeals Council at:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

You may send the request for review by U.S. Mail, a common carrier such as FedEx, or by fax to (202) 565-0227. If you send a fax, please do not also mail a copy. ***You must send a copy of your appeal to the other parties and indicate that all parties, to include all beneficiaries, have been copied on the request for review. For claims involving multiple beneficiaries, you may submit a copy of the cover letters issued or a spreadsheet of the beneficiaries and addresses who received a copy of the request for review.***

If you have any questions about your request for review or wish to request expedited review of a claim involving authorization of your prescription drug under Medicare Part D, you may call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100. You may also visit our web site at www.hhs.gov/dab for additional information on how to file your request for review.

---

**PRIVACY ACT STATEMENT**

The collection of information on this form is authorized by the Social Security Act (section 205(a) of title II, section 702 of title VII, section 1155 of Title XI, and sections 1852(g)(5), 1869(b)(1), 1871, 1872, and 1876(c)(5)(B) of title XVIII, as appropriate). The information provided will be used to further document your claim. Information requested on this form is voluntary, but failure to provide all or any part of the requested information may affect the determination of your claim. Information you furnish on this form may be disclosed by the Department of Health and Human Services or the Social Security Administration to another person or governmental agency only with respect to programs under the Social Security Act and to comply with Federal laws requiring the disclosure of information or the exchange of information between the Department of Health and Human Services, the Social Security Administration, or other agencies.

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Cleveland, OH**

| | | | |
|---|---|---|---|
| Appeal of: | **FOOT AND ANKLE SPECIALISTS OF CENTRAL PA, P.C.** | OMHA Appeal No.: | **3-14506748806** |
| Beneficiary: | [redacted] | Medicare Part: | **B** |
| Medicare No.: | [redacted] | Before: | **PA McAfee**<br>Administrative Law Judge |

Index of the Administrative Record and Exhibit List

| **Exhibit Record** | **Administrative File Reference** File Name | Page Range | | |
|---|---|---|---|---|
| Medical & Related: Medical Records | File 7 | 6 | : | 11 |
| Procedural - CMS Levels: Reconsideration | File 1 | 1 | : | 24 |
| Procedural - CMS Levels: Claim information | File 2 | 1 | : | 1 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 4 | 1 | : | 3 |
| Procedural - CMS Levels: Redetermination | File 5 | 1 | : | 15 |
| Procedural - CMS Levels: General | File 6 | 1 | : | 3 |
| Procedural - OMHA Level: Request for ALJ Hearing | File 3 | 1 | : | 109 |

Department of Health and Human Services
Office of the Secretary

**OFFICE OF MEDICARE HEARINGS AND APPEALS**

Kansas City Field Office
601 E. 12th Street
Suite 1753
Kansas City, MO 64106-2817
(816)-599-3300
(571) 457-7258 (Direct)
(816) 527-0051 (Fax)
(844) 566-6258 (Toll Free)

January 26, 2026

CRESCENT WOUND CARE INC
ATTN: FAISAL AMIN
5580 LA JOLLA BLVD #622
LA JOLLA, CA 92037

## NOTICE OF DECISION

Appellant: CRESCENT WOUND CARE INC
OMHA Appeal Number: 3-15453349007

Enclosed is the decision for the above case. This decision is based on the administrative record, including any evidence or testimony presented at the hearing, if one was held. The decision is not precedential, does not release the appellant from civil or criminal liability, and may be reopened at any time if it was procured by fraud or similar fault. In addition, the decision may be reopened within 180 calendar days from the date of the decision for good cause. Good cause exists when there is new and material evidence that was not available or known at the time of the decision and may result in a different conclusion, or when the evidence that was considered clearly shows on its face that an obvious error was made at the time of the decision.

**What if I disagree with the decision?**

If you disagree with the decision, you may file an appeal with the Medicare Appeals Council. Other parties may also appeal the decision. In addition, the Medicare Appeals Council may decide to review the decision on its own motion. If no party appeals the decision and the Medicare Appeals Council does not review the decision, the decision is binding on all parties and you and the other parties will not have the right to ask a federal court to review the decision.

If you are not already represented, you may appoint an attorney or other person to represent you.

**<u>How much time do I have to file an appeal?</u>**

The Medicare Appeals Council must receive your written appeal **within 60 calendar days** of the date that you receive this notice. The Medicare Appeals Council assumes you received this notice 5 calendar days after the date of the notice unless you show that you did not receive it within the 5-day period.

The Medicare Appeals Council will dismiss a late request for review unless you show that you had a good reason for not filing it on time.

**<u>How do I file an appeal?</u>**

To appeal, you must ask the Medicare Appeals Council to review the decision. Your appeal must be in writing, except that a request for expedited review of a Part D decision may be made orally as described below. Your appeal must identify the parts of the decision that you disagree with, and explain why you disagree.

You may submit a written request for review to the Medicare Appeals Council using one of three available methods: mail, fax, or electronic filing (E-File). **<u>Please do not submit your request for review using more than one method</u>**. Regardless of how you file your appeal, **you must always send a copy of your written request for review to the other parties who received a copy of the decision.**

If you are filing a written request for review, you may use the enclosed *Request for Review* (Form DAB-101), or you may write a letter containing the following:

- The beneficiary's/enrollee's name (and telephone number for Part D appeals);
- The beneficiary's/enrollee's Medicare number (Health Insurance Claim Number or Medicare Beneficiary Identifier);
- The item(s), service(s), or specific Part D drug(s) in dispute;
- The specific date(s) the item(s) or service(s) were provided, if applicable;
- For Part D appeals, the plan name;
- For Part D appeals, the OMHA Appeal Number on the adjudicator's decision;
- For Part D appeals requesting expedited review, a statement that you are requesting expedited review;
- The date of the adjudicator's decision (not required for Part D appeals); and
- Your name and signature, and, if applicable, the name and signature of your representative.

**Filing by mail:**

Mail your appeal and a copy of the enclosed decision to:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

**Filing by fax:**

Fax your appeal and a copy of the enclosed decision to **(202) 565-0227.**

**Filing by computer:**

Using your web browser, visit the Medicare Operations Division Electronic Filing System (MOD E-File) website at **https://dab.efile.hhs.gov/mod**.

To file a new appeal using MOD E-File, you will need to register by:

1. Clicking **Register** on the MOD E-File home page;
2. Entering the information requested on the "Register New Account" form; and
3. Clicking **Register Account** at the bottom of the form.

You will use the email address and password you provided during registration to access MOD E-File at **https://dab.efile.hhs.gov/mod/users/new**. You will be able to use MOD E-File to file and access the specific materials for appeals to which you are a party or a party's representative. You may check the status of any appeal on the website homepage without registering.

Once registered, you may file your appeal by:

1. Logging into MOD E-File;
2. Clicking the **File New Appeal** menu button on the top right of the screen;
3. Selecting the type of appeal you are filing (Request for Review or Request for Escalation); and
4. Entering the requested Appeal Information and uploading the requested Appeal Documents on the "File New Appeal - Medicare Operations Division" form. You are required to provide information and documents marked with an asterisk.

At a minimum, the Medicare Appeals Council requires an appellant to file a signed Request for Review and a copy of the enclosed decision. All documents should be submitted in Portable Document Format (PDF) whenever possible. Any document, including a Request for Review, will be deemed to have been filed on a given day, if it is uploaded to MOD E-File on or before 11:59 p.m. EST of that day.

