IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

---

CHRIS MCGEE, *et al.*,

Plaintiffs,

v.

ROBERT F. KENNEDY, JR., *et al.*,

Defendants.

Civil Action No. 4:26-CV-243-O

# REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

RYAN RAYBOULD
UNITED STATES ATTORNEY

Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8626
Facsimile: 214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants

## I. Introduction

Medicare suppliers or providers who have received an adverse final decision by the Secretary of Health and Human Services on their reimbursement claims may seek judicial review of those payment denials in the proper judicial venue. The parties agree that three Plaintiffs here have obtained final decisions, and Defendants do not contest those Plaintiffs' ability to seek judicial review *in an appropriate court*, subject to the requirement that judicial review is proper only of those claims that were actually presented to the Secretary. Plaintiffs, in turn, appear to acknowledge that none of those three Plaintiffs presented their "Clawback Policy" claim in the administrative proceedings below, and that none may bring an individual action *in this Court* because they do not satisfy the requirements of the venue statute.

This should resolve this matter in favor of the government. Exhaustion is not futile, as demonstrated by the three Plaintiffs who have successfully exhausted at least some claims. And the relevant venue provisions forbid those three Plaintiffs from proceeding here. Dismissal is warranted because there is no Plaintiff that can maintain an action in this Court.

Plaintiffs' response (Doc. 40) conflates case law involving waiver of non-statutory exhaustion requirements with the Medicare statutory requirement and is in direct contravention of the Supreme Court's holding that "the bar of § 405(h) reaches beyond ordinary administrative law principles of 'ripeness' and 'exhaustion of administrative remedies'—doctrines that in any event normally require channeling a legal challenge through the agency." *Shalala v. Ill. Council on Long Term Care, Inc,*, 529 U.S. 1, 12 (2000) (internal citations omitted). Consistent with that holding, the Supreme Court and the Fifth Circuit have repeatedly articulated the Medicare statute's stringent standard for invoking the futility exception, which Plaintiffs cannot satisfy. A dismissal—or transfer of the claims of the exhausted Plaintiffs—is therefore appropriate.

## II. Argument and Authorities

### A. Plaintiffs apply the wrong futility standard.

As Defendants previously explained, a plaintiff arguing that Medicare exhaustion is futile must demonstrate that "application of § 405(h) would not simply channel review through the agency, but would mean *no review at all*," *Ill. Council*, 529 U.S. at 19 (emphasis added) (cited in Doc. 29 at 13), with the relevant issue not whether a particular plaintiff claims it cannot obtain review, but whether all review is precluded when the channeling requirement is considered "as applied generally to those covered by" it, *id.* at 22. Here, then, where there is no dispute that similar providers can obtain and in fact are obtaining judicial review of denied skin-substitute claims after exhaustion (*see* Doc. 35 at 16 (identifying other litigation brought by similar providers on exhausted claims)), and in fact three Plaintiffs here have exhausted, it is clear that all judicial review is not precluded.

Plaintiffs respond that *Illinois Council* applies only to jurisdiction under 28 U.S.C. § 1331, and they accuse Defendants of "mistakenly appear[ing] to think that Plaintiffs are pursuing the Section 1331 route." Doc. 40 at 21. Although Plaintiffs now seem to concede that jurisdiction is *not* appropriate under the federal question statute at § 1331, they expressly invoked that provision in their amended complaint. Doc. 25, ¶ 50 ("this Court has jurisdiction under 28 U.S.C. § 1331"). Plaintiffs apparently now seek to proceed only under 42 U.S.C. § 1395ff(b)(1)(A), but that statute does not provide jurisdiction for unexhausted claims.

