**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **CHRIS MCGEE et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:26-cv-00243-O** |
| | § | |
| **ROBERT F. KENNEDY, JR., et al.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |
| | § | |

**OPINION & ORDER**

Before the Court are Defendants Robert F. Kennedy Jr. et al (the "Government") Motion to Dismiss for Lack of Jurisdiction (ECF No. 29), Plaintiffs' Response (ECF No. 40), and the Government's Reply (ECF No. 47). For the following reasons, the Court **GRANTS** the Motion to Dismiss (ECF No 29). All other pending Motions are **DENIED as moot** (ECF Nos. 27, 36, 37).

## I. BACKGROUND[1]

This case arises from multiple administrative determinations denying reimbursement claims for, and seeking recoupment of payments made for, skin substitutes under the Medicare Act.

[1] Unless otherwise cited, the Court's recitation of the facts is taken from Plaintiffs' Amended Complaint. *See* Pl.'s Am. Compl., ECF No. 25. At this stage, these facts are taken as true and viewed in the light most favorable to Plaintiff. *See Sonnier v. State Farm Mut. Auto Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

### A. Medicare Background

Medicare is a federally funded health insurance program. *See* 42 U.S.C. § 1395. Relevant to this dispute, Medicare Part B is a voluntary supplementary medical insurance program covering physician's services, outpatient hospital care, and certain other services. 42 U.S.C. §§ 1395j; 1395k. Medicare pays for covered services based on a fee schedule established each year by the Secretary of the Department of Health and Human Services (the "Secretary"). 42 U.S.C. § 1395w-4. Under the payment system, participating providers agree to accept the amount determined under the fee schedule. 42 U.S.C. § 1395u(h)(1).

Congress did not define every item or service covered by Medicare. Instead, it delegated broad authority to the Secretary to determine whether services are "reasonable and necessary" under § 1395y(a)(1)(A). *See* 42 U.S.C. § 1395ff(a)(1)(A)–(B) ("The Secretary shall . . . make initial determinations with respect to benefits under part A or part B" regarding "whether an individual is entitled to benefits" for particular services and "the amount of benefits available.").

The Secretary implements the coverage standard through a range of mechanisms, including regulations, so-called National Coverage Determinations and Local Coverage Determinations, and claim-by-claim review. 42 U.S.C. 1395ff(c)(3)(B)(ii). Federal contractors apply this standard in the first instance when making coverage determinations. 42 U.S.C. § 1395ff(a)(3); 42 C.F.R. § 405.940. The Medicare Statute establishes an administrative appeals process under which subsequent reviewers, including administrative law judges ("ALJ"s) and the Medicare Appeals Council, can determine whether coverage of a particular item or service for a particular beneficiary was statutorily appropriate. *See* 42 U.S.C. § 1395ff(b), (c); 42 C.F.R. § 405.960; 42 C.F.R. § 405.966; 42 U.S.C. § 1395ff(b)(1)(A), (d)(1); 42 C.F.R. § 405.1000; 42 C.F.R. § 405.1100. This process culminates in a final decision by the Secretary of Health and Human Services ("HHS").

42 U.S.C. § 1395ff(b)(1)(A) (incorporating 42 U.S.C. § 405(g)). By statute, only that final decision is reviewable. 42 U.S.C. § 405(h).

Congress also expressly authorized the Secretary to audit claims, identify overpayments, and recoup improperly paid funds—work that is often performed with the assistance of recovery audit contractors and unified program integrity contractors. *See* 42 U.S.C. § 1395ddd. When a contractor identifies an improper payment, it issues a notice to the provider that explains its full administrative appeal rights, including opportunities to halt recoupment temporarily through administrative review requests. Any challenge to the contractor's determination or recoupment must then proceed through that administrative process before judicial review is available.