Currently, the documents that may be filed electronically are the:

1. Request for Review;
2. Appointment of Representative form (OMB Form 0938-0950);
3. Copy of Administrative Law Judge or attorney adjudicator decision;
4. Memorandum or brief or other written statement in support of your appeal; and
5. Request to Withdraw your appeal

**No other documents aside from the five (5) listed categories above may be submitted through MOD E-File.**

**Filing by oral request (for expedited review only):**

Oral requests for expedited review of a Part D decision may be made by telephone to **(866) 365-8204.** You must provide the information listed in the bullet points above and a statement that you are requesting an expedited review within 60 calendar days after receipt of this notice of decision. The Medicare Appeals Council will document the oral request in writing and maintain the documentation in the case file.

Please note that your request for review will only be expedited (1) the appeal involves an issue specified in 42 C.F.R. § 423.566(b), but does not include solely a request for payment of a Part D drug that has already been furnished, and (2) the prescribing physician (or other prescriber) indicates, or the Medicare Appeals Council determines, that the standard time frame may seriously jeopardize your life, health, or ability to regain maximum function.

**How will the Medicare Appeals Council respond to my appeal?**

The Medicare Appeals Council will limit its review to the issues raised in the appeal, unless the appeal is filed by an unrepresented beneficiary/enrollee. It may change the parts of the decision that you agree with. It may adopt, modify, or reverse the decision, in whole or in part, or it may send the case back to OMHA for further action. It may also dismiss your appeal.

**Questions?**

You may call or write our office. A toll-free phone number and mailing address are at the top of this notice.

Additional information about filing an appeal with the Medicare Appeals Council is available at http://www.hhs.gov/dab/. You can also call the Medicare Appeals Council's staff in the Medicare

Operations Division of the Departmental Appeals Board at (202) 565-0100 or (866) 365-8204 (toll free), if you have questions about filing an appeal.

cc:

QIC - C2C B North
301 W Bay Street
Ste. 1110
Jacksonville, FL 32202

The Estate of [redacted]

Enclosures:
OMHA-152, Decision
DAB-101, Request for Review
OMHA-156, Exhibit List

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Kansas City, MO**

| | | | |
|---|---|---|---|
| Appeal of: | **CRESCENT WOUND CARE INC** | OMHA Appeal No.: | **3-15453349007** |
| Beneficiary: | [redacted] | Medicare Part: | B |
| Medicare No.: | [redacted] | Before: | **Steven R. Parrish** Administrative Law Judge |

## DECISION

After carefully considering the evidence and arguments presented in the record and at the hearing, the Administrative Law Judge assigned to hear this matter enters a **FULLY FAVORABLE** decision for the Appellant, Crescent Wound Care, Inc.

## Procedural History

Crescent Wound Care, Inc. ("Appellant") submitted a reimbursement claim to the Medicare Administrative Contractor ("Contractor"), for Biovance and skin graft utilizing date of service, July 11, 2024, and provided to the Beneficiary. Upon initial determination and redetermination, payment was denied. The Appellant requested reconsideration from the Qualified Independent Contractor ("QIC"), and the QIC also denied coverage. The Appellant timely requested a hearing before an Administrative Law Judge ("ALJ"), and the amount in controversy meets the jurisdictional requirements. 42 C.F.R. § 405.1002(a)(1); 42 C.F.R. § 405.1006(b)(1).

A hearing was held on January 14, 2026, before ALJ Steven R. Parrish. All Files and testimony were admitted into the record. The administrative record in this matter is now closed.

## Issues

Pursuant 42 C.F.R. § 405.1032, the issues before the ALJ include all of the issues brought out in the initial determination, coverage determination, or organization determination; redetermination; or reconsideration that were not decided entirely in a party's (not including CMS) favor.

## Legal Framework

### I. ALJ Review Authority

#### *A. Jurisdiction*

A party dissatisfied with a reconsideration decision is entitled to a hearing before an ALJ from the Department of Health and Human Services provided there is a sufficient amount in

controversy and a request for hearing is filed within sixty days after appellant receives the QIC's reconsideration decision. Act § 1869(b)(1)(A), (D) & (E); 42 C.F.R. § 405.1002.

### *B. Scope of Review*

The ALJ appeals process is governed by 42 C.F.R. §§ 405.1000–1054. The ALJ considers all issues not decided entirely in appellant's favor in the earlier reviews. 42 C.F.R. § 405.1032(a). The ALJ may also issue a decision on the record if the evidence in the hearing record supports a fully favorable finding. 42 C.F.R. §§ 405.1000(g) & 405.1038(a).

### *C. Standard of Review*

The ALJ is an independent finder-of-fact, conducts a *de novo* review, and issues a decision based on the hearing record. 42 C.F.R. § 405.1000(d). Appellant must furnish sufficient documentary evidence to support the claim. See 42 C.F.R. § 424.5(a)(6). Appellant bears the burden of proof by a preponderance of the evidence. 5 U.S.C. § 556(d) (setting forth the burden of proof to support a proffered position with "reliable, probative, and substantial evidence").

## II. Principles of Law

### *A. Medicare Coverage*

The statutory authority for the Medicare program is found in Title XVIII of the Act. 42 U.S.C. § 1395 *et. seq*. One function of the Centers for Medicare and Medicare Services ("CMS"), an agency within the Department of Health and Human Services ("HHS"), is to administer the Medicare program. The Secretary of HHS has the authority under § 1842 of the Act to enter into contracts to provide for the administration of benefits under Part B. 42 U.S.C. § 1395(u).

The Supplementary Medical Insurance program (Part B of Title XVIII of the Act) provides coverage for a variety of medical services and supplies furnished by physicians, or by others, in connection with physicians' services, for outpatient hospital services and for a number of other specific health-related items and services. *See* § 1832 of the Act; *see also* 42 C.F.R. § 410.10. Notwithstanding any other provision of Title XVIII, § 1862(a)(1) of the Act states that "no payment may be made under part A or part B for any expenses incurred for items or services which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." Moreover, the Secretary of HHS has authority to promulgate regulations which define or clarify the provisions of the Act. Those regulations are generally found at 42 C.F.R. § 410. Further, under § 1833(e) of the Act, the provider is responsible for providing sufficient documentation to support that payment is due and the services were medically necessary and provided as billed. *See also* 42 C.F.R. § 424.5(a)(6).

In the event the services are found to be "not medically reasonable and necessary" or "custodial in nature" under § 1862(a)(1) or (9) of the Act, § 1879 of the Act provides for limitation on liability for Medicare payments. If it is determined that Medicare cannot pay for the services at issue, § 1879 may assign liability for the payment of these services. If the beneficiary had no knowledge that the services would not be covered, but the provider of the services did, then the provider is liable and cannot seek or retain payment by the beneficiary. The regulations at 42 C.F.R. § 411.400 *et seq.* and Health Care Financing Administration ("HCFA") Ruling 95-1 address how to determine if the beneficiary or provider/supplier had the requisite degree of knowledge to make them liable under § 1879 of the Act. In general, the existence of a notice,

manual, or community medical standard is sufficient to constitute notice as applicable to the provider. 42 C.F.R. § 411.406.