There is no legal basis for Plaintiffs' argument that the six Plaintiffs' undisputed failures to exhaust under § 1395ff(b)(1)(A) may be excused by this Court. The statute itself permits judicial review only of "the Secretary's final decision" and Plaintiffs do not offer a single authority allowing such judicial review of a nonfinal decision. To focus on the statutory text, the

following is the relevant statutory provision that Plaintiffs must satisfy:

> Subject to subparagraph (D), any individual dissatisfied with any initial determination under subsection (a)(1) shall be entitled to reconsideration of the determination, and, subject to subparagraphs (D) and (E), a hearing thereon by the Secretary to the same extent as is provided in [42 U.S.C. § 405(b)] and, subject to paragraph (2), to judicial review *of the Secretary's final decision* after such hearing as is provided in [42 U.S.C. § 405(g)].[1]

42 U.S.C. § 1395ff(b)(1)(A) (emphasis added). Three Plaintiffs have obtained a final decision of the type contemplated by this statute.[2] *See* Doc. 29 at 11 (Lopez, Wyoming Medical Associates, and Wound Management Specialists, LLC). Each of these three Plaintiffs may thus obtain judicial review of their exhausted claims in an appropriate court (but not here).

No other Plaintiff before this Court has obtained a "final decision" of the Secretary, a fact that Plaintiffs readily admit. Their only argument is that the other Plaintiffs who have not exhausted their claims are "properly excused from any further appeal efforts." Doc. 40 at 21. But the statute itself does not permit any Plaintiff to skip administrative review. In relevant part, it requires someone dissatisfied with an initial determination to seek reconsideration and "a hearing thereon by the Secretary to the same extent as is provided in [§ 405(b)]." The person is then entitled, "subject to paragraph (2), to judicial review of the Secretary's final decision after such hearing as is provided in [§ 405(g)]." As this Court has held, "[w]hen a statute imposes an exhaustion requirement, 'Congress sets the rules.'" *U.S. Navy Seals 1-26 v. Biden*, 578 F. Supp. 3d 822, 830 (N.D. Tex. 2022) (quoting *Ross v. Blake*, 578 U.S. 632, 639 (2016)). Courts "simply apply the text" and "may not 'add unwritten limits' or exceptions to the statute's

---

[1] The references to subparagraphs (D) and (E) deal with time limits and amount in controversy, respectively, neither of which is at issue here. And the cross-referenced "paragraph (2)" instructs the Secretary to "establish a process" for expedited access to judicial review, which has been done.

[2] This would be either a final decision of the Council or a decision allowing escalation to federal court.

'rigorous textual requirements.'" *Id.* (quoting *Ross*, 578 U.S. at 639). This is in stark contrast to "judge-made exhaustion doctrines," which "remain amenable to judge-made exceptions." *Ross*, 578 U.S. at 639. In the Medicare statute, Congress has set the rules for exhaustion, and judge-made exhaustion doctrines (or exceptions) do not apply.

The statutory exhaustion requirement is fatal to Plaintiffs' futility argument. Plaintiffs cite only three cases in which a court excused an exhaustion requirement against a federal defendant. But the *U.S. Navy Seals* case, on which Plaintiffs heavily rely (Doc. 40 at 17–19, 21), involved a judge-made exception to a judge-made exhaustion doctrine and explained that similar exceptions are unavailable in the context of statutory exhaustion requirements. *See U.S. Navy Seals*, 578 F. Supp. at 830 ("The military exhaustion requirement is like other judge-made exhaustion doctrines."). The second case, *Alliance for Hippocratic Medicine v. FDA*, No. 23-10362, 2023 WL 2913725 (5th Cir. Apr. 12, 2023) (Doc. 40 at 17, 20), is a non-precedential, unpublished Fifth Circuit decision with a long subsequent procedural history ending in a Supreme Court ruling that the plaintiffs lacked standing. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 396–97 (2025). It is in any event inapposite here because it addresses a regulatory—not statutory—exhaustion requirement. *See Alliance*, 2023 WL 2913725 at *15 (citing 21 C.F.R. § 10.45(b)). Finally, *Tataranowicz v. Sullivan*, 959 F.2d 268 (D.C. Cir. 1992) (Doc. 40 at 20), predates *Illinois Council* and numerous courts in the D.C. Circuit have called its continued vitality into question. *See HMH Hosps. Corp. v. Kennedy*, No. 24-1901 (BAH), 2025 WL 2879186, at *14 (D.D.C. Oct. 9, 2025) (collecting cases for the proposition that "the Supreme Court's reasoning in *Illinois Council* has cast significant doubt on whether *Tataranowicz* remains good law"). *Tataranowicz*'s suggestion that exhaustion can be excused when further appeals appear futile also finds no support in the Fifth Circuit precedent that is