**B. Skin Substitutes Background**

Skin substitutes are "a category of products that are most commonly used in outpatient settings for the treatment of diabetic foot ulcers and venous leg ulcers." *Final Rule: Medicare and Medicaid Programs; CY 2026 Payment Policies Under the Physician Fee Schedule and Other Changes to Part B Payment and Coverage Policies*, 90 Fed. Reg. 49266, 49486 (Nov. 5, 2025) (internal quotation marks omitted). Previously, Medicare paid for skin substitutes related to services under the Physician Fee Schedule based on the statutorily defined Average Sales Price of the product at a 106% rate in physician's offices and at a lesser rate for skin substitutes furnished in outpatient settings. 90 Fed. Reg. at 49487; *see also* 42 U.S.C. § 1395w-3a (describing Average Sales Price); 42 U.S.C. §§ 1395j, 1395k, 1395l (Medicare Part B generally). In response to "several novel industry practices . . . causing a significant increase in spending under Medicare Part B for skin substitute products in the non-facility setting," the Government proposed and, following a notice-and-comment period, finalized a rule modifying the payment policy under the Physician Fee Schedule applicable to skin substitutes. 90 Fed. Reg. at 49486. The new policy reclassifies

skin substitutes as "an incident-to supply for payment purposes under the [Physician Fee Schedule] unless a skin substitute is approved as a drug or biological under Section 351 of the [Public Health Services] Act." 90 Fed. Reg. at 49493. The modification results in significantly fewer claims getting reimbursed.

Plaintiffs allege that Centers for Medicare and Medicare Services ("CMS") has impermissibly implemented a "Clawback Policy" consisting of (1) audits that seek to recoup reimbursements for skin substitute products and (2) improper claim denials.[2] Specifically, these recoupments and denials now refuse coverage for "skin substitutes derived from donated human amniotic tissue after birth that are not regulated as devices or biologicals"[3] unless providers supply "peer-reviewed scientific literature" demonstrating the effectiveness of the specific product used.[4] Without that evidence, the product is deemed "experimental" or "investigational" and is not covered.[5] Plaintiffs argue that this policy was implemented contrary to law and after CMS tried and failed "to promulgate local coverage determinations through a public notice and comment process that would have changed Medicare's coverage standard for future services."[6]

**C. Factual Background**

Plaintiffs are nine different skin care substitute providers from around the country: Dr. Chris McGee MD PA from Texas; April Lopez ("Lopez") from Texas; Plaintiff Wyoming Medical Associates, LLC, located in Gillette, Wyoming; Plaintiff Wound Management Specialists, LLC is a wound care provider located in Flowood, Mississippi; Plaintiff Dr. Brian Loder, DPM, is a board-

---

[2] Am. Compl. ¶¶ 2-3, ECF No. 25.
[3] *Id*. at ¶ 324.
[4] *Id*. at ¶ 15.
[5] *Id*. at ¶ 2.
[6] *Id*.

certified podiatrist and foot and ankle surgeon and a resident of Michigan; Plaintiff Healthcare Housecalls LLC is a medical clinic located in Florida; Plaintiff Indy Wound Center is a medical clinic located in Indiana; Plaintiff Carlo Domingo, AGNP-C, is a board-certified nurse practitioner based in Batavia, Illinois. These Plaintiffs all use different skin substitute products derived from donated human amniotic tissue in treating their patients.

Plaintiffs Wyoming Medical, Lopez, and Wound Management Specialists administratively exhausted their claims. The Medicare Appeals Council granted permission for Plaintiffs Lopez and Wound Management Specialists to appeal their unfavorable ALJ decisions by escalating to federal court. Lopez used Zenith and carePATCH products. Wound Management Specialists used Woundfix and Zenith products to treat patients.

Wyoming Medical initially received a favorable decision from an ALJ for its use of Xwrap, which was subsequently reversed by the Medicare Appeals Council.

The other six Plaintiffs have not yet completed the administrative appeals process for their various claims.

Plaintiffs sued, seeking (1) to certify a class of all physicians who have had skin substitute claims denied as experimental and investigational; (2) a declaration that the "application of the Clawback Policy to claims on or after April 2022 is unlawful"; (3) a declaration that "skin substitutes derived from donated human amniotic tissue after birth that are not regulated as devices or biologicals are 'reasonable and necessary' and covered"; (4) a permanent injunction requiring reimbursement of these products.[7]

---

[7] *Id*. at ¶ 324.