### *B. Policy and Guidance*

Section 1871(a)(2) of the Act states that unless promulgated as a regulation by CMS, no rule, requirement, or statement of policy, other than an National Coverage Determination (NCD), can establish or change a substantive legal standard governing the scope of benefits or payment for services under the Medicare program. See also 42 C.F.R. § 405.860. However, in lieu of binding regulations with the full force and effect of law, CMS and its contractors have issued policy guidance that establishes criteria for coverage of selected types of medical items and services in the form of manuals and local coverage determinations ("LCDs"). ALJs are not bound by LCDs, but will give substantial deference to these policies when applicable. 42 C.F.R. § 405.1062. If an ALJ does not follow a policy in a particular case, the ALJ must explain why in the decision. 42 C.F.R. § 405.1062.

## <u>Findings of Fact and Analysis</u>

The Appellant is challenging the Medicare claim denial of Biovance and skin graft provided to the Beneficiary on July 11, 2024. The Appellant contends that the treatment was medically reasonable and necessary and fulfilled Medicare requirements. The QIC denied payment stating that the Appellant utilized a Q code that mandates denial. File 6, p. 4. The Contractor denied payment for various medical reasons, which the QIC did not address. On appeal, the Contractor submitted a position paper that now argues the item at issue is experimental and investigational and provides a review of the relevant literature.

The record before the ALJ raises serious concerns for the Appellant's constitutional due process right to notice of the basis upon which the government proposes to deprive them of protected interests. Fuentes v. Shevin, 407 U.S. 67, 81 (1972). The Contractor is precluded by law from raising a new basis for denial at this level of appeal. Pursuant 42 C.F.R. § 405.1032, the issues before the ALJ include all the issues brought out in the initial determination, coverage determination, or organization determination; redetermination; or reconsideration that were not decided entirely in a party's (not including CMS) favor. Because the only bases for denial at the lower levels were for medical reasonableness and the utilization of a Q code, as a matter of law, this decision will only address medical reasonableness and the utilization of a Q code.

The ALJ finds that the item at issue was medically reasonable and necessary. The Contractor has ceased to defend their medically reasonable and necessary argument and the QIC gave it no merit in its review of the record. This determination is further supported by the legal principle of *qui tacet consentire videtur* (he who is silent appears to consent), the QIC's sole focus on the use of Q codes thus renders any adverse determinations not included in the QIC's stated basis for denial to be implicitly accepted by the QIC as favorable.

As for the QIC's sole reliance on the utilization of a Q code to deny payment, the Contractor has stated in briefs in other hearings that utilization of a Q code is not in and of itself grounds for denial of payment. The ALJ agrees with the Contractor. Q codes are not determinative for payment. Consequently, the QIC's stated basis for denial likewise lacks merit.

Based on the foregoing, because the arguments presented by the Contractor and QIC lack merit, the Appellant is entitled to reimbursement under Part B of Medicare for the items furnished to the Beneficiary on July 11, 2024.

## Conclusions of Law

The decision is FULLY FAVORABLE. The Biovance and skin graft provided to the Beneficiary on July 11, 2024, was medically reasonable and necessary in accordance with § 1862(a)(1)(A) of the Act. Accordingly, the Appellant is entitled to reimbursement under Part B of Title XVIII of the Act for the Biovance and skin graft provided to the Beneficiary on the dates of service at issue.

## Order

The Medicare Contractor is **DIRECTED** to process this claim in accordance with this decision.

**SO ORDERED**



Steven R. Parrish
Administrative Law Judge

DEPARTMENT OF HEALTH AND HUMAN SERVICES (DHHS) / DEPARTMENTAL APPEALS BOARD Form DAB-101 (12/19)

**REQUEST FOR REVIEW OF ADMINISTRATIVE LAW JUDGE (ALJ) MEDICARE DECISION / DISMISSAL**

| | |
|---|---|
| 1. APPELLANT (the party requesting review) | 2. ALJ APPEAL NUMBER (on the decision or dismissal) |
| 3. BENEFICIARY* | 4. MEDICARE NUMBER (Health Insurance Claim Number (HICN) or Medicare Beneficiary Identifier (MBI))* |

*If the request involves multiple claims or multiple beneficiaries, attach a list of beneficiaries, Medicare numbers, and any other information to identify all claims being appealed.

| | |
|---|---|
| 5. PROVIDER, PRACTITIONER, OR SUPPLIER | 6. SPECIFIC ITEM(S) OR SERVICE(S) |

7. Medicare claim type: ☐ Part A ☐ Part B ☐ Part C - Medicare Advantage
☐ Part D - Medicare Prescription Drug Plan ☐ Entitlement/enrollment for Part A or Part B

8. Does this request involve authorization for an item or service that has not yet been furnished?
☐ Yes If Yes, skip to Block 9.
☐ No If No, Specific Dates of Service:

9. If the request involves authorization for a prescription drug under Medicare Part D, would application of the standard appellate timeframe seriously jeopardize the beneficiary's life, health, or ability to regain maximum function (as documented by a physician) such that expedited review is appropriate? ☐ Yes ☐ No

I request that the Medicare Appeals Council review the ALJ's ☐ decision or ☐ dismissal order [check one] dated____________________. I disagree with the ALJ's action because (specify the parts of the ALJ's decision or dismissal you disagree with and why you think the ALJ was wrong):

(Attach additional sheets if you need more space)

**PLEASE ATTACH A COPY OF THE ALJ DECISION OR DISMISSAL ORDER YOU ARE APPEALING.**

| | | | | | |
|---|---|---|---|---|---|
| DATE | | | DATE | | |
| APPELLANT'S NAME (the party requesting review) | | | REPRESENTATIVE'S NAME (include signed appointment of representative if not already submitted) | | |
| ADDRESS | | | ADDRESS | | |
| CITY, STATE, ZIP CODE | | | CITY, STATE, ZIP CODE | | |
| TELEPHONE NUMBER | FAX NUMBER | E-MAIL | TELEPHONE NUMBER | FAX NUMBER | E-MAIL |

(SEE FURTHER INSTRUCTIONS ON PAGE 2)

If you have additional evidence, submit it with this request for review. If you need more time, you must request an extension of time in writing now, explaining why you are unable to submit the evidence or legal argument now.

*If you are a provider, supplier, or a beneficiary represented by a provider or supplier, and your case was reconsidered by a Qualified Independent Contractor (QIC), the Medicare Appeals Council will not consider new evidence related to issues the QIC has already considered unless you show that you have a good reason for submitting it for the first time to the Medicare Appeals Council.*

**IMPORTANT: Include the HICN or MBI and ALJ Appeal Number on any letter or other material you submit.**

This request must be received within 60 calendar days after you receive the ALJ's decision or dismissal, unless we extend the time limit for good cause. We assume you received the decision or dismissal 5 calendar days after it was issued, unless you show you received it later. If this request will not be received within 65 calendar days from the date on the decision or dismissal order, please explain why on a separate sheet.

---

You must file your request for review in writing with the Medicare Appeals Council at:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

You may send the request for review by U.S. Mail, a common carrier such as FedEx, or by fax to (202) 565-0227. If you send a fax, please do not also mail a copy. ***You must send a copy of your appeal to the other parties and indicate that all parties, to include all beneficiaries, have been copied on the request for review. For claims involving multiple beneficiaries, you may submit a copy of the cover letters issued or a spreadsheet of the beneficiaries and addresses who received a copy of the request for review.***

If you have any questions about your request for review or wish to request expedited review of a claim involving authorization of your prescription drug under Medicare Part D, you may call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100. You may also visit our web site at www.hhs.gov/dab for additional information on how to file your request for review.