binding here, and which instead affords only "a very narrow exception to the channeling requirement where application of § 405(h) would not simply channel review through the agency, but would mean no review at all." *Sw. Pharmacy Sols., Inc. v. CMS*, 718 F.3d 436, 440 (5th Cir. 2013) (cleaned up); *see also* Order at 9, *CAMPs Initiative v. U.S. Dep't Health & Hum. Servs.*, No. 4:26-CV-99-O (N.D. Tex. Mar. 12, 2026) (out-of-circuit precedent that is "inconsistent with binding Fifth Circuit precedent" is unpersuasive). None of these cases support Plaintiffs' key argument that this court may waive the statutory exhaustion requirement established by Congress in § 1395ff(b)(1)(A).

The remainder of Plaintiffs' cases are even further afield. In several, the court did not waive exhaustion at all. For example, in *United States v. Mayorga*, the court held that the plaintiff failed to exhaust administrative remedies, noting that the "belief that an appeal would fail does not make the opportunity unavailable or excuse failure to use the procedure." 359 F. Supp. 3d 484, 496 (W.D. Tex. 2019) (cleaned up). Like the *Mayorga* plaintiffs, Plaintiffs here contend that their belief an administrative appeal would be unsuccessful excuses their failure to pursue the administrative process before seeking judicial review, but *Mayorga* holds the opposite. The same is true of *Rhodes v. United States* (*see* Doc. 40 at 22), in which the Fifth Circuit held that a plaintiff's speculation that she would not succeed administratively did not justify premature judicial review. 574 F.2d 1179, 1181–82 (5th Cir. 1978).

Finally, Plaintiffs cite a few cases where there was no federal defendant at all. In *Electricians Health, Welfare & Pensions Plans v. Gulino*, the dispute between private parties was over a union pension plan. 594 F. Supp. 1265, 1266 (M.D. La. 1984). Plaintiffs cite dicta in a footnote stating that "by analogy, [] a court . . . may decline to require exhaustion of administrative remedies where the agency's position is so clear and fixed that it would be futile

to require proceedings at the agency level." *Id.* at 1272 n.16 (cited in Doc. 40 at 17). Whether that footnote accurately stated the law in 1984 is unclear; it certainly does not describe the standard for waiver of exhaustion under the Medicare statute now. Similarly, *Hilliard v. BellSouth Medical Assistance Plan* involved a dispute between an individual and his insurance plan, and the court noted that the plaintiff could have obtained the requisite "right-to-sue letter upon request without an investigation and hearing," and therefore excused the plaintiff from doing so. 918 F. Supp. 1016, 1026 n.7 (S.D. Miss. 1995). That decision has no bearing on these Plaintiffs' attempt to circumvent a statutorily established exhaustion requirement.

Additionally, allegations of irreparable harm (Doc. 40 at 22–23) do not alter the exhaustion analysis. This Court has already explained elsewhere that allegations of a Medicare provider's "being forced to go out of business" do not justify emergency relief (or create jurisdiction) when a plaintiff has failed to channel its claims. *See Indeplus Grp. of Cos. v. Sebelieus*, No. 3:10-CV-0557-O, 2010 WL 1372488, at *3 (N.D. Tex. Apr. 7, 2010) ("Plaintiff essentially complains that the suspension of payments is extremely damaging to Plaintiff and will result in Plaintiff being forced to go out of business due to its dependence on Medicare payments for revenue. The Court is sympathetic to Plaintiff's situation . . . . but . . . is without the power to intervene in the agency's internal process for such disputes. The Court finds that since the Plaintiffs have yet to proceed through the administrative appeals process provided by the Medicare Act their complaint in this Court is premature and the Court is without subject-matter jurisdiction to hear it.").