## II. LEGAL STANDARD

### A. Motion to Dismiss 12(b)(1)

Federal courts are courts of limited jurisdiction and must have "statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Federal law gives the federal district courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A party seeking relief in a federal district court bears the burden of establishing the subject matter jurisdiction of that court. *United States v. Hays*, 515 U.S. 737, 743 (1995). Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes the dismissal of a case for lack of jurisdiction over the subject matter. *See* FED. R. CIV. P. 12(b)(1). A motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction must be considered by the court before any other challenge because "the court must find jurisdiction before determining the validity of a claim." *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (internal citation omitted); *see also Ruhrgas AG v. Marathon Oil Company*, 526 U.S. 574, 577 (1999) ("The requirement that jurisdiction be established as a threshold matter . . . is inflexible and without exception[.]") (citation and internal quotation marks omitted). In ruling on a 12(b)(1) motion to dismiss, the court may rely on: "1) the complaint alone; 2) the complaint supplemented by undisputed facts; or 3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts." *MCG, Inc. v. Great Western Energy Corporation*, 896 F.2d 170, 176 (5th Cir. 1990) (citing *Williamson v. Tucker*, 645 F.2d 404, 413(5th Cir. 1981)).

### B. Venue

If venue is improper, the Court has broad discretion to dismiss the case or, in the interest of justice, transfer the case to any district where venue is proper. 28 U.S.C. § 1406(a); *Caldwell v.*

*Palmetto State Savs. Bank of S.C.*, 811 F.2d 916, 919 (5th Cir. 1987). "Whether dismissal or transfer is appropriate lies within the sound discretion of the district court." *Youman v. Newfield Expl. Co.*, 977 F. Supp. 809, 812 (E.D. Tex. 1997).

## III. DISCUSSION

### A. The Court Does Not Have Jurisdiction Over Non-Administratively Exhausted Claims.

The Court does not have subject-matter jurisdiction over the six Plaintiffs that failed to exhaust their administrative remedies before filing suit.[8]

Congress divested subject-matter jurisdiction from federal courts "on any claim arising under" the Medicare statute, except as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 405(h); *id.* § 1395ii (incorporating 42 U.S.C. § 405(h) into the Medicare statute). Instead, section 405(g) is the "sole avenue for judicial review for all 'claim[s] arising under'" the Medicare statute. *Heckler v. Ringer*, 466 U.S. 602, 614–15 (1984); *see also Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 653 (5th Cir. 2012) ("The Medicare act severely restricts the authority of federal courts by requiring 'virtually all legal attacks under the Act be brought through the agency.'") (quoting *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000)). The term "arising under" encompasses all claims for relief, regardless of whether the claimant seeks benefits, declaratory, or injunctive relief. All claims in this suit "arise under" the Medicare statute. *Citadel Healthcare Servs. Inc. v. Sebelius*, No. 3:10-CV-1077-BH, 2010 WL 5101389, at *3 (N.D. Tex. Dec. 8, 2010) (quoting *Ringer,* 466 U.S. at 615).

[8] *See* Am. Compl. ¶ 52, ECF No. 25; Resp. Mot. Dismiss 13-14, ECF No. 40 (admitting that a "subset of six Plaintiffs that have not fully exhausted their appeals").

Section 405(g) jurisdiction requires two elements: (1) "there must have been a presentment to the Secretary"; and (2) "the claimant must have exhausted his administrative review." *Affiliated Pro. Home Health Care Agency v. Shalala*, 164 F.3d 282, 285 (5th Cir. 1999) (citing *Mathews v. Eldridge*, 424 U.S. 319, 328, (1976)).

Courts may waive exhaustion either because (1) the Secretary himself waives it or (2) "certain special cases" render exhaustion futile. *Heckler*, 466 U.S. at 618. In the section 405(g) context, futility requires that (a) the claims are "entirely collateral" to a substantive agency decision and (b) "full relief cannot be obtained at a post-deprivation hearing." *True Health Diagnostics, LLC v. Azar*, 392 F. Supp. 3d 666, 679 (E.D. Tex. 2019) (quoting *Family Rehab. v. Azar*, 886 F.3d 496, 501 (5th Cir. 2018)).