---

**PRIVACY ACT STATEMENT**

The collection of information on this form is authorized by the Social Security Act (section 205(a) of title II, section 702 of title VII, section 1155 of Title XI, and sections 1852(g)(5), 1869(b)(1), 1871, 1872, and 1876(c)(5)(B) of title XVIII, as appropriate). The information provided will be used to further document your claim. Information requested on this form is voluntary, but failure to provide all or any part of the requested information may affect the determination of your claim. Information you furnish on this form may be disclosed by the Department of Health and Human Services or the Social Security Administration to another person or governmental agency only with respect to programs under the Social Security Act and to comply with Federal laws requiring the disclosure of information or the exchange of information between the Department of Health and Human Services, the Social Security Administration, or other agencies.

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Kansas City, MO**

| | | | |
|---|---|---|---|
| Appeal of: | **CRESCENT WOUND CARE INC** | OMHA Appeal No.: | **3-15453349007** |
| Beneficiary: | [redacted] | Medicare Part: | **B** |
| Medicare No.: | [redacted] | Before: | **Steven R. Parrish**<br>Administrative Law Judge |

Index of the Administrative Record and Exhibit List

| **Exhibit Record** | **Administrative File Reference** File Name | Page Range | | |
|---|---|---|---|---|
| Medical & Related: Medical Necessity Documentation | File 16 | 1 | : | 10 |
| Medical & Related: Medical Records | File 7 | 1 | : | 287 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 1 | 1 | : | 3 |
| Procedural - CMS Levels: Redetermination Case File Request | File 4 | 1 | : | 1 |
| Procedural - CMS Levels: APPEAL CASE FILE | File 5 | 1 | : | 314 |
| Procedural - CMS Levels: Reconsideration | File 6 | 1 | : | 16 |
| Procedural - OMHA Level: CASE FILE | File 10 | 1 | : | 4222 |
| Procedural - OMHA Level: Notice of Hearing | File 11 | 1 | : | 11 |
| Procedural - OMHA Level: Response to Notice of Hrg | File 12 | 1 | : | 13 |
| Procedural - OMHA Level: Rep appointment | File 13 | 1 | : | 4 |
| Procedural - OMHA Level: Response to Notice of Hrg-QIC | File 14 | 1 | : | 2 |
| Procedural - OMHA Level: FINAL HEARING PACKET | File 17 | 1 | : | 760 |
| Procedural - OMHA Level: WITNESS LIST | File 18 | 1 | : | 3 |
| Procedural - OMHA Level: SIGNED DECISION | File 19 | 1 | : | 4 |
| Procedural - OMHA Level: Request for ALJ Hearing | File 2 | 1 | : | 117 |
| Procedural - OMHA Level: FINAL HEARING PACKET | File 20 | 1 | : | 715 |
| Procedural - OMHA Level: Request for ALJ Hearing | File 3 | 1 | : | 116 |
| Procedural - OMHA Level: Rep appointment | File 8 | 1 | : | 3 |
| Procedural - OMHA Level: TC REQUEST-DENIED | File 9 | 1 | : | 3 |
| Proceeding (Audios): General: Consolidated Hearing recording | File 15 | 1 | : | 1 |

Department of Health and Human Services
Office of the Secretary

**OFFICE OF MEDICARE HEARINGS AND APPEALS**

Cleveland Field Office
1001 Lakeside Ave
Suite 700
Cleveland, OH 44114
216-462-4100
(216) 462-4157 (Direct)
216-615-9029 (Fax)
866-236-5089 (Toll Free)

May 19, 2025

BUTLER SNOW LLP
ATTN: ROBERT GREENLEE
1020 HIGHLAND COLONY PKWY STE 1400
RIDGELAND, MS 39158

# NOTICE OF DECISION

Appellant: WOUND MANAGEMENT SPECIALISTS, LLC
OMHA Appeal Number: 3-14805656359

Enclosed is the decision for the above case. This decision is based on the administrative record, including any evidence or testimony presented at the hearing, if one was held. The decision is not precedential, does not release the appellant from civil or criminal liability, and may be reopened at any time if it was procured by fraud or similar fault. In addition, the decision may be reopened within 180 calendar days from the date of the decision for good cause. Good cause exists when there is new and material evidence that was not available or known at the time of the decision and may result in a different conclusion, or when the evidence that was considered clearly shows on its face that an obvious error was made at the time of the decision.

**What if I disagree with the decision?**

If you disagree with the decision, you may file an appeal with the Medicare Appeals Council. Other parties may also appeal the decision. In addition, the Medicare Appeals Council may decide to review the decision on its own motion. If no party appeals the decision and the Medicare Appeals Council does not review the decision, the decision is binding on all parties and you and the other parties will not have the right to ask a federal court to review the decision.

If you are not already represented, you may appoint an attorney or other person to represent you.

**<u>How much time do I have to file an appeal?</u>**

The Medicare Appeals Council must receive your written appeal **within 60 calendar days** of the date that you receive this notice. The Medicare Appeals Council assumes you received this notice 5 calendar days after the date of the notice unless you show that you did not receive it within the 5-day period.

The Medicare Appeals Council will dismiss a late request for review unless you show that you had a good reason for not filing it on time.

**<u>How do I file an appeal?</u>**

To appeal, you must ask the Medicare Appeals Council to review the decision. Your appeal must be in writing, except that a request for expedited review of a Part D decision may be made orally as described below. Your appeal must identify the parts of the decision that you disagree with, and explain why you disagree.

You may submit a written request for review to the Medicare Appeals Council using one of three available methods: mail, fax, or electronic filing (E-File). **<u>Please do not submit your request for review using more than one method</u>**. Regardless of how you file your appeal, **you must always send a copy of your written request for review to the other parties who received a copy of the decision.**

If you are filing a written request for review, you may use the enclosed *Request for Review* (Form DAB-101), or you may write a letter containing the following:

- The beneficiary's/enrollee's name (and telephone number for Part D appeals);
- The beneficiary's/enrollee's Medicare number (Health Insurance Claim Number or Medicare Beneficiary Identifier);
- The item(s), service(s), or specific Part D drug(s) in dispute;
- The specific date(s) the item(s) or service(s) were provided, if applicable;
- For Part D appeals, the plan name;
- For Part D appeals, the OMHA Appeal Number on the adjudicator's decision;
- For Part D appeals requesting expedited review, a statement that you are requesting expedited review;
- The date of the adjudicator's decision (not required for Part D appeals); and
- Your name and signature, and, if applicable, the name and signature of your representative.

**Filing by mail:**

Mail your appeal and a copy of the enclosed decision to:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

**Filing by fax:**

Fax your appeal and a copy of the enclosed decision to **(202) 565-0227.**

**Filing by computer:**

Using your web browser, visit the Medicare Operations Division Electronic Filing System (MOD E-File) website at **https://dab.efile.hhs.gov/mod**.

To file a new appeal using MOD E-File, you will need to register by:

1. Clicking **Register** on the MOD E-File home page;
2. Entering the information requested on the "Register New Account" form; and
3. Clicking **Register Account** at the bottom of the form.