In short, while Plaintiffs argue that this "Court can properly waive" the § 1395ff exhaustion requirement, they provide no precedent or other binding authority to support this. The "two competing jurisdictional routes" the Supreme Court discussed in *Illinois Council* work

together to establish the channeling requirement. *Ill. Council*, 529 U.S. at 7 (quoted in Doc. 40 at 33). When a plaintiff satisfies the "special Medicare review route," consideration of whether jurisdiction might exist under 28 U.S.C. § 1331 is unnecessary. In *Illinois Council*, the "special Medicare review route" applicable to nursing home terminations was codified at 42 U.S.C. § 1395cc(h)(1), but its language is virtually identical to § 139ff(b)(1)(A). *Compare Ill. Council*, 529 U.S. at 8 (quoting excerpts of § 1395cc(h)(1)) *with* 42 U.S.C. § 1395ff(b)(1)(A). Had the *Illinois Council* plaintiffs exhausted as required by the Medicare statute, the Supreme Court would not have had to consider § 1331 jurisdiction at all. It was because those plaintiffs *failed to exhaust*—much like six of the Plaintiffs here—that the Court assessed general federal-question jurisdiction and found it unavailable. But nothing in *Illinois Council*, or any other case Plaintiffs cite, stands for the proposition that the exhaustion requirement may be excused for plaintiffs who have started, but not completed, the process of obtaining a judicially reviewable "decision of the Secretary." And here, Plaintiffs seemingly disclaim any reliance on § 1331. Accordingly, this Court should dismiss the claims of the six unexhausted Plaintiffs.

### B. *Bowen v. City of New York* is inapposite.

Plaintiffs' reliance on *Bowen v. City of New York*, 476 U.S. 467 (1986), is also unavailing. It is clear from *City of New York* that the exhaustion requirement *may* be waived either by the Secretary (who has not waived it here) or by a court (which can waive it only under certain extremely narrow circumstances). *See* Doc. 40 at 13–14. As the Fifth Circuit has explained while discussing Supreme Court precedent, the latter court-waiver option "requires that a party go beyond showing its own hardship and indicate that the difficulty it encounters is sufficiently widespread as to threaten the loss of any judicial review." *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 657 (5th Cir. 2012). That standard is clearly not met here, where three

Plaintiffs *can* obtain judicial review of their coverage denials in a proper court *at this very time*. It is not enough for Plaintiffs to repeat that "exhaustion is not jurisdictional," Doc. 40 at 16, when they cannot demonstrate that Fifth Circuit and Supreme Court precedent allows waiving the exhaustion requirement in this case. It does not.

In that regard, *City of New York* is of no help to Plaintiffs. Plaintiffs have alleged a secret "Clawback Policy" purportedly requiring some administrative contractors and some (but apparently not all) administrative law judges to deny coverage of skin substitutes following post-payment audits. *See* Doc. 40 at 19 n.8 (noting provider-favorable ALJ decisions); Doc. 43-1, PageID 6163 (same). But Plaintiffs offer *no* allegation that the Medicare Appeals Council is a part of this alleged "Clawback Policy." In response to Defendants' showing that the four decisions by the Medicare Appeals Council involved individualized "reasonable and necessary" determinations as required by the Medicare statute, Plaintiffs state only that this "lacks support and is beside the point." Doc. 40 at 19. But Defendants quoted the decisions, which appear in the record in this proceeding, *see* Doc. 29 at 13, so it is unclear what more support Plaintiffs think necessary. And as described above, the availability of individualized review by the Medicare Appeals Council is far from "beside the point." The uncontested availability of that review renders federal court jurisdiction over unexhausted claims inappropriate.

Contrast this case with *City of New York*. A key factor in the Supreme Court's holding there was that the plaintiffs' claims were "collateral to the claims for benefits that class members had presented administratively." *City of New York*, 476 U.S. at 483. Not so here. Plaintiffs' claims *are* claims for benefits—they want this Court to reverse existing coverage denials and issue an order precluding future coverage denials.