A claim is collateral only if "it raises claims unrelated to the merits of the [benefits claim]." *Fam. Rehab., Inc.*, 886 F.3d at 503. A claim is not collateral—and so not waivable— "[i]f the court must examine the merits of the underlying dispute, delve into the statute and regulations, or make independent judgments as to [the] plaintiffs' eligibility under a statute." *Id.* A claim that an HHS policy is "unlawful and that certain claims [are] reimbursable under the Medicare Act" is not collateral: it is "nothing more than 'a claim that [plaintiff] should be paid' for certain procedures; as such, it the claim [is] 'inextricably intertwined with their claims for benefits' under the administrative process." *Id.* at 502 (quoting *Ringer*, 466 U.S. at 614). Framing such claims as procedural does not change this result. *See id.; see also Heckler*, 466 U.S. at 614; *Affiliated Pro.*, 164 F.3d at 284–85.

Plaintiffs bring non-collateral claims. They assert entitlement to benefits under the Medicare statute and seek (1) a declaration that "the application of the Clawback Policy to claims . . . is unlawful"; (2) a declaration that the Medicare statute requires reimbursement of specific

skin substitute products; and (3) a permanent injunction requiring that payment for claims regarding these skin substitutes.[9] Thus, at bottom, they seek "a determination that the recoupments are wrongful under the Medicare Act"—exactly the type of claim the Fifth Circuit has determined is a non-collateral requests requiring exhaustion. *Fam. Rehab., Inc.*, 886 F.3d at 503 (explaining requirements of collateral futility under section 405(g)). Granting the relief Plaintiffs seek would require the Court "necessarily [to] have to immerse itself in [Medicare] regulations and make a factual determination as to whether" denial was solely attributable to the alleged Clawback Policy. *Affiliated Pro.*, 164 F.3d at 285.

Accordingly, Plaintiffs' argument that exhaustion would be futile because the alleged Clawback Policy "has predetermined that Plaintiffs' claims should be denied"[10] is unavailing. A "belief that an appeal would fail does not make the opportunity unavailable or excuse failure to use the procedure." *United States v. Mayorga*, 359 F. Supp. 3d 484, 496 (W.D. Tex. 2019) (cleaned up). Plaintiffs' citation to *Tataranowicz v. Sullivan* is not persuasive as (1) "the Supreme Court's reasoning in *Illinois Council* has cast significant doubt on whether *Tataranowicz* remains good law," *HMH Hosps. Corp. v. Kennedy*, No. 24-1901 (BAH), 2025 WL 2879186, at *14 (D.C.C. Oct. 9, 2025) (collecting cases for this proposition); and (2) no binding Fifth Circuit precedent supports its view of futility. 959 F.2d 268, 274–75 (D.C. Cir. 1992).

Plaintiffs' other cases in support of their futility argument consider waiver outside the section 405(g) context and are therefore inapposite. For example, *U.S. Navy SEALs* noted that "[a]pplication of the exhaustion requirement is therefore fact-intensive, requiring 'an understanding of its purposes and of the particular administrative scheme involved'" and relied on

---

[9] Am. Compl. ¶ 324, ECF No. 25.
[10] Resp. Mot. Dismiss 18, ECF No. 40; Am. Compl. ¶¶ 111, 216, 230, 243, 274, 285, ECF No. 25.

doctrine specific to the context of military exhaustion. *U.S. Navy SEALs 1-26 v. Biden*, 578 F. Supp. 3d 822, 830 (N.D. Tex. 2022) (quoting *McKart v. United States*, 395 U.S. 185, 193 (1969)). Likewise, *All. for Hippocratic Med. v. FDA* addressed a regulatory—rather that statutory—exhaustion requirement, and the case was brought pursuant to 5 U.S.C. § 705, not § 405(g). No. 23-10362, 2023 WL 2913725 (5th Cir. Apr. 12, 2023) (per curiam).