You will use the email address and password you provided during registration to access MOD E-File at **https://dab.efile.hhs.gov/mod/users/new**. You will be able to use MOD E-File to file and access the specific materials for appeals to which you are a party or a party's representative. You may check the status of any appeal on the website homepage without registering.

Once registered, you may file your appeal by:

1. Logging into MOD E-File;
2. Clicking the **File New Appeal** menu button on the top right of the screen;
3. Selecting the type of appeal you are filing (Request for Review or Request for Escalation); and
4. Entering the requested Appeal Information and uploading the requested Appeal Documents on the "File New Appeal - Medicare Operations Division" form. You are required to provide information and documents marked with an asterisk.

At a minimum, the Medicare Appeals Council requires an appellant to file a signed Request for Review and a copy of the enclosed decision. All documents should be submitted in Portable Document Format (PDF) whenever possible. Any document, including a Request for Review, will be deemed to have been filed on a given day, if it is uploaded to MOD E-File on or before 11:59 p.m. EST of that day.

Currently, the documents that may be filed electronically are the:

1. Request for Review;
2. Appointment of Representative form (OMB Form 0938-0950);
3. Copy of Administrative Law Judge or attorney adjudicator decision;
4. Memorandum or brief or other written statement in support of your appeal; and
5. Request to Withdraw your appeal

**No other documents aside from the five (5) listed categories above may be submitted through MOD E-File.**

**Filing by oral request (for expedited review only):**

Oral requests for expedited review of a Part D decision may be made by telephone to **(866) 365-8204.** You must provide the information listed in the bullet points above and a statement that you are requesting an expedited review within 60 calendar days after receipt of this notice of decision. The Medicare Appeals Council will document the oral request in writing and maintain the documentation in the case file.

Please note that your request for review will only be expedited (1) the appeal involves an issue specified in 42 C.F.R. § 423.566(b), but does not include solely a request for payment of a Part D drug that has already been furnished, and (2) the prescribing physician (or other prescriber) indicates, or the Medicare Appeals Council determines, that the standard time frame may seriously jeopardize your life, health, or ability to regain maximum function.

**How will the Medicare Appeals Council respond to my appeal?**

The Medicare Appeals Council will limit its review to the issues raised in the appeal, unless the appeal is filed by an unrepresented beneficiary/enrollee. It may change the parts of the decision that you agree with. It may adopt, modify, or reverse the decision, in whole or in part, or it may send the case back to OMHA for further action. It may also dismiss your appeal.

**Questions?**

You may call or write our office. A toll-free phone number and mailing address are at the top of this notice.

Additional information about filing an appeal with the Medicare Appeals Council is available at http://www.hhs.gov/dab/. You can also call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100 or (866) 365-8204 (toll free), if you have questions about filing an appeal.

cc:

C2C Innovative Solutions, Inc.
Part B South C2C
301 W Bay Street, Ste. 1110
Jacksonville, FL 32231-4006

[redacted]

[IF MULTIPLE BENEFICIARY APPEAL ONLY INPUT: To protect beneficiary privacy, names and addresses of other individuals have been removed from your copy of this notice.]

Enclosures:
OMHA-152, Decision
DAB-101, Request for Review
OMHA-156, Exhibit List

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
Cleveland, OH

| | | | |
|---|---|---|---|
| Appeal of: | WOUND MANAGEMENT SPECIALISTS, LLC | OMHA Appeal No.: | 3-14805656359 |
| Beneficiary: | [redacted] | Medicare Part: | B |
| Medicare No.: | [redacted] | Before: | Andrew Henningfeld (CLE) Administrative Law Judge |

## DECISION

After carefully considering the evidence, the undersigned enters a FULLY FAVORABLE decision for the appellant.

## PROCEDURAL HISTORY

The appellant seeks coverage of Woundfix Biowound Plus Xplus (Q4217) and application of a skin substitute graft (15275) provided to the beneficiary on June 27, 2023, August 8, 2023, August 15, 2023, and August 22, 2023. Following an unfavorable reconsideration, the appellant timely filed a written request for an Administrative Law Judge hearing. A telephone hearing occurred on April 24, 2025.Attorney Robert Greenlee represented the appellant and Barrett Beesly appeared on behalf of the appellant. Both individuals were sworn according to law. The CMS contractors were notified of the hearing but did not appear. The appellant is a proper party and the amount in controversy is met. All files listed in the Exhibit Record have been admitted.

## ISSUE

The issue is whether the services/items at issue are covered under Medicare B.

## APPLICABLE LAW AND POLICY

Title XVIII § 1833(e) of the Social Security Act provides that no payment shall be made to any provider of services or other person under this part unless there has been furnished such information as may be necessary in order to determine the amounts due such provider or other person under this part for the period with respect to which the amounts are being paid or for any prior period.

Title XVIII § 1862(a)(1)(A) of the Social Security Act provides that, "Notwithstanding any other provision of this title, no payment may be made under part A or part B for any expenses incurred for items or services . . . which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member."
LCD L35041 Application of Bioengineered Skin Substitutes to Lower Extremity Chronic Non-Healing Wounds

**History/Background and/or General information**

The addition of Skin Substitutes or Cellular or Tissue Based Products (CTPs) to certain wounds may afford a healing advantage over dressings and conservative treatments when these options appear insufficient to affect complete healing.

There are currently a wide variety of bioengineered products available for soft tissue coverage to affect closure. These products may be derived from allogeneic, xenogeneic, synthetic sources or a combination of any or all of these types of materials. However, without the component of the recipient's own distinct epithelium and cellular skin elements, permanent skin replacement or coverage by the graft cannot be accomplished.

For the purpose of this LCD, consideration is given to the use of dermal or epidermal substitute tissue of human or non-human origin, with or without bioengineered or processed elements, with or without metabolically active elements, with a designated use as coverage for a superficial skin deficit that has persisted, despite optimal wound care for a period of 4 weeks or greater. These products are those referred to as Human Cellular or Tissue Based Products (CTPs) or Skin Substitutes.

Evaluation of the clinical literature indicates that studies comparing the efficacy of bioengineered skin substitute to alternative wound care approaches with patients' autologous skin are limited in number, apply mainly to generally healthy patients, and examine only a small portion of the skin substitute products available in the United States. **Therefore, all products with U.S. Food and Drug Administration (FDA) clearance/approval or designated 361 HCT/P exemption used in accordance with that product's individualized application guidelines will be equally considered for the purpose of this LCD and may be considered reasonable and necessary.**
**Regulatory Status**

**US Food and Drug Administration (FDA) Governing Skin Substitute Products**

The FDA does not refer to any product or class of products as "skin substitutes." However, products commonly described as "skin substitutes" are regulated by FDA under one of the four categories described below depending on the origin and composition of the product and listed as a "Skin Substitute" with a HCPCS code Q41XX.

1. **Human Cells, Tissues, and Cellular and Tissue-Based Products** - Cells and tissues taken from human donors and transplanted to a recipient are regulated under PHS 361 [21 CFR 1270 & 1271]. This regulation describes the rules concerning the use of HCT/Ps for human medical purposes. The final rule, 21 CFR Part 1271, became effective on April 4, 2001, for human tissues intended for transplantation that are regulated under section 361 of the PHS Act and 21 CFR Part 1270. HCT/Ps are regulated by the Center for Biologics Evaluation and Research (CBER). The Center for Biologics Evaluation and Research is responsible for regulating biological and related products including blood, vaccines, allergenics, tissues, and cellular and gene therapies. Establishments producing HCT/Ps must register with FDA and list their HCT/Ps. HCT/Ps establishments are not required to demonstrate the safety or effectiveness of their products and FDA does not evaluate the safety or effectiveness of these products.