Moreover, unlike in *City of New York*, the errors that Plaintiffs allege "are fully

correctable upon subsequent administrative review since the claimant on appeal will alert the agency to the alleged deviation." *City of New York*, 476 U.S. at 484–85. Nor does this case involve an interaction between state agencies and the federal government, another key factor to the *City of New York* finding that "exhaustion would have been futile." *Id.* at 485. This is, put simply, a typical case involving judicial review of Medicare coverage determinations. It should therefore be treated like a typical case and the denied claims reviewed judicially, on an individualized provider-by-provider basis in the appropriate venues, only after exhaustion.

**C. Plaintiffs have not presented their "Clawback Policy" claims.**

Even Plaintiffs who have exhausted some claims may not present grounds for reversal of coverage denials that they did not first present to the agency. This includes arguments about a "Clawback Policy" made for the first time in court. Plaintiffs treat Defendant's presentment argument (Doc. 29 at 14–17), as a purely semantic objection. It is not. Plaintiffs' presentment defect does not stem from their failure to use the specific phrase "Clawback Policy." Rather, it comes from their failure to present to the agency the argument they now advance in this Court—that some unlawful secret (but yet widespread among various contractors and others?) scheme has been implemented to deny claims. As a result, the agency had no notice of that contention and no opportunity to consider or address it. Had Plaintiffs presented it during the administrative proceedings, the Secretary could have considered it and developed any necessary factual record, which is the proper process rather than trying to develop a new record from scratch in this Court.

Whether described as presentment or as issue exhaustion, *see* Doc. 40 at 15–16, Plaintiffs have not satisfied the requirements necessary to challenge an alleged "Clawback Policy." Regardless, the Court can dismiss Plaintiffs' claims without reaching this issue; even putting aside presentment, none of the three Plaintiffs with exhausted claims in hand may bring them in

this district. But if the Court does reach the issue, it should hold that Plaintiffs did not present their claims about an alleged "Clawback Policy" to the agency and therefore no jurisdiction exists for such claims now. *See Greiner Orthopedics, LLC v. Kennedy*, No. 23-cv-1047 (APM), 2026 WL 63318, at *8 (D.D.C. Jan. 8, 2026) (no jurisdiction for challenge to an alleged covert, blanket policy because the providers had not presented that theory administratively).

### D. Plaintiffs' proposed transfer is to the wrong districts.

Plaintiffs alternately urge a transfer of any exhausted claims to the Southern District of Texas or the Southern District of Mississippi. (Doc. 40 at 23–25.) But they now concede that they are not seeking jurisdiction under § 1331, meaning that the Medicare statute's venue requirements control. Under 42 U.S.C. § 405(g), as incorporated by § 1395ff(b)(1)(A), venue is appropriate in "the judicial district in which the plaintiff resides, or has his principal place of business," meaning that the claim of Plaintiff Wyoming Medical Associates (which was the subject of a final decision of the Council) belongs in the District of Wyoming. And Plaintiffs Lopez and Wound Management Specialists, who followed the procedure to escalate their claims into federal court, must bring their actions in the "district in which the appellant is located (or, in the case of an action brought jointly by more than one applicant, the judicial district in which the greatest number of applicants are located) or in the District Court for the District of Columbia." 42 U.S.C. § 1395ff(b)(2)(C)(iii) (venue provision for escalated judicial review). In an action brought by multiple providers residing in different districts, there is no judicial district "in which the greatest number of applicants are located," so only the District of Columbia would appear appropriate for Lopez and Wound Management Specialists as co-plaintiffs.

## III. Conclusion

This Court should grant Defendants' motion to dismiss.

Respectfully submitted,

RYAN RAYBOULD
UNITED STATES ATTORNEY

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8626
Facsimile: 214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants

Certificate of Service

On July 7, 2026, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Brian W. Stoltz
Brian Stoltz
Assistant United States Attorney