Plaintiffs also argue that *Bowen v. City of New York,* 476 U.S. 467 (1986), supports their contention they may properly waive the exhaustion requirement in this context.[11] It does not. In that case, the plaintiffs "neither sought nor were awarded benefits" under the Social Security Act but rather challenged an alleged internal policy that denied them due process owed under the statute. *Fam. Rehab., Inc.*, 886 F.3d at 502 (explaining *Bowen*, 476 U.S. 602, *Heckler*, 466 U.S. at 473-74, and *Affiliated Pro.*, 164 F.3d at 285-86); *see also Griego v. Leavitt*, No. 3:07-CV-1708-D*,* 2008 WL 2200052, at *12–13 (N.D. Tex. May 16, 2008) (distinguishing *City of New York* when addressing similar arguments); *Janacek v. Leavitt,* No. 3:07-CV-1996-G, 2008 WL 4107549, at *10–11 (N.D. Tex. Aug. 27, 2008) (Fish, J.) (same); *Citadel Healthcare Servs. Inc. v. Sebelius*, No. 3:10-CV-1077-BH, 2010 WL 5101389, at *5 n.2 (N.D. Tex. Dec. 8, 2010) (same).

Accordingly, all Plaintiffs who have not exhausted their administrative remedies—Chris McGee, MD PA; Brian Loder, DPM, PLC, dba Detroit Foot and Ankle, Healthcare Housecalls LLC; Indy Wound Center for Limb Preservation & Reconstruction dba Indy Wound Center; Integrated Wound Care Connecticut PLLC; and Carlo Domingo, AGNP-C—are **DISMISSED** for lack of subject-matter jurisdiction.

---

[11] Resp. Mot. Dismiss 13-14, ECF No. 40.

**B. Venue is Improper for the Remaining Claims.**

The Court dismisses the remaining Plaintiffs for improper venue. Under 42 U.S.C. § 405(g), as incorporated by § 1395ff(b)(1)(A), venue is appropriate in "the judicial district in which the plaintiff resides, or has his principal place of business." The Plaintiff anchoring venue in the Northern District of Texas—Chris McGee, MD PA—has been dismissed for failing to exhaust his claim. The Court does not have personal jurisdiction over the remaining Plaintiffs, meaning venue is improper.

The remaining Plaintiffs have different domiciles and principal places of business: Plaintiff Wyoming Medical Associates belongs in the District of Wyoming. Plaintiffs Lopez and Wound Management Specialists, who followed the procedure to escalate their claims into federal court, must bring their actions in the "district in which the appellant is located (or, in the case of an action brought jointly by more than one applicant, the judicial district in which the greatest number of applicants are located) or in the District Court for the District of Columbia." 42 U.S.C. §1395ff(b)(2)(C)(iii) (venue provision for escalated judicial review).

Because the underlying facts are significantly different between Plaintiffs as they (1) used different products and (2) followed different procedural paths to federal court,[12] the Court does not find it in the interest of justice to transfer the remaining claims elsewhere.

**C. Leave to Amend**

Plaintiffs request leave to amend to pled facts establishing jurisdiction. Plaintiffs have not explained the facts that they could provide showing liability. *See Joseph v. Bach & Wasserman,*

[12] Wyoming Medical received an initial favorable ALJ decision and an unfavorable final Medicare Appeals Board Decision. Lopez and Wound Management Specialists both received a negative ALJ decision and then were granted request to escalate to federal court.

*L.L.C.*, 487 F. App'x 173, 178 (5th Cir. 2012). Furthermore, the record establishes that these Plaintiffs cannot establish jurisdiction here. *Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 518 (5th Cir. 2015). Accordingly, leave to amend is **DENIED**.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Motion to Dismiss (ECF No. 29). All other pending Motions are **DENIED as moot** (ECF Nos. 27, 36, 37). Final judgment shall issue separately.

**SO ORDERED** on this **26th day** of **August 2026**.

Reed O'Connor
CHIEF UNITED STATES DISTRICT JUDGE