Chronic Wounds are defined as wounds that do not respond to standard wound treatment for at least a 30 day period during organized comprehensive conservative therapy.

For all wounds, documentation (as outlined in the documentation requirements of the policy) and a comprehensive treatment plan, before initiation of a specialized wound therapy product is required.

For purposes of this LCD a **Failed Response** is defined as an ulcer or skin deficit that has failed to respond to documented appropriate wound-care measures, has increased in size or depth, or has not changed in baseline size or depth and has no indication that improvement is likely (such as granulation, epithelialization or progress towards closing).

Medicare covers application of skin substitutes to Ulcers or Wounds with **Failed Response** that are:

- Partial- or full-thickness ulcers, not involving tendon, muscle, joint capsule or exhibiting exposed bone or sinus tracts, with a clean granular base;
- Skin deficit at least 1.0 square centimeter (cm) in size;
- Clean and free of necrotic debris or exudate;
- Have adequate circulation/oxygenation to support tissue growth/wound healing as evidenced by physical examination (e.g., Ankle-Brachial Index [ABI] of no less than 0.60, toe pressure greater than 30 millimeters of mercury [mmHg]);
- For diabetic foot ulcers, the patient's medical record reflects a diagnosis of Type 1 or Type 2 Diabetes and also reflects medical management for this condition.

Wound healing is impaired by the systemic use of tobacco. Therefore, ideally patients who have smoked will have ceased smoking or have refrained from systemic tobacco intake for at least 4 weeks during conservative wound care and prior to planned bioengineered skin replacement therapy.

Documentation (in the pre-service record) specifically addressing circumstances as to why the wound has failed to respond to standard wound care treatment of greater than 4 weeks and must reference specific interventions that have failed. Such record should include updated medication history, review of pertinent medical problems that may have occurred since the previous wound evaluation, and explanation of the planned skin replacement surgery with choice of skin substitute graft product. The procedure risks and complications should also be reviewed and documented. Documentation of smoking cessation counseling and cessation measures prescribed, if applicable, must also be documented in the patient's record.

Application of a skin substitute graft for lower extremity chronic wound (DFU and VLU) will be covered when the following conditions are met for the individual patient:

- Presence of neuropathic diabetic foot ulcer(s) having failed to respond to documented conservative wound-care measures of greater than four weeks, during which the patient is compliant with recommendations, and without evidence of underlying osteomyelitis or nidus of infection.
- Presence of a venous stasis ulcer for at least 3 months but unresponsive to appropriate wound care for at least 30 days with documented compliance.
- Presence of a full thickness skin loss ulcer that is the result of abscess, injury or trauma that has failed to respond to appropriate control of infection, foreign body, tumor resection, or other disease process for a period of 4 weeks or longer.

In all wound management the ulcer must be free of infection and underlying osteomyelitis with documentation of the conditions that have been treated and resolved prior to the institution of

skin substitute therapy. For purposes of this LCD, appropriate therapy includes, but is not limited to:

- Control of edema, venous hypertension or lymphedema
- Control of any nidus of infection or colonization with bacterial or fungal elements
- Elimination of underlying cellulitis, osteomyelitis, foreign body, or malignant process
- Appropriate debridement of necrotic tissue or foreign body (exposed bone or tendon)
- For diabetic foot ulcers, appropriate non-weight bearing or off-loading pressure
- For venous stasis ulcers, compression therapy provided with documented diligent use of multilayer dressings, compression stockings of greater than 20 mmHg pressure, or pneumatic compression
- Provision of wound environment to promote healing (protection from trauma and contaminants, elimination of inciting or aggravating processes)

## FINDINGS OF FACT AND ANALYSIS

At issue is a dehydrated amniotic membrane product for use as a barrier, wrap, or cover for acute or chronic wounds. Wound Fix obtained FDA clearance/approval as a designated § 361 human cell, tissue or cellular or tissue/based product (HCT/P). In its agency approval, the FDA state that Wound Fix, “when intended to be used as a ‘barrier, wrap or cover,’ appears to meet all the criteria for registration under section 361 of the PHS Act and the regulations in 21 CR part 1271.” (File 1, p. 7.)

In this case, beneficiary was diagnosed with diabetes mellitus and chronic venous insufficiency and suffered from several chronic left lower extremity diabetic ulcers. The medical records indicate that conservative treatment included wound cleaning, medication application, sterile wound coverings, compression and offloading since at least March 2023. Despite these measures, the wounds were “deteriorating” and increasing in size. The beneficiary’s ABI was .89 prior to starting treatment with the item at issue. Per the June 27, 2023, progress note, wound #1 measured 13.6 sq. cm, and wound #2 measured 2.6 sq. cm, both without signs of infection and not involving tendon, muscle, joint capsule or exhibiting exposed bone or sinus tracts. The beneficiary’s wounds were “improving” following skin substitute placement the week prior, and she again underwent debridement with skin substitute placement. On August 8, 2023, both wounds were described as “improving”, and both were debrided with skin substitute placement following. By August 15, 2023, wound #2 was resolved and wound #1 measured 4.62 sq. cm. The beneficiary underwent debridement and skin substitute placement on both August 15, 2023, and August 22, 2023, and by August 29, the wound measured 1.5 sq. cm. (File 6, pp. 63-148; Hearing Audio (April 24, 2025).)

The CMS contractors did not question the trial of conservative treatment or that baseline requirements had been met but denied coverage citing lack of clinical trials to establish the safety and effectiveness of Wound Fix when used as a covering to treat the condition at issue. (File 2.)

Per LCD 35041, “[e]valuation of the clinical literature indicates that studies comparing the efficacy of bioengineered skin substitute to alternative wound care approaches with patients’ autologous skin are limited in number, apply mainly to generally healthy patients, and examine only a small portion of the skin substitute products available in the United States. **Therefore, all products with U.S. Food and Drug Administration (FDA) clearance/approval or designated 361 HCT/P exemption used in accordance with that product’s individualized application guidelines will be equally considered for the purpose of this LCD and may be considered reasonable and necessary.**” (Emphasis in the original.) The appellant testified that the product

at issue is not a treatment but rather a covering that affords a healing advantage over conservative treatment when conservative treatment appears insufficient to effect healing. The appellant noted that this healing advantage is why the products may be considered reasonable and necessary per the applicable LCD. The appellant stated that there is no requirement in the LCD for providers to submit peer-reviewed literature to support claim submissions and argued that the LCD requirements have been met for coverage.

In this case, a preponderance of the evidence shows that coverage criteria have been met. The beneficiary had received months of conservative treatment with no success. As such, the wound care specialists recommended the item at issue as the wound measurements, type, and the beneficiary's ABI all met LCD requirements. The wound was regularly debrided, treated, and covered with the item at issue, resulting in healing where there had previously been none. As such, payment may be made.

## CONCLUSIONS OF LAW

The services/items at issue are covered under Part B.

## ORDER

For the reasons discussed above, this decision is FULLY FAVORABLE. The undersigned directs the Medicare administrative contractor to process the claims in accordance with this decision.

**SO ORDERED**

Andrew Henningfeld (CLE)
Administrative Law Judge

DEPARTMENT OF HEALTH AND HUMAN SERVICES (DHHS) / DEPARTMENTAL APPEALS BOARD Form DAB-101 (12/19)

**REQUEST FOR REVIEW OF ADMINISTRATIVE LAW JUDGE (ALJ) MEDICARE DECISION / DISMISSAL**

| | |
|---|---|
| 1. APPELLANT (the party requesting review) | 2. ALJ APPEAL NUMBER (on the decision or dismissal) |
| 3. BENEFICIARY* | 4. MEDICARE NUMBER (Health Insurance Claim Number (HICN) or Medicare Beneficiary Identifier (MBI))* |

*If the request involves multiple claims or multiple beneficiaries, attach a list of beneficiaries, Medicare numbers, and any other information to identify all claims being appealed.

| | |
|---|---|
| 5. PROVIDER, PRACTITIONER, OR SUPPLIER | 6. SPECIFIC ITEM(S) OR SERVICE(S) |

7. Medicare claim type: ☐ Part A ☐ Part B ☐ Part C - Medicare Advantage
☐ Part D - Medicare Prescription Drug Plan ☐ Entitlement/enrollment for Part A or Part B

8. Does this request involve authorization for an item or service that has not yet been furnished?
☐ Yes If Yes, skip to Block 9.
☐ No If No, Specific Dates of Service:

9. If the request involves authorization for a prescription drug under Medicare Part D, would application of the standard appellate timeframe seriously jeopardize the beneficiary's life, health, or ability to regain maximum function (as documented by a physician) such that expedited review is appropriate? ☐ Yes ☐ No

I request that the Medicare Appeals Council review the ALJ's ☐ decision or ☐ dismissal order [check one] dated__________________________. I disagree with the ALJ's action because (specify the parts of the ALJ's decision or dismissal you disagree with and why you think the ALJ was wrong):

________________________________________

________________________________________

________________________________________

________________________________________

(Attach additional sheets if you need more space)

**PLEASE ATTACH A COPY OF THE ALJ DECISION OR DISMISSAL ORDER YOU ARE APPEALING.**

| | | | | | |
|---|---|---|---|---|---|
| DATE | | | DATE | | |
| APPELLANT'S NAME (the party requesting review) | | | REPRESENTATIVE'S NAME (include signed appointment of representative if not already submitted) | | |
| ADDRESS | | | ADDRESS | | |
| CITY, STATE, ZIP CODE | | | CITY, STATE, ZIP CODE | | |
| TELEPHONE NUMBER | FAX NUMBER | E-MAIL | TELEPHONE NUMBER | FAX NUMBER | E-MAIL |

(SEE FURTHER INSTRUCTIONS ON PAGE 2)

If you have additional evidence, submit it with this request for review. If you need more time, you must request an extension of time in writing now, explaining why you are unable to submit the evidence or legal argument now.

*If you are a provider, supplier, or a beneficiary represented by a provider or supplier, and your case was reconsidered by a Qualified Independent Contractor (QIC), the Medicare Appeals Council will not consider new evidence related to issues the QIC has already considered unless you show that you have a good reason for submitting it for the first time to the Medicare Appeals Council.*

**IMPORTANT: Include the HICN or MBI and ALJ Appeal Number on any letter or other material you submit.**

This request must be received within 60 calendar days after you receive the ALJ's decision or dismissal, unless we extend the time limit for good cause. We assume you received the decision or dismissal 5 calendar days after it was issued, unless you show you received it later. If this request will not be received within 65 calendar days from the date on the decision or dismissal order, please explain why on a separate sheet.

---

You must file your request for review in writing with the Medicare Appeals Council at:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

You may send the request for review by U.S. Mail, a common carrier such as FedEx, or by fax to (202) 565-0227. If you send a fax, please do not also mail a copy. ***You must send a copy of your appeal to the other parties and indicate that all parties, to include all beneficiaries, have been copied on the request for review. For claims involving multiple beneficiaries, you may submit a copy of the cover letters issued or a spreadsheet of the beneficiaries and addresses who received a copy of the request for review.***

If you have any questions about your request for review or wish to request expedited review of a claim involving authorization of your prescription drug under Medicare Part D, you may call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100. You may also visit our web site at www.hhs.gov/dab for additional information on how to file your request for review.

---

**PRIVACY ACT STATEMENT**

The collection of information on this form is authorized by the Social Security Act (section 205(a) of title II, section 702 of title VII, section 1155 of Title XI, and sections 1852(g)(5), 1869(b)(1), 1871, 1872, and 1876(c)(5)(B) of title XVIII, as appropriate). The information provided will be used to further document your claim. Information requested on this form is voluntary, but failure to provide all or any part of the requested information may affect the determination of your claim. Information you furnish on this form may be disclosed by the Department of Health and Human Services or the Social Security Administration to another person or governmental agency only with respect to programs under the Social Security Act and to comply with Federal laws requiring the disclosure of information or the exchange of information between the Department of Health and Human Services, the Social Security Administration, or other agencies.

Department of Health and Human Services
OFFICE OF MEDICARE HEARINGS AND APPEALS
Cleveland, OH

| | |
|---|---|
| Appeal of: **WOUND MANAGEMENT SPECIALISTS, LLC** | OMHA Appeal No.: **3-14805656359** |
| Beneficiary: [redacted] | Medicare Part: **B** |
| Medicare No.: [redacted] | Before: **Andrew Henningfeld (CLE)**<br>Administrative Law Judge |

Index of the Administrative Record and Exhibit List

| **Exhibit Record** | **Administrative File Reference** File Name | Page Range | | |
|---|---|---|---|---|
| Medical & Related: Medical Records | File 6 | 63 | : | 148 |
| Procedural - CMS Levels: Reconsideration | File 2 | 1 | : | 21 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 3 | 1 | : | 3 |
| Procedural - CMS Levels: Effectuation notice | File 4 | 1 | : | 13 |
| Procedural - CMS Levels: Request for Redetermination | File 5 | 1 | : | 211 |
| Procedural - CMS Levels: Request for Reconsideration | File 6 | 1 | : | 296 |
| Procedural - CMS Levels: Redetermination Case File Request | File 7 | 1 | : | 3 |
| Procedural - CMS Levels: Claim information | File 8 | 1 | : | 4 |
| Procedural - OMHA Level: Request for ALJ Hearing | File 1 | 1 | : | 29 |
| Procedural - OMHA Level: Rep appointment | File 1 | 4 | : | 4 |
| Procedural - OMHA Level: Rep appointment: Updated AOR | File 10 | 1 | : | 6 |
| Procedural - OMHA Level: Response to Notice of Hrg: REP w AOR | File 10 | 1 | : | 6 |
| Procedural - OMHA Level: Response to Notice of Hrg | File 10 | 1 | : | 6 |
| Procedural - OMHA Level: Signed Decision | File 12 | 1 | : | 5 |
| Procedural - OMHA Level: Notice of Hearing | File 9 | 1 | : | 9 |
| Proceeding (Audios): Hearing audio | File 11 | 1 | : | 1 |

**Confidentiality Notice**: This message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender and destroy all copies of the original message.

**To**:
Attn: Thomas McMahon
Wound Management Specialists LLC
778 Liberty Rd.
Flowood, Mississippi 39232-9300

**From**:
South Western Unified Program Integrity Contractor (SW UPIC)
14643 Dallas Parkway, Suite 400
Dallas, TX 75254

*The remainder of this page is intentionally blank.*

CMS CENTERS FOR MEDICARE & MEDICAID SERVICES

Unified Program Integrity Contractor
South Western Jurisdiction (UPICSW)

Delivery Method: Federal Express

April 21, 2026

**To**:
Attn: Thomas McMahon
Wound Management Specialists LLC
778 Liberty Rd.
Flowood, Mississippi 39232-9300

**Reference Number**: PSP-260410-00003
**Provider Name:** Wound Management Specialists LLC
**Provider NPI:** 1972150084
**Provider PTAN(s):** [redacted]

**Subject**: Notice of Suspension of Medicare Payments

Dear Wound Management Specialists LLC:

The purpose of this letter is to notify you that the Centers for Medicare & Medicaid Services (CMS), after consulting with the Department of Health and Human Services Office of Inspector General, has decided to fully suspend Medicare payments to Wound Management Specialists LLC, pursuant to 42 C.F.R.§ 405.371(a)(1). The suspension of Medicare payments took effect on March 3, 2026. Prior notice of this suspension was not provided because giving prior notice would place additional Medicare funds at risk and hinder CMS' ability to recover any determined overpayment. See 42 C.F.R. § 405.372(a)(3).

The decision to suspend Medicare payments is based on reliable information that an overpayment exists or that the payments to be made may not be correct. 42 C.F.R. § 405.371(a)(1).

**Allegations**

The suspension of Medicare payments to Wound Management Specialists LLC is based on, but not limited to, information that Wound Management Specialists LLC misrepresented services billed to the Medicare program. Specifically, the suspension of Medicare payments is based on the following allegations as well as the example claims below, which we have included to provide evidence of the findings.

**Allegation 1:** Wound Management Specialists LLC billed Medicare for skin substitute services that were not rendered, as evidenced by:

1. Data analysis revealed that Wound Management Specialists LLC improperly billed Medicare for services provided to 53 beneficiaries after their reported date of death, 11 of which had multiple dates of service after their reported date of death.

| Claim Control Number (CCN) | Date(s) of Service |
| --- | --- |
| [redacted] | 10/03/2025 |
| [redacted] | 10/06/2025 |
| [redacted] | 03/04/2026 |
| [redacted] | 03/04/2026 |
| [redacted] | 10/31/2025 |

**Allegation 2:** Wound Management Specialists LLC billed Medicare for skin substitute services that were not medically necessary, as evidenced by:

1. Data analysis revealed that Wound Management Specialists LLC has a pattern or practice of submitting claims that fail to meet Medicare requirements. Specifically, Wound Management Specialists LLC has history of non-compliant billing for skin substitute services which found services to be not reasonable and/or necessary which has resulted in the issuance of eight overpayments on six prior occasions: July 7, 2023; May 2, 2024; October 24, 2024; April 11, 2025; June 18, 2025; and August 19, 2025. This continued non-compliance indicates a systemic failure to implement corrective actions and adhere to Medicare billing requirements.

| CCN | Date(s) of Service |
| --- | --- |
| [redacted] | 09/06/2022 |
| [redacted] | 09/29/2022 |
| [redacted] | 09/19/2022 |
| [redacted] | 09/21/2022 |
| [redacted] | 06/21/2022 |
| [redacted] | 12/18/2024 |
| [redacted] | 12/18/2024 |
| [redacted] | 12/03/2024 |
| [redacted] | 12/10/2024 |

**Investigation Process**

The investigation into this matter is ongoing, and the claims listed above represent only a sample of the problematic claims identified. The summary of allegations and the claims listed above provide notice of the reasons for the payment suspension. As the investigation continues, you may be asked to provide information. Wound Management Specialists LLC must be responsive to requests for documentation and information to prevent claim denials and other administrative actions.

**Right to Rebut**

Pursuant to 42 C.F.R. § 405.372(b), you have the right to submit a written rebuttal statement, including evidence supporting your rebuttal statement. Evidence provided in your rebuttal should be specific to each allegation on which the suspension was based, including but not limited to the claim examples provided.[1] Merely providing general assertions or denials typically will be insufficient to overcome the allegation(s). Your rebuttal statement should be received within 15 business days of receipt of this notice. Requests for additional time to submit a rebuttal statement will be considered on a case-by-case basis.

If you choose to submit a rebuttal statement, your rebuttal statement should be sent to:

Qlarant Integrity Solutions, LLC
Attn: Rebuttal and Suspension Department
14643 Dallas Parkway, Suite 400
Dallas, TX 75254

**Notice of Rebuttal Response**

The suspension of Medicare payments will continue while your rebuttal statement is being reviewed. *See* 42 C.F.R. § 405.375(a). You will be notified in writing of the response. The response notice will include the findings regarding each allegation or condition upon which the suspension is based and an explanation as to why the suspension of Medicare payments will continue or be terminated. *See* 42 C.F.R. § 405.375(b)(2).

The response following your rebuttal is not an initial determination and is not appealable. *See* 42 C.F.R. § 405.375(c).

**Disposition of Suspended Funds**

The suspension of Medicare payments is based upon reliable information that an overpayment exists and, as such, a determination will be made regarding an overpayment. A final decision regarding any overpayment may be delayed until the resolution of the investigation. See 42 C.F.R. § 405.372(c)(2). An investigation is resolved when "legal action is terminated by settlement, judgment, or dismissal, or when the case is closed or dropped because of insufficient information that an overpayment exists." 42 C.F.R. § 405.370. If an overpayment is determined, you will receive a separate written notice from the Medicare Administrative Contractor(s) that process the Medicare claims you submit; Novitas Solutions, Inc., Wisconsin Physicians Service, First Coast Service Options, Inc., Palmetto GBA, and CGS Administrators, LLC, advising you of the reasons for the overpayment determination. 42 C.F.R. § 405.921.

When the payment suspension has been removed, any money withheld as a result of the payment suspension shall be applied first to reduce or eliminate any overpayment, including any interest assessed

---

[1] References in this letter to "rebuttal statement" include references to "evidence" submitted unless otherwise indicated.

under 42 C.F.R. § 405.378, and then to reduce any other obligation to CMS or to the U.S. Department of Health and Human Services in accordance with 42 C.F.R. § 405.372(e). In the absence of a legal requirement that the balance be paid to another entity, the excess will be released to Wound Management Specialists LLC.

**<u>Processing of Claims During the Suspension</u>**
Claims will continue to be processed during the suspension period. You will be notified about bill/claim determinations, including appeal rights regarding any bills/claims that are denied. The payment suspension also applies to claims in process.

**<u>Statutory Obligation to Return Overpayments</u>**
As a Medicare provider, you are responsible for monitoring compliance with Medicare requirements. Upon discovering that payments were received in error, you are statutorily required to return the overpayments within 60 days. *See* § 1128J(d)(2) of the Social Security Act and 42 C.F.R. § 401.305.

If you have any questions regarding the status of the suspension, please direct your inquiry to **ProviderSuspensionSW@Qlarant.com**. Any request to remove the suspension must be submitted through the written rebuttal process described above.

Sincerely,

Qlarant Integrity Solutions, LLC
South Western Unified Program Integrity Contractor (SW UPIC)

cc: Centers for Medicare & Medicaid Services